AMY L. BOMSE (No. 218669)
SHARON D. MAYO (No. 150469)
JEE YOUNG YOU (No. 241658)
ERICA CONNOLLY (No. 288822)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400
Email:    amy.bomse@aporter.com
          sharon.mayo@aporter.com
          jeeyoung.you@aporter.com
          erica.connolly@aporter.com

Attorneys for Plaintiffs

BETH H. PARKER (No. 104773)
PLANNED PARENTHOOD AFFILIATES OF
CALIFORNIA
551 Capitol Mall, Suite 510
Sacramento, California  95814-4581
Telephone:    (916) 446-5247
Email:    beth.parker@ppacca.org

HELENE T. KRASNOFF (*pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF
AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
Telephone:    (202) 973-4800
Email:    helene.krasnoff@ppfa.org

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD: SHASTA-DIABLO, INC. dba PLANNED PARENTHOOD NORTHERN CALIFORNIA; PLANNED PARENTHOOD MAR MONTE, INC.; PLANNED PARENTHOOD OF THE PACIFIC SOUTHWEST; PLANNED PARENTHOOD LOS ANGELES; PLANNED PARENTHOOD/ORANGE AND SAN BERNARDINO COUNTIES, INC.; PLANNED PARENTHOOD OF SANTA BARBARA, VENTURA AND SAN LUIS OBISPO COUNTIES, INC; PLANNED PARENTHOOD PASADENA AND SAN GABRIEL VALLEY, INC.; PLANNED PARENTHOOD OF THE ROCKY MOUNTAINS; PLANNED PARENTHOOD GULF COAST; and PLANNED PARENTHOOD CENTER FOR CHOICE, <br><br> Plaintiffs, <br><br> v. <br><br> CENTER FOR MEDICAL PROGRESS; BIOMAX PROCUREMENT SERVICES, LLC; DAVID DALEIDEN (aka "ROBERT SARKIS"); TROY NEWMAN; ALBIN RHOMBERG; PHIL CRONIN; SANDRA SUSAN MERRITT (aka "SUSAN TENNENBAUM"); GERARDO ADRIAN LOPEZ; and UNKNOWN CO-CONSPIRATORS, inclusive, <br><br> Defendants. | Case No. 3:16-cv-00236-WHO <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES, LLC, DAVID DALEIDEN, TROY NEWMAN, PHILLIP CRONIN, ALBIN RHOMBERG, AND GERARDO ADRIAN LOPEZ'S MOTION TO DISMISS** <br><br><br> Date:      July 6, 2016 <br> Time:      2:00 p.m. <br> Place:     Courtroom 2, 17th Floor <br><br> Judge:   Hon. William H. Orrick, III |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

FACTUAL STATEMENT .......................................................................................... 1

LEGAL STANDARDS FOR MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM
UNDER FED. R. CIV. P. 12(B)(6).......................................................................... 3

I.    PLAINTIFFS STATE A CLAIM FOR VIOLATIONS OF THE CIVIL RICO
      STATUTE ................................................................................................... 4

      A.    Plaintiffs Have Adequately Pled They Suffered Injury To "Business Or
            Property" ........................................................................................... 4

      B.    Plaintiffs Have Sufficiently Pled Wire And Mail Fraud As Predicate Acts
            For The RICO Claim......................................................................... 5

      C.    Plaintiffs Have Sufficiently Pled The Federal Identity Theft Statute, 18
            U.S.C. § 1028, As The Predicate Act For The RICO Claim ......................... 8

      D.    Plaintiffs Have Sufficiently Pled That Injuries To Plaintiffs Were
            Proximately Caused By The RICO Acts......................................... 10

II.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE FEDERAL
      WIRETAP ACT .......................................................................................... 12

III.  PLAINTIFFS STATE A CLAIM FOR CIVIL CONSPIRACY .............................. 13

IV.   PLAINTIFFS STATE CLAIMS FOR BREACH OF CONTRACT ........................ 15

      A.    Plaintiffs' Allegations Regarding The PPFA Conference Agreements Are
            Sufficient........................................................................................... 15

      B.    Plaintiffs' Allegations Regarding The NAF Agreements Are Sufficient ...... 17

      C.    Plaintiffs' Allegations Regarding The PPGC Confidentiality Agreement
            Are Sufficient ................................................................................... 18

      D.    Plaintiffs' Damages From Defendants' Breaches Of The PPFA, NAF And
            PPGC Contracts Were Reasonably Foreseeable To Defendants At The
            Time Of Breach................................................................................. 19

V.    PLAINTIFFS STATE CLAIMS FOR TRESPASS UNDER FLORIDA,
      DISTRICT OF COLUMBIA, COLORADO, AND TEXAS LAW ......................... 20

VI.     PLAINTIFFS STATE A CLAIM FOR VIOLATIONS OF CALIFORNIA
        BUSINESS & PROFESSIONS CODE § 17200, ET SEQ. ...................................... 23

        A.      Plaintiffs Adequately Allege Violations Under The "Unlawful" Prong ........ 23

        B.      Plaintiffs Adequately Allege Violations Under The "Unfair" Prong ............. 24

        C.      Plaintiffs Adequately Allege Violations Under The "Fraudulent" Prong ...... 25

VII.    PLAINTIFFS STATE A CLAIM FOR FRAUDULENT
        MISREPRESENTATION ................................................................................ 27

VIII.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF CALIFORNIA PENAL
        CODE § 632 .................................................................................................. 30

        A.      Plaintiffs Sufficiently Allege That Their Staff had a Reasonable
                Expectation That Their Conversations With Defendants At The NAF
                Conference Were Not Being Recorded ......................................................... 30

        B.      Plaintiffs Sufficiently Allege That Dr. Nucatola Had A Reasonable
                Expectation That Her Conversation With Defendants Was Not Being
                Recorded ...................................................................................................... 32

        C.      Plaintiffs' Allegations Demonstrate Their Standing To Assert The
                Relevant Privacy Interests ........................................................................... 33

        D.      Plaintiffs Allege A Section 632 Claim Against Defendant Lopez ................. 34

IX.     PLAINTIFFS STATE A CLAIM FOR VIOLATION OF CALIFORNIA PENAL
        CODE § 634 .................................................................................................. 34

        A.      Penal Code Section 634 Does Not Require That The Plaintiff Asserting
                The Claim Be The Property Owner .............................................................. 34

        B.      Plaintiffs Sufficiently Allege That Defendants Trespassed At The NAF
                Conferences ................................................................................................. 35

X.      PLAINTIFFS STATE CLAIMS FOR VIOLATIONS OF STATE
        WIRETAPPING LAWS ................................................................................ 36

        A.      Plaintiffs Sufficiently Allege A Reasonable Expectation Of
                Confidentiality In Their Conversations With Defendants At PPFA's
                Private Conferences ..................................................................................... 36

        B.      Plaintiffs Sufficiently Allege A Reasonable Expectation Of
                Confidentiality In Their Conversations With Defendants At The NAF
                2015 Conference .......................................................................................... 37

XI.     PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY UNDER
        COMMON LAW AND THE CALIFORNIA CONSTITUTION ........................... 39

         A.     Plaintiffs Have Standing To Bring These Claims On Behalf Of Their Staff. 39

               1.     Plaintiffs Can Bring Claims On Behalf Of Their Employees ............ 40

               2.     Plaintiffs' Claims Do Not Require The Individual Participation Of Their Staff ........................................................................................ 41

         B.     Plaintiffs Allege The Elements Of Common Law Intrusion ........................ 43

         C.     Plaintiffs State A Claim For Invasion Of Privacy Under The California Constitution ................................................................................................. 46

CONCLUSION ................................................................................................................. 47

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F. Supp. 2d 941, 947-48 (N.D. Cal. 2003) ................................................................ 14, 15

*Air Transp. Ass'n of Am. v. Reno*,
  80 F.3d 477 (D.C. Cir. 1996) ........................................................................................... 41

*Am. Transmission, Inc. v. Channel 7 of Detroit*,
  609 N.W.2d 607 (Mich. Ct. App. 2000) ........................................................................... 21

*Animal Legal Defense Fund v. Otter*,
  118 F. Supp. 3d 1195 (D. Idaho 2015) ............................................................................. 29

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ..................................................................................................... 11, 12

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
  945 S.W.2d 812 (Tex. 1997) ............................................................................................. 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 4

*Ass'n for L.A. Deputy Sheriffs v. L.A. Times Comm.*,
  239 Cal. App. 4th 808, 821 (2015) .................................................................................. 42

*B-Line Med., LLC v. Interactive Digital Solutions, Inc.*,
  57 A. 3d 1041 (Md. App. 2012) ........................................................................................ 15

*Backus v. Gen. Mills, Inc.*,
  122 F. Supp. 3d 909, 929 (N.D. Cal. 2015) ...................................................................... 24

*Balsam v. Tucows Inc.*,
  No. CV 09–03585 CRB, 2009 WL 3463923 (N.D. Cal. Oct. 23, 2009) .......................... 18

*Barnes v. Mathis*,
  353 S.W.3d 760 (Tex. 2011) ............................................................................................. 20

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ............................................................................................ 26

*Baugh v. CBS, Inc.*,
  828 F. Supp. 745 (N.D. Cal. 1993) ................................................................................... 22

*Beck v. Lazard Freres & Co., LLC*,
  175 F.3d 913 (11th Cir. 1999) .......................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 3, 4, 8

*Benford v. Am. Broad. Cos.*,
  554 F. Supp. 145 (D. Md. 1982) .............................................................................. 37, 38

*Berger v. Cable News Network, Inc.*,
  No. CV 94-46, 1996 WL 390528 (D. Mont. Feb. 26, 1996) ................................... 21, 22

*Bess v. Wise*,
  275 Cal. App. 2d 158 (1969)......................................................................................... 35

*Blatty v. N.Y. Times Co.*,
  42 Cal. 3d 1033 (1986) ................................................................................................. 29

*Brady v. Brown*,
  51 F.3d 810 (9th Cir. 1995)........................................................................................... 13

*Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*,
  No. 8:12-CV-2079-T-17MAP, 2013 WL 5437117 (M.D. Fla. Sept. 27, 2013) .......... 36

*Bridge v. Phoenix Bond & Indemn. Co.*,
  553 U.S. 639, 643-44 (2008) ........................................................................................ 10

*Brugmann v. State*,
  117 So. 3d 39 (Fla. Dist. Ct. App. 2013) ...................................................................... 37

*Capon v. Monopoly Game LLC*,
  193 Cal. App. 4th 344 (2011)........................................................................................ 14

*Caro v. Weintraub*,
  618 F.3d 94 (2d Cir. 2010)............................................................................................ 13

*Carpenter v. United States*,
  484 U.S. 19 (1987) ..................................................................................................... 6, 7

*Ceja v. Lemire*,
  143 P.3d 1093 (Colo. Ct. App. 2006) ........................................................................... 20

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .................................................................................................. 23

*City of Indus. v. City of Fillmore*,
  198 Cal. App. 4th 191, 212 (2011) .......................................................................... 13, 14

*Clayworth v. Pfizer, Inc.*,
  49 Cal. 4th 758 (2010) .................................................................................................. 26

*Cleveland v. United States*,
  531 U.S. 12 (2000) ......................................................................................................... 6

*Cnty. of L.A. v. L.A. Cnty. Employee Relations Comm'n.*,
    56 Cal. 4th 905 (2013) ......................................................................................... 46

*Cohen Bros., L.L.C. v. ME Corp., S.A.*,
    872 So. 2d 321 (Fla. Dist. Ct. App. 2004) .......................................................... 37

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991).............................................................................................. 28

*Core-Mark Midcontinent Inc. v. Sonitrol Corp.*,
    2016 WL 611566 (Colo. Ct. App. Feb. 11, 2006) ............................................... 20

*Deibler v. State*,
    365 Md. 185 (2001) .............................................................................................. 36

*Denarii Sys., LLC v. Arab*,
    No. 12-24239-CIV, 2013 WL 6162825 (S.D. Fla. Nov. 25, 2013) ................. 36, 37

*Desnick v. Am. Broad. Cos.*,
    44 F.3d 1345 (7th Cir. 1995)................................................................................ 21

*Deteresa v. Am. Broad. Cos.*,
    121 F. 3d 460 (9th Cir. 1997).......................................................................... 12, 13

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) (*en banc*) ................................................................ 5

*Dietemann v. Time, Inc.*,
    449 F.2d 245 (9th Cir. 1971)......................................................................... 22, 29

*Doctors' Co. v. Superior Court*,
    49 Cal. 3d 39 (1989) ............................................................................................ 15

*Doe v. Roe*,
    958 F. 2d 763 (7th Cir. 1992)................................................................................ 5

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
    940 A.2d 996 (D.C. 2008)..................................................................................... 16

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) ......................................................................................... 19

*Flanagan v. Flanagan*,
    27 Cal. 4th 766 (2002) ............................................................................... 30, 31, 32

*Fleck & Assocs., Inc. v. City of Phoenix*,
    471 F.3d 1100, 1106 (9th Cir. 2006) .................................................................... 40

*Food Lion, Inc. v. Capital Cities/ABC. Inc.*,
    194 F.3d 505 (4th Cir. 1999)................................................................................ 28

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
  951 F. Supp. 1217 (M.D.N.C. 1996)...................................................................22

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
  964 F. Supp. 956 (M.D.N.C. 1997)....................................................................27

*Foster v. Edmonds*,
  No. C 07-05445 WHA, 2008 WL 4415316 (N.D. Cal. Sept. 26, 2008) ......................13

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999, 1015 (N.D. Cal. 2014) ...................................................26

*Frio v. Superior Court*,
  203 Cal. App. 3d 1480 (1988), *modified* (Sept. 22, 1988)....................................31, 45

*Frome v. Renner*,
  No. 97 CIV 5641, 1997 WL 33308718, (C.D. Cal. Oct. 1, 1997) ...........................28

*Gen. Contractors of Am. v. Cal. Dep't of Transp.*,
  713 F.3d 1187, 1194 (9th Cir. 2013) .............................................................41

*Greenpeace, Inc. v. Dow Chem. Co.*,
  97 A.3d 1053 (D.C. 2014)...........................................................................21

*Grogan v. Platt*,
  835 F.2d 844 (11th Cir.1988).........................................................................5

*Hemi Grp. LLC v. N.Y.C.*,
  559 U.S. 1 (2010) ....................................................................................11

*Hendrickson v. Cal. Newspapers, Inc.*,
  48 Cal. App. 3d 59, 62-63 (1975) .................................................................42

*Henning v. Narconon Fresh Start*,
  No. 14CV2379 BEN (RBB), 2015 WL 4601690 (S.D. Cal. July 28, 2015) ...............12

*Hernandez v. Hillsides, Inc.* and *Hill v. NCAA*,
  47 Cal. 4th 272, 285 (2009) ....................................................................43, 45

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992)..................................................................................10

*Hornberger v. Am. Broad. Cos.*,
  351 N.J. Super. 577 (2002) .........................................................................28

*Hunt v. Wash. Apple Adver. Comm'n*,
  432 U.S. 333 (1977)..................................................................................39

*Hustler Magazine v. Falwell*,
  485 U.S. 46 (1988) ....................................................................................29

*In re Google Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 ................................................................................................. 12

*In re Intuit Privacy Litig.*,
  138 F. Supp. 2d 1272 (C.D. Cal. 2001).......................................................... 12

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .................................................................................. 25

*In re Toys R Us, Inc., Privacy Litig.*,
  No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)..................... 13

*Ion Equip. Corp. v. Nelson*,
  110 Cal. App. 3d 868 (1980).......................................................................... 34

*Jarvis v. Regan*,
  833 F.2d 149 (9th Cir.1987) (Patel, J., concurring) ....................................... 5

*Jatar v. Lamaletto*,
  758 So. 2d 1167 (Fla. Dist. Ct. App. 2000) ................................................... 37

*Kemp v. Block*,
  607 F. Supp. 1262, 1264 (D. Nev. 1985) ...................................................... 39

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
  940 F.29 397, 406 (9th Cir. 1991).................................................................. 8

*Leonel v. Am. Airlines, Inc.*,
  400 F.3d 702 (9th Cir. 2005).......................................................................... 46

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014)........................................................................ 23

*Lieberman v. KCOP Television, Inc.*,
  110 Cal. App. 4th 156 (2003).................................................................... 30, 31

*Lovejoy v. Bank of Am., N.A.*,
  No. C 13-1638 DMR, 2013 WL 3360898 (N.D. Cal. July 3, 2013)................. 47

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007 .......................................................................... 24

*Malpas v. State*,
  116 Md. App. 69, 84-86 (1997) ..................................................................... 38

*Matter of John Doe Trader No. One*,
  894 F.2d 240 (7th Cir. 1990)......................................................................... 39

*McCormack v. Herzog*,
  788 F.3d 1017 (9th Cir. 2015)....................................................................... 41

