1  Catherine W. Short.; SBN 117442
   LIFE LEGAL DEFENSE FOUNDATION
2  Post Office Box 1313
   Ojai, CA  93024-1313
3  Tel:  (707) 337-6880
   LLDFOjai@earthlink.net
4
5  Thomas Brejcha, *pro hac vice*
   Peter Breen, *pro hac vice*
6  THOMAS MORE SOCIETY
   19 S. La Salle St., Ste. 603
7  Chicago, IL 60603
   Tel: (312) 782-1680
8  tbrejcha@thomasmoresociety.org

9  *Attorneys for Defendant*
   *David Daleiden*
10

11          **UNITED STATES DISTRICT COURT,**
            **NORTHERN DISTRICT OF CALIFORNIA**
12

13  PLANNED PARENTHOOD FEDERATION    )  Case No. 16-cv-00236 (WHO)
    OF AMERICA, INC., et al.,        )
14                                   )  Judge William H. Orrick, III
                                     )
15              Plaintiffs,          )  **REPLY IN SUPPORT OF SPECIAL**
          vs.                        )  **MOTION TO STRIKE UNDER**
16                                   )  **SECTION 425.16 OF THE CALIFORNIA**
                                     )  **CODE OF CIVIL PROCEDURE OF**
17  CENTER FOR MEDICAL PROGRESS, et  )  **DEFENDANTS THE CENTER FOR**
    al.,                             )  **MEDICAL PROGRESS; BIOMAX**
18              Defendants.          )  **PROCUREMENT SERVICES, LLC;**
                                     )  **DAVID DALEIDEN and GERARDO**
19                                   )  **ADRIAN LOPEZ**
                                     )
20                                   )  Hearing Date:   July 6, 2016
                                     )  Time:           2:00 p.m.
21  _____ )

22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.   Defendants Have Satisfied the First Prong of the Anti-SLAPP Statute
     and Can Invoke the Statute's Protections. ................................................. 1

     A.   Defendants have not waived the anti-SLAPP statute's
          protections, and even if they had, California law decisively
          demonstrates that such a waiver is considered at the second
          stage of the anti-SLAPP inquiry. ................................................. 1

     B.   The narrow illegality exception to the anti-SLAPP statute does not
          apply in this case. ........................................................................ 3

II.  Plaintiffs Have Failed to Carry Their Burden Under the Second Prong of
     the Anti-SLAPP Statute of Presenting Evidence Showing That Their
     Claims Have Minimal Merit. ................................................................... 5

III. Plaintiffs Have Failed to Plead and Substantiate Their State-Law
     Claims, and the Court Should Strike Those Claims. ................................ 8

     A.   Plaintiffs have not established a breach of the PPFA
          Conference Agreements. ............................................................... 8

     B.   Plaintiffs have not established a breach of the PPGC
          Agreements. ................................................................................... 8

     C.   Plaintiffs have not stated a claim for breach of the NAF
          Agreements. ................................................................................... 9

     D.   Plaintiffs have not stated claims for trespass or for fraudulent
          misrepresentation. ....................................................................... 10

     E.   Plaintiffs have failed to state a claim under California Penal
          Code §§ 632 and 634. ................................................................. 11

     F.   Plaintiffs have failed to state a claim under the Florida
          wiretapping statutes, because they failed to allege or
          substantiate that any of Plaintiffs' staff were recorded in
          Florida. ....................................................................................... 14

     G.   Plaintiffs have failed to state claims under the Maryland state
          wiretapping statute. .................................................................... 14

     H.   Plaintiffs have failed to state claims for common-law invasion
          of privacy or invasion of privacy under the California
          Constitution. ............................................................................... 15

CONCLUSION................................................................................................................ 15

1

# TABLE OF AUTHORITIES

2

### *Cases*

3  *Carr v. Asset Acceptance, LLC,*
       Case No. CV F 11-0890 LJO GSA, 2011 WL 3568338 (E.D. Cal. Aug. 11, 2011) ............7

4

*Cross v. Cooper,*
5       197 Cal.App.4th 357 (2011) .................................................................................................3

6  *DaimlerChrysler Motors Co. v. Lew Williams, Inc.,*
       142 Cal.App.4th 344 (2006) .................................................................................................2

7

*Dwight R. v. Christy B.,*
8       212 Cal.App.4th 697 (2013) ............................................................................................3, 4

9  *Flatley v. Mauro,*
       39 Cal.4th 299 (2006) .....................................................................................................3, 4

10

*Flores v. Emerich & Fike,*
11       385 F. App'x 728 (9th Cir. 2010) ........................................................................................8

12  *Food Lion Inc. v. Capital Cities/ABC, Inc.,*
       964 F. Supp. 956 (M.D.N.C. 1997) .....................................................................................11

13

*Frio v. Superior Court,*
14       203 Cal.App.3d 1480 (1988) ..............................................................................................12

15  *Garcia v. Allstate Ins.,*
       Case No. 1:12-cv-00609, 2014 WL 37385 (E.D. Cal. Jan. 6, 2014) .....................................6

16

*Greenpeace, Inc. v. Dow Chem. Co.,*
17       97 A.3d 1053 (D.C. 2014) ....................................................................................................7

18  *Henry v. Bank of Am. Corp.,*
       522 F. App'x 406 (9th Cir. 2013) ........................................................................................4

19

*Hilton v. Hallmark Cards,*
20       599 F.3d 894 (9th Cir. 2009) ...............................................................................................3

21  *Karnazes v. Ares,*
       244 Cal.App.4th 344 (2016) .................................................................................................5

22

*Kenne v. Stennis,*
23       230 Cal.App.4th 953 (2014) ............................................................................................3, 4

24  *Lieberman v. KCOP Television, Inc.,*
       110 Cal.App.4th 156 (2003) ...............................................................................................12

25

*Lin v. Dignity Health-Methodist Hosp. of Sacramento,*
26       Case No. S-14-0666 KJM CKD, 2014 WL 3401451 (E.D.Cal. July 10, 2014) ....................8

27  *Malpas v. State,*
       116 Md. App. 69 (1997) ......................................................................................................14

28

## <u>TABLE OF AUTHORITIES (CONT.)</u>

<u>*Cases*</u>

*Matter of John Doe Trader Number One,*
    894 F.2d 240 (7th Cir. 1990) ............................................................................... 15

