UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>Defendants. | Case No. 16-cv-00236-WHO (JD)<br><br>**ORDER DENYING JUDICIAL DISQUALIFICATION**<br><br>Re: Dkt. No. 164 |

Defendants have asked to disqualify the Hon. William H. Orrick, III, as the presiding district judge in this case based on arguments that repeat, for the most part, the arguments made for disqualification in the companion case, *National Abortion Federation v. Center for Medical Progress et al.*, Case No. 3:15-cv-3522-WHO ("*NAF*"). The request is denied for the same reasons as in that case. The Court writes separately here to explain why certain factual differences between the two cases do not lead to a different result.

**BACKGROUND**

This case and *NAF* are related actions. Dkt. No. 10.[1] Defendants here include all four of the defendants from the *NAF* case (namely, The Center for Medical Progress, BioMax Procurement Services, LLC, David Daleiden and Troy Newman). Two of those defendants, David Daleiden and The Center for Medical Progress, filed the motions to disqualify Judge Orrick in both cases.

---

[1] Unless otherwise noted, all docket cites are to the docket for this case, the *Planned Parenthood* action, Case No. 16-cv-236.

United States District Court
Northern District of California

1     There is no need to repeat here the detailed findings in the order denying disqualification in *NAF*. *See National Abortion Federation v. Center for Medical Progress*, No. 15-cv-03522-WHO (JD), 2017 WL 2766173 (N.D. Cal. June 26, 2017). The focus will be on the material similarities and dissimilarities between the two cases.

    The National Abortion Federation ("NAF") is a non-profit professional association of abortion providers that holds annual meetings. A primary allegation here, as in *NAF*, is that defendants attended NAF's annual meetings under false pretenses, and covertly recorded the proceedings and informal conversations with other attendees. A key difference between the cases is that in *NAF*, the plaintiff was the National Abortion Federation itself. Here, plaintiffs are eleven separate Planned Parenthood entities who allege that defendants also had separate meetings with Planned Parenthood staff, which they again secretly taped. Dkt. No. 59 ¶¶ 75-76, 95-97. Plaintiffs assert that defendants manipulated the recordings and released them to the public as purported evidence that Planned Parenthood had acted illegally with respect to the treatment of fetal tissue. *See*, *e.g.*, *id*. ¶¶ 126-129, 133-134. After the videos were published, plaintiffs say there was a dramatic increase in threats, harassment and criminal activities targeting abortion providers and their supporters, and Planned Parenthood health centers in particular. *Id*. ¶¶ 8, 130. Plaintiffs state fifteen legal claims against defendants, including claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), civil conspiracy, breach of contract and trespass. *Id*. ¶¶ 148-253.

    Defendants Daleiden and The Center for Medical Progress initially filed a motion to disqualify Judge Orrick in *NAF*. *See* Dkt. No. 428 in Case No. 15-cv-3522. While Judge Orrick would have been perfectly within bounds to have decided the motion himself, he promptly referred it for random reassignment to another judge, *see* Dkt. No. 430 in Case No. 15-cv-3522, undoubtedly out of an abundance of caution and to maximize the parties' and the public's confidence in the judicial process. *NAF*, 2017 WL 2766173, at *2. When defendants subsequently filed the disqualification motion in this case, Judge Orrick found that "[t]he grounds raised in this motion are identical to the ones raised in the *NAF* case, although slightly different

facts are alleged here." Dkt. No. 167. He consequently referred the motion "to the Clerk so that it may be assigned to the Hon. James Donato, who was randomly assigned the prior motion." *Id.*

This Court held a hearing on the disqualification motion in *NAF*, at which counsel for Daleiden and the CMP in both cases appeared and argued. Dkt. No. 451 in Case No. 15-cv-3522. At the hearing, counsel acknowledged on the record that both motions present the "same facts" and "same issue[s]." Dkt. No. 455 (hearing transcript) in Case No. 15-cv-3522 at 22:10-19; *see also* Dkt. No. 450 in Case No. 15-cv-3522 (letter from defendants filed after hearing acknowledging that "the factual and legal issues in the two motions are similar"). The substantial and material overlap between the motions is not in meaningful dispute. *Compare* Dkt. No. 428 in Case No. 15-cv-3522 *with* Dkt. No. 164 in Case No. 16-cv-236; *see also* Dkt. No. 449 in Case No. 15-cv-3522 at 1 n.1 (statement in defendants' reply brief acknowledging that "[a]lthough the two motions are not actually 'identical,' they are sufficiently similar to warrant adjudicating them at the same time").

