**Letter re: Dkt. Nos. 242, 247 & 256 in *Planned Parenthood Fed. Of Am., et al., v. Ctr. For Med. Progress, et al.*, Case No. 3:16-cv-0236-WHO**

Dear Judge Ryu:

The parties respectfully submit this letter in accordance with the Court's May 10, 2018 Order (Dkt 256). This letter relates to disputes P4 and P6, and in particular Plaintiffs' motions to compel Defendants to produce communications with law enforcement, legislators, and public officials and respond to related interrogatories. The parties have met and conferred regarding these issues. There is currently no trial date, nor any discovery cut-off dates.

**<u>Plaintiffs' Portion:</u>** Plaintiffs propounded document requests on Defendants CMP, BioMax, and Daleiden (collectively "Defendants") for communications between them and any law enforcement agency (RFP 42; P4) or federal or state legislator or their staff (RFP 42; P4) regarding Defendants' "investigation" of Planned Parenthood. Dkt 197-1 at 6-7 (relevant discovery responses). Other than one memo and an open letter to congress, Defendants refused to produce any responsive documents and asserted, *inter alia*, that the documents were not relevant. Plaintiffs also propounded interrogatories seeking the contents communications with federal, state, and local public officials with whom Defendants communicated. PPFA's First Set of IROGs to David Daleiden at 3 & 4 (Dkt 197-3 at 3; P6). At the hearing on Plaintiffs' motion, Defendants requested leave to brief the applicability of previously un-briefed or barely-briefed privileges, which the Court granted. Dkt. 237.[1]

After the parties submitted a joint letter addressing the applicability of the associational privilege, the reporters privilege, and the law enforcement privilege (Dkt 242), Plaintiffs informed Defendants that they will seek to recover the costs of responding to Texas investigations spurred by Defendants' videos but no other investigation-related costs. Defendants then unilaterally submitted a letter on April 6, 2018 contending that "as a result, Defendant CMP believes that Plaintiffs can no longer make the argument that communications outside of Texas are 'highly relevant' to this case." Dkt 247. Although Defendants did not identify the particular requests their letter pertaned to, Plaintiffs understood that Defendants were referring to communications with law enforcement and legislators and related interrogatories, *i.e.* P4 and P6, as did the Court. *See* Dkt. 256 ("it appears that the relevant disputes are P4 and P6"). This Court then granted the parties leave to file a joint letter addressing the issues raised by CMP in their April 6 letter.

Of the privileges raised by Defendants in Docket 242, the law enforcement privilege is only one possibly implicated by Plaintiffs' decision not to seek damages from government investigations outside Texas would be. That privilege, however, has no application for two reasons. First, Defendants are not law enforcement and thus cannot assert the privilege. *See U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 687 (S.D. Cal. 1996). Second, the two documents Defendants submitted—(1) a letter from the Texas Attorney General's office stating generally that records in the Texas AG's possession related to an investigation of Planned Parenthood are not subject to disclosure under Texas open records laws, and (2) an email from

---

[1] Daleiden did not refer to the law enforcement privilege in objections to Plaintiffs' document requests at issue, and Defendants expressly *denied* that they were relying on that privilege in a brief to this Court. Dkt 166 at 12.

the Arizona Attorney General's office noting only that the Arizona AG's office wished to review relevant communications to consider *whether* to object—fall far short of what the law requires. *See Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (to invoke the privilege, a law enforcement agency official with personal knowledge must submit a declaration affirming that the official has personally reviewed the material, and specifically describing the harm that would flow from disclosure despite a carefully-crafted protective order).[2]

Because the law enforcement privilege is not invoked, Plaintiffs' discovery requests need only meet the normal Rule 26 standard. Defendants admit that their communications with governmental officials are, at least, "potentially relevant in the sense that all of Defendants' communications about their investigation into Plaintiffs are potentially relevant." Just so. And those communications are in some respects particularly relevant. Defendants have insisted that the goal of their "investigation" was to "trigger criminal prosecution." Dkt. 242-1 at ¶ 3. Among other things, the discovery at issue goes directly to the veracity of that claim.

Rather than confront their failure to invoke the law enforcement privilege, Defendants' relegate that privilege to a footnote, and reargue instead, as they did in Dkt. 242, that the First Amendment protects them from producing the communications. Defendants make no effort, however, to explain how the associational privilege has anything to do with document requests for communications with legislators or law enforcement, and they certainly have not made a showing "that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 526 F.3d 1147, 1160 (9th Cir. 2010). Moreover, Defendants claim it should "go without saying" that revealing their communications with law enforcement would "chill" their rights to petition the government. But "Courts have generally held that efforts to petition the government are not protected from discovery." *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1167–68 (D. Kan. 2010) (collecting cases).

