AMY L. BOMSE (No. 218669)
SHARON D. MAYO (No. 150469)
JEE YOUNG YOU (No. 241658)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400
Email:   amy.bomse@arnoldporter.com
         sharon.mayo@arnoldporter.com
         jeeyoung.you@arnoldporter.com

DIANA STERK (pro hac vice)
250 W. 55th Street
New York, NY 10019-9710
Telephone: (212) 839-8000
Email: diana.sterk@arnoldporter.com

BETH H. PARKER (No. 104773)
PLANNED PARENTHOOD AFFILIATES OF CALIFORNIA
555 Capitol Mall, Suite 510
Sacramento, California 95814-4581
Telephone:    (916) 446-5247
Facsimile:    (916) 441-0632
Email:    beth.parker@ppacca.org

HELENE T. KRASNOFF (*pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
Telephone:    (202) 973-4800
Email:    helene.krasnoff@ppfa.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., a not-for-profit corporation; and PLANNED PARENTHOOD: SHASTA-DIABLO, INC. dba PLANNED PARENTHOOD NORTHERN CALIFORNIA; PLANNED PARENTHOOD MAR MONTE, INC.; PLANNED PARENTHOOD OF THE PACIFIC SOUTHWEST; PLANNED PARENTHOOD LOS ANGELES; PLANNED PARENTHOOD/ORANGE AND SAN BERNARDINO COUNTIES, INC.; PLANNED PARENTHOOD OF CENTRAL COAST CALIFORNIA, INC; PLANNED PARENTHOOD PASADENA AND SAN GABRIEL VALLEY, INC.; PLANNED PARENTHOOD OF THE ROCKY MOUNTAINS; PLANNED PARENTHOOD GULF COAST; PLANNED PARENTHOOD CENTER FOR CHOICE;<br><br>             Plaintiffs,<br>     v.<br><br>CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES, LLC, DAVID DALEIDEN (aka "ROBERT SARKIS"), ALBIN RHOMBERG, PHIL CRONIN, SANDRA SUSAN MERRITT (aka "SUSAN TENNENBAUM"), GERARDO ADRIAN LOPEZ, and UNKNOWN CO-CONSPIRATORS, inclusive,<br><br>             Defendants. | Case No. 3:16-cv-00236-WHO<br><br>**EIGHTH JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>**Date: July 17, 2018**<br>**Time: 2:00 PM**<br>**Place: Courtroom 2, 17th Floor** |

Pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011, and the Clerk's Notice dated January 12, 2018 (ECF No. 216), all parties jointly submit this Eighth Case Management Statement in advance of the Court's July 17, 2018, Case Management Conference.

In the interest of efficiency, the parties refer the Court to the Case Management Statements previously filed March 22, 2016 (ECF No. 57), September 27, 2016 (ECF No. 123), March 7, 2017 (ECF No. 154), July 12, 2017 (ECF No. 173), November 7, 2017 (ECF No. 188), February 27 , 2018 (ECF No. 239) and April 17, 2018 (ECF No. 250) regarding jurisdiction and service, the parties' respective statements of the facts and legal issues, and other positions that have not changed and do not require the Court's attention.

**I.  MOTIONS**

Depending on the course of discovery, Plaintiffs expect to move for summary judgment or partial summary judgment pursuant to Fed. R. Civ. P. 56.  Defendants anticipate filing motions for summary judgment or partial summary judgment pursuant to Fed. R. Civ. P. 56.  Defendants may file other motions pursuant to the governing rules if the need arises.  Judge Ryu has resolved multiple discovery disputes and there is one further such motion pending (see Discovery Disputes, Part V). Additionally, several other discovery-related disputes are still being discussed between the parties and/or will likely end up being presented to Judge Ryu.

**II.  AMENDMENT OF PLEADINGS**

Defendant CMP has recently produced a large quantity of additional documents as well as responses to interrogatories including identification of donors who financed their fraudulent activity.  Plaintiffs may move to amend the complaint to add additional defendants upon completion of review of the substantial quantity of new material recently produced.

