Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
B. Dean Wilson (CA Bar No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel:  (858) 759-9948
cslimandri@limandri.com
*Attorneys for Defendants the Center for Medical
Progress, BioMax Procurement Services, LLC,
Gerardo Adrian Lopez and David Daleiden*

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org

Matthew F. Heffron, *pro hac vice*
THOMAS MORE SOCIETY
C/O BROWN & BROWN LLC
501 Scoular Building
2027 Dodge Street
Omaha, NE 68102
Tel: (402) 346-5010
*Attorneys for Defendant David Daleiden*

Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
John A. Monaghan, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007; Fax: (734) 680-8006
ewhite@aclj.org
ezimmerman@aclj.org
jmonaghan@aclj.org

Vladimir F. Kozina (CA Bar No. 95422)
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833; Fax: (209) 473-4818
VKozina@mayallaw.com
*Attorneys for Defendant Troy Newman*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., | ) Case No. 3:16-CV-00236 (WHO) ) |
| Plaintiff, | ) Hon. Donna M. Ryu ) |
| vs. | ) ) |
| THE CENTER FOR MEDICAL PROGRESS, et al., | ) Defendants CMP, BioMax, Daleiden and ) Newman's Motion to Compel Production ) of Documents from Plaintiffs; and ) Defendant Newman's Motion to Compel ) Response to Interrogatory from Plaintiffs |
| Defendants. | ) ) Hearing Date: Jan. 10, 2019, 11:00 a.m. ) Oakland Courthouse, Courtroom 4 ) ) ) |

# TABLE OF CONTENTS

**MOTION TO COMPEL REGARDING PLAINTIFFS' FETAL TISSUE PROCUREMENT PROGRAMS** ........................................1

    1.   Proportionality Analysis. .............................................................3

    2.   Privacy Analysis. ........................................................................ 4

    3.   Relevance Analysis. ...................................................................5

        3.1.   Factual Relevance Explanation. ...........................................5

        3.2.   Defendants' Substantial Veracity Defense. ....................... 8

            3.2.1.   *Background law on the Proximate Causation and First Amendment bars to publication damages.* ........................ 8

            3.2.2.   *The Court should rule that Defendants' public statements about Plaintiffs must be accepted as true for all purposes.* ................................................. 9

            3.2.3.   *In the alternative, the Court should grant discovery regarding the affirmative defense of substantial veracity.* ....................................................10

        3.3.   Defendants' Causation Defense. ..................................... 11

        3.4.   Defendants' Other Defenses .......................................... 13

            3.4.1.   *Unclean Hands* ...................................................13

            3.4.2.   *Public Policy* .....................................................13

            3.4.3.   *Impeachment.* ....................................................14

**MOTION TO COMPEL REGARDING DEFENDANTS' CAL. PEN. CODE § 633.5 DEFENSE** ............................................14

i

Defs.' Mtn to Compel Doc. Prod. & Interrogatory Resp.
3:16-CV-00236 (WHO)

# TABLE OF AUTHORITIES

*Cases:*

*Animal Legal Def. Fund v. Wasden* .................................................................. 8, 12
   878 F.3d 1184 (9th Cir. 2018)

*Bartnicki v. Vopper* .......................................................................................... 13
   532 U.S. 514 (2001)

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.* ............................................ 9
   499 F.3d 520 (6th Cir. 2007)

*E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings* ............ 14, 15
   652 F.3d 999 (9th Cir. 2011)

*Food Lion, Inc. v. Capital Cities/ABC, Inc.* .................................................. 8, 9, 12
   964 F. Supp. 956 (M.D.N.C. 1997)

*Food Lion, Inc. v. Capital Cities/ABC, Inc.* .................................................... 8, 9
   194 F.3d 505 (4th Cir. 1999)

*Frome v. Renner* ............................................................................................ 8, 9
   No. 97 CIV 5641, 1997 WL 33308718 (C.D. Cal. Oct. 1, 1997)

*Hustler Magazine, Inc. v. Falwell* ................................................................... 8
   485 U.S. 46 (1988)

*Kaelin v. Globe Commc'ns Corp.* ................................................................... 11
   162 F.3d 1036 (9th Cir. 1998)

*Kuschner v. Nationwide Credit, Inc.*, ............................................................. 14
   256 F.R.D. 684 (E.D. Cal. 2009)

*La Luna Enterprises, Inc. v. CBS Corp.*, ........................................................ 9
   74 F. Supp. 2d 384 (S.D.N.Y. 1999)

*Lachman v. Sperry-Sun Well Surveying Co.*, ................................................. 13
   457 F.2d 850 (10th Cir. 1972)

*Masson v. New Yorker Magazine, Inc.*, .......................................................... 10
   501 U.S. 496 (1991)

*Med. Lab. Mgmt. Consultants v. ABC, Inc.*, ................................................. 8
   30 F. Supp. 2d 1182 (D. Ariz. 1998)

*NAF v. CMP* ................................................................................................. 13, 14
   No. 15-CV-03522-WHO, 2016 WL 454082 (N.D. Cal. Feb. 5, 2016)

*Nat'l Abortion Fed'n v. Ashcroft* .................................................................... 7
   No. 03 CIV. 8695 (RCC), 2004 WL 555701 (S.D.N.Y. Mar. 19, 2004)

*Nw. Mem'l Hosp. v. Ashcroft* .......................................................................... 4
   362 F.3d 923 (7th Cir. 2004)

# TABLE OF AUTHORITIES (CONT.)

***Cases (Cont.):***

*Newsome v. Penske Truck Leasing Corp.* ............................................................................... 14
    437 F. Supp. 2d 431 (D. Md. 2006)

*Planned Parenthood Fed'n of Am., Inc. v. Ashcroft* ............................................................. 7
    No. C 03-4872 PJH, 2004 WL 432222 (N.D. Cal. Mar. 5, 2004)

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.* ............................................................ 3
    No. CV 16-00300 CJC (RAOx), 2017 WL 3275615 (C.D. Cal. Feb. 14, 2017)

*POM Wonderful LLC v. Coca Cola Co.* ................................................................................. 13
    166 F. Supp. 3d 1085 (C.D. Cal. 2016)

*Pom Wonderful LLC v. Welch Foods, Inc.* ........................................................................... 13
    737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010)

*Ringler Assocs. Inc. v. Maryland Cas. Co.* ........................................................................... 10
    80 Cal. App. 4th 1165 (2000)

