UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTER FOR MEDICAL PROGRESS, et al., <br><br> Defendants. | Case No. 16-cv-00236-WHO (DMR) <br><br> **ORDER ON JOINT DISCOVERY LETTER** <br><br> Re: Dkt. No. 258 |

The parties filed a joint discovery letter in which Defendants Center for Medical Progress ("CMP") and BioMax Procurement Services, LLC ("BioMax") move to compel Plaintiffs Planned Parenthood Mar Monte, Inc. ("PPMM"), Planned Parenthood Northern California ("PPNC"), Planned Parenthood Los Angeles ("PPLA"), and Planned Parenthood of the Pacific Southwest ("PPPSW") to respond to one interrogatory. [Docket No. 258 (Jt. Letter).] The court held a hearing and ordered supplemental materials, which the parties timely lodged. [*See* Docket Nos. 302, 303.] For the following reasons, Defendants' motion to compel is granted in part.

I. **BACKGROUND**

**A. The Parties' Joint Discovery Letter**

Plaintiffs' allegations in the First Amended Complaint ("FAC") have been described in detail in previous orders so are not repeated here. The interrogatory at issue targets Plaintiffs' compliance with federal law related to fetal tissue procurement. Under federal law, it is "unlawful for any person to knowingly acquire, receive, or otherwise transfer any human fetal tissue for valuable consideration if the transfer affects interstate commerce." 42 U.S.C. § 289g-2(a). "The term 'valuable consideration' does not include reasonable payments associated with the transportation, implantation, processing, preservation, quality control, or storage of human fetal

tissue." 42 U.S.C. § 289g-2(e)(3). Four of 59 Planned Parenthood affiliates "facilitated their patients' donation of fetal tissue for research and accepted reasonable payments to reimburse for the costs incurred to facilitate such donations" at the time Defendants released the videos at issue in this case. Jt. Letter 4. These affiliates are Plaintiffs PPLA, PPMM, PPNC, and PPPSW (referred to hereinafter as "the affiliates" or "Plaintiffs"). *See id.* at 1.

Defendants propounded the following request for admission ("RFAs") to each of the affiliates:

> Admit that, prior [to] June 2015, the payments you received for facilitating the donation of fetal tissue exceeded the combined cost to you of transportation, implantation, processing, preservation, quality control, and storage of fetal tissue.

Jt. Letter Ex. 1. Each affiliate denied the RFA. *Id*. Defendants also propounded an identical accompanying interrogatory to the affiliates, as follows:

> Is your April 28, 2017, response to Request for Admission No. [20/21] an unqualified admission? If no,
>
> (a) state all facts upon which you base your response;
>
> (b) state the names, addresses, and telephone numbers of all persons who have knowledge of those facts; and
>
> (c) identify all document[s] and other tangible things that support your response and state the name, address and telephone number of the person who has each document or thing.

Jt. Letter Ex. 1. Plaintiffs made a number of objections to the interrogatory, including that it seeks information that is not relevant to the claims or defenses in this action and "is disproportionate relative to the needs of the case." *Id*.

Defendants move for an order compelling the affiliates to provide full responses to the interrogatory. According to Defendants, discovery regarding whether Plaintiffs violated federal law regarding fetal tissue procurement is relevant to "claims, alleged damages, and defenses in this case." Jt. Letter 1. They make two relevance arguments: first, Defendants contend that the requested information is relevant to "various affirmative defenses," although they identify only one: according to Defendants, "contracts to suppress evidence of illegal activities are unenforceable." *Id*. at 1-2 (citations omitted). Defendants do not elaborate further.

2

Defendants also argue that the requested discovery is relevant to Plaintiffs' damages claim. They point to allegations in the operative complaint that Plaintiffs were harmed because Defendants "went public with a vicious online video smear campaign," releasing videos that "purport[ed] to show that Plaintiffs violated federal law related to tissue donation." *See* FAC ¶ 7; *see also id*. at ¶¶ 8 ("Millions of people who viewed the manipulated videos and inflammatory accusations were made to believe that Planned Parenthood had violated the law and acted improperly"); 124 (Defendants released "a series of heavily-edited and deceptive short videos that they claimed proved that Planned Parenthood had violated federal law related to fetal tissue donation"). According to Defendants, they have learned in discovery that the four affiliates received money for fetal tissue on a per-specimen basis, but that the affiliates "kept no contemporaneous accounting of any costs associated with the transportation, implantation, processing, preservation, quality control, or storage of the tissue." Jt. Letter 1. However, in responses to RFAs, Plaintiffs deny that they received more in payments than they expended in allowable costs. Defendants assert that the reasons for the denials, as well as witnesses and documents underlying the denials, "are of central relevance to Plaintiffs' claim . . . that they were harmed by Defendants' allegedly false statements that Planned Parenthood was violating the law regarding fetal tissue donation." *Id*. According to Defendants, if Plaintiffs were in fact violating federal law regarding fetal tissue donation, "Plaintiffs' claim of damage collapses." *Id*.

