United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTER FOR MEDICAL PROGRESS, et al., <br><br> Defendants. | Case No. 16-cv-00236-WHO (DMR) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER** <br><br> Re: Dkt. No. 464 |

The parties filed a joint discovery letter in which Plaintiffs move for a protective order with respect to certain topics in Defendants' notices of deposition. [Docket Nos. 464, 481 (Exemplar Notice of Dep.)] This matter is appropriate for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

## I.     BACKGROUND

Plaintiffs are Planned Parenthood Federation of America, Inc. ("PPFA"), seven individual California Planned Parenthood affiliates, Planned Parenthood of the Rocky Mountains, Planned Parenthood Gulf Coast, and Planned Parenthood Center for Choice. The court has described Plaintiffs' allegations in the operative complaint in detail in previous orders and does not repeat them here.

Plaintiffs now move for a protective order with respect to certain topics in Defendants' first and third amended Rule 30(b)(6) notices of deposition served on each Plaintiff. Jt. Letter 1. Each of the deposition notices includes Topic 21, which seeks testimony on "[f]acts relating to Defendants' Affirmative Defenses" and lists numerous subtopics. *Id.* *See also* Docket No. 481 (Depo. Notice Exemplar). Plaintiffs seek to limit Defendants' ability to elicit deposition testimony regarding seven subtopics of Topic 21 that are common to all Plaintiffs:

- Facts relating to Plaintiffs' fetal tissue procurement programs and practices, including costs of and revenues from such programs and practices;

- Facts related to the procedure for obtaining consent from patients/clinics to obtain fetal tissue;

- Any evidence refuting or supporting Defendants' claim that Plaintiffs modified abortion procedures to facilitate profiting from the sale of fetal tissue;

- Any evidence refuting or supporting Defendants' claim that Plaintiffs violated the partial-birth abortion ban to facilitate profiting from the sale of fetal tissue;

- Any evidence refuting or supporting Defendants' claim that Plaintiffs procured fetal tissue from born-alive infants to facilitate profiting from the sale of fetal tissue;

- Any evidence refuting or supporting Defendants' claim that Plaintiffs procured and sold fetal tissue without donor consent; and

- Any evidence refuting or supporting Defendants' claim that Plaintiffs' practice of procuring and selling fetal tissue without donor consent violated HIPAA laws.

In addition, Plaintiff Planned Parenthood Northern California ("PPNC") moves for a protective order regarding the subtopic, "[f]acts relating to all documents produced to the Senate Judiciary Committee in 2015 regarding fetal tissue procurement." Jt. Letter 2.

Plaintiffs argue that these subtopics seek information that is either not relevant, or is disproportionate to the needs of the case. They assert that the subtopics cover the same subject matter as the discovery requests at issue in Defendants' recent motions to compel further written discovery from Plaintiffs, which the court granted in part and denied in part in two separate orders issued on January 24, 2019. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress* ("*Planned Parenthood*"), No. 16-cv-00236 WHO (DMR), 2019 WL 311622 (N.D. Cal. Jan. 24, 2019); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress* ("*Planned Parenthood II*"), No. 16-cv-00236 WHO (DMR), 2019 WL 317597 (N.D. Cal. Jan. 24, 2019), *aff'd,* No. 16-CV-00236-WHO, 2019 WL 495600 (N.D. Cal. Feb. 8, 2019). In those orders, the court granted limited discovery into the subjects of Plaintiffs' fetal tissue procurement programs and procedures used to obtain fetal tissue.

