UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., <br><br>Plaintiffs, <br><br>v. <br><br>CENTER FOR MEDICAL PROGRESS, et al., <br><br>Defendants. | Case No. 16-cv-00236-WHO (DMR) <br><br>**ORDER DENYING DEFENDANTS' MOTION FOR IN CAMERA REVIEW** <br><br>Re: Dkt. No. 383 |

Defendants Center for Medical Progress, BioMax Procurement Services, LLC, David Daleiden, and Gerardo Adrian Lopez filed a motion for in camera review of documents on Plaintiffs' privilege log, and to compel the production of certain withheld documents. [Docket No. 383.] Plaintiffs also moved for in camera review of documents on Defendants' privilege log. [Docket No. 385.] In advance of the hearing on both motions, the court ordered the parties to meet and confer regarding one of the categories of documents at issue in Defendants' motion, and to submit specific documents for in camera review. [Docket No. 459 (Feb. 6, 2019 Order).] Following their meet and confer, the parties timely filed a joint discovery letter addressing the remaining disputes regarding Plaintiffs' privilege log. [Docket No. 472.] The court held a hearing on February 14, 2019. Having considered the parties' submissions as well as oral argument, Defendants' motion is denied.

I.  **BACKGROUND**

The court has described Plaintiffs' allegations in the operative complaint in detail in previous orders and does not repeat them here. In December 2018, the parties filed six unilateral discovery letters in which each side challenged alleged deficiencies in the other side's privilege log. On December 13, 2018, the court denied the letters without prejudice based on the parties'

failure to meet and confer on the issues raised in the letters. [Docket No. 372.] The court ordered the parties to immediately meet and confer regarding the issues and to "revise their privilege logs consistent with any agreements or changes in position." *Id*. If disputes remained after meeting and conferring, the court granted the parties leave to file a motion challenging the other side's privilege log, subject to a briefing schedule and page limits. *Id.*

The present motion followed. Defendants move for in camera review of two categories of documents withheld by Plaintiffs upon their assertion of the attorney-client privilege. Defendants also move to compel the production of a third category of documents for which they claim the attorney-client privilege does not apply. Plaintiffs oppose the motion in its entirety.

## II. LEGAL STANDARDS

This court exercises federal question jurisdiction over Plaintiffs' RICO claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims. "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005); *see also* Fed. R. Evid. 501, Advisory Committee Notes ("In nondiversity jurisdiction civil cases, federal privilege law will generally apply.").

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The privilege attaches when:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (brackets and citation omitted). The privilege is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

The privilege extends to versions of electronic communications and preliminary drafts of communicated documents, *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 139-40 (E.D.

2

Mich. 2009) (citations omitted), as well as communications with "third parties who have been engaged to assist the attorney in providing legal advice." *Richey*, 632 F.3d at 566 (footnote omitted). If the advice sought from the professional legal advisor is not legal advice, the privilege does not apply. *Id*. at 566.

A party asserting the attorney-client privilege bears the burden of demonstrating that the privilege applies. *Richey*, 632 F.3d at 566; *accord In re Grand Jury Investigation*, 974 F.2d at 1071 (party asserting privilege "must make a *prima facie* showing" that privilege protects information the party intends to withhold). Producing a privilege log is a recognized means of sufficiently establishing the privilege. *In re Grand Jury Investigation*, 974 F.2d at 1071. A party challenging an assertion of privilege must "show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." *Id*. at 1075. The Ninth Circuit has described this burden as "minimal." *Id*. at 1071, 1074 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989). "If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court." *Id*. at 1075.

## III. DISCUSSION

### A. Category One: Documents Potentially Subject to the Crime Fraud Exception to Attorney-Client Privilege

The first category of documents for which Defendants seek in camera review includes approximately 80 communications involving Plaintiffs' in-house counsel, Roger Evans. Defs.' Mot. 3-4. Defendants argue that these communications may be subject to the crime-fraud exception to the attorney-client privilege.

"It is well settled that the attorney-client privilege does not extend to attorney-client communications which solicit or offer advice for the commission of a crime or fraud." *In re Grand Jury Investigation*, 974 F.2d at 1071. In order to vitiate the attorney-client privilege under the crime-fraud exception, a party must satisfy a two-part test:

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are

3

> "sufficiently related to" and were made "*in furtherance of* [the] intended, or present, continuing illegality."

