UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTER FOR MEDICAL PROGRESS, et al., <br><br> Defendants. | Case No. 16-cv-00236-WHO (DMR) <br><br> **SECOND PARTIAL ORDER ON PLAINTIFFS' MOTION CHALLENGING DEFENDANTS' PRIVILEGE LOG** <br><br> Re: Dkt. No. 385 |

Plaintiffs filed a motion for in camera review of certain documents on Defendants' privilege log. [Docket No. 385.] Defendants also moved for in camera review of documents on Plaintiffs' privilege log. [Docket No. 383.]

On February 6, 2019, in advance of the hearing on both motions, the court ordered Defendants to submit four categories of documents for the court's in camera review, among other things. [Docket No. 459.] The court held a hearing on February 14, 2019, and ordered the parties to submit supplemental briefing. [Docket No. 473.] The parties timely filed the requested briefing. [Docket Nos. 482, 483, 487, 488, 495, 496.]

On April 11, 2019, the court entered a partial order on Plaintiffs' motion, and noted that it would address the parties' remaining disputes, including Defendants' motion, in separate orders. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-CV-00236-WHO (DMR), 2019 WL 1589974 (N.D. Cal. Apr. 11, 2019). The court now enters the following order on the remaining issues raised in Plaintiffs' motion.

I. **BACKGROUND**

The court has described Plaintiffs' allegations in the operative complaint in detail in previous orders and does not repeat them here. In December 2018, the parties filed six unilateral

discovery letters in which each side challenged alleged deficiencies in the other side's privilege log. On December 13, 2018, the court denied the letters without prejudice based on the parties' failure to meet and confer on the issues raised in the letters. [Docket No. 372.] The court ordered the parties to immediately meet and confer regarding the issues and to "revise their privilege logs consistent with any agreements or changes in position." *Id*. If disputes remained after meeting and conferring, the court granted the parties leave to file a motion challenging the other side's privilege log, subject to a briefing schedule and page limits. *Id.*

The present motion followed. Plaintiffs moved for production of several categories of documents withheld by Defendants upon their assertion of the attorney-client privilege. Defendants opposed the motion. As noted, the court issued a partial order on Plaintiffs' motion on April 11, 2019. In that order, the court granted in part and denied in part Plaintiffs' motion for production of communications between Defendants and four groups of third parties that Defendants characterize as "CMP Attorneys" and "Law Firm Staff," and communications between Defendant David Daleiden, various attorneys, and third party donors to Defendant Center for Medical Progress ("CMP"). [Docket No. 538.] The remaining issues in Plaintiffs' motion which are addressed in this order are (1) communications shared with CMP's contractors and (2) communications with attorney Catherine Short that may be discoverable under the crime fraud exception.

## II. LEGAL STANDARDS

This court exercises federal question jurisdiction over Plaintiffs' RICO claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims. "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005); *see also* Fed. R. Evid. 501, Advisory Committee Notes ("In nondiversity jurisdiction civil cases, federal privilege law will generally apply.").

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The privilege attaches

when:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (brackets and citation omitted). The privilege is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

The privilege extends to versions of electronic communications and preliminary drafts of communicated documents, *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 139-40 (E.D. Mich. 2009) (citations omitted), as well as communications with "third parties who have been engaged to assist the attorney in providing legal advice." *Richey*, 632 F.3d at 566 (footnote omitted). If the advice sought from the professional legal advisor is not legal advice, the privilege does not apply. *Id*. at 566.

A party asserting the attorney-client privilege bears the burden of demonstrating that the privilege applies. *Richey*, 632 F.3d at 566; *accord In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (party asserting privilege "must make a *prima facie* showing" that privilege protects information the party intends to withhold). Producing a privilege log is a recognized means of sufficiently establishing the privilege. *In re Grand Jury Investigation*, 974 F.2d at 1071. A party challenging an assertion of privilege must "show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged." *Id*. at 1075. The Ninth Circuit has described this burden as "minimal." *Id*. at 1071, 1074 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). "If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court." *Id*. at 1075.

## III. DISCUSSION

As noted, this order addresses Plaintiffs' challenge to Defendants' withholding of two categories of communications: (1) communications shared with CMP's contractors, and (2) communications with attorney Catherine Short that Plaintiffs claim are discoverable under the

3

crime fraud exception to the attorney-client privilege..

