Michael Millen (#151731)
LAW OFFICE OF MICHAEL MILLEN
119 Calle Marguerita, Ste. 100
Los Gatos, CA 95032
Tel: (408) 871-2777
MikeMillen@aol.com

Catherine W. Short (#117442)
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, CA 93024-1313
Tel: (707) 337-6880
LLDFOjai@earthlink.net

*Attorneys for Defendant Albin Rhomberg*

Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
John A. Monaghan, *pro hac vice*
Christy Stierhoff, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007
ewhite@aclj.org
ezimmerman@aclj.org
jmonaghan@aclj.org
cstierhoff@aclj.org

Vladimir F. Kozina (#95422)
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833
VKozina@mayallaw.com

*Attorneys for Defendant Troy Newman*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THE CENTER FOR MEDICAL PROGRESS, et al., <br><br> Defendants. | Case No. 3:16-CV-00236 (WHO) <br><br> Judge William H. Orrick, III <br><br> **DEFENDANTS ALBIN RHOMBERG AND TROY NEWMAN'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date: July 17, 2019 <br> Time:      2:00 pm <br> Courtroom 2, 17th floor |

<div style="text-align:center; color:red;">

# REDACTED
# PUBLIC VERSION

</div>

# TABLE OF CONTENTS

NOTICE OF MOTION .................................................................................................. 1

STATEMENT OF ISSUES ........................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

    A.    Allegations and Facts Related to Rhomberg and Newman ...................... 1

    B.    Alleged Harm to Plaintiffs .................................................................... 2

    C.    Plaintiffs' Claimed Damages ............................................................... 6

I.    **Rhomberg and Newman are Not Liable Under RICO (First Claim for Relief). ................................................................................................... 10**

    A.    Neither Rhomberg nor Newman committed any RICO predicate act. ..................................................................................... 10

    B.    Neither Rhomberg or Newman conspired to commit any RICO predicate act. .......................................................................... 11

    C.    The commission of the alleged RICO predicate acts did not directly lead to Plaintiffs' alleged injuries; thus, there can be no recovery under RICO. .......................................................... 14

    D.    Foreseeability and alleged intent are irrelevant to the proximate cause analysis. ........................................................... 19

II.    **Plaintiffs Cannot Prevail Against Rhomberg and Newman On Their Third (Civil Conspiracy) or Eighth (Fraudulent Misrepresentation) Claims. ................................................................................................... 20**

III.    **Plaintiffs Cannot Prevail Against Rhomberg and Newman On Their Seventh Claim (Calif. Bus. & Prof. Code § 17200 *et seq.*). ........................................... 25**

    A.    Rhomberg and Newman did not commit any unlawful, unfair, or fraudulent business act or practice. ...................................... 26

    B.    No Plaintiff "lost money or property as a result of" Defendants' allegedly unfair business practices in California. ................ 28

    C.    Plaintiffs lack standing to seek injunctive relief because they cannot show that they face an imminent threat of harm from future violations of the UCL within California by Rhomberg or Newman ................................................................................ 32

CONCLUSION .......................................................................................................... 35

i

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Aghaji v. Bank of America, N.A.*, 247 Cal. App. 4th 1110 (2016)..................................................30

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018)......................................22, 28

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994)...................................20

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir, 2007)................................................32

*Baumer v. Pachl*, 8 F.3d 1341 (9th Cir. 1993) ...........................................................................12

*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2007) .........................................32

*Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022 (N.D. Cal. 2007) ....................................29

*City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835 (9th Cir. 2004) ........................22

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................................................25

*Cody F. v. Falletti*, 92 Cal. App. 4th 1232 (2001).......................................................................21

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983) ...................23

*Desnick v. ABC*, 44 F.3d 1345 (7th Cir. 1995) ...........................................................................22

*Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018)...................................................................19

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999) .................................22

*Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490 (1986) ...........................................21

*General American Life Ins. Co. v. Rana*, 769 F. Supp. 1121 (N.D. Cal. 1991) ...........................20

*Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566 (1973)....................................................................21

*Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008) ..................................................................28, 29

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) .................................................14, 18, 19

*Hollingsworth v. Perry*, 570 U.S. 693 (2013).............................................................................32

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018)..............................................................................12

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .........................................................................28

*JST Distrib., LLC v. CNV.com, Inc.*, No. CV 17-6264 PSG (MRWx), 2018 U.S.
    Dist. LEXIS 222222 (C.D. Cal. Mar. 7, 2018) ...................................................................14

*Kenne v. Stennis*, 230 Cal. App. 4th 953 (2014).........................................................................20

*Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580 (E.D. Mich. 2015) ............................................11

*Mad Sci. Grp., Inc. v. Aquawood, LLC*, No. CV 15-1022-R, 2016 U.S. Dist. LEXIS
  185255 (C.D. Cal. 2016) ............................................................................21

*Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440 (2005) ...................................33, 35

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010) ......................................32

*Meridian Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005) ...............34

*Meyer v. Holley*, 537 U.S. 280 (2003) ......................................................21

*Mireskandari v. Mayne*, CV 12-3861 JGB (MRWx), 2016 U.S. Dist. LEXIS 38944
  (C.D. Cal. Mar. 23, 2016) ........................................................................12

*Navarrete v. Meyer*, 237 Cal. App. 4th 1276 (2015) ...........................................20

*Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal. App. 4th 214 (1999) ..........................34

*Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924 (9th Cir. 1994) .........................14, 19

*Pitts Sales, Inc. v. King World Prods., Inc.*, 383 F. Supp. 2d 1354 (S.D. Fla. 2005) ...................22

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ..........................................14

*Self-Insurers' Sec. Fund v. Esis*, 204 Cal. App. 3d 1148 (1988) ..............................21

*Singh v. U.S. Bank (In re Singh), 457 B.R. 790 (E.D. Cal. 2011)* ............................20

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ........................................15

*Sprewell v. Golden State Warriors*, No. 99-15602, 2001 U.S. App. LEXIS 20434
  (9th Cir. Dec. 28, 2001) ..........................................................................20

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) ..........................................29, 34

*Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (C.D. Cal. 2016) ..........................11

*U.S. Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586 (1970) .......................21

*U.S. v. Gonzalez*, 921 F.2d 1530 (11th Cir. 1991) ............................................12

*United States v. Frega*, 179 F.3d 793 (9th Cir. 1998) .........................................12

*Williams v. Wraxall*, 33 Cal. App. 4th 120 (1995) ...........................................22

*Wittman v. Personnhuballah*, 578 U.S. _____ ,136 S. Ct. 1732 (2016)..........................32

*Younan v. Equifax Inc.*, 111 Cal. App. 3d 498 (1980)........................................20

**Statutes**

18 U.S.C. § 1028.............................................................................10, 11

18 U.S.C. § 1962.............................................................................11

Cal. Bus. & Prof. Code § 17200.............................................................25

Cal. Bus. & Prof. Code § 17204 ...................................................................................28

**Treatises**

18B *Am. Jur. 2d Corporations* § 1613 ...................................................................21

Damages, Black's Law Dictionary (10th ed. 2014) ...............................................24

# NOTICE OF MOTION

TO THE PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 17, 2019 at 2:00 p.m., before the Honorable William H. Orrick, III, at the United States District Court for the Northern District of California, Courtroom 2, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Albin Rhomberg and Troy Newman will, and hereby do, move this Court for summary judgment against all Plaintiffs on all applicable causes of action. The Motion is based upon this document, the materials and information attached hereto, all other papers and information on file in this action, including the declarations, evidence, and Motions for Summary Judgment filed by other Defendants, and whatever oral argument the Court may hear. Defendants Rhomberg and Newman request the entry of a final judgment in the favor of each, concerning all applicable claims.

# STATEMENT OF ISSUES

Are Defendants Albin Rhomberg and Troy Newman each entitled to summary judgment on the causes of actions in which they are named: RICO (Claim 1), Civil Conspiracy (Claim 3), and Cal. Bus. & Profs. Code § 17200 *et seq.* (Claim 7)? The answer is yes.

