Nicolai Cocis, CA Bar # 204703
Law Office of Nicolai Cocis
38975 Sky Canyon Drive, Suite 211
Murrieta, CA 92563
Tel: (951) 695-1400
Fax: (951) 698-5192
Email: nic@cocislaw.com

Horatio G. Mihet*
Liberty Counsel
P.O. Box 540774
Orlando, Florida 32854
Tel: (407) 875-1776
Fax: (407) 875-0770
hmihet@lc.org
*Admitted Pro Hac Vice
Attorneys for Defendant Sandra Susan Merritt

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>    Defendants. | Case No. 16-cv-00236-WHO<br><br>Hon. William H. Orrick, III<br><br>**Defendant Sandra Susan Merritt's Motion for Summary Judgment**<br><br>Hearing Date: July 17, 2019<br>Time: 2:00 p.m.<br>Location: Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

NOTICE OF MOTION AND MOTION .......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

    INTRODUCTION ...................................................................................................................1

    FACTS RELATED TO MERRITT ........................................................................................3

    LEGAL ARGUMENT ............................................................................................................6

    I.     Summary Judgment Standard: Merritt Is Not Required to Negate the Essential
           Elements of Plaintiffs' Claims, As to Which Plaintiffs Bear the Burden of, But Lack,
           Proof .......................................................................................................................................6

    II.    Plaintiffs Lack Sufficient Evidence to Prove Any of the Essential Elements of
           Counts 1, 2, 3, 7, 13 and 14 ................................................................................................8

    III.   Plaintiffs Lack Sufficient Evidence to Prove Any of the Essential Elements of Their
           Breach of Contract Claims (Counts 4, 5 And 15) ................................................................8

         A.  Plaintiffs Have No Evidence that Merritt Was a Party to Any of the Allegedly
            Breached Contracts, or that She Breached Any of Them ...................................................9

            1.  Plaintiffs Have No Evidence that Merritt Was a Party to Any of the Allegedly
               Breached PPFA Contracts (Count 4), or that She Breached Any of Them ................9

            2.  Plaintiffs Have No Evidence that Merritt Was a Party to Any of the Allegedly
               Breached NAF Contracts (Count 5), or that They Suffered Any Damages
               from Any Breach ......................................................................................................10

            3.  Plaintiffs Have No Evidence that Merritt Was a Party to the Allegedly
               Breached PPGC/PPCFC Contract (Count 15), or that She Breached It ...................12

         B.  Plaintiffs Have No Evidence that Merritt Is the Alter Ego of BioMax ............................12

         C.  The Court Should Also Grant Summary Judgment on Plaintiffs' Contract Claims
            for the Reasons Demonstrated by the Other Defendants ...................................................15

    IV.   Plaintiffs Lack Sufficient Evidence to Prove Any of the Essential Elements of Their
           Trespass Claim (Count 6) ...................................................................................................15

    V.    Plaintiffs Lack Sufficient Evidence to Prove Any of the Essential Elements of Their
           Fraudulent Misrepresentation Claim (Count 8) ..................................................................17

    VI.   Plaintiffs Lack Sufficient Evidence to Prove Any of the Essential Elements of
           Their California Illegal Recording Claim (Count 9), California Trespassing Claim (Count
           10), and Maryland Illegal Recording Claim (Count 12) ....................................................18

VII.    Plaintiffs Lack Sufficient Evidence to Prove Any of the Essential Elements of
        Their Florida Illegal Recording Claim (Count 11) .................................................22

CONCLUSION.............................................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**CASES**   **PAGE**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................7, 12

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503 (1994) ............................9

*Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751-GPC-DHB, 2016 WL 3543699
  (S.D. Cal. June 29, 2016)................................................................................21, 22

*Boston Prop. Exchange Transfer Co. v. Iantosca*, 720 F.3d 1 (1st Cir. 2013) ............................16

*Brahmana v. Lembo*, No. C 09-0106 PSG, 2011 WL 1674993 (N.D. Cal. May 4, 2011) ........................7

*Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)............................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................6, 7

*City of Mineral Wells v. McDonald*, 170 S.W.2d 466 (Tex. 1943) ........................................17

*Cloutier v. Prudential Ins. Co. of Am.*, 964 F. Supp. 299 (N.D. Cal. 1997)........................................7

*Everett v. United States*, No. 90-55429, 949 F.2d 399 (9th Cir. Dec. 5, 1991) ........................6, 7

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ........................................................21

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956 (M.D.N.C. 1997)....................................3

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505 (4th Cir. 1999)........................................3

*Gruenberg v. Aetna Ins. Co*, 9 Cal. 3d 566 (1973) ........................................................9

*Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454 (2014)....................................21

*Hutchins v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721 (N.D. Cal. 1996) ........................6

*In re Singh*, 457 B.R. 790 (Bankr. E.D. Cal. 2011) ........................................................9

*Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217 (1st Cir. 2013)........................................1, 6

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) ........................................21

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ........................................................7

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002)........................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................7

*Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 30 F. Supp. 2d 1182 (D. Ariz. 1998) ........................3

*Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 306 F.3d 806 (9th Cir. 2002) ........................3, 16

*Mesler v. Bragg Management Co.*, 39 Cal. 3d 290 (1985) ................................................................14

*Nava v. City of Santa Clara*, No. C 08-3066 PSG, 2011 WL 1044389 (N.D. Cal. Mar. 22, 2011) ...........7

*Norman v. Clark Cty. Dep't of Juvenile Justice Servs.*, 244 F. Supp. 3d 1085 (D. Nev. 2017) .................8

*Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith*, 913
    F.3d 551 (5th Cir. 2019) ................................................................................................2

*Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith*, 914
    F.3d 994 (5th Cir. 2019)) ................................................................................................2

*Robbins v. Blecher*, 52 Cal. App. 4th 886 (1997) ................................................................................15

*Southwest Airlines Co. v. Farechase, Inc*, 318 F. Supp. 2d 435 (N.D. Tex. 2004) ..................................17

*Strom v. City of Crescent City*, No. C 08-04708 SI, 2010 WL 2231799 (N.D. Cal. June 1, 2010) ...........7

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ................................8

*Teamsters Local Union No. 117 v. Washington Dep't of Corr.*, 789 F.3d 979 (9th Cir. 2015) ..............7, 8

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096 (2013) ................................14, 15

*Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305 (2009) ................................................................13

*TrueBeginnings, LLC v. Spark Net. Serv., Inc.*, 631 F. Supp. 2d 849 (N.D. Tex. 2009) .........................17


**STATUTES**

California Penal Code § 632 ................................................................................................21

California Penal Code § 632(a) ................................................................................................21

California Penal Code § 632(c) ................................................................................................21


**COURT RULES**

Fed. R. Civ. P. 56 ................................................................................................................6

Fed. R. Civ. P. 56 (2010 Amd., Advisory Comm. Note to Section (c)) ........................................7

