Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
B. Dean Wilson (CA Bar No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel:  (858) 759-9948
cslimandri@limandri.com
pjonna@limandri.com
jtrissell@limandri.com
dwilson@limandri.com

*Attorneys for Defendant Gerardo Adrian Lopez*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

PLANNED PARENTHOOD
FEDERATION OF AMERICA, INC., et al.,

        Plaintiff,

   vs.

THE CENTER FOR MEDICAL
PROGRESS, et al.,

        Defendants.

Case No. 3:16-CV-00236 (WHO)

Hon. William H. Orrick III

Defendant Gerardo Adrian
Lopez's Motion for Summary
Judgment

Hearing Date: July 17, 2019, 2:00 p.m.
Courtroom 2, 17th Floor

# PUBLIC VERSION

1
2

# TABLE OF CONTENTS

3    INTRODUCTION ..................................................................................................1

4    NOTE ON THE ARGUMENT ...............................................................................1

5    ARGUMENT ........................................................................................................ 2

6         1.    Defendant Lopez Cannot Be Liable Via Civil Conspiracy....................... 2

7         2.    Plaintiffs' Claim for Invasion of Privacy: Tortious Intrusion Fails........................ 4

8               2.1.   Legal Background on Choice of Law ........................................ 4

9               2.2.   Legal Background on Invasion of Privacy: Intrusion ................................. 4

10              2.3.   The Tortious Intrusion Claim Fails ........................................... 8

11        3.    Plaintiffs' Claims for Violation of the Federal, Florida, or Maryland
12              Recording Statutes Fail.............................................................................10

13              3.1.   Legal Background with Plaintiffs' Theory................................10

14                     3.1.1.   Federal Recording Statute ...............................................10

15                     3.1.2.   Florida Recording Statute................................................ 13

16                     3.1.3.   Maryland Recording Statute ............................................14

17              3.2.   The Federal, Florida, & Maryland Recording Claims Fail...................... 15
18
19                     3.2.1.   Federal: No "Purpose" of Violating RICO or Privacy.................. 15

20                     3.2.2.   Federal & Florida: No "Exhibition" of an Expectation
                                of Privacy. ........................................................................16
21
22                     3.2.3.   Federal, Florida, & Maryland: No Reasonable
                                Expectation of Privacy. ....................................................18
23
                       3.2.4.   Standing and Other Problems ......................................... 22
24
          4.    Defendant Lopez Did Not Trespass at the PPFA Conferences ...........................23
25
          5.    Defendant Lopez Cannot Be Liable For Breach of the NAF
26              Nondisclosure Agreement ........................................................................ 24

27        6.    Defendant Lopez Cannot Be Liable For RICO.................................25

28

7.      Defendant Lopez Cannot Be Liable For Fraud ......................................................25

8.      Defendant Lopez Cannot Be Liable For Unfair Business Practices ......................25

CONCLUSION..............................................................................................................................25

1

# TABLE OF AUTHORITIES

2

*Cases:*

3

*Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cty., Kan.* ...................................... 19
    492 F.3d 1164 (10th Cir. 2007)

4

*Adams v. Sumner* ......................................................................................................................... 13
    39 F.3d 933 (9th Cir. 1994)

5

6

*Agnew v. State* ............................................................................................................................. 15
    461 Md. 672 (2018)

7

*Allstate Ins. Co. v. Ginsberg* ......................................................................................................... 6
    863 So. 2d 156 (Fla. 2003)

8

9

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.* .................................................................... 3, 4
    7 Cal. 4th 503 (1994)

10

*Bateman v. State* .......................................................................................................................... 21
    513 So. 2d 1101 (Fla. Dist. Ct. App. 1987)

11

12

*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* ...................................................... 3, 4
    131 Cal.App.4th 802 (2005)

13

*Bernhard v. City of Ontario* .......................................................................................................... 5
    270 F. App'x 518 (9th Cir. 2008)

14

15

*Betancourt v. Nippy, Inc.* ............................................................................................................. 12
    137 F. Supp. 2d 27 (D.P.R. 2001)

16

*Boddie v. Am. Broad. Companies, Inc.* ....................................................................................... 12
    731 F.2d 333 (6th Cir. 1984)

17

18

*Boddie v. Am. Broad. Companies, Inc.* ....................................................................................... 11
    881 F.2d 267 (6th Cir. 1989)

19

*Bradley v. Atl. City Bd. of Educ.* ............................................................................................... 5, 6
    736 F. Supp.2d 891 (D.N.J. 2010)

20

21

*Brannen v. Kings Local Sch. Dist. Bd. of Edn.* ......................................................................... 21
    144 Ohio App. 3d 620 (2001)

22

*Burleson v. Kernan* ..................................................................................................................... 12
    No. C 05-1263 SI (PR), 2007 WL 3478432 (N.D. Cal. Nov. 15, 2007)

23

24

*By-Prod Corp. v. Armen-Berry Co.* ............................................................................................ 11
    668 F.2d 956 (7th Cir. 1982)

25

*Carolan v. Nuno* .......................................................................................................................... 19
    No. C-93-4246 DLJ, 1996 WL 784565 (N.D. Cal. Dec. 19, 1996)

26

*Catsouras v. Dep't of California Highway Patrol* ........................................................................ 5
    181 Cal.App.4th 856 (2010)

27

28

# TABLE OF AUTHORITIES

*Cases:*

*Celotex Corp. v. Catrett* ........................................................................................2
   477 U.S. 317 (1986)

*Chapman v. Rudd Paint & Varnish Co.* ...................................................................3
   409 F.2d 635 (9th Cir. 1969)

*Com. v. Welch* ......................................................................................................21
   420 Mass. 646 (1995)

*Coulter v. Bank of Am.* ...........................................................................................8
   28 Cal.App.4th 923 (1994)

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz* ....................18
   891 F.Supp.2d 13 (D.D.C. 2012)

*Dep't of Agric. & Consumer Servs. v. Edwards* .....................................................14
   654 So. 2d 628 (Fla. Dist. Ct. App. 1995)

*Diaz v. Oakland Tribune, Inc.* .................................................................................9
   139 Cal. App. 3d 118 (Ct. App. 1983)

*Fazaga v. Fed. Bureau of Investigation* .................................................................21
   916 F.3d 1202 (9th Cir. 2019)

*Faulkner v. State* ...................................................................................................21
   317 Md. 441 (1989)

*Fleury v. Harper & Row, Publishers, Inc.* ...............................................................4
   698 F.2d 1022 (9th Cir. 1983)

*FOAGLA, Inc. v. 7-Eleven, Inc.* ..............................................................................8
   No. EDCV 14-1432 JGB (SPx) 2014 WL 12601505 (C.D. Cal. Dec. 18, 2014)

*Food Lion, Inc. v. Capital Cities/ABC, Inc.* .............................................................1
   964 F. Supp. 956 (M.D.N.C. 1997)

*Food Lion, Inc. v. Capital Cities/ABC, Inc.* .............................................................1
   194 F.3d 505 (4th Cir. 1999)

*Four Navy Seals v. Associated Press* ....................................................................9, 16
   413 F. Supp. 2d 1136 (S.D. Cal. 2005)

*France v. France* ...................................................................................................14
   90 So. 3d 860 (Fla. Dist. Ct. App. 2012)

*Freeman v. United States* .....................................................................................21
   201 A.2d 22 (D.C. 1964)

*Frome v. Renner* ....................................................................................................1
   No. 97 CIV 5641, 1997 WL 33308718 (C.D. Cal. Oct. 1, 1997)

1

# TABLE OF AUTHORITIES

2

*Cases:*

3

*Glennon v. Dean Witter Reynolds, Inc.* ........................................................................... 4
   83 F.3d 132 (6th Cir. 1996)

4

*Goodall's Charter Bus Serv., Inc. v. San Diego Unified Sch. Dist.* ................................. 11
   125 Cal. App. 3d 194 (Ct. App. 1981)

5

*Gray v. Royal* .............................................................................................................. 20, 21
   181 F. Supp. 3d 1238 (S.D. Ga. 2016)

6

*Greenpeace, Inc. v. Dow Chem. Co.* ................................................................................ 23
   97 A.3d 1053 (D.C. 2014)

7

*Harnett v. Washington Harbour Condo. Unit Owners' Ass'n* .......................................... 23
   54 A.3d 1165 (D.C. 2012)

8

*Hernandez v. Hillsides, Inc.* ............................................................................................... 5
   47 Cal. 4th 272 (2009)

9

*Hoffa v. United States* ...................................................................................................... 21
   385 U.S. 293 (1966)

10

*Hollander v. Lubow* ....................................................................................................... 5, 8
   277 Md. 47 (1976)

11

*Hurtado v. Superior Court* ................................................................................................. 4
   11 Cal. 3d 574 (1974)

12

*In re Cty. of Orange* .......................................................................................................... 3
   203 B.R. 983 (Bankr. C.D. Cal. 1996)

13

*In re Google Inc. Gmail Litig.* ........................................................................................ 12
   No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)

14

*Jackson v. Mayweather* ..................................................................................................... 7
   10 Cal. App. 5th 1240 (Ct. App. 2017)

15

*Katz v. United States* ..................................................................................... 11, 14, 15, 19
   389 U.S. 347 (1967)

16

*Lerman v. Flynt Distrib. Co.* ......................................................................................... 8, 16
   745 F.2d 123 (2d Cir. 1984)

17

*Lewis v. United States* ..................................................................................................... 21
   385 U.S. 206 (1966)

18

*MD II Entm't, Inc. v. City of Dallas, Tex.* ......................................................................... 8
   28 F.3d 492 (5th Cir. 1994)

19

*Martinez v. State* ............................................................................................................. 21
   880 S.W.2d 72 (Tex. App. 1994)

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

*Cases:*

3

*McDade v. State* ................................................................................................................14
154 So. 3d 292 (Fla. 2014)

