Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
B. Dean Wilson (CA Bar No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel:  (858) 759-9948
cslimandri@limandri.com

Denise M. Harle (CA Bar No. 275561)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., NE
Suite D1100
Lawrenceville, GA 30043
Tel: (770) 339-0774
dharle@ADFlegal.org

Harmeet K. Dhillon (CA Bar No. 207873)
Gregory R. Michael (CA Bar No. 306814)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
415-433-1700
415-520-6593 (fax)
harmeet@dhillonlaw.com

*Attorneys for Defendant David Daleiden*

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

Matthew F. Heffron, *pro hac vice*
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
501 Scoular Building
Omaha, NE 68114
Tel: (312) 782-1680
mheffron@thomasmoresociety.org

*Attorneys for Defendant David Daleiden*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

PLANNED PARENTHOOD
FEDERATION OF AMERICA, INC., et al.,

Plaintiff,

vs.

THE CENTER FOR MEDICAL
PROGRESS, et al.,

Defendants.

Case No. 3:16-CV-00236 (WHO)

Hon. William H. Orrick III

Reply in Support of Defendant
David Daleiden's Motion for
Summary Judgment

Hearing Date: July 17, 2019, 2:00 p.m.
Courtroom 2, 17th Floor

# SEALED VERSION

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

REPLY ARGUMENT ....................................................................................................1

1.    Plaintiffs' Claims Under the Cal. Invasion of Privacy Act, Penal Code §§ 632 & 634 Fail ....................................................................................1

      1.1.    Factual Background ...................................................................1

      1.2.    Plaintiffs' Standing Arguments Regarding §§ 632 and 634 Fail................. 2

      1.3.    Nucatola and Gatter Admitted the Restaurant Conversations Could be Overheard .................................................................. 6

      1.4.    PPNorCal Admitted the Doe8001 and Doe8002 Conversations Could be Overheard.....................................................................7

      1.5.    The Remaining 2014 NAF Tradeshow Recording Claims Fail.................. 8

      1.6.    Defendants Did Not "Intentionally" Record "Confidential Communications" ........................................................................ 8

      1.7.    Summary Judgment is Appropriate Based on Cal. Penal Code § 633.5.................................................................................... 8

2.    Plaintiffs' Claim for Invasion of Privacy: Cal. Const. Fails ................................... 9

      2.1.    The Recordings Do Not Contain Information Protected by the Cal. Constitution ..................................................................... 9

      2.2.    There is no Basis for Third-Party Standing ............................... 11

      2.3.    The Newsworthiness of CMP's Publications Defeats Plaintiffs' Claims ..................................................................13

3.    Plaintiffs' Claims for Fraud and Conspiracy to Defraud Fail................................14

CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

*Cases:*

Ades v. Omni Hotels Mgmt. Corp. .................................................................4
    46 F. Supp. 3d 999 (C.D. Cal. 2014)

Am. Home of Scis., Inc. v. California Sch. of Modern Scis., Inc. .................4
    No. B187642, 2006 WL 3076390 (2006)

Ashton v. KoonsFuller, P.C. .......................................................................14
    No. 05-16-00130-CV, 2017 WL 1908624 (Tex. App. May 10, 2017)

Attias v. CareFirst, Inc .............................................................................14
    365 F. Supp. 3d 1 (D.D.C. 2019)

Baughman v. State of California .................................................................14
    38 Cal. App. 4th 182 (1995)

Brooks v. City of Turlock ..............................................................................7
    15 F.3d 1083 (9th Cir. 1993)

Celotex Corp. v. Catrett .............................................................................14
    477 U.S. 317 (1986)

ChriMar Sys. Inc. v. Cisco Sys. Inc. ...........................................................6
    312 F.R.D. 560 (N.D. Cal. 2016)

Civic W. Corp. v. Zila Indus., Inc. ..............................................................4
    66 Cal. App. 3d 1 (1977)

Cnty. of L.A. v. L.A. Cnty. Emp. Relations Comm'n ..............................13
    56 Cal. 4th 905 (2013)

Cohen v. Cowles Media Co. ........................................................................15
    501 U.S. 663 (1991)

Collins v. eMachines, Inc. ..........................................................................14
    202 Cal. App. 4th 249 (2011)

Cont'l Ins. Co. v. Cota ..............................................................................3, 9
    No. 07-5800 SC, 2010 WL 383367 (N.D. Cal. Jan. 27, 2010)

Cty. of Los Angeles v. Los Angeles Cty. Employee Relations Com. ...........9
    56 Cal. 4th 905 (2013)

Deteresa v. Am. Broad. Companies, Inc. ...................................................15
    121 F.3d 460 (9th Cir. 1997)

Does 1-10 v. Univ. of Washington ..............................................................12
    695 F. App'x 265 (9th Cir. 2017)

Faulkner v. ADT Sec. Servs., Inc. ................................................................6
    706 F.3d 1017 (9th Cir. 2013)

REPLY ISO DEF. DALEIDEN'S MSJ — 3:16-CV-236

# TABLE OF AUTHORITIES

*Cases:*

Galveston Newspapers, Inc. v. Norris ............................................................................15
    981 S.W.2d 797 (Tex. App. 1998)

Gensburg v. Lipset ...................................................................................................9
    No. C-93-3449-WHO (N.D. Cal. Oct. 4, 1994)

Hataishi v. First Am. Home Buyers Prot. Corp. .............................................................7
    223 Cal. App. 4th 1454 (2014)

In re Trever P. .......................................................................................................9
    14 Cal. App. 5th 486 (Ct. App. 2017)

In re Yahoo Mail Litig. ...........................................................................................9
    7 F. Supp. 3d 1016 (N.D. Cal. 2014)

Kearney v. Salomon Smith Barney, Inc. .......................................................................7
    39 Cal. 4th 95 (2006)

Kight v. CashCall, Inc. ............................................................................................2
    200 Cal. App. 4th 1377 (2011)

Kimmel v. Goland ..................................................................................................3
    51 Cal. 3d 202 (1990)

La Luna Enterprises, Inc. v. CBS Corp. .....................................................................15
    74 F. Supp. 2d 384 (S.D.N.Y. 1999)

Lieberman v. KCOP Television, Inc. .......................................................................2, 3
    110 Cal. App. 4th 156 (2003)