*McNally v. United States*,
    483 U.S. 350 (1987) ........................................................................................ 6

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*,
    30 F. Supp. 2d 1182 (D. Ariz. 1998) ........................................................... 28

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*,
    306 F.3d 806, 813 (9th Cir. 2002) .......................................................... 39, 44

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2002) ...................................................................... 5

*Mnemonics, Inc. v. Max Davis Assocs., Inc.*,
    808 So. 2d 1278 (Fla. 5th DCA 2002) ........................................................ 19

*Monterey Plaza Hotel Ltd. P'ship v. Local 483 of the Hotel Emps. & Rest. Emps.*
    *Union*,
    215 F.3d 923 (9th Cir. 2000) ........................................................................ 8

*Morningstar v. State*,
    428 So. 2d 220 (Fla. 1982) .......................................................................... 37

*Nat'l Coal. Gov't of the Union of Burma v. Unocal, Inc.*,
    176 F.R.D. 329 (C.D. Cal. 1997) ................................................................ 42

*Nat'l Org. for Women, Inc. v. Scheidler*,
    510 U.S. 249 (1994), *reh'g denied*, 510 U.S. 1215 (1994) ......................... 4

*Neder v. United States*,
    527 U.S. 1 (1999) .......................................................................................... 6

*Ne. Women's Ctr., Inc. v. McMonagle*,
    868 F.2d 1342 (3d Cir. 1989) ....................................................................... 6

*O'Laskey v. Sortino*,
    224 Cal. App. 3d 241 (1990) ...................................................................... 32

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
    280 F.3d 278 (3d Cir. 2002) ............................................................ 41, 42, 43

*Pasquantino v. United States*,
    544 U.S. 349 (2005) ................................................................................... 5, 6

*Pearson v. Ford Motor Co.*,
    694 So. 2d 61 (Fla. 1st DCA 1997) ............................................................ 20

*Pettus v. Cole*,
    49 Cal. App. 4th 402 (1996) ....................................................................... 47

*Pitt Sales, Inc. v. King World Prods., Inc.*,
 383 F. Supp. 2d 1354 (S.D. Fla. 2005) ................................................................. 20, 21, 22, 23

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
 945 F. Supp. 1355 (D. Or. 1996) .......................................................................................... 4, 5

*Planned Parenthood Arizona, Inc. v. Brnovich*,
 No. CV-15-01022-PHX-SPL, 2016 WL 1158890, (D. Ariz. Mar. 23, 2016) ...................... 40

*Presidio Golf Club v. Nat'l Park Serv.*,
 155 F.3d 1153 (9th Cir. 1988) ............................................................................................. 40

*Pub. Serv. Co. of Colo. v. Van Wyk*,
 27 P.3d 377 (Colo. 2001) (en banc) ..................................................................................... 20

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
 993 F.2d 800 (11th Cir. 1993) ............................................................................................. 41

*Reinhardt v. Gemini Motor Transport*,
 879 F. Supp. 2d 1138 (E.D. Cal. 2012) ............................................................................... 15

*Rylewicz v. Beaton Services Ltd.*,
 698 F. Supp. 1391 (N.D. Ill. 1988) ....................................................................................... 5

*Sanchez-Scott v. Alza Pharm.*,
 86 Cal. App. 4th 365 (2001), *as modified* (Jan. 29, 2001) ............................................... 45

*Sanders v. Am. Broad. Cos.*,
 20 Cal. 4th 907 (1999) ......................................................................................................... 32

*Sarete, Inc. v. 1344 U Street Ltd. P'ship*,
 871 A.2d 480 (D.C. App. 2005) ........................................................................................... 20

*Schauer v. Mandarin Gems of Cal.*,
 125 Cal. App. 4th 949 (2005) .............................................................................................. 18

*Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*
 806 F.2d 1393 (9th Cir. 1986) ............................................................................................... 5

*Sedima, S.P.R.L. v. Imrex Co.*,
 473 U.S. 479 (1985) ............................................................................................................... 4

*Shiffman v. Empire Blue Cross & Blue Shield*,
 681 N.Y.S.2d 511 (N.Y. App. Div. 1998) ............................................................................ 23

*Simonian v. Fowler Unified Sch. Dist.*,
 473 F. Supp. 2d 1065 (E.D. Cal. 2007) ................................................................................ 47

*Sleep Sci. Partners v. Lieberman*,
 No. 09-04200 CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) ................................. 14, 30

*Snyder v. Phelps*,
    562 U.S. 443 (2011) (Breyer, J. concurring)..................................................................... 29

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999)................................................................................................ 24

*Spinedex Phys. Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282,
    1292 (9th Cir. 2014)........................................................................................................... 42

*Spinks v. Equity Residential Briarwood Apartments*,
    171 Cal. App. 4th 1004 (2009)..................................................................................... 17, 18

*State v. Sarantopoulos*,
    604 So. 2d 551 (Fla. 2d DCA 1992) ................................................................................. 23

*SunPower Corp v. Solarcity Corp.*,
    No. 12-cv-00694-LHK, 2012 WL 6160472 (S.D. Cal. Aug. 5, 2013) ................................ 7

*Sussman v. Am. Broad. Cos.*,
    186 F. 3d 1200 (9th Cir. 1999) ......................................................................................... 12

*Tauber v. Quan*,
    938 A.2d 724 (D.C. 2007)................................................................................................. 16

*Turnbull v. Am. Broad. Cos.*,
    No. CV 03-3554, 2005 WL 6054964, at *6 (C.D. Cal. Mar. 7, 2005) ...................... 31, 35, 45

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996).......................................................................................................... 41

*United States v. Ali*,
    620 F. 3d 1062 (9th Cir. 2010).......................................................................................... 7

*United States v. Della Rose*,
    278 F. Supp. 2d 928 (N.D. Ill. 2003) ................................................................................ 9

*United States v. Jaensch*,
    678 F. Supp. 2d 421 (E.D. Va. 2010)................................................................................. 9

*United States v. Lew*,
    875 F.2d 219 (9th Cir. 1989)............................................................................................. 6

*United States v. Mahaffy*,
    693 F.3d 113 (2d Cir. 2012).............................................................................................. 8

*United States v. Mullins*,
    992 F.2d 1472 (9th Cir. 1993)........................................................................................... 7

*United States v. Rashwan*,
    328 F.3d 160 (4th Cir. 2003)............................................................................................. 9

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*United States v. Shotts*,
   145 F.3d 1289 (11th Cir. 1998)................................................................................. 8

*United States v. Villarreal*,
   253 F.3d 831 (5th Cir. 2001)................................................................................... 9

*United States v. Villeda*,
   Crim. No. B-90-44 (WWE), 1990 U.S. Dist. LEXIS 17794 (D. Conn. Nov. 20,
   1990) ........................................................................................................................ 9

*United States v. Zemek*,
   634 F.2d 1159 (9th Cir.1980).................................................................................. 6

*United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of
   Am.*,
   919 F.2d 1398 (9th Cir. 1990)........................................................................... 41, 42

*Vanderbeek v. Vernon*,
   50 P.3d 866 (Colo. 2002) ...................................................................................... 20

*Vera v. O'Keefe*,
   No. 10-CV-1422-L(MDD), 2012 WL 3263930 (S.D. Cal. Aug. 9, 2012) ........................ 31, 44

*W. Distrib. Co. v. Diodosio*,
   841 P.2d 1053 (Colo. 1992) (en banc) .................................................................... 15

*Warth v. Seldin*,
   422 U.S. 490 (1975)................................................................................................ 41

*Webber v. Inland Empire Invs.*,
   74 Cal. App. 4th 884 (1999)................................................................................... 14

*Wilkins v. Nat'l Broad. Co.*,
   71 Cal. App. 4th 1066 (1999)......................................................................... 32, 33, 44

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008).................................................................................. 25

*Winselmann v. Reynolds*,
   690 So. 2d 1325 (Fla. 3d DCA 1997) ..................................................................... 21

*Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*,
   422 S.W.3d 821 (Tex. Ct. App. 2014) ..................................................................... 15

*Wyatt v. Union Mortg. Co.*,
   24 Cal. 3d 773 (1979) (*en banc*) ........................................................................... 15

*Xereas v. Heiss*,
   933 F. Supp. 2d 1 (D.D.C. 2013) ............................................................................ 15

*Younan v. Equifax Inc.*,
  111 Cal. App. 3d 498 (1980) ................................................................................... 15

*Young v. Harrison*,
  284 F.3d 863 (8th Cir. 2002) .................................................................................. 20

*Zacchini v. Scripps-Howard Broad. Co.*,
  433 U.S. 562 (1977) ............................................................................................... 29

*Zimmerman v. HBO Affiliate Grp.*,
  834 F.2d 1163 (3d Cir.1987) ..................................................................................... 5

**STATUTES**

18 U.S.C.
  § 1028 ...................................................................................................................... 8, 10
  § 1028(a)(1) ................................................................................................................ 8, 9
  § 1028(a)(2) .................................................................................................................... 8
  § 1028(a)(3) ................................................................................................................... 10
  §1028(a)(7) ............................................................................................................... 8, 10
  § 1962 ........................................................................................................................... 4
  § 1962(c) ....................................................................................................................... 4
  § 1962(e) ..................................................................................................................... 24
  § 2511 ..................................................................................................................... 13, 24
  § 2511(1) ..................................................................................................................... 12
  § 2511(2)(d) ................................................................................................................ 12

28 U.S.C. § 1367(c)(3) ................................................................................................ 13

Fed R. Civ. P. 12(b)(6) ................................................................................................. 3

Cal. Bus. & Prof. Code § 17200 *et seq.* ..................................................................... 23

Cal. Civ. Code § 3301 ................................................................................................. 20

Cal. Penal Code
  §632 ................................................................................................................... *passim*
  §634 ...................................................................................................................... 17, 35
  §637.2 ....................................................................................................... 17, 24, 34, 35

**OTHER**

Courts and Judicial Proceedings Article of the Maryland Annotated Code, § 10-402 ..................... 24

Florida Criminal Procedure Law, Title XLVII § 934 ................................................... 24

*Restatement of Contracts* § 578, cmt. a (1932) ........................................................... 17

*Restatement (Second) of Contracts* § 351 (1979) ........................................................ 19

**INTRODUCTION**

Defendants hatched an elaborate tortious scheme in which they created a fake fetal tissue procurement company; used that company to infiltrate private reproductive health care conferences; entered into confidentiality agreements that they had no intention of abiding by; secretly filmed Plaintiffs' staff at private conferences, clinics, and meetings; heavily edited their surreptitiously obtained footage into misleading videos that falsely accused Planned Parenthood of breaking the law; and released those videos, exposing law-abiding medical staff to a storm of threats and harassment.  The ringleaders of this fraudulent scheme then hopped on the national airways to boast about what they had done.  Now, however, called to account for their conduct, Defendants attempt to avoid liability by brushing off the detailed allegations of wrongdoing in Plaintiffs' First Amended Complaint ("FAC") (ECF No. 59) and misstating relevant legal standards.  Their motion to dismiss should be denied.

**FACTUAL STATEMENT**

Defendants are anti-abortion extremists, with a history of participating in harassment and threats against abortion clinics and providers.  FAC ¶¶ 29-36, 47.  Beginning in 2012, Defendants Daleiden and Newman developed a scheme targeted at Planned Parenthood.  *Id.* ¶¶ 56-58.  Their plan was to infiltrate private abortion provider conferences, arrange meetings with Planned Parenthood staff, and bait that staff into conversations about abortion practices and fetal tissue donation that Defendants would secretly videotape.  *Id.* ¶¶ 56-75.

To perpetrate the scheme, Defendants set up a fake California corporation called BioMax Procurement Services, LLC ("BioMax").  FAC ¶ 61.  They developed phony promotional material that touted BioMax's mission to "facilitate world-changing discoveries" through tissue procurement.  *Id.* ¶¶ 88-89.  They made up fake names and fake titles representing themselves as executives of BioMax.  *Id.* ¶¶ 31, 35, 36, 38-40, 68, 83, 85-89.  They obtained fake government identifications that they presented at various secure conferences to mask their true identities and thereby gain entrance where they were not welcome.  *Id.* ¶¶ 86-87.

Defendants' scheme began in earnest when they used their fake company and fake IDs to infiltrate the private and highly secure National Abortion Federation ("NAF") 2014 annual

conference in San Francisco.  FAC ¶¶ 65-68.  NAF is a membership organization whose mission is

to ensure women's access to safe, legal abortion.  *Id.* ¶ 65.  NAF's annual conferences offer an

opportunity for abortion providers to meet without fear of harassment, intimidation, or violence.  *Id.*

¶ 66.  Attendees include clinicians, educators, and thought leaders in the pro-choice field.  *Id.*

In light of the history of violence against and harassment of abortion providers, NAF

employs extensive security measures to keep its attendees safe: even the date and locations of NAF

meetings are kept private.  FAC ¶¶ 66-67.  NAF conferences are not open to the public.  *Id.*

Companies that wish to attend as exhibitors must apply and sign agreements representing that they

are legitimate organizations with goals that are consistent with those of NAF.  *Id.*  Attendees are

also required to sign strict confidentiality agreements, present photo identification, and wear

identification badges that are checked by NAF's on-site security team.  *Id.* ¶ 67.  Because of the

security protocols, attendees at NAF conferences have confidence that other participants also are

attending the conferences to enhance the quality and safety of reproductive health care services and

that conversations occurring will be confidential and will not be videotaped or broadcast to the

public.  *Id.* ¶¶ 70, 240, 247.

Consistent with their plan, Defendants registered BioMax as an exhibitor at the 2014 NAF

conference.  Defendants signed NAF's confidentiality and non-disclosure agreements.  FAC ¶ 68.

Posing as BioMax representatives, they lured Plaintiffs' staff into conversations about abortion

practices and fetal tissue donation.  *Id.* ¶¶ 69-71, 90.  All the while, Defendants were secretly

filming every moment of the conference and every interaction.  *Id.* ¶ 68.  Plaintiffs' staff had no

idea that they were being filmed and certainly never consented to be filmed.  *Id.* ¶¶ 68, 70.

Following their successful penetration of the highly secure NAF conference, Defendants

leveraged their new contacts to gain entry to PPFA's private conferences.  FAC ¶¶ 81-85, 98-103,

105.  Like NAF, PPFA hosts conferences for their staff that provide a safe space to discuss their

reproductive health care work.  *Id.* ¶¶ 78-79.  PPFA employs security measures to protect the safety

and privacy of conference participants.  *Id.* ¶¶ 79, 82, 84, 99, 100, 105, 107.  In particular, one

PPFA conference (North American Forum on Family Planning) does not allow anyone to attend

who is not known to PPFA.  *Id.* ¶ 84.  Defendants parlayed the contacts they made at the NAF

conference to satisfy PPFA's requirements and infiltrate its conferences as well. *Id.* ¶¶ 69, 77.

Defendants infiltrated three Planned Parenthood conferences, presenting fake identification, and misrepresenting their identities and purpose. Defendants registered BioMax as an exhibitor and entered into written agreements with PPFA. FAC ¶¶ 81-82, 98-99, 105-06, 178. These agreements required that exhibits be "educational and informative, emphasizing information about products and services useful to the registrants' practice and beneficial to the interests of their clients and patients." *Id.* ¶¶ 82, 99, 178. The agreements also required exhibitors to comply with "all applicable federal, state, and local laws and regulations in performance of its respective obligations pursuant to this Agreement, including, without limitation, laws related to fraud, abuse, privacy . . . [and] confidentiality." *Id.* ¶¶ 82, 99, 105, 178.

Through further fraudulent misrepresentations, Defendants arranged meetings at Planned Parenthood heath centers and with high level staff. Through their fraud Defendants gained access to secure patient treatment and laboratory space. FAC ¶¶ 109, 111. Defendants evaded the security protocols at one affiliate by presenting fake identification. *Id.* ¶¶ 112-113. Defendants again signed an express non-disclosure agreement, promising to not disclose confidential information, all the while wearing hidden video cameras and filming staff members without their knowledge or consent. *Id.* ¶¶ 114-116.

Using the illegally obtained recordings, Defendants created a smear campaign composed of heavily edited deceptive short videos. Predictably, Defendants' videos led to threats of violence and even real acts of violence. FAC ¶¶ 130, 135, 138, 140, 142, 143. Plaintiffs suffered substantial damages from Defendants' scheme, including costs to increase security at their conferences and health centers and for their medical providers to prevent future similar incidences. *Id.* ¶ 143.

## LEGAL STANDARDS FOR MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)

A complaint must provide "fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (citation and quotes omitted). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

1   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially

2   plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

3   inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

4   **I.     PLAINTIFFS STATE A CLAIM FOR VIOLATIONS OF THE CIVIL RICO**

5   **STATUTE**

6        The elements of a RICO claim are (1) conduct; (2) of an enterprise; (3) through a pattern; (4)

7   of racketeering activity (i.e., predicate acts).  18 U.S.C. § 1962(c).  Defendants attack this claim on

8   two grounds: (1) Plaintiffs lack standing and (2) Plaintiffs have not sufficiently alleged any

9   predicate act.