*Medical Laboratory Management Consultants v. ABC,*
    306 F.3d 806 (9th Cir. 2002) ............................................................................... 13

*Mindys Cosmetics, Inc. v. Dakar,*
    611 F.3d 590 (9th Cir. 2010) ............................................................................. 5, 7

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress,*
    Case No. 15-cv-03522-WHO, 2015 WL 5071977 (N.D. Cal. Aug. 27, 2015) .......... 6

*Navellier v. Sletten,*
    29 Cal.4th 82 (2002) ......................................................................................... 1, 2

*Nicosia v. De Rooy,*
    72 F. Supp.2d 1093 (N.D. Cal. 1999) ............................................................... 5, 7

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    781 F. Supp.2d 926 (N.D. Cal. 2011) ................................................................. 10

*PopCap Games, Inc. v. MumboJumbo, LLC,*
    350 S.W.3d 699 (Tex. App. 2011) ...................................................................... 11

*Powertech Tech., Inc. v. Tessera, Inc.,*
    872 F.Supp.2d 924 (N.D.Cal. 2012) .................................................................... 2

*Sherban v. Richardson,*
    445 So.2d 1147 (Fla. App. 1984) ....................................................................... 11

*Spinks v. Equity Residential Briarwood Apartments,*
    171 Cal.App.4th 1004 (2009) ............................................................................. 10

*Troy Grp., Inc. v. Tilson,*
    364 F. Supp.2d 1149 (C.D. Cal. 2005) ................................................................. 5

*Tuschler Dev. Enters., Inc. v. San Diego Unified Port Dist.,*
    106 Cal.App.4th 1219 (2003) ............................................................................... 7

*United States v. Hamdi,*
    432 F.3d 115 (2d Cir. 2005) ................................................................................. 2

*Vivian v. Labrucherie,*
    214 Cal.App.4th 267 (2013) ............................................................................. 2, 3

*Winselman v. Reynolds,*
    690 So.2d 1325 (Fla. App. 1997) ......................................................................... 7

*Zucchet v. Galardi,*
    229 Cal.App.4th 1466 (2014) ............................................................................... 4

iii

## **TABLE OF AUTHORITIES (CONT.)**

*__Statutes__*

Civ. Proc. Code § 425.16 ..................................................................................................... 4

Pen. Code § 632 ............................................................................................... 11, 12, 13, 14

Pen. Code § 634 ........................................................................................................... 11, 14

DEF.'S REPLY ISO MOT. TO STRIKE CLAIMS UNDER CALI.
ANTI-SLAPP LAW – 16-CV-00236 (WHO)

**INTRODUCTION**

This Court should strike all of Plaintiffs' state-law claims under California's anti-SLAPP statute.   Defendants have clearly satisfied the first prong of the anti-SLAPP statute by demonstrating that the case relates to their exercise of free-speech rights within the broad meaning of that statute.  Defendants' anti-SLAPP motion both challenges the sufficiency of the pleadings and demands an evidentiary showing from the Plaintiffs on the merits of their claims.  Plaintiffs have failed to produce *any evidence at all*, and this failure entails that all their state-law claims must be dismissed. Further, all of Plaintiffs' state-law claims fail to state a plausible claim for relief, and they should be dismissed on that independent ground as well.

**I.     Defendants Have Satisfied the First Prong of the Anti-SLAPP Statute and Can Invoke the Statute's Protections.**

At the first step of the anti-SLAPP analysis, a defendant must establish that its conduct falls within the statute's protections. *See Navellier v. Sletten*, 29 Cal.4th 82, 88-89 (2002).   As Defendants explained in their anti-SLAPP motion, their relevant conduct falls squarely within the statute's purview, and thus they have satisfied the first prong of the anti-SLAPP analysis. *See* Dkt. No. 85, at 2-5.  Plaintiffs offer two arguments in response, but neither has merit.[1]

**A.     Defendants have not waived the anti-SLAPP statute's protections, and even if they had, California law decisively demonstrates that such a waiver is considered at the second stage of the anti-SLAPP inquiry.**

Plaintiffs argue that Defendants cannot invoke the anti-SLAPP statute because, by signing purported confidentiality agreements, Defendants waived their speech rights. Dkt. 99, at 2-3.  This argument fails for three independent reasons.   First, as California courts have unanimously and repeatedly held, the question whether a defendant has "waived" any rights must be addressed at the second (*i.e.*, merits) prong of the anti-SLAPP analysis, not the first step.  For example, in *Navellier*, the California Supreme Court specifically recognized that any "waiver" effected by contract relates

---

[1] In addition to their two legal arguments, Plaintiffs also question whether Defendants' investigative methods complied with norms of journalism.  Dkt. 99, at 4-5.  Plaintiffs' contentions are meritless, and they are also beside the point: the application of the anti-SLAPP statute has nothing to do with whether Defendants produced award-winning journalism.  Tellingly, Plaintiffs do not cite a single case suggesting that such an inquiry is relevant.

to the second, "merits prong to the statutory SLAPP definition."  29 Cal.4th at 94 (holding that breach of contract claim fell within the scope of the anti-SLAPP statute's protections and remanding for consideration of merits of the claim).  Indeed, the California appellate courts have repeatedly rejected the notion that waiver analysis falls within the anti-SLAPP statute's first prong. *See*, *e.g.*, *DaimlerChrysler Motors Co. v. Lew Williams, Inc.*, 142 Cal.App.4th 344, 351 (2006) (rejecting argument that contractual waiver may be considered under first prong); *Vivian v. Labrucherie*, 214 Cal.App.4th 267, 275-278 (2013) (analysis of waiver argument: "he does not sustain his burden under the second prong of the anti-SLAPP analysis"); *see also Powertech Tech., Inc. v. Tessera, Inc.*, 872 F.Supp.2d 924, 934 (N.D.Cal. 2012) ("[I]in addressing the second prong of the anti-SLAPP inquiry, the California Supreme Court has recognized that a defendant who in fact has validly contracted not to speak or petition has in effect waived the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." (quotation omitted)).  Thus, even if Defendants had waived any rights, that fact would not affect whether they had satisfied the first prong of the anti-SLAPP analysis.