Consequently, after denying disqualification in *NAF*, the Court directed the parties in this case to file briefs addressing whether that order resolves the motion in this case, and if not, what the material differences are. Dkt. No. 175. The parties filed supplemental briefs, Dkt. Nos. 180, 181, in addition to the original briefing on the motion, Dkt. Nos. 164, 170, 171, 174. The Court took the matter under submission without oral argument.

**DISCUSSION**

Defendants seek disqualification of Judge Orrick under 28 U.S.C. §§ 144, 455(a) and 455(b)(1) for basically the same reasons as in *NAF*. Dkt. No. 164. The standards set out in the *NAF* order denying disqualification, and the reasons why that motion failed, apply here with equal force to defendants' duplicative arguments. *See generally NAF*, 2017 WL 2766173. The only issues remaining for discussion are the differences between the cases that defendants say should require disqualification here. Dkt. No. 181.

As discussed in *NAF*, it is true that, before taking the bench, Judge Orrick was a board member for Good Samaritan Family Resource Center, a non-profit organization providing a wide range of assistance to low-income Latino families in San Francisco. It is also true that Planned

3

Parenthood Shasta Pacific (now Planned Parenthood Northern California) had a clinic at Good Samaritan's facility. *See NAF*, 2017 WL 2766173, at *4. Defendants bank heavily on those facts to argue that the presence of Planned Parenthood Shasta Pacific (PPSP) as a named plaintiff here distinguishes the disqualification posture from the one in *NAF*, in defendants' favor. *See*, *e.g.*, Dkt. No. 181 at 1.

The party status difference exists but it does not lead to the conclusion defendants urge. This is so because the connection between Judge Orrick and PPSP remains too attenuated to warrant recusal. Defendants make frequent reference to Judge Orrick's "actual fiduciary duty to Plaintiff PPSP," *see*, *e.g.*, Dkt. No. 181 at 2, but this is a purely conclusory characterization of Judge Orrick's relationship with PPSP, and defendants do not provide any facts showing that such a duty ever existed. That is no grounds for disqualification. *Clemens v. U.S. Dist. Court for Central Dist. of Cal.*, 428 F.3d 1175, 1180 (9th Cir. 2005) ("Section 455(a) does not require recusal based on speculation"); *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (recusal is not warranted under §144 or § 455 based on mere speculation). Defendants suggest that "as GSFRC's Counsel/Secretary at the time of the formation of GSFRC's partnership with Plaintiff PPSP, the law presumes that Judge Orrick accessed confidential information of both GSFRC and Plaintiff PPS to perform his duties." Dkt. No. 181 at 8. But this too is mere conjecture, which the Court has already considered and turned aside. *See NAF*, 2017 WL 2766173, at *4 (rejecting as conclusory and speculative defendants' argument that "because of this timing, Judge Orrick must 'necessarily' have been involved in the board's decision to initiate that partnership [between GSFRC and PPSP] and he must have 'had access to confidential, extrajudicial information which will or could bias or affect his decision.'"). It is also undisputed that Good Samaritan and Planned Parenthood Shasta Pacific are separate legal entities, as counsel acknowledged at the *NAF* hearing. *Id*.