<u>Plaintiffs' Final Position:</u>  Plaintiffs' motion to compel responses to P4 and P6 should be granted.

**Defendants' Portion:**

**Procedural history.** As the Court is aware, Plaintiffs had been seeking as damages the cost of responding to governmental investigations into their wrongdoing. *See* Dkt. 236 at 60:11-66:12 (transcript of discovery hearing). As a result, Plaintiffs jointly propounded written discovery regarding Defendants communications with governmental officials. Dkt. 197-1 at 7 (RFP 42, 43); Dkt. 197-3 at 3-4 (ROG 3, 4). In order to avoid having to respond to discovery regarding those investigations, Plaintiffs' counsel subsequently informed Defendants that they would no longer seek as damages the costs of responding to governmental investigations except in Texas. Plaintiffs' delimitation of their damages claim directly affects the above document request and interrogatories. It also tangentially affects Plaintiffs' other catch-all document requests seeking all documents or communications about Defendants' investigation into Plaintiffs. *See* Dkt. 197-1 at 3 (P1, RFP #3), 6 (P3, RFP #15), 8 (P2, RFP #49). It also affects requests concerning to whom Defendants provided

---

[2] CMP has not attempted to invoke a law enforcement privilege with respect to the federal government or any state other than Texas and Arizona. As to Texas, CMP appears to concede that communications with Texas officials are highly relevant to Plaintiffs' damage claims because such communications relate to Defendants' role in spurring investigations of Planned Parenthood Gulf Coast. And Defendants' arguments fail also with respect to Arizona.

information regarding their investigation into Plaintiffs, should those individuals include governmental officials. *See* Dkt. 197-1 at 4-5 ( P5, RFP #12); Dkt. 197-3 at 4-5 (P6, ROG #5, 6, 7).

**Legal Standard.**[3] "A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2009) (emphasis omitted). The First Amendment privilege comes in various forms, including the First Amendment right of association, but also the First Amendment rights "to speak, to worship, and to petition the government." *Id.* at 1139; *see also Guthrey v. California Dep't of Corr. & Rehab.*, No. 1:10-CV-02177-AWI, 2012 WL 2499938, at *10 (E.D. Cal. June 27, 2012) (motion to compel production of information regarding defendant's controversial religious beliefs denied because publication of those beliefs would chill adherence to them and "an individual has First Amendment protection in his religious beliefs, as well as his religious associations.").

To assert the privilege, "[t]he party asserting the privilege must demonstrate a prima facie showing of arguable first amendment infringement," which requires a "prima facie" "demonstrate[ion] that enforcement of the discovery requests will result in … consequences which objectively suggest an impact on, or chilling of, … [or] deterrent effect on the exercise of protected activities" such as petitioning the government. *Perry*, at 1140-41 (quotation marks, ellipses, and brackets omitted). The burden then shifts to the propounding party to "show that the information sought is highly relevant … carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.* at 1141. When a party is sued by their ideological opponent, the First Amendment privilege essentially applies to the whole case and creates a blanket requirement that the documents sought be highly relevant. *Chevron Corp. v. Donziger*, No. 13-MC-80038 CRB (NC), 2013 WL 1402727, at *2 (N.D. Cal. Apr. 5, 2013) (Rainforest non-profit engaged in a "pressure campaign" against Chevron not required to produce documents to Chevron because "[w]ere it known that information given to Amazon Watch would be turned over to an opponent like Chevron … it would keep those communities from sharing information with Amazon Watch" and "[i]t would significantly reduce the number of people who support Amazon Watch's campaigns and take action.").

**Legal Argument.** With respect to Defendants' burden, it should go without saying that requiring Defendants to turn over their petitions to law enforcement to investigate Plaintiffs' wrongdoing would chill Defendants' exercise of their First Amendment right to petition the government. Dkt. 242-1 at 4:14-21 (discussing chilling of right to petition). Plaintiffs' focus on the right of association is inapposite: "an individual has First Amendment protection in his [right to petition], as well as his [petitioning] associations." *Guthrey*, 2012 WL 2499938, at *10.

With respect to Plaintiffs' burden, as stated above, Plaintiffs had been seeking the costs of responding to governmental investigations into their wrongdoing as a form of damages in this action, but now have disclaimed a right to seek such costs. Therefore, any assertion that Defendants' communications with governmental officials is directly relevant to this action is gone.[4]

---

[3] Although Defendants are focusing solely on the First Amendment privilege, as stated in the primary briefing on these motions to compel, Dkt. 242, the relevant governmental officials adequately asserted the law enforcement privilege.