Should Plaintiffs add new defendants, it can reasonably be anticipated that the newly-added defendants would file anti-SLAPP motions, motions to dismiss, and/or motions for sanctions under Fed. Rule Civ. Proc. 11, as the documents revealing donors to CMP —produced in response to document requests seeking *all* documents related to Defendants investigation of Plaintiffs and *all*

documents related to the Human Capital Project—also show the lawful and constitutionally protected nature of the investigative journalism project to which the donors contributed money. Specifically as to the alleged RICO conspiracy, the documents are devoid of any evidence that any donor knew about, much less agreed to, the alleged production, transfer, or use of false IDs in carrying out CMP's undercover investigative journalism project. The documents also disprove Plaintiffs' central theory that the goal of the Human Capital Project was to produce misleading videos, and to do so to incite vandalism, threats, or other unlawful actions directed at Planned Parenthood or other abortion providers. The documents now in Plaintiffs' hands prove that Defendants' goal was to uncover and expose evidence of wrongdoing by abortion providers and their partners in fetal tissue procurement.

**III. APPEAL AND OTHER MOTIONS TO NINTH CIRCUIT**

On May 16, 2018, the Ninth Circuit affirmed this Court's denial of Defendants Anti-SLAPP Motions, holding that the Court had applied the proper legal standard and that under that standard, the Motions were properly denied.

On May 30, 2018, Defendants filed a Petition for Panel Rehearing and Rehearing En Banc ("Petition for Rehearing"). Plaintiffs filed an Answer to Petition for Rehearing on June 26, 2018. On June 29, 2018, Defendants filed a Motion for Leave to File Reply in Support of Petition For Rehearing, which the Ninth Circuit granted. The Ninth Circuit has not ruled on Defendants' Petition for Rehearing, and no mandate has issued.

On December 13, 2017, Defendants David Daleiden and the Center for Medical Progress filed a petition for writ of mandamus with respect to Hon. Judge Donato's denial of those Defendants' motion for disqualification of this Court. Case No. 17-73313 (9th Cir.). On April 30, 2018, the Ninth Circuit denied Defendants' petition.

/ / /

/ / /

/ / /

/ / /

## IV. DISCOVERY

### A. Status of Discovery

<u>Plaintiffs' Statement</u>

Plaintiffs' document production is complete with three exceptions described below. Defendants have taken advantage of the extended period for written discovery to propounded an extraordinary number of requests for production. In addition, disputes over the protective order and use of pseudonyms to protect the security of Plaintiffs' staff have slowed production. Nonetheless, Plaintiffs have produced all responsive documents and responded to all interrogatories with the following specific exceptions:

- On June 27, 2018, the parties met and conferred regarding a handful of documents not produced and interrogatory responses to which Defendants seek amendment; plaintiffs have agreed to produce the requested documents or to inquire as to whether any such documents exist;

- Despite having already served 180 requests for production and 80 interrogatories, Defendants CMP and Rhomberg served new requests for production on June 13 and June 14, 2018. Plaintiffs believe that most of those requests are either duplicative or irrelevant and are meeting and conferring with Defendants;

- Defendants have moved to compel responses to certain interrogatories that concern whether four Plaintiffs who accepted reimbursements for facilitating their patients' fetal tissue donation received more in reimbursements than their allowed expenses. Defendants have also demanded extensive documents related to fetal tissue donation at certain Plaintiff affiliates (although Defendants have not moved to compel and indeed unilaterally took a motion to compel on this topic off calendar seven months ago). Plaintiffs' position is that none of this discovery is relevant or likely to lead to the discovery of relevant information and is rather an improper continuation of Mr. Daleiden and his co-conspirators tortious investigation by means of civil discovery. Defendants motion to compel further responses to interrogatories is set for argument on July 19 (see Discovery Disputes, Part V); and

- Plaintiffs have agreed to amend their response to Newman Interrogatory 20 to provide a more detailed itemization of Plaintiffs' out-of-pocket damages. Plaintiffs anticipate completing this shortly.