*Russell v. Soldinger* ................................................................................................................. 13
    59 Cal. App. 3d 633 (1976)

*Stallworth v. Brollini,* ............................................................................................................. 4
    288 F.R.D. 439 (N.D. Cal. 2012)

*Stevens v. Storke,* ................................................................................................................... 11
    191 Cal. 329 (1923)

*United States v. Northrop Corp.,* ......................................................................................... 13
    59 F.3d 953 (9th Cir. 1995)

*United States v. Ruehle,* ......................................................................................................... 5
    583 F.3d 600 (9th Cir. 2009)

*Van Vactor v. Walkup,* ........................................................................................................... 12
    46 Cal. 124 (1873)

*Weiland v. City of Concord,* ................................................................................................... 4
    No. 13-CV-05570-JSC, 2014 WL 3883481 (N.D. Cal. Aug. 7, 2014)

***Federal Statutes:***

1 U.S.C. § 8 .................................................................................................................................. 1

18 U.S.C. § 1111 ......................................................................................................................... 14

18 U.S.C. § 1531(a) ..................................................................................................................... 1

42 U.S.C. § 289g-1 ...................................................................................................................... 1

# TABLE OF AUTHORITIES (CONT.)

***Federal Statutes:***

42 U.S.C. § 289g-2 .................................................................................... 8, 10

42 U.S.C. § 289g-2(a) .................................................................................... 1

42 U.S.C. § 289g-2(e)(3) .............................................................................. 10

Fed. R. Civ. P. 26(b)(1) ............................................................................ 2, 3

Fed. R. Civ. P. 26(b)(2) ............................................................................ 2, 3

Fed. R. Civ. P. 26 Adv. Comm. Note to the 2000 Amend. .......................... 14


***California Statutes:***

Cal. Pen. Code § 632 .............................................................................. 14, 15

Cal. Pen. Code § 633.5 ...................................................................... v, 6, 14, 15

# NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE THAT on January 10, 2019, at 11:00 a.m., in Courtroom 4 of the Honorable Donna M. Ryu at the United States District Court for the Northern District of California, Oakland Courthouse, 3rd Floor, 1301 Clay Street, Oakland, CA 94612, (1) the Center for Medical Progress ("CMP"), BioMax Procurement Services, LLC ("BioMax"), David Daleiden, and Troy Newman, will and hereby do move this Court for an order compelling Plaintiffs Planned Parenthood Federation of America ("PPFA"), Planned Parenthood: Shasta-Diablo dba Planned Parenthood Northern California ("PPNC"), Planned Parenthood Mar Monte ("PPMM"), Planned Parenthood of the Pacific Southwest ("PPPSW"), Planned Parenthood Los Angeles ("PPLA"), Planned Parenthood/Orange and San Bernardino Counties ("PPOSBC"), Planned Parenthood Central Coast California ("PPCCC"), Planned Parenthood Pasadena and San Gabriel Valley ("PPPSGV"), Planned Parenthood of the Rocky Mountains ("PPRM"), Planned Parenthood Gulf Coast ("PPGC"), and Planned Parenthood Center for Choice ("PPCFC") (collectively "Plaintiffs") to produce documents responsive to CMP's and Newman's separate document requests relating to Plaintiffs' fetal tissue programs; (2) Troy Newman will and hereby does move this Court for an order compelling Plaintiffs to provide an appropriate response to his interrogatory relating to Plaintiffs' fetal tissue programs; and (3) CMP, BioMax, and Daleiden will and hereby do move this Court for an order compelling Plaintiffs to produce documents responsive to their document requests relating to their Cal. Pen. Code § 633.5 affirmative defense.

These motions are made on the grounds that said documents are relevant to the subject matter of the action and do not relate to privileged matters, and the refusal to produce them is without justification. This motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the previously filed Declaration of Paul M. Jonna at Dkt. 326-1, the previously filed congressional reports at Dkt. 303-3 and 307, the previously filed email at Dkt. 350-3, and the concurrently filed Declarations of Paul M. Jonna, Edward L. White, Jeffrey M. Trissell, and David Daleiden.

## MOTION TO COMPEL REGARDING PLAINTIFFS' FETAL TISSUE PROCUREMENT PROGRAMS

Defendants hereby move the Court for an order compelling Plaintiffs to produce documents responsive to CMP's document requests nos. 4, 8, 10, 11, 23, 26, 27, 48, 121, and 131, and Newman's document request no. 16 and to respond fully to Newman's interrogatory no. 8.[1] In Plaintiffs' own words, a central purpose of this lawsuit is "to recover damages for the ongoing harm to Planned Parenthood emanating from the video smear campaign." Dkt. 59, ¶ 12.

As explained herein, the document requests and interrogatory at issue seek information relevant to a *critical* factual dispute at the heart of this case: whether, and the extent to which, Plaintiffs engaged in illegal acts. Did, as Plaintiffs allege, Defendants engage in a "smear campaign" by falsely claiming that Plaintiffs violated the law, when in reality Plaintiffs have fully complied with the law? Or did, as Defendants allege, Plaintiffs actually violate the law?

The requested written discovery generally falls into five categories, which establish the veracity of Defendants' allegations that Plaintiffs: (1) schemed to profit from the sale of fetal tissue; (2) modified abortion procedures to facilitate such profiting; (3) violated the federal partial-birth abortion ban to facilitate such profiting; (4) procured tissue from born-alive infants to facilitate such profiting; and (5) procured and sold fetal tissue without donor consent. Discovery concerning the extent to which Plaintiffs violated various laws[2] by engaging in such acts is *highly* relevant in this case. If, for example, the requested discovery indicates that Plaintiffs schemed to illegally profit from the sale of fetal tissue, or engaged in illegal partial birth abortions, then Plaintiffs' allegation of a "smear campaign" through which Defendants allegedly proximately caused extensive damages to law-abiding entities completely falls apart. Such evidence would also be relevant to impeach any Plaintiffs that falsely claimed they have fully complied with the law, and would bolster a public policy defense since

---

[1] These requests are laid out verbatim (and, if appropriate, as narrowed), in Defendants' Separate Statement. The original written discovery, and Plaintiffs' responses, are also attached to the declarations of Paul M. Jonna (counsel for CMP), and Edward L. White (counsel for Newman).