In response, Plaintiffs argue that Defendants' relevance argument misrepresents Plaintiffs' damages theory. According to Plaintiffs, "[w]hat caused Defendants' videos to catch fire was the lurid story of Planned Parenthood purportedly engaging in a 'criminal conspiracy to make money off of aborted fetal parts.'" *Id*. (quoting FAC ¶ 125 (quoting Defendants' press release accompanying videos)). Plaintiffs assert that "[i]t is *that* claim that h[a]rmed Plaintiffs and that claim that Plaintiffs have put at issue in this lawsuit[.]" Jt. Letter 3 (emphasis in original). Plaintiffs contend that the discovery now at issue – whether four out of fifty-nine Planned Parenthood affiliates received more in fetal tissue procurement payments than they expended in allowable costs – "has zero bearing on the 'truth' of [Plaintiffs' damages] claim" and is therefore not relevant to damages, causation, or any claim or defense. *Id*. Plaintiffs further state that they

3

have produced documents that demonstrate the falsity of CMP's video campaign, including: 1) invoices for fetal tissue reimbursement for the four affiliates from 2011 through 2015; 2) fetal tissue procurement contracts; 3) audited financials to substantiate the total revenues for those affiliates; and 4) PPFA's policies relating to fetal tissue from 2011 to 2015. Jt. Letter 4. They have also identified the affiliates who offered patients the option of donating fetal tissue and the time period during which each affiliate did so. *Id*. They argue that the discovery they have already provided satisfies their obligations with respect to the relevant issue: "whether CMP falsely claimed that Planned Parenthood was engaged in 'a criminal conspiracy to make money off of aborted baby parts.'" *Id*. Plaintiffs argue that any further discovery on this issue is "an after-the-fact attempt to find the evidence [of wrongdoing] that [Defendants] said they had" in the videos. [Docket No. 299 (Hr'g Tr. Jul. 19, 2018) 37.]

**B. The Parties' Supplemental Submissions**

At the hearing, the court asked Defendants to identify any evidence that a Planned Parenthood affiliate "violated federal law by receiving money in excess of the allowable reimbursement costs under federal law," including evidence of violations that Defendants uncovered during their alleged infiltration of Plaintiffs' conferences and private meetings. Tr. 6, 9, 10-11. Defendants identified videos taken by Defendants at separate meetings with Dr. Deborah Nucatola and Dr. Mary Gatter, as well as "findings" in the final reports by the United States House of Representatives Select Investigative Panel and the United States Senate Judiciary Committee. *Id*. at 6-7, 10, 11-13, 22-25. Additionally, Defendants identified certain RFA responses that show that Plaintiffs never attempted to determine the actual costs of their fetal tissue transfer program until after Defendants released the first videos in July 2015. *Id*. at 16-17.

Plaintiffs disputed that the videos cited by Defendants showed that Plaintiffs violated federal law, or that the Congressional committees made affirmative findings that Plaintiffs had violated federal law. *Id*. at 17-21. Plaintiffs identified minority party reports regarding the Congressional investigations that provide context to the majority party reports, *id*. at 25-26, as well as press releases issued by CMP contemporaneously with the videos in which Defendants made affirmative representations that they had evidence of Plaintiffs' unlawful activity. *Id*. at 37-

4

38.

The court ordered the parties to submit the materials each side had identified at the hearing, namely, the raw, unedited videos of the Nucatola and Gatter meetings, along with the edited versions of those two videos that Defendants released; the Congressional reports and corresponding minority reports; Plaintiffs' responses to the relevant RFAs; and CMP's press releases that accompanied the release of the videos. *Id*. at 26-27, 39, 49-50. The court also ordered Plaintiffs to submit a brief factual report regarding an affiliate that had been identified by Defendants at the hearing that allegedly made an accounting of costs related to its fetal tissue transfer program. *Id*. at 47-48.