As to discovery regarding Plaintiffs' fetal tissue procurement programs, the court held that Defendants had not shown that they are entitled to the requested discovery on the basis that it is relevant to their "substantial veracity defense" under the *Food Lion* cases. *Planned Parenthood II*, 2019 WL 317597, at *8-9 (discussing *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956, 966 (M.D.N.C. 1997) ("*Food Lion I*") and *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999) ("*Food Lion II*")). However, as Plaintiffs had "tacitly concede[d]" that discovery regarding their allegation in the first amended complaint ("FAC") that they had complied with fetal tissue procurement laws was "at least somewhat relevant," the court analyzed the proportionality of the discovery requests at issue. *Id*. at *9-10. As a result, the court ordered Plaintiffs to produce certain advertisements by fetal tissue procurement services with whom the four Plaintiffs with fetal tissue procurement programs (Planned Parenthood Mar Monte, Inc. ("PPMM"), PPNC, Planned Parenthood Los Angeles ("PPLA"), and Planned Parenthood of the Pacific Southwest ("PPPSW")) entered into agreements to supply fetal tissue for the time period January 1, 2011 to July 15, 2015. It also ordered the same four affiliates to respond to an interrogatory identifying the persons responsible for compliance with fetal tissue donation laws and regulations for the same time period, *id*., and to respond to an interrogatory explaining the basis for the affiliates' denials of a request for admission asking them to admit that they received payments for fetal tissue donation that exceeded allowable costs under federal law. *Planned Parenthood*, 2019 WL 311622, at *1, 5.

The court also found that discovery related to the procedures used to obtain fetal tissue, such as Plaintiffs' use of digoxin and other feticides, compliance with the partial-birth abortion ban, and abortion techniques, was not relevant to Defendants' substantial veracity defense, but that those subjects "are at least somewhat to relevant to issues that may be presented at trial" in light of the nature of the "smear campaign" that Plaintiffs allege in the FAC. *Planned Parenthood II*, 2019 WL 317597, at *13-15. The court held that Defendants were entitled to limited discovery, in light of Plaintiffs' allegation in the FAC that they did not violate the laws governing obtaining and selling fetal tissue. In so doing, the court expressed concern that "permitting broad discovery here would create a perverse outcome" by allowing defendants to make broad accusations "in order to

3

justify greater access to sensitive information through the litigation process." *Id.* at *15. The court also noted that Plaintiffs' concern about Defendants' potential misuse of discovery was well-taken, given that Defendant Daleiden had been found in civil contempt for disseminating information that he had been enjoined from disclosing. *Id.* The court concluded that Defendants were only entitled to limited discovery regarding procedures used by Plaintiffs to obtain fetal tissue. The court ordered Plaintiffs to produce PPFA's Manual of Medical Standards & Guidelines policies for the time period January 1, 2011 to July 15, 2015, along with corresponding policies for the four Plaintiffs with fetal tissue procurement programs, for four subjects: the use of digoxin and other feticides; modification of abortion procedures in order to facilitate the donation of fetal tissue; mechanical vacuum aspiration; and compliance with the partial-birth abortion ban. *Id.* at *15-16.

The court also concluded that discovery regarding "the procurement of fetal tissue from patients following inadvertent live births at Plaintiffs' facilities in the course or following abortion procedures" was not relevant to establishing Defendants California Penal Code section 633.5 defense to Plaintiffs' seventh and ninth claims for relief under California Penal Code section 632. *Id.* at *17.

On February 8, 2019, the Honorable William H. Orrick overruled Defendants' objections to the court's January 24, 2019 orders and affirmed those decisions. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236 WHO, 2019 WL 495600 (N.D. Cal. Feb. 8, 2019). In relevant part, Judge Orrick held that the undersigned's analysis of Defendants' substantial veracity defense and defense based on California Penal Code section 633.5 was "correct on both the legal question[s] and how [they] appl[y] to the discovery sought by defendants." *Id.* at *1.

In the present motion, Plaintiffs offer to provide limited testimony on the subtopics at issue consistent with the court's January 24, 2019 orders. Plaintiffs state that they will prepare witnesses to testify about Plaintiffs' evidence that they did not conspire to profit from the sale of fetal tissue and confirm the non-privileged facts set forth in the four affiliates' responses to Defendants' interrogatory asking for the basis upon which they denied the request for admission

4

asking the affiliates to admit that they received payments for facilitating the donation of fetal tissue that exceeded allowable costs under federal law. Plaintiffs' witnesses will also be prepared to testify about the four affiliates' implementation and compliance with the Medical Standards & Guidelines policies on the use of digoxin and other feticides; modification of abortion procedures in order to facilitate the donation of fetal tissue; mechanical vacuum aspiration; and compliance with the partial-birth abortion ban, for the time period January 1, 2011 to July 15, 2015. Jt. Letter 2. Essentially, Plaintiffs' position is that Defendants' demand for testimony regarding the eight subtopics, beyond what Plaintiffs offer as a compromise, is contrary to the court's prior orders.