*In re Grand Jury Investigation*, 810 F.3d 1110 (9th Cir. 2016) (quoting *In re Napster, Inc. Copyright Litig*., 479 F.3d 1078, 1090 (9th Cir. 2007)) (emphasis in original). To obtain in camera review of communications that a party contends fall within the crime-fraud exception, the party must demonstrate "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime fraud exception applies." *In re Grand Jury Investigation*, 974 F.2d at 1072 (quoting *Zolin*, 491 U.S. at 572) (internal citation omitted). The Ninth Circuit has observed that the threshold for conducting in camera review is "considerably lower . . . than for fully disclosing documents." *Id*. at 1073. However, "unfounded suspicion" is insufficient to justify in camera review. *See Rock River Commc'ns., Inc. v. Universal Music Grp., Inc*., 730 F.3d 1060, 1069 (9th Cir. 2013). If the party moving for in camera review makes the threshold showing, "courts should make the decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privilege[d] material to the case, and the likelihood that in camera review will reveal evidence to establish the applicability of the crime-fraud exception." *In re Grand Jury Investigation*, 974 F.2d at 1073 (citing *Zolin*, 491 U.S. at 572).

In support of their threshold showing, Defendants submit a declaration by Defendant Daleiden, and cite two Congressional reports that they claim "established" that "Plaintiffs have been engaged in a criminal conspiracy to profit from the sale of human fetal organs, in violation of 42 U.S.C. § 289g-2." Defs.' Mot. 2, 3. Defendants point to a December 2016 report of the United States House of Representatives Select Investigative Panel of the Energy & Commerce Committee, in which the Panel concluded that "four Planned Parenthood clinics . . . may have violated federal law, specifically Title 42 U.S.C. § 289g-2, which forbids the transfer of fetal tissue for valuable consideration," and that "Planned Parenthood Gulf Coast may have violated both Texas law and U.S. law when it sold fetal tissue to the University of Texas." [Docket No. 303-3 at ECF p. 29.] Defendants note that the Select Investigative Panel referred four Planned Parenthood affiliates to the Department of Justice and Planned Parenthood Gulf Coast to the Texas Attorney General for investigation. *See id*.

Defendants also cite a December 2016 Majority Staff Report prepared for the United States Senate's Committee on the Judiciary, in which the Committee wrote that "[it] . . . appears that [Planned Parenthood's] affiliates' payments [for fetal tissue transfers] may have violated the ban on buying and selling fetal tissue. In addition, the actions of [Planned Parenthood Federation of America, "PPFA"] and its affiliates after PPFA learned of the affiliates' violation of PPFA's fetal tissue policies suggest the possibility of a violation of the federal criminal conspiracy law, 18 U.S.C. § 371." [Docket No. 307 at ECF p. 14.]

According to Defendants, Evans was advising Planned Parenthood affiliates about fetal tissue procurement "at the very time that four of the affiliates were violating" 42 U.S.C. § 289g-2. Defs.' Mot. 3. They state that "[it] appears that Mr. Evans was actually the architect of Plaintiffs' criminal conspiracy." *Id*. In support of these claims, Defendants cite Daleiden's declaration, in which he describes statements by Planned Parenthood employees about fetal tissue donation, and states that "[i]t appears to me from what PPFA officials disclosed about the advice Evans gave, that Evans was assisting PPFA and its affiliates to violate the law against selling aborted fetal tissue." [Docket No. 383-1 (Daleiden Decl., Dec. 24, 2018) ¶¶ 5-7.]

Defendants note that Plaintiffs' privilege log lists numerous communications involving Evans, including communications "reflecting legal advice of counsel, Roger Evans, regarding fetal tissue donation in connection with BioMax Procurement Services LLC." [Docket No. 383-2 (Trissell Decl., Dec. 24, 2018) ¶ 5 Ex. C (Pls.' Privilege Log).] According to Defendants, these communications "could very easily contain information about Plaintiffs' criminal conspiracy, and about how to evade the law." Mot. 4. Therefore, they argue, communications involving Evans and/or his legal advice could be subject to the crime fraud exception to the attorney-client privilege. Defendants ask the court to order Plaintiffs to produce this category of documents for in camera review.