### A. Communications with CMP's Contractors

Plaintiffs challenge Defendants' claim of attorney-client privilege over Daleiden's communications with attorneys that were also shared with various non-attorneys. The non-attorneys include eight individuals described on Defendants' privilege log as "CMP Personnel": Andy Moore, Annamarie Bettisworth Davin, Brianna Baxter, Greg Mueller, Peter Robbio, J.D., K.B., and R.G.[1] Mot. 7. Plaintiffs argue that the inclusion of these individuals on otherwise privileged communications effected a waiver by CMP of the attorney-client privilege.

Daleiden responds by explaining that CMP hired individuals on a project basis as independent contractors, and he viewed each of the eight individuals as "CMP personnel." Daleiden Decl., Dec. 31, 2018, ¶ 3; Daleiden Decl., Feb. 21, 2019 ("2d Daleiden Decl."), ¶ 13. Defendants argue that the attorney-client privilege extends to communications in which these individuals participated, and therefore no waiver occurred.

In the parties' original briefing, Defendants failed to address the Ninth Circuit's opinion in *United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010), in which the court adopted the "functional employee" standard for determining whether a corporation's attorney-client privilege extends to outside consultants. The court ordered the parties to submit briefing to "address[] how each of the eight individuals retained by CMP as independent contractors satisfy the 'functional employee' test set out in [*Graf*]." [Docket No. 473.] The parties timely filed the supplemental briefing. [Docket Nos. 483, 484, 487.] Following its review of that briefing, on April 15, 2019, the court ordered Defendants to submit for in camera review all logged communications that CMP shared with its contractors. [Docket No. 50.] Defendants lodged 32 communications which the court has now reviewed. [Docket Nos. 540, 549.]

#### 1. The Functional Employee Doctrine

In *Upjohn Co. v. United States*, 449 U.S. 383, 390-94 (1981), the Supreme Court "held that

---

[1] In order to protect their privacy, the court refers to certain individuals who are well known to the parties by their initials instead of their full names. The court will separately rule on Defendants' motions to seal submissions in connection with these motions.

4

a corporation's privilege extends to communications between corporate employees and corporate counsel as long as the communications are 'made at the direction of corporate superiors in order to secure legal advice.'" *Graf*, 610 F.3d at 1158 (citations omitted). The Eighth Circuit subsequently "applied *Upjohn* to cover communications between corporate counsel and outside consultants." *Graf*, 610 F.3d at 1158 (citing *In re Bieter*, 16 F.3d 929, 937-38 (8th Cir. 1994)). *Bieter* "reasoned that 'too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship with the client, possess the very sort of information that the privilege envisions flowing most freely.'" *Id.* (citing *Bieter*, 16 F.3d at 937-38). In *Bieter,* the consultant at issue was "'involved on a daily basis with the principals of [the partnership] and on [the partnership's] behalf in the unsuccessful development that serve[d] as the basis for th[e] litigation,' therefore, he was 'precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand[the partnership's] reasons for seeking representation.'" *Id.* (citing *Bieter*, 16 F.3d at 938 (citing *Upjohn*, 449 U.S. at 389)). The court concluded that the consultant "was in all relevant respects the functional equivalent of an employee." *Id.* (quoting *Bieter*, 16 F.3d at 938).

The Ninth Circuit found the reasoning of *Bieter* persuasive and adopted its principles in *Graf*, holding that communications between corporate counsel and "functional employees" may be privileged. *Graf*, 610 F.3d at 1159.

### 2. Analysis

With one exception, all 32 of the communications submitted for in camera review consist of emails between David Daleiden and CMP's attorneys on which CMP's contractors were copied. The remaining privilege log entry 48 is part of a string that includes an email from one of the contractors, Bettisworth, to Daleiden and an attorney.

Having carefully reviewed the communications, the court concludes that for the vast majority of the documents, Defendants have not satisfied their burden to establish that the communications fall within the scope of the attorney-client privilege. "The attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." *United States v. Chen*, 99 F.3d

5

1495, 1502 (9th Cir. 1996) (citing *Upjohn*, 449 U.S. at 390-94). Almost all of the communications involve updates about CMP's expenses, reports of the progress of CMP's investigation, Daleiden's requests for unspecified "feedback" regarding videos and written materials, and communications regarding scheduling. The communications do not involve a request for or provision of legal advice, nor do they appear to be related to a request for legal advice. Accordingly, the court concludes that Defendants have not met their burden to establish that the following communications are privileged, **and must produce them to Plaintiffs by May 3, 2019**: 115, 1163, 1976, 2059, 2061, 2140, 2141, 2297, 2303, 2306, 2307, 2313, 2314, 2389, 2470, 2471, 2472, 2475, 2477, 2484, and 2505.