# STATEMENT OF FACTS

**A.    Allegations and Facts Related to Rhomberg and Newman**

Plaintiffs allege that Defendant Albin Rhomberg is the Chief Financial Officer of Defendant Center for Medical Progress ("CMP") "and has participated in and supported the illegal activities of Daleiden and the other co-conspirators." FAC (Dkt. 59), ¶ 33. No more specific facts are alleged as to his individual involvement with CMP or the other Defendants.

The Complaint alleges that Defendants David Daleiden and Troy Newman met in Kansas in 2012 to "discuss[] the fact that [they] already knew that Planned Parenthood was breaking the law in trafficking in human organs after their abortions, and so [they] decided and set out to go ahead and expose that and create an investigative journalism organization that would embed [themselves] into the abortion cartel and to catch them off script." *Id.*, ¶ 56. The Complaint also asserts that Newman was the board secretary of CMP and that Daleiden and Newman: discussed the techniques that Daleiden would have to use in order for the investigation to work; set up and directed the

activities of CMP and Defendant BioMax Procurement Services ("BioMax"); and recruited individuals to pose as BioMax employees. *Id.*, ¶¶ 32, 57, 58, 61, 62, 132, 150, 153. However, the evidence shows, contrary to the FAC's assertions, that Newman was not very involved during the course of CMP's undercover investigation, he did not provide specific advice to Daleiden or other individuals on how things should be done, his duties as Secretary of CMP were minimal, and he only received updates from Daleiden about the undercover investigation's progress approximately once every three months. *See, e.g.*, Daleiden Declaration in Support of Motion for Summary Judgment ("Daleiden Decl."), ¶¶ 82-83.

Notably, the Complaint *does not* allege that Newman or Rhomberg communicated with any Plaintiff on behalf of CMP or BioMax, attended any of the relevant conferences or meetings, recorded any individuals at those conferences or meetings, signed any contract with any Plaintiff, produced, transferred, or used any fake identifications, or encouraged members of the public to commit illegal acts in response to the release of CMP's videos. In the sixty Paragraphs of the Complaint (covering seventeen pages) detailing CMP's undercover investigative work, Rhomberg is not even mentioned, and the only mention of Newman was a post-investigation comment about the ease with which one can purchase recording equipment. FAC, ¶¶ 64-123.

The evidence developed during discovery shows that neither Rhomberg nor Newman had any knowledge of, much less participated in or supported, the sole RICO predicate act of allegedly producing and transferring false identification documents. Millen Decl., Ex. 124 (Rhomberg Depo.) at 175:5-12; Daleiden Decl., ¶ 85. Also, neither Rhomberg nor Newman recruited or trained the individuals who conducted CMP's undercover investigation, and they did not direct, personally oversee, or control the day-to-day activities of Daleiden or other individuals associated with CMP or BioMax. Daleiden Decl., ¶ 80.

**B. Alleged Harm to Plaintiffs**

The Complaint does not allege that any Defendant asked or encouraged the public to take any illegal actions against Plaintiffs in light of CMP's videos. Nevertheless, Plaintiffs allege that,

> [a]fter the release of Defendants' videos there was a dramatic increase in the threats, harassment, and criminal activities targeting abortion providers and their supporters and in particular Planned Parenthood health centers. Across the country, there were 849 reported

2

incidents of vandalism against Planned Parenthood in the months of July 2015 and August 2015 alone – incidents of harassment at Planned Parenthood health centers increased nine fold in July compared to reported incidents in June, and the reported incidents of harassment were even more numerous in August. . . . In California, there has been a five-fold increase in the number of security incidents since the beginning of Defendants' video smear campaign.

FAC, ¶ 142. The facts uncovered in discovery undercut every one of these assertions.

Rather than 849 acts of vandalism in July and August, ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. To illustrate the lengths to which Plaintiffs go in attributing the actions of non-parties to Defendants' publications: one of the more serious acts of vandalism occurred on █████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████



All of Plaintiffs' corporate designees were on notice to be prepared to testify on the topic of "threats received by Plaintiff's personnel that Plaintiff attributes to Defendants' statements or publications, including facts about the individuals making the threats, the time of the threats, the contents of the threats, the means of communicating the threats, and the motivation of the threats." *See* Millen Decl., ¶ 4 (see *infra* note 5).

[3]

4

Defs. Rhomberg & Newman's Mot. for Summary Judgment
– 3:16-CV-00236 (WHO)



Finally, contrary to the implication of Paragraph 142 of the FAC, ███████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████. Thus, the
claim in FAC ¶ 142 that California affiliates saw a fivefold increase in security incidents ████
████████████████████████████████████████████

_____

5

Defs. Rhomberg & Newman's Mot. for Summary Judgment
– 3:16-CV-00236 (WHO)

[REDACTED].[5]

**C.    Plaintiffs' Claimed Damages**

As this Court has noted, Plaintiffs are not entitled to reputational or publication damages (Order, Dkt. 124, at 16, 33, 36), and Plaintiffs have disclaimed any intent to seek reputational or publication damages. Order, Dkt. 442, at 14-16, 23 ("Plaintiffs do not seek reputational or publication damages."); Order, Dkt. 466, at 2. However, [REDACTED]

[REDACTED] Moreover, Plaintiffs' alleged damages are not proximately caused by the alleged "fraud" or infiltration of Plaintiffs' meetings and conferences.

[REDACTED]

---

[5] All of Plaintiffs' corporate designees were on notice to be prepared to testify on the topic of "Facts regarding the definition of security incidents, the compilation of information about security incidents, and any increase or decrease in security incidents in 2015, 2016, 2017, and 2018." Millen Decl., ¶ 4.





1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████

ARGUMENT

Rhomberg and Newman are named in three claims for relief: RICO, civil conspiracy, and Cal. Bus. & Prof. Code § 17200. Summary judgment should be granted for them on each claim.

**I.      Rhomberg and Newman Are Not Liable Under RICO (First Claim for Relief).**

**A.      Neither Rhomberg nor Newman committed any RICO predicate act.**

The only RICO predicate act remaining in this action is the alleged violation of the federal identity theft law, specifically 18 U.S.C. §§ 1028(a)(1) and (2). Dkt. 124, at 11-13 and note 12. The Complaint's sparse allegations concerning this alleged predicate act are as follows:

> Defendants presented themselves at registration as representatives of BIOMAX. DALEIDEN – who identified himself as "Robert Sarkis" – presented a fake California drivers' license to Planned Parenthood's registration personnel to gain access to this and other PPFA conferences. . . .

> This identification is phony. On information and belief, Defendants produced or caused to be produced this phony identification document and other similarly phony identification documents used by their co-conspirators, like MERRITT (posing as "Susan Tennenbaum"), to gain access to Planned Parenthood meetings and private spaces. . . .

> [O]n information and belief, Defendants . . . produced, transferred, and possessed with the intent to use, false identification documents in order to gain admission to PPFA and other reproductive health care organization meetings and Planned Parenthood affiliate offices and health centers in 2014 and 2015 in violation of 18 U.S.C. § 1028(a), and conspired to do the

_____

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

same in violation of 18 U.S.C. § 1028(f). Specifically, BIOMAX representatives – including DALEIDEN and MERRITT – presented fake photo IDs to gain access to private meetings where Plaintiffs' staff would be in attendance, and to gain access to Planned Parenthood affiliate offices and health centers for private meetings with Planned Parenthood staff. On information and belief, Defendants produced these false photo identifications…

FAC, ¶¶ 85, 86, 160.