**NOTICE OF MOTION AND MOTION**

**TO THE PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on July 17, 2019, at 2:00 p.m., in Courtroom 2 of the Honorable William H. Orrick at the United States District Court for the Northern District of California, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Sandra Susan Merritt ("Merritt") will, and hereby does, move this Court to grant summary judgment in her favor and against each and every Plaintiff on each and every claim asserted against her in Plaintiffs' First Amended Complaint, on the ground that there is no genuine dispute as to any material fact and Merritt is entitled to judgment as a matter of law. The motion is based upon this document, the materials and information incorporated herein or attached hereto, all other papers and information on file in this action, and the oral argument to be heard by the Court. Merritt respectfully requests the entry of a final judgment in her favor on all claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

"The summary judgment stage is the put up or shut up moment in litigation." *Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217, 226 (1st Cir. 2013) (internal quotations and citation omitted). For three and a half years, Plaintiffs have maintained this lawsuit against Merritt, seeking to punish her for the undercover investigative work she did to expose Plaintiffs' gross, gruesome, unethical and illegal conduct in fetal tissue procurement, including their profiting from the sale of human organs and their alteration of abortion procedures to maximize the amount and value of human organs collected and sold. The undercover investigation and attendant public release of videos exposing Plaintiffs' conduct garnered massive media coverage (Declaration of David Daleiden ("Daleiden Decl.") in Support of Various Motions for Summary Judgment, ¶¶ 73, 76, 80-96) and resulted in countless news reports (*id*.), extensive governmental investigations (*id*. at ¶¶ 58-79), numerous referrals for criminal prosecution of various entities engaged in human organ trafficking and profiteering (*id*. at ¶¶ 68-74), multi-million dollar settlements of criminal charges with the shuttering of businesses caught red handed (*id*. at ¶¶ 75-79), modification of government

policies regarding public funding of abortion organizations, *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc v. Smith*, 913 F.3d 551 (5th Cir. 2019), *reh'g en banc granted Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Smith*, 914 F.3d 994 (5th Cir. 2019) (affirming government decision to withhold public funds from Planned Parenthood affiliate on the basis of wrongful conduct exposed by CMP videos), and even the modification of Planned Parenthood's fetal tissue procurement policies, which Planned Parenthood expressly attributes to the undercover investigation. (Schifrin Dep. 20:15–21:6, attached as Exhibit 47 to Declaration of Jeffrey Trissell ("Trissell Decl.") in Support of Various Defendants' Motions for Summary Judgment.).

Plaintiffs realized early on that they could never prove in court their oft-repeated mantra outside of court that the undercover videos were "heavily" or "deceptively" edited, were not true and were tantamount to a "smear." *See e.g.*, *Smith*, 913 F.3d at 568 ("[B]ased on the videos, [Planned Parenthood entities] at a minimum violated federal standards regarding fetal tissue research and standards of medical ethics by allowing doctors to alter abortion procedures to retrieve tissue for research purposes or allowing the researchers themselves to perform the procedures."); *see also id.* at 559 n.6 (rejecting PPGC's allegation that CMP videos were "deceptively edited" because "the record reflects … a report from a forensic firm concluding that the video was authentic and not deceptively edited. And the plaintiffs did not identify any particular omission or addition in the video footage.").

Accordingly, Plaintiffs never sued anyone for defamation—not Merritt, not any of the co-defendants, and not any of the countless media outlets that have republished the videos and reported on CMP's findings. In this lawsuit, Plaintiffs have strained their kitchen-sink pleadings to avoid defamation claims like the plague, and they have doggedly and successfully resisted discovery at every turn into the truth of the facts revealed in and published through the videos. Thus, Plaintiffs have forfeited the right and ability to claim legally what they cannot prove factually—that the videos are but a "smear" and not true or accurate—as this Court has plainly warned them. (*See* Order Affirming Magistrate Judge Order, dkt. 533, p. 5 (cautioning Plaintiffs that, by

"circumscrib[ing] discovery into … defendants' defenses … Plaintiffs bear the risk" of evidentiary preclusions).) Therefore, for purposes of this litigation, including this motion for summary judgment, the videos recorded by Merritt and others and published by the Center for Medical Progress are presumed true, as they are. *See, e.g.*, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956, 959 (M.D.N.C. 1997), *aff'd*, 194 F.3d 505 (4th Cir. 1999) (content of publication is "assumed" true where plaintiff seeks various tort damages from the publication but "d[oes] not challenge the content of the broadcast by bringing a libel suit"); *id*. at 962 ("[T]he broadcast must be assumed to be true"); *Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 30 F. Supp. 2d 1182, 1199 n.18 (D. Ariz. 1998), *aff'd*, 306 F.3d 806 (9th Cir. 2002) (noting that *Food Lion* court "assumed the truth of the broadcast because the plaintiffs failed to bring a defamation or libel claim.")

Plaintiffs' inability to dispute the truth of the video reports is only the starting point of Plaintiffs' evidentiary failures. As explained herein and in the motions for summary judgment filed by the other Defendants, Plaintiffs also cannot prove any of the essential elements of the numerous claims they have brought, and as to which they have but cannot meet the burden of proof. Because Plaintiffs cannot "put up" the evidence to back up their fanciful claims, summary judgment marks the end of the road for Plaintiffs' retaliatory lawsuit. Merritt's motion for summary judgment should be granted.

## FACTS RELATED TO MERRITT

For the general factual background of this controversy, as well as for her substantive arguments herein, Merritt adopts as her own and incorporates as if fully set herein the motions for summary judgment and supporting declarations and materials separately filed by: (1) Defendant Center for Medical Progress ("CMP"); (2) Defendant BioMax Procurement Services, LLC ("BioMax"); (3) Defendant David Daleiden ("Daleiden"); (4) Defendant Adrian Lopez ("Lopez"); and (5) Defendants Albin Rhomberg ("Rhomberg") and Troy Newman ("Newman") (collectively "the Co-Defendants' Summary Judgment Motions").

The undisputed facts relevant to the specific and separate arguments made by Merritt herein are as follows:

Merritt was hired by Daleiden as an independent contractor for CMP, to aid in its undercover investigation of unethical and illegal fetal tissue practices in the abortion industry. (Merritt Decl. ¶ 2; Daleiden Decl. ¶ 127). Daleiden gave Merritt the limited and discrete task of playing the role of "Susan Tennenbaum," BioMax's CEO, at a handful of in-person meetings and conferences she attended. (*Id*.). Daleiden retained complete and exclusive control of the character and conduct of "Susan Tennenbaum," her email account, her email and other written communications, and her position as the CEO of BioMax. (Merritt Decl. ¶ 5; Daleiden Decl. ¶¶ 129-30). Merritt did not have access to the email accounts of BioMax or "Susan Tennenbaum," and did not author, send or receive emails for BioMax or "Susan Tennenbaum." (Merritt Decl. ¶ 6; Daleiden Decl. ¶ 130). Merritt also did not have access to any letterhead or stationary of BioMax or "Susan Tennenbaum," and did not author, send or receive written communications for BioMax or "Susan Tennenbaum." (Merritt Decl. ¶ 7).