4

*McDonough v. Fernandez-Rundle* ...........................................................................11, 14, 17
862 F.3d 1314 (11th Cir. 2017)

5

*Med. Lab. Mgmt. Consultants v. ABC, Inc.* ....................................................................1
30 F. Supp. 2d 1182 (D. Ariz. 1998)

6

7

*Med. Lab. Mgmt. Consultants v. ABC, Inc.* ....................................................................1
306 F.3d 806 (9th Cir. 2002)

8

9

*Moore v. Telfon Commc'ns Corp.* ............................................................................11, 13, 15
589 F.2d 959 (9th Cir. 1978)

10

*Morrison v. Weyerhaeuser Co.* ..........................................................................................5, 6, 8
119 F. App'x 581 (5th Cir. 2004)

11

*Morton Bldgs. of Nebraska, Inc. v. Morton Bldgs., Inc.* ................................................3
531 F.2d 910 (8th Cir. 1976)

12

13

*Mozo v. State* ...........................................................................................................................11
632 So. 2d 623 (Fla. Dist. Ct. App. 1994)

14

*Nelson Radio & Supply Co. v. Motorola, Inc.* .................................................................3
200 F.2d 911 (5th Cir. 1952)

15

16

*Nicholson v. McClatchy Newspapers* ...............................................................................7
177 Cal. App. 3d 509 (Ct. App. 1986)

17

*Oppenheim v. I.C. Sys., Inc.* ...........................................................................................6, 8
695 F. Supp. 2d 1303 (M.D. Fla.)

18

19

*Oppenheim v. I.C. Sys., Inc.* ...............................................................................................6
627 F.3d 833 (11th Cir. 2010)

20

*Pascouau v. Martin Marietta Corp.* ...............................................................................5, 8
185 F.3d 874 (10th Cir. 1999)

21

22

*Penley v. McDowell Cty. Bd. of Educ.* ..............................................................................2
876 F.3d 646 (4th Cir. 2017)

23

*People v. Juan* ......................................................................................................................19
175 Cal. App. 3d 1064 (Ct. App. 1985)

24

25

*People v. Rosa* .....................................................................................................................21
928 P.2d 1365 (Colo. App. 1996)

26

*People v. Thompson* ...........................................................................................................21
205 Cal. App. 3d 1503 (Ct. App. 1988)

27

28

1

# TABLE OF AUTHORITIES

2

*Cases:*

3

*Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc v. Smith* ............16
   913 F.3d 551 (5th Cir. 2019)

4

*Randolph v. ING Life Ins. & Annuity Co.* ........................................................................................6, 8
5     973 A.2d 702 (D.C. 2009)

6

*Roberts v. Americable Int'l Inc.* .........................................................................................................12
   883 F. Supp. 499 (E.D. Cal. 1995)

7

*Sanders v. Am. Broad. Companies, Inc.* ............................................................................................6
8     20 Cal. 4th 907 (1999)

9

*Shulman v. Grp. W Prods., Inc.* .......................................................................................................6, 7
   18 Cal. 4th 200 (1998)

10

*Sipple v. Chronicle Publ'g Co.* ...................................................................................9, 13, 16
11     154 Cal. App. 3d 1040 (Ct. App. 1984)

12

*Smith v. Bd. of Cty. Comm'rs for Cty. of Otero, N.M.* .....................................................................19
   316 F. App'x 786 (10th Cir. 2009)

13

*Smith v. State* .................................................................................................................................14
14     261 So. 3d 714 (Fla. Dist. Ct. App. 2018)

15

*Smith v. Unilife Corp.* ...................................................................................................................5, 6
   72 F. Supp. 3d 568 (E.D. Pa. 2014)

16

*Solano v. Playgirl, Inc.* ................................................................................................................8, 16
17     292 F.3d 1078 (9th Cir. 2002)

18

*Stamatiou v. U.S. Gypsum Co.* ........................................................................................................12
   400 F. Supp. 431 (N.D. Ill. 1975)

19

*State v. Inciarrano* ........................................................................................................................14
20     473 So. 2d 1272 (Fla. 1985)

21

*State v. Smith* ................................................................................................................................14
   641 So. 2d 849 (Fla. 1994)

22

*Stevenson v. State* ..........................................................................................................................14
23     667 So. 2d 410 (Fla. Dist. Ct. App. 1996)

24

*Stewart v. Evans* ............................................................................................................................21
   351 F.3d 1239 (D.C. Cir. 2003)

25

*Sussman v. Am. Broad. Companies, Inc.* ...................................................................................13, 16
26     186 F.3d 1200 (9th Cir. 1999)

27

*Tancredi v. Malfitano* .....................................................................................................................21
   567 F. Supp. 2d 506 (S.D.N.Y. 2008)

28

1

# TABLE OF AUTHORITIES

2

*Cases:*

3

*Thomas v. Pearl* ...........................................................................................................12, 15
   793 F. Supp. 838 (C.D. Ill. 1992)

4

*Thompson v. Johnson Cty. Cmty. Coll.* ...........................................................................21
   930 F. Supp. 501 (D. Kan. 1996)

5

6

*Trujillo v. City of Ontario* ...................................................................................................5
   428 F. Supp. 2d 1094 (C.D. Cal. 2006)

7

*Turner v. Fla. State Fair Auth.* ........................................................................................23
   974 So. 2d 470 (Fla. Dist. Ct. App. 2008)

8

9

*United States v. Aguilar* ..................................................................................................21
   883 F.2d 662 (9th Cir. 1989)

10

*United States v. Buettner-Janusch* .................................................................................21
   646 F.2d 759 (2d Cir. 1981)

11

12

*United States v. Carroll* ...................................................................................................11
   337 F. Supp. 1260 (D.D.C. 1971)

13

*United States v. Christensen* ............................................................................................10
   828 F.3d 763 (9th Cir. 2015)

14

15

*United States v. Christensen* ......................................................................................13, 15
   624 F. App'x 466 (9th Cir. 2015)

16

*United States v. Duncan* ..................................................................................................10
   598 F.2d 839 (4th Cir. 1979)

17

18

*United States v. Gonzalez–Torres* ...................................................................................21
   309 F.3d 594 (9th Cir. 2002)

19

*United States v. Gonzalez* ................................................................................................19
   No. CRIM 07-748 (FSH), 2008 WL 4837468 (D.N.J. Oct. 31, 2008)

20

21

*United States v. McIntyre* ...........................................................................................11, 12
   582 F.2d 1221 (9th Cir. 1978)

22

*United States v. McTiernan* .......................................................................................12, 13
   695 F.3d 882 (9th Cir. 2012)

23

24

*United States v. Ross* .......................................................................................................20
   456 U.S. 798 (1982)

25

*United States v. Ross* .......................................................................................................14
   713 F.2d 389 (8th Cir. 1983)

26

27

*United States v. Watson* ...................................................................................................19
   423 U.S. 411 (1976)

28

# TABLE OF AUTHORITIES

*Cases:*

*Vo v. City of Garden Grove* .................................................................................... 16
    115 Cal. App. 4th 425 (2004)

*Walker by Walker v. Pearl S. Buck Found., Inc.* ..................................................... 4
    No. CIV. A. 94-1503, 1996 WL 706714 (E.D. Pa. Dec. 3, 1996)

*Wentz v. Project Veritas* ........................................................................................ 19
    No. 6:17-cv-1164-Orl-18GJK, 2019 WL 1716024 (M.D. Fla. Apr. 16, 2019)

*Winselmann v. Reynolds* ....................................................................................... 23
    690 So. 2d 1325 (Fla. Dist. Ct. App. 1997)

*Woods v. Fox Broad. Sub., Inc.* ............................................................................... 3
    129 Cal. App. 4th 344 (2005)

*Young v. Harrison* ................................................................................................. 23
    284 F.3d 863 (8th Cir. 2002)

*Federal Rules:*

FED. R. CIV. P. 56(c) ................................................................................................. 2

*Statutes:*

18 U.S.C. § 2510(2) ................................................................................................ 11

18 U.S.C. § 2511(1)(a) ............................................................................................ 10

18 U.S.C. § 2511(1)(b) ............................................................................................ 10

18 U.S.C. § 2511(2)(d) ............................................................................................ 12

*Other Statutes:*

Fla. Stat. § 934.02(2) .............................................................................................. 14

Fla. Stat. § 934.03 ............................................................................................ 13, 22

Fla. Stat. § 934.03(1)(a) ......................................................................................... 14

Md. Code Ann., Cts. & Jud. Proc. § 10-401(13)(i) .................................................. 15

Md. Code Ann., Cts. & Jud. Proc. § 10-402 ..................................................... 14, 23

Md. Code Ann., Cts. & Jud. Proc. § 10-402(a)(1) .................................................. 15

1

# TABLE OF AUTHORITIES

2

*Treaties:*

3

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 152 (AM. LAW INST. 1971)..................................4

4

RESTATEMENT (SECOND) OF TORTS § 652B (AM. LAW INST. 1997)..................................5

5

W. PROSSER, TORTS 808-09 (4TH ED. 1971)..................................5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION

2  TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE THAT on Wednesday, July 17, 2019, at 2:00 p.m. in Courtroom

4  2 of the Honorable William H. Orrick III at the United States District Court for the Northern

5  District of California, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant

6  Gerardo Adrian Lopez will, and hereby does move for summary judgment on the ground that there

7  is no genuine issue as to any material fact and that Gerardo Adrian Lopez will is entitled to

8  judgment as a matter of law for the reason that:

9      □ Lopez cannot be liable for conduct in which he did not personally engage under a civil

10        conspiracy theory;

11     □ Plaintiffs' claims for Invasion of Privacy: Tortious Intrusion fail under California, Florida,

12       Maryland, District of Columbia, Colorado, and Texas law because (1) the nature of the

13       intrusion was not severe, (2) Lopez did not obtain private information; (3) Plaintiffs lack

14       standing; and (4) any intrusion is outweighed by First Amendment concerns;

15     □ Plaintiffs' claims for Violation of the Federal, Florida, and Maryland recording statutes

16       fail because (1) Lopez did not make any recordings for the purpose of violating RICO or

17       engaging in tortious publication; (2) no recordee visibly or audibly exhibited any

18       expectation of privacy; (3) no recordee had either a subjective or objective reasonable

19       expectation of privacy; and (4) many Plaintiffs had no staff recorded, or identified

20       recorded individuals who are not their staff;

21     □ Plaintiffs' claim for trespass at their conferences fails because Plaintiffs did not have a

22       possessory interest in the conferences space; and

23     □ Plaintiffs' remaining claims fail as stated in co-defendants' motions for summary judgment.