McCormack v. Herzog ...........................................................................................11
    788 F.3d 1017 (9th Cir. 2015)

McNairy v. C.K. Realty ............................................................................................3
    150 Cal. App. 4th 1500 (2007)

Mongols Nation Motorcycle Club, Inc. v. City of Lancaster ..............................................4
    145 Cal. Rptr. 3d 122 (2012)

Nat'l Abortion Fed'n v. Ctr. for Med. Progress ..............................................................3
    No. 15-CV-03522-WHO, 2016 WL 454082 (N.D. Cal. Feb. 5, 2016

Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc. ...........12
    143 Cal. App. 4th 1284 (Ct. App. 2006)

Penley v. McDowell Cty. Bd. of Educ. .......................................................................14
    876 F.3d 646 (4th Cir. 2017)

People v. Superior Court of Los Angeles Cty. .................................................................8
    70 Cal. 2d 123 (1969)

# TABLE OF AUTHORITIES

*Cases:*

Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress .................................................. 4
    735 F. App'x 241, 248 (9th Cir. 2018)

Quality Towing, Inc. v. Jackson ................................................................................................ 3, 9
    No. 15-CV-01756-PSG, 2016 WL 778010 (N.D. Cal. Feb. 29, 2016)

Reynolds v. City & Cty. of San Francisco .................................................................................... 6
    576 F. App'x 698 (9th Cir. 2014)

Risinger v. SOC, LLC .................................................................................................................. 7
    306 F.R.D. 655 (D. Nev. 2015)

Roberts v. Gulf Oil Corp. ........................................................................................................... 10
    147 Cal. App. 3d 770 (Ct. App. 1983)

Safari Club Int'l v. Rudolph ......................................................................................................... 7
    862 F.3d 1113 (9th Cir. 2017)

Saucier v. Countrywide Home Loans .......................................................................................... 14
    64 A.3d 428 (D.C. 2013)

Sherban v. Richardson ............................................................................................................... 14
    445 So. 2d 1147 (Fla. Dist. Ct. App. 1984)

StemExpress LLC v. Ctr. for Med. Progress ................................................................................. 3
    No. BC589145 (Cal. Super. Ct. Aug. 21, 2015)

United States v. Taylor ................................................................................................................. 6
    166 F.R.D. 356 (M.D.N.C.)

Valley Equip. Leasing, Inc. v. McGriff, Seibels & Williams of Oregon, Inc. ............................... 14
    No. 14-CV-02383-CMA-NYW, 2016 WL 1697861 (D. Colo. Apr. 28, 2016)

Vo v. City of Garden Grove .......................................................................................................... 9
    115 Cal. App. 4th 425 (2004)

Wilkins v. Nat'l Broad. Co. .......................................................................................................... 15
    71 Cal. App. 4th 1066 (1999)

*Federal Statutes:*

Fed. R. Civ. P. 30(b)(6) ........................................................................................................ 5, 6, 7

FED. R. CIV. P. 56(c) ................................................................................................................... 14

*Other Statutes:*

9th Cir. R. 36-3 (c ) ...................................................................................................................... 3

Civ. L.R. 34(e) ............................................................................................................................. 3

# TABLE OF AUTHORITIES

***Other Statutes:***

Cal. Penal Code § 632 ........................................................................ 1, 2, 3, 6, 7, 8

Cal. Penal Code § 632(b) ........................................................................ 2

Cal. Penal Code § 633.5 ........................................................................ 8, 9

Cal. Penal Code § 634 ........................................................................ 1, 2

Cal. Penal Code § 637 ........................................................................ 3

Cal. Penal Code § 637.2 ........................................................................ 2, 3


***Other Authorities:***

59 Am. Jur. 2d Parties § 32 (May 2019) ........................................................................ 11

82 Cal. Ops. Cal. Att'y Gen. 148 (1999) ........................................................................ 9

Complaint, *John and Jane Does 1–10 v. University of Washington and David Daleiden* ................. 12
    Case No. 2:16-cv-01212 (W.D. Wash. Aug. 3, 2016), 2016 WL 9076337

Complaint, *The People of the State of California v. David Daleiden* ........................................ 12
    Case No. 2502505 (Cal. Super. Ct. Mar. 28, 2017)

KIMBERLY A. GAAB & SARA C REESE ........................................................................ 4
    CAL. PRAC. GUIDE: CIV. PROC. BEFORE TRIAL CLAIMS & DEFENSES (2018)

Nathan Siegel, Publication Damages in Newsgathering Cases ............................................. 15
    19 COMM. LAW. 11 (2001)

# INTRODUCTION

For the reasons stated in Defendant David Daleiden's moving papers, summary judgment should be granted with respect to the claims in which he specifically participated. These include (1) the Ninth and Tenth Claims for Relief – Violation of Cal. Penal Code § 632 and § 634; (2) the Fourteenth Claim for Relief – Invasion of Privacy: Cal. Const.; and (3) the Eighth Claim for Relief – Fraudulent Misrepresentation. The remaining causes of action are addressed by various co-defendants' motions for summary judgment, and are expressly incorporated herein by reference.[1]

# REPLY ARGUMENT

## 1. Plaintiffs' Claims Under the Cal. Invasion of Privacy Act, Penal Code §§ 632 & 634 Fail

### 1.1. Factual Background

As stated in Daleiden's moving papers, according to the complaint, eight Plaintiffs are bringing a claim for violation of the California recording statute: PPFA, PPNorCal, PPPSW, PPMM, PPOSB, PPGC, PPCFC, and PPRM. FAC 57:8–10. Now Plaintiffs have confirmed that no defendant "secretly taped the staff of Plaintiffs PPPSW, PPGC, PPRM, PPOSBC, or PPMM in California." Plt. Opp. 52 n.35 (Dkt. 662). This leaves only three Plaintiffs: PPFA, PPNorCal, and PPGC/CFC. Their claims are summarized below.

1. PPFA's claim for a stationary camera recording Dr. Nucatola at the 2014 NAF tradeshow while conversing with Merritt and Baxter (non-party). #69, 87.