10       **A.     Plaintiffs Have Adequately Pled They Suffered Injury To "Business Or**

11       **Property"**

12       RICO requires a plaintiff to allege injury to their "business or property."  *See Sedima,*

13   *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495-96 (1985).  The FAC amply satisfies this requirement.

14   Because of Defendants' conduct, Plaintiffs' business operations have been disrupted.  FAC ¶¶ 142,

15   151, 161.  This includes interruption of delivery of services to their clients and the increased

16   operational costs to ensure the safety of Planned Parenthood staff and patients.  *Id.* ¶¶ 142-43.

17   Plaintiffs have also suffered injury to their property.  PPFA's website was hacked and those

18   responsible directly referenced Defendants' videos and accusations about Planned Parenthood.  *Id.*

19   ¶ 144.  Defendants' acts have also interfered with business relations, as vendors have terminated

20   their relationship with Plaintiffs as a result of the smear campaign.  *Id.* ¶ 145.

21       The type of injuries Plaintiffs allege are recognized by courts as injury to "business or

22   property," rather than injuries flowing from reputational or personal injuries, sufficient to confer

23   RICO standing under 18 U.S.C. § 1962.  Allegations of RICO conduct leading to interruption of

24   services or increased cost of doing business is sufficient to confer RICO standing.  *See Nat'l Org.*

25   *for Women, Inc. v. Scheidler*, 510 U.S. 249, 255-56 (1994), *reh'g denied*, 510 U.S. 1215 (1994) (at

26   the pleading stage, allegations that anti-abortion activists injured business and property interests by

27   inducing clinic staff to stop working and clinic patients to obtain medical services elsewhere

28   sufficient to confer standing); *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of*

1    *Life Activists*, 945 F. Supp. 1355, 1383 (D. Or. 1996) (decreased business or increased cost of doing

2    business sufficient to confer standing).  Interference with business relations is also injury sufficient

3    to confer RICO standing.  *See Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (*en banc*) (loss of

4    employment and employment opportunities was injury to "business  or property" within the

5    meaning of RICO); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 n.4 (9th Cir. 2002)

6    (interference with business relations constitutes property interest sufficient for RICO).

7         Defendants rely on *Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992) to argue that the types of injury

8    alleged in the FAC do not confer standing under RICO.  *Doe* is not nearly as broad as Defendants

9    claim.  As the Ninth Circuit explained in *Diaz*, *Doe* merely holds that where a plaintiff fails to

10   allege harm to any property interest valid under the relevant state law, there is no standing under

11   RICO.  It is thus inapposite here because this Circuit has recognized the injuries alleged in the

12   FAC—interference with contract and prospective business relations—as property injuries. 420 F.3d

13   at 900.[1]

14   ### B.    Plaintiffs Have Sufficiently Pled Wire And Mail Fraud As Predicate Acts For The RICO Claim

15

16        Plaintiffs allege mail and wire fraud as predicate acts for their RICO claim.  FAC ¶ 157.

17   The elements for a mail fraud claim are that defendants:  (1) formed a scheme or artifice to defraud;

18   (2) used or caused the use of the U.S. mails in furtherance of the scheme; (3) with the specific intent

19   to deceive or defraud.  *Schreiber Distrib. Co. v. Serv–Well Furniture Co*.,  806 F.2d 1393, 1399-

20   1400 (9th Cir. 1986) (citation omitted).[2]  Plaintiffs allege that (1) Defendants formed a scheme or

21

22   [1] Defendants also cite *Rylewicz v. Beaton Services Ltd*., 698 F. Supp. 1391, 1395-96 (N.D. Ill.

23   1988), for the proposition that damages for conducting an investigation fail to state a RICO injury. However, *Rylewicz* is non-precedential and was decided prior to the Supreme Court's decision in

24   *Scheidler*.  Moreover, the three cases relied on by the *Rylewicz* court all involved claims for mental distress.  *See Grogan v. Platt*, 835 F.2d 844, 846–47 (11th Cir.1988) (generally noting that damages

25   for personal injuries, such as mental anguish, fall outside the rubric of "business or property"); *Zimmerman v. HBO Affiliate Grp., ACS*, 834 F.2d 1163, 1169 (3d Cir.1987) (plaintiff only alleged

26   injury in the nature of mental distress); and *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir.1987) (Patel, J., concurring) (noting that where allegations were "strictly of a political and personal

27   nature," plaintiff fails to invoke the purview of RICO).

     [2] Wire fraud's elements were mirrored after the elements of mail fraud, and the elements of the two

28   are essentially the same, except for the medium associated with the offense.  *See Pasquantino v.* (footnote continued)

1   artifice to defraud by setting up a sham company, BioMax, to surreptitiously videotape Plaintiffs as

2   part of their scheme (*id.* ¶ 157); (2) used U.S. mail and/or interstate wire facilities in furtherance of

3   the scheme (*id.* ¶¶ 157-58); and (3) did so with the intent to deceive or defraud Plaintiffs into

4   granting them access to Planned Parenthood conferences, clinics and offices. (*id.* ¶¶ 159).  These

5   allegations satisfy all elements of a mail and/or wire fraud.

6           Defendants attempt to graft one more requirement onto the element of wire fraud: that

7   Plaintiffs must allege Defendants "intended to acquire, or did acquire any 'money or property' from

8   Plaintiffs within the meaning of [the wire and mail fraud statutes]."  Defendants' Motion to Dismiss

9   ("Mot.,") (ECF No. 79), 5.  That is not correct.  The cases Defendants cite merely note that the word

10  "defraud" in mail or wire fraud refers to "wronging one in his property rights."  *See Cleveland v.*

11  *United States*, 531 U.S. 12, 19 (2000) (citing *McNally v. United States*, 483 U.S. 350, 358-59

12  (1987)); *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989).[3]  These cases require nothing

13  more than allegations that a plaintiff was wronged in his or her property rights, which the FAC

14  contains in abundance.

15          The right to carry on one's business is a recognized property right.  *Ne. Women's Ctr., Inc.*

16  *v. McMonagle*, 868 F.2d 1342, 1350 (3d Cir. 1989) (affirming a RICO judgment against anti-

17  abortion activists, holding that "[r]ights involving the conduct of business are property rights");

18  *United States v. Zemek*, 634 F.2d 1159, 1174 (9th Cir.1980) (the right to operate one's business is a

19  property right).  Defendants' scheme was carried out with the clear intention of shutting down (or at

20  least significantly interrupting) Plaintiffs' business of providing reproductive and health care

21  services, including abortions, to women across the country.  FAC ¶¶ 1, 8, 10, 19-28, 42-45, 56, 124,

22

23  _____

24  *United States*, 544 U.S. 349, 355 n.2 (2005) ("we have construed identical language in the wire and
    mail fraud statutes in *pari materia*"), *citing Neder v. United States*, 527 U.S. 1, 20 (1999), *and*

25  *Carpenter v. United States*, 484 U.S. 19, 25 and n.6 (1987).

26  [3] Defendants also cite to *Cleveland* to argue that since they paid their conference registration fees,
    Plaintiffs did not suffer injury to property under wire fraud.  Mot., 6-7.  This is a red herring since

27  Plaintiffs never dispute that the registration fees were paid; rather, it has sufficiently alleged *other*
    injuries to business and property including increased security costs, that give rise to the wire/mail

28  fraud violation.

125, 131, 142, 150.

Defendants wander further afield and argue that Plaintiffs' allegation that Defendants acquired intangible property from Plaintiffs does not satisfy Defendants' manufactured fourth element for mail fraud.  Mot., 5.  As demonstrated above, there is no such requirement.  But if there were, Plaintiffs' allegations that Defendants obtained their confidential information would satisfy that requirement.  The Supreme Court recognized that "[c]onfidential business information" qualifies as property under the mail and wire fraud statutes.  *Carpenter v. United States*, 484 U.S. 19, 26 (1987).  Consistent with *Carpenter*, this Circuit has gone on to recognize that intangible property rights give rise to a cause of action under RICO with wire/mail fraud as predicate acts. *United States v. Ali*, 620 F.3d 1062, 1068 (9th Cir. 2010) (rejecting defendants' argument that only "traditionally recognized forms of property" constitute property under the mail and wire fraud statutes, and holding that the right to be paid constitutes a cognizable property interest); *United States v. Mullins*, 992 F.2d 1472, 1477 (9th Cir. 1993) (upholding district court's conviction of travel agent's mail and wire fraud arising out of conspiracy to defraud airlines by electronically transferring frequent flyer miles to fictitious accounts because the scheme resulted in deprivation of things of value).

Defendants argue that contrary to *Carpenter* and its progeny, Plaintiffs cannot claim injury to intangible property as the basis for a wire fraud claim because any such claims would be preempted by the California Uniform Trade Secrets Act (CUTSA) or equivalent statutes.  Mot., 5-6. Defendants misunderstand the trade secret preemption doctrine.  Plaintiffs are unaware of, and Defendants have failed to cite to, any case law that supports the proposition that CUTSA would preempt a federal statutory claim, as opposed to a state common law claim.  For example, Defendants cite to *SunPower Corp v. Solarcity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at **5-6 (S.D. Cal. Aug. 5, 2013), for the proposition that the CUTSA preempts state-law rights in confidential information, even if the information does not qualify as trade secrets.  Mot., 6. However, none of the dozens of cases cited in *SunPower Corp.* involve preemption of federal statutory claims.  Furthermore, while CUTSA limits what claims a plaintiff can bring with respect to misappropriation of trade secrets, CUTSA does not state that has no *property* interest in non-

1  trade secret confidential information.  Under *Carpenter*, information may qualify as confidential

2  even if it does not constitute a trade secret.  *United States v. Mahaffy*, 693 F.3d 113, 135 (2d Cir.

3  2012).

4        Defendants also argue that Plaintiffs have not alleged that property was transferred "*from*

5  *Plaintiffs to Defendants.*"  Again, this is not a requirement of wire fraud.  *Lancaster Community*

6  *Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 406 (9th Cir. 1991) on which

7  Defendants rely, did not so hold.  Rather, the court held that "none of the action taken by defendants

8  constitute fraud" and that the injury to property alleged—"market share," or gaining customers—

9  was not "property" for purposes of wire fraud.  *Id.* at 406.[4]

10       **C.**    **Plaintiffs Have Sufficiently Pled The Federal Identity Theft Statute, 18 U.S.C.**
                 **§ 1028, As The Predicate Act For The RICO Claim**

11

12        As an additional predicate act for their RICO claim, Plaintiffs allege Defendants violated the

13  Federal Identity Theft statute by producing or transferring false identification documents and by

14  possessing and using, without authority, the name of a real person.[5]  FAC ¶ 160.  Defendants argue

15  that Plaintiffs' allegations fail because they are no more than "threadbare recitals of the elements."

16  Mot., 8-9.  But Defendants ignore the specific factual allegations that support the claim.  The FAC

17  alleges that Defendants embarked upon an orchestrated scheme to infiltrate private, highly secure

18  conferences and health centers which required the use of fake identification.  FAC ¶¶ 56, 60, 62, 84-

19  86.  Contrary to Defendants' argument (Mot., 8), such allegations are sufficient at the pleading stage

20  for the court to infer that Defendants played an active role in obtaining the fake IDs they used.

21  *Twombly*, 500 U.S. at 556 (pleading standards do not require "detailed factual allegations," but only

22

23  _____

24  [4] Defendants' other authorities are similarly inapposite.  *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of the Hotel Emps. & Rest. Emps. Union*, 215 F.3d 923, 926-27 (9th Cir. 2000) (a business entity's customers or prospective customers do not constitute a "property interest" protected by the
25  mail and wire fraud statutes); *United States v. Shotts*, 145 F.3d 1289, 1293 (11th Cir. 1998) (bail bond licenses not considered property).

26  [5] 18 U.S.C. § 1028(a)(1)-(2) makes it unlawful to knowingly produce or transfer a false identification document without lawful authority. 18 U.S.C. § 1028(a)(7) makes it unlawful to
27  transfer, possess, or use a means of identification of another person without lawful authority and with the intent to commit a crime.

28

"enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of the claim). Defendants also argue that the FAC does not state specific facts indicating that the production, transfer, or use of the identification documents was in or affected interstate commerce. Mot., 9. But they point to no authority that such allegations are required at the pleading stage. Tellingly, two of Defendants' three cases found a lack of evidence of the requisite elements after a full trial. Mot., 9. (citing *United States v. Della Rose*, 278 F. Supp. 2d 928 (N.D. Ill. 2003); *United States v. Villarreal*, 253 F.3d 831 (5th Cir. 2001)). These cases tell the Court nothing about what Plaintiffs must plead.[6]

Defendants next argue that Plaintiffs have not alleged that any of the Defendants "actually produced" the false identification documents. Mot., 9. This is irrelevant: "Whether or not [defendant] physically produced the false documents himself is irrelevant to his conviction" under Section 1028(a)(1). *United States v. Rashwan*, 328 F.3d 160, 165 (4th Cir. 2003) (defendant violated Section 1028 by providing false information to the DMV with the intent that it produce false identification); *United States v. Jaensch*, 678 F. Supp. 2d 421, 428 (E.D. Va. 2010) (defendant violated Section 1028 by filling a purchase order to obtain false identification).

Finally, Defendants argue that Plaintiffs fail to allege that Defendants used the name of a specific individual. Mot., 9-10. Plaintiffs allege that an unnamed co-conspirator using the name Brianna Allen posed as a representative of BioMax at multiple conferences (FAC ¶¶ 68, 178), and that a newspaper has identified a former classmate of Defendant Daleiden with the name "Brianna Allen" who was pro-choice. *Id.* ¶ 38. Plaintiffs thus plausibly allege Defendants used the name of a specific person without her authorization. The fact that Defendants can hypothesize a different explanation does not negate the sufficiency of Plaintiff's pleading. Defendants also argue that Brianna Allen's name was used only once and therefore cannot support the existence of a racketeering enterprise. Mot., 10-11. This is untrue. The FAC alleges multiple improper usages.

---

[6] The third case Defendants cite is similarly unhelpful, because there the court did not reach the issue of whether the defendant's conduct affected interstate commerce since the government had pleaded alternative jurisdictional grounds. *United States v. Villeda*, Crim. No. B-90-44 (WWE), 1990 U.S. Dist. LEXIS 17794 (D. Conn. Nov. 20, 1990).

1    FAC ¶ 64 (an individual using the name "Brianna Allen" attended the Reproductive Health

2    Professional Conference); *id.* ¶ 65 (an individual using the name Briana Allen attended the NAF

3    conference in April 2014).  Finally, Defendants argue that the FAC does not allege a "pattern" of

4    racketeering activity because it fails to allege that continued criminal activity ¶ , 11), ignoring

5    allegations in the FAC that the criminal enterprise is ongoing (FAC ¶ 152).[7]

6          **D.      Plaintiffs Have Sufficiently Pled That Injuries To Plaintiffs Were Proximately
7                    Caused By The RICO Acts**

8          Defendants argue that the RICO claim fails because Plaintiffs cannot allege a direct relation

9    between Plaintiffs' injuries and Defendants' conduct and thus Plaintiffs do not have standing.  Mot.,

10   11. (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 69 (1992)).  But, since *Holmes*, the

11   Supreme Court has clarified what this standard requires (and doesn't require).  In *Bridge v. Phoenix*

12   *Bond & Indemnity Co.*, 553 U.S. 639, 643-44 (2008), bidders at a county tax lien auction alleged

13   they were directly harmed by other bidders' fraudulent scheme to win more bids at the auction.

14   Defendants argued plaintiffs could not establish proximate causation because even though the

15   county may have relied on defendants' misrepresentations, plaintiffs did not.  *Id.* at 653.  The Court

16   rejected this argument, and held that the "alleged injury—the loss of valuable liens—is the direct

17   result of petitioners' fraud.  ***It was a foreseeable and natural consequence of petitioners' scheme***

18   ***to obtain more liens for themselves that other bidders would obtain fewer liens***."  *Id.* at 658

19   (emphasis added).

20         Defendants argue that the proximate causation requirement is not met because a "complex

21   causal chain of events" exist between Defendants' acts and the injuries that Plaintiffs sustained.

22   Mot., 11-12.  Defendants argue intervening third parties such as "legislative bodies, internet

23   commentators, vandals and commercial vendors took adverse actions toward Plaintiffs" and thus

24   break the chain of proximate causation.  *Id.* at 12.  For purposes of standing, Plaintiffs have

25   _____

26   [7] Defendants repeatedly argue that the FAC does not satisfy disjunctive sub-sections of Section
     1028, including sub-sections 1028(a)(3) and the state felony section of 1028(a)(7).  Mot., 8, 9, 10.
27   This proof is not required for a violation of the statute because each sub-section represents a
     different violation.