Second, for the reasons stated in the breach of contract sections of Defendants' Motion to Dismiss and anti-SLAPP briefing, the relevant agreements did not prohibit the speech in which Defendants engaged.  Thus, Defendants did not waive any relevant rights by entering into those agreements.  To the extent that there is any uncertainty as to whether those agreements waived any rights, the agreements must be construed narrowly to avoid the waiver of any constitutional or statutory right.  *See*, *e.g.*, *United States v. Hamdi*, 432 F.3d 115, 123 (2d Cir. 2005) ("[W]aivers of constitutional and statutory rights are to be interpreted narrowly." (quotation omitted)).

Third, even if waiver were relevant to the first anti-SLAPP prong, and even if the relevant agreements had waived *some* rights, they plainly did not cover all of Defendants' conduct falling within the scope of the anti-SLAPP statute's protections.  Even construing the relevant agreements extremely broadly, those agreements do not prohibit Defendants from engaging in all public speech regarding fetal-tissue trafficking and Plaintiffs' participation therein.  *See* Dkt. Nos. 59-2 (PPFA Exhibitor Agreement); 59-4 (MDC Exhibitor Agreement); 59-7 (NAF Exhibitor Agreement); 59-8 (NAF Confidentiality Agreement); 59-13 (PPGC Confidentiality Agreement); 85-1 (Daleiden

2

Declaration describing Defendants' public speech that includes matters plainly outside the scope of any of the foregoing agreements). Indeed, there is no plausible argument that the recordings of Drs. Nucatola, and Gatter or the recordings involving PPRM fall within the scope of any of the relevant agreements. *See* Dkt. No. 59, ¶¶ 128-138. Thus, at a minimum, Defendants did not waive their rights to speak regarding these matters, and thus Plaintiffs' claims are premised, at least in part, on matters about which Defendants did not waive their right to speak. "Under established authority, when a cause of action is based on both protected and unprotected activity, it is subject to the anti-SLAPP statute, unless the protected activity is merely incidental to the unprotected conduct." *Kenne v. Stennis*, 230 Cal.App.4th 953, 967 (2014). Thus, any purported waivers that occurred would not prevent Defendants from invoking the anti-SLAPP statute's protections.

Defendants have satisfied the first prong of the anti-SLAPP analysis, and the burden shifts to Plaintiffs to "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009) (quotation omitted). Plaintiffs have failed to satisfy this burden.

**B.    The narrow illegality exception to the anti-SLAPP statute does not apply in this case.**

Plaintiffs also claim that Defendants cannot invoke the anti-SLAPP statute's protections because Defendants engaged in supposedly unlawful activity. Dkt. 99, at 3-4. Plaintiffs misapprehend the relevant legal principles. A defendant ordinarily cannot invoke the anti-SLAPP statute's protections when "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." *Flatley v. Mauro*, 39 Cal.4th 299, 320 (2006). However, if the defendant does not concede that its conduct was unlawful, and if no *evidence conclusively proves* that the defendant's conduct was unlawful, then the defendant can invoke the anti-SLAPP statute's protections. *Dwight R. v. Christy B.*, 212 Cal.App.4th 697, 711-12 (2013); *see also Vivian*, 214 Cal.App.4th at 275 (defendant could invoke anti-SLAPP statute where "no conclusive evidence or concession that [she] did anything unlawful"); *Cross v. Cooper*, 197 Cal.App.4th 357, 386 (2011) (defendant could invoke anti-SLAPP statute, because "[n]ot only did [defendant] not concede criminal conduct, but we do not

3

1   find this to be one of those rare cases in which there is uncontroverted and uncontested evidence

2   that establishes the crime as a matter of law"); *Zucchet v. Galardi*, 229 Cal.App.4th 1466, 1478

3   (2014) ("Our Supreme Court has emphasized that the exception for illegal activity is very narrow

4   and applies only in undisputed cases of illegality."); *Henry v. Bank of Am. Corp.*, 522 F. App'x

5   406, 407-08 (9th Cir. 2013) (holding that defendant could invoke anti-SLAPP statute where "the

6   record does not conclusively establish that [his conduct] was unlawful").

7        Importantly, the plaintiff must produce *evidence* that the defendant's conduct was unlawful,

8   and a plaintiff may not rest on the allegations in its complaint.  Unsurprisingly, a plaintiff's "mere

9   allegation that [the defendant] engaged in unlawful [activity] is insufficient to render her alleged

10  actions unlawful as a matter of law and outside the protection of Code of Civil Procedure section

11  425.16." *Dwight R.*, 212 Ca.App.4th at 712.

12       Here, Defendants vigorously dispute that they engaged in unlawful activity.  And Plaintiffs

13  have failed to come forward with *any* evidence at all, let alone "evidence [that] conclusively

14  establishes" that Defendants engaged in unlawful conduct.  *Flatley*, 39 Cal.4th at 320.   Thus,

15  Plaintiffs cannot rely on the illegality exception to the anti-SLAPP statute.  *See id.*; *Dwight R.*, 212

16  Cal.App.4th at 711-12; *Zucchet*, 229 Cal.App.4th at 1478-79.

17       Moreover, even if Plaintiffs could invoke the illegality exception—which they clearly

18  cannot—Defendants would still be entitled to the anti-SLAPP statute's protection, because large

19  portions of their conduct were indisputably lawful.  "Under established authority, when a cause of

20  action is based on both protected and unprotected activity, it is subject to the anti-SLAPP statute,

21  unless the protected activity is merely incidental to the unprotected conduct."   *Kenne*, 230

22  Cal.App.4th at 967.  Here, all of Plaintiffs' state-law claims rely heavily on conduct by Defendants

23  that plainly was not unlawful—most notably Defendants' public speech.  *See, e.g.*, Dkt. 59, ¶¶ 12,

24  17, 142-147, 161.  Such public speech on matters of paramount and legitimate public interest falls

25  within the protections of the anti-SLAPP statute, and thus the anti-SLAPP statute applies to the

26  entirety of Plaintiffs' claims against Defendants.

27       In addition, for the reasons stated in their briefing on their Motion to Dismiss and their anti-

28  SLAPP Motion, Defendants have not engaged in any unlawful activity.  Thus, the Court should

1  proceed to the second stage of the anti-SLAPP inquiry.