Defendants again exaggerate Judge Orrick's relationship with Good Samaritan. Defendants conceded at the hearing in *NAF* that, even under their own potentially overbroad measure, Judge Orrick's involvement on the Good Samaritan board ended no later than 2006, a decade before this case was even filed. *NAF*, 2017 WL 2766173, at *5. Defendants have not

4

1    proffered any facts even remotely indicating, as they now contend, that Judge Orrick presently
2    owes fiduciary duties not to harm the security interests of Good Samaritan and its employees.
3    Dkt. No. 181 at 8.  Good Samaritan is not a plaintiff here in any event.
4        Defendants say that here, unlike in *NAF*, they have "provided non-speculative evidence
5    that a relationship exists between Judge Orrick and a named plaintiff that would make a
6    reasonable observer question Judge Orrick's impartiality," Dkt. No. 181 at 9, but the actual
7    grounds are the same ones already found wanting by the Court.  *Compare*, *e.g.*, *id*. (pointing to the
8    fact that Judge Orrick was "publicly held out as an 'emeritus board member' of GSFRC in
9    mailings as recently as September 2015"), *with NAF* 2017 WL 2766173, at *5 ("That he continued
10   to be listed by Good Samaritan as an 'emeritus' board member in recognition of his past service
11   would not cause the well-informed, thoughtful observer to have doubts about Judge Orrick's
12   impartiality.").  The list of previously rejected arguments goes on, but the Court declines to
13   engage in the tedious and unnecessary task of repeating it all again here.
14       Defendants also say that Judge Orrick's wife publicly promoted Planned Parenthood
15   Federation of America, another named plaintiff in this case.  *See* Dkt. No. 181 at 2.  But as the
16   graphic inserted into defendants' brief shows and as the Court previously pointed out,
17   Mrs. Orrick's profile picture for this instance of her Facebook activity "featured her alone."  *See*
18   *NAF*, 2017 WL 2766173, at *3; Dkt. No. 181 at 4.  Defendants' effort to revisit the imputation of
19   viewpoints between spouses is equally unavailing.  The Court has explained in detail why "[n]o
20   thoughtful or well-informed person would simply assume that one spouse's views should always
21   be ascribed or attributed to the other in the absence of an express disclaimer."  *NAF*, 2017 WL
22   2766173, at *3.  Defendants point to a Seventh Circuit opinion for the proposition that "courts
23   presume that spouses share the same views on abortion."  Dkt. No. 181 at 9 (citing *Planned*
24   *Parenthood of Wisconsin v. Doyle*, 162 F.3d 463, 465 (7th Cir. 1998)).  But that mischaracterizes
25   the case.  *Doyle* was filed by "[t]he Wisconsin branch of Planned Parenthood, plus several
26   physicians who perform abortions in Wisconsin" against the enforcement of a Wisconsin statute
27   that decreed life imprisonment for anyone who performed a "partial birth adoption."  162 F.3d
28   464-65.  The discussion of spouses was limited to the court's swift rejection of the standing of

"the intervening defendants, two husbands of pregnant women." *Id.* at 465. *Doyle* noted that, "[a]s these men are passionately opposed to abortion of any kind and do not suggest that their wives disagree with them about the issue and so might consider undergoing a D&X [a "dilation and extraction"], they have no significant interest in this litigation other than an ideological one." *Id*. The court went on to note that a "purely ideological interest is not an adequate basis for standing to sue in a federal court." *Id*. (citing cases). *Doyle* did not determine anything at all about whether or to what extent one spouse's views about abortion can or should be imputed to the other, and the Court finds it worrisome that defendants have suggested otherwise.

As a final challenge, defendants point to Judge and Mrs. Orrick's "political contributions for President Obama, the first ever sitting President to make a speech to Planned Parenthood." Dkt. No. 181 at 9-10. It goes without saying that President Obama did a great many things in his two terms in office, some of which were also presidential firsts. Trying to build a case for judicial disqualification on a single presidential action borders on the frivolous.

## CONCLUSION

Defendants have failed to identify any facts or circumstances that would cause a "well-informed, thoughtful observer" to conclude that Judge Orrick's impartiality might reasonably be questioned. *United States v. Holland*, 519 F.3d 909, 913-14 (9th Cir. 2008). The motion to disqualify Judge Orrick from continuing to preside over this case is DENIED.

**IT IS SO ORDERED.**

Dated: October 17, 2017

JAMES DONATO
United States District Judge