[4] Defendants continue to assert that Plaintiffs' motion to compel with respect to communications with Texas officials should be denied. Even if Defendants "spurr[ed] investigations of Planned Parenthood Gulf Coast," Plaintiffs cannot recover the costs of responding to those investigations. A party should not be able to circumvent the First Amendment privilege by asserting that certain discovery is "highly relevant" to an untenable legal theory, especially when that party has continually refused to address arguments against the viability of that theory. *See* Dkt. 242 at 1 n.2 (discussing at length *Ritchie v. Sempra Energy*, 703 F. App'x 501, 505 (9th Cir. 2017) (affirming dismissal based on Cal. Civ. Code § 47(b) and the *Noerr-Pennington* doctrine)); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923,

Now, Defendants' communications with governmental officials are only potentially relevant in the sense that all of Defendants' communications about their investigation into Plaintiffs are potentially relevant. In this respect, Plaintiffs have argued that their discovery requests are "highly relevant" and "carefully tailored" to determine Defendants' and their supporters' intent and motive in conducting their journalism. Dkt. 242 at 6-7 (Requests are relevant "to understand what 'maximum impact' CMP and its supporters intended to achieve" and to identify "supporters" who may be "witnesses as well as potential co-conspirators"). But this is precisely the type of information that is generally relevant, but not "highly relevant" in the face of a First Amendment objection.

In *Perry*, concerning the Proposition 8 ballot initiative, the district court determined that "plaintiffs' request was reasonably calculated to lead to the discovery of admissible evidence regarding voter intent, the purpose of Proposition 8 and whether Proposition 8 advances a legitimate governmental interest." 591 F.3d at 1133 (quotation marks omitted). The Ninth Circuit agreed that the information sought was relevant, and added that it could also lead to impeachment evidence. *Id.* at 1144. Nevertheless, the Ninth Circuit granted a writ petition, and overruled the order compelling production. *Id.* at 1145. The defendants met their burden, in part, by showing that complying with the discovery would chill their First Amendment right to petition the government. *Id.* ("[D]iscovery would likely have a chilling effect on … the formulation of political expression"). The plaintiffs then failed to meet their burden because documents which the defendants had already produced satisfied the plaintiffs' needs. *Id.* at 1144-45 ("Proponents have already agreed to produce.… In sum, … [plaintiffs] have not shown a sufficient need for the information."). Indeed, the Ninth Circuit denied the discovery even though "intent" was an actual and key element in the plaintiffs' case due to the fact that other documents had already been produced. *Id.* In sum, Defendants' communications with governmental officials are not "highly relevant," particularly in light of other documents Defendants have already produced concerning Defendants' motives and methods.

Moreover, requests for such documents are not narrowly tailored because it appears unlikely that communications with governmental officials would actually provide Plaintiffs with the information they seek. Such communications are not an efficiently tailored means of identifying relevant witnesses beyond those officials themselves. And communications with governmental officials are not likely to contain evidence of illegal scheming—if there existed communications wherein Defendants schemed to knowingly violate the law, schemed to invent false allegations about Plaintiffs, and schemed to incite violence against abortion providers, all in pursuit of a bigoted desire to rob women of their "constitutional right … to access safe, legal abortion," Dkt. 59, FAC ¶151, those communications would not be in emails sent to governmental officials.

**Final Position.** Plaintiffs' P1 through P6 motions to compel should be denied, and Plaintiffs' reframing of their damages theory only reinforces that P4 and P6 should be denied.

Respectfully submitted,

| FREEDOM OF CONSCIENCE DEFENSE FUND | LIFE LEGAL DEFENSE FOUNDATION | ARNOLD & PORTER KAYE SCHOLER, LLP |
|---|---|---|
| /s/ Paul M. Jonna | /s/ Catherine W. Short | /s/ Amy Bomse |
| Paul M. Jonna | Catherine W. Short | Amy Bomse |
| Counsel for Def. CMP | Counsel for Def. Daleiden | Counsel for Plaintiffs |

---

929 (9th Cir. 2006) ("Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.").

**ATTESTATION PURSUANT TO CIVIL L.R. 5.1(i)(3)**

As the filer of this document, I attest that concurrence in the filing was obtained from the other signatories.

/s/ *Joseph G. Phillips*
Counsel for Plaintiffs


**CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that on May 16, 2018, I caused the foregoing to be filed with the district court's CM/ECF system, which will send notice of the filings to all counsel of record in the above-styled case who are CM/ECF users. I declare under the penalty of perjury that the foregoing statement of filing and service is true and correct to the best of my knowledge.

/s/ *Joseph G. Phillips*
Counsel for Plaintiffs