Defendants represent that their productions are complete, except for documents from Mr. Daleiden's devices that were seized and then provided to him on a hard drive by the Attorney General's office, and "some publicly available documents." It should be noted that the vast majority of CMP's documents were not produced until June 28, 2018. For over a year, Defendant CMP/BioMax relied on objections and an extremely crabbed conception of relevance to limit its document production to 300 documents, 274 of which were already in Plaintiffs' possession. After Plaintiffs moved to compel further production, CMP disclosed that it had thousands of additional communications that Defendants and others exchanged about their undercover operation that had not even been reviewed. CMP agreed to produce these documents other than what it represented to be three discrete categories of documents that CMP contended were protected by the First Amendment Privilege, Reporters' Privilege, trade secret or law enforcement privilege. In March/April 2018, CMP produced about 950 documents. Plaintiffs moved to compel production of the remaining documents and Judge Ryu granted Plaintiffs' motion, ordering CMP to produce the "three categories" of documents it was withholding. *See* Part V. CMP then produced an additional <u>2800 documents</u> concerning the undercover operation.[1] In addition, although Plaintiffs' requested all surreptitious video taken at conferences, clinics and meetings of their staff and this Court ordered CMP to produce it (with one minor exception) in June 2017, CMP only produced video from conferences. It wasn't until Plaintiffs' counsel enquired that CMP, without explanation, produced the additional video. CMP also disclosed for the first time on July 6 that it is withhold over 2500 additional documents relating to its planning for its fraudulent scheme which it contends are privileged. Based on a preliminary review of the privilege log, it appears that Defendants have

---

[1] CMP also produced documents from another litigation and from certain congressional investigations, but Plaintiffs are not including those documents within this description.

taken an impermissibly broad position on what constitutes privileged communication, including communications that do not involve attorneys; communications with attorneys that were not advising Defendants in any legal capacity; and communications that were stolen from a third party fetal tissue procurement company, StemExpress, among others.

As noted above, Defendants have propounded over 200 Requests for Production, 80 Interrogatories and 127 Requests for Admission. If this conduct continues, Plaintiffs anticipate seeking relief from the court. Defendants try to blame these numerous requests on what they call Plaintiffs' "shifting theories," but Defendants, from the beginning, have tried to make this case into something it is not. They would prefer this case to focus on whether PP broke laws in an attempt to obtain documents on all of PP's policies and practices. That is not, and has never been what this case is about. In addition, the fact that Plaintiffs have dropped certain damages claims should subtract from the amount of discovery, not add to it, as Defendants seem to argue.

Defendants' Statement

Plaintiffs state that they "have produced the damages-related documents that Defendants requested that Plaintiffs prioritize," suggesting that this production is complete. However, Defendants have identified several categories of documents missing from the damages invoices alone. Also, Plaintiffs have yet to provide an itemization of their damages that meets their obligations under FRCP 26(a)(1)(A)(iii) that would allow Defendants to determine if all applicable invoices, grant requests, and related documents have been produced, as well as to determine which documents that have been produced in fact reflect claimed damages. Plaintiffs' production of e-mail communications about their alleged damages is spotty at best, but, again, further exploration has been stymied by Plaintiffs' delay in producing an itemization of damages.

With Defendants finally receiving Plaintiffs' delayed production, other issues have come to light. For example, Plaintiffs recently admitted that they did not even ask any witnesses (with one partial exception) or custodians whether they had any responsive text messages. When pressed on this, Plaintiffs refused to agree to do so, merely agreeing to an open-ended time within which to consider whether to do so.

The issue of Plaintiffs' violation of the Protective Order by routine blanket over-designation, as well as ever-broadening "security" redactions not sanctioned by the Protective Order, remains to be addressed, per Judge Ryu's June 14 minute order, by the parties' meeting and conferring on a document-by-document or category-by-category basis.

On June 14, Judge Ryu denied Plaintiffs' request to modify the Protective Order to retroactively approve Plaintiffs' practice of redacting, without Doe identifiers, hundreds of names of Planned Parenthood staff in their discovery. Plaintiffs will thus need to re-produce thousands of pages of documents that were improperly redacted. Defendants have provided Plaintiffs with the identities of about 30 "Does" that were either known to or subsequently discovered by the Defendants, in order that Plaintiffs would refrain from pointlessly using Doe identifiers for these individuals in the re-production of documents and future productions and discovery responses. Plaintiffs have made several mistakes in their Doe numbering system; their unnecessary use of Doe identifiers for known individuals upsets the balance between privacy and the needs of the defense that this Court cited as the reason for allowing the Doe system. However, Plaintiffs have yet to agree to refrain from using Doe identifiers for known individuals, and Defendants may seek relief from the Court to compel them to do so.

Other components of Plaintiffs' case are in flux. Over the course of discovery, Plaintiffs have dropped their claims for damages from loss of vendors, for costs of responding to federal and state investigations (other than in Texas), and for costs of staff attrition and corresponding loss of opportunity to treat patients. Plaintiffs also have notified Defendants that they do not intend to rely on the Fusion GPS analysis of the videos that figured largely in their complaint, as well as in their public relations campaign against Defendants.