[2] *See, e.g.,* 42 U.S.C. § 289g-2(a) (prohibiting fetal tissue profits); 42 U.S.C. §§ 289g-1 (informed consent and non-alteration of abortion methods); 18 U.S.C. § 1531(a) (partial-birth abortion illegality); 1 U.S.C. § 8 (Born-Alive Infants Protection Act of 2002).

the enforcement of contracts to conceal illegal activities is highly disfavored. Given the centrality of this factual dispute to this case, and the fact that Plaintiffs seek *millions* of dollars in damages—which could potentially be trebled under RICO—the requested discovery is clearly "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Plaintiffs initially refused to produce any documents whatsoever in response to Defendants' requests. *See* Jonna Decl., Ex. 2; White Decl., Ex. 8 & 11 (original responses). After meet and confer efforts, Plaintiffs ultimately agreed to produce limited documents, but only in response to category 1 above, *i.e.*, Plaintiffs' scheme to profit from the sale of fetal tissue. *See* Jonna Decl., Ex. 3; White Decl., Ex. 9 & 12 (amended responses); *see also* Dkt. 326-1, at 16–70 (relevant meet and confer correspondence). But Plaintiffs only agreed to provide documents in response to five of CMP's requests, Nos. 6, 9, 18, 28, and 29. *See* Trissell Decl., ¶ 2 (explaining Plaintiffs' production).

After further meet and confer discussions, Plaintiffs agreed to produce "non-publicly available documents that PPFA provided to the [Senate Judiciary Committee] and [House Energy & Commerce Committee] that relate to fetal tissue as requested." Letter from Bomse to Jonna (Jun. 26, 2018) (Dkt. 326-1 at 129); *see also* Email from Bomse to Jonna (Aug. 2, 2018, 10:55 p.m.) (Dkt. 326-1 at 142) (describing contents). But Plaintiffs would only agree to produce those documents if Defendants waived any right to seek additional documents. *See id.* Further, that proposal had "caveats" of certain documents which Plaintiffs had produced to Congress that Plaintiffs were unwilling to produce here. Email from Jonna to Bomse (Sep. 10, 2018, 4:35 p.m.) (Dkt. 326-1 at 137–38). Finally, that proposal would not include any internal emails regarding Plaintiffs' fetal tissue programs. *Id.* As a result, the meet and confer process broke down, and Plaintiffs ultimately refused to produce any other documents in response to the categories of information listed above. Plaintiffs also refused to respond to Newman interrogatory no. 8 by identifying each person (by name, address, and place of employment) who was employed by, or volunteered for, Plaintiffs who was responsible for compliance with fetal tissue donation and disposal laws and regulations. Plaintiffs objected on the basis of relevance, proportionality, burden, privacy, and attorney-client privilege.

Defendants request that the Court order Plaintiffs to produce documents, and respond fully to the interrogatory, as laid out in Defendants' Separate Statement.

## 1. Proportionality Analysis.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). For requests subject to a motion to compel, "the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." N.D. Cal. Civ. L.R. 37-2. Establishing proportionality is a joint responsibility, where the moving party first establishes relevance and then the opposing party raises any burden objections. *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. CV 16-00300 CJC (RAOx), 2017 WL 3275615, at *6 (C.D. Cal. Feb. 14, 2017).

Here, Defendants' document requests (as narrowed) seek communications via search terms and custodians and specific documents such as manuals and policies. Therefore, they do not believe there is any proportionality concern with respect to documents. *See* Sep. Stmnt. Moreover, Plaintiffs have produced hardly any documents with respect to their fetal tissue procurement programs or Defendants' published allegations against them. *See* Trissell Decl., ¶¶ 3–16 (explaining Plaintiffs' meager production). That Plaintiffs have already hand-picked and produced some relevant documents does not defeat Defendants' right to receive what they have requested. Otherwise, parties in any case could make a mockery of the discovery rules by withholding potentially damaging documents, producing a large volume of innocuous documents, and then arguing that they have already produced enough so nothing further needs to be produced.

As discussed herein, the requested discovery is highly important to the "issues at stake in the action." Fed. R. Civ. P. 26(b)(1). Defendants seek key documents which form the centerpiece of their defense. Defendants also seek via this motion to compel information that is solely within Plaintiffs' control. *See id.* Finally, Plaintiffs are eleven large corporations that possess sufficient resources to search for and produce the requested documents. *See id.* With respect to emails, although Defendants agreed to examine their email accounts to determine how many existed that

1  were responsive to Plaintiffs' requests, and then confer with Plaintiffs about the burden of
2  producing them, Plaintiffs have steadfastly refused to do the same. *See* Email from Jonna to Bomse
3  (Apr. 19, 2018, 1:48 p.m.) (Dkt. 326-1 at 98–101); Email from Jonna to Bomse (Jun. 11, 2018, 10:17
4  a.m.) (Dkt. 326-1 at 111–12); Letter from Bomse to Jonna (Jun. 26, 2018) (Dkt. 326-1 at 130).

5  Producing the discrete categories of requested documents, and running word searches for
6  the requested emails, is not disproportionately burdensome as they are the key documents
7  Defendants need to establish their affirmative defenses and will be divided among eleven corporate
8  plaintiffs. Moreover, any claim of burden would strain credulity. As outlined in the Separate
9  Statement, the emails which Defendants seek are those with four tissue procurement companies. It
10 should not be difficult to search for e-mails between four tissue procurement companies and those
11 persons at each affiliate responsible for overseeing tissue procurement.

12 **2.  Privacy Analysis.**

13 Plaintiffs claim a right to privacy, which is inapplicable in the context of this lawsuit. Plaintiffs
14 brought this lawsuit—an intrinsically public affair—*expressly* challenging the allegations of criminality
15 central to the Defendants' videos, and now seek to shield themselves from discovery regarding those key
16 claims. But "[a] party may [ ] waive [its] privacy rights by putting the contents at issue in a case."
17 *Weiland v. City of Concord*, No. 13-CV-05570-JSC, 2014 WL 3883481, at *2 (N.D. Cal. Aug. 7, 2014).