The court specifically instructed the parties to submit only those materials it had asked for: "I'm [] ordering the parties to only give me what I ask for and not include any further evidence or argument. . . . If you do something beyond what I just ordered, I'm going to ignore it." *Id*. at 48.

Following the hearing, the parties timely submitted materials for the court's review. [Docket Nos. 302, 303.][1] Despite the court's express admonition, Defendants submitted at least eight hours of footage and videos that defense counsel did not identify at the hearing, including a newly-created 12-minute video summary, in addition to the raw and edited footage of the Nucatola and Gatter meetings that the court ordered Defendants to provide. The court declines to review this expressly prohibited material, and has limited its review to the three-hour raw footage of the Nucatola meeting; the 1.5 hour raw footage of the Gatter meeting; the Congressional reports and corresponding minority reports; Plaintiffs' responses to the relevant RFAs; and CMP's press releases that accompanied the release of the videos.

On January 3, 2019, the court ordered Plaintiffs to submit a "clear and specific articulation of the categories of damages that Plaintiffs are and are not seeking" in this litigation. [Docket No. 409.] Plaintiffs timely filed the requested statement. [Docket No. 420 (Pls.' Damages

---

[1] Plaintiffs did not submit the report of its affiliate's accounting of the costs related to its fetal tissue transfer program, asserting that the three-page document is dated March 10, 2000 and states "Confidential To Our Lawyer Only." [Docket No. 302 at 2.] Plaintiffs state that "the document is clearly privileged and was created fifteen years before Defendants' fraudulent scheme alleged here." *Id*.

5

1  Statement).]

**II.  LEGAL STANDARD**

Federal Rule of Civil Procedure 26 provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). The party seeking discovery has the initial burden of establishing that its request satisfies Rule 26(b)(1)'s relevancy requirement, *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012), while "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, Advisory Committee Notes to 2015 Amendments, Subdivision (b)(1).

**III.  DISCUSSION**

The court first addresses Defendants' contention that the requested discovery is relevant to the affirmative defense that "contracts to suppress evidence of illegal activities are unenforceable." Defendants appear to assert that the requested discovery is relevant to their affirmative defense to Plaintiffs' claims for breach of contract based on Defendants' alleged breach of exhibitor agreements and non-disclosure and confidentiality agreements. *See* FAC ¶¶ 177-181, 182-188, 250-253. Defendants entered into these agreements in 2014 and in the first half of 2015. *See* FAC ¶¶ 178, 183, 184, 250. They cite three cases for the proposition that agreements or contracts to "maintain silence" or conceal a crime are illegal or unenforceable. *See Fomby-Denson v. Dep't of Army*, 247 F.3d 1366, 1377 (Fed. Cir. 2001) ("an agreement to not refer a matter to law enforcement authorities for investigation contravenes public policy"); *Branzburg v. Hayes*, 408 U.S. 665, 695–96 (1972) ("it is obvious that agreements to conceal information relevant to

commission of crime have very little to recommend them from the standpoint of public policy."); *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853 (10th Cir. 1972) ("Oklahoma has expressed a stronger interest in the punishment of wrongful behavior than in the strict enforcement of contracts when the two interests collide.").

Defendants do not explain their argument, so the court speculates that it is something along these lines: discovery on whether the four affiliates violated federal law regarding the transfer of fetal tissue is relevant because it could support a defense that the agreements that Defendants allegedly breached were invalid and therefore unenforceable, because the agreements themselves sought to shield evidence of illegal conduct. The problem with such an argument is that the viability of the defense turns on whether the information protected by the agreements actually included illegal conduct. If the information protected by the agreements did not include evidence of illegal conduct, then the defense does not apply, and discovery about whether four affiliates complied or failed to comply with federal law at some other point in time is irrelevant to the validity or enforceability of the agreements.

Here, Defendants did not identify any information purportedly covered by the exhibitor and non-disclosure/confidentiality agreements that they contend constitutes evidence of illegal conduct. This fact alone is fatal to Defendants' argument. Moreover, the court reviewed all the documents and videos that Defendants identified at the hearing as evidence that Plaintiffs violated federal law regarding the transfer of fetal tissue, even though none of it was covered by the exhibitor and non-disclosure/confidentiality agreements. Consistent with Judge Orrick's review in the *NAF* case, none of the submitted videos reviewed by the court for this dispute contain evidence of actual criminal wrongdoing with respect to 42 U.S.C. § 289g-2 or "profiteering from the sale of fetal tissue." *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-CV-03522-WHO, 2016 WL 454082, at *1, 21 (N.D. Cal. Feb. 5, 2016) ("I have reviewed those transcripts and recordings and find no evidence of actual criminal wrongdoing."). Similarly, the Congressional reports submitted by Defendants do not contain findings that Plaintiffs violated the law.