Defendants do not dispute that the eight subtopics that are the subject of this motion overlap with the discovery at issue in their recent motions to compel. However, they argue that Plaintiffs may not object or refuse to answer questions about "clearly relevant topics" on the basis of relevance. Jt. Letter 3-4. According to Defendants, the court's orders on the motions to compel written discovery do not support Plaintiffs' position, because in those orders, the court "did not purport to limit" deposition questioning on relevance grounds. To the contrary, Defendants maintain, the court's orders "generally stated that the topics were relevant." *Id*. at 5. Notably, Defendants do not address the relevance of any of the subtopics in the joint letter, nor do they engage at any level with the actual rulings the court made about relevance in its orders on the motions to compel. Finally, Defendants assert that the protective order that has been issued in this case is adequate to protect the confidentiality and sensitivity of any testimony on these subjects. *Id*. at 5-6.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 30(b)(6) governs depositions of organizations. A party may name a corporation or other organizational entity as a deponent, and the notice of deposition must describe the topics for examination with reasonable particularity. Fed. R. Civ. P. 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6).

Rule 26(c) states that a party "from whom discovery is sought may move for a protective

order," and that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such orders may include "forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D). Additionally, Rule 26(b) provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). In turn, Rule 26(b)(1) provides

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

The party seeking a protective order bears the burden of showing "'good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

## III.   DISCUSSION

Defendants do not explain their contention that the eight subtopics are "clearly relevant" to the claims or defenses at issue in this litigation. Based on the deposition notice itself, the court infers that Defendants believe the subtopics are relevant to their defenses, because the subtopics appear under Topic 21, "Facts relating to Defendants' Affirmative Defenses." Exemplar Notice of Dep. The joint letter is otherwise silent as to Defendants' theory of relevance. Defendants' failure to tie the subtopics to specific defenses prevents the court from analyzing their position,[1] and the

---

[1] Defendants' Answers do not help here. In their Answers to the FAC, Defendants Center for Medical Progress and BioMax Procurement Services, LLC, Daleiden, Rhomberg, and Lopez pleaded 44 separately-numbered paragraphs under the heading, "Affirmative Defenses," and nearly all of those paragraphs set forth separate affirmative defenses on multiple grounds. [*See* Docket Nos. 131, 134, 135, 136.] Defendant Merritt's Answer contains 47 paragraphs under the heading, "Affirmative Defenses." [Docket No. 137.] Defendant Newman's Answer contains 14 affirmative defenses. [Docket No. 133.]

court has no duty to analyze potential arguments that Defendants make no effort to articulate.

Nevertheless, in the interest of reaching a decision on the merits of this discovery dispute, the court looks to Defendants' other filings to guide the analysis here. In their December 5, 2018 motion to compel, Defendants argued that written discovery regarding Plaintiffs' fetal tissue procurement programs and procedures used to obtain fetal tissue is relevant to their substantial veracity defense, their defense based on California Penal Code section 633.5, and their defenses of causation, unclean hands, and public policy. [*See* generally Docket No. 358.] Given that the subject matter in this motion overlaps with the discovery at issue in the December 2018 motion to compel (i.e., discovery regarding Plaintiffs' fetal tissue procurement programs and procedures to obtain fetal tissue), the court will analyze the relevance of the subtopics to the five defenses that Defendants identified in that motion.

### A. Substantial Veracity

As discussed above, the court previously considered Defendants' argument that discovery regarding Plaintiffs' fetal tissue procurement programs and procedures to obtain fetal tissue is relevant to their substantial veracity defense under the *Food Lion* cases. Defendants' argument was "based on the theory that Plaintiffs are attempting to seek reputational or publication damages resulting from Defendants' public statements about Plaintiffs without satisfying the strict First Amendment standards applicable to defamation claims." *Planned Parenthood II*, 2019 WL 317597, at *14. However, as Plaintiffs have conceded that they are not seeking reputational damages, the court concluded that Defendants are not entitled to the requested discovery on this ground. *See id.* at *8-9, *14. That analysis applies with equal force to the eight subtopics at issue in this motion, which similarly seek testimony regarding Plaintiffs' fetal tissue procurement programs and procedures used to obtain fetal tissue.