The court concludes that Defendants have not satisfied their threshold burden to provide an adequate factual basis to "establish a reasonable belief that in camera review may lead to evidence that the [crime-fraud] exception applies." *See In re Grand Jury Investigation*, 974 F.2d at 1073. Specifically, Defendants have not presented evidence that Plaintiffs "[were] engaged in or

planning a criminal or fraudulent scheme when [they] sought the advice of counsel to further the scheme." *See In re Grand Jury Investigation*, 810 F.3d 1110. The court is mindful of the Ninth Circuit's observation that the moving party's burden to show that the crime-fraud exception could apply is "minimal," and that Defendants need not establish the applicability of the crime-fraud exception at this stage. *See In re Grand Jury Investigation*, 974 F.2d at 1071. However, Defendants have not cited any evidence that Plaintiffs actually engaged in a criminal conspiracy to sell human fetal organs. *See* Mot. 2. As the court concluded in an earlier opinion, the Congressional reports on which Defendants rely "do not contain findings that Plaintiffs violated the law." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236 WHO (DMR), 2019 WL 311622, at *4 (N.D. Cal. Jan. 24, 2019). Notably, none of the referrals by the Select Investigative Panel resulted in criminal prosecution of PPFA or any of its affiliates. Moreover, in December 2016, the Democratic members of the Select Investigative Panel issued their own report, concluding that Planned Parenthood had not committed any wrongdoing and attacking the Panel's Republican members for having "abused congressional authority and made repeated inflammatory claims of criminal misconduct in continued reliance on the discredited Daleiden/CMP videos and without any actual evidence of wrongdoing." Select Investigative Panel of the H. Energy and Commerce Comm., Dec. 2016 Report of the Democratic Members at 1, 6.

Daleiden's declaration adds nothing of import to the analysis. Daleiden's statement that Planned Parenthood is "one of the most egregious violators of federal and state laws and ethical norms" is conclusory. *See* Daleiden Decl. ¶ 3. The basis for his statement that Evans "was assisting PPFA and its affiliates to violate the law against selling aborted fetal tissue" is unclear. *See id.* at ¶ 7. Daleiden describes two conversations he had with Planned Parenthood representatives. In the first, Daleiden asked Dr. Deborah Nucatola, PPFA's Senior Director of Medical Services and a physician at PPLA, if it was "possible for fetal tissue buyers to work with PPFA directly instead of going through each local affiliate." *Id.* at ¶ 5. According to Daleiden, Nucatola responded that the "Litigation and Law Department" at the national office "just really doesn't want us to be the middle people for this issue, right now," and that "it's too touchy an

issue for us to be an official middleman." *Id*. at ¶ 5. Daleiden also provides Deborah VanDerhei's description of a March 2015 presentation that Evans gave on fetal tissue procurement programs at a PPFA conference. According to Daleiden, VanDerhei, who is PPFA's National Director of the Consortium of Abortion Providers, stated that Evans's presentation included "'instructions' about 'four or five things [affiliates] should consider' for documenting costs of fetal tissue programs, and Evans' overall support of affiliates engaging" in fetal tissue programs. *Id*. at ¶ 6. Neither of these conversations support Defendants' claims that Plaintiffs were engaging in criminal conduct and that Evans was helping PPFA violate federal law. Accordingly, Defendants' motion for in camera review of the first category of documents is denied.

### B. Category Two: Documents Potentially Outside the Scope of the Attorney-Client Privilege

Defendants also moved for in camera review of a group of communications which they contend are "potentially outside the scope of the attorney-client privilege." Mot. 4. According to Defendants, they "repeatedly requested clarification on specific items" listed on Plaintiffs' privilege log but Plaintiffs failed to address their concerns. *Id*. at 5 (citing Docket No. 383-2, Trissell Decl., Dec. 24, 2018 ("Trissell Decl. I"), ¶¶ 2-6 (discussing meet and confer)). Defendants attached a four-and-a-half-page chart to counsel's supporting declaration, and moved for in camera review of all of the documents listed therein. Mot. 5 (citing Trissell Decl. I, ¶ 6, Ex. D). For each of the 14 rows on the chart, Defendants identified the corresponding row or entry on Plaintiffs' privilege log, described the document listed, identified the purported issue with the entry, and set forth the requested relief. Trissell Decl. I Ex. D. However, Defendants discussed only two specific documents (PP005993 and PP005523) in their motion. Mot. 5.[1]