The remaining privilege log entries 2, 16, 19, 46, 48, 49, 50, 53, 54, 55, and 2291 contain communications made "for the purpose of obtaining legal advice." *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Entries 2, 16, 19, and 46 contain communications between Daleiden and a CMP attorney on which Bettisworth was copied.[2] Entry 2291 is an email from Daleiden and CMP attorneys on which K.B. was copied. In order to determine whether the privilege was waived by sharing these communications with Bettisworth and K.B., the court must examine whether these two individuals were CMP's "functional employees" under *Graf*.

### a. Bettisworth

Daleiden generally explains that he hired all eight individuals described as CMP Contractors on an independent contractor basis because CMP did not have the resources to hire full-time employees. He states that the individuals "worked under [his] direction as if they were employees" and he "expected them to follow [his] directions in performing the work that was

---

[2] Privilege log entries 46, 48, 49, 50, 53, 54, and 55 are portions of the same email thread. Entry 46 is the first email in the thread. It contains a communication "made for the purpose of obtaining legal advice." *See Martin*, 278 F.3d at 999. However, the remaining emails in the thread pertain to simple scheduling matters and are not privileged communications. As the party asserting the attorney-client privilege, Defendants are "obliged by federal law to establish the privileged nature of the communications and, if necessary, to segregate the privileged information from the non-privileged information." *See United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009). Defendants should have redacted the portion of the thread that contains a privileged communication and produced the remaining communications to Plaintiffs but apparently did not. As discussed below, the court concludes that any privilege over the communications was waived by sharing them with Bettisworth. Therefore, the court does not order Defendants to produce any redacted versions of these emails.

assigned to them." 2d Daleiden Decl., ¶ 4.

Daleiden states that he hired Bettisworth to act as "an undercover investigator and fundraising program manager." *Id*. at ¶ 7. He represents that Bettisworth "performed undercover investigative work directly under [Daleiden's] supervision." Daleiden provides this conclusory description without describing any details regarding this "undercover investigative work." *Id*. Additionally, he states that Bettisworth performed fundraising work on behalf of CMP, which he describes only as "the work that an internal development department would perform if CMP had the resources to create one." *Id*. The only detail Daleiden provides regarding Bettisworth's fundraising work is that all of her "fundraising decisions were run by [Daleiden]," so they interacted "frequently." *Id*. Bettisworth worked for CMP remotely because CMP did not have physical office space. *Id*. Finally, Daleiden states that Bettisworth "represented herself as an agent of CMP's" on occasion, including with respect to privilege log entry 48, noted above, in which she emailed a CMP attorney regarding scheduling a conference call.

On this record, the court finds that Defendants have failed to establish that Bettisworth was the functional equivalent of an employee for purposes of the attorney-client privilege. Their supplemental brief is devoid of any analysis to support their assertion that Bettisworth meets the functional employee test, even though the court explained that Defendants needed to "discuss each individual separately" in their supplemental briefing because the functional employee analysis is "an individualized test." [Docket No. 485 (Feb. 14, 2019 Hr'g) 9-10.] Notwithstanding this explicit instruction, the only discussion of individual contractors appears in Daleiden's declaration, and is vague and conclusory as to each individual's duties and responsibilities. Based on the statements in the Daleiden declaration, Defendants appear to take the position that an individual meets the *Graf* standard if an individual performed work that an employee in an internal department would perform if CMP had the resources to create such a department. That is not the law, and none of the cases cited by Defendants support this oversimplified proposition.

Defendants correctly note that the Ninth Circuit in *Graf* did not set out a "functional employee" test, nor did it list factors to consider in performing the analysis. However, *Graf* and other courts assessing whether an individual is a functional employee for purposes of the attorney-

7

client privilege have considered more detailed facts than Defendants provide here. For example, in *Graf*, the court concluded that although the defendant described himself as an "outside consultant," his role "was that of a functional employee." 610 F.3d at 1157-59. The court noted that he "regularly communicated with insurance brokers and others on behalf of [the company], marketed the company's insurance plans, managed its employees, and was the company's voice in its communications with counsel." *Id*. at 1157. "More importantly," the Ninth Circuit noted, the defendant "was the company's primary agent in its communications with corporate counsel." *Id*. at 1159.