As set forth in the Summary Judgment Motions of CMP and Merritt (and incorporated herein), Plaintiffs cannot establish that any Defendant violated 18 U.S.C. §§ 1028(a)(1) or (2). Even if a violation could hypothetically be established, however, neither Rhomberg nor Newman touched, saw, or even knew about—much less produced or transferred—the identification documents allegedly produced in violation of the federal law, and thus they cannot be liable for this predicate act. After extensive paper discovery and countless depositions, Plaintiffs have uncovered no facts suggesting that Rhomberg or Newman played any role in producing or transferring the identification documents at issue. To the contrary, the evidence shows that they were not even aware of the creation of the driver's licenses at issue, let alone that they were actually involved in making them. Millen Decl., Ex. 124 (Rhomberg Depo.) at 175:5-12; Daleiden Declaration, ¶ 126.

Evidence that a defendant was involved generally in a supposedly fraudulent enterprise is not sufficient; courts will grant a motion for summary judgment under 18 U.S.C. § 1962(c) absent a showing that the defendant personally committed RICO predicate acts. *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1169-70 (C.D. Cal. 2016) (holding that, although plaintiffs alleged that defendant was "'the architect of many facets of fraud,'" and another party "took direction" from the defendant, this was not sufficient to infer that this defendant actually committed the predicate acts); *see also Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 601 (E.D. Mich. 2015) (holding plaintiffs are required to plead commission of two predicate acts by each defendant and that "'shotgun' allegation[s] of general misconduct by a group . . . are not sufficient to state RICO claims against each [member]").

**B.  Neither Rhomberg or Newman conspired to commit any RICO predicate act.**

Plaintiffs' allegations similarly fail with regard to § 1962(d). Courts use a two-part test to determine conspiracy liability under § 1962(d): "Plaintiffs must allege either (1) 'an agreement that

is a substantive violation of RICO,' or (2) 'that the defendants agreed to commit, or participated in, a violation of two predicate offenses.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.,* 295 F. Supp. 3d 927, 984 (N.D. Cal. 2018) (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (citing 18 U.S.C. § 1962(d)); *see also Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (citation omitted) ("[A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise."). As noted previously, Rhomberg and Newman were not involved in the creation or transfer of the identification documents, the only RICO predicate acts in this case; therefore, the Court cannot find liability under the second part of this test.

With regard to the first part, an alleged co-conspirator may only be convicted, or found civilly liable, for a RICO conspiracy "on the basis of his own proven conduct; association is not enough. RICO does not punish 'mere association with conspirators or knowledge of illegal activity; its proscriptions are directed against conduct, not status.'" *U.S. v. Gonzalez*, 921 F.2d 1530, 1542-43 (11th Cir. 1991) (citation omitted). The Ninth Circuit has gone so far as to say that, where an enterprise does not have an illicit *objective*, there can be no RICO conspiracy liability. *United States v. Frega*, 179 F.3d 793, 821 (9th Cir. 1998) ("[T]o establish a RICO conspiracy there must be an objective which is a substantive violation of RICO, and proof of agreement by the defendants to accomplish that objective."); *cf. Salinas v. United States*, 522 U.S. 52, 63-65 (1997) (holding that, although "[a] 'conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense . . .[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense. . . .'").

The Central District of California recently discussed RICO conspiracy liability in the exact context of the unaware participant in a scheme alleged to have involved substantive RICO violations. *See Mireskandari v. Mayne*, CV 12-3861 JGB (MRWx), 2016 U.S. Dist. LEXIS 38944 (C.D. Cal. Mar. 23, 2016). In *Mireskandari*, the plaintiffs alleged that defendant Rahnema was involved in a RICO conspiracy to have the lead plaintiff disbarred in England. They alleged three predicate acts: defendant was encouraged by other defendants ("conspirators") to not pay a

12

judgment he owed to plaintiff, he sent a threatening email regarding the disbarment proceedings, and he threatened plaintiffs' attorney in the instant case. The court held that these did not constitute two acts of racketeering, thus the claim failed under the second part of the test. *Id*. at *34-40.

Additionally, the court held that to be found liable under the first part of the test, "[a] plaintiff must allege that one participant in the enterprise committed at least two acts of racketeering and that the defendant in question 'knew about and agreed to facilitate the scheme.' The defendant must be aware of 'the essential nature and scope of the enterprise and intend[] to participate in it.'" *Id*. at *41 (internal citations omitted). The court held that the plaintiff sufficiently alleged "that [defendant] was aware of and agreed to the overall goal of the enterprise – to disbar [plaintiff]," but this alone was "insufficient to establish that he was aware of 'the essential nature and scope of the enterprise,' to the extent that enterprise involved unlawful acts of racketeering." *Id*. at *42. The court continued, "a RICO conspiracy claim must allege an agreement to facilitate a scheme of *racketeering*, not just an agreement to further the overall goal of an enterprise, particularly where, as here, the goal of that enterprise is attainable without committing unlawful acts of racketeering." *Id*. In other words, the defendant's mere knowledge that others in the enterprise would work to achieve the lawful goal of disbarment of the plaintiff, and his agreement to participate in that lawful object of the enterprise, was insufficient to establish liability for RICO conspiracy. *Id*. at *43-44.

Similarly, Plaintiffs cannot meet their burden to prove that Rhomberg and Newman knew about, and agreed to facilitate, a scheme that included two or more acts of racketeering (*i.e.*, that they knew about, and agreed to facilitate, multiple violations of the federal identity theft statute). Here, while Rhomberg and Newman may have been aware of and agreed to the overall goal of CMP and the Human Capital Project—investigating and reporting about illegal and unethical activities within the fetal tissue procurement and abortion industries—they did not agree to, and in fact were unaware of, any predicate acts of racketeering. Thus, they cannot be held liable under 18 U.S.C. § 1962(d).

**C. The commission of the alleged RICO predicate acts did not directly lead to Plaintiffs' alleged injuries; thus, there can be no recovery under RICO.**

Even if RICO predicate acts actually occurred, and even if Rhomberg and Newman could be liable for RICO conspiracy despite their complete ignorance of the RICO predicate acts, Plaintiffs' complained-of harms do not flow *directly* from the unlawful production and transfer of false identification documents, the only RICO predicate act alleged against Defendants. As such, Plaintiffs cannot show proximately caused damages, as required under RICO, and their RICO claim must fail.

"[T]he compensable injury flowing from a [RICO] violation . . . 'necessarily is the harm caused by *[the] predicate acts*.' . . . Thus, the [plaintiff] must show that [the defendant's alleged RICO predicate act] led *directly* to its injuries." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 13 (2010) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006)) (emphasis added); *see also Anza*, 547 U.S. at 460-61; *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 929 (9th Cir. 1994) ("[T]he failure to adequately demonstrate that [a concrete financial] loss resulted *directly* from the wrongful conduct of the defendants means its loss is too remote to be actionable under RICO."). It is unsurprising that the Supreme Court has consistently recognized that a *direct, one-step* connection between the alleged predicate act and the alleged damages *is required*, because "'[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" *JST Distrib., LLC v. CNV.com, Inc.*, No. CV 17-6264 PSG (MRWx), 2018 U.S. Dist. LEXIS 222222, at *19 (C.D. Cal. Mar. 7, 2018) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)).

Thus, even assuming arguendo that Rhomberg and Newman conspired to (twice) violate § 1028, Plaintiffs still need to prove that *these predicate acts* directly and proximately caused them to suffer a concrete financial loss. ███████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████



**None** of these "costs" are actually "damages" directly caused by the illegal production or transfer of false identification documents. Rather,

It is indisputable that *the allegedly unlawful*

---

[13] In addition to the lack of proximate causation, Plaintiff PPGC's claim for recovery of costs associated with responding to governmental investigations would be barred by the *Noerr-Pennington* doctrine. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) ("Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.").