**Merritt had no involvement or participation in the formation of BioMax**. (Merritt Decl. ¶ 8; Daleiden Decl. ¶¶ 1, 129). She did not own or have any ownership interest in BioMax. (Merritt Decl. ¶ 8; Daleiden Decl. ¶ 129). **She did not have or exercise control over the activities of BioMax**. (*Id*.) She contributed no funds or assets to the activities of BioMax. (*Id*.) She had no access to the funds or assets of BioMax and did not comingle any of her personal funds or assets with those of BioMax. (*Id*.)

Merritt's work as an independent contractor for CMP was governed by separate Independent Contractor Agreements. (Merritt Decl. ¶ 3 and Exh. A). Merritt's Independent Contractor Agreements with CMP expressly provided that "as an independent contractor" (Merritt Decl. ¶ 4(i) and Exh. A ¶ 1), she was **not** an "agent[], employee[] or joint venturer[]" of CMP or its agents or employees, and she had no "authority to bind [CMP or its agents or employees] to any obligation by contract or otherwise" (Merritt Decl. ¶ 4(ii) and Exh. A ¶ 2). CMP would pay her a daily rate for undercover work in the field, and CMP would retain control over her work and "sole discretion" to determine its completeness and adequacy. (Merritt Decl. ¶ 4(iii) and Exh. A ¶ 4(a)). Moreover, CMP would have and retain all rights to any of Merritt's work product, and complete

discretion as to its use, and she would have no rights or interest in that work product. (Merritt Decl. ¶ 4(iv) and Exh. A ¶¶ 5-6).

Consistent with this framework, the undisputed evidence demonstrates that, because she had no authority to bind BioMax to any contract, Merritt did not sign any agreements for or on behalf of BioMax, either as "Susan Tennenbaum" or otherwise. (Merritt Decl. ¶ 9; Daleiden Decl. ¶ 131). "Susan Tennebaum's" signature on behalf of BioMax on the PPFA Exhibitor Agreements, the NAF Exhibitor Agreements and the PPGC/PPCFC Non-Disclosure Agreement was not made by Merritt. (*Id.*) Indeed, Merritt was not even aware of the existence or contents of these agreements during her work for CMP. (*Id.*)

Merritt did not sign the NAF Confidentiality Agreement for the 2015 NAF Annual Meeting in Baltimore, and she has no recollection of signing the NAF Confidentiality Agreement for the 2014 NAF Annual Meeting in San Francisco. (Merritt Decl. ¶¶ 10-11). Merritt did not attend any PPFA conference, including, without limitation, the PPFA North American Forum on Family Planning held in Miami in 2014, the PPFA MeDC Conference held in Orlando in 2015, or the PPFA National Conference held in Washington in 2015, nor did she assist others in attending or participating at any PPFA conferences. (*Id.* at ¶ 13). Merritt also did not attend any meeting or conference for CMP's investigation in Florida, made no recordings for CMP's investigation in Florida, and did not assist any CMP personnel with any participation in Florida conferences or with any recording in Florida. (*Id.* at ¶ 14).

Merritt was not involved and did not participate in the editing or publication of any CMP videos. (*Id.* at ¶ 15). She was not involved and did not participate in the drafting, editing or publication of any CMP press release. (*Id.* at ¶ 16).

**LEGAL ARGUMENT**

**I.    SUMMARY JUDGMENT STANDARD: MERRITT IS NOT REQUIRED TO NEGATE THE ESSENTIAL ELEMENTS OF PLAINTIFFS' CLAIMS, AS TO WHICH PLAINTIFFS BEAR THE BURDEN OF, BUT LACK, PROOF.**

"Faced with a defendant's motion for summary judgment, a plaintiff must come forward with some evidence showing a genuine dispute of material fact if he wants to get in front of a jury. A plaintiff's failure to produce any evidentiary proof concerning one of the essential elements of his claim is grounds for summary judgment." *Jakobiec*, 711 F.3d at 226 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "[T]he plain language of Rule 56[] mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Critically, because Plaintiffs here bear the burden of proof at trial as to each essential element of each of the claims they assert, Merritt does **not** bear the burden of negating elements of Plaintiffs' claims. *Celotex*, 477 U.S. at 331. As the Ninth Circuit has explained,

> If a nonmovant bears the burden of proof on an issue, summary judgment is appropriate when he fails to make a showing sufficient to establish an essential element of his case. **The movant need not negate the essential element**. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

*Everett v. United States*, No. 90-55429, 949 F.2d 399, *1 (9th Cir. Dec. 5, 1991) (emphasis added) (citing *Celotex*, 477 U.S. at 322-23).

Both this District and this Court have repeatedly reiterated this principle:

> If the nonmoving party has the burden of proof at trial, as in the present case, then the moving party has no burden to negate the opponent's claim. In other words, **the moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact**. Instead, the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.

*Hutchins v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721, 723 (N.D. Cal. 1996) (emphasis added) (internal quotations and alterations omitted) (quoting *Celotex*, 477 U.S. at 323, 325); *see*

*also*, *Cloutier v. Prudential Ins. Co. of Am.*, 964 F. Supp. 299, 305 (N.D. Cal. 1997) (Orrick, J.) (defendant "can meet its initial burden as a Rule 56 movant **without presenting evidence that negates plaintiff's claim**" (emphasis added) (citing *Celotex,* 477 U.S. at 323)); *Nava v. City of Santa Clara*, No. C 08-3066 PSG, 2011 WL 1044389, *3 (N.D. Cal. Mar. 22, 2011) ("The moving party in not required to negate the elements of the non-moving party's case on which the non-moving party bears the burden of proof"); *Brahmana v. Lembo*, No. C 09-0106 PSG, 2011 WL 1674993, *3 (N.D. Cal. May 4, 2011) (same); Fed. R. Civ. P. 56 (2010 Amd., Advisory Comm. Note to Section (c) ("a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.")).

Because Merritt herein raises "an absence of evidence to support [Plaintiffs'] case," *Celotex*, 477 U.S. at 325, the burden shifts to the Plaintiffs, who "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The factual issue must be both "material" (affects the outcome of the litigation) and "genuine" (a reasonable jury could return a favorable verdict for Plaintiffs). *Id.* at 248. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [Plaintiffs]." *Id.* at 252. Thus, Plaintiffs here "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Strom v. City of Crescent City*, No. C 08-04708 SI, 2010 WL 2231799, *2 (N.D. Cal. June 1, 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

Although the Court "view[s] the evidence in a light most favorable to the nonmoving party," *Everett*, 949 F.2d 399 at *1, "[t]o survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (citing *Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)). Additionally, as the Ninth Circuit Court of Appeals explained in *Teamsters Local Union No. 117*

*v. Washington Dep't of Corr.*, 789 F.3d 979, 994 (9th Cir. 2015), the non-moving party "'may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim.'" *Id.* (quoting *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). As that court summed, "[a]rgument without evidence is hollow rhetoric that cannot defeat summary judgment." *Id. See also Norman v. Clark Cty. Dep't of Juvenile Justice Servs.*, 244 F. Supp. 3d 1085, 1093 (D. Nev. 2017) (neither speculation, rumor, nor innuendo sufficed as evidence sufficient to raise "a reasonable inference" that would defeat summary judgment motion).