24     This motion will be based upon the attached points and authorities, the declarations of

25  Jeffrey M. Trissell, Esq., Adrian Lopez, and David Daleiden, the concurrent motions for summary

26  judgment filed by various co-defendants (along with their supporting declarations), all pleadings

27  and records on file in this action, and any argument at the hearing on this matter.

28  / / /

# INTRODUCTION

Defendant Gerardo Adrian Lopez hereby brings this motion for summary judgment. From a practical perspective, the only conduct in which Mr. Lopez participated that Plaintiffs contend was wrongful was surreptitious recording at three PPFA conferences and one NAF conference. Plaintiffs allege his conduct at those conferences violated various recording statutes, and also constituted tortious invasion of privacy. Importantly, Mr. Lopez *did not* engage in any conduct in California, Texas, or Colorado. He did not sign any exhibitor agreements for any conferences: he only signed one NAF nondisclosure agreement. For the reasons stated below, and in the various co-defendants' motions for summary judgment (which are expressly incorporated herein by reference), none of Defendant Lopez's conduct at those conferences is actionable. Summary judgment should be granted, and he should be dismissed from this action.

# NOTE ON THE ARGUMENT

In a newsgathering tort case, the plaintiff sometimes sues for defamation, and other times not. Due to Constitutional and common law proximate causation concerns, any damages which result from the publication of the news story cannot be traced back to prior torts/statutory violations relating to the newsgathering. *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 964 F. Supp. 956 (M.D.N.C. 1997) (*Food Lion I*), *aff'd*, 194 F.3d 505 (4th Cir. 1999) (*Food Lion II*).[1] To ensure that the plaintiff does not improperly receive publication-damages, the court assumes, and instructs the jury, that the defendant's speech **must be assumed as true for all purposes.** If the plaintiff "d[oes] not challenge the content of the broadcast by bringing a libel suit," then **"[f]or the purposes of . . . th[e] case, it is assumed that the content of the [defendant's] broadcast about [the plaintiff] [i]s true."** *Food Lion I*, 964 F. Supp. at 959.[2]

---

[1] Except where noted, emphasis is always added, and citations, quotation marks, brackets, and ellipses are always omitted.

[2] *See also Food Lion I*, 964 F. Supp. at 962 ("[T]he broadcast must be assumed to be true") (emphasis added); *Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 30 F. Supp. 2d 1182, 1199 (D. Ariz. 1998), *aff'd*, 306 F.3d 806 (9th Cir. 2002) ("In *Food Lion* and *Frome v. Renner*, the courts assumed the truth of the broadcast because the plaintiffs failed to bring a defamation or libel claim."); *Frome v. Renner*, No. 97 CIV 5641, 1997 WL 33308718, at *1 (C.D. Cal. Oct. 1, 1997) ("Plaintiff's complaint, however, is not based on the contents of the broadcast, but on the alleged misrepresentations made by Renner. Accordingly, the Court did not consider either the tape or the transcript.").

Here, the parties have disputed whether the truth or falsity of CMP's news stories is relevant in this action, with Defendants repeatedly raising the alarm that Plaintiffs intend to submit their falsity without permitting Defendants the opportunity to prove their veracity. In this respect, the Court has noted the following:

> I note that any risk here—from circumscribed discovery into plaintiffs' damages and defendants' defenses thereto—runs to plaintiffs. Plaintiffs bear the risk that by successfully seeking to preclude discovery into specific topics, and thereby limiting defendants' ability to test those damages, plaintiffs could be precluded from seeking some portion of those damages or may have any damages awarded reduced or set aside post-trial.

Dkt. 533, Order Affirming Magistrate Judge Order, 5:4–8 (Apr. 9, 2019). As a result, this motion takes as an incontrovertible fact that CMP's publications about the various Plaintiffs were true.

## ARGUMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As a result, "[w]hile courts are not obligated to do the work of the litigants . . . , district courts may enter summary judgment sua sponte so long as the losing party was on notice that she had to come forward with all of her evidence." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 661 (4th Cir. 2017). Defendant Lopez hereby places Plaintiffs on notice that he does not believe they have the evidence to establish their claims against him.

**1.      Defendant Lopez Cannot Be Liable Via Civil Conspiracy**

Defendant Lopez is named in fourteen of the fifteen causes of action—all except breach of the PPGC contract. But, as stated above, from a practical perspective, the only conduct in which Defendant Lopez participated that Plaintiffs allege was wrongful was surreptitious recording at the three PPFA conferences, and the 2015 NAF tradeshow—in Florida, the District of Columbia, and

Maryland. He *did not* engage in any purportedly tortious or illegal conduct in California, Texas, or Colorado. He *did* record at the conferences he attended, and he *did* sign a single NAF nondisclosure agreement—but *not* any PPFA agreements. Lopez Decl., ¶ 11.

Plaintiffs' claim for Civil Conspiracy appears to solely apply to their claim for fraudulent misrepresentation. FAC ¶ 175 ("conspiracy to defraud"); *compare also* Dkt. 354, Defendant Rhomberg's Motion for Summary Judgment (Dec. 4, 2018) (asserting that conspiracy only applies to fraud claim); *with* Dkt. 389, Plaintiffs' Opposition to Defendant Rhomberg's Motion for Summary Judgment (Dec. 28, 2018) (not contesting this assertion). This comports with the fact that civil conspiracy does not apply to breach of contract. *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 351 (2005).

However, even if Plaintiffs had asserted civil conspiracy with respect to other torts or statutory violations (with respect to conduct in which Defendant Lopez did not participate), Defendant Lopez cannot be found liable. "Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 n.4 (1994). As a result, the acts of an agent of a corporation are the acts of the corporation, and so the plurality requirement of conspiracy cannot be met. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952). This remains the case where multiple agents of a corporation conspire amongst themselves on behalf of the corporation. *Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 643 n.9 (9th Cir. 1969); *Morton Bldgs. of Nebraska, Inc. v. Morton Bldgs., Inc.*, 531 F.2d 910, 917 (8th Cir. 1976). The only way for a corporation to conspire with itself is if, via the conspiracy, its agents receive a "personal advantage or gain that is over and above ordinary professional fees earned as compensation for performance of the agency." *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 834 (2005); *see also In re Cty. of Orange*, 203 B.R. 983, 999–1000 (Bankr. C.D. Cal. 1996) ("[T]he gain must be more than the fees received from the fiduciary-defendant that the nonfiduciary is accused of conspiring with").

As explained in his declaration, Defendant Lopez was simply a good actor whose skill inspired

CMP's David Daleiden to hire him for a role. He did not receive a "personal advantage or gain that is over and above ordinary professional fees earned as compensation for performance of the agency" as an actor hired by CMP. *Berg & Berg Enterprises*, 131 Cal. App. 4th at 834. As a result, he cannot be liable for conspiracy. *Applied Equip. Corp.*, 7 Cal. 4th at 512 n.4; *see* Lopez Decl., ¶¶ 5, 12.

**2.    Plaintiffs' Claim for Invasion of Privacy: Tortious Intrusion Fails**

Plaintiffs allege tortious intrusion with respect to the PPFA and NAF conferences, FAC ¶ 240, and "private business conversations"—presumably the restaurant meetings and office visits, FAC ¶ 241. As stated above, Defendant Lopez did not participate in any of the latter, and he only attended one of the two NAF conferences (that in Baltimore, not San Francisco). Lopez Decl., ¶ 11. Nevertheless, Defendant Lopez addresses the claim fully in light of Plaintiffs' civil conspiracy allegations.

**2.1.    Legal Background on Choice of Law**

In its choice of law analysis, California "requir[es] an analysis of the respective interests of the states involved (governmental interest approach) the objective of which is to determine the law that most appropriately applies to the issue involved." *Hurtado v. Superior Court*, 11 Cal. 3d 574, 579–80 (1974).[3] "[U]nder California's interest analysis, invasion of privacy is a transitory tort to which the law of the forum will be normally applied absent a strong governmental interest of another jurisdiction." *Walker by Walker v. Pearl S. Buck Found., Inc.*, No. CIV. A. 94-1503, 1996 WL 706714, at *7 n. 23 (E.D. Pa. Dec. 3, 1996) (quoting *Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022, 1025 (9th Cir. 1983)). This tracks the recommendation of the Restatement, "[i]n an action for an invasion of a right of privacy, the local law of the state where the invasion occurred determines the rights and liabilities of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 152 (AM. LAW INST. 1971); *see also id.* at cmt. c ("When the invasion involves an intrusion upon the plaintiff's solitude, the place of the invasion is the place where the plaintiff was at the time").

**2.2.    Legal Background on Invasion of Privacy: Intrusion**

"A privacy violation based on the common law tort of intrusion has two elements. [1] the

---

[3] "[A] District Court entertaining pendent state claims should follow the choice of law rules of the forum state." *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996).

defendant must intentionally intrude into a [i] place, [ii] conversation, or matters as to which the plaintiff has a reasonable expectation of privacy. [2] the intrusion must occur in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

With respect to a [i] private "place," being recorded in public is not actionable. "[R]ather, the intrusion must be a penetration into a *zone of physical or sensory privacy* surrounding in which a person has an objectively reasonable expectation of seclusion or solitude." *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094, 1122 (C.D. Cal. 2006), *aff'd sub nom. Bernhard v. City of Ontario*, 270 F. App'x 518 (9th Cir. 2008).