2. PPFA's claim for Daleiden recording Dr. Nucatola at the 2014 NAF tradeshow. #68, 88.[2]

3. PPFA's claim for Daleiden recording Doe1023 at the 2014 NAF tradeshow. #35.

4. PPFA's claim for Daleiden and Merritt recording Dr. Nucatola at a restaurant in Southern California. #68–69, 76–88.

5. PPFA's claim for Daleiden and Merritt recording Dr. Gatter and Laurel Felczer at a restaurant in Southern California. #106–11, 115–20.

6. PPNorCal's claim for Daleiden recording Doe8001 at the 2014 NAF tradeshow. #98.

---

[1] Except where noted, emphasis is always added, and citations, quotation marks, brackets, and ellipses are always omitted. To keep the trespass arguments consolidated, they are addressed solely in Defendant Lopez's reply brief which Defendant Daleiden expressly incorporates by reference.
[2] These first two recordings of Dr. Nucatola are also subject to Defendants' Motion to Strike.

1      7.   PPNorCal's claim for Daleiden recording Doe8002 at the 2014 NAF tradeshow. #99–101.

2      8.   PPGC's claim for Daleiden recording Doe9001 at the 2014 NAF tradeshow. #2.

3  **1.2.    Plaintiffs' Standing Arguments Regarding §§ 632 and 634 Fail**

4  California's Invasion of Privacy Act provides that "[a]ny person who has been injured by a

5  violation of this chapter may bring an action against the person who committed the violation for . . .

6  (1) Five thousand dollars ($5,000). (2) Three times the amount of actual damages, if any, sustained

7  by the plaintiff." Cal. Penal Code § 637.2 (2014).[3] "For the purposes of this section, 'person'

8  means an individual, business association, partnership, corporation, limited liability company, or

9  other legal entity." *Id.* at § 632(b).

10  In response to Daleiden's argument that PPFA lacks standing to assert a claim for unlawful

11  recording with respect to communications to which it was *not* a party—i.e., its employees were not

12  speaking on its behalf—PPFA argued that "under the plain language of the statute . . . , [it] may

13  bring a claim under Section 632 if [it] was *injured* by the prohibited recording." Plt. Opp. 53:17–18.

14  Plaintiffs make the same argument with respect to the claim that Daleiden trespassed in violation of

15  Section 634 at the NAF tradeshow. According to Plaintiffs, it is irrelevant that Daleiden did not

16  trespass on Plaintiffs' property so long as Plaintiffs were *injured* by the alleged trespass. Plt. Opp.

17  63:6–8. *But see* Ex. 80, Digest of Assembly Bill 860, § 5 ("The legislation also provides civil

18  remedies for persons who are the *victims* of eavesdropping").[4]

19  This argument evinces a misunderstanding as to what California's Invasion of Privacy Act

20  prohibits. "Penal Code section 632 does not prohibit the disclosure of information gathered in

21  violation of its terms." *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 167 (2003).

22  "Although a recording preserves the conversation and thus could cause greater damage to an

23  individual's privacy in the future, these losses are not protected by section 632." *Kight v. CashCall,*

24  *Inc.*, 200 Cal. App. 4th 1377, 1393 (2011). This "contrast[s]" with other recording statutes, which

---

25  [3] California's Invasion of Privacy Act has been subsequently amended due to Plaintiffs' lobbying.

26  The statute quoted above is the relevant version.
   [4] Exhibits 1 through 20, and 26 through 50 are attached to the Declaration of Jeffrey Trissell (Dkt. 603-

27  2, 639); Exhibits 21 through 25, and 76 through 87 are attached to the Opposition Declaration of Jeffrey
   Trissell; Exhibits 88 through 100, and 135 through 139 are attached to the Reply Declaration of Jeffrey

28  Trissell; Exhibits 51 through 58 are attached to the Declaration of Gregory Michael (Dkt. 604-1, 643-1).

sometimes "prohibit[] disclosure of unlawfully recorded material." *Lieberman*, 110 Cal. App. 4th at 167 n.4. It also contrasts with the portion of California's Invasion of Privacy Act which prohibits recording telephone communications, and which specifically precludes publishing *those* recordings. Cal. Penal Code § 637. "Although Penal Code Section 637.2 provides a civil litigant a private right of action and expressly authorizes injunctive relief "to enjoin and restrain any violation of this chapter," nothing in section 632 and its related statutes prevents the publication of information unlawfully procured through unlawful privacy violations." *StemExpress LLC v. Ctr. for Med. Progress*, No. BC589145 (Cal. Super. Ct. Aug. 21, 2015) (Ex. 92).[5] This understanding of California's Invasion of Privacy Act has already been accepted by this Court. *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-CV-03522-WHO, 2016 WL 454082, at *16 (N.D. Cal. Feb. 5, 2016) (Orrick, J.).

Thus, "[t]he 'actual damages' referenced must relate directly to the surreptitious recording [or trespass]. For example, [the plaintiff] may have suffered emotional distress or outrage upon discovering that he had been surreptitiously recorded" or had his property trespassed upon. *Lieberman*, 110 Cal. App. 4th at 167.

> "[A]ctual damages" as used in Penal Code section 637.2, which concerns recording a confidential communication, include damages for emotional distress. The victim of a surreptitious recording may suffer emotional distress upon the discovery of the recording. If the plaintiff has suffered injuries akin to those for emotional distress, i.e., anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish, etc., these are 'actual' damages.

*McNairy v. C.K. Realty*, 150 Cal. App. 4th 1500, 1507 (2007); *see also Kimmel v. Goland*, 51 Cal. 3d 202, 212 (1990) (litigation privilege did not bar claim for unlawful recording because the "injuries ar[ose] [not] from the broadcast and publication of private conversations, but from the recording of

---

[5] This trial court opinion is unreported, but it is not designated "Not for Citation." Therefore, it is properly citeable. *See* 9th Cir. R. 36-3 (c) (only governing citation of unpublished opinions issued by the Ninth Circuit itself); Civ. L.R. 34(e) (only prohibiting citation of unpublished opinions designated "Not for Citation"); *see also Cont'l Ins. Co. v. Cota*, No. 07-5800 SC, 2010 WL 383367, at *6 n.4 (N.D. Cal. Jan. 27, 2010) ("Citation of an unpublished district court opinion is not improper, unless the opinion has been designated 'not for citation.'"); *Quality Towing, Inc. v. Jackson*, No. 15-CV-01756-PSG, 2016 WL 778010, at *7 n.88 (N.D. Cal. Feb. 29, 2016) ("Plaintiffs object . . . to Defendants' citation to unpublished cases . . . but the rule covers only opinions designated 'NOT FOR CITATION' in this or any other court. Unpublished cases do not always fall into that category.").

them.'"). "Put simply, '[t]he harm consists of the unauthorized recording.'" *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1018 (C.D. Cal. 2014) (quoting KIMBERLY A. GAAB & SARA C REESE, CAL. PRAC. GUIDE: CIV. PROC. BEFORE TRIAL CLAIMS & DEFENSES (2018)).