28

sufficiently pled injury which stem directly from Defendants' acts, without any intervention of third parties.

Plaintiffs' alleged injuries (FAC ¶¶ 142-47) are the direct, foreseeable and natural consequence of Defendants' fraudulent acts (*Id.* ¶¶ 56-62, 64, 65, 68-72, 75, 76, 80, 81, 83-95, 97-98, 101-109, 111, 113, 115, 118-122, 125, 126, 128, 129, 133, 134, 137-139, 141), particularly given the long-standing history of violence, intimidation, and harassment against Planned Parenthood and other abortion providers (*id.* ¶¶ 46-55). Defendants targeted Planned Parenthood, and all Plaintiffs suffered damages to their businesses as a foreseeable and natural consequence of Defendants' scheme. All Plaintiffs thus have standing to bring a RICO claim. The FAC further alleges that staff representatives from each of the Plaintiff affiliates—including PPSBVSLO, which Defendants single out, for not having received any wire communications or payments from Defendants (Mot., 13)—attended the meetings and may have been taped. FAC ¶¶ 212, 227, 233. All Plaintiff affiliates incurred injury to their business, because the cost of doing business (e.g., security costs) increased significantly as a result of the Defendants' fraudulent scheme.

Defendants' authorities are distinguishable. *See* Mot., 12. In *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), and *Hemi Group LLC v. City of New York*, 559 U.S. 1 (2010), the Court rejected RICO claims on the basis that defendants realized their fraudulent scheme and derived a benefit regardless of whether the plaintiffs were harmed. In contrast, here, the benefit Defendants sought was to harm PPFA and its affiliates. There is no danger here that there will be multiple recoveries or that another party is better situated to vindicate the RICO violation.[8] Moreover, in *Anza*, it was the difficulty in ascertaining the amount of plaintiffs' damages caused by defendants' unlawful acts that led the Court to conclude there was a "discontinuity between the RICO violation and the asserted injury." 547 U.S. at 459 ("Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost

---

[8] Individual staff who relied on Defendants' fraud may have claims, including invasion of privacy claims. However, they did not incur and cannot recover the RICO damages sought.

1   sales were the product of National's decreased prices."). *Id*.  Here, Plaintiffs allege that threats to

2   PPFA and its affiliates spiked nine-fold in the aftermath of the release of videos in mid-July.  FAC

3   ¶ 142.  The correlation between the RICO violation and the injuries is direct and obvious.[9]

4   **II.   PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE FEDERAL**

5   **       WIRETAP ACT**

6          To state a claim under the Federal Wiretap Act, Plaintiffs must allege that Defendants

7   intentionally intercepted oral communications "for the purpose of committing any criminal or

8   tortious act" 18 U.S.C. § 2511(1), (2)(d).  Defendants argue that this claim fails because Plaintiffs

9   do not allege that Defendants intercepted communications for the purpose of committing an

10  independent tortious or criminal act.  Mot., 15.  But this is not so.  Plaintiffs allege that Defendants

11  secretly taped Plaintiffs' staff to further the RICO conspiracy and to violate Plaintiffs' staff's

12  privacy (FAC ¶¶ 164-65; 169(a), (b))—all of which are separate torts or crimes.  Defendants' cited

13  authorities are inapposite because in those cases the plaintiffs failed entirely to allege that the

14  recordings were made for the purpose of committing any other crime or tort.  *Sussman v. Am.*

15  *Broad. Cos.*, 186 F. 3d 1200 (9th Cir. 1999) (plaintiffs fail to allege criminal or tortious purpose

16  separate from act of recording); *Deteresa v. Am. Broad. Cos.,* 121 F.3d 460, 467 n.4 (9th Cir. 1997)

17  (same); *In re Google Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (same);

18  *Henning v. Narconon Fresh Start*, No. 14CV2379 BEN (RBB), 2015 WL 4601690, at *4 (S.D. Cal.

19  July 28, 2015) (purpose of illicit recordings was not criminal or tortious); *In re Intuit Privacy Litig.,*

20  138 F. Supp. 2d 1272, 1278 (C.D. Cal. 2001) (alleged tortious purpose not logically related to

21  wiretapping).

22         Defendants next argue that the claim is deficient because the conduct underlying the RICO

23  and privacy claims took place *before* the recordings were made.  Mot., 16.  This argument makes no

24  sense.  Plaintiffs allege a RICO conspiracy that, at a minimum, spanned from the creation of

25

26  _____

27  [9] Defendants also argue that the First Amendment bars action to collect damages for injuries
    attributable to speech.  Mot., 14.  As discussed elsewhere, the First Amendment does not confer
    immunity to commit tortious or criminal acts giving rise to RICO claims.  *See, infra* Part VII.

28

1   BioMax through the publication of the videos.  FAC ¶ 151.  And the alleged invasions of Plaintiffs'

2   staffs' privacy occurred both simultaneously with the taping (*i.e.*, the taping was an invasion of

3   privacy) and when Defendants published those tapes.  *Id.* ¶ 151.  A simultaneous tortious violation

4   is sufficient for Section 2511.  *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL

5   34517252, at *8 (N.D. Cal. Oct. 9, 2001) (allegation that defendants "intercepted plaintiffs'

6   communications with websites specifically 'to spy' on plaintiffs and collect their personal

7   information without consent or compensation" were sufficient).

8         Furthermore, this Circuit has recognized that invasion of privacy may provide the necessary

9   underlying tort to satisfy the Wiretap Act.  *Deteresa*, 121 F.3d at 467 n.4.  Defendants' citations to

10  cases from circuits which disagree with the Ninth Circuit are therefore irrelevant.  *See Caro v.*

11  *Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("Other circuits appear to have implicitly recognized

12  invasion of privacy as a tort that could provide the necessary intent to bring a recording within the

13  purview of the Wiretap Act").[10]

14        Defendants close their attack on Plaintiffs' two federal claims by arguing that if all of

15  Plaintiffs' federal claims are dismissed, this Court should also dismiss Plaintiffs' state law claims

16  because there is no basis for diversity jurisdiction.  Mot., 16.  Plaintiffs disagree.  Federal courts

17  have discretion to retain jurisdiction over supplemental state law claims even after the federal

18  claims are dismissed.  28 U.S.C. § 1367(c)(3); *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995);

19  *Foster v. Edmonds*, No. C 07-05445 WHA, 2008 WL 4415316, at *4 (N.D. Cal. Sept. 26, 2008).

20  **III.    PLAINTIFFS STATE A CLAIM FOR CIVIL CONSPIRACY**

21        Defendants attack Plaintiffs' claim for civil conspiracy on two grounds.  First, they assert

22  that Plaintiffs have improperly pled conspiracy as a separate cause of action.  Mot., 17.  They're

23  wrong.  Nothing prevents Plaintiffs from alleging civil conspiracy as a separate cause of action, so

24  long as the conspiracy claim can reasonably be tied to an underlying predicate tort.  *See, e.g.*, *City of*

25  

26  ─────────────────────

27  [10] Defendants also argue that Plaintiffs fail to plead a claim under 18 U.S.C. § 2511 because the
    FAC fails to sufficiently allege the underlying RICO and privacy claims.  Mot., 15-16.  For the
    reasons stated in Parts I and XII, Defendants are wrong.

28

1    *Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 212 (2011) (combining conspiracy count with

2    underlying independent tort claim for fraud); *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW,

3    2010 WL 1881770, at *12 n.5 (N.D. Cal. May 10, 2010) (holding that there is no "formal pleading

4    requirement" that plaintiffs must "plead [their] allegations of conspiracy in the sections of the

5    complaint that address the underlying tort").  Defendants' case, *AccuImage Diagnostics Corp. v.*

6    *Terarecon, Inc.*, does not say otherwise; rather, it stands for the basic proposition that a conspiracy

7    claim is inadequate if it fails to "properly put defendants on notice of the conspiracy claims with

8    which they [were] charged."  260 F. Supp. 2d 941, 947-48 (N.D. Cal. 2003).

9        Here, Plaintiffs specifically allege that Defendants conspired to defraud Plaintiffs and have

10   also pled the underlying predicate tort, thus putting Defendants on notice of the conspiracy with

11   which they are charged.  FAC ¶ 173 (alleging that Defendants engaged in a conspiracy to (1) set up

12   a sham company, BioMax (2) make false representations about BioMax and BioMax's purposes in

13   attending Plaintiffs' conferences and clinics, (3) providing false identities in order to gain access to

14   Plaintiffs' conference and clinics); *see also id.* ¶¶ 56-58, ¶ 62 (discussing the recruitment and

15   training of additional co-conspirators to be "undercover" agents).

16       Second, Defendants contend Plaintiffs' allegation that BioMax and CMP are alter egos of

17   the individual Defendants and of each other (FAC ¶ 41) defeats Plaintiffs' conspiracy claim because

18   a corporation cannot conspire with itself.  In other words, Defendants are attempting to invoke the

19   "single-entity rule."  This won't wash.  The alter-ego rule is doctrine that protects the victims of

20   wrongdoing by preventing the harm-doer from shielding itself from the consequences of his or her

21   acts by using a sham corporation.  *Webber v. Inland Empire Invs.*, 74 Cal. App. 4th 884, 901 (1999)

22   ("[A]lter ego is used to prevent a corporation from using its statutory separate corporate form as a

23   shield from liability only where to recognize its corporate status would defeat the rights and equities

24   of third parties.").  That rule cannot be turned on its head to allow the wrong doers to *avoid*

25   responsibility for their tortious conspiracy.  An alter ego theory may not be used to "allow[] the

26   persons who actually control the corporation to disregard the corporate form."  *Capon v. Monopoly*

27   *Game LLC*, 193 Cal. App. 4th 344, 357 (2011).

28       The single-entity rule "does not apply in cases where directors and officers of a corporation

directly order, authorize, or participate in the tortious conduct" underlying the alleged conspiracy. *AccuImage*, 260 F. Supp. 2d at 947 (citation and quotation marks omitted).  Thus, "[p]ersonal liability, if otherwise justified, may rest upon a 'conspiracy' among the officers to injure third parties through the corporation."  *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 785 (1979). Moreover, non-managing employees or agents of a corporation may be subject to liability for conspiracy where they have an independent duty to "abstain from injuring the plaintiff through express misrepresentation."  *Doctors' Co. v. Super. Ct.*, 49 Cal. 3d 39, 48 (1989).  Here, all individual Defendants had an independent duty to refrain from harming Plaintiffs through their fraudulent conduct.  *See, e.g.*, *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 511 (1980) (emphasizing that "[t]he law imposes the obligation that every person is bound . . . to abstain from injuring the person or property of another or infringing upon any of his rights").

## IV.    PLAINTIFFS STATE CLAIMS FOR BREACH OF CONTRACT

Plaintiffs allege Defendants breached agreements with PPFA (Claim Four), NAF (Claim Five), and PPGC (Claim Fifteen).  To establish a prima facie case for breach of contract, Plaintiffs must plead the existence of a contract between Plaintiffs and Defendants, Defendants' breach, and resulting damages.[11]  The facts alleged in Plaintiffs' complaint are sufficient to state such a claim.

### A.    Plaintiffs' Allegations Regarding The PPFA Conference Agreements Are Sufficient

Defendants entered into written agreements to attend PPFA conferences.  The agreements required that exhibits be "educational and informative" and "beneficial to attendees and required exhibitors to comply with all applicable laws, particularly those related to fraud, privacy and

---

[11] The various agreements at issue contain choice of law provisions specifying the application of Colorado, Florida, District of Columbia, Maryland, and Texas law.  The elements are the same.  *See Reinhardt v. Gemini Motor Transport*, 879 F. Supp. 2d 1138, 1143 (E.D. Cal. 2012); *see also Beck v. Lazard Freres & Co.,* 175 F.3d 913, 914 (11th Cir. 1999) (applying Florida law) (reciting elements for breach of contract); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 7 (D.D.C. 2013) (same); *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. Ct. App. 2014) (same); *B-Line Med., LLC v. Interactive Digital Solutions, Inc.*, 57 A.3d 1041, 1055 (Md. App. 2012) (same); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc) (same).

confidentiality." FAC ¶¶ 82, 99, 105, 178.  Defendants breached the agreements because their

exhibits, which involved a fake company, were in no way educational, informative, or beneficial,

and Defendants broke numerous laws relating to fraud, privacy, and confidentiality.  *Id.* ¶ 179.

Defendants agreed to comply with all terms and conditions of the agreements.  FAC ¶¶ 82,

83, 101, 106. Mot., 18.  Nonetheless, they now contend that only a portion of the contracts they

signed actually applied to them.  Specifically, they argue the requirement that Defendants'

contributions be useful and beneficial applies only to *sponsors* and not to *exhibitors*.  *Id.*  This is not

so.  The agreements require that "*exhibits* and sponsored meetings" be useful and beneficial to

registrants and attendees.  *See* FAC Ex. B at 1 ("The exhibits and sponsored meetings must be

educational and informative, emphasizing information about products and services useful to the

registrants' practice and beneficial to the interests of their clients and patients."); Ex. D at 1 (same).

Defendants next argue that these requirements are "too indefinite and vague" to be enforced

because they do not give the Court any "objective, rational way to determine whether Defendants

participated in a 'useful' or 'beneficial' way."  Mot., 19.  The concept of "definiteness" cannot,

however, be "reduced to a precise, universal measurement."  *Eastbanc, Inc. v. Georgetown Park

Assocs. II, L.P.*, 940 A.2d 996, 1003 (D.C. 2008) (citation omitted).  What is necessary is that a

court "may determine whether a breach has occurred."  *Tauber v. Quan*, 938 A.2d 724, 730 (D.C.

2007) (internal quotation marks omitted).  While indefiniteness may have some traction in a

marginal breach case, these facts are not on the margins:  Defendants' provided false information to

conference attendees about a fake tissue procurement company, all under the pretense of

establishing "professional" relationships and partnerships (none of which would actually come to

fruition), and with the ulterior motive of taping Plaintiffs' doctors and staff.  This Court can clearly

determine that Defendants' actions were neither useful nor beneficial.[12]

---

[12] Defendants also contend that they never represented, through their agreements, that they were a
legitimate biological specimen procurement organization, nor that they breached any part of the
agreements through such a representation. Mot., 18.  Of course Defendants led Plaintiffs to believe
BioMax was a legitimate procurement organization—their scheme to infiltrate the conference
depended on it, and Plaintiffs were entitled to presume BioMax was the company it held itself out to
be.

Finally, Defendants contend that the agreements' requirement that Defendants follow the law carries no legal effect. Mot., 19. To the contrary, "a bargain with sufficient legal consideration is not rendered illegal by the addition of a promise to refrain from misconduct, unless that promise was used as a means of exacting greater compensation." *Restatement of Contracts* § 578, cmt. a (1932). Defendants do not claim that PPFA extracted greater compensation from them in exchange for their promise to obey the law. And, contrary to Defendants' assertions (Mot., 19-20), Plaintiffs have alleged numerous violations of the federal and state laws in breach of Defendants' obligations under their contracts with Plaintiffs. *See, e.g.*, FAC ¶¶ 148-62 (RICO), ¶¶ 163-71 (Federal Wiretap Act), ¶¶ 179, 211-17 (Cal. Penal Code § 632), ¶¶ 218-25 (Cal. Penal Code § 634), ¶¶ 226-31 (Florida Wiretap Act), ¶¶ 232-37 (Maryland Wiretap Act). Defendants cannot avoid their own obligations by contending that they provided PPFA with illusory consideration.

### B.     Plaintiffs' Allegations Regarding The NAF Agreements Are Sufficient

Defendants make two attacks on Plaintiffs' claim for breach of the NAF agreements: (1) Plaintiffs have not alleged sufficient facts to show third party beneficiary standing; and (2) Plaintiffs fail to allege breach.

Defendants argue Plaintiffs fail to allege they were third party beneficiaries to the NAF agreements because the FAC states that NAF agreements were to benefit *attendees* and Plaintiffs were not attendees themselves because they are corporate entities and do not constitute "people." Mot., 22. Defendants cite no cases in support of this argument. Each of the Plaintiffs attended the NAF meetings through representation by their staff (FAC ¶¶ 66, 185) and, thus, their corporate personhood was in attendance.

Plaintiffs' allegations demonstrate that Defendants reasonably understood that NAF intended to benefit the attendees and participants at its conferences by ensuring their security and privacy through its non-disclosure agreements. FAC ¶ 185 (NAF security measures designed to protect attendees given history of violence and harassment of abortion providers); *id.* ¶¶ 46-55 (Defendants' involvement in that history). Those allegations are sufficient to meet Plaintiffs' pleading burden that they are third party beneficiaries of the NAF agreement. *See, e.g.*, *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (2009) (third party need

1    not be named or identified individually in order to benefit from the terms of a contract); *Balsam v.*

2    *Tucows Inc.*, No. CV 09–03585 CRB, 2009 WL 3463923, at *3 (N.D. Cal. Oct. 23, 2009) (third

3    party seeking to enforce a contract may demonstrate the parties' intent to confer a benefit by

4    showing "that he is a member of a class of persons for whose benefit it was made"); *see also*

5    *Schauer v. Mandarin Gems of Cal.*, 125 Cal. App. 4th 949, 958 (2005) ("No specific manifestation

6    by the promisor of an intent to benefit the third person is required.").