2  **II.    Plaintiffs Have Failed to Carry Their Burden Under the Second Prong of the Anti-SLAPP
       Statute of Presenting Evidence Showing That Their Claims Have Minimal Merit.**

3

4          The Court should strike all of Plaintiffs' state-law claims, because Plaintiffs failed to meet

5  their burden of producing evidence showing that their claims have minimal merit.   Once a

6  defendant satisfies the first prong of the anti-SLAPP framework, the burden shifts to the plaintiff to

7  "state and substantiate a legally sufficient claim."   *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590,

8  598-99 (9th Cir. 2010) (quotation omitted).   To "substantiate a legally sufficient claim," a plaintiff

9  must "go beyond the pleadings and present admissible evidence showing a probability of success at

10  trial." *Troy Grp., Inc. v. Tilson*, 364 F. Supp.2d 1149, 1155 (C.D. Cal. 2005).  A party cannot rely

11  on the allegations in its complaint to substantiate its claims.  *See, e.g.*, *Nicosia v. De Rooy*, 72 F.

12  Supp.2d 1093, 1110 (N.D. Cal. 1999) ("Pleadings by themselves are inadequate to demonstrate a

13  prima facie case—the plaintiff must submit admissible evidence to show a probability of prevailing

14  at trial."); *Karnazes v. Ares*, 244 Cal.App.4th 344, 354 (2016) (holding that anti-SLAPP motion

15  was properly granted where plaintiff failed to substantiate her claims with anything other than her

16  verified complaint).  Here, Plaintiffs have not presented *any* evidence to support any of their state-

17  law claims.  Instead, they rest entirely on their claim that the Complaint adequately pleads plausible

18  causes of action.  *See generally* Dkt. No. 99.  Even if that were true, the allegations in the

19  Complaint do not satisfy Plaintiffs' burden to produce admissible evidence showing that their

20  claims have merit. Thus, the Court should strike all of Plaintiffs' state-law claims.

21          Plaintiffs argue that they need not present any evidence to support their claims, because

22  "Defendants have expressly limited their anti-SLAPP motion to purported legal deficiencies in the

23  FAC and ask[ed] the Court to therefore treat their motion as a Federal Rules of Civil Procedure

24  12(b)(6) motion." Dkt. No. 99, at 5.  This contention lacks merit.  Defendants *did not* "expressly

25  limit[]" their anti-SLAPP motion to pleading deficiencies in the Complaint.  To be sure, the anti-

26  SLAPP Motion identifies numerous pleading deficiencies in the Complaint that warrant striking all

27  of Plaintiffs' state-law claims.  *See infra*.  But the Motion *also* argued that, under the anti-SLAPP

28  statute, Plaintiffs had the burden to show that their claims are "supported by a sufficient prima facie

1  showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

2  credited."  Dkt. No. 85, at 2; see also Dkt. No. 85, at 5 ("Defendants incorporate by reference the

3  arguments in their Motion to Dismiss, as summarized *and expanded upon* below.").

4          Further buttressing the conclusion that the Motion raised both pleading and factual issues is

5  the fact that Defendants' filed seven exhibits, including two declarations, to their anti-SLAPP

6  Motion.  *See* Dkt. Nos. 85-1 – 85-7.  And Plaintiffs, throughout their opposition, noted all of the

7  factual issues.  *E.g.*, Dkt. 99, at 9 (whether contract damage were reasonably foreseeable is a

8  question of fact); at 12 (proximate causation is a question of fact); at 13 (same); at 15 n. 11

9  ("reasonableness of expectations is a fact issue"); at 18 n. 13 (whether circumstances of meeting

10 with Dr. Nucatola indicate a reasonable expectation of privacy is a factual issue). An anti-SLAPP

11 motion may contest both the sufficiency of the pleadings *and* obligate the plaintiff to come forward

12 with evidence.  *See Garcia v. Allstate Ins.*, Case No. 1:12-cv-00609, 2014 WL 37385, at *9 (E.D.

13 Cal. Jan. 6, 2014).  Defendants' anti-SLAPP Motion here was just such a motion.

14         In the *National Abortion Federation v. Center for Medical Progress* case, the Court found

15 that an anti-SLAPP motion that was solely directed at the sufficiency of the pleadings actually

16 raised factual issues that went beyond arguments under Rule 12(b)(6).  *See Nat'l Abortion Fed'n v.*

17 *Ctr. for Med. Progress*, Case No. 15-cv-03522-WHO, 2015 WL 5071977, at *6-8 (N.D. Cal. Aug.

18 27, 2015).  In reaching this conclusion, the Court emphasized that the anti-SLAPP motion had

19 challenged the sufficiency of a complaint that "describe[d] a detailed factual scenario" similar to

20 that described in Plaintiffs' Complaint here.  *Id.* at *6.  The Court further noted that the anti-SLAPP

21 motion required interpretation of several contracts, which under California law ordinarily requires

22 an evidentiary showing.  *Id.* at *8.  Here, too, the complaint describes a comparably detailed factual

23 scenario, including, inter alia, the identical contracts at issue in NAF. Plaintiffs claim standing to

24 enforce these contracts as third-party beneficiaries, an expansion Defendants contested in their

25 moving papers. *See* Dkt. No. 59, at 50-54, 64-65. Further, Defendants' motion called into question

26 whether, *e.g.*, Plaintiffs or NAF had an exclusive possessory interest in the meeting and reception

27 areas they rented at hotels, whether Plaintiffs had standing to bring these claims on behalf of

28 various staff at various times and in various settings, and whether Plaintiffs have any proximately

1   caused damages. Thus, Defendants' anti-SLAPP Motion here raised factual issues, and Plaintiffs

2   were obligated to present evidence supporting their claims. *See Nicosia*, 72 F. Supp.2d at 1110.

3   They failed to present any evidence, and thus they have failed to satisfy their burden under the

4   second prong of the anti-SLAPP statute.

5         Importantly, Defendants bore no initial burden of presenting evidence to support the merits

6   prong of their anti-SLAPP Motion. "[A] motion to strike does not impose an initial burden of

7   production on the moving defendant." *Mindys Cosmetics*, 611 F.3d at 599. "[I]t was not

8   [Defendants'] burden to show [that Plaintiffs] *could not* demonstrate a probability of prevailing on

9   [their] claims; [their] only burden was to establish that the claims fell within the ambit of the

10  statute." *Tuschler Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal.App.4th 1219, 1239

11  (2003). Once Defendants satisfied the first anti-SLAPP prong, Plaintiffs had a burden to produce

12  admissible evidence supporting their claims, regardless of whether Defendants had produced any

13  evidence relating to the merits. *Carr v. Asset Acceptance, LLC*, Case No. CV F 11-0890 LJO GSA,

14  2011 WL 3568338, at *5 (E.D. Cal. Aug. 11, 2011) ("At the pleading stage a section 425.16

15  motion, like a summary judgment motion, pierces the pleadings and requires an evidentiary

16  showing."). Plaintiffs failed to do so, and thus the Court should strike their state-law claims.