Also, contrary to multiple allegations in the complaint and other court filings that Defendants harmed Plaintiffs by falsely asserting that Planned Parenthood was violating laws concerning fetal tissue donation, Plaintiffs now assert that the question of whether Planned Parenthood was violating federal law is irrelevant, because Plaintiffs are seeking solely those damages arising from the "bogus claim" that Plaintiffs were involved in a "conspiracy to make

money off of fetal tissue donation."[2] Defendants' motion to compel responses to discovery concerning Plaintiffs' compliance with federal law regarding tissue donation is currently before Judge Ryu, with a hearing scheduled for July 19. (Doc. 258.) Plaintiffs also decided, without informing Defendants, that production of documents concerning their costs for procuring fetal tissue would be unilaterally stayed while this issue is pending. Contrary to the claim that Plaintiffs' document production is almost complete, Defendants anticipate that Plaintiffs will need substantial time to review and produce many documents that they have thus far refused to search for or produce based upon their reliance upon unduly broad objections.

*Defendants' Production & Discovery Responses*:

Defendants have produced approximately 10,000 pages of documents and all videos recorded as part of the Human Capital Project.[3] They have also produced a 159-page privilege log. In the course of reviewing the privilege log for production, Defendants identified approximately 40 additional pages of documents that will be produced in the next few days.

The Attorney General's office produced to Mr. Daleiden's defense counsel an encrypted hard drive containing all data on the devices seized from Mr. Daleiden's home in April 2016. Defense counsel are in the process of having that data decrypted. Any responsive documents that

---

[2] In January 2017, Plaintiffs responded to interrogatories asking them to state all facts upon which they base their contention that the Defendants, or any of them, caused Plaintiffs to suffer damages in the form of, inter alia, vandalism or increased security costs. In those responses, Plaintiffs said nothing about CMP videos or CMP statements being false, because at that time, Plaintiffs were vigorously resisting discovery by contending that the truth or falsity of the videos was irrelevant to any claim or defense. Completely absent from those January 2017 responses is their current theory that "[w]hat caused Defendants' videos to catch fire was the lurid story of Planned Parenthood purportedly engaging in 'a criminal conspiracy to make money off of aborted fetal parts.' . . . It is *that* claim that harmed Plaintiffs and that claim that Plaintiffs have put at issue in this lawsuit." Doc. 258, at 3 (original emphasis).

[3] Contrary to Plaintiffs' assertion, Plaintiffs did not ask for all video recordings Defendants made separately—only as part of their catch-all requests for all documents related to Defendants' investigation of Planned Parenthood and all documents related to the Human Capital Project. When Defendants were ordered to respond to those document requests, Defendants turned over the remaining video snippets of otherwise publicly available recordings, such as bathroom breaks.

have not already been produced will be produced or entered on a supplemental privilege log when that process is complete.

Other than some publicly available documents that Defendants intend to produce, Defendants' document production will be complete when these last steps are taken.

*Defendants' propounded discovery*

Plaintiffs' accusation about the "barrage" of written discovery from Defendants ignores several key points. First, eleven Plaintiffs filed a 66-page, 253-paragraph complaint against seven defendants. These factors alone necessitate substantial discovery. Second, Plaintiffs themselves have served over 300 interrogatories on Defendants, in addition to 69 requests for production, 50 of which were served on all defendants. Third, Plaintiffs' shifting theories of liability and damages have necessitated continuous probing through written discovery to elicit Plaintiffs' latest iteration of their theories, after being told that an earlier theory was no longer operative. Fourth, as noted previously, Plaintiffs have flatly refused to respond to dozens of the requests for production and requests for admission Defendants have propounded. Finally, as to the most recent round of document requests from Rhomberg, Plaintiffs themselves asked that separate requests be served on each plaintiff, despite all plaintiffs being represented by the same counsel.

**B.     Depositions**

Plaintiffs' Statement

Plaintiffs request that the Court lift its stay of depositions. The Court ordered the stay in light of Defendants' appeal to the Ninth Circuit (ECF No. 156), which the has now been decided against the Defendants. Although the Defendants have petitioned for a re-hearing *en banc*, a decision may take several additional months, and a continued stay would severely extend the length of discovery and further delay trial. Defendants have already used the long discovery period while waiting for a decision from the Ninth Circuit to endlessly make additional irrelevant requests to Plaintiffs. A number of witnesses have retired, and plaintiffs are concerned that further delay will make the already stale evidence even staler.