18 Here, the truth of Defendants' public statements about Plaintiffs are central to this case.
19 Thus, the high relevance of the documents Defendants seek outweighs any privacy concerns
20 Plaintiffs assert, even if remotely applicable. *See Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D.
21 Cal. 2012) (privacy claims are subject to a balancing test). Moreover, Plaintiffs waived any privacy
22 interest by filing this lawsuit. The mere fact that this case involves abortion does not change the
23 analysis—there is no "Fourteenth Amendment objection" like there is a "First Amendment
24 objection." In *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004), a partial-birth abortion
25 case, the court explained that privacy, even in the abortion context, is a sliding scale where the
26 Court must weigh interests. There, the court unequivocally stated that "[t]he concerns that the
27 hospital has articulated do not necessarily justify withholding probative evidence from the
28 government," but quashed the subpoena because the government could not articulate what it hoped

4

1 to learn from the hospital records. *Id.* at 927, 930. Here, in contrast, there are specific reasons

2 (discussed herein) why Defendants need the documents they seek.[3]

3 **3.   Relevance Analysis.**

4      "[E]vidence is relevant if it has any tendency to make more or less probable a fact that is of

5 consequence in determining the action." Order, Dkt. 226 at 10, n.7 (quotation marks, ellipses, and

6 brackets omitted). In fact, "[g]iven the broad scope of discovery permitted by the Federal Rules," any

7 "position that discovery must be narrowly circumscribed is untenable." *Id.* at 10:13–15. Generally,

8 parties are entitled to test each other's claims. *Id.* at 12:24–25. "[T]he party opposing discovery has the

9 burden of showing that discovery should not be allowed, and also has the burden of clarifying,

10 explaining and supporting its objections with competent evidence." *Id.* at 5:26–28.

11      **3.1.   Factual Relevance Explanation.**

12      Here, as stated above, the requested written discovery falls into five categories all related to

13 Defendants' public statements about Plaintiffs engaging in illegal activities, which Plaintiffs assert

14 proximately caused their alleged damages and whose veracity Defendants assert establishes their

15 affirmative defenses. Given the broad scope of discovery, the requested documents and information

16 would tend "to make more or less probable a fact that is of consequence in determining the action,"

17 Order, Dkt. 226 at 10, n.7, by testing Plaintiffs' claim that they fully complied with all laws. Whether

18 Plaintiffs did, or did not, illegally scheme to profit from fetal tissue sales, alter abortions to secure more

19 fetal tissue, commit partial-birth abortions, fail to obtain informed consent for fetal tissue donation, or

20 kill infants born alive, is highly relevant to: (1) the veracity of the many assertions in the Complaint

21 (expressly incorporated into every cause of action) that Plaintiffs were falsely accused of wrongdoing;

22 (2) the credibility of Plaintiffs and Defendants considering the many statements that they have made

23 _____

24 [3] Plaintiffs have also asserted that certain documents they produced to Congress were privileged, but
   that the production of them to Congress did not waive the privilege. *See* Dkt. 326-1 at 129, 136–37.
25 Defendants dispute the non-waiver. *E.g., United States v. Ruehle*, 583 F.3d 600, 612 (9th Cir. 2009).
   Yet, because Plaintiffs tentatively offered to "produce the [documents] if defendants would agree that
26 any such production would not constitute a waiver of the privilege," Dkt. 326-1 at 137, Defendants
   request that the Court order Plaintiffs to produce the documents without waiver, and the parties can
27 later litigate whether any privilege applies.

28

about Plaintiffs' wrongdoing (or lack thereof); (3) the issue of whether Defendants proximately caused damages to Plaintiffs through false claims about Plaintiffs' illegal acts; and (4) defenses premised upon the illegality of Plaintiffs' acts, such as public policy, unclean hands, and Cal. Penal Code § 633.5 (which are discussed in detail herein).

For example, Defendants request that the Court order Plaintiffs to produce policies regarding "compliance with the partial-birth abortion law." (CMP RPD 48). Defendants' first and last press releases state that Plaintiffs have a cavalier approach to compliance with the partial-birth abortion ban, such that Plaintiffs had no problem violating it for the purpose of facilitating fetal tissue sales. Daleiden Decl., ¶¶ 5, 15, Exs. 19, 29. Plaintiffs' policies regarding the ban will shed light on the veracity of Defendants' public statements, as well as Plaintiffs' denials of those statements.

Additionally, Defendants request policies concerning the "use of digoxin or other feticides." (CMP RPD 9). Defendants' fourth, eighth, and eleventh press releases discuss the two basic means of ensuring fetal demise in an abortion: dismemberment and poison. They further discuss how fetal tissue that has been poisoned cannot be harvested, and point out that, since the subjects of those press releases offer to deliver intact fetuses that were not poisoned, the fetuses they are delivering may be born-alive infants. Daleiden Decl., ¶¶ 8, 12, 15, Exs. 22, 26, 29. Plaintiffs' policies regarding feticidal poisons will shed light on Defendants' (and a whistleblower's) claims that the perverse incentives here led to Plaintiffs delivering born-alive infants to companies for sale of their body parts.

Defendants also seek policies concerning "management/prevention of transient fetal survival/out-of-center deliveries, and 2nd-trimester and later abortion care, particularly cervical preparation, and use of D&E vs. induction." (CMP RPD 24). Defendants' fourth, fifth, seventh, and ninth press releases discuss intact fetuses generally. Daleiden Decl., ¶¶ 8, 9, 11, 13, Exs. 22, 23, 25, 27. In one, a whistleblower named Holly O'Donnell stated that she was instructed to procure tissue from a born-alive infant. In another, a separate fetal tissue procurement technician discussed how a fetus "just fell out." Living fetuses that "f[a]ll out" are born-alive infants. Thus, Defendants publicly claimed that Plaintiffs engage in murder or manslaughter to facilitate their fetal tissue transfer programs. The requested policies on "transient fetal survival" and viable "second-trimester abortion[s]" will shed light on the veracity of Defendants' claims.

Additionally, Defendants seek policies concerning "mechanical vacuum aspiration." (CMP RPD 24). Defendants' second press release highlighted one abortion provider's offer to use a "less crunchy" technique—mechanical vacuum aspiration—to procure fetal tissue. Daleiden Decl., ¶ 6, Ex. 20. The doctor stated that by using mechanical vacuum aspiration, she would be increasing the length of, and the pain of, the abortion procedure but that she may be willing to do so anyway. Plaintiffs' policies regarding mechanical vacuum aspiration, and when it is appropriate to use it, would shed light on the profit incentive which would motivate a doctor to switch to that procedure even if it is not ideal for the patient.