In sum, Defendants have failed to establish that discovery regarding the requested details of the affiliates' fetal tissue transfer program is relevant to an affirmative defense that "contracts to

7

suppress evidence of illegal activities are unenforceable."

Defendants also argue that they are entitled to the discovery in order to counter Plaintiffs' assertion that they were damaged by Defendants' "smear campaign." Defendants point to allegations in the FAC that their videos contained false accusations that Plaintiffs violated federal law banning the transfer of fetal tissue for profit. Defendants contend that they should be permitted to conduct discovery about the four affiliates' fetal tissue transfer program in order to prove that the accusations in their videos were truthful. In other words, Defendants seek discovery that could establish that the affiliates violated federal law regarding fetal tissue, thus disproving Plaintiffs' allegations that they were damaged by Defendants' untruthful "smear campaign." *See* Tr. 40 ("Planned Parenthood is saying: 'Those are false allegations.' We are entitled to prove . . . it's true."). According to Defendants, "[i]f Plaintiffs were indeed violating federal law, Plaintiffs' claim of damages collapses." Jt. Letter 1.

The problem with Defendants' argument is that it is circular. Defendants are attempting to rely on the accusations they made in the video campaign in order to obtain discovery that might demonstrate the truthfulness of the accusations themselves. Defense counsel admitted as much at the hearing, stating, "if it turns out the defendants are correct, [that Plaintiffs] were violating the law, then [their] damages go all the way down . . ." Tr. 33-34. Facts that Defendants had in their possession at the time they released their video campaign are relevant to evaluating whether Defendants' actions were culpable. Evidence that Defendants may be able to gather after the fact is not probative of Defendants' actions at the time they released their public campaign.

Finally, Defendants argue that if their allegations in the video campaign were correct, Plaintiffs' damages claims "collapse[]." Jt. Letter 1. Although Defendants again do not explain their argument, their position appears to be that the truthfulness of their allegations about Plaintiffs' fetal tissue procurement practices would defeat any claim for reputational or publication damages stemming from the allegations. *See id*. at 2. However, Plaintiffs have represented to the court that they "are not seeking reputational damages such as loss of good will or loss of revenue," and that "no plaintiff seeks to recover lost revenue or profits as a result of any negative impact on Plaintiffs' reputation." Pls.' Damages Statement. Instead, Plaintiffs state that they seek damages

8

related to "increased security incidents" following the release of the videos. Specifically, Plaintiffs seek damages related to short term security costs, conference and health center security improvements, and property damage, as well as damages related to the costs one affiliate incurred in responding to state investigations. *Id.* Defendants do not explain how after-the-fact discovery bearing on the truthfulness of their accusations in the video campaign would defeat Plaintiffs' claim for damages related to "costs for protecting staff and patients" following the release of the videos. *See id.*

Despite Defendants' flawed arguments, the court finds that they are entitled to more of a response than they have been given. In response to the RFA at issue, Plaintiffs denied that the payments that the four affiliates received for facilitating the donation of fetal tissue exceeded the combined costs allowable under § 289g-2, but refused to provide any explanation for that response. Defendants therefore have no way to understand Plaintiffs' denial. This does not mean that Defendants are entitled to a detailed accounting by each affiliate, along with the identification of all supporting documents and witnesses. On the current record, requiring such a response would not be proportional to the needs of the case. Plaintiffs have already produced invoices for fetal tissue reimbursement for the four affiliates, fetal tissue procurement contracts, policies relating to fetal tissue donation, and audited financial statements. However, Plaintiffs' denial of the RFA presumably was based on facts; Plaintiffs should provide interrogatory responses that state the facts that support their denial of the RFA so that Defendants may understand the basis for the denial.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel is granted in part. Plaintiffs shall provide verified responses to the interrogatory on behalf of the four affiliates within seven days of the date of this order.

**IT IS SO ORDERED.**

Dated: January 24, 2019



_____
Donna M. Ryu
United States Magistrate Judge

9