### B. Causation

Defendants have also argued that discovery regarding Plaintiffs' procedures to obtain fetal tissue, including their use of digoxin, modification of abortion procedures, and partial-birth abortions, is relevant to their "causation defense." [Docket No. 358 at 11-12.] According to Defendants, they publicly accused Plaintiffs of profiting from selling fetal tissue and committing

other crimes, such as delivery of born-alive infants and violations of the partial-birth abortion ban. *Id*. at 11. Defendants argue that they are entitled to discovery relating to all of the allegations they made about Plaintiffs, because Defendants' allegations about Plaintiffs "drove the public's reaction to the alleged 'smear campaign.'" *Id*. at 12. As the court recognized in its prior order, this argument leads to perverse incentives and invites misuse of the litigation process. *Planned Parenthood II*, 2019 WL 317597, at *15.

Defendants also argue that "the proximate cause of any adverse reaction toward Plaintiffs was *their own illegal conduct*." *Id*. (emphasis in original) (citing *Food Lion I*, 964 F. Supp. at 963 ("Food Lion's lost sales and profits were the direct result of diminished consumer confidence in the store.")). In other words, Defendants assert that they should be entitled to discover whether Plaintiffs were actually engaging in the illegal acts that Defendants accused them of committing, in case the discovery creates an opportunity to argue that Plaintiffs' illegal conduct caused the public uproar, which led to Plaintiffs' higher security costs. This argument is nonsensical. The public can only react to what the public knows. Defendants cannot use the discovery process to try to uncover evidence of wrongdoing not known to the public at the time Defendants made their accusations against Plaintiffs.

Information that was not known to the public is not probative of the public's reaction to the video campaign. Defendants have accordingly failed to show that Plaintiffs' witnesses' testimony on the eight subtopics is relevant to their causation defense.

## C. Unclean Hands

Defendants have also argued that discovery regarding Plaintiffs' fetal tissue procurement programs and procedures to obtain fetal tissue is relevant to their unclean hands defense.

"The doctrine of unclean hands 'bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.'" *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1091-92 (C.D. Cal. 2016) (quoting *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)). "To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims."

United States District Court
Northern District of California

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987). As to the second requirement, "although 'precise similarity' between the plaintiff's inequitable conduct and the plaintiff's claims is not required, the misconduct 'must be relative to the matter in which [the plaintiff] seeks relief.'" *Pom Wonderful*, 166 F. Supp. 3d at 1092 (quoting *POM Wonderful LLC v. Welch Foods, Inc.*, 737 F.Supp.2d 1105, 1110 (C.D. Cal. 2010) ("*Welch*") (alterations in original) (quotation omitted)). "[T]he relevant inquiry is 'not [whether] the plaintiff's hands are dirty, but [whether] he dirtied them in acquiring the right he now asserts, or [whether] the manner of dirtying renders inequitable the assertion of such rights against the defendants.'" *Welch*, 737 F. Supp. 2d at 1110 (quoting *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir. 1985).

For example, in *POM Wonderful*, the plaintiff, a maker of pomegranate fruit drinks, alleged false advertising claims against the defendant, a rival drink maker, for labeling a juice drink as "pomegranate blueberry" even though it contained primarily apple juice and grape juice. 166 F. Supp. 3d at 1088. The defendant raised an unclean hands defense, arguing that the plaintiff falsely advertised that its pomegranate juice conferred health benefits, and that its health claims were not supported by any substantial scientific evidence. *Id*. at 1089. The court concluded that the plaintiff's allegedly false advertising regarding the health benefits of pomegranate juice were directly related to the defendant's alleged false advertising overstating the amount of pomegranate juice in its product, and held that the defendant had raised a triable issue of fact as to its unclean hands defense:

> POM alleges that Coca–Cola's labeling and advertising of its Juice product misleads consumers because consumers mistakenly believe they are purchasing a natural pomegranate blueberry juice with all of its associated health benefits when in fact they are purchasing a product primarily containing "less healthy" juices such as apple and grape. Coca–Cola asserts a defense of unclean hands based on allegations that the very health claims either manufactured or referenced by POM are not supported by substantial scientific evidence. The misconduct cited by Coca–Cola is directly related to the conduct POM alleges has harmed its business, goodwill, and relationship with its customers, all of which POM alleges was largely created through its advertising campaign touting the health benefits of pomegranate juice.