Plaintiffs responded that Defendants never identified many of the entries listed in

---

[1] Defendants also argue in passing that Plaintiffs' privilege log contains 333 entries and lists 17 attorneys, many of whom are in-house counsel. Based on the number of attorneys listed on the privilege log, Defendants state that "a likely explanation [for the high number of attorneys] is that Plaintiffs' in-house counsel were wearing two hats, and were providing business advice rather than focusing on providing legal advice." Mot. 4. They offer no evidence to support this claim, and did not identify any particular entries on Plaintiffs' privilege log that they assert involve communications by attorneys who were "wearing two hats."

7

Defendants' chart to Plaintiffs before filing their motion, and that they failed to meaningfully meet and confer after Plaintiffs indicated that they would make changes to their privilege log. [Docket No. 403-1 (Mayo Decl., Dec. 31, 2018) ¶¶ 7, 10.] They also objected to Defendants' appended chart as an attempt to circumvent the applicable page limits.

In its February 6, 2019 order, the court noted the parties' dispute regarding the sufficiency of their meet and confer process on certain issues, as well as Defendants' concession that they did not attempt to meet and confer regarding at least four entries that they challenge in their motion. The court denied Defendants' motion with respect to those four entries for failure to follow the local rules and the court's standing order (Entries 230, 258, 297, and 305), and ordered the parties to meet and confer regarding the remaining entries and to submit a joint letter setting forth any remaining disputes in this category. [Docket No. 459 at 1-2.] It also ordered Plaintiffs to submit document PP005993 for in camera review. *Id.* at 2.

The parties timely filed the joint letter, in which Defendants challenge two groups of documents. [Docket No. 472 (Jt. Letter).] The first group includes documents identified on Plaintiffs' privilege log in rows 1-13, 16-17, and 32-44. The second group pertains to emails for which the identity of the recipients was previously unknown (privilege log rows 45-48 and 204-06). The court first addresses the two specific documents that Defendants discussed in their motion, then analyzes the two groups of documents.

### 1. Documents PP005993 and PP005523

Defendants discussed two specific documents in their motion, PP005993 and PP005523. As to PP005993, Defendants state that this is a document between two non-attorneys regarding "working with BioMax." Mot. 5. They assert that this document is not listed on Plaintiffs' privilege log and ask for in camera review.

In response, Plaintiffs stated that they erroneously omitted the document from their privilege log and would update the log before any hearing on this motion. Mayo Decl. ¶ 11. Plaintiffs state that the document "is part of an email chain reflecting legal advice of Roger Evans." *Id.* They argue that to the extent that Defendants are challenging their privilege assertion on the ground that the communication is between non-attorneys, "courts in this District have made

8

clear that there are certain circumstances where such communications may be covered by the attorney-client privilege." Opp'n 7 (citing *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (noting that the attorney-client privilege "might protect a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel" or protect a communication "in which an employee discusses her intent to seek legal advice about a particular issue"). They did not provide any additional details about the document.

On February 6, 2019, the court ordered Plaintiffs to lodge the document for in camera review. [Docket No. 459.] Plaintiffs timely lodged the document bates-stamped PP0005993-5994, which is an email chain. As discussed on the record at the hearing, the first portion of the second sentence of the first email on PP0005993, dated April 13, 2015, does not contain a privileged communication. The court ordered Plaintiffs to produce the document with that clause unredacted to Defendants by February 19, 2019. [Docket No. 473.]

Defendants also challenge Plaintiffs' document PP005523. Plaintiffs describe this document on their privilege log as a January 15, 2015 email between Kevin Paul and Savita Ginde that is a "[c]onfidential email chain containing information necessary for counsel to render legal advice and prepared in anticipation of litigation regarding interactions with representatives of BioMax Procurement Services, LLC." Trissell Decl. I Ex. C at ECF p. 40. Plaintiffs identify Paul as an attorney, and claim both attorney-client privilege and attorney work product protection over the document. *See id.* Defendants argue that this communication could not have been made in anticipation of litigation, because the date of the communication predates the July 2015 release of the videos. Mot. 5. However, Defendants do not address Plaintiffs' claim that the email is protected by the attorney-client privilege and do not challenge Plaintiffs' description of the communication as "containing information necessary for counsel to render legal advice[.]" As Defendants offer no "factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the [email] is not privileged," *see In re Grand Jury Investigation*, 974 F.2d at 1075, Defendants' request for in camera review of this document is denied.