Similarly, in *Bieter*, the Eighth Circuit found that an independent contractor was "in all relevant respects the functional equivalent of an employee" where he had "varied and extensive" duties, worked in the company's office, had daily interactions with the manager of that office, attended meetings with counsel, received communications from attorneys, and appeared at public hearings on behalf of the company. 16 F.3d at 933-34. Further, due to his work for the company, the court concluded that he likely possessed information relevant to the dispute that no others possessed and was "precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the company's] reasons for seeking representation." *Id*. at 938.

In *Memry Corp. v. Kentucky Oil Technology, N.V.*, No. C04-03843 RMW (HRL), 2007 WL 39373, at *3 (N.D. Cal. Jan. 4, 2007), the court considered a detailed factual record, including declarations and deposition testimony, before concluding that the defendant had sufficiently shown that its advisor was the functional equivalent of an employee and thus fell within the company's attorney-client privilege. This was the second time the company had attempted to show that he was a functional employee, having previously failed to establish the point:

> This court's [previous] September 6 ruling stated: "Although KOT claims that van Moorleghem has advised KOT and Besselink in business matters, it presents no specific evidence of his duties in this capacity. The declarations submitted by Besselink and van Moorleghem contain no detailed facts regarding van Moorleghem's integration into the corporate structure or his possession of any information not known by other persons at KOT. There is no documentation regarding the amount of time devoted to his "consulting" activities or his physical location when performing his

8

> alleged duties. Nor is there any showing that third parties recognize him as a representative of KOT. The combination of all of these factors, plus the "unpaid" nature of the advice, defeats the functional equivalence argument."

*Id.* at *2. In the court's reexamination of the issue, it described evidence about the specific matters on which the advisor had worked, documents submitted under seal detailing his "significant involvement in [the defendant's] various negotiations over the years," his intimate involvement in the present lawsuit, his direct communications with counsel, and his status as the defendant's Rule 30(b)(6) designee for many deposition topics. *Id.* at *3.

In contrast with *Graf*, *Bieter*, and *Memry*, Daleiden's declaration provides few details about Bettisworth's actual work for CMP. It lacks information such as when Bettisworth performed work for CMP as an undercover investigator and fundraising program manager, details about her duties and responsibilities in either role, how long she performed work for CMP, or how frequently she worked. It is also silent as to whether individuals outside of CMP perceived her as an agent or representative of CMP's, aside from a single email to counsel about scheduling, or whether she possessed unique information relevant to this lawsuit. Such details would enable the court to assess whether Bettisworth was the type of "nonemployee[ ] who, due to [her] relationship with [CMP] possess[es] the very sort of information that the privilege envisions flowing most freely." *See Bieter*, 16 F.3d at 938; *see also United States v. Lonich*, No. 14-cr-00139-SI-1, 2016 WL 1733633, at *7 (N.D. Cal. May 2, 2016) (holding defendant had not met his burden to establish that five individuals were functional employees; noting "[defendant] has offered little information regarding the roles these individuals played with respect to [the corporation], far from what the courts relied on to make a 'functional employee' finding in *Bieter* and *Graf*."). As one court in this district has stated, "the dispositive question is the consultant's relationship to the company and whether by virtue of that relationship [s]he possesses information about the company that would assist the company's attorneys in rendering legal advice." *U.S. ex rel. Strom v. Scios, Inc.*, No. C05-3004 CRB JSC, 2011 WL 4831193, at *4 (N.D. Cal. Oct. 12, 2011). On the limited record submitted by Defendants, the court lacks sufficient information to conclude that Bettisworth is a functional employee under *Graf*.

**b. K.B.**

Daleiden states that K.B. worked as CMP's "communications consultant." 2d Daleiden Decl. ¶ 10. In that role, she "reviewed and provided advice [to Daleiden] regarding CMP's public statements and publications[.]" *Id.* According to Daleiden, she "performed the communications work which an internal communications department would perform if CMP had the resources to create one," and K.B. interacted with Daleiden "very frequently." *Id.* K.B. provided her services on an unpaid volunteer basis, but Daleiden did not consider her "an informal advisor, as she was expected to maintain her relationship with CMP by providing high-quality, prompt, and complete communications advice." *Id.* He provides no other details about K.B.'s work.

As with Bettisworth, the details about K.B. in Daleiden's declaration are insufficient to establish that K.B. was CMP's functional employee for purposes of attorney-client privilege. Daleiden provides no details about the length of K.B.'s relationship with CMP, when she performed communications work for CMP, and what such work entailed. There is also no information about her interactions with individuals outside of CMP, whether others perceived her as CMP's agent or representative, or whether she possessed unique information relevant to this lawsuit.