*production or transfer of false identification documents* did not directly ████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

The complete lack of direct, proximate causation for RICO purposes is further illustrated by the fact that ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ By Plaintiffs' own admission, none of their alleged damages were *directly* caused by the alleged violations of § 1028 (production and transfer of false identification documents); to the contrary, even under Plaintiffs' own theory of the case, *all* of their alleged damages were caused by a lengthy series of *subsequent* acts, including (among other things) various surreptitious recordings occurring on many different dates and their subsequent editing and release, accompanied by press releases and other statements in the media. Clearly, the damages alleged by Plaintiffs are not one step removed from the purported RICO predicate acts; Plaintiffs themselves have identified multiple steps in between the alleged RICO predicate acts and the asserted damages.

In ruling on Defendants' Rule 12(b)(6) motion three years ago, this Court "thoughtfully reviewed the cases cited by both sides" on the issue of proximate causation and concluded that Plaintiffs "may not be able to recover for damages that were not *directly* caused by the actions of defendants, but caused instead by the intervening actions of *third parties*. . . ." Order (Dkt. 124), at 16 (original emphasis). The Court went on to note that some of Plaintiffs' alleged damages, specifically "the increase in security costs at conferences, meetings, and clinics that plaintiff incurred when *they learned* about defendants' infiltration of their conferences, meetings, and clinics," were more directly tied to Defendants' conduct and might be recoverable. *Id.* (original emphasis).

Seven plaintiffs (PPNC, PPMM, PPPSW, PPLA, PPOSBC, PPCCC, and PPPSGV) make no claim that Defendants infiltrated any of their clinics or conferences. The damages claimed by these Plaintiffs arise entirely from their own, and third parties', reactions to the CMP videos. This Court has already found, however, that "plaintiffs may not be able to recover for damages that were not directly caused by the actions of defendants, but caused instead by intervening actions of third

16

parties who were motivated by the videos and press release[s] by the Human Capital Project." Order (Dkt. 124), at 16.

A review of the discovery responses by these seven Plaintiffs confirms that all of their claimed damages have nothing to do with the "fraudulently gained entrance" allegations. As an example, PPNC claims as damages various security and IT enhancements, staff safety training, and "staff time" related to the release of the videos. Millen Decl., Ex. 101 (Damages Chart), at 23-26. PPMM claims similar expenses along with graffiti removal and security guard expenses. *Id.* at 28-46. The claimed expenses of the other affiliates are similar, *e.g.*, PPPSW (*Id.* at 48-61), PPLA (*Id.* at 63-70), PPOSBC (*Id.* at 72-73), PPCCC (*Id.* at 75-77), and PPPSGV (*Id.* at 79-83). None of these alleged damages are related to infiltration of clinics or conferences, but rather all come at the end of a long chain of alleged causal links, in which publication of the CMP videos and related press statements are other links. Some of these affiliates also ask for damages related to website hacking, but this Court has already indicated that the website hack by unknown third parties is too attenuated for a RICO damages claim. Order (Dkt. 124) at 16.[14]

One affiliate, PPRM, has stated it is only seeking injunctive relief in this action and has made no claim for damages. Millen Decl., Ex. 101 (Damages Chart), at 10, note 2. Obviously, Rhomberg and Newman cannot be liable under RICO with regard to a party who does not claim to have suffered damage.

Plaintiff PPGC/PPCFC states that, on April 9, 2015, "PPGC staff permitted Defendants into the private facility to discuss a possible professional relationship." FAC, ¶ 116. However, the only damages PPGC is claiming are security equipment, security staff, legal fees related to government investigations, and staff time related to the release of videos. Millen Decl., Ex. 101 (Damages Chart) at 068. None of these claimed expenses would have prevented Daleiden and Merritt from

---

[14] Moreover, ████████████████████████████████████████████████████████ ██████████████████████████████, making these damages even farther removed from the RICO predicate acts of unlawfully producing and transferring false identification documents.

entering the facility, nor will they prevent a future similar infiltration. Hiring additional security personnel would not have stopped PPGC staffers from ushering Daleiden and Merritt into the facility. Similarly, installing physical security enhancements would not have prevented them from entering and touring the facility as invited guests. Simply put, none of PPGC's expenditures are even rationally related to foiling the methods, largely based on personal interactions, that Daleiden and Merritt used to gain access to PPGC's facility, much less were such expenditures "directly caused" by their presence in PPGC's facility.

The final Plaintiff, PPFA, also cannot show a direct causal nexus between the production and transfer of identification documents and any damages. The alleged RICO predicate act does not even appear in the alleged causation chain asserted by Plaintiffs, summarized by this Court as "(1) defendants *used* the fake identifications and communications to access the meetings and record plaintiffs' staff, and (2) plaintiffs were harmed by the breach of their security protocols." Order (Dkt. 124) at 14 (emphasis added).

Even assuming direct, proximate causation between producing a fake ID and Daleiden's admission to the PPFA conferences, PPFA's later security measures, as explained in the following section, are well beyond the "first step" relationship required to find proximately caused damages under RICO.[15] As the Supreme Court reiterated in *Hemi Group*, "'[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step,'" and that "'general tendency' applies with full force to proximate cause inquiries under RICO." *Hemi Group,* 559 U.S. at 10 (quoting *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 271-72 (1992)).

In short, Plaintiffs cannot show any direct, proximately caused damages to support their RICO claim. As Plaintiffs have conceded, the expenses that they seek as damages did not arise until the completion of a long chain of events, including the public's reaction to CMP's videos and

---

[15] Because the mere *use* of fake IDs is not a RICO predicate act, even accepting *arguendo* Plaintiffs' theory of causation, the use itself would be the "first step" after the RICO predicate act, and any monetary damages incurred by Plaintiffs would be many steps beyond that first step.

1  Plaintiffs' own decisions in response to that reaction. No damages were proximately caused by

2  Defendants' alleged production or transfer of fake IDs. Summary judgment should be granted

3  against all Plaintiffs as to the First Claim (RICO).

4    **D.    Foreseeability and alleged intent are irrelevant to the proximate cause analysis.**

5        Recognizing that no Plaintiff incurred any concrete, direct financial harm from the alleged

6  predicate acts, Plaintiffs have claimed that foreseeability and a defendant's subjective intent to

7  harm Plaintiffs are enough to establish proximate causation for RICO purposes. This argument has

8  been repeatedly rejected by the Supreme Court. In *Hemi Group*, the Court stated:

9        The dissent would have RICO's proximate cause requirement turn on foreseeability, rather
         than on the existence of a sufficiently "direct relationship" between the [RICO predicate]
10       and the harm. It would find that the City has satisfied that requirement because "the harm is
         foreseeable; it is a consequence that Hemi intended, indeed desired; and it falls well within
11       the set of risks that Congress sought to prevent." . . . If this line of reasoning sounds
         familiar, it should. It is precisely the argument lodged against the majority opinion in *Anza*.
12       There, the dissent criticized the majority's view for "permit[ting] a defendant to evade
         liability for harms that are not only foreseeable, but the *intended* consequences of the
13       defendant's unlawful behavior." . . . But the dissent there did not carry the day. . . .

14       Our precedents make clear that in the RICO context, the focus is on the directness of the
15       relationship between the conduct and the harm. Indeed, *Anza* and *Holmes* never even
         mention the concept of foreseeability.
16

17  *Hemi Group*, 559 U.S. at 12; *Pillsbury*, 31 F.3d at 929-30 (declining to "go beyond the first step"

18  in RICO proximate causation cases and rejecting reasonable foreseeability and specific intent to

19  cause harm as substitutes for "the question of whether the injury is specifically direct"); *see also*

20  *Fields v. Twitter, Inc.*, 881 F.3d 739, 745-49 (9th Cir. 2018) (analyzing the RICO statute as

21  interpreted in *Hemi Group* and *Anza* and finding that "it is a direct relationship, rather than

22  foreseeability, that is required. . . . Congress chose to use the phrase 'by reason of' to require a

23  proximate cause showing, and the Court has consistently rejected arguments that this language

24  requires only foreseeability.").