## II. PLAINTIFFS LACK SUFFICIENT EVIDENCE TO PROVE ANY OF THE ESSENTIAL ELEMENTS OF COUNTS 1, 2, 3, 7, 13 AND 14.

Plaintiffs have insufficient or no evidence to prove any of the essential elements of Counts 1 (RICO), 2 (Federal Wiretapping), 3 (Civil Conspiracy), 7 (Unfair Business Practices), 13 (Common Law Invasion of Privacy) and 14 (California Constitution Invasion of Privacy) of their First Amended Complaint. Accordingly, summary judgment should be entered in favor of Merritt and against Plaintiffs on each of those claims.

Without limiting in any way Plaintiffs' burden to point to sufficient record evidence that would establish each and every element of each of their foregoing claims **against Merritt**, and as separate and independent grounds for summary judgment on these same claims, Merritt hereby adopts as her own and incorporates as if fully set herein each and every one of the arguments for summary judgment on these claims advanced separately in the Co-Defendants' Summary Judgment Motions. The Court should grant summary judgment in favor of Merritt and against Plaintiffs on each of these claims, for the same reasons.

## III. PLAINTIFFS LACK SUFFICIENT EVIDENCE TO PROVE ANY OF THE ESSENTIAL ELEMENTS OF THEIR BREACH OF CONTRACT CLAIMS (COUNTS 4, 5 AND 15).

Plaintiffs have insufficient or no evidence to prove any of the essential elements of their breach of contract claims in Counts 4, 5 and 15 of their First Amended Complaint. Accordingly,

summary judgment should be entered in favor of Merritt and against Plaintiffs on each of those claims.

### A. Plaintiffs Have No Evidence that Merritt Was a Party to Any of the Allegedly Breached Contracts, or that She Breached Any of Them.

Without limiting in any way Plaintiffs' burden to point to sufficient record evidence that would establish each and every element of each of their foregoing claims **against Merritt**, the Court should also grant summary judgment on these claims because Merritt is indisputably not a party to any of the allegedly breached contracts and because Plaintiffs have no evidence of any breach by Merritt in any event.

It is beyond peradventure that a defendant cannot be liable on a written contract unless that defendant is a signatory to that contract. *Gruenberg v. Aetna Ins. Co*, 9 Cal. 3d 566, 576 (1973) (non-parties to a contract cannot be liable for alleged breach under contract theories or otherwise). Contract liability cannot be imposed against non-parties to the contract on the basis of conspiracy or other torts, because "a person who is not a party to a contract cannot be bootstrapped into a conspiracy tort." *In re Singh*, 457 B.R. 790, 805 (Bankr. E.D. Cal. 2011) (citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 584 (1994)).

### 1. Plaintiffs Have No Evidence that Merritt Was a Party to Any of the Allegedly Breached PPFA Contracts (Count 4), or that She Breached Any of Them.

Plaintiff PPFA cannot prevail on its breach of contract claims in Count 4 because it is undisputed that Merritt never signed any of the three allegedly breached PPFA contracts and was never a party to them. (Merritt Decl. ¶ 9; Daleiden Decl. ¶ 131). Indeed, the three purported contracts are attached to Plaintiffs' First Amended Complaint (dkts. 59-2, 59-4, 59-6), and they plainly reveal that Merritt is not a signatory. It is not surprising, therefore, that Plaintiffs never even asked Merritt about these purported contracts at her deposition, and never adduced any evidence in discovery that Merritt was a party to these contracts.

Moreover, even if Merritt had been a party to any of the PPFA Agreements, which she was not, it is now undisputed that Merritt did not attend any of the three PPFA conferences which were the subject of the purportedly breached contracts, to wit (a) the PPFA North American Forum on Family Planning in Miami, FL in October 2014, (b) the PPFA Medical Directors' Council Conference in Orlando, Florida in February-March 2015, or (c) the PPFA National Conference in Washington, DC in March 2015. (Merritt Decl. ¶ 13). Since she was indisputably not present at those conferences, Merritt did not do and could not have done any of the alleged things at those conferences which Plaintiffs claim to have breached those agreements. (*Id.*). She made no representations to anyone, forged no relationships, made no recordings, and broke no laws. (*Id.*; *compare with* FAC ¶ 179). She also did not assist others to participate in any PPFA conferences. (*Id.*) With neither a duty nor a breach, PPFA's breach of contract claim is factually and legally defunct. Summary judgment is warranted on Count 4.

**2.** **Plaintiffs Have No Evidence that Merritt Was a Party to Any of the Allegedly Breached NAF Contracts (Count 5), or that They Suffered Any Damages From Any Breach.**

For the same reasons, Plaintiffs PPFA, PPNC, PPPSW, PPMM, PPOSB, PPGC, and PPCFC cannot prevail on their breach of contract claims in Count 5. Indisputably, Merritt did not sign and was not a party to either the 2014 or the 2015 NAF Exhibitor Agreements that were allegedly breached. (Merritt Decl. ¶ 9; Daleiden Decl. ¶ 131). The uncontroverted evidence is that Merritt was only an independent contractor who did not have authority to bind BioMax or CMP to any contract. (Merritt Decl. ¶¶ 2-5, 9; Daleiden Decl. ¶¶ 127, 129). Even though Merritt played the role of "Susan Tennenbaum" at a few in-person meetings and conferences, she did so under Daleiden's direction, and Daleiden retained complete and exclusive control of the character and conduct of "Susan Tennenbaum," her email account, her email and other written communications, and her position as the CEO of BioMax. (Merritt Decl. ¶ 5; Daleiden Decl. ¶ 127, 129-30). Merritt did not sign any agreements for or on behalf of BioMax, either as "Susan Tennenbaum" or otherwise. (Merritt Decl. ¶ 9; Daleiden Decl. ¶131;). Any contracts purportedly signed by a "Susan

Tennenbaum" on behalf of BioMax, such as the 2014 and 2015 NAF Exhibitor Agreements, were signed by someone other than Merritt. (*Id.*). These agreements were not shared with Merritt before they were signed by BioMax, or at any point before Merritt attended any of the NAF conferences. (*Id.*). In fact, **Merritt was not even aware of the existence or contents of these agreements during her work for CMP**. (*Id.*). Under these factual circumstances, which Plaintiffs have no evidence to dispute, Plaintiffs cannot meet their burden of proving that Merritt was a party signatory to the allegedly breached NAF Exhibitor Agreements. This evidentiary failure on an essential element of Plaintiffs' claim entitles Merritt to summary judgment.

The same is true for the NAF Confidentiality Agreement for the 2015 NAF Annual Meeting in Baltimore. Plaintiffs have never produced any such agreement signed even by "Susan Tennenbaum," let alone Merritt. Not surprisingly, Plaintiffs never asked Merritt anything about this purported agreement at her deposition. The evidence therefore is undisputed that Merritt did not sign this agreement and was not a party to it. (Merritt Decl. ¶ 10; Daleiden Decl. ¶ 103).