With respect to a [ii] private "conversation," "there [can be] no intrusion [where] Plaintiff was knowingly speaking with" a party—it only bars eavesdropping by "a third party interloper who heard a conversation he otherwise would not have heard." *Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891, 899–900 (D.N.J. 2010) (interpreting RESTATEMENT (SECOND) OF TORTS § 652B (AM. LAW INST. 1997)); *see also Smith v. Unilife Corp.*, 72 F. Supp. 3d 568, 575 (E.D. Pa. 2014) ("[A] basic element of the tort [of intrusion upon a private conversation] is the intentional overhearing by one not intended to be a party to the communication of the contents of a private communication."); *Hollander v. Lubow*, 277 Md. 47, 56 (1976) (noting distinction between "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home or other quarters," and "eavesdropping upon private conversations").

Under the traditional formulation of the tort, it was also required "that the thing into which there is intrusion or prying must be, and be entitled to be, private." *Hollander*, 277 Md. at 57 (quoting W. PROSSER, TORTS 808-09 (4TH ED. 1971)). It was due to this requirement that "of the four privacy torts identified by Prosser, the tort of intrusion into private places, conversations or matter is perhaps the one that best captures the common understanding of an invasion of privacy." *Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856, 900 (2010). "It is in the intrusion cases that invasion of privacy is most clearly seen as an affront to individual dignity." *Id.*

The traditional understanding is followed by Maryland, *Hollander v. Lubow*, 277 Md. 47, 60 (1976); Colorado, *Pascouau v. Martin Marietta Corp.*, 185 F.3d 874 (10th Cir. 1999) ("actually gleans private information"); Texas, *Morrison v. Weyerhaeuser Co.*, 119 F. App'x 581, 589 & n.22 (5th Cir.

2004) (no claim where no "expectation of privacy in information sought"), and the District of Columbia, *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 711 (D.C. 2009) ("private facts must be accessed"). Florida has not adopted the Restatement definition of intrusion, and only permits the tort of intrusion with respect to "physically or electronically intruding into one's private quarters." *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 & n.2 (M.D. Fla.), *aff'd*, 627 F.3d 833 (11th Cir. 2010); *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003).

But California has moved away from the requirement of private information. In California there is only a relative requirement for there to be an "expectation as to confidentiality of the communication's *contents*," and recording an individual in a private place is potentially actionable because the speaker has "the right to control the nature and extent of the firsthand dissemination of his statements" which are made in his private *place*, even in the absence of "complete or absolute" privacy in the *contents*. *Sanders v. Am. Broad. Companies, Inc.*, 20 Cal. 4th 907, 915–16 (1999)

Plaintiffs' complaint alleges that their "staff had an objectively reasonable expectation that the [ii] *conversations* and interactions between" attendees at various conferences, and "the private business conversations they had with" Defendants elsewhere, "would be private." FAC ¶¶ 240–41. But this theory completely fails because Defendants did not eavesdrop: they recorded as participants to conversations. *Compare Bradley*, 736 F. Supp. 2d at 899–900; *Unilife Corp.*, 72 F. Supp. 3d at 575; *with* Lopez Decl., ¶ 12. In later briefing, Plaintiffs have focused on [i] private place. Dkt. 91, Plaintiffs' Opposition to Motion to Dismiss, 46:1–4 (May 25, 2016). ("Defendants obtained access to private spaces, even attempting to 'force their way into sessions' where they were not permitted. At clinics, Defendants, through fraud, obtained access to secure patient treatment and lab areas inside Planned Parenthood facilities.").

With respect to [2], "all the circumstances of an intrusion, including the motives or justification of the intruder, are pertinent to the offensiveness element. Motivation or justification becomes particularly important when the intrusion is by a member of the print or broadcast press in the pursuit of news material." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 236 (1998). "[T]he constitutional protection of the press does reflect the strong societal interest in effective and complete reporting of events, an interest that may—as a matter of tort law—justify an intrusion

that would otherwise be considered offensive." *Id.* "Thus, for example, a continuous surveillance which is tortious when practiced by a creditor upon a debtor may not be tortious when practiced by media representatives in a situation where there is significant public interest in discovery of the information sought." *Id.*; *see also Nicholson v. McClatchy Newspapers*, 177 Cal. App. 3d 509, 520 (Ct. App. 1986) (no claim for intrusion lies where the "allegation simply states that the media defendants sought out the newsworthy information" because "[t]his type of activity, at least, is within the news gathering activities which are protected by the First Amendment.").

The element of "newsworthiness" has been described as follows:

> An analysis measuring newsworthiness of facts about an otherwise private person involuntarily involved in an event of public interest by their relevance to a newsworthy subject matter incorporates **considerable deference to reporters and editors**, avoiding the likelihood of unconstitutional interference with the freedom of the press to report truthfully on matters of legitimate public interest. In general, **it is not for a court or jury to say how a particular story is best covered**. The constitutional privilege to publish truthful material ceases to operate only when an editor abuses his broad discretion to publish matters that are of legitimate public interest. By **confining our interference to extreme cases**, the courts avoid unduly limiting the exercise of effective editorial judgment. Nor is newsworthiness governed by the tastes or limited interests of an individual judge or juror; **a publication is newsworthy if some reasonable members of the community could entertain a legitimate interest in it**. Our analysis thus does not purport to distinguish among the various legitimate purposes that may be served by truthful publications and broadcasts.

*Shulman*, 18 Cal. 4th at 224–25.

"[N]ewsworthiness is not limited to 'news' in the narrow sense of reports of current events. It extends also to the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1257 (Ct. App. 2017) (celebrity abortion gossip newsworthy). Thus, "[i]t makes no difference that [a news site] may have few redeeming features, that it may express a point of view far afield from what one might consider the community's standard of decency, or that an ordinary reader may find it distasteful. The compass of the First Amendment covers a vast spectrum of tastes, views, ideas

7

1    and expressions." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 138 (2d Cir. 1984); *see also Solano v.*

2    *Playgirl, Inc.*, 292 F.3d 1078, 1089 n.8 (9th Cir. 2002) ("We do not accept Solano's argument that

3    Playgirl . . . cannot contain content that may be deemed newsworthy. Even 'vulgar' publications are

4    entitled to such guarantees. Courts are, and should be, reluctant to define newsworthiness.").

5    ### 2.3.    The Tortious Intrusion Claim Fails

6    Here, under [1] above, the claims for tortious intrusion at conferences fail. Plaintiffs cannot

7    state a claim for intrusion under Florida law because Defendant Lopez did not intrude into "private

8    quarters." *Oppenheim*, 695 F. Supp. 2d at 1308 & n.2; Lopez Decl., ¶ 15. Similarly, Plaintiffs cannot

9    state a claim for intrusion under Maryland, District of Columbia, Colorado, or Texas law because

10   neither Defendant Lopez in Maryland or D.C., nor other Defendants in Colorado or Texas,

11   "glean[ed] private information"—the substance of the conversations were not private. *Hollander*,

12   277 Md. at 60; *Randolph*, 973 A.2d at 711; *Morrison*, 119 F. App'x at 589; *Pascouau*, 185 F.3d 874;

13   Lopez Decl., ¶ 14–16. In response to written discovery, Plaintiffs identified 147 electronic files that

14   purportedly contain illegal recordings. None of those recordings contain truly "private"

15   information. *See* Exs. 32–35.[4]

16   Further, for the same reasons as stated in the concurrent motion for summary judgment filed

17   by co-defendant Daleiden, which addresses Invasion of Privacy: Cal. Const., Plaintiffs cannot

18   establish the required associational or third-party standing. *See Coulter v. Bank of Am.*, 28 Cal. App.

19   4th 923, 930 (1994) ("[A] corporation may not pursue a common law action for invasion of

20   privacy."). Because the privacy standard for out-of-state tortious intrusion is particular, like with

21   the California Constitution, associational standing fails because there would necessarily be a "need[]

22   to consult with individual members." *FOAGLA, Inc. v. 7-Eleven, Inc.*, No. EDCV 14-1432 JGB

23   (SPx), 2014 WL 12601505, at *4 (C.D. Cal. Dec. 18, 2014). Further, for third-party standing, there is

24   no hindrance to the staff members themselves joining this suit. *MD II Entm't, Inc. v. City of Dallas,*

25   *Tex.*, 28 F.3d 492, 497 (5th Cir. 1994).

26   / / /

---

27   [4] Exhibits 26 through 50 are attached to the Declaration of Jeffrey Trissell, Esq.; Exhibit 53 is

28   attached to the Declaration of Gregory Michael, Esq.

Thus, Plaintiffs can only potentially state a claim for intrusion under California's expanded privacy protections for the two restaurant meetings in Southern California and the NAF meeting in Northern California—against other Defendants. But these claims fail because Plaintiffs lack standing. There is no hindrance to their employees bringing their own claims, and no true association-wide privacy standard that can be applied here, as explained below.

Under [2] offensiveness of the intrusion, the claims also fail—both California and foreign—when balanced against Defendants' and the public's rights to a free press. This determination is properly made in connection with this motion, for where there is a "danger" that "the right to publish would suffer at the hands of a jury which, unlike the trial judge, would be more likely to use a general verdict in order to punish unpopular speech and persons," that danger must "be checked by close judicial scrutiny at the stages of litigation such as summary judgment." *Diaz v. Oakland Tribune, Inc.*, 139 Cal. App. 3d 118, 133 (Ct. App. 1983); *see also Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1050 (Ct. App. 1984) ("[T]he trial court could determine as a matter of law that . . . the publications relative to the appellant were newsworthy. Since the record thus fails to present any triable issue of fact, the trial court was justified (if not mandated) in granting summary judgment and dismiss the case against respondents by way of summary procedure."); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1146 (S.D. Cal. 2005) ("Defendants argue that the fact that almost every major American newspaper chose to print the story indicates that the topic is inherently newsworthy. . . . Because the publication was newsworthy . . . the claim for invasion of private facts is DISMISSED").