But how were Plaintiffs harmed by the recording of non-employees? Plaintiffs cannot recover for emotional distress themselves, or on behalf of their officers. *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 19 (1977) ("[W]e know of no authority suggesting that a corporate entity may recover for the emotional distress of its officers"); *Mongols Nation Motorcycle Club, Inc. v. City of Lancaster*, 145 Cal. Rptr. 3d 122, 124 (2012) ("[A] corporation cannot recover for mental suffering, so as to bar the intentional infliction of emotional distress claim"); *Am. Home of Scis., Inc. v. California Sch. of Modern Scis., Inc.*, No. B187642, 2006 WL 3076390, at *9 (2006) ("Nor could American Home, a corporation, recover for emotional distress.").

If Plaintiffs themselves were not recorded, and if Plaintiffs' property itself was not trespassed upon, then Plaintiffs have no injury, and no standing. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 735 F. App'x 241, 248 (9th Cir. 2018) ("[T]he capacity in which staff was acting will be ... developed after discovery."). This Court should grant summary judgment with respect to Plaintiffs' claim for trespass at the 2014 NAF tradeshow, and for recording of persons affiliated with PPFA, PPNorCal and PPGC/CFC who were not at the time speaking on their behalf. With respect to recording, this includes (4) above. Dr. Nucatola stated unequivocally that she was meeting with Daleiden and Merritt in her "personal capacity," not as PPFA's employee. Ex. 38, Nucatola Dep., 342:11–349:18. It also includes (5) above. Dr. Gatter and Ms. Felczer were also unequivocally meeting with Daleiden and Merritt on behalf of a different corporation, not PPFA. Ex. 36, Gatter Dep., 265:17–266:23; Ex. 37, PPPSGV Dep., 21:9–22:16.[6]

It also includes (7) and (8) above. PPNorCal's Doe8002, an independent contractor abortion doctor, and PPGC/CFC's Doe9001, alleged lead educator. Defendants' deposition notice for both PPNorCal and PPGC/CFC required them to present a witness prepared to testify

---

[6] Plaintiffs' alternate theory, asserted in a footnote, that PPPSGV can now raise its hand and assert that it is bringing a claim for violation of California's Invasion of Privacy Act should be immediately rejected. Plt. Opp. 55 n.39. For the reasons stated in Defendant CMP's opposition to Plaintiffs' motion for summary judgment, Plaintiffs cannot simply amend their complaint via footnote to avoid summary judgment. *See* Dkt. 659 (public), Dkt. 660-1 (sealed).

regarding "[t]he factual basis for Plaintiff's Eavesdropping claim" and the following:

- "Facts regarding whether employees, including especially those at issue in this case, are paid for their time for attending conferences and/ or conventions, how they are compensated for same, and how their time is recorded as to hours worked for same."

- "Facts regarding whether employees, including especially those at issue in this case, are paid for lodging, meals, travel, and entrance fees for attending conferences and/ or conventions."

- "Facts regarding whether attending conferences and/or conventions is in the job description of employees, including especially those employees at issue in this case."

- "Facts regarding policies and procedures relating to employees attending off-site functions."

- "Facts regarding evidence which suggests that employees attending conferences and/ or conventions is treated as being in the course and scope of their duties including written policies and procedures and historical treatment."

Ex. 93, PPNorCal Dep., ex. 1001, ¶¶ 9, 16; Ex. 94, PPGC/CFC Dep., ex. 1601, ¶¶ 9, 16.

With respect to PPGC/CFC, at the Fed. R. Civ. P. 30(b)(6) witnesses' deposition, counsel showed the witness the recording identified by Plaintiffs, and this exchange occurred:

> Q. The three that initially were shown were three women sitting against a wall. Are any of those thee people—or were they employees or connected in any way to Planned Parenthood Gulf Coast?
> A. I don't—
> MS. STERK: Objection, Vague. Compound.
> THE WITNESS: I don't recognize any of them.
> BY MR. HEFFRON:
> Q. And this was in, I think—well, I don't know the year. But—oh, it's in April of 2014.
> (Mr. Kozina entered.)
> BY MR. HEFFRON:
> Q. And your testimony is today that you have no knowledge of any of those three people having been employed at PPGC or CFC.
> A. I don't recognize them.

Ex. 42, PPGC/CFC Dep., 91:23–92:13.

PPGC/CFC now argues that in the video itself, one of the women states that she is from Houston, and works at Planned Parenthood, and therefore Defendants could have inferred that she was employed by PPGC/CFC. Plt. Opp. 59:1–8. Not only is the recording hearsay, but statements

on it must bend to the testimony of PPGC/CFC itself. "The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. The designated witness is 'speaking for the corporation,' and this testimony must be distinguished from that of a 'mere corporate employee' whose [statements are] not considered that of the corporation." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.). The Rule 30(b)(6) deponent provides "binding answers on behalf of the corporation." *ChriMar Sys. Inc. v. Cisco Sys. Inc.*, 312 F.R.D. 560, 563 (N.D. Cal. 2016). That a non-party witness might in the future contradict PPGC/CFC does not create a triable issue of fact. PPGC/CFC's position in this case is that it "ha[s] no knowledge of any of those three people [shown in the video] having been employed at PPGC or CFC." Ex. 42, PPGC/CFC Dep., 91:23–92:13.