7            Defendants' argument that Plaintiffs fail to allege that Defendants breached the agreement

8    by disclosing NAF's confidential information merits little discussion.  Mot., 23.  The NAF

9    confidentiality agreements prohibit videotaping at NAF conferences as well as disclosing

10   confidential information.  FAC ¶ 67; Exs. H, I, J, L.  Plaintiffs clearly allege that Defendants

11   secretly videotaped at the NAF conferences and thus sufficiently allege breach.  *Id.* ¶ 185.

12   **C.      Plaintiffs' Allegations Regarding The PPGC Confidentiality Agreement Are**
13   **          Sufficient**

14          To gain entrance to PPGC's clinic and private meetings with its staff, Defendant Merritt on

15   behalf of Biomax signed a strict Non-Disclosure and Confidentiality Agreement ("NDA"), which

16   prohibited visitors from disclosing any confidential information, defined as "*all* oral information of

17   [PPGC] which…is reasonably understood by the Recipient to be confidential under the

18   circumstance of the disclosure."  FAC ¶ 114 (emphasis added).  Despite signing this agreement,

19   Defendants Daleiden and Merritt surreptitiously filmed their entire private meeting and published

20   their illegally obtained film on the internet.  *Id.* ¶ 139.

21          Defendants now contend that it was somehow "unclear" to them that their private meeting

22   with PPGC's staff concerning PPGC's internal operations was confidential and that PPGC's claim

23   for breach fails to allege, much less specify facts in support, that any oral communications were

24   reasonably understood by Defendants to be confidential under the circumstances of the disclosure.

25   Mot., 20.  Defendants' contentions are belied by PPGC's allegations that after passing through

26   PPGC's security protocols (FAC ¶ 112), Defendants met with PPGC staff in medical offices and

27   clinical space, which is off limits to the public, and discussed PPGC's internal operations.  *Id.*

28   ¶¶ 115-16.  These allegations are more than sufficient to plausibly infer that a reasonable person

would have reasonably understood those communications to be confidential.  Doubling down, Defendants further argue that PPGC does not specifically identify which confidential communications Defendants improperly disclosed.  Again, the argument ignores the FAC. Plaintiffs allege that *all* communications during the private meeting between Defendants and PPGC staff were confidential, and that Defendants taped those conversations and published them on the internet in direct violation of the NDA they signed.  *Id.* ¶ 124 .  It's hard to allege breach much more specifically than that.

### D.    Plaintiffs' Damages From Defendants' Breaches Of The PPFA, NAF And PPGC Contracts Were Reasonably Foreseeable To Defendants At The Time Of Breach

Finally, Defendants argue that Plaintiffs' contract claims fail because Plaintiffs have not pled that they suffered any damages caused by Defendants' breach that were "reasonably foreseeable," asserting that increased security costs are not the foreseeable result of Defendants' evasion of Plaintiffs' security measures, that property damage is not the foreseeable result of Defendants' release of videotapes accusing Plaintiffs of selling fetal tissue, and that the costs of responding to government investigations are not the foreseeable result of Defendants instigating those investigations  *See* Mot., 20-22; *see id.* 23.  The argument has no merit.

As Defendants' own authorities demonstrate, to allege contract damages one must simply allege damages that are reasonably foreseeable, not that those damages were in the contemplation of the contracting parties at the time (although Plaintiffs here could meet that higher standard as well). Mot., 21 (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 550 (1999).  "It is not necessary to prove that the parties contemplated the precise injuries that occurred so long as the actual consequences could have reasonably been expected to flow from the breach."  *Mnemonics, Inc. v. Max Davis Assocs.*, *Inc.*, 808 So.2d 1278, 1281 (Fla. 5th DCA 2002); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) ("Consequential damages . . . result naturally, *but not necessarily,* from the defendant's wrongful acts.") (emphasis added).  Moreover, losses that flow from "special circumstances, beyond the ordinary course of events, *that the party in breach had reason to know*" are recoverable as contract damages.  *Restatement (Second) of Contracts* § 351 (1979) (emphasis added).  Plaintiffs allege that Defendants *intended* Plaintiffs to suffer harm such

as increased threats, property damage, and government investigations.  *See* FAC ¶¶ 53-55, 56, 125, 132, 141.  Defendants' argument that damages they intended—that were in fact the entirely predictable actions of third parties—"are not recoverable" (Mot., 21), turns the law on its head.[13]

## V. PLAINTIFFS STATE CLAIMS FOR TRESPASS UNDER FLORIDA, DISTRICT OF COLUMBIA, COLORADO, AND TEXAS LAW

To state a claim for trespass, Plaintiffs must allege that Defendants (1) entered property (2) owned or possessed by Plaintiffs (3) without Plaintiffs' consent.[14]  Defendants make four arguments in support of dismissing Plaintiffs' trespass claims.  Each one is without merit.

*First*, Defendants argue that Plaintiffs fail to allege that PPFA "had a possessory interest" in the conference spaces it rented to hold its meetings because "[a] person who contracts to use space in a hotel does not obtain a possessory interest."  Not so.  For this argument, Defendants rely upon *Young v. Harrison*, 284 F.3d 863, 868 (8th Cir. 2002), which simply holds that a hotel guest does not have an ownership interest for purposes of trespass.  That point is irrelevant.  PPFA was not a hotel guest renting a room for the night.  It was an organization *leasing* conference space for a multi-day private conference over which it exercised the right to exclude.  FAC ¶ 190.  *See Ceja v. Lemire*, 143 P.3d 1093, 1095 (Colo. Ct. App. 2006) ("[T]he common meaning of the term 'lease' contemplates the transfer or conveyance of an interest in, and the right to possession, control, and use of, the property subject to the lease.").  *See also Pitt Sales, Inc. v. King World Prods., Inc.*, 383

---

[13] Defendants cite *Vanderbeek v. Vernon*, 50 P.3d 866 (Colo. 2002) and *Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 WL 611566 (Colo. Ct. App. Feb. 11, 2006) for the proposition that the foreseeability test for contract damages is more stringent than the test for tort damages—which is simply hornbook law with no significance here.  Mot., 21.  They also cite California Civil Code section 3301 for the proposition that damages must be clearly ascertainable.  *Id.*  That proposition has nothing to do with foreseeability.

[14] *See Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001) (Trespass is "a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that real estate.") (citation omitted); *see also, e.g.*, *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) (Trespass involves "unauthorized entry upon the land of another."); *Sarete, Inc. v. 1344 U Street Ltd. P'ship*, 871 A.2d 480, 490 (D.C. App. 2005) ("[T]respass is an unauthorized entry onto property that results in interference with the property owner's possessory interest therein.") (citation omitted); *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 69 (Fla. 1st DCA 1997) ("Trespass is an unauthorized entry onto another's property.").

F. Supp. 2d 1354, 1364 (S.D. Fla. 2005) (denying defendant summary judgment on trespass claim where plaintiff "rent[ed] hotel rooms and hotel conference rooms").[15]  Consistent with its lease of the hotel space, PPFA limited access to the space and imposed requirements on people who were permitted access.  *See* FAC ¶¶ 81, 98, 100, 107 (Plaintiffs required all attendees at their conferences to register, to present identification to gain entry, and to wear special identifying badges at all times); *see also id.* Exs. B, D, F (specifically reserving the right to exclude exhibitors whose products were not consistent with their policies).  PPFA has adequately alleged its possessory interest in its conference property.

   *Second*,  Defendants argue that they are not liable for trespass at PPFA conferences or at the Planned Parenthood affiliate health centers in Texas and Colorado because those Plaintiffs consented to Defendants' entrance, and consent is not vitiated by their fraud.  Mot., 24-25 (PPFA); 26 (PPGC, PPCFC and PPRM).  According to Defendants, "[n]umerous courts have rejected trespass claims where defendants misrepresented their identities or intentions in order to conduct surreptitious filming on business property."  Defendants' carefully phrased assertion is true as far as it goes, but what they leave out is that these courts rejected the trespass claim because the defendant was filming in *places that were open to the public*.  Hence, while those parties may have had a claim for fraud, they did not have a claim for trespass.  *See, e.g.*, *Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1352 (7th Cir. 1995) (no trespass where test patients entered offices "open to anyone expressing a desire for ophthalmic services"); *see also Am. Transmission, Inc. v. Channel 7 of Detroit*, 609 N.W.2d 607, 709 (Mich. Ct. App. 2000) (no trespass where the defendant entered areas of the plaintiff's auto repair shop that were "open to anyone seeking transmission repair services").  Defendants also cite *Berger v. Cable News Network, Inc.*, No. CV 94-46, 1996 WL 390528 (D. Mont. Feb. 26, 1996) (Mot., 25), but the facts in that case are plainly distinguishable.  In *Berger*, a

---

[15]The other two cases that Defendants' cite to support their claim that Plaintiffs failed to allege facts from which the Court can infer PPFA's possessory rights over conference spaces are even less on point.  *See Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1060 (D.C. 2014) (establishing a tenant's lack of exclusive possession over "common areas"); *Winselmann v. Reynolds*, 690 So. 2d 1325, 1327 (Fla. 3d DCA 1997) (owner of an *easement* had no possessory interest).

CNN crew accompanied the government on a raid.  Plaintiffs, the subjects of the raid, sued for trespass.  *Id.*  The court granted summary judgment for the defendant because the plaintiff, "who acknowledged that his picture was being taken," never asked the crew to leave.  *Id.*  Here by contrast, Defendants deprived Plaintiffs of any opportunity to ask them to leave their private property by disguising their identity and purpose.

By contrast, where a party gains access to a private space by virtue of misrepresentation he or she is liable for trespass.  *Pitt Sales*, 383 F. Supp. 2d at 1367 (plaintiff could prove trespass where defendant, through his fraud, "was able to access areas of plaintiff's business not open to the public"); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 951 F. Supp. 1217, 1223 (M.D.N.C. 1996) (concluding that plaintiff could establish trespass because defendants "through their ruse, [were] allowed to enter parts of the stores not generally open to the public").  Defendants also argue that PPGC, PPCFC, and PPRM's consent to Defendants' entry on their property was not vitiated by the fact that Defendants later used the video they secretly filmed while on Plaintiffs' premises.  Mot., 26.  Even if Defendants are right, it is irrelevant because Plaintiffs allege (like the plaintiffs in *Pitt Sales* and *Food Lion*) that their consent to Defendants' entry was conditioned on Defendants being representatives from a legitimate medical company, not anti-abortion fraudsters.  FAC ¶ 193.  Defendants do not deny that they exceeded Plaintiffs' conditional consent in that manner.  Mot., 26.  Defendants also cite *Baugh v. CBS, Inc.*, 828 F. Supp. 745 (N.D. Cal. 1993), for the proposition that a defendant commits a trespass only if she exceeds the plaintiff's consent *while on the premises*.  *Id.*  As noted, Plaintiffs allege that Defendants did exactly that.  Moreover, *Baugh* is distinguishable because the court found the video camera crew could not have exceeded the plaintiff's consent because she had given permission to record while they were on her property.  *Id.* at 756-57.  Here, as in *Dietemann v. Time, Inc.,* 449 F.2d 245 (9th Cir. 1971)—which was distinguished by *Baugh*, *id.* at 757 n.7—Plaintiffs never consented to the surreptitious videotaping and other activities Defendants engaged in while on Plaintiffs' property.

*Third*, Defendants argue that the trespass claim is deficient because "Plaintiffs have not alleged that they conditioned their consent on an agreement by Defendants not to record at the meetings."  Mot., 25.  Defendants cite no authority for the proposition that the scope of consent is

-22-

governed by the terms of a contract.  Moreover, Defendants are incorrect: Defendants agreed not to violate any laws while attending the conference and yet did so by secretly recording in violation of state and federal law.[16]

*Fourth*, Defendants assert that Plaintiffs "have failed to allege that they sustained cognizable injuries that were proximately caused by Defendants' alleged trespass."  Mot., 25.  This is untrue. Plaintiffs allege, among other damages, that as a direct result of Defendants' trespass, PPFA was forced to expend resources for increased security for its conferences.  FAC ¶¶ 142-47, 195.  *See also infra* Part VII (addressing Defendants' First Amendment argument).[17]

## VI.   PLAINTIFFS STATE A CLAIM FOR VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.

Defendants argue that Plaintiffs have not stated a cause of action under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq*. To state a claim under the UCL, Plaintiffs must show Defendants engaged in an "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.  "Each prong of the UCL is a separate and distinct theory of liability . . . ."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014) (citation omitted). Plaintiffs allege violations under each of the three prongs.

### A.   Plaintiffs Adequately Allege Violations Under The "Unlawful" Prong

Relying in large part on their arguments challenging Plaintiffs' claims for state and federal wiretapping and for fraud, Defendants assert that Plaintiffs have not alleged violations under the "unlawful" prong of the UCL.  Mot., 27.  "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair

---

[16] At most, whether Defendants' conduct exceeded Plaintiffs' consent is a fact question.  *See also Pitt Sales*, 383 F. Supp. at 1366-67 (holding that whether the "acts of the party accused of the trespass do not exceed, or are not in conflict with, the purposes for which such consent was given" was a question of fact suitable for a jury).

[17] Even if, as Defendants argue, Plaintiffs have not somehow sufficiently pled damages that were proximately caused by Defendants' wrongful actions, "nominal damage is always presumed from a trespass," and no special pleading is necessary.  *Shiffman v. Empire Blue Cross & Blue Shield*, 681 N.Y.S.2d 511, 512 (N.Y. App. Div. 1998); *see also State v. Sarantopoulos*, 604 So. 2d 551, 555 n.7 (Fla. 2d DCA 1992) (in a civil trespass action, "[w]hen the trespass occurs, and no actual damages are proven, the plaintiff is entitled to a judgment for nominal damages and costs").

competition law makes independently actionable." *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  As Plaintiffs explain in Sections I, II, V, VII-X, the FAC adequately alleges that Defendants violated 18 U.S.C. §1962(e), 18 U.S.C. §2511, Cal. Penal Code §§ 632 and 634, Section 10-402 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code, and Section 934 Title XLVII of the Florida Criminal Procedure Law.  *See* FAC ¶ 198.  Accordingly, Plaintiffs allege violations of the UCL under the "unlawful" prong.

### B.   Plaintiffs Adequately Allege Violations Under The "Unfair" Prong

Defendants argue that Plaintiffs are "non-consumers" and therefore must allege conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of such laws to allege a violation of the "unfair" prong.  Mot., 28.  Defendants rely on the wrong standard.  The California Supreme Court in *Cel-Tech Communications, Inc.* adopted the antitrust standard specifically to address "unfair" business practices between competitors.  20 Cal. 4th at 187 (standard when a plaintiff "claims to have suffered injury from a direct competitor's 'unfair' act or practice").  Plaintiffs are not direct competitors to Defendants.  Rather, Plaintiffs were potential consumers of Defendants' sham business services.  *See, e.g.*, FAC ¶¶ 68, 69, 75, 80, 88, 89-94 (describing in part Defendants' deceptive statements regarding their business to Plaintiffs and their staff).

The applicable standard in this case is the "balancing test" articulated in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).  *See Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 929 (N.D. Cal. 2015) (applying balancing test to unfairness claim under UCL); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) ("In the absence of further clarification by the California Supreme Court, we endorse the district court's approach to the law as if it still contained a balancing test.").  Under this balancing test, "the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ."  *S. Bay Chevrolet*, 72 Cal. App. 4th at 886 (internal citations omitted).  "[A]n 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Id.* at 886-87 (internal citations omitted).

Plaintiffs have adequately alleged Defendants engaged in "unfair" business practices. Defendants deceptively posed as representatives from a tissue procurement company to gain admission to Plaintiffs' conferences and facilities with the goal of surreptitiously recording Plaintiffs' staff members.  Using the improperly obtained information, Defendants created a smear campaign composed of heavily edited videos that misrepresented Plaintiffs' activities and exposed law-abiding medical staff to harassment and death threats.  There is no value in Defendants' deceptive, unethical, and injurious conduct.

C.     **Plaintiffs Adequately Allege Violations Under The "Fraudulent" Prong**

"The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  Unlike common law fraud, the UCL "fraudulent" prong requires only a showing that "members of the public are likely to be deceived."  *Id.*  "This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices."  *Id.*  Whether a particular business practice is deceptive generally cannot be resolved at the motion to dismiss stage, in light of questions of fact such a theory presents.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.").