17        Striking Plaintiffs' claims for this reason is particularly appropriate here, because the

18  relevant evidence is primarily and for the most part solely within Plaintiffs' possession or control.

19  For example, the merits of Plaintiffs' trespass claim depends in part on the specific provisions of

20  the alleged leases they executed with the hotels hosting their conferences. *See* Dkt. No. 99, at 9-10.

21  If the terms of these leases did not grant Plaintiffs a possessory interest in the hotel property, then

22  they cannot maintain a trespass action for Defendants' entry onto that property. *See Greenpeace,*

23  *Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1060 (D.C. 2014); *Winselman v. Reynolds*, 690 So.2d 1325,

24  1327 (Fla. App. 1997). But Defendants have no access to these leases; only Plaintiffs do. Similarly,

25  damages are an element of every one of Plaintiffs' state-law claims. But the actual evidence of

26  whether and to what degree Plaintiffs have suffered any damages is uniquely within Plaintiffs'

27  custody and control. Thus, it is particularly appropriate to expect Plaintiffs to produce evidence on

28  these matters. Plaintiffs also failed to establish that each Plaintiff affiliate bringing each claim for

unlawful recording had a staff member who engaged in conversation with Defendants at the relevant conference. Again this information is readily available to Plaintiffs. Moreover, Plaintiffs unilaterally determined that discovery was unnecessary to the resolution of the anti-SLAPP Motion here. Thus, they cannot claim that additional discovery is necessary before the Court rules on the Motion. *See Flores v. Emerich & Fike*, 385 F. App'x 728, 731-32 (9th Cir. 2010); see also *Lin v. Dignity Health-Methodist Hosp. of Sacramento*, Case No. S-14-0666 KJM CKD, 2014 WL 3401451, at *21 (E.D.Cal. July 10, 2014) ("Because plaintiff did not make a timely and proper showing in response to the motion to strike, that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case, she is not entitled to a reasonable opportunity to obtain that evidence through discovery before the motion to strike is adjudicated." (quotation omitted)).

Because Plaintiffs have clearly failed to meet their evidentiary burden under the second prong of the anti-SLAPP statute, the Court should strike all of the state-law claims contained in Plaintiffs' Complaint.

## III. Plaintiffs Have Failed to Plead and Substantiate Their State-Law Claims, and the Court Should Strike Those Claims.

In addition to failing to produce admissible evidence to show that any of their state-law claims has any merit, Plaintiffs have also failed to state a claim for the state-law claims in their Complaint.  Thus, the Court should strike all of those state-law claims pursuant to California's anti-SLAPP statute.

### A.    Plaintiffs have not established a breach of the PPFA Conference Agreements.

Plaintiffs' arguments in favor of Count Four, for purported breaches of the PPFA Conference Agreements, are substantively identical to the arguments presented in their response to Defendants' Motion to Dismiss.  For the reasons stated in Defendants' Reply in support of their Motion to Dismiss, Plaintiffs' arguments lack merit.  *See* Dkt. No. 97, at 11-12.  Moreover, plaintiffs have failed to substantiate the existence of damages, as well as other elements of the claim. Thus, the Court should strike Count Four of the Complaint.

### B.    Plaintiffs have not established a breach of the PPGC Agreements.

Plaintiffs' arguments in favor of Count Fifteen, for purported breaches of agreements

between Defendants and Plaintiff PPGC, largely track those presented in their response to Defendants' Motion to Dismiss.  For the reasons stated in Defendants' Reply in support of their Motion to Dismiss, Plaintiffs' arguments lack merit.  *See* Dkt. No. 97, at 13.

Plaintiffs also misstate the contents of their own complaint. The Complaint lays out the relevant provisions of the PPGC contract (¶ 114), including that information be "reasonably understood by the Recipient" to be confidential, and follows with two paragraphs of allegations about PPGC's *staff*'s intentions and expectations (¶¶ 115-16), never mentioning the defendants' understanding.

In their opposition, Plaintiffs try to cover up this lapse by pointing to allegations they contend establish that "a reasonable person would understand" unspecified information was confidential. First, they argue the contents of the communications themselves marked them as confidential. However, the language of the agreement makes no provision for self-certification of information as confidential. Second, in the face of Defendants' evidence to the contrary, Plaintiffs falsely allege that "the entire meeting took place in a private medical office and clinical spaces that is off limits to the public." Dkt. 99, at 7; *cf.* Dkt. 87-1, ¶ 9 (from 10:15 to 11:45 a.m. [2:04:10-3:30:38] Defendants Daleiden and Merritt and PPGC staff leave the facility, drive to a public restaurant for lunch, and while there, at PPGC staff's request, continue to talk "business").

Plaintiffs have neither sufficiently alleged nor substantiated breach of the PPGC agreement. The Court should strike Count Fifteen of the Complaint.

**C.    Plaintiffs have not stated a claim for breach of the NAF Agreements.**

Plaintiffs' arguments in favor of Count Five, for purported breaches of agreements between Defendants and the National Abortion Federation ("NAF"), are substantively identical to those presented in their response to Defendants' Motion to Dismiss.  For the reasons stated in Defendants' Reply in support of their Motion to Dismiss, Plaintiffs' arguments lack merit.  *See* Dkt. No. 97, at 12.

Most importantly, Plaintiffs plainly do not constitute third-party beneficiaries of the NAF Agreements and thus cannot sue for any purported breaches of those agreements.  A non-party who is not named in a contract qualifies as a third-party beneficiary only if "the contract expressly

1   names a class of beneficiaries, and . . . the plaintiff belongs to the class," or if the "contract

2   discharges a separate contractual duty owed to the nonparty." *Northstar Fin. Advisors, Inc. v.*

3   *Schwab Invs.*, 781 F. Supp.2d 926, 942-43 (N.D. Cal. 2011). The NAF contracts do not identify

4   any class of intended third-party beneficiaries, let alone one into which Plaintiffs fall. For this

5   reason, *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004 (2009), is

6   inapplicable. *See Northstar*, 781 F. Supp.2d at 943 (distinguishing *Spinks* because it involved a

7   contract that "expressly nam[ed] a class of beneficiaries, [and] the plaintiffs alleged that they were

8   class members"). Similarly, the NAF contracts did not discharge a separate contractual duty owed

9   directly to Plaintiffs. Thus, Plaintiffs do not qualify as third-party beneficiaries of the NAF

10  contracts. The Court should strike Count Five of the Complaint.