All parties anticipate substantial completion of their document production in the near future,

likely before the next CMC, and the pace of discovery will pick up significantly if depositions are allowed. In addition, the ruling from the Ninth Circuit will not change the scope of discovery. There are very few, if any, factual issues that relate solely to the state law claims. Therefore, there is no prejudice lifting the stay and beginning depositions.

However, there is prejudice to Plaintiffs in continuing the stay. The illegal recordings and infiltrations of Planned Parenthood conferences and health centers occurred over three years ago. The conspiracy to create a fake company with fake employees "to expose and discredit and defund Planned Parenthood" began two and a half years before that. Plaintiffs fear that the evidence will become stale and that efforts to recover deleted texts and other documents (*see* ECF No. 188 at 6 -- possible loss of evidence in the form of text messages) may become impossible. As time progresses, witness memories fade and fewer witnesses work with or at the consequential organizations, making depositions more difficult to coordinate and witnesses harder to make available. In addition, and equally important, the longer this case drags out, the longer the victims of Defendants' actions have to endure harassment from Defendants' sympathizers. Defendants have been generating publicity and social media postings surrounding each hearing and court appearance in this case. Such publicity generates threats and harassment against Plaintiffs' witnesses. If depositions remain stayed, the victims of Defendants' schemes (and Plaintiffs' witnesses) will be put at further, undue risk.

To the extent the Court does not lift the stay on depositions, Plaintiffs request a deadline for written discovery, so that Defendants cannot continue to barrage Plaintiffs with additional, unreasonable requests that will require yet more discovery motion practice and hearings.

The Court already ordered that each side may depose one representative of each party, plus up to ten additional fact witnesses (ECF No. 61). At this time, Plaintiffs believe that this number of depositions is sufficient, especially given the number of parties involved in this case.

### Defendants' Statement

Several factors weigh against depositions proceeding at this point. First, Defendants' appeal of this Court's denial of Daleiden, CMP, Lopez, and Merritt's anti-SLAPP motions is still pending

9

**EIGHTH JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND [PROPOSED] ORDER**
**3:16-cv-00236-WHO**

at the Ninth Circuit. Moreover, as discussed above, Plaintiffs' dilatory and incomplete production of documents, their shifting theories of recovery,[4] and their failure to date to provide an itemization of damages, leave Defendants at a significant disadvantage in terms of being prepared to begin depositions at this time. There are several outstanding written discovery issues that must be resolved, with subsequent document review and production to follow, before depositions could be appropriate. Finally, deposition discovery should not begin until Plaintiffs determine whether they intend to add more defendants, and if they do so, until those newly-added defendants have an opportunity to test the pleadings and seek dismissal before being needlessly dragged through expensive discovery.

Finally, Plaintiffs make the novel and completely unsubstantiated claim that a delay in moving forward with depositions (e.g., to allow Defendants time to analyze written discovery withheld by Plaintiffs for over a year and a half, to follow up on missing documents and inappropriate claims of privilege, etc.) will lead to further "threats and harassment" against Plaintiffs' staff because some Defendants have had the temerity to update the public about hearings in the case.  Plaintiffs, of course, do not identify any unprotected statements, or *any* statements, made by Defendants, and Plaintiffs have no proof whatsoever regarding any alleged "threats and harassment" supposedly "generated" by Defendants' public comments "surrounding each hearing and court appearance in this case." Plaintiffs now apparently seek to punish Defendants' indisputably protected speech about this lawsuit with a denial of due process in the lawsuit. The Court should not countenance these tactics.

---

[4] *Compare* Doc. 99, at 12:25-26 (Plaintiffs: "it is far less clear that the content of the videos as opposed to the mere fact of identifying abortion providers by name and image caused the increase in harassment alleged in the FAC") *with* Plaintiffs' Amended Response to Lopez Interrogatories, No. 13 (served February 2, 2018) ("Plaintiffs further object to this Interrogatory on the grounds that it requires Plaintiffs to distinguish between damages attributed to the publication of names and/or images distinct from the content of Defendants' videos. This distinction is false").

**C.    ESI**

Defendants' Statement

Defendants are analyzing Plaintiffs' latest discovery productions to determine whether any ESI issues have become moot. Defendants anticipate bringing up several ESI-related issues with the magistrate if meet and confer efforts do not bring about resolution regarding number and identity of custodians, search delimiters, and other related issues.