Further, Defendants seek "[a]ny records or summaries (which may be appropriately redacted) of abortion cases involving an intact procedure, fetal expulsion, or transient fetal survival, for Plaintiffs PPLA, PPPSW, PPOSBC, PPGC, and PPCFC." (CMP RPD 24.) These "records or summaries," like those Plaintiffs produced in the partial-birth abortion cases from 2004–2008, are relevant for a variety of reasons (as discussed previously concerning the five categories of requested documents).[4] Defendants learned from numerous individuals during their investigation that intact fetal cadavers are more valuable. Plaintiffs were paid per organ. Where a fetus was extracted whole, it was easier for the technician to dissect it and find each of the useable organs. Thus, an analysis of the total number of intact fetuses would reveal information about Plaintiffs' profit potential.

Moreover, as Defendants' investigation uncovered, Plaintiffs would modify their abortion procedures to facilitate the procurement of intact fetal cadavers (as much as possible). If the number of intact cadavers exceeds the average number that are found in clinics not selling the cadavers, then this would provide corroborating evidence that Plaintiffs were illegally modifying their procedures to sell the fetuses. Defendants also discovered that Plaintiffs were modifying their procedures to the point of extracting born-alive infants, and then killing them. This practice is not uncommon among

---

[4] *See NAF v. Ashcroft*, No. 03 CIV. 8695 (RCC), 2004 WL 555701, at *1 (S.D.N.Y. Mar. 19, 2004) (granting motion to enforce subpoena for production of abortion medical records); *PPFA, Inc. v. Ashcroft*, No. C03-4872 PJH, 2004 WL 432222, at *1 n. 1 (N.D. Cal. Mar. 5, 2004) (denying motion to compel further abortion medical records because "PPFA had [already] produced seventeen patients' medical records" and "PPGG [already] produced patient medical records for all [] post-sixteen week abortions performed at PPGG over the past three years").

abortion providers due to an ideological belief that an abortion provider's mistake in delivering the infant alive, instead of killing it first, should not grant the infant rights. *See* Daleiden Decl., ¶ 25. Thus, Defendants believe there may be records or summaries where Plaintiffs candidly discuss cases involving born-alive infants. This is relevant to establish the truth of Defendants' claims that Plaintiffs were modifying abortion procedures to deliver living infants that were then killed and sold.

### 3.2. Defendants' Substantial Veracity Defense.

#### 3.2.1. Background law on the Proximate Causation and First Amendment bars to publication damages.

In *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956 (M.D.N.C. 1997) (*Food Lion I*), *aff'd*, 194 F.3d 505 (4th Cir. 1999) (*Food Lion II*), the district court held that damages that flow from the publication of a broadcast are proximately caused by the publication, and not any preceding illegal or tortious activity, such as trespass or fraud. *Food Lion I*, 964 F. Supp. at 966. In *Food Lion II*, the Fourth Circuit affirmed, but on a different basis and without repudiating the reasoning of the district court. The Fourth Circuit held that all of the damages at issue were *reputational* publication damages, which are barred by the First Amendment unless the plaintiff proves defamation. *Food Lion II*, 194 F.3d 5 at 522. The *Food Lion II* rationale is far more developed, and flows from Supreme Court cases, including *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988).[5]

To ensure that the plaintiff does not improperly receive publication-damages, the Court assumes, and instructs the jury, that the defendant's speech **must be assumed as true for all purposes.** If the plaintiff "d[oes] not challenge the content of the broadcast by bringing a libel suit," then **"[f]or the purposes of . . . th[e] case, it is assumed that the content of the [defendant's] broadcast about [the plaintiff] [i]s true."** *Food Lion I*, 964 F. Supp. at 959; *see also id.* at 962 ("[T]he broadcast must be assumed to be true") (emphasis added); *Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 30 F. Supp. 2d 1182, 1199 (D. Ariz. 1998), *aff'd*, 306 F.3d 806 (9th Cir. 2002) ("In *Food Lion* and *Frome v. Renner*, the courts assumed the truth of the broadcast because the plaintiffs failed to bring a

---

[5] This Court has accepted the reasoning of both *Food Lion I* and *Food Lion II*, Order, Dkt. 124 at 32:8-34:7 (*Food Lion I*), 34:8-36:11 (*Food Lion II*), as has generally the Ninth Circuit. *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1195 n.9 (9th Cir. 2018).

1  defamation or libel claim."); *Frome v. Renner*, No. 97 CIV 5641, 1997 WL 33308718, at *1 (C.D. Cal.

2  Oct. 1, 1997) ("[T]he Court did not consider either the tape or the transcript.").

3      Courts take a holistic and practical look at "the injuries actually sustained" and the purpose

4  of the plaintiff's artful pleading. *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 530–33

5  (6th Cir. 2007) ("[A]lthough Compuware . . . purports to seek only rescission of the contract and return

6  of the sums it paid to Moody's, it is inescapable that Compuware seeks compensation for harm caused

7  to its reputation. . . . [I]ts only injuries are defamation-type harm."). If damages are the type recoverable

8  via a defamation claim, and the plaintiff does not bring a defamation claim, the damages are not

9  recoverable. *See La Luna Enterprises, Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 392 (S.D.N.Y. 1999).

10          3.2.2.   *The Court should rule that Defendants' public statements about Plaintiffs must be*
11                   *accepted as true for all purposes.*

12      Here, in response to the *Food Lion* cases, Plaintiffs first argued that they should be able to

13  recover damages stemming from Defendants' publications without proving defamation, by proving

14  that the damages were not proximately caused by "the content of the videos." Rather, Plaintiffs

15  argued, "the mere fact of identifying abortion providers by name and image caused the increase in

16  harassment alleged in the FAC." Dkt. 99 at 12:25-26. The Court disagreed, holding instead that

17  Plaintiffs are limited to "damage [that was] the 'direct' result of defendants' fraud in securing

18  access to plaintiffs' private conferences and clinics." Order, Dkt. 124 at 33:17-19; *see also id.* at 34:2-

19  6 ("[P]laintiffs may have implemented security measures simply upon discovering defendants'

20  breaches before the full extent of the publications was known and the backlash from them

21  occurred. . . . [The *Food Lion* cases] may at summary judgment or trial prevent plaintiffs from

22  recovering on some categories of damages.").

23      Recognizing that the allowable damages that the Court referenced would be extremely small, if

24  not non-existent, Plaintiffs have switched gears. Now, Plaintiffs allege that all of their "damages from

25  publication" stem from Defendants' public statement that Plaintiffs were "engaging in a criminal

26  conspiracy to make money off of aborted fetal parts." Dkt. 258 at 3; *see also* Dkt. 343-5 at 11:4–7.