*Id*. at 1096 (emphasis removed).

The court in *POM Wonderful* observed that requiring the defendant to demonstrate that the

9

plaintiff's conduct relates to the subject matter of the claims makes sense "because '[t]he unclean hands maxim is not a search warrant authorizing the defendant to probe into all the possible types of inequitable conduct ever engaged in by the plaintiff.'" *POM Wonderful*, 166 F. Supp. 3d at 1092 (citation omitted).

Here, Plaintiffs allege that Defendants engaged in a criminal conspiracy to gain access to Plaintiffs' conferences and clinics in order to surreptitiously film their employees and then released deceptively-edited videos intended to "demonize" Planned Parenthood. By contrast, Defendants seek discovery into whether Plaintiffs violated federal laws regarding abortions and fetal tissue procurement. These subjects are not related within the meaning of the unclean hands doctrine. Accordingly, the doctrine of unclean hands does not apply in these circumstances, and does not support the discovery Defendants seek here.

### D. Public Policy

Defendants have argued that discovery regarding Plaintiffs' fetal tissue procurement programs and procedures to obtain fetal tissue is relevant to prove "that the contracts they allegedly entered into are unenforceable as a matter of public policy due to Plaintiffs' violation of federal and state law." [Docket No. 358 at 13.] Defendants did not explain this argument in any detail. They made a similar argument in an earlier motion to compel, arguing that "discovery on whether the four affiliates violated federal law regarding the transfer of fetal tissue is relevant because it could support a defense that the agreements that Defendants allegedly breached were invalid and therefore unenforceable, because the agreements themselves sought to shield evidence of illegal conduct." *Planned Parenthood I*, 2019 WL 311622, at *4.[2] The court held that Defendants were not entitled to discovery on this ground, since "the viability of the defense turns on whether the information protected by the agreements actually included illegal conduct," and "Defendants did not identify any information purportedly covered by the exhibitor and non-disclosure/confidentiality agreements that they contend constitutes evidence of illegal conduct."

---

[2] This defense appears to apply to Plaintiffs' claims for breach of contract based on Defendants' alleged breach of exhibitor agreements and non-disclosure and confidentiality agreements. *See* FAC ¶¶ 177-181, 182-188, 250-253.

*Id.* Defendants still have not identified any information covered by the agreements at issue that they assert is evidence of illegal conduct. The discovery at issue in the eight subtopics therefore is not relevant to Defendants' "public policy" defense.

### E. California Penal Code section 633.5

Finally, Defendants have argued that discovery regarding the procurement of fetal tissue from "born alive infants" in the course of or following abortion procedures is relevant to establishing Defendants California Penal Code section 633.5 defense to Plaintiffs' seventh and ninth claims for relief under California Penal Code section 632. [Docket No. 358 at 14-15.]

In rejecting this argument, the court held that "[d]ocuments that were not known to or in Defendants' possession at the time of the recordings are irrelevant to whether Defendants' beliefs about Plaintiffs' alleged misconduct at the time of the recordings were reasonable." *Id.* This analysis equally applies to the subtopics at issue in this motion. Information that Defendants did not already know or possess at the time they recorded Plaintiffs' employees is not relevant to the reasonableness of their beliefs about Plaintiffs' alleged misconduct.

In sum, none of the information in the eight subtopics is relevant to the defenses identified by Defendants in their previous motion to compel. The court declines to order Plaintiffs to prepare witnesses to testify regarding the eight subtopics beyond what they have offered in the joint letter. Plaintiffs' motion for a protective order is granted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a protective order is granted.


**IT IS SO ORDERED.**

Dated: March 8, 2019



Donna M. Ryu
United States Magistrate Judge