9

### 2. Plaintiffs' Privilege Log Rows 1-13, 16-17, and 32-44

Plaintiffs provide the following descriptions for the communications logged at rows 1-13, 16-17, and 32-44: "[c]onfidential email chain reflecting legal advice of counsel, Roger Evans^^, regarding fetal tissue donation in connection with BioMax Procurement Services LLC" (rows 1-3, 5-13, 16-17, 32-43); "[c]onfidential email chain requesting and providing legal advice of counsel and reflecting legal advice of counsel, Roger Evans^^ regarding fetal tissue donation in connection with BioMax Procurement Services LLC" (row 4) ; and "[c]onfidential email requesting information necessary for counsel, Roger Evans^^, to render legal advice regarding fetal tissue donation in connection with BioMax Procurement Services LLC" (row 44). [Docket No. 383-2 at ECF pp. 19-45 (Pls.' Privilege Log).] The log lists three participants in each of these communications: Kathryn Gottlieb, in-house counsel for Planned Parenthood affiliate Planned Parenthood Gulf Coast ("PPGC"); Dr. Nucatola, who worked for both PPFA and Planned Parenthood affiliate Planned Parenthood Los Angeles ("PPLA"); and Melissa Farrell, a PPGC employee. *Id.*; Jt. Letter 2. According to Plaintiffs, the three employees on the email chain were discussing legal advice that they had received from Evans. *See* Joint Letter 2.

Although Defendants' position is not a model of clarity, they appear to make two primary arguments in support of in camera review of this category of communications. First, they argue that Plaintiffs' assertion of privilege over these communications is "simply unusual" because Evans, the attorney whose advice is being discussed, was not a participant in the email chains. Jt. Letter 3. However, the attorney-client privilege is not limited to communications in which an attorney participates; it may also protect communications between non-attorneys in which "the employees discuss or transmit legal advice given by counsel," or "those in which an employee communicates with another employee about an intent to seek legal advice." *See Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2016 WL 258604, at *8 (N.D. Cal. Jan. 21, 2016) (citing *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077).

Second, Defendants question whether Evans had an attorney-client relationship with Planned Parenthood affiliates PPLA and PPGC, arguing that any privilege that attached to Evans's advice was waived when it was shared outside PPFA with PPLA and PPGC. They also dispute

10

the existence of a common interest between PPFA, PPLA, and PPGC. Jt. Letter 2-3. In their portion of the joint letter, Plaintiffs made numerous factual assertions regarding Evans and his role with PPFA at the time of the communications but did not cite any supporting evidence. *Id*. at 4-5. Accordingly, the court ordered Plaintiffs to submit a declaration by Evans attesting to the factual assertions in the joint letter. [Docket No. 516.] Plaintiffs timely filed the declaration.

Evans states that he is currently Senior Counsel, Law and Policy, at PPFA. [Docket No. 522 (Evans Decl., Apr. 1, 2019) ¶ 1.] Evans founded and directed for over 30 years PPFA's Public Policy Litigation and Law department, "PPL&L." Evans states that in that capacity, he "conducted and supervised litigation, on behalf of PPFA and Planned Parenthood affiliates across the country, affecting all areas of reproductive rights," and "provided and supervised the provision of legal advice to PPFA and its affiliates on these same matters." *Id*. at ¶ 2. According to Evans, PPL&L is separate from PPFA's Office of General Counsel; it "operates as a law firm within PPFA for the specific purpose of providing legal counsel to Planned Parenthood affiliates (as well as PPFA) regarding public policy-related legal matters that impact the ability of Planned Parenthood health centers to provide reproductive health care, including abortions." *Id*. at ¶ 3.