Accordingly, as Defendants have failed to meet their burden to establish that Bettisworth and K.B. were CMP's functional employees, CMP waived the attorney-client privilege by sharing communications between Daleiden and CMP's attorneys with Bettisworth and K.B. Defendants must produce the following communications to Plaintiffs **by May 3, 2019**: 2, 16, 19, 46, 48, 49, 50, 53, 54, 55, and 2291.

### B. Crime Fraud Exception

Plaintiffs moved for in camera review of approximately 30 communications between Daleiden and attorney Catherine Short that Defendants withheld on the basis of attorney-client privilege, arguing that these communications are potentially discoverable under the crime-fraud exception to the attorney-client privilege. While Defendants dispute whether the crime-fraud exception applies to the communications at issue, they agreed to provide that category of communications to the court for in camera review. Opp'n 7. Defendants timely lodged the communications, which the court reviewed in advance of the hearing.

The communications at issue involve the provision of legal advice by Short to Daleiden regarding aspects of CMP's investigative methods that Plaintiffs challenge as fraudulent.[3] In order to vitiate the attorney-client privilege under the crime-fraud exception, Plaintiffs must satisfy a two-part test:

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "*in furtherance of* [the] intended, or present, continuing illegality."

*In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)) (emphasis in original). "The planned crime or fraud need not have succeeded for the exception to apply. The client's abuse of the attorney-client relationship, not his or her successful criminal or fraudulent act, vitiates the privilege." *In re Napster*, 479 F.3d at 1090. In civil cases, the burden of proof to establish the crime-fraud exception is a preponderance of the evidence. *Id.* at 1094-95.

At the hearing, Plaintiffs asserted that the record in this case shows that "fraud has been established by a preponderance of the evidence." Hr'g Tr. 30. In support, Plaintiffs rely on the Honorable William H. Orrick's 2016 order granting a preliminary injunction in the related case, *National Abortion Federation v. Center for Medical Progress*, No. 15-cv-3522 WHO ("*NAF*"). *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-CV-03522-WHO, 2016 WL 454082 (N.D. Cal. Feb. 5, 2016), *aff'd sub nom. Nat'l Abortion Fed'n, NAF v. Ctr. for Med. Progress*, 685 F. App'x 623 (9th Cir. 2017). Plaintiffs note that in that opinion, the court held that "[t]he context of how defendants came into possession of the NAF materials" supported an injunction preventing

---

[3] At the hearing, defense counsel characterized the emails as "Ms. Short . . . completely giving legal advice to keep Mr. Daleiden from falling into trouble by violating the law. She's obviously not trying to help him violate the law." Hr'g Tr. 37-38. The court ordered Defendants to inform the court by February 19, 2019 as to whether they intended to assert the reliance on the advice of any of its counsel as a defense in this litigation. *Id.* at 38-39; *see also* Docket No. 473. Counsel timely filed a letter stating, "Defendants CMP, BioMax, Daleiden, and Lopez do not intend to use reliance on the advice of counsel as a defense in this litigation." [Docket No. 474.]

the disclosure of the materials:

> Defendants engaged in repeated instances of fraud, including the manufacture of fake documents, the creation and registration with the state of California of a fake company, and repeated false statements to a numerous NAF representatives and NAF members in order to infiltrate NAF and implement their Human Capital Project.

*Nat'l Abortion Fed'n*, 2016 WL 454082, at *24; *see* Mot. 9-10. Plaintiffs' conclusory citation of Judge Orrick's decision in *NAF* does not satisfy their burden here. Judge Orrick's findings in that opinion were made in the context of evaluating the plaintiff's likelihood of success solely with respect to its breach of contract claim for purposes of its motion for a preliminary injunction. *Nat'l Abortion Fed'n*, 2016 WL 454082, at *13, *16, *17. He made no findings as to any fraud claims, let alone the fraud claims *in this case*. Moreover, Plaintiffs' request to treat his findings in *NAF* at the preliminary injunction stage as established fact ignores the rule that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of. Texas v. Camenisch*, 451 U.S. 390, 395 (1981). To the extent that discovery revealed evidence that establishes Defendants' fraud in this case, Plaintiffs did not set forth any such evidence in their motion or at the hearing. Accordingly, as Plaintiffs have failed to satisfy their burden to establish CMP's fraud by a preponderance of the evidence, they have failed to establish the crime-fraud exception. This portion of their motion is accordingly denied.

## IV. CONCLUSION

For the foregoing reasons, the remaining portions of Plaintiffs' motion that are covered in this order are granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: May 1, 2019



Donna M. Ryu
United States Magistrate Judge