25      Indeed, the Ninth Circuit has rejected not just foreseeability but a specific intent to cause

26  harm as a basis for extending proximate cause liability beyond the first step. *Pillsbury*, 31 F.3d at

27  929 ("[N]othing in *Holmes* suggests that allegations of specific intent to cause RICO harm override

28  the necessity to evaluate the directness of injury. . . .").

In sum, the alleged predicate acts did not directly and proximately cause any Plaintiff a financial loss, let alone *all* of the expenses that *all* Plaintiffs are seeking as damages. Plaintiffs' allegations of foreseeability and intent cannot cure that fatal defect in their RICO claim. Summary judgment should be granted in favor of Rhomberg and Newman on Count 1.

## II. Plaintiffs Cannot Prevail Against Rhomberg and Newman On Their Third (Civil Conspiracy) or Eighth (Fraudulent Misrepresentation) Claims.

As the Court has previously noted in this case, "conspiracy 'is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.'" Order, Dkt. 124, at 18 (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994)).[16] Conspiracy liability may only arise against a defendant to the extent that he or she actually *owes a duty* to each person(s) alleging a conspiracy; "[t]he conspiracy is to have a co-conspirator do the act that breaches everyone's respective duties." *Singh*, 457 B.R. at 805 (citing *Applied Equip. Corp.*, 7 Cal. 4th at 512-14). As such, conspiracy is not a basis for extending contract-based liability to individuals who were not parties to a contract; "a person who is not a party to a contract cannot be bootstrapped into a conspiracy tort" that arises from contractual promises or duties. *Id.*[17]

---

[16] *See also Sprewell v. Golden State Warriors*, No. 99-15602, 2001 U.S. App. LEXIS 20434, at *23 (9th Cir. Dec. 28, 2001) ("[T]o sustain a claim of civil conspiracy, Sprewell must prove that the NBA and the Warriors have committed an underlying tort."); *Singh v. U.S. Bank (In re Singh)*, 457 B.R. 790, 804 (E.D. Cal. 2011) ("To establish a civil conspiracy in California one must show that Defendants jointly engaged in a tort."); *Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 1292 (2015) ("[F]or conspiracy liability, the conspiring defendants must have actual knowledge that a tort is planned and concur in the scheme with knowledge of its unlawful purpose. . . ."); *Kenne v. Stennis*, 230 Cal. App. 4th 953, 968-69 (2014) ("[A] bare conspiracy, without the commission of some underlying tort by a coconspirator is not actionable.").

[17] *See also Gen. Am. Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1125 (N.D. Cal. 1991) ("[W]hether defendant bases his conspiracy cause of action solely on the alleged breach of contract or on some other tort (*i.e.* misrepresentation) . . . . [is an important distinction] because it will determine whether the insurance agents may be held liable."); *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 508-11 (1980) (conspiracy liability may reach those who join in the commission of most torts, but

Although the Complaint asserts civil conspiracy as a distinct claim for relief, in reality, this "claim" boils down to an argument that Rhomberg and Newman should be held liable as joint tortfeasors on Plaintiffs' Eighth Claim for fraudulent misrepresentation, brought by Plaintiffs PPFA, PPRM, and PPGC/CFC only. The U.S. Supreme Court has observed that, "in the absence of special circumstances it is *the corporation, not its owner or officer*, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents. . . . A corporate employee typically acts on behalf of *the corporation, not its owner or officer*." *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (emphasis added).

> One seeking to impose liability for fraud upon an agent, officer, or employee of a corporation as an individual . . . must both allege and prove facts sufficient to impose liability upon him or her as an individual defendant. This is particularly true when, for example, two or more agents are involved and the facts relating to liability are different between them with the result that one or more agents might not be individually liable for the fraud depending upon such facts.

18B *Am. Jur. 2d Corporations* § 1613.

Plaintiffs would need to satisfy a two-part test in order to extend liability for fraudulent misrepresentation to Rhomberg and Newman:

> To maintain a tort claim against a director in his or her personal capacity, a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct. . . . The plaintiff must also allege and prove that an ordinarily prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances.

*Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 508-09 (1986).[18]

---

it does not extend to contract-based claims such as the tort of breach of the implied contractual duty of good faith and fair dealing); *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973) (non-parties to a contract may not be held liable on a conspiracy theory for alleged breach of contractual duties).

[18] *See also Mad Sci. Grp., Inc. v. Aquawood, LLC*, No. CV 15-1022-R, 2016 U.S. Dist. LEXIS 185255, at *2 (C.D. Cal. 2016); *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 594-95 (1970); *Cody F. v. Falletti*, 92 Cal. App. 4th 1232, 1245 (2001); *Self-Insurers' Sec. Fund v. Esis*, 204 Cal. App. 3d 1148, 1161-62 (1988).

21

Defs. Rhomberg & Newman's Mot. for Summary Judgment
– 3:16-CV-00236 (WHO)

Although Plaintiffs cannot meet either part of this test with respect to Rhomberg or Newman, their fraudulent misrepresentation claim against the other Defendants also fails on the merits. This claim asserts that PPFA, PPGC/PPCFC, and PPRM voluntarily granted certain Defendants (not Rhomberg or Newman) access to various conferences, clinics, and meetings—which enabled CMP to conduct an undercover investigation of Plaintiffs' activities—but PPFA, PPGC/PPCFC, and PPRM would not have agreed to provide such access but for alleged misrepresentations made by those Defendants. FAC, ¶¶ 205, 208. Just last year, however, the Ninth Circuit held that misrepresentations made by undercover journalists to gain access to property "quite simply do not inflict any material or legal harm on the deceived party," and the fact that a plaintiff alleges that it has received public backlash from third parties does not make the pre-publication misrepresentations made to the plaintiff actionable "fraud." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1193-99, 1205, note 9 (9th Cir. 2018).[19]

Moreover, this Court must grant summary judgment in favor of Rhomberg and Newman because PPFA, PPGC/PPCFC, and PPRM have not alleged any recoverable damages. Damages resulting from the alleged fraud are an essential element of a cause of action for fraud. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004). "An action for fraud or deceit also demands proof of damages caused by misrepresentations or concealment of information. 'Fraudulent representations which work no damage cannot give rise to an action at law.'" *Williams v. Wraxall*, 33 Cal. App. 4th 120, 131-32 (1995) (citation omitted).

"Under California law, '[a] complete causal relationship between the fraud or deceit and the plaintiff's damages is required." *City Solutions, Inc.*, 365 F.3d at 840 (quoting *Small v. Fritz Cos.*, 30 Cal. 4th 167, 202 (2003)). Money spent by an organization to "counter the influence" of

---

[19] *See also Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999) (no fraud liability for misrepresentations made by journalists to obtain employment in order to secretly videotape practices for later publication); *Pitts Sales, Inc. v. King World Prods., Inc.*, 383 F. Supp. 2d 1354, 1362-64 (S.D. Fla. 2005) (same); *Desnick v. ABC*, 44 F.3d 1345, 1355 (7th Cir. 1995) ("The only scheme here was a scheme to expose publicly any bad practices that the investigative team discovered, and that is not a fraudulent scheme.").

defendants' allegedly fraudulent speech is purely "voluntary in character and not the result of any legally cognizable injury to the organization." *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 220 (1983) (dismissing fraud claim as to organizational plaintiffs in case alleging defendants' fraudulently promoting sugary cereals as good for children where organizational plaintiffs "spent funds to counter the influence of defendants' advertising"). Where all injuries to the organization were merely against individuals within that organization, the individual has the cause of action, not the organization. *Id.* at 220 (defendants alleged "other organizations such as the American G.I. Forum of California have many members who have sustained injury. [This does not] justif[y] a damage claim by the organization itself. . . . If some of the members have suffered injury, they can seek redress in an individual or class action.").