Finally, Plaintiffs likewise lack sufficient evidence that Merritt ever signed the NAF Confidentiality Agreement for the 2014 NAF Annual Meeting in San Francisco. Merritt has no recollection of signing this agreement, and is not sure whether or not she signed it. (Merritt Decl. ¶ 11).

Even if Plaintiffs had sufficient evidence to prove that Merritt signed the 2014 NAF Confidentiality Agreement or any other NAF agreement, Plaintiffs' contract claim still fails because Plaintiffs cannot prove any damages. It is undisputed that any recording made by Merritt at the NAF conferences was never released by CMP to the public as part of the Human Capital Project. (Merritt Decl. ¶ 12; Daleiden Decl. ¶ 109). As such, Plaintiffs can show no damages flowing from any breach by Merritt even if they could establish that she had any duties under the NAF agreements, which they cannot.

With neither a duty nor damages, Plaintiffs' breach of contract claim for the NAF agreements is factually and legally defunct. Summary judgment is warranted on Count 5.

**3.** **Plaintiffs Have No Evidence that Merritt Was a Party to the Allegedly Breached PPGC/PPCFC Contract (Count 15), or that She Breached It.**

For the same reasons explained above, Plaintiffs PPGC/PPCFC also have no evidence that Merritt signed or was a party to the PPGC/PPCFC Non-Disclosure and Confidentiality Agreement, as alleged in Count 15. Merritt did not sign this agreement. (Merritt Decl. ¶ 9). This is consistent with the undisputed evidence that Merritt was only an independent contractor, that she had no authority to bind BioMax to any contract, that she didn't sign any agreements for or on behalf of BioMax (as "Susan Tennenbaum" or otherwise), and that any contracts purportedly signed by a "Susan Tennenbaum" on behalf of BioMax were signed by someone other than Merritt. (Merritt Decl. ¶ 9; Daleiden Decl. ¶ 131). Plaintiffs thus cannot adduce evidence to prove an essential element of their claim—that Merritt was a party to, and incurred contractual duties under, the PPGC/PPCFC contract. Summary Judgment is warranted.

Even if PPGC and PPCFC could establish contractual duties on behalf of Merritt, which they cannot, their breach of contract claim still fails as a matter of law because they have no evidence of any breach **by Merritt**. Plaintiffs claim that Merritt breached the PPGC/PPCFC agreement when she "published secretly recorded tapes of conversations with PPGC and PPCFC staff." (FAC ¶ 251). But Plaintiffs have no evidence to dispute the fact that Merritt herself was not involved, did not participate, and played no part, in the editing **or publication** of any of the CMP videos. (Merritt Decl. ¶ 15; Daleiden Decl. ¶ 134). Plaintiffs cannot rest on the unadorned allegations of their Complaint, particularly when they have been refuted in discovery. *Anderson*, 477 U.S. at 256.

Because Plaintiffs cannot adduce evidence to prove the essential elements of duty and breach, their Count 15 has also reached the end of the line, and is ripe for summary judgment.

**B.** **Plaintiffs Have No Evidence that Merritt Is the Alter Ego of BioMax.**

As this Court will recall, Plaintiffs were able to escape dismissal at the pleading stage by concocting an "alter ego" theory under which Merritt was supposedly automatically liable for all of BioMax's contractual obligations, whether she was actually a party to any contract or not,

because "BioMax was set up as a fake company through the ***direct participation*** of Merritt." (*See* Order Denying Motion to Dismiss, dkt. 124, p. 19 n.18 (italics in original, bold emphasis added); *see also, id*. at 22, 42 n. 36). Plaintiffs also argued that Merritt was liable for BioMax' contracts because "[u]nder the alter ego doctrine, where the corporate form is used to accomplish some wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of **the persons or organizations actually controlling the corporation**." (Plaintiffs' Opp. to Merritt's Mot. to Dismiss, dkt. 92, p. 9 (emphasis added) (citing *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1341 (2009)).

This Court accepted Plaintiffs' unsupported theory at the pleading stage, but forecast that "Merritt can challenge the merit of those allegations on summary judgment." *Id*. at 22. That time is now. Plaintiffs' "alter ego" shelter was only temporary, and has crumbled for lack of any supporting facts adduced in discovery as to either of the twin pillars upon which their theory rests, namely that Merritt "directly participated" in forming BioMax, and that Merritt "actually controls" BioMax.

The undisputed evidence in the case is that Merritt had no "direct participation" in the formation of BioMax, because she had **no** participation. (Merritt Decl. ¶ 8; Daleiden Decl. ¶¶ 1, 129). Similarly, far from "actually controlling" BioMax, Merritt "did not have or exercise control over the activities of BioMax." (Merritt Decl. ¶ 8; Daleiden Decl. ¶ 129). She did not have access to the email accounts of BioMax or "Susan Tennenbaum" (Merritt Decl. ¶ 6; Daleiden Decl. ¶ 130); did not author, send or receive emails for BioMax or "Susan Tennenbaum" (*id*.); did not have access to any letterhead or stationary of BioMax or "Susan Tennenbaum" (Merritt Decl. ¶ 7); and did not author, send or receive written communications for BioMax or "Susan Tennenbaum." (*Id*.). Merritt likewise did not own or have any ownership interest in BioMax (Merritt Decl. ¶ 8; Daleiden Decl. ¶ 129); contributed no funds or assets to the activities of BioMax (*id*); had no access to the funds or assets of BioMax and did not comingle any of her personal funds or assets with those of BioMax. (*Id*.)

Instead, the undisputed evidence shows that Merritt, as an independent contractor for CMP, performed the limited and discrete tasks that were assigned to her by Daleiden, according to his direction. (Merritt Decl. ¶ 5; Daleiden Decl. ¶ 129). Merritt played the role of "Susan Tennenbaum" at a handful of in-person meetings and conferences, but Daleiden always retained complete and exclusive control of the character and conduct of "Susan Tennenbaum," and that character's email account, email, other written communications, and position as the CEO of BioMax. (*Id.*) Indeed, Merritt's Independent Contractor Agreements with CMP expressly provided that "as an independent contractor" (Merritt Decl. ¶ 4(i) and Exh. A ¶ 1), she was **not** an "agent[], employee[] or joint venturer[]" of CMP or its agents or employees, and she had no "authority to bind [CMP or its agents or employees] to any obligation by contract or otherwise" (Merritt Decl. ¶ 4(ii) and Exh. A ¶ 2). CMP would pay her a daily rate for undercover work in the field, and CMP would retain control over her work and "sole discretion" to determine its completeness and adequacy. (Merritt Decl. ¶ 4(iii) and Exh. A ¶ 4(a)). Moreover, CMP would have and retain all rights to any of Merritt's work product, and complete discretion as to its use, and she would have no rights or interest in that work product. (Merritt Decl. ¶ 4(iv) and Exh. A ¶¶ 5-6).