As stated above, it is both undisputable and undisputed that CMP's investigation uncovered amazingly newsworthy information which: (1) outraged the public, (2) motivated successful prosecutions, (3) motivated change in governmental policy, (4) is still being covered by news organizations today, and (5) did *not* result in any actions for defamation. *See* Daleiden Decl., ¶¶ 57-98, Exs. Q-QQ. However, in this highly politicized context, there is more than a danger that—regardless of the prohibition on content or viewpoint restrictions—the various Defendants' investigations could be punished solely because they are unpopular. Indeed, Plaintiffs assert that Defendant Lopez's and others' alleged intrusion was offensive precisely because it was meant to

9

uncover and publicize information about Plaintiffs that could then "expose those associated with Planned Parenthood to harassment, threats, and violence, which is exactly what occurred when Defendants released their smear videos." Dkt. 91, Plaintiffs' Opposition to Motion to Dismiss, 46:4–14 (May 25, 2016). In other words, Plaintiffs argue the alleged intrusion was offensive because *engaging in anti-abortion speech is offensive. Id.* This is neither offensive—as a matter of Constitutional law—nor can it form the basis of an association-wide standard needed for associational standing. This Court should grant summary judgment.

### 3.  Plaintiffs' Claims for Violation of the Federal, Florida, or Maryland Recording Statutes Fail

Plaintiffs allege that Defendant Lopez violated the Federal, Maryland, and Florida recording statutes. FAC ¶¶ 164, 227, 233. With respect to the Federal statute, Plaintiffs allege that all of the various Defendants' recordings violated it—even recordings of which Defendant Lopez played no part, such as the recordings in California, Texas, and Colorado. *See* Lopez Decl., ¶ 11. Nevertheless, Defendant Lopez addresses them here due to Plaintiffs' civil conspiracy allegations.

Notably, the Maryland and Florida statutes were based in part on the federal statute, and therefore share important similarities (and differences) such that it is appropriate to address the three statutes together.

#### 3.1.  Legal Background with Plaintiffs' Theory

##### 3.1.1.  Federal Recording Statute

Plaintiffs allege that Defendant Lopez violated 18 U.S.C. § 2511(1)(a) and (b) by "intentionally intercept[ing] the oral communications of Plaintiffs and their staff." FAC ¶ 164. A claim for violation of subdivisions (a) and (b) has the following requirements: "[1] that an interception was effected through the use of an electronic or mechanical device, [2] that it was done [intentionally],[5] [3] that it was an interception of an 'oral communication,' [] [4] that the interception

---

[5] *See United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015) (noting exchange of "willfully" for "intentionally" in statute in 1986).

occurred on the premises of a business the operation of which affected interstate commerce;"[6] [5] that there was actual use or disclosure of the intercepted recording, not mere recording;[7] and [6] that "the purpose of [making the recording was to] commit[] a criminal [or] tortious [] act."[8]

With respect to [3] above, "[t]he term 'oral communication' is defined in 18 U.S.C. § 2510(2) as 'any oral communication uttered by a person *exhibiting an expectation* that such communication is not subject to interception under circumstances *justifying such expectation*.'" *United States v. Duncan*, 598 F.2d 839, 847 (4th Cir. 1979); *see also United States v. Carroll*, 337 F. Supp. 1260, 1262 (D.D.C. 1971). With respect to the first half of the above, the "Legislature's choice of th[e] verb ['exhibiting'] is telling: it required that the expectations of privacy needed to trigger application of the statute must be exhibited; in other words they must be 'shown externally' or 'demonstrated.'" *McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1319 (11th Cir. 2017) (interpreting identical language in Florida statute). This requires the "set[ting] [of] ground rules" for the conversation, such as "suggest[ing] that the meeting was confidential or 'off the record,'" or providing "advance notice or published or displayed rules that establish[] confidentiality" or "prohibit[] note taking or recordings." *Id.*[9]

With respect to the second half of the above, "[t]he legislative history behind § 2510(2) reflects Congress's intent that *Katz v. United States*, 389 U.S. 347 (1967), serve as a guide to define communications that are uttered under circumstances justifying an expectation of privacy. Guided by *Katz*, [the] inquiry is whether the communications overheard by [the defendants] were uttered by a person (1) who has a subjective expectation of privacy, and (2) whose expectation was objectively

---

[6] *United States v. Duncan*, 598 F.2d 839, 847 (4th Cir. 1979); *see also Goodall's Charter Bus Serv., Inc. v. San Diego Unified Sch. Dist.*, 125 Cal. App. 3d 194, 201 (Ct. App. 1981) (Staniforth, J., dissenting) (same elements).

[7] *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) ("We think it is the use of the interception with intent to harm rather than the fact of interception that is critical to liability, and there was no use of the interception here.").

[8] *Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 965 (9th Cir. 1978); *see also Boddie v. Am. Broad. Companies, Inc.*, 881 F.2d 267, 270 (6th Cir. 1989) (noting how 1986 amendment to statute removed "injurious" purpose, and limited requirement to "criminal" or "tortious" purposes).

[9] *See Mozo v. State*, 632 So. 2d 623, 629 (Fla. Dist. Ct. App. 1994) (noting how Florida statute was modeled on Federal statute, including identical definition of "oral communication").

1   reasonable." *United States v. McIntyre*, 582 F.2d 1221, 1223 (9th Cir. 1978).

2   With respect to [6], there must be "an illegal [or] tortious [] act other than the recording of

3   the conversation." *Boddie v. Am. Broad. Companies, Inc.*, 731 F.2d 333, 339 (6th Cir. 1984). Thus, the

4   plaintiff "must rely on a statute violated or a tort committed separate from the interception itself, the

5   [state] anti-wiretap statute or other [state] privacy laws."[10] *Betancourt v. Nippy, Inc.*, 137 F. Supp. 2d

6   27, 32 n.5 (D.P.R. 2001). "As examples of purposes that would make a party to a conversation liable

7   for recording that conversation, the [Legislative History] lists 'blackmail' and 'defamation.'" *Thomas*

8   *v. Pearl*, 793 F. Supp. 838, 844 (C.D. Ill. 1992). "Alleged interceptions fall within the tort or crime

9   exception only where the primary motivation or a determining factor in the interceptor's actions has

10  been to injure plaintiffs tortiously" or illegally. *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK,

11  2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *see also Burleson v. Kernan*, No. C 05-1263 SI

12  (PR), 2007 WL 3478432, at *24 (N.D. Cal. Nov. 15, 2007) (same).

13  "Plaintiffs allege that Defendants secretly taped Plaintiffs' staff to further the RICO

14  conspiracy and to violate Plaintiffs' staff's privacy." Dkt. 91, Plaintiffs' Opposition to Motion to

15  Dismiss, 12:10–12 (May 25, 2016). In this respect, the Court has held that "the RICO enterprise

16  allegations, by their nature and as expressly pled in the FAC, encompass actions that occurred after

17  the interceptions at issue," and so could be the further unlawful activity. Dkt. 124, Order on

18  Motions to Dismiss & Strike, 17:20–23 (Sep. 30, 2016). Further, the Court has held that

19  "defendants' subsequent disclosure of the contents of the intercepted conversations for the alleged

20  purpose of further invading the privacy of plaintiffs' staff [could] satisfy[y] that element," *i.e.*,

21  tortious publication of private facts. *Id*. at 17:25–28.[11]

22

---

23  [10] *See also United States v. McTiernan*, 695 F.3d 882, 889 (9th Cir. 2012) ("[T]he focus of the inquiry
    is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the

24  interception—its intended use—was criminal or tortious"); *Roberts v. Americable Int'l Inc.*, 883 F.
    Supp. 499, 503 (E.D. Cal. 1995) ("[T]he court will not interpret the federal limited permission to

25  intercept oral conversations granted by § 2511(2)(d) to be negated by state law . . . which itself may
    render such interception tortious."); *Stamatiou v. U.S. Gypsum Co.*, 400 F. Supp. 431, 440 n.3 (N.D.

26  Ill. 1975) ("A fair reading of the statute, however, requires a construction that the defendants would
    be culpable only if the illegal act was something other than recording the conversation").

27  [11] The Court properly rejected Plaintiffs' argument that simultaneous privacy violations were

28  sufficient. Dkt. 124, Order on Motions to Dismiss & Strike, 18:4–7 (Sep. 30, 2016).

To base a claim of violation of the federal recording statute on RICO, the plaintiff must establish that the "recordings were essential to collecting illegal RICO income or that this was [the defendant's] intended use." *United States v. Christensen*, 624 F. App'x 466, 475 (9th Cir. 2015); *see also United States v. McTiernan*, 695 F.3d 882, 888 (9th Cir. 2012) (insufficient to allege that "the Recording was made for the purpose of committing a criminal or tortious act because . . . [the defendant] made the Recording as part of a . . . far-reaching criminal enterprise.").