The same is true with respect to PPNorCal's claims for Doe8002. Defendants specifically asked about her because she was an independent contractor, not an employee. In response, PPNorCal's Rule 30(b)(6) witness stated "[g]enerally we don't pay for conferences for contractors, but I—I don't have any knowledge about" her specifically. Ex. 39, PPNorCal Dep., 44:11–13. PPNorCal's binding position in this action is that it has no knowledge as to whether Doe8002 was attending the conference on its behalf, and whether she was recorded in her capacity as a PPNorCal related person.[7]

### 1.3. Nucatola and Gatter Admitted the Restaurant Conversations Could be Overheard

As stated in Daleiden's moving papers, "[t]he standard of confidentiality is an objective one defined in terms of reasonableness." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). As such, claims under Cal. Penal Code § 632 are properly dismissed on summary judgment. *Reynolds v. City & Cty. of San Francisco*, 576 F. App'x 698, 703 (9th Cir. 2014) (affirming grant of summary judgment because "Reynolds took the call at his desk in the Sex Crimes Unit, which is part of a shared open workspace, during a time of day when others were likely to be present.")

Here, in addition to failing for the reasons stated above, the restaurant meetings with Dr.

---

[7] In addition, for the reasons stated in Daleiden's moving papers, Plaintiffs' claim for violation of Cal. Penal Code § 634 fails because Plaintiffs have no evidence establishing NAF's right to assert a claim for trespass. For NAF to be able to assert such a claim, it must possess the right exclusive possession of the premises—exclusive even of the owner. But Plaintiffs have no evidence of this, and instead rely entirely on NAF's right to exclude persons from its conference, not its right to exclusive possession of the premises. *See* Plt. Opp. 62:20–63:5 (citing NAF exhibitor agreement). As stated in Defendant Lopez's reply brief, this is insufficient.

1    Nucatola and Dr. Gatter/Ms. Felczer fail because they testified they could be overheard. Ex. 38,

2    Nucatola Dep., 232:2–233:3, 242:25–243:15; Ex. 36, Gatter Dep., 279:9–19. In response to these

3    admissions, PPFA cites to two declarations which Drs. Gatter and Nucatola submitted in response

4    to an earlier anti-SLAPP motion. *See* Dkt. 95, Nucatola Decl., ¶ 5 ("[T]he music and noise in the

5    restaurant were very loud, making it unlikely that any passersby would hear our conversation");

6    Dkt. 96, Gatter Decl., ¶ 5 ("I also noted the loud music playing in the background, which would

7    have made it difficult for anyone not at our table to overhear the conversation."). But like above,

8    these declarations must give way to their deposition testimony. *Brooks v. City of Turlock*, 15 F.3d

9    1083 (9th Cir. 1993) ("[I]ssues of fact created by declarations that contradict depositions 'are sham

10    issues which should not subject the defendants to the burden of a trial.'").[8]

11    **1.4.  PPNorCal Admitted the Doe8001 and Doe8002 Conversations Could be Overheard**

12    PPNorCal's Rule 30(b)(6) witness testified unequivocally that the conversations between

13    Defendants and Doe8001 and Doe8002 could be overheard. Ex. 39, PPNorCal Depo., at 62:7–63:7,

14    66:1–12, 67:13–69:9 (Doe8001); *id.* at 80:20–81:3, 82:14–20, 83:18–84:13, 85:14–23 (Doe8002). In

15    response, PPNorCal states that "the 'evidence' that the clinician[s] could be overheard is

16    speculative. . . . The recording will be in evidence and the jury can make that determination for

17    itself." Plt. Opp. 58 n.41. PPNorCal's testimony is not irrelevant. PPNorCal's statements are its

18    position in this litigation. *Risinger v. SOC, LLC*, 306 F.R.D. 655, 662 (D. Nev. 2015) ("A Rule

19    30(b)(6) designee represents the corporation's position on noticed topics."). If neither PPNorCal

20    nor Defendants contend that the elements of a violation of Cal. Penal Code § 632 are present, the

21    issue should not be presented to a jury.

22

23

---

24 [8] PPFA also states Drs. Nucatola and Gatter had a "reasonable expectation ... that their conversations were confidential" because "Daleiden and Merritt represented themselves to be representatives of a legitimate medical company with experience in the reproductive health care field." Plt. Opp. 56:13–17. But as explained in Daleiden's moving papers, Cal. Penal Code § 632 "prohibits monitoring or recording only without the knowledge or consent of all parties to the conversation and *only* if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1465 (2014) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 (2006)). Plaintiffs' citation to *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1125 (9th Cir. 2017) does not contradict this.

## 1.5. The Remaining 2014 NAF Tradeshow Recording Claims Fail

The remaining claims relate to Daleiden's recording of two PPFA personnel at the 2014 NAF tradeshow, Dr. Nucatola and Doe1023, (1) and (2) above. However, Plaintiffs do not respond to Daleiden's arguments as to why these claims fail. *Contrast* Plt. Opp. 57:8 ("Two PPNorCal employees and one employee of PPCFC were among those employees recorded."). Therefore, it stands unrebutted that PPFA admitted that the conversations could be overheard. Daleiden invites the Court to review the recording to confirm this. *See* Ex. 35, #35, 68–69; Ex. 53, PPFA Dep., 263:23–267: 9.

## 1.6. Defendants Did Not "Intentionally" Record "Confidential Communications"

As stated in Daleiden's moving papers, it is not the case "that the word 'intentionally' as used in subdivision (a) goes only to the act of putting the recording equipment in operation." *People v. Superior Court of Los Angeles Cty.*, 70 Cal. 2d 123, 132 (1969). "Eavesdropping is not one of that class of crimes that affects public health, welfare or safety," and therefore "it is not the purpose of the statute to punish a person who intends to make a recording but only a person who *intends to make a recording of a confidential communication*," i.e., who has "criminal intent." *Id.* at 132–33. Therefore, if an individual "mere[ly] inten[ds] to activate a tape recorder which subsequently 'by chance' records a confidential communication," that is insufficient to meet "a necessary element of the offense. . . : An intent to record a confidential communication." *Id.* at 133.

Here, Plaintiffs state that unlike the above case, Daleiden "did not 'by chance' record hundreds of hours of video tape of individuals he specifically targeted." Plt. Opp. 60:9-10. But Plaintiffs miss the distinction. If Daleiden recorded a "confidential communication"—i.e., a communication that could not reasonably be overheard—he did *that* "by chance" because he only intended to undertake an investigative journalism study that specifically complied with Cal. Penal Code § 632. *See* Daleiden Decl., ¶ 19. Plaintiffs have no evidence to establish the "necessary element" of criminal mal-intent.