Defendants argue that Plaintiffs cannot state a claim under the fraudulent prong because "CMP's videos have nothing to do with commercial activity and make no appeal to 'consumers' at all."  Mot., 28.  Defendants misapprehend Plaintiffs' allegations.  Plaintiffs do not "premise their fraud prong UCL claim on . . . Defendants' statements to the public via already-released or anticipated videos."  *Id.*  Rather, Plaintiffs allege that Defendants conspired to defraud and in fact defrauded the public and Plaintiffs.  FAC ¶ 199.  Defendants deceptively presented BioMax to the public, including Plaintiffs, as a tissue procurement services company and presented themselves as representatives of the company.  *See, e.g.*, *id.* ¶¶ 30, 31, 35 (Defendant Merritt set up a phony Facebook page for the "CEO" of BioMax), *id.* ¶¶ 36, 61, 62 ("Defendants aggressively promoted BioMax as a legitimate tissue procurement company").  Plaintiffs have sufficiently alleged

1    misrepresentations by Defendants that were likely to mislead the public.

2         Defendants next argue that Plaintiffs cannot seek injunctive relief because Plaintiffs

3    purportedly failed to allege "that Defendants will make any similarly false, reliance-inducing

4    representations to them in the future."[18]  Mot., 28.  Plaintiffs have expressly alleged that Defendants

5    *will* engage in the similar conduct in the future if not enjoined.  *See* FAC ¶ 54 (describing repeated

6    efforts by Defendant Newman to use deception and fraud to obtain recordings); *id.* ¶ 55 (describing

7    repeated efforts by Defendant Daleiden to use deception and fraud to obtain recordings); *id.* ¶¶ 132,

8    202 (Defendants Newman and Daleiden told a reporter "But this is just the beginning, we have

9    moles and spies deep inside the abortion cartel.").  Plaintiffs adequately plead a likelihood that they

10   will be harmed again in a similar way.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th

11   Cir. 2007) ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of

12   repeated injury.") (internal citations and quotations omitted).

13        *Frenzel v. AliphCom* offers no support to Defendants.  There, the district court held that "in

14   a consumer protection class action . . . the named plaintiff must allege that he intends to purchase

15   the produc[t] at issue in the future."  76 F. Supp. 3d 999, 1015 (N.D. Cal. 2014) (internal quotation

16   marks omitted).  In that case, the plaintiff alleged misrepresentations about the underlying product,

17   and the court held that the plaintiff could not "plausibly allege that he is likely to be fraudulently

18   induced by the same representations he now claims he knows are false."  *Id.*  Unlike the *Frenzel*

19   plaintiff, Plaintiffs here are not alleging that they will be injured by future transactions with

20   BioMax, the subject of the specific misrepresentation in Defendants' prior misconduct.  Instead,

21   Plaintiffs allege that individual Defendants are likely to engage in similar conduct—through new

22   sham identities or enterprises—as they have repeatedly done and threatened to do.

23

24

25   _____

26   [18] Defendants argue that Plaintiffs are not entitled to restitution.  Mot., 29.  That's irrelevant because
     Plaintiffs are entitled to injunctive relief.  *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 790 (2010)
27   ("[T]he right to seek injunctive relief under section 17203 is not dependent on the right to seek
     restitution; the two are wholly independent remedies.").
28

## VII.   PLAINTIFFS STATE A CLAIM FOR FRAUDULENT MISREPRESENTATION

Defendants argue that Plaintiffs' fraud claim must be dismissed because Plaintiffs' allegations of harm "are insufficient to allege proximate causation of injury."  Mot., 30.  Defendants contend that "all of Plaintiff's [*sic*] damages flow from Defendants' *publication* of recordings, not from any purported misrepresentations that occurred before the recordings, so there is no proximate causation of the alleged damages."  *Id.* 30-31.  That is inaccurate.  Plaintiffs allege Defendants defrauded Plaintiffs by lying to them to gain access to Plaintiffs' private conferences and clinics, and that as a direct result of Defendants' fraud, Plaintiffs were obliged to increase security and protection for their staff, their clinics, their conferences, and their websites and IT.  FAC ¶ 143.

Defendants' argument relies heavily on a misguided analogy to the fraud claim in *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 964 F. Supp. 956 (M.D.N.C. 1997), which Defendants describe as "nearly identical to [Plaintiffs']."  Mot., 30.  Defendants overlook important differences between *Food Lion*'s damages theories and Plaintiffs' allegations.  *Food Lion* bears only superficial resemblance to Plaintiffs' allegations: the *Food Lion* defendants, reporters, masqueraded as employees to secretly film the defendants' food handling processes.[19]  964 F. Supp. at 962-63.  But where the rubber meets the road—the fraud damages theory—the analogy fails:  Plaintiffs allege direct harm resulting from Defendants' misrepresentations.  *See* FAC ¶ 143.

In *Food Lion*, the plaintiff sought lost profits resulting when customers ceased frequenting plaintiff's supermarkets after defendants' broadcast exposed poor food handling practices.  964 F. Supp. at 962-63.  At summary judgment, the district court held that the content of the publication (i.e., the food handling practices) caused plaintiff's lost profit damages, not the defendants' misrepresentations by which they obtained employment at the plaintiff's supermarket.  *Id.*  Here, by contrast, Plaintiffs allege that they suffered damages directly resulting from Defendants' lies: the breach of Plaintiffs' security by Defendants through their lies and misrepresentations required increases in Plaintiffs' security and IT to prevent future breaches.  *See* FAC ¶ 143 ("PPFA has

---

[19] Plaintiffs do not concede that Defendants are journalists.

1    expended significant resources to increase security at all future conferences as a direct result of

2    Defendants' illegal intrusion into several PPFA conferences.").

3         *Frome v. Renner* is similarly distinguishable.  There, the court dismissed the plaintiff's fraud

4    claim after finding that plaintiff's claims for *lost profits* flowed from defendants' exposure of

5    plaintiff's improper medical practice.  No. 97 CIV 5641, 1997 WL 33308718, at *2 (C.D. Cal. Oct.

6    1, 1997) ("Profits lost subsequent to the broadcast could not have been proximately caused by [the

7    defendant's] misrepresentation.").  As noted, Plaintiffs are not seeking lost profit damages.

8    Plaintiffs' harm flows directly from Defendants' fraud, including increased security costs and

9    expending resources to protect staff and patients (*see, e.g.,* FAC ¶ 143), not just harm from the

10   publication.  Plaintiffs allege that Defendants' fraud caused Plaintiffs' harm.  *See Med. Lab. Mgmt.*

11   *Consultants v. Am. Broad. Cos.,* 30 F. Supp. 2d 1182, 1200-01 (D. Ariz. 1998) (denying summary

12   judgment where plaintiff alleged—and raised a triable issue of fact—that his emotional harm arose

13   from the defendants' deceptions, not from the publication about his business practices).

14        Defendants next argue that not only are Plaintiffs' damages not proximately caused by

15   Defendants' fraud, but the damages are also barred by the First Amendment because "*[w]here a*

16   *plaintiff seeks damages resulting from a publication*, he must satisfy the First Amendment

17   requirements that govern defamation claims regardless of the cause of action raised."  Mot., 31

18   (emphasis added).  Plaintiffs seek damages resulting directly from Defendants' fraud, not just from

19   the publication of the videos, so Defendants' argument is irrelevant.

20        Defendants' argument also misstates the law.  "When the damages are non-reputational and

21   do not compensate for injury to plaintiff's state of mind, First Amendment proscriptions do not

22   preclude recovery on a pre-publication tort, also involving a media-defendant's publication."

23   *Hornberger v. Am. Broad. Cos.*, 351 N.J. Super. 577, 629 (2002).  Courts, including the Supreme

24   Court, have consistently held that the First Amendment is not a "free pass" for tortious conduct just

25   because that conduct is connected to speech.  *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669

26   (1991) ("[G]enerally applicable laws do not offend the First Amendment simply because their

27   enforcement against the press has incidental effects on its ability to gather and report the news.");

28   *Food Lion, Inc. v. Capital Cities/ABC. Inc.*, 194 F.3d 505, 521 (4th Cir. 1999) ("[T]he media can do

1    its important job effectively without resort to the commission of run-of-the-mill torts."  Holding

2    breach of duty of loyalty and trespass claims do not require First Amendment scrutiny.); *see also*

3    *Snyder v. Phelps,* 562 U.S. 443, 461 (2011) (Breyer, J. concurring) ("[S]uppose that A were

4    physically to assault B, knowing that the assault (being newsworthy) would provide A with an

5    opportunity to transmit to the public his views on a matter of public concern.  The constitutionally

6    protected nature of the end would not shield A's use of unlawful, unprotected means.  And in some

7    circumstances the use of certain words as means would be similarly unprotected."); *Dietemann v.*

8    *Time*, *Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) ("The First Amendment is not a license to trespass, to

9    steal or to intrude by electronic means into the precincts of another's home or office.").

10            To shoehorn this case into the First Amendment framework, Defendants baldly assert that

11    Plaintiffs' harms are reputational or state of mind.  Mot., 32.  The harms Plaintiffs suffered arise not

12    from reputational or state of mind harm, but rather from the security threats caused by Defendants'

13    fraudulent access and from Defendants' breach of their contractual obligations to keep information

14    confidential.  *See* FAC ¶¶ 101, 102, 106, 110, 112, 113.  Accordingly, Defendants' litany of cases

15    involving claims for harm to reputation or state of mind are irrelevant.  *See Hustler Magazine v.*

16    *Falwell*, 485 U.S. 46, 55-56 (1988) (intentional *emotional distress* claim); *Zacchini v. Scripps-*

17    *Howard Broad. Co.,* 433 U.S. 562, 573 (1977) (*Time* involved claim for "false light," recovery for

18    which "is clearly that of reputation, with the same overtones of mental distress as in defamation");

19    *Blatty v. N.Y. Times Co.,* 42 Cal. 3d 1033, 1045 (1986) (intentional interference with economic

20    advantage claims "have as their gravamen the alleged injurious falsehood of a statement").[20]

21            Plaintiffs have adequately alleged that Defendants' fraudulent representations directly

22    harmed Plaintiffs.  The First Amendment offers no refuge for Defendants' tortious conduct.

23

24

25

26    _____

27    [20] *Animal Legal Defense Fund v. Otter* is particularly inapposite.  There, the plaintiffs challenged a
statute criminalizing lies without showing of material harm.  118 F. Supp. 3d 1195 (D. Idaho 2015).
The case has nothing to do with fraud or even harm from publication.

28

VIII.   **PLAINTIFFS STATE A CLAIM FOR VIOLATION OF CALIFORNIA PENAL CODE § 632**

   A.   **Plaintiffs Sufficiently Allege That Their Staff Had A Reasonable Expectation That Their Conversations With Defendants At The NAF Conference Were Not Being Recorded**

Defendants argue that Plaintiffs fail to allege that their staff had a reasonable expectation of confidentiality at the 2014 NAF annual conference and therefore Plaintiffs fail to state a claim under California Penal Code Section 632.  The legal standard under California law is simple: A communication is confidential if a party to that conversation has a reasonable expectation that the conversation is not being eavesdropped upon or recorded.  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002);  *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 168-69 (2003).  Here, Plaintiffs allege facts supporting an inference that conference attendees had a reasonable expectation that their conversations were not being recorded.  Indeed, all attendees were required to sign an agreement promising not to record at the conference.  FAC ¶¶ 66-68, 214.

Defendants argue that a party has a reasonable expectation of privacy only in those conversations that cannot be overheard by anyone else in the room— "[a] communication is not confidential when the parties may reasonably expect other persons to overhear it."  Mot., 33 (quoting *Lieberman*, 110 Cal. App. 4th at 168).  However, the language Defendants quote is not a holding from *Lieberman*, but rather a recitation of an argument put forward by the appellant, *which the court rejected*.  *Id*. at 167-68 ("Next, *appellant contends*… Penal Code section 632 protects only confidential communications, and a communication is not confidential when the parties may reasonably expect other persons to overhear it."); *id.* at 169 (rejecting argument).

Relying on this incorrect legal standard, Defendants argue that the FAC fails to allege facts about who else was in the room, how loud the noise was, etc.  Mot., 34.  None of those facts matter, however, because the fact that a conversation might be heard by others and later repeated does not render it non-confidential.  *Flanagan*, 27 Cal. 4th at 775  ("'[A] substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device.'"); *see also Lieberman*, 110 Cal. App. 4th at 169 ("The presence of others does not

-30-

1   necessarily make an expectation of privacy objectively unreasonable, but presents a question of fact

2   for the jury to resolve.").

3          Defendants next argue that Plaintiffs cannot rely on the NAF confidentiality agreement

4   because "the California Supreme Court has expressly rejected the notion that confidentiality

5   depends on whether the participants expected 'the conversation would not be divulged to anyone

6   else'." Mot., 34 (citing *Flanagan*, 27 Cal. 4th at 773). *Flanagan* held a party is not required to

7   show a reasonable expectation that the conversation would not be divulged to a third party; it

8   assuredly did not hold or suggest that confidentiality agreements are irrelevant to the expectation of

9   confidentiality. Defendants' next argument—that Plaintiffs' allegations concerning the limits NAF

10  placed on attendance at its conference are legally irrelevant under *Flanagan* (Mot., 35)—suffers

11  from the same logical flaw. Plaintiffs' allegations that its staff had reason to trust that other

12  attendees would not repeat their conversations indiscriminately are plainly relevant to their

13  objective expectation that their conversations were confidential and not secretly being recorded.

14  *See also Frio v. Superior Court*, 203 Cal. App. 3d 1480, 1489-90 (1988), *modified* (Sept. 22, 1988)

15  (security measures support reasonable expectation that communications would not be recorded).[21]

16          Finally, Defendants argue that the fact that a conversation is sensitive does not demonstrate

17  that every conversation at the conference was confidential. While the expectation of confidentiality

18  cannot be derived *exclusively* from the content of the communication, that does not make the

19  content irrelevant. *Vera v. O'Keefe*, No. 10-CV-1422-L(MDD), 2012 WL 3263930, at *5 n.3 (S.D.

20  Cal. Aug. 9, 2012) ("The Court finds it appropriate to consider the content of the conversation as a

21  _____

22  [21] Defendants cite to *Turnbull v. American Broadcasting Companies*. Mot., 35. *Turnbull* is

23  distinguishable because first, that court was addressing the plaintiffs' attempt to overturn a jury
    verdict finding no violation of Penal Code Section 632, and held only that "the jury's decision was
    not contrary to the clear weight of the evidence." No. CV 03-3554, 2005 WL 6054964, at *6 (C.D.

24  Cal. Mar. 7, 2005). More to the point, the court rejected the plaintiffs' inconsistent arguments
    regarding whether the defendants had "overheard" or merely "heard" the conversations at issue. *Id.*

25  at *5. The district court observed that where the plaintiffs presented evidence that they knew the
    defendant, who was not a party to the conversation, could hear their conversations, the plaintiffs

26  could not subsequently claim that they had an expectation that third parties could not hear their
    conversations. *Id.* Plaintiffs here do not allege that they had an expectation that their actual

27  conversations with Defendants would not be heard by other attendees, nor is such an allegation
    required.

28

factor when making this determination [of confidentiality], in addition to other surrounding circumstances.").

### B.    Plaintiffs Sufficiently Allege That Dr. Nucatola Had A Reasonable Expectation That Her Conversation With Defendants Was Not Being Recorded

Defendants argue that Plaintiffs fail to allege facts on which the Court can infer that Dr. Nucatola had a reasonable expectation of confidentiality when she discussed highly sensitive topics with two individuals claiming to be professionals from a tissue procurement company.  Mot., 37-38. Here, their argument is based on a purported rule that "[c]ommunications made in a public restaurant do not satisfy the requirements of 'confidential communications" under [Penal Code Section 632].  *Id.*, 37.  There is no such categorical rule.  Rather, it is recognized that "privacy, for purposes of the intrusion tort, is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law."  *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 916 (1999).

Defendants' reliance on *Wilkins v. National Broadcasting Co.,* 71 Cal. App. 4th 1066, 1080 (1999) is similarly inapposite.  Mot., 37.  As an initial matter, it is not clear that *Wilkins* even remains good law as it was decided pre-*Flanagan* and relied heavily on a standard of confidentiality (the *O'Laskey* standard) that the California Supreme Court rejected in *Flanagan*.  *Flanagan*, 27 Cal. at 768 (rejecting the *O'Laskey* standard).[22]  But even if it is good law, it does not matter because the finding of a lack of confidentiality in *Wilkins* has no application to the facts here.  In *Wilkins*, promoters of a 1-800-number scheme solicited investors by placing a national advertisement.  *Id.* at 1078.  Defendants responded to that ad and set up a meeting at a restaurant at which they brought additional individuals.  *Id.*  Defendants did not introduce these other attendees and plaintiffs never asked who they were.  Plaintiffs testified that they freely provided the same product information to hundreds of other potential investors and that defendants were free to bring anyone to the meeting

---

[22] *See O'Laskey v. Sortino*, 224 Cal. App. 3d 241 (1990).