11          **D.   Plaintiffs have not stated claims for trespass or for fraudulent misrepresentation.**

12          Plaintiffs' trespass and fraudulent misrepresentation claims suffer from three defects. First,

13  Plaintiffs have failed to present evidence substantiating PPFA's exclusive possessory interest in the

14  areas where the PPFA conferences were held, evidence that is uniquely in PPFA's possession.

15          Second, Plaintiffs have failed to plead facts showing that any of their alleged damages were

16  proximately caused by the purported trespasses or fraudulent misrepresentations. *See* Dkt. No. 85,

17  at 13-14.

18          In response, relying solely on a California case, Plaintiffs suggest that fraudulent

19  misrepresentation (not trespass) does not require a showing of proximate causation. Dkt. No. 99, at

20  12. However, Plaintiffs have not shown that California law governs these claims. Their

21  fraudulent-misrepresentation claim is premised on alleged representations that enabled Defendants

22  to access PPFA conferences and PPGC and PPRM clinics. *See* Dkt. No. 59, ¶¶ 204-210. At least

23  some of these representations plainly occurred in locations outside California. For example, the

24  claim is premised on Defendants' allegedly having "presented fake identifications to infiltrate and

25  gain access to PPFA's private conferences and PPGC's and PPCFC's facilities." *Id.* ¶ 205.

26  Moreover, most of the alleged facts giving rise to the claim—including any reliance by Plaintiffs,

27  and any harm sustained by Plaintiffs—occurred outside California. Thus, there is no clear basis for

28  application of California law to the fraudulent-misrepresentation claim, and Plaintiffs make no

1   effort to establish that California law governs.

2           Under Florida and Texas law, fraudulent misrepresentation *does* require a showing that the

3   plaintiff's damages were proximately caused by the defendant's misrepresentation.  *See, e.g.,*

4   *Sherban v. Richardson*, 445 So.2d 1147, 1148 (Fla. App. 1984); *PopCap Games, Inc. v.*

5   *MumboJumbo, LLC*, 350 S.W.3d 699, 713 (Tex. App. 2011).  Because Plaintiffs have failed to

6   allege facts showing that they sustained any injuries proximately caused by the alleged fraudulent

7   misrepresentations or trespasses, they have failed to state a claim for trespass or fraud under the

8   laws of the relevant States.

9           Plaintiffs also assert that Defendants' alleged trespass or fraud itself—and not subsequent

10  matters, such as publication of videos and the public debate that ensued from those publications—

11  directly caused their alleged injuries.  Dkt. No. 99, at 12-13.  This position ignores the Complaint's

12  repeated allegations that CMP's *videos* and public speech caused the alleged harms for which

13  Plaintiffs seek relief.  *See, e.g.*, Dkt. No. 59, ¶¶ 12, 142-147.  The Complaint indisputably pleads

14  that the proximate cause of any injuries was Defendants' public speech, not any misrepresentations

15  or trespasses that led—through an attenuated causal chain—to those publications.  *See Food Lion*

16  *Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956 (M.D.N.C. 1997).  The Court should strike

17  Plaintiffs' claims for trespass and fraudulent misrepresentation.

18          Finally, the First Amendment bars Plaintiffs' trespass and fraudulent-misrepresentation

19  claims, because Plaintiffs seek exclusively publication damages, and they have not satisfied the

20  constitutional standard for defamation liability.  Plaintiffs' arguments on this point are

21  substantively identical to those advanced in their response to Defendants' Motion to Dismiss.  For

22  the reasons stated in Defendants' Reply in support of their Motion to Dismiss, Plaintiffs' arguments

23  lack merit.  *See* Dkt. No. 97, at 14-15.  The Court should strike Plaintiffs' claims for trespass and

24  fraudulent misrepresentation.

25          **E.      Plaintiffs have failed to state a claim under California Penal Code §§ 632 and 634.**

26          Plaintiffs' arguments in favor of their claims under California Penal Code §§ 632 and 634

27  largely track those made in their response to Defendants' Motion to Dismiss.  For the reasons

28  stated in Defendants' Reply in support of their Motion to Dismiss, Plaintiffs' arguments lack merit.

1    *See* Dkt. No. 58, at 15-20.

2           The new cases cited by Plaintiffs do not strengthen their position.  Plaintiffs seemingly

3    contend that *Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156 (2003), held that the

4    presence of others is irrelevant to whether a recorded individual has a reasonable expectation that

5    the conversation is not being overheard.  Dkt. No. 99, at 15.  Plaintiffs misread *Lieberman*.  In that

6    case, an undercover reporter and another employee from the same television station recorded

7    conversations that the two had with a physician.  *Lieberman*, 110 Cal.App.4th at 161.  The

8    recorded conversations took place in the physician's "private office," with the door closed and no

9    other persons present.  *Id.*  The reporter argued that the presence of the other television-station

10   employee meant that the recorded doctor should have expected the conversation to be overheard.

11   *Id.* at 168.  The court understandably rejected this argument, concluding that because the other

12   individual was *part* of the conversation, which took place in a secluded and private setting, that

13   person was not a potential eavesdropper who might overhear, but rather an intended hearer.  *Id.* at

14   168-69.  The facts in *Lieberman* differ strikingly from those at issue here, where alleged recordings

15   took place in a large conference hall filled with hundreds of strangers milling about.  Plaintiffs

16   cannot plausibly claim that all of the conference attendees, exhibitors, and hotel staff were part of

17   the same conversation, in the way that the television-station employee in *Lieberman* was.  Thus,

18   *Lieberman* does not support Plaintiffs' position.