**V.    DISCOVERY DISPUTES**

Resolved Discovery Disputes

On February 8, 2018, the parties appeared before Magistrate Judge Ryu regarding certain portions of the Omnibus Joint Discovery Dispute Letters ("Omnibus Brief"), which the parties submitted June 14, 2017 (ECF No. 166).[5] Judge Ryu heard Plaintiffs' motions to compel communications and documents regarding investigation of Planned Parenthood (P1),[6] the Human Capital Project (P2), planning for the investigation of Planned Parenthood (P3), communications with legislators and law enforcement agencies (P4), dissemination of information obtained at conferences or centers (P5), Plaintiffs' motions to compel further responses to interrogatories regarding communications with public officials, funders, and dissemination of recordings (P6), confidentiality of recordings (P7), and Defendants' drivers' licenses (P8).

Judge Ryu found the discovery sought to be relevant to Plaintiffs' RICO claim. Judge Ryu also found that Defendants failed to make a prima facie showing in the Omnibus Brief that associational privacy, journalist's privilege, or the law enforcement privilege objections shielded Defendants form responding to Plaintiffs' discovery (P1-P6 and P8), but granted Defendants request to file supplemental briefing. (ECF No. 237.) The Parties submitted their joint brief concerning privileges asserted by Defendants on March 2, 2018. (ECF No. 242). In response, the Court

---

[5] Other issues raised in the Omnibus Brief were tabled for a later time or resolved.

[6] The motions were consecutively numbered, with "P" designating Plaintiffs' motions, and "D" designating Defendants' motions. *See* ECF No. 166 at ECF pg. 3-4 for the table of contents.

11
**EIGHTH JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND [PROPOSED] ORDER**
**3:16-cv-00236-WHO**

1   ordered a further joint brief, which the parties filed on May 16, 2018 (ECF No. 259).  On May 31
2   Judge Ryu overruled Defendants' privilege objections and ordered Defendants to produce the
3   withheld documents.
4    On April 23, 2018, the parties filed a joint brief addressing various issues pertaining to the
5   protective order.  On June 14, 2018, Judge Ryu heard argument on this joint motion.  Judge Ryu
6   denied Plaintiffs' request that the Court modify the protective order to relieve them of the
7   requirement to provide Doe identifiers to all names redacted in documents produced in discovery.
8   Judge Ryu denied Defendants' motion to modify the protective order to impose a pinpoint
9   designation system for all documents, but ordered the parties to meet and confer to determine for
10  which documents or categories of documents it would be practical for Plaintiffs to designate only
11  portions as confidential or AEO.  Judge Ryu denied Defendants' motion to remove all
12  confidentiality designation from documents concerning fetal tissue donation that Plaintiffs have
13  produced, but ordered Plaintiffs to review the documents to determine if any redactions could be
14  made to allow disclosure.  Plaintiffs have completed this review and informed Defendants of
15  Plaintiffs' conclusion that there are no redactions that would eliminate the risk of harm posed by
16  publication of these documents (which Judge Ryu acknowledged) given the nature of these
17  documents and certain defendants' commitment to harming Planned Parenthood including through
18  false and inflammatory claims related to fetal tissue donation. Defendants will raise this issue with
19  the Court at the appropriate time after obtaining further explanation from Plaintiffs as to how
20  production of various portions of the documents would lead to harm when all of the information is
21  already public.
22   Finally, Judge Ryu granted Plaintiffs motion to disclose AEO-designated video to
23  Plaintiffs' in-house counsel.
24   <u>Pending Discovery Disputes</u>
25   Defendants CMP and BioMax have moved to compel four Plaintiffs to respond to
26  interrogatories that would require Plaintiffs to state all facts, identify all witnesses and identify all
27  documents showing that they did not receive reimbursements for the costs incurred to facilitate
28

patients' donation of fetal tissue that exceeded allowed expenses. Plaintiffs objected and refused to respond to these interrogatories. Plaintiffs position is that the interrogatories are not relevant nor reasonably calculated to lead to discovery of evidence relevant to any claim that Plaintiffs have actually made or to any defense to those claims and that Defendants, having failed in their years-long effort to uncover actual evidence of actual wrongdoing at Planned Parenthood, are attempting to use civil discovery to continue this fruitless search for materials that can be used to gin up false claims.