27  Apparently, Plaintiffs believe that even though they have not pleaded defamation, if they prove

28  defamation, then they can recover reputational-publication damages. This is incorrect. The failure to

1 plead defamation is fatal to many of Plaintiffs' categories of claimed damages.

2 In light of the governing law discussed above, Defendants anticipate that the Court will
3 instruct the jury that they must assume that the statements made in Defendants' videos are true.
4 Defendants further expect that the Court will then instruct the jury that it must determine whether
5 the claimed damages flow from Defendants' publications because, if they do, they are unrecoverable.
6 If, however, the Court disagrees, then Defendants will be severely prejudiced without the discovery
7 which is the subject of this motion. Thus, at this juncture, Defendants need either (1) a ruling from the
8 Court that everything that Defendants have said about Plaintiffs (including the allegations of illegal
9 conduct) will be assumed as true for summary judgment and trial purposes; or (2) an order overruling
10 Plaintiffs' relevance objection and requiring Plaintiffs to produce the withheld discovery noted herein.

11    *3.2.3. In the alternative, the Court should grant discovery regarding the affirmative*
12       *defense of substantial veracity.*

13 If the Court does not rule that Defendants' public statements about Plaintiffs' illegal acts must
14 be accepted as true for all purposes, then Defendants have the right to obtain discovery establishing,
15 and then present evidence to the jury establishing, that Defendants' statements about Plaintiffs were
16 substantially true. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991) ("Factual truth is
17 a complete defense to defamation."); *see also Ringler Assocs. v. Maryland Cas. Co.*, 80 Cal. App. 4th
18 1165, 1180–81 (2000).

19 With respect to Plaintiffs' current strategy, it appears to be an argument that stems from 42
20 U.S.C. § 289g-2(e)(3), which lists the only allowable reimbursable costs relating to the transfer of fetal
21 tissue. Defendants believe that Plaintiffs will argue that, although they may have violated § 289g-2 by
22 receiving payment for costs which are not legally reimbursable, overall they still did not make a net profit
23 (or the profit made was nominal); therefore, any statement by Defendants that Plaintiffs were
24 intentionally violating the law *for the purpose of* profiting, as opposed to unintentionally violating the law,
25 would be false. *See* Dkt. 303-3 at 396. Defendants dispute Plaintiffs' alleged honest intent—and believe
26 Plaintiffs willingly made significant profits—but Plaintiffs may be able to convince a jury of honest intent
27 if they are able to avoid providing the requested discovery. Thus, Defendants need the requested
28 discovery to show not only that Plaintiffs illegally profited, but that they intended to profit.

### 3.3.   Defendants' Causation Defense.

In the Complaint, Plaintiffs put the truth or falsity of Defendants' public statements about Plaintiffs and their practices directly at issue. *See, e.g.,* Dkt. 59, ¶¶ 12, 45, 94, 113. Yet, during the litigation, Plaintiffs have stated that while "Defendants will be free to argue that the other ancillary accusations concerning [illegal acts] may have triggered the public reaction that required substantial security increases . . . Plaintiffs are not required to prove that[, and Defendants are not entitled to discovery regarding whether,] every statement in the videos is false." Dkt. 326-1 at 92 (citations omitted). This is incorrect. "[A] defamatory meaning must be found, if at all, in a reading of the publication as a whole." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998); *see also Stevens v. Storke*, 191 Cal. 329, 334 (1923). Plaintiffs seek millions of dollars of damages in light of the alleged "smear campaign," but cannot avoid discovery that would clearly shed upon the extent to which Defendants' allegations about Plaintiffs' conduct are true. Moreover, since Plaintiffs admit that Defendants can argue the veracity of their claims at trial, they are per se relevant and broad discovery concerning these claims should be allowed.

Here, Defendants publicly stated that Plaintiffs profited from selling fetal tissue and committed other crimes. But the "other" illegal conduct was expressly done to facilitate the profiteering—it was not done in a vacuum. Defendants' public statements about Plaintiffs began in the summer of 2015. *See* Daleiden Decl., ¶ 3, Ex. 18. At that time, CMP began releasing the results of its investigative journalism study into illegal practices in the fetal tissue procurement industry, with new information published on a weekly basis. *Id*. CMP's blog page captured the publication timeline. *Id*. Daleiden's declaration provides descriptions and links to the CMP press releases published in 2015 as well as the actual press releases. *Id*. at ¶¶ 5–15, Exs. 19–29.

As the press releases demonstrate, along with their accompanying video footage, Defendants' public statements about Plaintiffs regarding other alleged illegalities, such as violations of the partial-birth abortion ban, were not ancillary—they were key allegations Defendants made in their press releases. *See id.*, Ex. 11, First Press Release, "Planned Parenthood's Top Doctor, Praised by CEO, Uses Partial-Birth Abortions to Sell Baby Parts." Those allegations simply do not make sense when divorced (as Plaintiffs attempt to do) from the allegation that Plaintiffs were selling fetal tissue for

profit: Plaintiffs violated the partial-birth abortion ban, violated HIPAA, and obtained fetal tissue without donor consent, for the purpose of . . . selling fetal tissue at a loss? No, Plaintiffs violated those laws precisely because they had a perverse financial incentive to do so. The allegations simply cannot be split up; Defendants' statements must be read together. *See Van Vactor v. Walkup*, 46 Cal. 124, 134 (1873) ("[T]he Court below fell into the error of separating the alleged libel into two parts, and construing each part separately, without reference to the other."). Because Plaintiffs seek damages flowing from Defendants' public statements, Defendants are entitled to discovery to prove that their public statements about Plaintiffs were true. Otherwise, as noted above, Defendants are entitled to a jury instruction that all their statements must be accepted as true.

Plaintiffs have further stated that "[t]here is no fair reading of the FAC that would suggest that Plaintiffs' intended to discuss anything the Human Capital Project said about partial-birth abortion, consent to donate fetal tissue, or 'live births.'" Dkt. 343-5 at 8:22–24. Plaintiffs, however, have repeatedly claimed (in the Complaint and elsewhere) that they are innocent of *any* wrongdoing, thus rendering all of CMP's allegations a "defamatory" smear campaign. Moreover, just because Plaintiffs do not plan on talking to the jury about partial-birth abortion or live births does not mean that Defendants cannot. In fact, Defendants fully intend to do so. Defendants believe, and Plaintiffs' own evidence shows, that those issues drove the public's reaction to the alleged "smear campaign." Defendants will argue to the jury that other revelations in the videos, from infanticide to Dr. Nucatola describing converting to breech and "crush[ing] above and crush[ing] below" while munching on her salad and drinking wine, were the driving factors of the public's reaction.