Evans states that he transitioned to his current position as Senior Counsel in 2014. According to Evans, he "provide[s] legal advice regarding litigation matters and public policy legal issues that may affect the services provided by Planned Parenthood's affiliates," and "provides legal advice regarding compliance with laws and regulations governing Planned Parenthood's affiliates." *Id*. at ¶ 4. He states that it was within that role that he provided the legal advice reflected in the communications at rows 1-13, 16-17, and 32-44, and that "[t]hose with whom [he] worked both at PPFA and at the Planned Parenthood affiliates understood, as did [he], that [they] were operating within an attorney-client relationship." *Id*. at ¶ 5.

The court concludes that Plaintiffs have established the existence of an attorney-client relationship between Evans, PPFA, and Planned Parenthood affiliates PPLA and PPGC at the time of the communications. As noted, Defendants argue that to the extent Evans's advice was privileged, any privilege was waived by sharing it among affiliates. They dispute that the common interest doctrine applies to the communications.

11

"Under the attorney-client privilege, it is a general rule that attorney-client communications made in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citation and quotation omitted). The common interest doctrine, also known as the joint defense doctrine or privilege, "is a doctrine that prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a common legal interest." *Waymo LLC v. Uber Techs., Inc.*, No. 17CV00939-WHA (JSC), 2017 WL 2485382, at *7 (N.D. Cal. June 8, 2017). The common interest doctrine is not an independent privilege; rather, as an "exception[ ] to the rule on waiver . . . it comes into play only if the communication at issue is privileged in the first instance." *Nidec Corp.*, 249 F.R.D. at 578.

The common interest doctrine applies where (1) a communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. *Nidec Corp.*, 249 F.R.D. at 578 (citing *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)). The common interest doctrine is not limited to parties to litigation, but can extend to "interested third parties who have a community of interests with respect to the subject matter of the communications," and "is applicable whenever parties with common interests join[ ] forces for the purpose of obtaining more effective legal assistance." *Id.*

Here, Plaintiffs assert that the affiliates that participated in the communications, PPLA and PPGC, share a common legal interest with PPFA in Planned Parenthood's compliance with laws and regulations regarding fetal tissue donation and in the legal advice they receive to further that compliance. Jt. Letter 5. They also argue that the communications at issue were in furtherance of that shared legal interest, and note that the fact that Evans did not participate in the communications is not dispositive, since under the common interest doctrine, "individuals with a community of interests may communicate among themselves . . . on matters of common legal interest . . . ." Jt. Letter 5 (quoting *Nidec*, 249 F.R.D. at 578).

Defendants' only response is that such a "common legal interest" between the participants

12

in the communications "seems unlikely to exist," and is more likely "an after the fact justification." *Id*. at 3. This argument is conclusory, speculative and unsupported. The court finds that Defendants have not satisfied their burden to "show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection" of the communications regarding Evans's advice regarding fetal tissue donation in connection with BioMax "may reveal evidence that information in the materials is not privileged." *See In re Grand Jury Investigation*, 974 F.2d at 1075. Accordingly, this portion of their motion is denied.

### 3. Plaintiffs' Privilege Log Rows 45-48 and 204-206, Documents for Which the Identity of Recipients Originally Was Unknown

The final category of disputed privilege log entries includes documents for which the identity of the recipients originally was unknown (rows 45-48 and 204-206). Each entry is described as a "[c]onfidential email providing legal advice of counsel and requesting information necessary for counsel to render legal advice regarding PPFA's response to Congressional inquiry into fetal tissue donation programs." Pls.' Privilege Log. The privilege log lists the recipients, author, and individuals on whom the communications were copied, and lists as "other recipients" Roger Evans and "Affil Chief Execs." Additionally, with respect to the communication at row 45, Defendants assert that the email itself says that it was sent to the "CAPS team" and the "Medical Services team." Jt. Letter 6.

According to Plaintiffs, the communications at these privilege log entries "are all communications from the same thread, initiated by a privileged communication from Roger Evans to the CEOs of all Planned Parenthood affiliates by means of a distribution list called 'Affiliate Chief Execs.' Several employees of PPFA then discuss Mr. Evans' communication internally, in email threads that are largely unredacted." Jt. Letter 7.