As with Plaintiffs' RICO claim, this Court noted in its Order concerning the motions to dismiss that many of Plaintiffs' claimed damages were caused indirectly, "by the *publication* of the videos and related Human Capital Project press which resulted – through the acts of third-parties – in increased security threats, harassment and acts of violence." Order (Dkt. 124), at 33-34. The Court agreed that such damages must be distinguished from those that could potentially be recoverable, *i.e.*, "damages that were *directly* caused by the breaches of plaintiffs' security measures themselves." *Id.* (original emphasis). The Court further noted that "plaintiffs may have implemented security measures simply upon discovering defendants' breaches before the full extent of the publications was known and the backlash from them occurred." *Id.* at 34.

As set forth in the Statement of Facts and discussed in the preceding section, all security measures undertaken at Plaintiff-Affiliate clinics were in response to *publication of the videos*. There were no "damages" for security costs incurred by PPGC or PPRM on account of the Defendants' mere entry into the clinics, nor were there expenditures made because of Plaintiffs' knowledge of such entry.[20]

---

[20] As noted previously, PPRM is not seeking any damages. During this litigation, PPFA has voluntarily given "grants" to various of its affiliates (such as PPRM) to help pay for voluntary security upgrades. Millen Decl., Ex. 101 (Damages Chart) at 18. PPFA's discretionary decision to

23

Defs. Rhomberg & Newman's Mot. for Summary Judgment
– 3:16-CV-00236 (WHO)

Similarly, while Plaintiff PPFA spent money on ███████████ numerous aspects of its conference security in response to learning of certain Defendants' infiltration (not Rhomberg and Newman), none of these expenditures or resulting measures were in any sense remedial vis-à-vis the infiltration itself. In other words, none of the expenditures fixed anything purportedly broken, compromised, or made more vulnerable by those Defendants. PPFA did not, and did not have to, change locks on doors, distribute new passcodes on computer terminals, or take any other steps to remediate any harm actually caused (or even theoretically threatened) by those Defendants' presence at the conferences.

Damages are, as the name suggests, "[m]oney claimed by, or ordered to be paid to, a person as compensation *for loss or injury*." Damages, Black's Law Dictionary (10th ed. 2014) (emphasis added). "Damages" do not include the cost of voluntary improvements that a plaintiff decides to undertake to better its condition, including protecting against hypothetical future harms by clever investigators who might use their own unique techniques to gain access.

PPFA hired ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████ cannot be charged to Defendants as damages. It is well-settled that a plaintiff "cannot manufacture standing [*i.e.*, injury-in-fact] by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402

_____

provide security grants is not a proximately caused damage attributable to any Defendant's escorted entry into a PPGC or PPRM facility or attendance at a PPFA conference. *Id.*, Ex. 103 (PPFA Amended Response to Rhomberg Interrogatory), No. 19, at 5-7; *id.*, Ex. 104 (PPFA Second Amended Response to Rhomberg Interrogatory), No. 20, at 5-6. ██████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████

(2013); *id.* at 416 ("Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing – because the harm respondents seek to avoid is not certainly impending. . . . If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear.").

In short, the costs of PPFA's voluntarily-undertaken efforts to prevent a future, hypothetical infiltration are not "damages" caused by any Defendant's allegedly "fraudulent" misrepresentations. Because Plaintiffs PPFA, PPRM, and PPGC/PPCFC are not seeking any damages caused by Defendants' alleged fraud, summary judgment must be granted as to the fraud claim. Similarly, because Plaintiffs' fraud claim fails, Rhomberg and Newman are entitled to summary judgment on the civil conspiracy claim. *See, e.g., Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 390 (2017) ("Under California law, '[t]here is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom.'").

**III.  Plaintiffs Cannot Prevail Against Rhomberg and Newman On Their Seventh Claim (Calif. Bus. & Prof. Code § 17200 *et seq.*).**

Rhomberg and Newman are entitled to summary judgment on Plaintiffs' Seventh Claim, brought under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, for three reasons. First, Plaintiffs cannot prove that Rhomberg or Newman engaged in any "unlawful, unfair, or fraudulent business act or practice." *Id.* Second, no plaintiff "lost money or property" as a result of Defendants' alleged wrongful business practices in California. *Id.* Third, Plaintiffs lack standing to seek injunctive relief, the only remedy sought, because they cannot show that they face a "real or immediate threat" of being wronged in a similar way in California by Rhomberg or Newman.

**A. Rhomberg and Newman did not commit any unlawful, unfair, or fraudulent business act or practice.**

Plaintiffs rely on their First, Second, Ninth, Tenth, Eleventh, and Twelfth claims for relief as the basis for alleging that they were harmed by unlawful business acts or practices (FAC, ¶ 198), but the latter five of these six counts were not brought against Rhomberg or Newman. The only allegation that Rhomberg and Newman engaged in an unlawful business act or practice comes from the RICO claim (Count 1), which is without merit as explained previously. As such, Plaintiffs cannot prove that Rhomberg and Newman engaged in any unlawful business act or practice.

Plaintiffs' claim that Defendants engaged in "unfair" business acts or practices under the UCL is essentially a reputational-damage claim in disguise, and it is premised upon the allegedly false nature of CMP's publications and statements about Plaintiffs. Given that Plaintiffs have subsequently disclaimed any intent to pursue reputational or publication damages, however (*supra*, at page 6) this claim has been effectively abandoned by Plaintiffs.

Plaintiffs have asserted that Defendants' allegedly "unfair" business practices involved the publication of defamatory videos and statements intended to harm Plaintiffs by disseminating lies about Plaintiffs to the public:

> Defendants deceptively posed as representatives from a tissue procurement company to gain admission to Plaintiffs' conferences and facilities with the goal of surreptitiously recording Plaintiffs' staff members. Using the improperly obtained information, *Defendants created a smear campaign composed of heavily edited videos that misrepresented Plaintiffs' activities and exposed law-abiding medical staff to harassment and death threats.*

Pls.' Opp. Br., Dkt. 91, at 25 (emphasis added). According to Plaintiffs, Defendants intended to deceive the public, and to ultimately put Plaintiffs out of business, by "demoniz[ing] Planned Parenthood" and "discrediting life-saving, legal fetal tissue donation" through a "defamatory" campaign of videos and statements, especially the "outrageous accusation" and "lurid story" that Planned Parenthood illegally profited from the sale of aborted fetal body parts, thereby triggering third parties who were upset by such accusations to take action against Plaintiffs. FAC, ¶¶ 1, 113, 125, 199; Joint Letter, Dkt. 258, at 3.

In its Order concerning the motions to dismiss, the Court held that an "unfairness" claim may arise under the UCL where a defendant publishes defamatory statements about the plaintiff in order to encourage the public, including the plaintiff's potential clients or business partners, to not do business with the plaintiff:

> [P]laintiffs have alleged sufficient facts to state an unfairness claim; defendants' practices were aimed at *reducing the availability of plaintiffs' services* and injured plaintiffs' as potential customers of fetal tissue procurement companies as well as plaintiffs' ultimate customers. . . . The FAC alleges that *defendants' goal was to put plaintiffs . . . out of business*. FAC ¶¶ 1, 2. That goal threatens the type of harm the antitrust and federal consumer protection laws aim to prevent.

Order, Dkt. 124, at 30 (Sept. 30, 2016) (emphasis added).

The question of whether Plaintiffs could have established a UCL cause of action based upon allegedly defamatory public statements made about them, which purportedly triggered third parties to take actions against Plaintiffs, has been rendered moot in light of Plaintiffs' subsequent positions in this litigation. In various discovery disputes, Defendants argued their entitlement to the requested discovery based on (among other things) the fact that many of Plaintiffs' claims, and Plaintiffs' alleged entitlement to repayment for various expenditures, rests upon the truth or falsity of CMP's allegedly defamatory statements about Plaintiffs. In response, *Plaintiffs stated that they are not seeking any reputational or publication damages*, and the Court repeatedly relied upon that declaration as a basis for denying Defendants the requested discovery. *See, e.g.,* Order, Dkt. 442, at 14-16, 23 ("Plaintiffs do not seek reputational or publication damages."); Order, Dkt. 466, at 2.