Consistent with this framework, the undisputed evidence demonstrates that, because she had no authority to bind BioMax to any contract, Merritt did not sign any agreements for or on behalf of BioMax, either as "Susan Tennenbaum" or otherwise. (Merritt Decl. ¶ 9; Daleiden Decl. ¶ 131). "Susan Tennebaum's" signature on behalf of BioMax on the PPFA Exhibitor Agreements, the NAF Exhibitor Agreements and the PPGC/PPCFC Non-Disclosure Agreement was not made by Merritt. (*Id.*) Indeed, Merritt was not even aware of the existence or contents of these agreements during her work for CMP. (*Id.*)

Under these factual circumstances, which Plaintiffs have no evidence to dispute, Plaintiff's makeshift "alter ego" theory completely crumbles. "[T]he corporate form will be disregarded only in narrowly defined circumstances." *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1107 (2013) (quoting *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 301 (1985)). Under narrowly-circumscribed circumstances, "a court may disregard the corporate entity and treat

the corporation's acts as if they were done by the persons **actually controlling the corporation**." *Toho-Towa Co.*, 217 Cal. App. 4th at 1106–07 (2013) (emphasis added) (quoting *Robbins v. Blecher*, 52 Cal. App. 4th 886, 892 (1997)). In those narrow circumstances,

> Usually, a disregard of the corporate entity is sought in order to fasten liability upon **individual stockholders**. … Undercapitalization of the business, **commingling of corporate and personal funds**, and failure to observe the corporate formalities are examples of business practices that would leave **individual shareholders** vulnerable to a finding of alter ego liability.

*Toho-Towa Co.*, 217 Cal. App. 4th at 1107 (emphasis added) (internal citations, alterations and quotes omitted).

None of those narrow circumstances are present here. Merritt was never a shareholder of BioMax or CMP (Merritt Decl. ¶ 8; Daleiden Decl. ¶ 129), she never co-mingled any of her personal funds with theirs (*id.*), and she never had or exercised "actual control" over either entity. (*Id.*). Plaintiffs' "alter ego" theory is therefore factually and legally defunct, and cannot rescue Plaintiffs' equally defunct contract theories. Summary Judgment on Counts 4, 5 and 15 should be entered in favor of Merritt and against each Plaintiff asserting them.

### C. The Court Should Also Grant Summary Judgment on Plaintiffs' Contract Claims for the Reasons Demonstrated by the Other Defendants.

In addition to the foregoing grounds, the Court should also grant summary judgment in favor of Merritt on Counts 4, 5 and 15 for the same reasons and the same grounds advanced in each of the Co-Defendants' Summary Judgment Motions, which Merritt adopts as her own and incorporates by reference, as if fully set herein.

### IV. PLAINTIFFS LACK SUFFICIENT EVIDENCE TO PROVE ANY OF THE ESSENTIAL ELEMENTS OF THEIR TRESPASS CLAIM (COUNT 6).

Three sets of Plaintiffs purport to bring trespassing claims against Merritt in Count 6 of the First Amended Complaint: PPFA, PPRM and PPGC/PPCFC. (FAC ¶ 190). None can survive summary judgment, because Plaintiffs have insufficient or no evidence to prove any of the essential elements of their trespassing claim. Accordingly, summary judgment should be entered in favor of Merritt and against Plaintiffs on this claim.

Without limiting in any way Plaintiffs' burden to point to sufficient record evidence that would establish each and every element of their trespassing claim **against Merritt**, the Court should also grant summary judgment on this claim against PPFA because Merritt indisputably did not attend any of the three PPFA conferences in suit, and thus was never physically present to "trespass" on any of PPFA's purported property. (Merritt Decl. ¶ 13). Since she was indisputably not present at those conferences, Merritt did not do and could not have done any of the alleged things at those conferences which PPFA claims to have constituted "trespassing." (*Id.*). She did not exceed and could not have "exceeded the scope of Plaintiffs' consent to enter by knowingly and intentionally, surreptitiously videotaping Plaintiffs' staff at those meetings without their knowledge or consent," as Plaintiffs allege, without any proof, in paragraph 192 of the First Amended Complaint. PPFA's trespassing claim is ripe for summary judgment.

PPRM's trespassing claim against Merritt is equally defunct, for a different reason. PPRM admits under oath that it is not seeking **any** damages against Merritt (or any other defendant), for trespassing (or any other claim), and that "PPRM seeks **only** injunctive relief." (Pl. Third Amd. Resp. to Newman Second Set of Interrogatories, p. 10 n.2, attached as Exhibit 101 to the Declaration of Michael Millen ("Millen Decl.") in Support of the Motion for Summary Judgment of Defendants Rhomberg and Newman (emphasis added)). Trespassing is, of course, a tort claim and it is axiomatic that tort claims, including trespassing, fail without proof of damages. *See e.g.*, *Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 306 F.3d 806, 820 (9th Cir. 2002) (affirming summary judgment on trespassing claim because "Medical Lab fails to sustain its burden of proving the damages it seeks."). *See also*, *Boston Prop. Exchange Transfer Co. v. Iantosca*, 720 F.3d 1, 10 (1st Cir. 2013) ("As for the tort claims, we affirm summary judgment for the defendants on all of them because [plaintiff] failed to provide any evidence to meet an essential element of each: that the defendants caused it to suffer damages."). PPRM's disclaimer of all damages dooms its trespass claim. Summary judgment is warranted.

Finally, the trespass claim brought by PPGC/PPCFC fails for the same reason as PPRM's. Although PPGC and PPCFC have not expressly disclaimed all damages as PPRM has done, they

have utterly failed to substantiate any damages caused by any alleged "trespass" by Merritt or anyone else. PPGC and PPCFC's categorization of their claimed damages categorically fails to identify any purported damages caused by any "trespass." (Pl. Third Amd. Resp. to Newman Second Set of Interrogatories, p. 89 of 94, Millen Decl. Exhibit 101). In Texas, as elsewhere, a failure to substantiate damages is a failure to sustain an essential element of a trespass claim, which legally vitiates such claim. *See e.g.*, *City of Mineral Wells v. McDonald*, 170 S.W.2d 466, 469 (Tex. 1943) ("One of the essential elements of an action for trespass is the responsibility of the defendant for the injury or damages resulting therefrom"); *TrueBeginnings, LLC v. Spark Net. Serv., Inc.*, 631 F. Supp. 2d 849, 858 (N.D. Tex. 2009) ("Damages are an essential element of plaintiff's claims for … common law trespass."); *Southwest Airlines Co. v. Farechase, Inc*, 318 F. Supp. 2d 435, 442 (N.D. Tex. 2004) (liability for trespass does not attach unless it is "accompanied by actual damages to the property").

In sum none of Plaintiffs' trespass claims against Merritt in Count 6 of their First Amended Complaint can survive summary judgment.

In addition to the foregoing grounds, the Court should also grant summary judgment in favor of Merritt on Count 6 for the same reasons and the same grounds advanced in each of the Co-Defendants' Summary Judgment Motions, which Merritt adopts as her own and incorporates by reference, as if fully set herein.