With respect to tortious *publication* (which is different from tortious intrusion), there are four elements of the claim. "First, the disclosure of the private facts must be a *public disclosure*. Second, the facts disclosed must be *private facts*, and not public ones. Third, the matter made public must be one which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *Sipple*, 154 Cal. App. 3d at 1045. Fourth, "[i]t is likewise recognized, however, that due to the supreme mandate of the constitutional protection of freedom of the press even a tortious invasion of one's privacy is exempt from liability if the publication of private facts is truthful and newsworthy." *Id*. at 1046 (affirming summary judgment for tortious publication of private facts claim: "appellant's sexual orientation was already in public domain and since the articles in question did no more than to give further publicity to matters which appellant left open to the eye of the public"); *see also Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (affirming summary judgment as to federal recording claim based on tortious publication because "newsworthiness is a complete bar to liability for publication of private facts and is evaluated with a high degree of deference to editorial judgment.").[12]

### 3.1.2. Florida Recording Statute

Plaintiffs allege that Defendant Lopez violated Fla. Stat. § 934.03 when he "intentionally intercepted and/or procured other persons to intercept private oral communications" at two PPFA conferences in Florida. FAC ¶ 227. Florida law provides that a party may not "[i]ntentionally

---

[12] The federal statute does not prohibit the recording of communications for the purpose of injuring the other party using legal means. *Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 966 (9th Cir. 1978). Indeed, the intent to record illegal activity is a defense to violation of the statute. *See Adams v. Sumner*, 39 F.3d 933, 936 (9th Cir. 1994) ("When he heard the callers mention a gun, he was alerted to the possibility of illegal activity occurring in the hotel and was justified in listening to the conversation to determine whether his concern was merited.").

intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept" an "oral communication uttered by a person [1] exhibiting an expectation that such communication is not subject to interception [2] under circumstances justifying such expectation." Fla. Stat. §§ 934.03(1)(a); 934.02(2). Unlike the federal statute, there is no subsequent use or disclosure requirement. *See France v. France*, 90 So. 3d 860, 862 (Fla. Dist. Ct. App. 2012).

With respect to [1], like with the federal statute, the recorded individual must have "'shown externally' or 'demonstrated'" his expectation of privacy due to the "Legislature's choice of th[e] verb ['exhibiting']." *McDonough*, 862 F.3d at 1319 (interpreting Florida statute).

With respect to [2], like with the federal statute, "in *State v. Inciarrano* and *State v. Smith*, the [Florida Supreme] court's focus was upon the two-part test set forth in *Katz v. United States*, 389 U.S. 347, 360 (1967), *i.e.*, [i] the speaker's actual subjective expectation of privacy in his oral communications, and [ii] whether society is prepared to accept that expectation as reasonable." *Dep't of Agric. & Consumer Servs. v. Edwards*, 654 So. 2d 628, 632 (Fla. Dist. Ct. App. 1995) (citation shortened); *see also Stevenson v. State*, 667 So. 2d 410, 412 (Fla. Dist. Ct. App. 1996) ("The Florida Supreme Court has interpreted the test set forth in this definition as substantially the same test used in a Fourth Amendment right to privacy analysis.").

"Whether the Florida wiretap statute applies to a particular recording involves a matter of law." *Smith v. State*, 261 So. 3d 714, 716 (Fla. Dist. Ct. App. 2018) (citing *McDade v. State*, 154 So. 3d 292, 296–97 (Fla. 2014)).

### 3.1.3. Maryland Recording Statute

Plaintiffs allege that Defendant Lopez violated Md. Code Ann., Cts. & Jud. Proc. § 10-402 when he "willfully intercepted and/or procured other persons to intercept private oral communications" at a NAF conference in Maryland. FAC ¶ 233. Maryland law provides that a party may not "[intentionally][13] intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, an[] . . . oral . . . communication." Md. Code Ann., Cts. & Jud.

---

[13] The Maryland statute is based on the federal statute, and retains the language "willfully" from the pre-1986 federal statute. However, Maryland courts interpret "willfully" to mean "intentionally," and do not follow the pre-1986 federal cases' definition of "willfully." *Compare Deibler v. State*, 365 Md. 185, 192 (2001); *with United States v. Ross*, 713 F.2d 389, 391 (8th Cir. 1983).

Proc. § 10-402(a)(1). Unlike under Federal and Florida law, here an "[o]ral communication" means simply "any conversation or words spoken to or by any person in private conversation" and thus there is no "exhibiting" requirement. *Id.* at § 10-401(13)(i).

However, like the federal and Florida statute, Maryland courts "have consistently interpreted the word 'private' to be consistent with Fourth Amendment jurisprudence, encompassing conversations in which the participants have a 'reasonable expectation of privacy.' In determining whether a recorded conversation was 'private' under the Wiretap Act, "[courts] apply the two-pronged inquiry applicable to search and seizure cases set forth in *Katz v. United States*, 389 U.S. 347, 361 (1967)." *Agnew v. State*, 461 Md. 672, 685 (2018).

### 3.2.   The Federal, Florida, & Maryland Recording Claims Fail

#### 3.2.1.   Federal: No "Purpose" of Violating RICO or Privacy.

As stated above, "Plaintiffs allege that Defendants secretly taped Plaintiffs' staff to further the RICO conspiracy and to violate Plaintiffs' staff's privacy" via tortious publication. Dkt. 91, Plaintiffs' Opposition to Motion to Dismiss, 12:10–12 (May 25, 2016). As argued by Defendants at the motion to dismiss stage, the concept that the recordings were made for the *purpose* of violating RICO is logically difficult. The "purpose" requirement is generally more discrete, and fits well with "blackmail" or "defamation." *Thomas*, 793 F. Supp. at 844. Nobody *intends* to violate RICO like they *intend* to blackmail someone, and so to establish that the "purpose" was to violate RICO, the plaintiff must establish that the "recordings were essential to collecting illegal RICO income or that this was [the defendant's] intended use." *Christensen*, 624 F. App'x at 475. Here, Plaintiffs pleaded a RICO conspiracy to produce and transfer fake IDs. Dkt. 124, Order on Motions to Dismiss & Strike, 11:21–13:9 (Sep. 30, 2016). But there is no evidence that Defendants intended to use the recordings to further a fake ID criminal empire. *See* Daleiden Decl. ¶¶ 47; Lopez Decl., ¶ 10.

Plaintiffs similarly cannot establish that the purpose of the recordings was to engage in tortious publication. As noted above, the federal recording statute does not prohibit the recording of communications for the purpose of injuring the other party using legal means, *Moore*, 589 F.2d at 966, and so Plaintiffs have to meet the strict requirements of tortious publication (which, due to First Amendment concerns, are significantly higher than with tortious intrusion).

Here, Plaintiffs cannot meaningfully argue that Defendants intended, or had the purpose of, publishing private facts (the second element), and in fact, they did not so publish. *Sipple*, 154 Cal. App. 3d at 1045; Daleiden Decl. ¶¶ 53; Lopez Decl., ¶¶ 14–16. The type of privacy required here is not relative like with tortious intrusion—it means literally private—like with privacy under the California Constitution. Thus, where an individual is well known in the gay community as gay, he has no claim against a newspaper for further publicizing that information. *Sipple*, 154 Cal. App. 3d at 1047. Further, if an individual has ever shown his face to the public, he has no claim for further dissemination of it under tortious intrusion: "[a] person's physical features are not confidential." *See Vo v. City of Garden Grove*, 115 Cal. App. 4th 425, 448 (2004). Similarly here, the information discussed at industry conferences is well known *to the other conference attendees*, and so is therefore not private. And the names and faces of abortion providers are not private because they are known *to others in the industry. See* Lopez Decl., ¶¶ 14–16.

Moreover, even if "private facts" were published, the newsworthiness of CMP's publications of such facts is an *absolute* defense. *Sussman*, 186 F.3d at 1202. The sheer number of Congressional investigations, prosecutions, and media stories supports the newsworthiness of CMP's publications. And there has been no identification by Plaintiffs of alleged "private facts" that were falsely represented in the CMP videos. Even if there were, any such alleged facts must be presumed true, as noted *supra*.[14] Plaintiffs and other observers might find CMP's story distasteful, but content and viewpoint restrictions are impermissible here. *Lerman*, 745 F.2d at 138; *Solano*, 292 F.3d at 1089 n.8. The fact is that CMP's story has been found newsworthy. *See Four Navy Seals*, 413 F. Supp. 2d at 1146 (granting motion to dismiss).

### 3.2.2.   Federal & Florida: No "Exhibition" of an Expectation of Privacy.

As stated above, Plaintiffs identified 147 files which they believe contain illegal recordings.

---

[14] Plaintiffs have abandoned their prior allegations that the CMP videos falsely depicted the conversations therein, including disclaiming any reliance on their earlier report from the discredited "Fusion GPS" organization. *See* Dkt. 286, Eighth Case Management Statement, 7:17–22 (July 10, 2018); *see also Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc v. Smith*, 913 F.3d 551, 559 n. 6 (5th Cir. 2019) (dismissing PPGC's "misleading" allegation because "the record reflects that OIG had submitted a report from a forensic firm concluding that the video was authentic and not deceptively edited. And the plaintiffs did not identify any particular omission or addition in the video footage.").

1    *See* Exs. 32–35. But in none of them does the recorded individual visibly or audibly communicate

2    that the conversation was confidential or off the record. In fact, in two videos, the recorded

3    individuals expressly indicate their belief that the location is not private. In one video, PPFA's

4    Doe1005 states that "you never know" when someone who worked for Planned Parenthood might

5    turn against the organization. *See* #30, at 11:41:45.[15] Thus, it would be impossible for her to have a

6    reasonable expectation of privacy, since she acknowledges that at any time a Planned Parenthood

7    employee/conference attendee might turn pro-life and speak out against the organization. ███████

8    ████████████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████████████

10   ██████████████████████████ Thus, like Doe1005, she does not have a subjective expectation of

11   privacy even when surrounded by her pro-abortion peers. This is in line with PPFA's President at

12   the time, Cecile Richards, who explained that some videos taken in California (and covered by the

13   federal statute) were recorded in a "non-confidential" setting. *See* Dkt. 112, Notice of Manual

14   Filing, ¶ 10 (Jul. 28, 2016).

15            Generally, during all of the depositions, no witness could identify times in the videos when

16   recorded individuals physically "exhibited" their expectation of privacy. Defendants do not recall

17   any such "exhibiting" either. Lopez Decl., ¶¶ 15–16; Daleiden decl., ¶¶ 20-22. Instead, Plaintiffs

18   argued that it was exhibited by the fact the parties they were attending a closed conference, or

19   visiting closed offices. [16] This is not sufficient. In *McDonough*, a citizen who had filed complaints

20   about a police officer was invited to a meeting with the Chief of Police to discuss his concerns. 862

21   F.3d at 1317. The fact that the meeting was between two police officers and two citizens in the

22   police station was insufficient itself to be the "exhibition" of the expectation of privacy where no

23   party "mentioned anything about the meeting being confidential in nature, or that recording or note

24   taking was in any way discouraged or prohibited." *Id*. 1317, 1319. Thus, except with respect to the

25   _____

     [15] Citations to "#" are to the file no. on the external hard drive labeled Ex. 35.