## 1.7. Summary Judgment is Appropriate Based on Cal. Penal Code § 633.5

Finally, as stated in Daleiden's moving papers, summary judgment is appropriate under Cal. Penal Code § 633.5. Under that section, "private citizens may legally record a confidential communication if they reasonably believe it to be necessary in furtherance of an investigation into the crimes of extortion, kidnaping, bribery, any violent felony to the person, or lewd or annoying

1  phone calls." Ex. 80, Digest of Assembly Bill 860; *see also* 82 Cal. Op. Cal. Att'y Gen. 148, 1999
2  WL 566799 (1999); *In re Trever P.*, 14 Cal. App. 5th 486, 497 n.8 (2017). Like above, granting
3  summary judgment in a defendant's favor based on Cal. Penal Code § 633.5 is appropriate. *See*
4  *Gensburg v. Lipset*, No. C-93-3449-WHO (N.D. Cal. Oct. 4, 1994) (Orrick J.) (Ex. 95), *aff'd*, No. 94-
5  16939 (9th Cir. Jun. 30, 1997).[9]

6          Plaintiffs' argument in opposition mirrors that made in their motion for summary judgment.
7  Namely, Daleiden needed to have a reasonable belief that the specific individuals recorded (Dr.
8  Nucatola, Dr. Gatter, Ms. Felczer, Doe1023, Doe8001, Doe8002, and Doe9001) themselves were
9  involved in "any felony involving violence against the person." However, for the reasons stated in
10  CMP's opposition brief (Dkt. 659), this argument fails. The "part[ies] to the communication" involved
11  in violent felonies were the corporate Plaintiffs themselves. *See* Ex. 97, Nucatola Dep., 366:7–367:17.

12  **2.      Plaintiffs' Claim for Invasion of Privacy: Cal. Const. Fails**

13          **2.1.      The Recordings Do Not Contain Information Protected by the Cal. Constitution**

14          Plaintiffs assert that they have a claim for violation of the California Constitution's privacy
15  provision because "'the dissemination or misuse of sensitive and confidential information' can give
16  rise to a privacy claim under the California Constitution." Plt. Opp. 86:27–87:2 (citing *Cty. of Los*
17  *Angeles v. Los Angeles Cty. Employee Relations Com.*, 56 Cal. 4th 905, 927 (2013)). But quoting the
18  test as enunciated by *County of Los Angeles* does not change the fact that "[t]he California
19  Constitution sets a 'high bar' for establishing an invasion of privacy claim" that Plaintiffs have
20  simply not met. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Or that
21  information disclosed at a public restaurant per se cannot form a basis for a violation of the
22  constitutional provision. *Vo v. City of Garden Grove*, 115 Cal. App. 4th 425, 448 (2004). In response
23  to Daleiden's argument that "[n]one of the videos identified by Plaintiffs contain the highly
24  sensitive information required to meet the 'high bar' at issue," Dkt. 609, 11:20–22, Plaintiffs cited
25  to testimony from Drs. Nucatola and Gatter regarding the restaurant meetings. *See* Plt. Opp. 87:3–
26  10 (citing Nucatola Dep., 234–35, 244; Gatter Dep., 272:5–15, 273:1–3).

27  [9] Like above, the district court opinion is unreported, but it is not designated "Not for Citation."
    Therefore, it is properly citeable. *See Cont'l Ins. Co.*, 2010 WL 383367, at *6 n.4; *Quality Towing,*
28  *Inc.*, 2016 WL 778010, at *7 n.88.

On pages 234 and 235 of her transcript, Dr. Nucatola merely discusses using ultrasound guidance to perform an abortion. On page 244, she states that "abortion" generally is a sensitive topic that she does not discuss with strangers. On pages 272 and 273 of her transcript, Dr. Gatter states that she "reveal[ed] [] PPPSGV confidential information" such as "[t]he number of procedures that we did and the percentages that were second trimester" and "clinic flow." None of this is the type of information protected by the California Constitution. The only information here that is even arguably "personal" information, as opposed to business information, is the fact that Drs. Nucatola and Gatter are abortion providers. But that information is already publicly known. Ex. 97, Nucatola Dep., 404:11–16 ("I have never hidden the fact that I provide abortions. Everybody knew that I provide abortions to that day"); *see also id.* at 33:4–40:21 (describing history with provision of abortion care); Ex. 98, PPPSGV 2013–2014 Annual Report (identifying Dr. Gatter as the Medical Director). Planned Parenthood "clinic flow" is not information "personal" to Drs. Nucatola and Gatter. *See Roberts v. Gulf Oil Corp.*, 147 Cal. App. 3d 770, 791 (1983) ("The constitutional [privacy] provision simply does not apply to corporations. The provision protects the privacy rights of *people*.") (original italics).

But there is no case providing that one's employment—even employment in a politically sensitive area—can be considered private under the California Constitution. *County of Los Angeles*, relied on by Plaintiffs, held that people "have a legally protected privacy interest in their home addresses and telephone numbers," but ultimately concluded that the privacy interest was not so great as to warrant precluding dissemination of the information. *Id.* at 927, 931. Further, in coming to the preliminary conclusion, the California Supreme Court stressed that "the 'privacy interest in avoiding unwanted communication' is stronger in the context of an individual's home than in a more public setting." *Id.* at 927. In other words, even if *County of Los Angeles* had concluded that private contact information was private under the California Constitution—which it did not—that holding would only, at best, extend to *home* addresses, not *work* addresses. There is nothing *constitutionally private* about one's profession. *See Vo*, 115 Cal. App. 4th at 448 (Rejecting claim: "Plaintiffs do not explain why observation by a video camera intrudes on privacy any more than

observation by employees or other patrons.").[10]

**2.2.  There is no Basis for Third-Party Standing**

In response to Daleiden's standing arguments, Plaintiffs assert that they "do not rely on associational standing to assert their staffs' claims for invasion of privacy." Plt. Opp. 84 n.61.[11] Instead, Plaintiffs state that

> Plaintiffs have third-party standing to assert their common law invasion of privacy claims on behalf of their staff members. Third-party representation requires satisfaction of a two-prong inquiry: (1) whether Plaintiffs can demonstrate injury to themselves; and (2) whether Plaintiffs are "proper proponent[s] of the legal rights on which [they] base[] the suit." *McCormack v. Herzog*, 788 F.3d 1017, 1027 (9th Cir. 2015).