1  that they wished to bring.  Defendants secretly recorded the conversation.  The court held that the

2  plaintiffs did not have a reasonable expectation of privacy.  *Id.* at 1078.  Here, by contrast,

3  Defendants specifically targeted and solicited Dr. Nucatola.  FAC ¶ 75.  She trusted that Defendants

4  were legitimate because she had met them at the highly secure NAF conference.  *Id.* ¶¶ 70, 75.  On

5  that basis alone, she had a reasonable expectation that her sensitive business conversation was not

6  being secretly recorded.  Furthermore, Plaintiffs allege that Dr. Nucatola took specific precautions

7  during the meeting to ensure privacy.  *Id.* ¶ 76.  These facts are sufficient.

8  **C.    Plaintiffs' Allegations Demonstrate Their Standing To Assert The Relevant**
   **Privacy Interests**

9

10      Defendants further argue that Plaintiffs failed to allege facts showing that they have standing

11  to assert the privacy interests of individuals under Section 632 because Plaintiffs did not sufficiently

12  plead that the individuals were recorded while acting in their capacity as employees of the

13  corporations bringing this claim.  Mot., 35-36.  Once again, Defendants simply ignore inconvenient

14  allegations.  The FAC alleges that Defendants attended the NAF conference pretending to represent

15  a tissue procurement company and engaged Plaintiffs' staff in conversations about developing a

16  business relationship with Plaintiffs.  FAC ¶¶ 69-71; 75-76; 95-97.  These allegations are sufficient

17  to show that Plaintiffs' staff spoke to Defendants in their capacity as employees.[23]

18      Defendants make the same argument with respect to the allegations of secret taping of Drs.

19  Nucatola and Gatter[24] (Mot., 36-37), but it fares no better.  Plaintiffs allege that Defendants sought a

20  meeting with Dr. Nucatola to discuss their tissue procurement company and that Defendants posed

21

22  [23] As Defendants acknowledge, Mot., 36, Plaintiffs allege that "*[s]taff representatives* from PPFA,
   PPPSW, PPMM, PPOSBC, PPNC, PPGC, PPCFC and PPRM attended the NAF 2014 annual
23  conference in San Francisco," FAC ¶ 212 (emphasis added), and that "*[s]taff* from PPFA and
   Planned Parenthood affiliates regularly attend the NAF annual conferences," *Id.* ¶ 66 (emphasis
24  added).

25  [24] Defendants' incorrectly assert that Plaintiffs' Section 632 claim only refers to conversations at the
   2014 NAF conference. Mot., 36.  In fact, Plaintiffs allege that "DALEIDEN and his co-conspirators
26  also intentionally recorded confidential communications made during *private meetings with PPFA
   and Planned Parenthood affiliate staff members*…." FAC ¶ 213 (emphasis added).  This refers
27  directly to the recorded meetings with Deborah Nucatola and Mary Gatter.  *See also id.* ¶¶ 69-70,
   75-76, 95-97.
28

as high-level executives from that company.  FAC ¶ 75.  Plaintiffs have further described the

communications Defendants sent to Plaintiffs' staff soliciting meetings to discuss potential

contractual arrangements.  *See, e.g.*, FAC ¶ 92; *see also id.* ¶ 95 ("DALEIDEN expressed an interest

in discussing…a possible partnership for fetal tissue donation).[25]

> ### D.      Plaintiffs Allege A Section 632 Claim Against Defendant Lopez

Finally, Defendants claim that Plaintiffs have not pleaded any facts alleging that Defendant

Lopez attended the San Francisco NAF Conference, or attended the meetings with Gatter, Felczer,

or Nucatola.  Mot., 38.  This is untrue.  Plaintiffs allege that "DALEIDEN and his *co-conspirators*

intentionally recorded confidential communications made during the NAF 2014 annual conference

in San Francisco."  FAC ¶ 212 (emphasis added).  Lopez is alleged to have been a co-conspirator.

*See, e.g.*, *id.* ¶¶ 37, 83, 101, 150, 153, 157.

## IX.     PLAINTIFFS STATE A CLAIM FOR VIOLATION OF CALIFORNIA PENAL CODE § 634

> ### A.      Penal Code Section 634 Does Not Require That The Plaintiff Asserting The Claim Be The Property Owner

Under California Penal Code Section 634, a Plaintiff must allege that Defendants

(1) trespassed on property (2) to commit or attempt to commit any act in violation of Section 632.

Cal. Penal Code § 634.  Defendants argue that Plaintiffs lack standing to bring a claim under

Section 634 for Defendants' conduct at the NAF conference because no trespass was committed

against Plaintiffs.  Mot., 39.  Plaintiffs, however, are not asserting a claim for trespass at the NAF

conference: Plaintiffs are asserting a claim for injury caused by Defendants' trespass at that

conference in violation of Section 634 for the purpose of illegal taping in violation of Section 632,

as allowed by Section 637.2 ("Any person who has been injured by a violation of this chapter may

bring an action against the person who committed the violation.").  Neither Section 634 nor Section

---

[25] It is not clear why Defendants cite to *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 880 (1980), which does nothing more than make plain that a corporation may be considered a "person" with standing under Section 637.2 to bring a claim for injury stemming from a violation of Section 632.  Plaintiffs certainly do not dispute that.

637.2 requires that the trespass occur on Plaintiffs' property.

Defendants also argue that claims within the Invasion of Privacy Act must be brought by the party whose rights were violated.  Mot., 39.  That is true, and Plaintiffs allege that their rights were violated.  *Turnbull v. American Broadcasting Companies* is inapposite. There, the plaintiffs sought to enjoin the defendants "from using hidden cameras to gather news in California."  2004 WL 2924590, at *16.  The district court held that the plaintiffs were "in effect, asking for prospective relief on behalf of a very large group of individuals who probably do not share a common factual nexus with Plaintiffs in the instant case."  *Id.*  In that context, the court observed that the plaintiffs were "resting on the legal rights and interests of third parties."  *Id.*  The court said nothing about standing under Sections 637.2 or 634.  Plaintiffs themselves have standing under Section 637.2 and are not resting on the rights of third parties.  *See* FAC ¶ 225.

Finally, Defendants claim that Plaintiffs must plead the existence of criminal aggravating factors that must be present for criminal trespass.  Mot., 40.  That is no more true than the notion that Plaintiffs would be required to prove their claims under Penal Code 632 and 634 beyond a reasonable doubt.  Section 637.2 provides a civil right of action.  Plaintiffs have no obligation to plead the elements of a criminal claim.

### B.      Plaintiffs Sufficiently Allege That Defendants Trespassed At The NAF Conferences

Defendants argue that Plaintiffs fail to allege that Defendants trespassed at the NAF meetings because Plaintiffs have not alleged that NAF had a possessory property interest in the hotels where meetings occurred, rehashing the same argument asserted against Plaintiffs' trespass claim.  Mot., 40.  Contrary to Defendants' argument, Plaintiffs allege that "NAF possessed a right to exclusive use of the real property they leased for the 2014 NAF conference held in San Francisco in 2014."  FAC ¶ 219.  As discussed *supra* Part V, a lease confers an interest in real estate and, along with it, "exclusive possession" (a possessory property interest) for the time of occupancy.  *See, e.g.*, *Bess v. Wise*, 275 Cal. App. 2d 158, 164 (1969) ("The lease gave them the right of possession to the exclusion of defendants, and their exclusive possession was not qualified by the limited rights of entry granted to defendants….") (internal citation omitted).

X.   **PLAINTIFFS STATE CLAIMS FOR VIOLATIONS OF STATE WIRETAPPING LAWS**

Defendants argue that Plaintiffs fail to state claims under Florida or Maryland's non-consensual taping laws (Claims for Relief Eleven and Twelve).[26]  Defendants make the same argument with respect to both claims: to wit, the FAC fails to allege that Plaintiffs' staff had a reasonable expectation of confidentiality in their conversations with Defendants at the NAF 2015 conference and the PPFA conferences.

   A.   **Plaintiffs Sufficiently Allege A Reasonable Expectation Of Confidentiality In Their Conversations With Defendants At PPFA's Private Conferences**

Under Florida law, whether a party has a reasonable expectation of privacy turns on a consideration of "the totality of the circumstances."  *Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*, No. 8:12-CV-2079-T-17MAP, 2013 WL 5437117, at *5 (M.D. Fla. Sept. 27, 2013) (identifying eight factors Florida courts consider in determining whether, under the totality of the circumstances, the expectation of privacy is one which society recognizes as reasonable).[27] Plaintiffs allege that they had a reasonable expectation of privacy regarding Plaintiffs' communications during the two Florida conferences because of the security measures PPFA employed, including steps designed to exclude the general public and limit attendance to those in the reproductive rights community, and the sensitive nature and subject matter of the conferences. FAC ¶¶ 81-83, 90, 98-103, 227-30.

Defendants contend that "Florida has specifically rejected the proposition that closed business dealings meet the test for 'reasonable expectation of privacy' for section 934."  Mot., 43.

---

[26] The elements for the two laws are the same: (1) intentional (2) interception (3) of an oral communication, involving both a subjective expectation of privacy and an objectively reasonable expectation of privacy under the circumstances.  *See Denarii Sys., LLC v. Arab*, No. 12-24239-CIV, 2013 WL 6162825, at *2 (S.D. Fla. Nov. 25, 2013); *Deibler v. State*, 365 Md. 185, 188 (2001); *Benford v. Am. Broad. Cos.*, 554 F. Supp. 145, 151-54 (D. Md. 1982).

[27] Those factors are: "(1) the location where the communication took place; (2) the manner in which the communication was made; (3) the nature of the communication; (4) the intent of the speaker asserting Chapter 934 protection at the time the communication was made; (5) the purpose of the communication; (6) the conduct of the speaker; (7) the number of people present; and (8) the contents of the communication."

Defendants cite no case that announces such a bright line rule, and in any case, such a rule would be inconsistent with Florida's "totality of the circumstances" approach.  In fact, "the courts have *not* recognized a bright-line rule negating a reasonable expectation of privacy in an office."  *Denarii Sys., LLC v. Arab*, No. 12-24239-CIV, 2013 WL 6162825, at *3 (S.D. Fla. Nov. 25, 2013) (emphasis added); *see also Brugmann v. State*, 117 So. 3d 39, 48 (Fla. Dist. Ct. App. 2013) ("[t]he reasonableness of one's expectation of privacy under a Fourth Amendment analysis rests on the totality of the circumstances, and, *while location or 'place' is an important consideration, it is not the sole consideration*.") (emphasis added).  The cases Defendants rely upon are inapposite.  *See Cohen Bros., L.L.C. v. ME Corp., S.A.*, 872 So. 2d 321, 324-25 (Fla. Dist. Ct. App. 2004) (in dicta, stating that participants acting in capacity of management of corporation in a shareholder call did not have a socially recognizable expectation of privacy against each other during call); *Morningstar v. State*, 428 So. 2d 220, 221 (Fla. 1982) (society does not recognize an expectation of privacy to commit a crime); and *Jatar v. Lamaletto*, 758 So. 2d 1167, 1169 (Fla. Dist. Ct. App. 2000) (plaintiff had no reasonable expectation of privacy in the business office of his victim).

Second, Defendants argue that because the PPFA agreements, unlike the NAF agreements, do not contain an express confidentiality clause, "they clearly show that Plaintiffs' conferences were events where there would be no expectation of privacy."  Mot., 43.  Defendants cite no law for the proposition that a party only has a reasonable expectation of confidentiality if she requires those with whom she speaks to first sign an NDA.  Furthermore, both PPFA agreements at issue required Defendants to comply with all applicable laws, "including...privacy."  FAC ¶¶ 82, 99.[28]

### B.   Plaintiffs Sufficiently Allege A Reasonable Expectation Of Confidentiality In Their Conversations With Defendants At The NAF 2015 Conference

Similar to Florida, under Maryland law, "[a] person's 'reasonable expectation of privacy' is a matter to be considered on a case-by-case basis, taking into consideration its unique facts and

---

[28] It takes chutzpah to make this argument and then turn around and argue that the NAF confidentiality agreements (which prohibit taping) are "irrelevant" to the question of whether Plaintiffs' staff had a reasonable expectation that they would not be taped.  Mot., 34-35.

1    circumstances." *Benford v. Am. Broad. Cos.*, 554 F. Supp. 145, 151-54 (D. Md. 1982).  Plaintiffs

2    have sufficiently alleged facts and circumstances that give rise to an inference that attendees at the

3    NAF 2015 annual conference had a reasonable expectation that their conversations with other

4    attendees were private, including the allegation that all attendees were required to sign a

5    confidentiality agreement.  FAC ¶¶ 120-21, 234.  Despite these allegations, Defendants contend that

6    "the *only* reasonable inference to draw" from the FAC is that the filmed individuals did not have a

7    reasonable expectation of privacy.  Mot., 44.

8            Reaching mightily, Defendants cite a Maryland Attorney General opinion stating that

9    statements knowingly exposed to the public are not made with a reasonable expectation of privacy.

10   *Id.*  Nothing in the FAC suggests that Plaintiffs' staff exposed their conversations with Defendants

11   to the public—it was Defendants who did that.  *Malpas v. State*, which held that the plaintiff had no

12   privacy expectation when he was shouting "loud enough to be heard thorough [*sic*] the walls," is

13   equally irrelevant.  116 Md. App. 69, 84-86 (1997).  There is nothing in the FAC that would lead

14   the court to conclude that any of Plaintiffs' staff were shouting during the conversations at issue.

15   Nor does *Malpas*, a decision after trial, say anything about what must be pled.

16           Defendants then argue that under the federal standard (which Maryland follows), "courts

17   have routinely rejected unlawful recording claims under facts *closely analogous* to those in the

18   Complaint."  Mot., 44.  In fact, none of the three cases that follow are even remotely analogous.

19   First, Defendants cite to *Matter of John Doe Trader No. One*, 894 F.2d 240 (7th Cir. 1990), a case

20   in which a trader unsuccessfully asserted an illegal taping claim in his efforts to quash a subpoena.

21   Defendants claim that "the recorded individual made almost precisely the same arguments on which

22   Plaintiffs rely."  *Id.*  Defendants neglect to mention that the reason that court rejected the trader's

23   privacy claim was because individual who taped the trader was an FBI agent.  *Id.* at 243 ("it has

24   long been established that a police officer may enter private premises on a ruse or by deception").

25   Since Defendants are not in law enforcement, *John Doe* does not help them.  Moreover, the court

26   noted that the anti-taping rules from the trading floor that the trader pointed to were not designed to

27   protect privacy.  *Id.*  By contrast, Plaintiffs have specifically alleged that the NAF confidentiality

28   agreement was for the purpose of protecting attendees' privacy.  FAC ¶¶ 67, 234.

Defendants next cite to *Medical Laboratory Management Consultants v. American Broadcasting Companies* again.  Mot., 44.  In *Medical Lab* the Ninth Circuit granted summary judgment to defendant on plaintiff's common law privacy claim under Arizona law.  The court held that the plaintiff did not have a reasonable expectation of privacy where he invited strangers into his business after ascertaining virtually nothing about them and engaged in a conversation in a "semi-public place of business."  306 F.3d 806, 813 (9th Cir. 2002).  The facts in that case cannot fairly be described as "*closely analogou*s" to Plaintiffs' allegations that their staff had a reasonable expectation of confidentiality in conversations at a secure conference where all were required to identify themselves and sign a confidentiality agreement.  Finally, Defendants cite *Kemp v. Block* to no avail.  *Kemp* involved a worker's unconsented-to taping of a loud workplace argument between a co-worker and his foreman.  Again, the facts ae not closely analogous to the FAC.  The court held that the coworker did not have a reasonable expectation that his loud argument would not be heard by other coworkers who were "in a place they had a right to be."  607 F. Supp. 1262, 1264 (D. Nev. 1985).  By contrast, here Plaintiffs were taped by anti-abortion activists who had no right to be at the conference and were only there by virtue of their fraud and deception.  FAC ¶ 120.

## XI.   PLAINTIFFS STATE A CLAIM FOR INVASION OF PRIVACY UNDER COMMON LAW AND THE CALIFORNIA CONSTITUTION

### A.   Plaintiffs Have Standing To Bring These Claims On Behalf Of Their Staff

Defendants assert that Plaintiffs lack associational standing on behalf of their employees to bring claims for common law invasion of privacy and invasion of privacy under the California Constitution.  Mot., 45.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[29]  *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

---

[29] Defendants do not challenge the first prong of the *Hunt* test, nor could they.  As explained in detail below, Plaintiffs sufficiently allege an invasion of their employees' privacy by Defendants.