19          Plaintiffs' reliance on *Frio v. Superior Court*, 203 Cal.App.3d 1480 (1988), fares no better.

20   Plaintiffs claim that *Frio* held that "security measures support [a] reasonable expectation that

21   communications would not be recorded."  Dkt. No. 99, at 16.  This contention has two flaws.  First,

22   *Frio* expressly stated that its analysis was specific to the recording of telephone calls, not to face-

23   to-face conversations.  *Frio*, 203 Cal.App.3d at 1489 ("There is little similarity between the face-

24   to-face confrontational meeting in *Pedersen* and the telephone conversations addressed in the

25   present case.").  Thus, on its own terms, *Frio* is inapplicable here.  Second, in *Frio*, there were no

26   security measures taken to avoid recording.  Instead, the defendant argued that under § 632, "all

27   business communications lack confidentiality."  *Id.*  The court rejected this categorical rule,

28   explaining that nothing in the statute or case law dictated this broad categorical rule.  *Id.*  The court

12

1  also noted that such a result would be extremely surprising, because "many businesses employ

2  extensive security measures to prevent the disclosure of market data or business strategy of the type

3  apparently under discussion in the Frio conversations."  *Id.*  Thus, the reference to "security

4  measures" in *Frio* simply does not support Plaintiffs' position.

5       Nor does *Medical Laboratory Management Consultants v. ABC*, 306 F.3d 806 (9th Cir.

6  2002), support Plaintiffs' claim.  *Medical Laboratory* involved a claim for common-law invasion

7  of privacy.  The passage quoted by Plaintiffs considered whether the plaintiff had shown a

8  "subjective expectation of privacy." The court noted that security measures could support the

9  existence of such a *subjective* expectation of privacy. Critically, however, whether a

10  communication is confidential under § 632 depends on whether a person has an *objectively*

11  *reasonable* expectation of privacy, not a *subjective* expectation of privacy.  *Lieberman*, 110

12  Cal.App.4th at 168.  Thus, the analysis in *Medical Laboratory* has no bearing on the issue here.

13       Plaintiffs do not contest the fact that no Plaintiff bringing the Ninth Cause of Action has

14  standing to do so on behalf of Dr. Gatter. As to Dr. Nucatola, Plaintiffs contend that Defendants,

15  posing as executives of a tissue procurement company, sought her out to discuss their business, and

16  that this is sufficient to show that she spoke to Defendants "in [her] capacity as employee[]."

17  However, the recording itself belies this assertion. The meeting was clearly viewed by Dr. Nucatola

18  as an opportunity to provide the benefit of her experience and contacts to a new fetal tissue

19  procurement company, not a business meeting at which she was speaking as PPFA.[2] Dkt. 87-1, ¶ 6.[3]

20  _____

21       [2]  In any event, PPFA itself has admitted that the conversation was held in a "non-
   confidential setting." *See* https://www.youtube.com/watch?v=Wg4Ub4vAtHU at 0:30-52, 3:18-27.

22       [3]  At 12:40 ("The other thing is, have you been speaking with Family Planning Associates at
   all, in California? . . . I know their medical director, I can connect you with their medical director, .
   . . Her name is Rachel Steward. I'll connect you all via e-mail."); at 14:00 ("I know the people, I

23  don't know- I know the staff. . . . Which, is why I think Family Planning Associates is an option
   because they go all the way to Bakersfield, and all the way down to Orange County, so pretty broad

24  range. They definitely go to 18 weeks, and at some sites, a little higher than 18 weeks. . . ."); at
   47:50 ("I really do think you have a good opportunity with Family Planning Associates in Southern

25  California. As I said, as soon as I get back to my desk I'll connect you guys with Rachel. . . . To my
   knowledge networking is even easier in California. So, I think that's a fantastic opportunity there. .

26  . . Right now the laws in Texas are pretty crazy, so there's only two affiliates – there's only seven
   clinics right now. Five of them are independent and two of them are Planned Parenthood. . . .

27  There's a woman named Amy, I'm blanking on her last name – Whole Woman's Health – I don't
   know if she spoke to you at NAF . . . I'm sure you must have, she's got kind of shorter blonde hair .

28                                                                                        (Continued...)

Plaintiffs have also failed to substantiate that staff members of each of the Plaintiffs bringing this claim were in fact recorded by the Defendants at the 2014 NAF meeting, much less that they were recorded while speaking on behalf of their employer.[4] Plaintiffs failed to substantiate that defendant Adrian Lopez engaged in any recording in California.  Finally, plaintiffs have also failed to substantiate that NAF had an exclusive possessory interest in the meeting spaces it leased for the 2014 meeting, and thus that Defendants had engaged in trespass under Penal Code § 634.

For the reasons stated here and in Defendants' other briefing, the Court should strike Plaintiffs' Ninth and Tenth claims under California Penal Code §§ 632 and 634.

**F.      Plaintiffs have failed to state a claim under the Florida wiretapping statutes, because they failed to allege or substantiate that any of Plaintiffs' staff were recorded in Florida.**

Plaintiffs failed to allege, much less substantiate, that Defendants recorded any of Plaintiffs' staff at PPFA meetings in Florida. Paragraphs 80, 92, and 102 do not allege that Plaintiffs' staff were so recorded.

**G.      Plaintiffs have failed to state claims under the Maryland state wiretapping statute.**

Plaintiffs' Maryland wiretapping claim fails for the same reasons as their § 632 claim does. Both claims involve recordings at large professional conferences. The Maryland wiretapping statute applies only if the recorded individual had a reasonable expectation of privacy. *Malpas v.*

---

(...Continued)

. . really nice, really outspoken"); at 49:59 ("That's gonna win your business, that is gonna win your – that's gonna win business. 'We'll take all of your tissue at the end of the day,' absolutely . . . If anything, you can make it even better to their bottom line by giving them services in kind instead of money. I think a lot of them would take you up on that. Yeah, that would definitely get people. Say, 'I'll give it to you for the same price, AND I'll do that.'"); at 1:29:53 ("I work at a private clinic where, if the patients want to take the remains with them and have them cremated, they can do that. . . . But at the end of the day, it's just being sent off to Stericycle or some other company); at 1:38:00 ("Maybe you guys can establish a relationship with just those [second trimester] providers, to just tap into those practices, because there's not a lot of us. That's the conversation to have. In most clinics it's going to be the clinic owner or the clinic manager is gonna say: 'Yes, we're doing this, this is what you're doing.' You're not really going to talk to the provider, the providers gonna change everyday, someone's just going to come in and do what they do everyday. If you can establish a relationship with the providers, that would be great.").