Defendants' position is that Plaintiffs are running away from the repeated allegations in their complaint that the videos harmed them by falsely accusing them of violating the law – a frivolous strategy that has greatly delayed discovery, including from third parties who have repeated Plaintiffs' objections, including with detailed citations to Plaintiffs' arguments in the docket. Defendants have been working in good faith to narrow their requests regarding this key issue, but to no avail—Plaintiffs flatly assert that whether their fetal tissue procurement practices were illegal is irrelevant. Discovery to date indisputably points to at least four plaintiff-affiliates having violated federal law for years, but Plaintiffs insist on asserting their innocence while refusing to respond to relevant discovery specifically asking them to explain the discrepancy between the evidence and their contentions and to identify the witnesses and documents supporting those contentions. Plaintiffs' accusation that Defendants are misusing the discovery process to uncover evidence supporting their claims is ironic. Plaintiffs contend that they are suing Defendants precisely "to further expose the falsity" of the claims in Defendants' "video smear campaign." (Doc 59, ¶12). They can hardly be surprised that the most relevant discovery would bear heavily on those claims.

In addition, Defendants are entitled to discovery concerning their defenses, including illegality, and Plaintiffs' attempt to obscure the extent to which their claims are premised upon their alleged adherence to the law at all times cannot bar Defendants from obtaining discovery to which they are entitled concerning their defenses. There are many discovery requests that Plaintiffs have refused to produce any responsive documents for that will have to be revisited once Judge Ryu provides some guidance concerning Plaintiffs' overbroad relevance objection.

Other Disputes:

Plaintiffs: In November 2017, Plaintiffs asked NAF Defendants' Counsel to stipulate that Plaintiffs' counsel in the instant case may have access to sealed materials filed in the related NAF case and provided a proposed stipulation. NAF does not object. Given that counsel for the Defendants in this case have all seen the unredacted arguments and evidence, it is appropriate that the Plaintiffs counsel should also have access to these materials. Defendants refused to stipulate because they objected to in-house attorneys who are counsel of record having access to the sealed materials on the grounds that it would advantage Plaintiffs in ongoing criminal investigations or undermine the journalistic value of their recordings if in-house counsel for Planned Parenthood had access to the recordings. Judge Ryu recently rejected these arguments and ruled that in-house counsel are entitled to have access to the video recordings. Despite the ruling, counsel for David Daleiden (the Thomas More Society) refuse to stipulate, now stating that they have not had sufficient time to review the sealed material, even though the Thomas More Society was counsel of record in the NAF case and Plaintiffs proposed the stipulation nine months ago.

In addition, on July 6, CMP produced a 156-page privilege log for CMP that claims 2516 documents are privileged. The log appears to contain hundreds of documents that come from StemExpress, one of the tissue procurement companies, as well as audio and video files. Given the fact that CMP did not produce this privilege log until last week, Plaintiffs are not in a position to know whether any relief from the Court will be required; however, Plaintiffs have serious questions as to whether CMP had an attorney-client relationship with every attorney identified.

In addition to the discovery issues raised throughout this statement, Defendants, in turn, have questions about Plaintiffs' privilege claims, particularly as to communications including Plaintiffs' outside public relations advisors.[7]

---

[7] Plaintiffs complain about Defendants' privilege log, which shows that approximately 630 StemExpress related documents were sent to counsel via email. To be clear, although logged with their privileged emails, those StemExpress documents were separately produced. Omitting those documents, Defendants' privilege log only contains approximately 1900 entries—of which an

(footnote continued)

## VI. SCHEDULE

<u>Plaintiffs Position</u>

Given the status of discovery, Plaintiffs propose the following pretrial schedule in order to keep this case moving forward. Because of the extended time period the parties have already had for written and document discovery, Plaintiffs propose that written and document discovery close before the end of fact discovery. Defendants claim that it is premature to set any deadlines, including a deadline for written discovery, until they have received "all written discovery to which they are entitled." This circular reasoning would result in no deadlines ever getting set.

<u>Defendants' position</u>

For the reasons stated above, and particularly the possibility of new defendants being added, Defendants believe that setting a written discovery cut-off is very premature, and that opening a six-month window for depositions now, with considerable written discovery issues outstanding, would be highly prejudicial to Defendants. Moreover, closing written discovery before depositions would prevent Defendants from following up on revelations during depositions about the existence of documents that Plaintiffs were withholding based on their shifting determinations of relevance.