Stated differently, while Plaintiffs contend that Defendants harmed them by generating public animosity against them through *false* allegations of illegal conduct, Defendants contend that the proximate cause of any adverse reaction toward Plaintiffs was *their own illegal conduct*; as such, whether Plaintiffs engaged in illegal acts is directly relevant to proximate cause and Defendants are entitled to obtain discovery on that issue. *See Food Lion I*, 964 F. Supp. at 963 (plaintiff's own improper food handling practices proximately caused diminished consumer confidence, not defendant's publication of that information); *see also Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1195 n. 9 (9th Cir. 2018) ("We disagree with the . . . suggestion that" "publication of a story about the

facility" would be "harm from gaining access to property by misrepresentation"; "This approach . . .
places a value judgment on the reporting itself and undermines the First Amendment right to critique
and criticize.").

### 3.4. Defendants' Other Defenses

#### 3.4.1. Unclean Hands

The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1091–92 (C.D. Cal. 2016). "In applying the unclean hands doctrine, the relevant inquiry is . . . whether the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010) (brackets and quotation marks omitted; emphasis added). "The burden is on the one coming into a court of equity for relief to prove not only his legal rights but his clean hands." *Russell v. Soldinger*, 59 Cal. App. 3d 633, 646 (1976) (citation omitted). Here, as two Congressional investigations determined, probable cause exists to believe that Plaintiffs violated the law, Defendants discovered and publicized such violations, and that discovery led Plaintiffs to engage in a cover up. *See* Dkt. 303-3, 307. Accordingly, it would be inequitable to not permit Defendants to show the jury the dirt on Plaintiffs' hands.

#### 3.4.2. Public Policy

"[A] promise [will be found] unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *United States v. Northrop Corp.*, 59 F.3d 953, 958 (9th Cir. 1995). Thus, Defendants are entitled to prove that the contracts they allegedly entered into are unenforceable as a matter of public policy due to Plaintiffs' violation of federal and state law. *See, e.g., Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853 (10th Cir. 1972), *cited with approval in Bartnicki v. Vopper*, 532 U.S. 514, 539 (2001) (Breyer, J., concurring) ("It is public policy . . . everywhere to encourage the disclosure of criminal activity. . . . [Here], the appellee may reasonably have felt that in adhering to the terms of its contract with the appellants it was silently watching a crime being committed."). In *NAF v. CMP*, this Court considered *the merits* of the public policy defense and analyzed whether the evidence presented in the preliminary

13

1  injunction record would cause the contracts to be unenforceable. *NAF v. CMP*, No. 15-CV-03522-
2  WHO, 2016 WL 454082, at *19–21 (N.D. Cal. Feb. 5, 2016), *aff'd*, 685 Fed. Appx. 623, 627 (2017).
3  Although the defense was rejected at that stage, it was considered, showing that with additional
4  discovery it could be meritorious at trial.

5           *3.4.3. Impeachment.*

6           "[I]nformation that could be used to impeach a likely witness, although not otherwise
7  relevant to the claims or defenses, might be properly discoverable." Fed. R. Civ. P. 26 Adv. Comm.
8  Note to the 2000 Amend.; *see also Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 436
9  (D. Md. 2006). Here, as laid out in the Jonna declaration, ¶¶ 9–14, Plaintiffs have repeatedly
10 stated—not only that they did not make a net profit from their fetal tissue sales—but that they did
11 not violate the law. Because Defendants' public statements about Plaintiffs' illegality, and Plaintiffs'
12 repeated disavowal of any wrongdoing, are at the heart of this case, and impeachment regarding
13 Plaintiffs' statements would be relevant to many aspects of the case (including credibility),
14 Defendants are entitled to discovery to show that Plaintiffs did, in fact, violate the law.

15       **MOTION TO COMPEL REGARDING DEFENDANTS'**
16         **CAL. PEN. CODE § 633.5 DEFENSE**

17          "Nothing in Section . . . 632 . . . prohibits one party to a confidential communication from
18 recording the communication for the purpose of obtaining evidence reasonably believed to relate to
19 the commission . . . of . . . any felony involving violence against the person." Cal. Pen. Code § 633.5.
20 "Murder is the unlawful killing of a human being." 18 U.S.C. § 1111. "[T]he word[] 'person' . . .
21 include[s] every infant member of the species homo sapiens who is . . . complete[ly] exp[elled] or
22 extract[ed] from his or her mother . . . at *any stage of development*, who after such expulsion or
23 extraction breathes or *has a beating heart*." 1 U.S.C. § 8 (emphasis added).

24          In determining "reasonableness" under § 633.5, "both the question of what [the recorder]
25 actually believed at the time of recording . . . and whether that belief was reasonable would need to
26 be resolved in order for [the recorder] to be exempted from liability." *Kuschner v. Nationwide Credit,*
27 *Inc.*, 256 F.R.D. 684, 689 (E.D. Cal. 2009). "[A]fter-acquired evidence 'may shed light' on the
28 objective reasonableness of a [person's] actions at the time." *E.M. ex rel. E.M. v. Pajaro Valley Unified*

*Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1004 (9th Cir. 2011).

Here, Defendants' "Human Capital Project" investigated, documented, and reported on illegal and unethical fetal tissue procurement practices in the abortion industry, with a special emphasis on the Planned Parenthood organization, after it was discovered that they were one of the most egregious violators of federal and state laws and ethical norms. As laid out in the Daleiden declaration, Defendants consulted numerous experts and whistleblowers who led them to believe that certain fetuses were harvested even though they met the legal definition of a "person" and thus were entitled to the same rights as any other person. Thus, Defendants intend to argue that, because they fit within § 633.5, none of their recordings violate Cal. Pen. Code § 632.