Defendants originally challenged Plaintiffs' assertion of attorney-client privilege over these entries and moved to compel production of the same on the basis that Plaintiffs had not determined the identities of the individuals on the distribution lists Affil Chief Execs, CAPS team, and the Medical Services team. According to Defendants, without the identities of those recipients, Plaintiffs cannot establish that the attorney-client privilege applies to the

13

communications.  In its February 6, 2019 order, the court ordered the following: "If Plaintiffs wish to maintain their assertion of privilege over these communications, they must give Defendants a list of all individuals with whom the communications were shared, i.e., the identities of all of the individuals on the distribution lists, by no later than 12:00 p.m. PST on February 8, 2019.  If they do not provide such a list by that deadline, they will be deemed to have withdrawn their claim of privilege over these communications and must produce them to Defendants by February 12, 2019."  [Docket No. 459 at 2.]

Plaintiffs timely provided Defendants with the names or Doe identifiers and titles of the individuals in the three distribution lists on their privilege log.  *See* Jt. Letter 6 n.4.  The "Affil Chief Execs" distribution list consists of a PPFA Administrative Manager, a PPFA Vice President of Healthcare Operations, a PPFA Managing Director, the Director of the Affiliate Chief Executives Council, and the CEOs of 59 affiliated Planned Parenthood Corporations.  Jt. Letter 6.  With respect to the communication at row 45, the email was also sent to the "CAPs team" and the "Medical Services team."  The "CAPS team," or "Consortium of Abortion Providers," consists of six individuals: PPFA's Senior Program and Budget Manager; PPFA's Project & Administrative Coordinator; CAPS' Director and Counsel, Health Center Regulatory Strategy; CAPS' National Director; CAPS' Associate Director, Budget & Affiliate Grants; and CAPS' Director, Clinical Quality and Operations.  The "Medical Services team" consists of an additional six individuals: PPFA's Director, Medical Standards; PPFA's Senior Director, Medical Services; PPFA's Senior Manager of Finance and Operations; PPFA's Project Specialist, Medical Services; PPFA's Associate Director, Medical Standards Implementation; and PPFA's Manager, Medical Standards.  *Id.*

Defendants argue that it is Plaintiffs' burden to establish that the communications were kept confidential and only disseminated on a need to know basis, citing numerous authorities from outside the Ninth Circuit.  *See* Jt. Letter 6.  While acknowledging that the subject line of Evans's original communication is "Confidential Attorney Client communication," Defendants assert that nothing in the email itself indicates that the up to 80 individuals who received it knew that they were receiving it on a "need to know" basis only and that it could not be shared with other Planned

Parenthood personnel. Jt. Letter 7.

In response, Plaintiffs assert that Defendants' argument is based only on speculation. They argue that the fact that Evans's communication was labeled "Confidential Attorney Client communication" in bold letters and all caps is a clear signal that the communication was to be kept confidential. Further, they argue that the number of recipients alone does not negate this because there are 59 separate Planned Parenthood affiliates, each of whom had an attorney-client relationship with Evans. *See* Evans Dec. ¶ 5. Plaintiffs state that in order for Evans and PPL&L "to render informed and accurate legal counsel regarding PPFA's response to the congressional inquiry, including information regarding which affiliates had facilitated fetal tissue donation, it was necessary to collect information from *all* of the affiliates." Jt. Letter 7 (emphasis in original).

Plaintiffs further assert that the members of the "CAPS team" and "Medical Services team" were also necessary recipients, as "they would be most likely to have information relevant to the congressional inquiry regarding fetal tissue donation." *Id*. at 8.

Defendants' sole argument appears to be that the communications could not have been kept confidential due to the sheer number of individuals with whom they were shared. They do not respond to Plaintiffs' arguments about the necessity of including the specific members of the distribution lists on the communications and offer no facts to suggest that the recipients of the email waived any privilege over the communications by disseminating them to individuals outside of their respective organizations. Accordingly, their argument in favor of in camera review and outright production of the communications is based on speculation. The court finds that Defendants have not satisfied their burden to "show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection" of the communications shared with distribution lists "may reveal evidence that information in the materials is not privileged." *See In re Grand Jury Investigation*, 974 F.2d at 1075. Accordingly, this portion of their motion is denied.

//

//

## IV. CONCLUSION

For the foregoing reasons, and with the exception of PP005993, which the court already reviewed in camera, Defendants' motion for in camera review is denied.

**IT IS SO ORDERED.**

Dated: May 1, 2019



Donna M. Ryu
United States Magistrate Judge