In light of Plaintiffs' statement that they are not seeking reputational or publication damages, their UCL "unfairness" claim collapses, as the purported "unfairness" consisted of the allegedly defamatory nature of the public statements made about Plaintiffs. Plaintiffs' theory of liability requires one to *assume* that the public statements made about Plaintiffs were, in fact, false and defamatory; notifying the public and potential clients or business partners about an entity's *actual* illegal and unethical practices is, in neither law nor common sense, an "unfair" act. Clearly, Plaintiffs cannot disclaim any intent to seek reputational or publication damages, and then proceed to argue that they were subject to an unfairly defamatory publication campaign.

Plaintiffs' assertion that Rhomberg and Newman engaged in fraudulent business acts is similar to their fraudulent misrepresentation claim, and should be rejected for the same (previously discussed) reasons. The kind of misstatements routinely made by undercover journalists in order to conceal their investigatory activities are neither "fraud" nor "business practices."[21] *See, e.g., Wasden*, 878 F.3d at 1193-99, 1205, note 9.

**B.     No Plaintiff "lost money or property as a result of" Defendants' allegedly unfair business practices in California.**

Even if there was a hypothetical showing that Rhomberg and Newman engaged in an "unlawful, unfair, or fraudulent business act or practice," *each Plaintiff* would be required to prove that it has "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. No Plaintiff can make this showing.

In discussing the UCL's injury-in-fact and causation requirements, one decision explained: "[t]o lose is 'to suffer deprivation of.' . . . A loss is '[a]n undesirable outcome of a risk; the disappearance or diminution of value, [usually] in an unexpected or relatively unpredictable way.'" *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 853 (2008) (citations omitted). As discussed in the previous section, the so-called "damages" alleged by Plaintiffs are voluntary expenditures. All of the amounts that the affiliate Plaintiffs seek as damages are expenditures made in response to the publication of the CMP videos, not any of the conduct identified as "unfair," "unlawful" or "fraudulent." "[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). Far from proving that the complained-of conduct was an "immediate cause" of the alleged harms, Plaintiffs freely admit that their alleged damages result from decisions they made to increase security, ███████████████████

---

[21] While Plaintiffs' Seventh claim faults Defendants for their bad "business practices," Plaintiffs' Eighth Claim, for fraud, is premised on alleged misrepresentations about BioMax, which Plaintiffs assert was a "fictitious company." FAC, ¶ 205. Plaintiffs cannot have it both ways. If BioMax was a "fictitious company," who or what was engaging in "business practices," unfair or otherwise?

██████████████████████████ in the wake of the first CMP video release. Plaintiffs cannot point to any harm "immediately caused" by the alleged unlawful, fraudulent, or unfair conduct of any Defendant, occurring months or years before any video was published.

Putting it another way, one does not "lose" or "suffer deprivation of" money by making a voluntary decision to spend it (apart from claims against unscrupulous vendors which are not at issue here). No Plaintiff "lost" money or property by virtue of CMP's undercover investigative work, let alone by any impermissible business practice under the UCL. Rather, Plaintiffs apparently received the full value of various goods or services that they decided to purchase from third parties long after Defendants' complained-of conduct had ended. *See Hall*, 158 Cal. App. 4th at 856-57 ("Hall did not allege he suffered an injury in fact. . . . He expended money by paying Time $29.51—but he received a book in exchange. He did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it."). Similarly, a plaintiff cannot merely point to the alleged expenditure of time or money to meet the UCL's standing requirements; the plaintiff must establish that the defendant's anti-competitive conduct *caused a loss* of money or property. *See, e.g., Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1061-62 (N.D. Cal. 2007) (dismissing UCL claim for lack of standing; neither plaintiffs' expenditure of time and money to prepare an application that was ultimately denied by defendants, nor plaintiffs' alleged entitlement to statutory damages, were "the type of loss of money or property that is necessary for standing under § 17200").

Additionally, in this case, many Plaintiffs cannot even allege any injury from their California contacts with Defendants, let alone prove that a violation of the UCL caused them to lose money or property. The California Supreme Court has held that "the presumption against extraterritoriality applies to the UCL in full force," and has concluded that a "proposed application of the UCL [that] would cause it to operate, impermissibly, with respect to occurrences outside the state" would potentially implicate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207-09, note 9 (2011) (holding that the UCL did not apply to claims that a California employer violated federal law with respect to work performed outside of California, even though the relevant decision-making

occurred at the employer's headquarters in California); *see also Aghaji v. Bank of America, N.A.*, 247 Cal. App. 4th 1110, 1119 (2016).

An examination of the facts surrounding each Plaintiff's interactions with Defendants reveals that only ███████████████████ had any interaction in California with BioMax that could even arguably rise to the level of engaging in business practices with the affiliate.[22]

BioMax had no direct contact with **PPLA**. ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████ Daleiden Decl., ¶ 120 (no contact with PPLA employees).

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████ ███████████████

████████████████████ See Videos #90-#97 (Declaration of Jeffrey Trissell in Support of Daleiden Motion for Summary Judgment ("Trissell Decl."), Exs. 33 and 35); Daleiden Decl., ¶ 7.

---

[22] As noted in the preceding sections, any alleged harm to ██████████████████.

[23] ████████████████████████████████████



See Video #98 (Trissell Decl., Exs. 33 and 35).

See Video #1 (Trissell Decl., Exs. 33 and 35); Daleiden Decl., ¶ 120.

Daleiden Decl. ¶120.

**PPFA** itself does not provide abortion services or any medical services. Thus, even if the business-consumer relationship was an accurate description of the relationship between abortion providers and tissue procurement companies, which it is not,[24] PPFA could not have been a "consumer" of BioMax's services, and thus PPFA cannot meet the "unfair" prong of the UCL. As

---

[24] Although early in the case this Court noted that "plaintiffs posit that they were potential 'consumers'" of BioMax's services, and held that Plaintiffs had adequately alleged that Defendants' actions "injured plaintiffs as potential customers of fetal tissue procurement companies," Dkt. 124, at 30, discovery has shown Plaintiffs' characterization to be incorrect. Plaintiffs were neither potential "consumers" of BioMax's services nor actual "customers" of other fetal tissue procurement companies because, in each case, Plaintiffs would be or were paid for supplying the tissue. To refer to Plaintiffs as "consumers" or "customers" of tissue procurement companies would be like referring to fisherman as "consumers" of the services of canneries.

31

Defs. Rhomberg & Newman's Mot. for Summary Judgment
– 3:16-CV-00236 (WHO)

to the "unlawful" prong, as set forth in the relevant sections of Defendants Daleiden and Lopez's Motions for Summary Judgment (incorporated herein), no recording of PPFA personnel, and particularly those in California, was unlawful.

### C. Plaintiffs lack standing to seek injunctive relief because they cannot show that they face an imminent threat of harm from future violations of the UCL within California by Rhomberg or Newman.

Since no Plaintiff is seeking restitution, each Plaintiff must prove its entitlement to injunctive relief in order to establish a UCL cause of action. No Plaintiff can meet this requirement.

A UCL plaintiff must meet the standard for federal Article III standing for any type of relief it seeks, including the requirement that "an 'actual controversy' persist through all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013); *Wittman v. Personnhuballah*, 136 S. Ct. 1732, 1736 (2016); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (2007) (overruled in part on other grounds by *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011)). To establish standing to obtain an injunction under the UCL, each Plaintiff must demonstrate that it "faces *imminent* injury" and will likely "again be wronged in a similar way" (through violations of the UCL) by Rhomberg and Newman, rather than having mere "speculation or 'subjective apprehension' about future harm." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (emphasis added) (citations omitted); *see also id.* ("Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects."); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (past harms are not sufficient to make out a case for a "real and immediate threat of repeated injury").