## V. PLAINTIFFS LACK SUFFICIENT EVIDENCE TO PROVE ANY OF THE ESSENTIAL ELEMENTS OF THEIR FRAUDULENT MISREPRESENTATION CLAIM (COUNT 8).

Plaintiffs have insufficient or no evidence to prove any of the essential elements of their fraudulent misrepresentation claim in Count 8 of their First Amended Complaint. Accordingly, summary judgment should be entered in favor of Merritt and against Plaintiffs on this claim.

Without limiting in any way Plaintiffs' burden to point to sufficient record evidence that would establish each and every element of their fraudulent misrepresentation claim **against Merritt**, the Court should also grant summary judgment on this claim against Plaintiffs because it

1    is undisputed that Merritt was not involved and did not participate in the editing and publication of

2    the CMP videos or CMP press releases. (Merritt Decl. ¶¶ 15-16; Daleiden Decl. ¶¶ 134).

3         As detailed in the Motion for Summary Judgment filed by Defendants Rhomberg and

4    Newman, at pages 6-10, incorporated by reference as if fully set herein, the damages Plaintiffs seek

5    from the alleged fraudulent misrepresentation are attributed **by Plaintiffs themselves** to the

6    publication of CMP videos. (*Id.*) That being the case, Merritt was not involved in any editing

7    decisions or any publication. (Merritt Decl. ¶ 15; Daleiden Decl. ¶ 134). Her limited duties as an

8    independent contractor for CMP did not include editing decisions or publication of videos, and her

9    duties ended before any publication. (*Id.*) As such, even if Plaintiffs could recover damages from

10   editing or publication of the videos, which they cannot (for reasons explained in the Co-Defendants'

11   Summary Judgment Motions), Merritt cannot be liable for any such damages. Therefore, Plaintiffs'

12   claim for fraudulent misrepresentation against Merritt—seeking publication damages—must fail.

13        In addition to the foregoing grounds, the Court should also grant summary judgment in

14   favor of Merritt on Count 8 for the same reasons and the same grounds advanced in each of the Co-

15   Defendants' Summary Judgment Motions, which Merritt adopts as her own and incorporates by

16   reference, as if fully set herein.

17
18   **VI.    PLAINTIFFS LACK SUFFICIENT EVIDENCE TO PROVE ANY OF THE
             ESSENTIAL ELEMENTS OF THEIR CALIFORNIA ILLEGAL
19           RECORDING CLAIM (COUNT 9), CALIFORNIA TRESPASSING
             CLAIM (COUNT 10), AND MARYLAND ILLEGAL RECORDING
20           CLAIM (COUNT 12).**

21        Plaintiffs have insufficient or no evidence to prove any of the essential elements of their

22   illegal recording and trespassing to illegally record claims under California law, or illegal recording

23   claims under Maryland law, brought in Counts 9, 10 and 12, respectively, of their First Amended

24   Complaint. Accordingly, summary judgment should be entered in favor of Merritt and against

25   Plaintiffs on both of these claims.

26        Without limiting in any way Plaintiffs' burden to point to sufficient record evidence that

27   would establish each and every element of these claims **against Merritt**, the Court should also

28

grant summary judgment on these claim against Plaintiffs because: (1) Plaintiffs have not timely identified any recordings by Merritt on premises owned or leased by Plaintiffs or NAF in Maryland; (2) Plaintiffs have not identified any recordings by Merritt on premises owned or leased by Plaintiffs or NAF in California; (3) Plaintiffs have no standing to bring any claims for Merritt's recording of Dr. Nucatola, and that conversation was not confidential; and (3) the Plaintiffs who purport to bring Count 9 have no standing to bring any claims for Merritt's recording of Dr. Gatter, and that conversation was likewise not confidential.

Initially, Plaintiffs base their illegal recording claims in Count 9 on only **three** sets of recordings in California: at the 2014 NAF Annual Conference in San Francisco, at the lunch between Daleiden, Merritt and Dr. Nucatola, and at the lunch between Daleiden, Merritt and Dr. Gatter. (FAC ¶¶ 212-13). Plaintiffs base their trespassing to illegally record claim in Count 10 on only **one** set of recordings, at the 2014 NAF Annual Conference, presumably because Plaintiffs acknowledge that they had no possessory interest in the restaurants where the other two sets of California recordings (with Drs. Nucatola and Gatter) took place. (FAC ¶¶ 219-23). And, Plaintiffs base their illegal recording claims in Count 12 on only **one** set of recordings in Maryland, at the 2015 NAF Annual Conference in Baltimore. (FAC ¶¶ 233-35).

Taking these Counts in reverse order, Plaintiffs' illegal recording claim under Maryland law in Count 12 fails because, in response to an interrogatory asking Plaintiffs to "IDENTIFY any recordings (audio or video) YOU allege Defendants illegally made," Plaintiffs identified 119 videos, **none of which were recorded by Merritt at the 2015 NAF Conference in Maryland** (Baltimore).[1] Almost 4 months after the close of written fact discovery, and two weeks after the

---

[1]     The relevant interrogatory is contained within Defendant Albin Rhomberg's Interrogatories to PPGC (Set One) (Aug. 14, 2018), attached as **Exhibit 26** to the Trissell Declaration. Plaintiffs' substantive and controlling response, identifying 119 allegedly illegal videos, is contained in PPGC's Amended Responses to Defendant Albin Rhomberg's Interrogatories (Set One) (Nov. 2, 2018), attached as **Exhibit 28** to the Trissell Declaration. The remaining Plaintiffs incorporated that same response by reference, in Plaintiffs' Response to Defendant Albin Rhomberg's Interrogatories (Set One) (Nov. 13, 2018), attached as **Exhibit 29** to the Trissell Declaration. The 119 videos timely identified by Plaintiffs also appear as the **non-highlighted** entries in the chart attached as **Exhibit 33** to the Trissell Declaration, which identifies (among other things) the person recording the video and the location of the recording.

close of all fact discovery, when all pertinent fact depositions had been taken, Plaintiffs attempted to amend their disclosure, to add several additional allegedly illegal videos, including five videos allegedly recorded by Merritt at the 2015 NAF Conference in Maryland.[2] The profound prejudice resulting from this unexplained, unjustifiable and grossly untimely disclosure is self-evident, but discussed more fully in Defendants' Motion to Strike, filed concurrently with the motions for summary judgment. As demonstrated in the motion, the only just remedy at this late stage is precluding Plaintiffs from relying upon the untimely disclosed videos. Without any evidence of any illegal recording by Merritt at the only event upon which Plaintiffs' Count 12 is premised, that Count fails for lack of evidence as to an essential element. Summary Judgment is warranted.