26   [16] *See, e.g.*, Ex. 53, PPFA Depo., 190:20–191:5, 199:15–200:23; Ex. 39, PPNorCal Depo., 65:6–10,

27   66:14–67:12, 81:24–82:2; Ex. 41, PPOSB Depo., 199:25–201:20; Ex. 43, PPCCC Depo., 83:14–
     84:23; Ex. 37, PPPSGV Depo., 42:16–45:25; Ex. 42, PPGC/CFC Depo., 132:18–133:14; *see also* Ex.

28   44, PPLA Depo., 301:10–302:5.

meetings that arguably had non-disclosure agreements (PPGC site visit; NAF 2014 and NAF 2015), the federal recording claims necessarily fail. There was nothing at the ARHP conference, the three PPFA conferences, the PPRM site visit, or the California lunch meetings by which the recorded individuals "exhibited" an expectation of privacy. The PPFA conference contracts are noticeably absent of any confidentiality or privacy provisions. Ex. 53, PPFA Depo., Ex. 1910, 1915, 1920.

### 3.2.3.  Federal, Florida, & Maryland: No Reasonable Expectation of Privacy.

Under the subjective and objective expectation of privacy analysis, the corporation cannot merely assert that *it* had a subjective expectation of privacy: rather, the corporation must establish that its "employees had a reasonable expectation that their communications" were private. *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 25 (D.D.C. 2012) ("[T]he relevant inquiry calls for the consideration of a host of intensely fact-bound circumstances."). Anticipating this, the Court previously stated the following:

> [A]s to both the [Federal,] Florida and Maryland claims … defendants complain that the FAC lacks necessary facts to support the reasonableness of the expectation of privacy, including which exact conversations were recorded, the specific circumstances for each of those conversations, and why the expectation of confidentiality was reasonable given that there were hundreds of employees attending a multi-day conference. However, given the allegations in this case—the surreptitious recording of many hours at the conference of conversations with dozens of individuals that were only turned over to plaintiffs after the inception of this lawsuit— plaintiffs are not in a position to provide more specifics at this juncture. Those specifics will be tested at summary judgment.

Dkt. 124, Order on Motions to Dismiss & Strike, 37:26–38:5, 42:2–10 (Sep. 30, 2016).

Yet Plaintiffs have not endeavored to undertake this analysis and did not gather the information. The depositions have revealed that Plaintiffs did not approach their employees individually to determine whether they had a subjective expectation of privacy, instead haphazardly only approaching one or two—and not necessarily asking them about their actual expectation of privacy.[17] Thus, the only real evidence the parties have are the statements from PPFA's Doe1005,

[17] Ex. 53, PPFA Depo., 15:22–16:13, 151:19-24, 152:19-24, 169:5-12, 183:24–184:14, 190:10-191:23, 196:13-197:20, 211:14-212:17, 230:11–231:13, 235:19–236:14, Ex. 39, PPNorCal Depo., 24:24–25:5, 58:22–59:2, 282:11–286:11; Ex. 44, PPLA Depo., 129:21–130:1, 241:5–243:16, 262:23–265:8; Ex. 41,

1   ██████████, and Cecile Richards. *See* #30, at 11:41:45; ████████ Dkt. 112, Notice of

2   Manual Filing, ¶ 10 (Jul. 28, 2016).

3       With respect to an objectively reasonable expectation of privacy, there are three contexts at

4   issue here: (1) restaurant/bar meetings; (2) conferences; and (3) offices. With respect to the first,

5   this concerns meetings at restaurants in California, and meetings in the public parts of the hotels in

6   Florida—the bar, the lobby, etc. #76–86 (restaurant), 106–11, 115–20 (restaurant), 22, 32–33 (hotel

7   bars). Under the *Katz* analysis there is simply no reasonable expectation of privacy in a public

8   restaurant, period. *See United States v. Watson*, 423 U.S. 411, 423 (1976) (arrest did not violate

9   Fourth Amendment because it occurred in public restaurant); *United States v. Gonzalez*, No. CRIM

10  07-748 (FSH), 2008 WL 4837468, at *2 (D.N.J. Oct. 31, 2008) ("[N]o oral communication of

11  Benitez warranted protection under the statute because Benitez's statements, both in talking to

12  Perez and in talking on his cell phone, were made out loud at a table in a public restaurant, and thus

13  did not exhibit a reasonable expectation of privacy under the circumstances."); *Wentz v. Project

14  Veritas*, No. 6:17-cv-1164-Orl-18GJK, 2019 WL 1716024, at *5 (M.D. Fla. Apr. 16, 2019) (summary

15  judgment granted: "the Bar Conversation took place in a public hotel bar adjacent to the hotel

16  lobby").[18]

17      With respect to an objectively reasonable expectation of privacy at the restricted spaces at

18  the conferences,[19] the Court previously noted the "absence of any case . . . on similar facts." Dkt.

---

19  PPOSB Depo., 18:23–19:7, 187:6–188:7, 197:24–198:14; Ex. 43, PPCCC,47:4–48:17, 79:2–81:2; Ex.

20  37, PPPSGV, 13:20–16:10, 43:17–44:2, 48:18–23, 59:5–20, 259:19–260:16; Ex. 46, PPRM, 13:15–
    14:16, 78:3–80:25, 82:24–84:9, 150:7–151:11; Ex. 42, PPGC/CFC, 217:12–218:2, 129:21–130:5,

21  130:23–132:16, 138:2–139:10.

22  [18] *See also Smith v. Bd. of Cty. Comm'rs for Cty. of Otero, N.M.*, 316 F. App'x 786, 789 (10th Cir.
    2009) ("[T]he Smiths retained no reasonable expectation of privacy in the public areas of their

23  restaurant."); *Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cty., Kan.*, 492 F.3d 1164,
    1179 (10th Cir. 2007) ("Macon did not have any reasonable expectation of privacy in areas of the

24  store where the public was invited to enter and to transact the business"); *Carolan v. Nuno*, No. C-
    93-4246 DLJ, 1996 WL 784565, at *3 (N.D. Cal. Dec. 19, 1996) ("Plaintiff did not have a reasonable

25  expectation of privacy in the Bench & Bar Restaurant"); *People v. Juan*, 175 Cal. App. 3d 1064, 1069
    (Ct. App. 1985) ("Alberto Juan had no reasonable expectation of privacy with regard to his jacket

26  left draped over a chair at an empty table ina restaurant open to the public").

27  [19] #124, 138–40 (ARHP), 2, 35, 68–69, 87–88, 96–103 (NAF 2014), 1, 34, 93–95, 114, 121, 142
    (Forum), 23, 36–37, 60, 65–67, 73–74, 89, 104–05, 112–13, 122–23 (MeDC), 5–6, 12–13, 16–17, 27–

28  28, 30–31, 62–64 (Nat'l), 4, 9–11, 14–15, 18–21, 24–26, 61, 70–72, 90–92, 141 (NAF 2015).

124, Order on Motions to Dismiss & Strike, 41:21 (Sep. 30, 2016). For this situation, the closest analogy available in the case law is to an employee's expectation of privacy in the common area of his workplace. This expectation of privacy, or lack thereof, is comparable to the corporate representatives' expectation of privacy in the shared spaces of conferences.

At the ARHP,[20] NAF and PPFA conferences, the corporations, through their representatives, came together in the meeting space to converse with and in the presence of each other, as well as others who were not corporate representatives, such as individuals attending in their personal capacity, presenters, exhibitors, and hotel staff. Employees have a reasonable expectation of privacy in private areas set apart for them, such as offices, locker rooms, or filing cabinets, but not beyond. This is because "the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." *United States v. Ross*, 456 U.S. 798, 822–23 (1982). Similarly, Plaintiffs' corporate representatives attending a conference would have a reasonable expectation of privacy in any areas set aside for them, such as their hotel rooms or where the individual participants in a conversation had taken steps to exclude non-participants from overhearing.

But the common areas of a workplace, accessible by multiple employees but not the general public, are not sufficiently private under a Fourth Amendment analysis to create a reasonable expectation of privacy. There is a certain amount of *relative* privacy where only other employees are permitted to access a room, but it not a sufficient *true* privacy to be protected under the Fourth Amendment. Similarly here, there was a certain amount of relative privacy at the conferences since the majority of attendees were assumed to be, in a broad sense, like-minded pro-abortion individuals. But this is not the privacy required for the Fourth Amendment. *See Gray v. Royal*, 181 F. Supp. 3d 1238, 1254 (S.D. Ga. 2016) ("An additional and more comprehensive reason requiring Summary Judgment is that Williams placed the recording device in a common-area" of the workplace). The same reasonable construction of the Fourth Amendment dictates that corporations whose representatives attend conferences with hundreds of attendees, featuring exhibitor halls,

---

[20] The ARHP conference was also simply a public one where Defendants could have walked in off the street and attended, #124, 138–40. They were not exhibitors, but mere attendees. Daleiden Decl., ¶ 10.