Plt. Opp. 83:14–18; *see also* Plt. Opp. 86:20–22. This is not the correct test. This is the test "[t]o determine whether a physician has third-party standing to assert the rights of patients in the abortion context." *McCormack*, 788 F.3d at 1027. Not only is it procedurally incorrect, it makes no substantive sense. It is a two-prong test plainly molded for the specific context of abortion providers asserting the interests of their patients.

Rather, as stated in Daleiden's moving papers, the court should use the traditional "third-party standing" test, which has three prongs: "(1) the plaintiff suffers injury, (2) the plaintiff and the third party have a close relationship, and (3) the third party faces some obstacles that prevent it from pursuing its own claims." 59 Am. Jur. 2d *Parties* § 32 (May 2019). Further, as stated in Daleiden's moving papers, third party standing fails because there is no obstacle to Plaintiffs' employees filing suit themselves. Indeed, *some already have*: "After David Daleiden requested public records from the University of Washington under Washington's Public Records Act, a group of individuals known as the 'Doe Plaintiffs' brought [a] putative class action against Daleiden and the University to compel

---

[10] Plaintiffs make no argument with respect to the remaining claims for invasion of privacy. Daleiden invites the Court to review the footage taken at the 2014 NAF tradeshow (discussed in the preceding section) to confirm that there is nothing therein that warrants protection under the California Constitution.

[11] For the reasons stated in Defendant CMP's motion for summary judgment, this iteration of Plaintiffs' amendment of their complaint via footnote should also be rejected. Plaintiffs' invasion of privacy claims should be dismissed because Plaintiffs pleaded associational standing as their only standing theory, and have now disclaimed it.

redaction of any personal identifying information in the records." *Does 1-10 v. Univ. of Washington*, 695 F. App'x 265, 266 (9th Cir. 2017). Jane Does 3 and 4 identified themselves as Planned Parenthood employees. *See* Complaint, *John and Jane Does 1–10 v. University of Washington and David Daleiden*, Case No. 2:16-cv-01212 (W.D. Wash. Aug. 3, 2016), 2016 WL 9076337. Numerous Planned Parenthood employees are also "Does" in the criminal case. *See* Complaint, *The People of the State of California v. David Daleiden*, Case No. 2502505 (Cal. Super. Ct. Mar. 28, 2017).

Plaintiffs' main case supporting a purported "obstacle" is *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 143 Cal. App. 4th 1284, 1298 (2006). There, an animal rights group ("SHAC") decided to initiate a harassment campaign against Novartis by targeting its employees. In other words, SHAC's strategy was to literally follow and harass Novartis employees with "home visits" where SHAC *itself* "broke employees' windows, vandalized their cars, set off ear-piercing alarms in their yards, and left excrement on their doorsteps." *Id*. at 1288. Novartis then filed suit seeking an injunction stopping the harassment. *Id*. at 1291–92. The court then found third-party standing because "the obstacles that prevent [Novartis] employees from asserting their own rights are evident from the complaint. It is unlikely that employees who had already been targeted by SHAC [] would permit themselves to be further targeted by becoming a named party to a lawsuit." *Id*. at 1298.

Plaintiffs would paint this action to be indistinguishable from *Novartis*, but the differences are striking. There are no allegations (or evidence) that Defendants themselves have harassed Plaintiffs' employees. Rather, all of the "harassment" comes from the media reporting on, and third parties reacting to, Plaintiffs' criminal wrongdoing. *See* Plt. Opp. 83:25–84:3 (citing evidence). Further, there is no evidence that public condemnation of Plaintiffs resurged following the initiation of this lawsuit— six months after CMP began publishing its exposé. As a result of this lawsuit, the media continue to report on Plaintiffs' wrongdoing, but that has not translated into new protests or harassment. Instead, by September 2015—several months before Plaintiffs filed suit—the public's reaction to Plaintiffs' wrongdoing was "calming down." Ex. 96, PPFA Hot Spots Report. Finally, unlike the employees in *Novartis*, the employees here would not file suit primarily because they do not care to. Plaintiffs are simply asserting their interests as an *excuse* to obtain an injunction against Defendants attempting to

12

visit their conferences in the future. *See* Order on Motions to Dismiss & Strike, 44:16–17 (Sep. 30, 2016) (Dkt. 124) (citing FAC Prayer for Relief ¶ 2). But when employees were questioned, they stated that they simply have no interest in this lawsuit.

> Q. . . . Prior to January 2016 when this lawsuit was filed, were you aware that PPFA was going to file this lawsuit?
> A. I was not.
> Q. Okay. So PPFA did not get your authorization to bring claims on behalf of you; is that correct?
> MR. KAMRAS: Calls for a legal conclusion.
> THE WITNESS: I don't recall.
> BY MS. SHORT:
> Q. Well, if you did not have any—you didn't have any communication with PPFA about this lawsuit before it was filed; is that correct?
> MR. KAMRAS: Same objection.
> THE WITNESS: I don't believe so, no.

Ex. 97, Nucatola Dep., 373:22–374:12.

> Q. Do you want to see David Daleiden and/or Susan Merritt or any other defendant in this case be stuck with a multi-million-dollar judgment against them because of what they've done?
> A. I've never actually thought about it.
> Q. As you think about it now that I've asked you, what would be the answer?
> A. I would like to see them be held responsible for the inappropriate things they did, yes.
> Q. Okay. Responsible to whom?
> A. Whoever they damaged.
> Q. Including yourself?
> A. They didn't damage me.

Ex. 97, Nucatola Dep., 370:23–371:10. This Court should grant summary judgment on the invasion of privacy claims due to lack of standing.

### 2.3. The Newsworthiness of CMP's Publications Defeats Plaintiffs' Claims

Finally, as stated in Daleiden's moving papers, even if Plaintiffs' had a protectable privacy interest, that interest must be "balanced against countervailing interests." *Cnty. of L.A. v. L.A. Cnty. Emp. Relations Comm'n*, 56 Cal. 4th 905, 926 (2013). Plaintiffs state that it would be inappropriate to grant summary judgment on this basis because "the alleged 'newsworthiness of the information Defendants published . . . raises numerous triable issues of fact." Plt. Opp. 87:14–17 (citing Plt. Opp.