In support of their position, Defendants offer two arguments: (1) Plaintiffs categorically cannot assert associational standing for their employees; and (2) the claims require the individual participation of Plaintiffs' employees.  Neither argument has merit.

### 1.    Plaintiffs Can Bring Claims On Behalf Of Their Employees

Defendants argue that "Plaintiffs cannot assert associational standing on behalf of their employees."  Mot., 45.  At least one court has found that a Planned Parenthood affiliate appropriately represented its employees.  In *Planned Parenthood Arizona, Inc. v. Brnovich*, the district court held that Planned Parenthood Arizona, Inc. was an "appropriate representative[] to litigate and assert the First Amendment rights of the third-party physicians" that the affiliate employed.  No. CV-15-01022-PHX-SPL, 2016 WL 1158890, at *8 (D. Ariz. Mar. 23, 2016).  In so holding, the district court noted that Planned Parenthood Arizona, Inc. was "in every practical sense identical to the physicians it employs," and the interests the affiliate sought to protect "are germane to their purpose of providing reproductive health care services."  *Id.*; *see also Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1988) (associational standing appropriate where "the individual members' interests are largely identical to the organization's goals").

The same reasoning applies here.  PPFA's "mission is to provide comprehensive reproductive health care services, to provide educational programs relating to reproductive and sexual health, and to advocate for public policies to ensure access to health services, including safe, legal abortion."  FAC ¶ 19.  Plaintiff-affiliates provide reproductive services, including safe, legal abortion through their employees.  *Id.* ¶¶ 20-28.  Plaintiffs' claims for invasion of privacy on behalf of their staff are consistent with and in pursuit of their purposes.  *See id.* ¶¶ 19-28.

Neither of the cases Defendants cite supports their position.  In *Fleck & Associates, Inc. v. City of Phoenix*, the Ninth Circuit rejected a corporation's argument for associational standing on behalf of its customers because the corporation's purpose was  "to turn a profit," not to "vindicate the putative privacy interests of its customers."  471 F.3d 1100, 1106 (9th Cir. 2006).  In contrast, the injuries of its staff  are directly tied to Plaintiffs' purposes.  FAC ¶¶ 142-43 (describing disruption of services following Defendants' invasion of staff's privacy).  Defendants also cite to an Eleventh Circuit decision that stated, in a footnote, that associational standing is warranted only for

voluntary membership organizations.[30]  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 810 n.15 (11th Cir. 1993).  The statement, in addition to being not binding on this Court, was supported by only a single (and now outdated) reference to Wright & Miller, and no case law.

### 2.   Plaintiffs' Claims Do Not Require The Individual Participation Of Their Staff

Defendants next make two arguments that the privacy claims require the individual participation of Plaintiffs' staff.  First, Defendants claim that Plaintiffs are seeking money damages for the privacy claims.  Second, Defendants assert that the privacy claims require participation by Plaintiffs' staff because resolving the underlying merits of the privacy claims "depends on fact-intensive, situation-specific inquires [sic] that 'require[] participation of individual members in the lawsuit.'"  Mot., 46 (quoting *Assoc. Gen. Contractors of Am. v. Cal. Dep't of Transp.,*713 F.3d 1187, 1194 (9th Cir. 2013).  Neither argument has merit.

As to the first argument, Plaintiffs seek only injunctive and declaratory relief for the invasion of privacy claims.  *See* FAC Prayer For Relief ¶ 2.  When an association "seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured," and so associational standing is appropriate.  *Warth v. Seldin*, 422 U.S. 490, 515 (1975).  Defendants' cases holding that money damages require individual participation therefore are irrelevant. [31]

---

[30] The *Region 8* court held that employers' standing for their employees should be considered under the third-party standing doctrine.  993 F.2d at 810 n.15.  Although Plaintiffs have properly alleged associational standing, Plaintiffs could also assert a privacy claim under the third-party standing doctrine.  *McCormack v. Herzog*, 788 F.3d 1017, 1027 (9th Cir. 2015).

[31] *See* Mot., 46; *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553-554 (1996) (*Warth* and later precedents "have been understood to preclude associational standing when an organization seeks damages on behalf of its members"); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 284 (3d Cir. 2002) ("Because claims for monetary relief usually require individual participation, courts have held associations cannot generally raise these claims on behalf of their members," but permitting claims for injunctive relief); *Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 483 (D.C. Cir. 1996) (no associational standing for damages claims, but declaratory relief permissible); *United Union of Roofers,* (footnote continued)

Defendants next assert that privacy claims "almost inherently require the participation of that person whose privacy was allegedly invaded."  Mot., 45.  Defendants cite two cases to support this argument, neither of which even mentions associational standing.  *Association for Los Angeles Deputy Sheriffs v. Los Angeles Times Communications, LLC* held that the plaintiff-labor union had no *direct* standing to bring claims for invasion of privacy for its members.  239 Cal. App. 4th 808, 821 (2015).  *Hendrickson v. Cal. Newspapers, Inc.* likewise held that plaintiffs could not state a direct invasion of privacy claim based on a revelation of private details of their family member.  48 Cal. App. 3d 59, 62-63 (1975).

In fact, the privacy claims do not require individual participation by Plaintiffs' staff.  *See Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286 (3d Cir. 2002) (plaintiff-association had satisfied the third Hunt prong where "the heart of its complaint involves systemic policy violations that will make extensive individual participation unnecessary") *compare to Spinedex Phys. Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014) (rejecting associational standing where the complaint alleged a variety of disparate wrongful acts, including non-payments, partial payments, different therapies, and ERISA violations because of the "multiple variations, specific to individual members of" the organization, associational standing was inappropriate).

This case is far closer to *Pennsylvania Psychiatric Society* than *Spinedex*.  Plaintiffs allege a consistent course of conduct by Defendants (surreptitiously recording Plaintiffs' staff at PPFA and NAF conferences and Planned Parenthood health centers) and the same injury—violation Plaintiffs' staff's expectation of privacy.  *See* FAC ¶¶ 240, 243, 246, 249.  Plaintiffs further allege that Defendants' recording is highly offensive to all staff who were surreptitiously filmed, given Defendants' motives, the nature of the invasion, "the history of violence, harassment, and

---

*Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990) (no associational standing because plaintiff association "seeks monetary relief requiring participation of individual members"); *Nat'l Coal. Gov't of the Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 344 (C.D. Cal. 1997) ("Because an association usually cannot bring an action for damages or restitution on behalf of its members, [the plaintiff] is limited to seeking injunctive relief on behalf of its members.").

oppression perpetrated by anti-abortion extremists against anyone connected with abortion and especially abortion providers," and "the likelihood that publication of Defendants' video tapes would lead to similar harassment and violence against Plaintiffs' staff." *Id.* ¶¶ 243, 249. That proof of those claims may require some individual participation by Plaintiffs' staff does not preclude associational standing. *Pa. Psych. Soc'y,* 280 F.3d at 286.

Finally, Defendants baldly state that "whether Defendants have violated the privacy rights of Plaintiffs' individual employees depends upon specific facts that will differ between employees, such as the specific circumstances of each alleged recording and whether each recorded individual actually had an expectation of privacy." Mot., 47. Defendants misunderstand Plaintiffs' allegations. Plaintiffs allege that *any* recorded conversation at the conferences and health centers by anti-abortion activists whose stated mission is to eradicate Planned Parenthood and who have obtained access through fraud and deceit constitutes a violation of their staffs' privacy, and they seek to enjoin Defendants from undertaking such conduct in the future. FAC ¶¶ 243, 246. There is no need for each staff member who was recorded to participate for Plaintiffs to pursue claims on their behalf against Defendants.[32]

### B.   Plaintiffs Allege The Elements Of Common Law Intrusion

Defendants next argue that Plaintiffs fail to plausibly allege the elements of a claim for invasion of privacy. Mot., 47-49. First, Defendants argue that Plaintiffs have not alleged facts that give rise to a plausible inference that Plaintiffs' staff had reasonable expectation of privacy in their conversations with Defendants at private conferences, clinics and in one-on-one meetings at restaurants. *Id.* 47. Indeed, according to Defendants, Plaintiffs' allegations "undercut" any plausible inference that Plaintiffs staff had a reasonable expectation of privacy because "Plaintiffs

---

[32] *Hernandez v. Hillsides, Inc.* and *Hill v. NCAA* offer no aid to Defendants. *Hernandez* provides only that plaintiffs must show that defendants "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and that the intrusion must be "highly offensive to a reasonable person." 47 Cal. 4th 272, 285 (2009). As explained above and in further detail below, Plaintiff allege that Defendants' conduct and practice violated Plaintiffs' staff's reasonable expectation of privacy. *Hill* lays out the elements of a claim under the California Constitution, which, as described below, Plaintiffs have adequately alleged on behalf of their staff.

have specifically alleged that the recorded conversations dealt with business arrangements and development of professional contacts."  According to Defendants, "[s]uch commercial conversations *cannot* support invasion of privacy claims."  *Id.* (emphasis added).  No authority is cited for such a sweeping legal proposition and, moreover, Defendants' characterization bears little relationship to the actual facts alleged.  *Vera*, 2012 WL 3263930, at *5 (denying defendant's summary judgment: community service worker had reasonable belief that conversation with individual posing as client were private in part because of sensitivity of communication).

Defendants rely on *Medical Laboratory* and *Wilkins*, both of which were decided at the summary judgment stage and thus say nothing about what is required to *plead* reasonable expectation of privacy.  In *Medical Laboratory* (also discussed *supra* Part X(B)) television reporters secretly taped conversations with the owner of a medical laboratory for an exposé.  The lab owner invited defendants into his lab after asking only the most perfunctory of questions and the conversations at issue occurred in what the court described as a "semi-public place of business."  Given the lack of precautions the plaintiff took, the court held that he did not have a reasonable expectation of privacy over his conversation.  306 F.3d at 813.[33]  In *Wilkins* (discussed in detail *supra* Part VIII(B)) the court held that the plaintiffs did not have a reasonable expectation of privacy in an investment pitch which they delivered to total strangers. 71 Cal. App. 4th at 1078.  Neither case stands for the proposition that commercial conversations cannot support invasion of privacy claims.  Both cases turn on specific facts, largely relating to the lack of precautions taken by the plaintiffs in each case to determine who they were speaking with as well as the public or "semi-public" nature of the environment in which the recorded conversations occurred.

These facts in *Medical Laboratory* and *Wilkins* are in marked contrast to those stated in the FAC.  Plaintiffs allege that the conferences Defendants infiltrated are designed to be opportunities for abortion providers—who are constantly subject to harassment, intimidation and even violence—

---

[33] Furthermore, *Medical Laboratory* interpreted Arizona law and acknowledged that California law was different.  306 F. 3d at 816 ("We conclude that the Arizona Supreme Court would not recognize as broad an interest in limited privacy as the California Supreme Court has done.").

to have a safe space to learn and exchange information without fear of harassment, intimidation, or violence by anti-abortion extremists.  FAC ¶ 54 (threats of violence); *id.* ¶ 66 (purpose of NAF meetings).  As such, conference operators (NAF and PPFA) have developed extensive security precautions to control who attends the conferences, protect the confidentiality of information exchanged at the conferences, and even limit the public's knowledge of when and where the conferences occur.  *Id.* ¶¶ 67, 79. In light of these security measures taken to ensure that only those committed to shared goals of promoting abortion and reproductive health care were in attendance, Plaintiffs allege that their staffs had a reasonable expectation that their conversations about sensitive topics that they engaged in with Defendants were private and not being recorded.  *See Frio*, 203 Cal. App. 3d at 1489-90 (security measures support reasonable expectation that communications would not be recorded); *Turnbull*, 2004 WL 2924590, at *13 (plaintiffs raised a fact issue as to their reasonable expectation of privacy in their conversations at actors' workshops that were secretly recorded; the workshops were not open to the public, participants had to audition and pay fees). Plaintiffs have more than satisfied their burden to allege facts giving rise to a plausible inference that their staff had a reasonable expectation of privacy in the conversations that Defendants secretly taped.[34]

Next, Defendants argue that Plaintiffs fail to allege that their secret recordings of Plaintiffs' staff would be highly offensive to a reasonable person.  Courts consider the following factors to determine the offensiveness of the intrusion: "(1) the degree of intrusion; (2) the context, conduct and circumstances surrounding the intrusion; (3) the intruder's motives and objectives; (4) the setting into which the intrusion occurs; and (5) the expectations of those whose privacy is invaded." *Sanchez-Scott v. Alza Pharm.*, 86 Cal. App. 4th 365, 377 (2001), *as modified* (Jan. 29, 2001).

The conduct alleged is here offensive on every count.  The degree of intrusion was extreme.

---

[34] Defendants also argue that the FAC fails to state a claim for intrusion because Plaintiffs have not alleged the details of the physical space.  Mot., 48.  *Hernandez v. Hillsides, Inc.*, the single case Defendants cite for support, does not require a plaintiff to focus on physical descriptions of the premises where, as here, she has alleged other circumstances justifying the expectation of privacy. 47 Cal. 4th 272, 287 (2009) (assessing the physical layout of the location as part of larger assessment of the circumstances of the intrusion).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Through fraud and use of false identification, Defendants obtained access to private spaces, even attempting to "force their way into sessions" where they were not permitted.  FAC ¶ 103.  At clinics, Defendants, through fraud, obtained access to secure patient treatment and lab areas inside Planned Parenthood facilities.  *Id.* ¶ 109.  The circumstances surrounding the intrusion include the history of violence, intimidation and harassment of abortion providers, all of which is precisely why NAF and PPFA take substantial measures to secure their conferences and exclude anti-abortion foes.  *Id.* ¶¶ 46-55. Plaintiffs' staff trusted that they were secure at conferences designed to be safe spaces and within the confines of their work places.  The motive of the intruders was to demonize Planned Parenthood and expose those associated with Planned Parenthood to harassment, threats and violence, which is exactly what occurred when Defendants released their smear videos.  *Id.* ¶¶ 124-25, 130 (death threats against Dr. Nucatola); *id.* ¶ 135 (death threats against Dr. Gatter); *id.* ¶ 138 (death threats against PPRM staff targeted by Defendants); *id.* ¶ 140 (death threats against PPGC staff targeted by Defendants).  All of these factors demonstrate the extreme offensiveness of Defendants' invasion of Plaintiffs' staff's privacy.

### C.   Plaintiffs State A Claim For Invasion Of Privacy Under The California Constitution

Defendants argue that Plaintiffs fail to sufficiently allege invasion of privacy under the California Constitution because they have failed to identify a legally protected interest. Mot., 49.[35] An interest "in precluding the dissemination or misuse of sensitive and confidential information," is a legally protected privacy interest.  *Cnty. of L.A. v. L.A. Cnty. Emp. Relations Comm'n.*, 56 Cal. 4th 905, 927 (2013).  Here, Plaintiffs allege that "the nature and subject matter of the conferences were highly sensitive," FAC ¶ 246, referring to communications with abortion providers about abortion procedures.  The fact that Plaintiffs' common law and constitutional invasion of privacy claims track one another does not mean, as Defendants reason, that the constitutional claim is infirm (Mot.,

---

[35] The elements of this claim are: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest."  *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 712 (9th Cir. 2005).

49); rather, it shows that Defendants' common law violation of Plaintiffs' privacy rights also trampled their staff's legally protected privacy interests.

Second, Defendants argue (without support) that Plaintiffs' allegations that anti-abortion activists infiltrated private conferences and meetings and secretly taped abortion providers does not constitute a sufficiently "egregious" violation of their staff's privacy rights.  Again, Defendants' description of their conduct as simply "recording business conversations in open settings" bears no resemblance to what Plaintiffs have pled (or what actually happened).  As is explained above with respect to whether Defendants' conduct was highly offensive, the violations alleged are the very definition of an egregious violation of Plaintiffs' privacy rights.

Finally, Defendants argue that their intrusion was justified.  While Plaintiffs strongly disagree that there could be *any* justification for Defendants' many wrongdoings, that argument is not relevant here because justification is an affirmative defense and Defendants do not even argue that their alleged justification is evident on the face of the FAC.  *Pettus v. Cole*, 49 Cal. App. 4th 402, 439 (1996); *Lovejoy v. Bank of Am., N.A.*, No. C 13-1638 DMR, 2013 WL 3360898, at *6 (N.D. Cal. July 3, 2013) (affirmative defenses may not be raised in a motion to dismiss unless the affirmative defense "is apparent on the face of the complaint.") (internal quotation marks omitted); *Simonian v. Fowler Unified Sch. Dist.*, 473 F. Supp. 2d 1065, 1067 (E.D. Cal. 2007).

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims are sufficiently pled in their First Amended Complaint and Defendants' motion to dismiss should be denied in its entirety.


Dated:  May 25, 2016                    ARNOLD & PORTER LLP



                                        By:  /s/ Amy Bomse
                                        AMY L. BOMSE

                                        Attorneys for Plaintiffs