[4] Plaintiffs have already conceded that they do not allege that any staff members who may have been recorded had a reasonable expectation that they would not be overheard by other attendees. Dkt. 91 at 31 n.21.

1  *State*, 116 Md. App. 69 (1997).  Plaintiffs premise the reasonableness of an alleged expectation of

2  privacy on the "security measures" at the conferences and on the fact that attendees were required

3  to execute confidentiality agreements. Applying the federal Wiretap Act, the Seventh Circuit has

4  described an expectation of privacy premised on such factors as "naïve," not reasonable. *Matter of*

5  *John Doe Trader Number One*, 894 F.2d 240, 244 (7th Cir. 1990); *see also id.* at 243.  Thus,

6  Plaintiffs have failed to plead facts showing that they had a reasonable expectation of privacy in

7  any of the allegedly recorded conversations, and thus they have failed to state a claim under the

8  Maryland wiretapping statutes.  They also have failed to substantiate that conversations of staff

9  members of each of the Plaintiffs were recorded in Maryland and that they had a reasonable

10  expectation of privacy in those conversations. The Court should strike the Twelfth Claim.

11      **H.    Plaintiffs have failed to state claims for common-law invasion of privacy or**
        **invasion of privacy under the California Constitution.**

12

13      Plaintiffs' arguments in favor of their common-law invasion of privacy and California

14  constitutional claim are substantively identical to those presented in their response to Defendants'

15  Motion to Dismiss.  For the reasons stated in Defendants' Reply in support of their Motion to

16  Dismiss, Plaintiffs' arguments lack merit.  *See* Dkt. No. 97, at 19-20.  Most importantly, Plaintiffs

17  plainly lack standing to bring these claims on behalf of their members.  *See id.*  Moreover, plaintiffs

18  now admit that they are attempting to bring claims for "invasion of privacy" and "intrusion on

19  seclusion" for recording conversations that did *not* involve "personal, private matters." Dkt. 99, at

20  23. Such a claim cannot stand.

21      Plaintiffs' privacy claims are premised on the recording of conversations. Dkt 59, at ¶ 243,

22  249 (the "nature of the invasion" was "covert surveillance by electronic recording devices").

23  Plaintiffs have failed, as they have in the recording claims discussed above, to present evidence

24  within their control substantiating the elements of these claims.

25                                   <u>**CONCLUSION**</u>

26      Plaintiffs have failed to state a claim for any of their state-law causes of action. Moreover,

27  Plaintiffs have also failed to substantiate the allegations underlying these claims.  Thus, the Court

28  should strike all of Plaintiffs' state-law claims pursuant to California's anti-SLAPP statute.

1                                     Respectfully submitted,

2   Catherine W. Short; SBN 117442        /s/ Catherine Short
    LIFE LEGAL DEFENSE FOUNDATION      *Counsel for Defendants CMP and BioMax*

3   Post Office Box 1313
    Ojai, CA  93024-1313

4   Tel:  (707) 337-6880
    LLDFOjai@earthlink.net

5

    Charles S. LiMandri; SBN 110841

6   Paul M. Jonna; SBN 265389
    Teresa L. Mendoza; SBN 185820

7   Jeffrey M. Trissell; SBN 292480
    FREEDOM OF CONSCIENCE DEFENSE FUND

8   P.O. Box 9520
    Rancho Santa Fe, CA 92067

9   Tel:  (858) 759-9948
    Facsimile:  (858) 759-9938

10   cslimandri@limandri.com

11   *Attorneys for Defendants*
    *The Center For Medical Progress,*

12   *BioMax Procurement Services, LLC*

13   Catherine W. Short; SBN 117442        /s/ Catherine Short
    LIFE LEGAL DEFENSE FOUNDATION      *Counsel for Defendant David Daleiden*

14   Post Office Box 1313
    Ojai, CA  93024-1313

15   Tel:  (707) 337-6880
    LLDFOjai@earthlink.net

16

    Thomas Brejcha, *pro hac vice*

17   Peter Breen, *pro hac vice*
    THOMAS MORE SOCIETY

18   19 S. La Salle St., Ste. 603
    Chicago, IL 60603

19   Tel: (312) 782-1680
    Facsimile: (312) 782-1887

20   tbrejcha@thomasmoresociety.org
    pbreen@thomasmoresociety.org

21

    Matthew F. Heffron, *pro hac vice*

22   THOMAS MORE SOCIETY
    C/O BROWN & BROWN, LLC

23   501 Scoular Building
    2027 Dodge Street

24   Omaha, NE 68102
    Tel: (402) 346-5010

25   Facsimile: (402) 345-8853
    mheffron@bblaw.us

26

    *Attorneys for Defendant David Daleiden*

27

28

| | |
|---|---|
| 1 | Charles S. LiMandri; SBN 110841 |
| | Paul M. Jonna; SBN 265389 |
| 2 | Teresa L. Mendoza; SBN 185820 |
| | Jeffrey M. Trissell; SBN 292480 |
| 3 | FREEDOM OF CONSCIENCE DEFENSE FUND |
| | P.O. Box 9520 |
| 4 | Rancho Santa Fe, CA 92067 |
| | Tel:  (858) 759-9948 |
| 5 | Facsimile:  (858) 759-9938 |
| | cslimandri@limandri.com |

/s/ Charles S. LiMandri
*Counsel for Defendant Gerardo Adrian Lopez*

## ATTESTATION PURSUANT TO CIVIL L.R. 5.1(i)(3)

As the filer of this document, I attest that concurrence in the filing was obtained from the other signatories.

/s/ Charles LiMandri
*Counsel for Defendants*
*Gerardo Adrian Lopez, CMP, and BioMax*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2016, I filed the foregoing Corrected Motion to Strike, as well as the Corrected Declaration of David Daleiden, in support thereof, electronically through the CM/ECF system, which caused counsel to be served by electronic means.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed this 22nd day of June, 2016, at Rancho Santa Fe, California.

/s/ Charles LiMandri
*Counsel for Defendants*
*Gerardo Adrian Lopez, CMP, and BioMax*

DEF.'S REPLY ISO MOT. TO STRIKE CLAIMS UNDER CALI.
ANTI-SLAPP LAW  – 16-CV-00236 (WHO)