As discussed previously, Defendants contend that Plaintiffs have improperly refused to provide many categories of documents that are relevant to the claims, defenses, and damages alleged in this case, and have improperly over-used redaction and Doe identifiers, thereby rendering written discovery far from over, and making the taking of depositions premature. Rather, the various deadlines for the later stages of the litigation can be set (perhaps even by agreement among the parties), once Defendants have received, in full, the written discovery to which they are entitled and had ample opportunity to review all materials prior to the start of depositions.

---

additional 300 are attachments. Thus, Defendants' logging of 1600 emails communications may seem large compared to Plaintiffs' 201 entries on their log, but it is not disproportionate when it is considered that Plaintiffs' log contains no attachments, and Plaintiffs' counsel chose to log email chains, not individual emails.

| Event | Plaintiffs' Position | Defendants' Position |
|---|---|---|
| **Written discovery cutoff** | September 15, 2018 | Premature to set a date |
| **Expert disclosures** | January 14, 2019 | Premature to set a date |
| **Fact discovery cutoff (Depositions)** | February 1, 2019 | Premature to set a date |
| **Expert rebuttal** | February 15, 2019 | Premature to set a date |
| **Expert discovery cutoff** | March 15, 2019 | Premature to set a date |
| **Dispositive motions** | April 1, 2019 | Premature to set a date |
| **Response to dispositive motions** | 30 days from filed date | Premature to set a date |
| **Reply to dispositive motions** | 15 days from response | Premature to set a date |
| **Dispositive motions heard by** | June 1, 2019 | Premature to set a date |
| **Pretrial conference** | June 22, 2019 | Premature to set a date |
| **Trial** | July 22, 2019 | Premature to set a date |

DATED: July 10, 2018                    Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:   /s/ *Amy L. Bomse*
        Amy L. Bomse
        Sharon D. Mayo
        Jee Young You

Attorneys for Plaintiffs

DATED: July 10, 2018                    **THOMAS MORE SOCIETY**

By:   /s/ *Thomas Leonard Brejcha, Jr.*
        Thomas Leonard Brejcha, Jr.
        Peter Christopher Breen

Attorneys for Defendant
DAVID DALEIDEN

DATED: July 10, 2018                    **LIBERTY COUNSEL**

By:   /s/ *Horatio Gabriel Mihet*
        Horatio Gabriel Mihet

| | |
|---|---|
| DATED: July 10, 2018 | **LAW OFFICE OF NIC COCIS & ASSOCIATES** |

By:   /s/ *Nicolaie Cocis*
        Nicolaie Cocis

Attorneys for Defendant
SANDRA SUSAN MERRITT

DATED: July 10, 2018      **MAYALL HURLEY, P.C**.

By:   /s/ *Vladimir Frank Kozina*
        Vladimir Frank Kozina

DATED: July 10, 2018      **AMERICAN CENTER FOR LAW AND JUSTICE**

By:   /s/ *Edward L. White III*
        Edward L. White III
        Erik Michael Zimmerman

Attorneys for Defendant
TROY NEWMAN

DATED: July 10, 2018      **LIFE LEGAL DEFENSE FOUNDATION**

By:   /s/ *Catherine Wynne Short*
        Catherine Wynne Short

DATED: July 10, 2018

By:   /s/ *Michael Millen*
        Michael Millen

Attorneys for Defendant
ALBIN RHOMBERG

DATED: July 10, 2018      **FREEDOM OF CONSCIENCE DEFENSE FUND**

By:   /s/ *Charles S. LiMandri*
        Charles S. LiMandri
        Paul Jonna
        Jeffrey M. Trissell

Attorneys for Defendants
GERARDO ADRIAN LOPEZ, DAVID DALEIDEN,
CENTER FOR MEDICAL PROGRESS, and
BIOMAX PROCUREMENT SERVICES, LLC

## **ATTESTATION**

Pursuant to Local Rule 5-1, I, Amy L. Bomse, attest that all signatories listed, and on whose behalf the filing is submitted, concur in and have authorized the filing.

DATED: July 10, 2018                  /s/ *Amy L. Bomse*
                                             AMY L. BOMSE

---

18
**EIGHTH JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND [PROPOSED] ORDER**
**3:16-cv-00236-WHO**

# [PROPOSED] ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

DATED: July __, 2018

———————————————
The Hon. William H. Orrick
Judge of the United States District Court