Defendants further assert that the truth of their beliefs will provide both direct and circumstantial evidence that such beliefs were reasonable. Plaintiffs have countered that the reasonableness of Defendants' beliefs can only be established based on what Defendants knew at the time they recorded. But Plaintiffs' position is untenable. If Plaintiffs intend to respond to Defendants' § 633.5 argument by stating that their facilities do *not* have born-alive infant cases, then Defendants need discovery to test that claim. Otherwise, Plaintiffs should be precluded from disputing that their facilities have unlawful born-alive infant cases—including the PPMM clinic where Ms. O'Donnell stated she experienced one.[6]

Here, as laid out in the Separate Statement, Defendant CMP requests that the Court order Plaintiffs to produce documents responsive to five requests: Nos. 20, 21, 22, 24, and 25. Nos. 20 through 22 seek emails to be produced based on a word search. Nos. 24 and 25 seek discretely identified documents about born alive infants and the procurement of fetal tissue from them. Plaintiffs have refused to meet and confer on this issue, so Defendants have no means of establishing the burden aspect of proportionality. The documents are indisputably relevant and the burden is on Plaintiffs to show that discovery should not be allowed. Order, Dkt. 226 at 5:26–28.

_____

[6] Ms. O'Donnell recently passed away and thus will be unavailable to testify at trial. *See* Daleiden Decl., Ex. 32. This is a further basis for permitting discovery to establish the truth of her statements.

Respectfully submitted on December 5, 2018,

_[signature]_

Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
B. Dean Wilson (CA Bar No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel: (858) 759-9948
Facsimile: (858) 759-9938
cslimandri@limandri.com
pjonna@limandri.com
jtrissell@limandri.com
dwilson@limandri.com
*Attorneys for Defendants the Center for*
*Medical Progress, BioMax Procurement*
*Services, LLC, and David Daleiden*

_[signature]_

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
THOMAS MORE SOCIETY
19 S. La Salle St., Ste. 603
Chicago, IL 60603
Tel: (312) 782-1680
Facsimile: (312) 782-1887
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

Matthew F. Heffron, *pro hac vice*
THOMAS MORE SOCIETY
C/O BROWN & BROWN LLC
501 Scoular Building
2027 Dodge Street
Omaha, NE 68102
Tel: (402) 346-5010
mheffron@bblaw.us
*Attorneys for Defendant David Daleiden*

_[signature]_

Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
John A. Monaghan, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007; Fax: (734) 680-8006
ewhite@aclj.org
ezimmerman@aclj.org
jmonaghan@aclj.org

Vladimir F. Kozina; SBN 95422
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833; Fax: (209) 473-4818
VKozina@mayallaw.com
*Attorneys for Defendant Troy Newman*

**ATTESTATION PURSUANT**
**TO CIVIL L.R. 5.1(i)(3)**

As the filer of this document, I attest that concurrence in the filing was obtained from the other signatories.

_[signature]_

Charles S. LiMandri
Counsel for Defendants the Center for
Medial Progress, BioMax Procurement
Services, LLC, and David Daleiden

*Planned Parenthood, et al. v. The Center for Medical Progress, et al.*
Case No.: 3:16-cv-00236

I, Kathy Denworth, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9520, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **Defendants CMP, BioMax, Daleiden and Newman's Motion to Compel Production of Documents from Plaintiffs; and Defendant Newman's Motion to Compel Response to Interrogatory from Plaintiffs;**
- **Separate Statement Pursuant to N.D. Cal. Civ. L.R. 37-2 in Support of Defendants CMP, BioMax, Daleiden and Newman's Motion to Compel;**
- **Declaration of Paul M. Jonna, Esq. in Support of Defendants CMP, BioMax, Daleiden and Newman's Motions to Compel;**
- **Declaration of Edward L. White, III, Esq. in Support of Defendants CMP, BioMax, Daleiden and Newman's Motions to Compel;**
- **Declaration of Jeffrey M. Trissell, Esq. in Support of Defendants CMP, BioMax, Daleiden and Newman's Motions to Compel;**
- **Declaration of David Daleiden in Support of Defendants CMP, BioMax, Daleiden and Newman's Motions to Compel.**

on the interested parties in this action by emailing a true copy addressed as follows:

*Via regular mail and email*

Amy Lynne Bomse
Arnold & Porter LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
415-434-1600; 415-677-6262 (fax)
amy.bomse@aporter.com
**Attorneys for Plaintiffs Planned Parenthood Federation of America, Inc., et al.**

Catherine Wynne Short
Life Legal Defense Foundation
Post Office Box 1313
Ojai, CA 93024-1313
805-640-1940
lldfojai@cs.com
**Attorneys for Defendant David Daleiden**

Peter Christopher Breen
Thomas Leonard Brejcha, Jr.
Thomas More Society
19 S. LaSalle Street, Suite 603
Chicago, IL 60603
312-782-1680
pbreen@thomasmoresociety.org
tbrejcha@thomasmoresociety.org
**Attorneys for Defendant David Daleiden**

Michael Millen
Law Offices of Michael Millen
119 Calle Marguerita, Ste. 100
Los Gatos, CA 95032
408-866-7480;   408-516-9861   (fax)
MikeMillen@aol.com
**Attorneys for Defendant Albin Rhomberg**

Vladimir Frank Kozina
Mayall Hurley, P.C.
2453 Grand Canal Boulevard
Stockton, CA 95207
209-477-3833; 209-473-4818 (fax)
vkozina@mayallaw.com
**Attorneys for Defendant Troy Newman**

Helene Krasnoff
Planned Parenthood Federation of America
1110 Vermont Ave NW, Suite 300
Washington, DC 20005
202-973-4800
helene.krasnoff@ppfa.org
**Attorneys for Plaintiff Planned Parenthood Federation of America, Inc.**

Edward L. White III
Erik M. Zimmerman
AMERICAN CENTER FOR LAW &
JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
734-680-8007; 734-680-8006 (fax)
ezimmerman@aclj.org
**Attorneys for Defendant Troy Newman**

Horatio Gabriel Mihet
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
407-875-1776; 407-875-0770 (fax)
hmihet@lc.org
jchristman@lc.org
**Attorneys for Defendant Sandra Susan Merritt**

Matt Heffron, pro hac vice
BROWN & BROWN, LLC
501 Scoular Building
2027 Dodge Street
Omaha, NE 68102
402-346-5010; 402-345-8853 (fax)
mheffron@bblaw.us
**Attorneys for Defendant David Daleiden**

Nicolaie Cocis
Law Office of Nic Cocis & Associates
38975 Sky Canyon Drive, Suite 211
Murrieta, CA 92563
951-695-1400; 951-698-5192 (fax)
nic@cocislaw.com
**Attorneys for Defendant Sandra Susan Merritt**

 X    **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

 X    **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on December 5, 2018, at Rancho Santa Fe, California.

Kathy Denworth