Here, there is no evidence that Rhomberg or Newman pose any imminent threat of immediate harm to Plaintiffs through a violation of the UCL that would justify injunctive relief. It is undisputed that Rhomberg and Newman did not make any representations (false or otherwise) to any Plaintiff, attend any of the conferences or meetings at issue, or record any of Plaintiff's staff, and this explains why they are mentioned in only three causes of action. Furthermore, in response to interrogatories propounded by PPFA concerning Defendants' plans, CMP and BioMax responded (over two years ago): "Defendants have no definitive plans at this time to attend or enter

any of Plaintiffs' or the National Abortion Federation's future conferences, meetings, or facilities." Millen Decl., Ex. 105 (CMP/BioMax Responses to PPFA's Interrogatories), Nos. 20-22, at 15-16.

Even if Plaintiffs could (hypothetically) demonstrate that CMP, BioMax, or someone associated with them violated the UCL *back in 2013, 2014, or 2015*, Plaintiffs cannot meet their burden to prove that they *currently* have standing to obtain injunctive relief against *Rhomberg and Newman*, individuals with whom Plaintiffs did not interact at all. *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 462-67 (2005) (no viable claim for injunctive relief where there was no threat that defendants would likely harm plaintiff through future UCL violations). This lawsuit was filed six months after the first CMP video release on July 14, 2015, FAC, ¶ 128, and nine months after the last surreptitious recording of Planned Parenthood staff took place. *Id.*, ¶¶ 118-122. *At that time*, there was no "real or immediate threat" that Plaintiffs would be "wronged again in a similar way," *i.e.*, by infiltrations of conferences or clinics, or by surreptitious recording. Indeed, if Plaintiffs had felt such an "imminent" threat existed, they would have sought immediate injunctive relief. Plaintiffs did not move for a TRO or a preliminary injunction, however, but instead sought only permanent injunctive relief against Defendants entering Planned Parenthood conferences or offices "without fully disclosing their true identity" and with an intent to record, and also prohibiting Defendants from recording any private meeting with Planned Parenthood staff without the informed consent of all parties being recorded. FAC at p. 65, lines 16-24.

There is no evidence of any imminent, immediate threat that Rhomberg or Newman will violate the UCL in a manner that injures any Plaintiff (let alone, all of them). There is no evidence that Rhomberg or Newman will secretly record any of Plaintiffs' staff or attempt to enter Plaintiffs' facilities under an assumed name. Plaintiffs place heavy reliance upon Newman's statement back in 2015 that CMP had "moles and spies" within the abortion industry, and that CMP would release further evidence of abortionists' illegal acts. *Id.*, ¶¶ 132, 202. This now four-year-old statement, made about five months before Newman's time as a CMP board member ended (Daleiden Decl., ¶ 84) merely previewed the fact that CMP would release additional videos in the coming months based upon already-completed investigative work, which it did. FAC, ¶¶ 133-141. All of the subsequent videos were based on undercover recordings made prior to the first release. *Id.*, ¶¶ 81,

DEFS. RHOMBERG & NEWMAN'S MOT. FOR SUMMARY JUDGMENT
– 3:16-CV-00236 (WHO)

1  97, 98, 105, 109, 111. Plaintiffs did not seek injunctive relief, and are not requesting an injunction

2  against the release of additional videos or publications. As such, this statement provides no support

3  for the assertion that there is an imminent threat that Rhomberg and Newman will violate the UCL

4  in a manner that harms Plaintiffs.

5       Additionally, Plaintiffs ignore the fact that much of the alleged conduct in this case—as

6  well as the hypothetical conduct that Plaintiffs fear may happen in the future—falls entirely outside

7  the bounds of the UCL. As noted previously, the UCL does not apply extraterritorially. *Sullivan*, 51

8  Cal. 4th at 1207-09; *Meridian Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225

9  (E.D. Cal. 2005) (alleged misconduct occurring in Illinois is "clearly outside the purview of the

10  UCL"); *Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 222-28, n.17 (1999)

11  (holding that the UCL did not apply to a California-incorporated business's conduct concerning

12  non-California residents occurring in other states).

13       Many of the events alleged in the Complaint occurred in Texas, Colorado, or other places

14  outside of California and could not support a UCL claim. *See, e.g.,* FAC, ¶¶ 6, 9, 11, 40, 56, 81-90,

15  94, 98-103, 105-23. Moreover, Plaintiffs' fears of hypothetical future conduct—besides being too

16  speculative to support injunctive relief—would not even state a putative violation of the UCL by

17  Rhomberg or Newman. Plaintiffs have not alleged that Rhomberg has any track record (in this case

18  or otherwise) of using assumed names or making illegal recordings, or poses an imminent threat of

19  harm to Plaintiffs through a future UCL violation. *See, e.g., id.,* ¶ 33.

20       Moreover, Plaintiffs place heavy reliance upon the alleged past activities of Newman, who

21  is a resident of Kansas, and a Kansas-based non-party (Operation Rescue), *occurring within*

22  *Kansas*, FAC, ¶¶ 52-54, which clearly could not support a UCL claim.[25] Several other parties

23  (PPRM, PPGC/PPCFC, and PPFA) are also not California residents, *id.*, ¶¶ 19, 27, 28, nor is there

24  

_____

25  [25] Besides falling outside the scope of the UCL, any past recordings occurring in Kansas with the

26  consent of one party involved would not have been "unlawful" for UCL purposes under Kansas

     law. *See* Kan. Stat. § 21-6101.

27  

28

a claim that they engage in a majority of their activities within California. Neither the California Plaintiffs nor the out-of-state Plaintiffs can establish that Rhomberg and Newman pose an imminent threat of harming them in California through violations of the UCL. *See Madrid*, 130 Cal. App. 4th at 466-67 (quotes from newspaper articles and other documents in which the defendants promoted the type of conduct at issue, including in states other than California, "did not show a continuing threat at the time the complaint was filed" and did not "suggest[] that the wrongful conduct alleged in the complaint is ongoing or likely to recur").

In sum, Plaintiffs' theoretical fear that, at some unspecified time, in some unspecified way, Rhomberg and Newman might interact with each Plaintiff within California using an assumed name, or might record each Plaintiff's staff in California without their consent, is far too conjectural and speculative to support injunctive relief against Rhomberg and Newman. The words "imminent" and "immediate" clearly cannot refer to an alleged threat of conduct that has not happened for the past four years, and which Plaintiffs claim to have taken numerous steps to prevent happening.

There is no basis for an injunction against Rhomberg and Newman under the UCL and, therefore, Rhomberg and Newman are entitled to summary judgment on Plaintiffs' Seventh Claim.

# CONCLUSION

Defendant Albin Rhomberg has shown that there are no triable issues of fact, and, as a matter of law, Rhomberg is entitled to judgment in his favor on all claims as brought by each and every Plaintiff against him in this action. Defendant Troy Newman has shown that there are no triable issues of fact, and, as a matter of law, Newman is entitled to judgment in his favor on all claims as brought by each and every Plaintiff against him in this action.

Respectfully submitted on May 22, 2019.


*/s/ Michael Millen*
Michael Millen (#151731)
LAW OFFICE OF MICHAEL MILLEN
119 Calle Marguerita, Ste. 100
Los Gatos, CA 95032
Tel: (408) 871-2777
MikeMillen@aol.com

Catherine W. Short (#117442)
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, CA 93024-1313
Tel: (707) 337-6880
LLDFOjai@earthlink.net

*Attorneys for Defendant Albin Rhomberg*

/s/ *Edward L. White III*
Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
John A. Monaghan, *pro hac vice*
Christy Stierhoff, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007
ewhite@aclj.org
ezimmerman@aclj.org
jmonaghan@aclj.org
cstierhoff@aclj.org

Vladimir F. Kozina (#95422)
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833
VKozina@mayallaw.com

*Attorneys for Defendant Troy Newman*