Next, Plaintiffs' trespassing to illegally record claim in Count 10 similarly fails because **none** of the videos identified by Plaintiffs as purportedly illegal—**timely and untimely**—were recorded by Merritt at the 2014 NAF Conference in California (San Francisco). (Trissell Decl., Exh. 33). Unlike the Maryland videos, Plaintiffs have never even attempted to amend their list to include any alleged recordings by Merritt at the 2014 NAF Conference. (*Id.*) Put another way, Plaintiffs' grossly untimely, attempted amendment of the purportedly illegal video list **still** did not include any videos purportedly recorded by Merritt at the 2014 NAF Conference. (*Id.*) If Plaintiffs were to attempt to amend their list now, after the close of fact discovery, after the conclusion of fact depositions, and after the filing of Merritt's summary judgment, such grossly untimely amendment would further severely prejudice Merritt and would be impermissible. Thus, without any evidence of any illegal recording by Merritt at the only event upon which Plaintiffs' Count 10 is premised, that Count likewise fails for lack of evidence as to an essential element. Summary Judgment is warranted.

Next, Plaintiffs' failure to identify any alleged illegal recording made by Merritt at the 2014 NAF Conference also dooms one-third of their illegal recording claims under Count 9, for the same reason.

---

[2]      The new videos untimely disclosed by Plaintiffs are the **highlighted** entries in **Exhibit 33** to the Trissell Declaration.

Another one-third of Plaintiffs' illegal recording claims under Count 9—those premised on the recording at the lunch with Dr. Nucatola—fail because Dr. Nucatola testified at her deposition: (1) that she met with Merritt and Daleiden **solely in her personal capacity**, not on behalf of PPFA (Nucatola Dep. 342:11-345:25, Trissell Decl. Exh. 38); (2) that she was not authorized to disclose any of Planned Parenthood's confidential information at this personal meeting, and **did not disclose any of Planned Parenthood's confidential information** (*id.* at 348:14-349:24); and (3) that the lunch conversation could be overheard by the wait staff. (*Id.* at 232:2–233:3, 242:25–243:15, & Ex. 2429; *see also* Minnow (PPFA) Dep. 267:10–271:12, attached as Exhibit 53 to the Declaration of Gregory Michael ("Michael Decl.") in Support of BioMax' Motion for Summary Judgment). Each of these admissions is fatal to Plaintiffs' illegal recording claims premised on Dr. Nucatola. *See e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751-GPC-DHB, 2016 WL 3543699, *6 (S.D. Cal. June 29, 2016) (corporation can maintain claim for violation of the California recording statute only if it shows that the defendant "recorded conversations with [its employees] **in their capacities as [the corporation's] employees**." (emphasis added)); Cal. Penal Code § 632(a) (prohibiting recording without consent only of "a confidential communication"); Cal. Penal Code § 632(c) (excluding from the prohibition on recording "a communication made … in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard."); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002) ("a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."); *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1465 (2014) ("the statute prohibits monitoring or recording only without the knowledge or consent of all parties to the conversation and only if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.") (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n.7 (2006)).

Finally, the remaining one-third of Plaintiffs' illegal recording claims in Count 9—those premised on the recording at the lunch with Dr. Gatter—fail because Dr. Gatter testified at her

deposition that she attended the lunch on behalf of Plaintiff PPPSGV. (Gatter Dep., 265:17–266:23, Trissell Decl. Exh. 36; *see also*, Bonner (PPPSGV) Dep., 21:9–22:16, Trissell Decl. Exh. 37). Critically, **PPPSGV is not one of the Plaintiffs bringing Count 9**. (FAC at p. 57 "Ninth Claim for Relief" (stating that Count 9 is being brought by "PPFA, PPNC, PPPSW, PPMM, PPOSB, PPGC, PPCFC and PPRM")). Since Dr. Gatter attended the lunch on behalf of Plaintiff PPPSGV, only PPPSGV has corporate standing to assert a claim of illegal recording of Dr. Gatter. *See e.g.*, *Bona Fide Conglomerate, Inc.*, 2016 WL 3543699 at *6 (corporation has standing to bring illegal recording claim if defendant "recorded conversations with [its employees] **in their capacities as … employees**" (emphasis added)). The recording claims based upon the restaurant meeting with Dr. Gatter also fail because, like Dr. Nucatola, Dr. Gatter admitted at her deposition that the lunch conversation could be overheard by the wait staff. (Gatter Dep., 279:9–19).

In sum, because Plaintiffs have no evidence to establish these essential elements of their claims in Counts 9, 10 and 12, these claims cannot survive summary judgment.

In addition to the foregoing grounds, the Court should also grant summary judgment in favor of Merritt on Counts 9, 10 and 12 for the same reasons and the same grounds advanced in each of the Co-Defendants' Summary Judgment Motions, which Merritt adopts as her own and incorporates by reference, as if fully set herein.

## VII.   PLAINTIFFS LACK SUFFICIENT EVIDENCE TO PROVE ANY OF THE ESSENTIAL ELEMENTS OF THEIR FLORIDA ILLEGAL RECORDING CLAIM (COUNT 11).

Plaintiffs have insufficient or no evidence to prove any of the essential elements of their unlawful recording claim under Florida law, in Count 11 of their First Amended Complaint. Accordingly, summary judgment should be entered in favor of Merritt and against Plaintiffs on each of those claims.

Without limiting in any way Plaintiffs' burden to point to sufficient record evidence that would establish each and every element of their claim **against Merritt**, the Court should also grant summary judgment on this claim because Merritt indisputably was never in Florida for the CMP

investigative project, and made no recordings in Florida. (Merritt Decl. ¶ 14; Daleiden Decl. ¶ 132). Merritt likewise did not assist any CMP personnel with any participation in Florida conferences or with any recording in Florida. (Merritt Decl. ¶ 14). Accordingly, Plaintiffs completely lack evidence as to an essential element of their claim, and Count 11 is ripe for summary judgment.[3]

In addition to the foregoing grounds, the Court should also grant summary judgment in favor of Merritt on Count 11 for the same reasons and the same grounds advanced in each of the Co-Defendants' Summary Judgment Motions, which Merritt adopts as her own and incorporates by reference, as if fully set herein.

## CONCLUSION

For the foregoing reasons, and those advanced in each of the Co-Defendants' Summary Judgment Motions, this Court should grant summary judgment in favor of Defendant Sandra Susan Merritt and against each Plaintiff on each of Plaintiffs' claims against her.

Dated: May 22, 2019

Respectfully submitted:

/s/ Horatio G. Mihet
Horatio G. Mihet*
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
Tel: (407) 875-1776
Fax: (407) 875-0770
hmihet@lc.org
*Admitted pro hac vice

Nicolaie Cocis (CA Bar # 204703)
Law Office of Nic Cocis & Associates
38975 Sky Canyon Drive, Suite 211
Murrieta, CA 92563
Tel: (951) 695-1400
Fax: (951) 698-5192
nic@cocislaw.com

*Attorneys for Defendant Sandra Susan Merritt*

---

[3]     Plaintiffs cannot rely on their "alter ego" theory to rescue this claim, for the same reasons detailed in Section III.B., pp. 12-15, *supra*.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May 2019, I filed the foregoing *Motion for Summary Judgment* electronically through the CM/ECF system, which caused counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing.

<u>/s/Horatio G. Mihet</u>
Horatio G. Mihet*
Liberty Counsel
hmihet@lc.org
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
*Admitted pro hac vice
*Attorney for Defendant*
*Sandra Susan Merritt*