1  presentations, awards ceremonies, dinners, and poolside cocktail receptions, do not have a reasonable

2  expectation of privacy in the conversations that take place in these shared, communal settings.[21]

3  With respect to the site visits in Denver and Houston (in which Lopez did not participate),

4  #125–37, 143–47 (Denver), 3, 7–8, 38–59 (Houston), the analysis above for conferences remains the

5  same: information shared with various defendants, as with coworkers, is not private—otherwise it

6  would not be shared. And the Supreme Court has made clear that the analysis is no different even

7  where access is gained by misrepresentation. If the information was not so private as to hide it from

8  Robert Sarkis or Susan Tennenbaum, even if Plaintiffs would not have shared it with David Daleiden

9  or Sandra Merritt, then it is not sufficiently private under a Fourth Amendment analysis. *See Hoffa v.*

10  *United States*, 385 U.S. 293, 302 (1966); *Lewis v. United States*, 385 U.S. 206, 211 (1966).

11  Plaintiffs have previously hinted at a distinction between governmental vs. private party

12  deception. Dkt. 91, Plaintiffs' Opposition to Motion to Dismiss, 52:25 (May 25, 2016) ("Since

13  Defendants are not in law enforcement, [this argument] does not help them."). But this evinces

14  simply a misunderstanding of the principle. "The invited informer doctrine is part of a greater

15  principle of fourth amendment jurisprudence: 'a person has no legitimate expectation of privacy in

16  information he voluntarily turns over to third parties.'" *United States v. Aguilar*, 883 F.2d 662, 698

17  (9th Cir. 1989);[22] *see also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1219 (9th Cir. 2019)

18  ("Bad faith of this sort does not, however, implicate the reasonable privacy expectation protected

19  by the Fourth Amendment"); *Stewart v. Evans*, 351 F.3d 1239, 1244 (D.C. Cir. 2003) ("Fourth

20  Amendment [reasonable expectation of privacy] does not prohibit the obtaining of information

21  revealed to a third party . . . even if the information is revealed on the assumption that it will be used

22

---

23  [21] *See People v. Thompson*, 205 Cal. App. 3d 1503, 1509 (Ct. App. 1988); *Faulkner v. State*, 317 Md. 441, 448 (1989); *Freeman v. United States*, 201 A.2d 22, 24 (D.C. 1964); *People v. Rosa*, 928 P.2d

24  1365, 1369 (Colo. App. 1996); *compare Bateman v. State*, 513 So. 2d 1101, 1102 (Fla. Dist. Ct. App. 1987) (discussing "a public employee's expectation of privacy in an office, desk or file cabinet"); *see*

25  *also United States v. Buettner-Janusch*, 646 F.2d 759, 766 (2d Cir. 1981); *Tancredi v. Malfitano*, 567 F. Supp. 2d 506, 511 (S.D.N.Y. 2008); *Brannen v. Kings Local Sch. Dist. Bd. of Edn.*, 144 Ohio App.

26  3d 620, 630 (2001); *Thompson v. Johnson Cty. Cmty. Coll.*, 930 F. Supp. 501, 507 (D. Kan. 1996); *Com. v. Welch*, 420 Mass. 646, 654 (1995); *Martinez v. State*, 880 S.W.2d 72, 77 (Tex. App. 1994).

27  [22] *Superseded by statute on other grounds*, P.L. No. 99–603, 100 Stat. 3359, *as stated in United States v.*

28  *Gonzalez–Torres*, 309 F.3d 594, 599 (9th Cir. 2002).

1  only for a limited purpose and the confidence placed in the third party will not be betrayed.").

2  Thus, Plaintiffs' staff had no objectively reasonable expectation of privacy under the Fourth

3  Amendment standard applicable to a Federal, Florida, and Maryland wiretapping claim, and so the

4  claims must fail.

5  ### 3.2.4.  Standing and Other Problems

6  Finally, on top of the above arguments, there are fundamental problems with certain of

7  Plaintiffs' claims. According to the complaint, all Plaintiffs are bringing a claim for violation of the

8  Florida recording statute. FAC 59:5–8, ¶ 227. However, according to their interrogatory responses,

9  no PPNorCal personnel were recorded in Miami or Orlando. Ex. 34. Also, PPLA's only claim is for

10  recording of Deborah Nucatola (who was jointly claimed by PPLA and PPFA). ███████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  Therefore, PPLA and PPMM lack standing and summary judgment should be granted with respect to

17  PPNorCal's, PPMM's, and PPLA's claim for violation of Fla. Stat. § 934.03.

18  Similarly, according to the complaint, the following Plaintiffs are bringing a claim for

19  violation of the Maryland recording statute: PPFA, PPNorCal, PPPSW, PPMM, PPOSB,

20  PPGC/PPCFC, and PPRM. FAC 60:10–13, ¶ 233. ████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  Therefore, summary judgment should be granted with respect to PPFA, PPNorCal, PPPSW,

26  PPMM, and PPOSB's claims for violation of Md. Code Ann., Cts. & Jud. Proc. § 10-402, leaving

27  only (1) PPMM, (2) PPGC, (3) PPCFC, and (4) PPRM.

28  Further, PPFA claims Ms. Lisa David as an individual unlawfully recorded. *See* #36. ████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ███████████████████████████████████████   Therefore, PPFA has no standing to bring

4 any claims on her behalf or assert that Defendants recorded PPFA's speech.

5 **4.     Defendant Lopez Did Not Trespass at the PPFA Conferences**

6     PPFA alleges that Defendant Lopez trespassed at its conferences in Miami, Orlando, and

7 Washington D.C. FAC ¶ 192.[23] Under both Florida and District of Columbia law, "[t]he tort of

8 trespass is defined as 'an unauthorized entry onto property that results in interference with the

9 property owner's possessory interest therein." *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053,

10 1060 (D.C. 2014); *see also Winselmann v. Reynolds*, 690 So. 2d 1325, 1327 (Fla. Dist. Ct. App. 1997)

11 ("[T]he aggrieved party must have had an ownership or possessory interest in the property at the

12 time of the trespass.").

13     To establish a "possessory interest," PPFA "must demonstrate that it has a recognized

14 possessory interest in the [conference area] . . . meaning the ability to control and exclude others

15 from using those areas." *Greenpeace*, 97 A.3d at 1060; *see also Annex Indus. Park, LLC v. Corner*

16 *Land, LLC*, 206 So. 3d 739, 741 (Fla. Dist. Ct. App. 2016) ("exclude unauthorized persons from

17 interfering with that right"). "Exclusive" means just that: "exclusive possession of the subject

18 premises as against all the world, including the owner." *Harnett v. Washington Harbour Condo. Unit*

19 *Owners' Ass'n*, 54 A.3d 1165, 1172 n.2 (D.C. 2012); *see also Turner v. Fla. State Fair Auth.*, 974 So.

20 2d 470, 473 (Fla. Dist. Ct. App. 2008) ("exclusive even of the landlord"); *Young v. Harrison*, 284

21 F.3d 863, 868 (8th Cir. 2002) (summary judgment granted with respect to trespass claim because

22 plaintiff was "guest" not "tenant").

23     Here, the contracts at issue make clear that PPFA did not have "exclusive" control over the

24 premises assigned for their use by the various hotels. ████████████████████████

25 ████████████████████████████████████████████████████

---

26 [23] Plaintiffs also claim trespass at PPGC and PPRM's offices in Texas and Colorado. Defendant

27 Lopez does not address those claims because he did not engage in that conduct, but he does
incorporate by reference Defendant Daleiden's arguments as to those trespasses, as the argument

28 there (whether misrepresentation vitiates consent) applies equally to the trespasses at issue here.



**5.   Defendant Lopez Cannot Be Liable For Breach of the NAF Nondisclosure Agreement**

For the reasons stated in the concurrent summary judgment motion filed by Defendant BioMax, Plaintiffs have no claim for Breach of Contract—including breach of the NAF agreements.

As a result, Plaintiffs have no claim against Defendant Lopez for any alleged breach of the NAF nondisclosure agreement that he signed. This is because: (1) Plaintiffs are not third-party beneficiaries of that agreement; (2) the nondisclosure agreement is too vague to be enforced, and (3) any breach of it did not cause Plaintiffs' damages.

**6.     Defendant Lopez Cannot Be Liable For RICO**

For the reasons stated in the concurrent summary judgment motion filed by Defendants CMP and Rhomberg/Newman, Plaintiffs have no claim for RICO. The arguments in those motions apply equally to Defendant Lopez, such that the RICO claim should be dismissed as to him. Notably, Defendant Lopez did not use any purportedly false identification, and provided his true name when he attended various conferences. *See* Lopez Decl., ¶¶ 9–10.

**7.     Defendant Lopez Cannot Be Liable For Fraud**

For the reasons stated in the concurrent summary judgment motion filed by Defendant CMP, Plaintiffs have no claim for fraud. This is because Plaintiffs have no proximately caused damages, which is required for a claim for fraud.

**8.     Defendant Lopez Cannot Be Liable For Unfair Business Practices**

For the reasons stated in the concurrent summary judgment motion filed by Defendant CMP, Plaintiffs have no claim for unfair business practices. This is because (1) any "market" in human fetal tissue is illegal under federal and state law; (2) CMP was not a competitor to Plaintiffs nor was it seeking advantage vis a vis Plaintiffs within a defined legal market; and (2) the utility of CMP's conduct outweighed any harm flowing from it.

# CONCLUSION

For the foregoing reasons, this Court should grant the present motion for summary judgment and dismiss Defendant Lopez from this case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

May 22, 2019,

/s/ Charles S. LiMandri
Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
B. Dean Wilson (CA Bar No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel:  (858) 759-9948
Facsimile:  (858) 759-9938
cslimandri@limandri.com
pjonna@limandri.com
jtrissell@limandri.com