85–86). But in *Baughman*, "the legitimate competing societal interests ... in exposing and prosecuting serious crime" warranted granting "judgment on the pleadings." *Baughman v. State of California*, 38 Cal. App. 4th 182, 190 (1995). Like in *Baughman*, the Court should balance (on the one hand) undisputed[12] criminal wrongdoing, against (on the other hand) Plaintiffs' purported interests in keeping private information they willingly shared with prospective business partners during discussions at restaurants and conferences, and find that Plaintiffs' have no claim for violation of California's constitutional protection of the right to privacy.

### 3. Plaintiffs' Claims for Fraud and Conspiracy to Defraud Fail

Both Plaintiffs and Defendant Daleiden have moved for summary judgment with respect to Plaintiffs PPFA, PPRM, and PPGC/CFC's (and PPPSGV's purported) fraud claim, leading to the conclusion that both Plaintiffs and Defendants agree that the claim is ripe for adjudication. In all five relevant jurisdictions, the elements of fraud are: [1] falsity; [2] materiality; [3] knowledge of falsity; [4] intention to induce reliance; [5] justifiable and actual reliance; and [6] provable damages.[13]

In response to Daleiden's summary judgment motion, Plaintiffs were "on notice that [they] had to come forward with all of [their] evidence." Daleiden Mtn., 1:18–22 (quoting *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 661 (4th Cir. 2017)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

This Plaintiffs absolutely failed to do. In response to Daleiden's motion, Plaintiffs restricted their argument solely to the assertion that they can establish proximately caused damages. *See* Plt. Opp. § VII. In this respect, Plaintiffs conceded that they *are* seeking publication damages, but create a false distinction between *reputational* and *economic* damages which arose from the publication of the CMP videos by citing to *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991). Plt. Opp. 48:23–51:20.

---

[12] At least for purposes of this case.

[13] *See, e.g., Sherban v. Richardson*, 445 So. 2d 1147, 1148 (Fla. Dist. Ct. App. 1984); *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 10 (D.D.C. 2019); *Valley Equip. Leasing, Inc. v. McGriff, Seibels & Williams of Oregon, Inc.*, No. 14-CV-02383-CMA-NYW, 2016 WL 1697861, at *6 (D. Colo. Apr. 28, 2016); *Ashton v. KoonsFuller, P.C.*, No. 05-16-00130-CV, 2017 WL 1908624, at *5 (Tex. App. May 10, 2017); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 259 (2011).

As stated by Defendants in prior briefing, this distinction has no applicability here. Rather, the legal literature which analyzes the sometimes confusing interplay between the relevant Supreme Court cases concludes that "the definition of reputational damages depends upon the nature of the underlying claim. For newsgathering tort claims, the definition includes all categories of damage traditionally available in defamation suits." Nathan Siegel, *Publication Damages in Newsgathering Cases*, 19 COMM. LAW. 11, 12 (2001). Here, those are all of the "publication" damages. *See La Luna Enterprises, Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 392 (S.D.N.Y. 1999) (dismissing fraud claim because damages sought were recoverable via a defamation claim); *Galveston Newspapers, Inc. v. Norris*, 981 S.W.2d 797, 801 (Tex. App. 1998) (affirming summary judgment on tortious interference claim because damages sought were recoverable via a defamation claim).

But Plaintiffs were required to do far more than argue damages. *See* Daleiden Mtn., 19:16–17 ("Defendants do not concede either materiality or reliance—and do not believe Plaintiffs can establish those elements"). In neither Plaintiffs' moving papers, nor their opposition papers, do they ever explain why CMP's purportedly false representations were material or even on which specific representations they relied. *See* Plt. Mtn. 18:19–19:23; Plt. Opp. 44:11–51:20. But in looking to the declarations cited in the relevant sections (Plt. Opp. Exs. 2, 6, 7, 49, 51), it becomes clear that whether BioMax was a tissue procurement organization, or that it had staff with certain titles, or that it had staff with names such as "Robert" or "Susan," was not what Plaintiffs *actually* relied on—because it was not material. What Plaintiffs relied on was CMP's *concealment*, not only that BioMax staff were *also* journalists, but that they were also journalists who did not feel that PPFA's "mission of promoting women's access to the full range of reproductive care" warranted burying a story about criminal wrongdoing. Plt. Opp. Ex. 2, Nucatola Decl., ¶ 4. But Defendants had no duty to reveal that. *See, e.g., Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 467 (9th Cir. 1997); *Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1083 (1999). Thus, Plaintiffs' fraud claim fails for both lack of damages and lack of reliance o n a material representation.

# CONCLUSION

For the foregoing reasons, this Court should grant Defendant Daleiden's motion for summary judgment.

Respectfully submitted,

July 3, 2019,

/s/ Charles S. LiMandri
Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
B. Dean Wilson (CA Bar No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel: (858) 759-9948
Facsimile: (858) 759-9938
cslimandri@limandri.com
pjonna@limandri.com
jtrissell@limandri.com

Denise M. Harle (CA Bar No. 275561)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., NE
Suite D1100
Lawrenceville, GA 30043
Tel: (770) 339-0774
dharle@ADFlegal.org

Harmeet K. Dhillon (CA Bar No. 207873)
Gregory R. Michael (CA Bar No. 306814)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
415-433-1700
415-520-6593 (fax)
harmeet@dhillonlaw.com

*Attorneys for Defendant David Daleiden*

/s/ Thomas Brejcha
Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
Facsimile: (312) 782-1887
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

Matthew F. Heffron, *pro hac vice*
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
501 Scoular Building
Omaha, NE 68114
Tel: (312) 782-1680
mheffron@thomasmoresociety.org

*Attorneys for Defendant David Daleiden*

**Attestation Pursuant to Civ. L.R. 5.1(i)(3)**

     As the filer of this document, I attest that concurrence in the filing was obtained from the other signatories.

/s/ Charles S. LiMandri
Charles S. LiMandri
*Counsel for Defendant Daleiden*