STEVEN L. MAYER (No. 62030)
SHARON D. MAYO (No. 150469)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:   (415) 471-3100
Facsimile:    (415) 471-3400
Email:   sharon.mayo@arnoldporter.com

RHONDA R. TROTTER (No. 169241)
OSCAR D. RAMALLO (No. 241487)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:   (213) 243-4000
Email:   rhonda.trotter@arnoldporter.com

AMY L. BOMSE (No. 218669)
ROGERS JOSEPH O'DONNELL
311 California St., 10th Floor
San Francisco, California 94104
Telephone: (415) 956-2828
Email: ABomse@rjo.com

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

Charles S. LiMandri (No. 110841)
Paul M. Jonna (No. 265389)
Jeffrey M. Trissell (No. 292480)
B. Dean Wilson (No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Email: cslimandri@limandri.com

*Attorneys for Defendants the Center for Medical Progress, BioMax Procurement Services, LLC, David Daleiden, and Gerardo Adrian Lopez*

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
Matthew F. Heffron, *pro hac vice*
Sarah E. Pitlyk, *pro hac vice pending*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmorsociety.org

*Attorneys for Defendant David Daleiden*

[Additional Counsel for the Center for Medical Progress, BioMax Procurement Services, LLC, and David Daleiden, and Counsel for Troy Newman, Albin Rhomberg and Sandra Merritt, listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD: SHASTA-DIABLO, INC., ET AL.<br><br>Plaintiffs,<br>v.<br><br>CENTER FOR MEDICAL PROGRESS, ET AL.,<br><br>Defendants. | Case No. 3:16-cv-00236-WHO<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Judge: Hon. William H. Orrick, III |

Pursuant to Civ. L.R. 16-10 and this Court's Civil Pretrial Order [ECF # 721] and Order Regarding Pre-Trial Conference [ECF #736], Plaintiffs Planned Parenthood Federation of America, Inc.; Planned Parenthood: Shasta-Diablo, Inc. dba Planned Parenthood Northern California; Planned Parenthood Mar Monte, Inc.; Planned Parenthood of the Pacific Southwest; Planned Parenthood Los Angeles; Planned Parenthood/Orange and San Bernardino Counties, Inc.; Planned Parenthood Central Coast California; Planned Parenthood Pasadena and San Gabriel Valley, Inc.; Planned Parenthood of the Rocky Mountains; Planned Parenthood Gulf Coast; and Planned Parenthood Center for Choice ("Plaintiffs") and Defendants David Daleiden, Sandra Merritt, Adrian Lopez, Troy Newman, Albin Rhomberg, the Center for Medical Progress, and BioMax Procurement Services, LLC ("Defendants") (collectively, the "Parties"), by and through their counsel, submit this Joint Pretrial Conference Statement.

**I.   WITNESSES TO BE CALLED**

Plaintiffs' and Defendants' lists of witnesses likely to be called at trial are attached as **Exhibits A** and **B**, respectively.

**II.   ESTIMATE OF TRIAL TIME**

The parties note that they are continuing to assess the impact of the Court's rulings on their motions for summary judgment, and are continuing to meet and confer as to possible stipulations of fact and other means of streamlining the presentation of evidence.

Plaintiffs' Statement

Plaintiffs estimate 20 court days of trial, exclusive of jury selection, opening statements, jury charge, and closing arguments.

Defendants' Statement

Defendants originally anticipated that the trial would take at least 25 to 30 court days (6 hours), including jury selection. Dkt. 57, First CMC Statement, § XVIII. Upon further reflection, Defendants believe that seven to eight weeks (35 to 40) court days will be needed due to the shorter 4.5 hour days.

Defendants believe that with the number of parties represented by separate counsel, the parties could optimistically examine 3 witnesses per 4.5 hour court day. In their witness lists, the parties have identified 97 separate witnesses. With 3 witnesses per day, this would require 33 court days.

Defendants next believe that the hearings on the parties' respective *Daubert* motions and motions in *limine*, will take up to 2 court days. Defendants further believe that jury selection will take up to another 2 court days. Defendants further believe that, given the number of parties represented by separate counsel, opening and closing statements will each take up a full court day—for 2 additional court days. Given the number of potential claims and defenses, and the law of multiple jurisdictions, Defendants believe that jury instructions will take up to 2 court days. Finally, Defendants believe that 1 additional court day may be consumed dealing with various evidentiary issues that may arise throughout the course of the trial. This would provide, in the aggregate, for an additional 11 court days.

Based on the above analysis, Defendants believe that the trial would last approximately 44 court days. On the parties' meet and confer call on August 19, Plaintiffs stated that they did intend to call all of the witnesses they identified. Thus, although Defendants hope that fewer witnesses will ultimately be needed, Defendants do not expect that the witness list will shrink significantly.

### III.   STATEMENT OF REMAINING DISCOVERY

Joint Statement

The parties have two remaining depositions to schedule in the case: a one hour deposition of PPFA's Fed. R. Civ. P. 30(b)(6) witness Brandon Minow and a seven hour deposition of Plaintiffs' damages expert Greg Regan.

Defendants' Additional Statement

Presently pending before the Court are Defendants' objections to Magistrate Judge Ryu's rulings on two motions to compel. Both objections concern requiring various Plaintiffs to re-present their Fed. R. Civ. P. 30(b)(6) witnesses to offer further deposition testimony. Dkt. 703 (PPFA); Dkt. 708 (PPNorCal, PPLA, PPPSW). Should those objections be adjudicated in

Defendants' favor, further depositions will be taken. With respect to the first objection, as indicated above, Judge Ryu did order PPFA's Brandon Minow to sit for a further deposition, but that deposition is on hold pending Defendants' request that the Court expand her ruling.

Defendants are also presently moving to compel Cal. Bank & Trust to produce documents in response to Defendants' subpoena. *See* E.D. Cal. Case no. 2:19-mc-00056-TLN-DB. In response to that subpoena, PPPSW agreed to produce their bank records themselves after reviewing the statements and redacting all entries except those representing transactions with tissue procurement organizations. *See* Dkt. 536, Civ. Minutes (Apr. 9, 2019). After the agreement was finalized, counsel for PPPSW then realized that doing so would require cross-referencing the statements with the checks received from the TPOs, which would apparently be labor-intensive. As a result, PPPSW reneged on the agreement. As a result, Defendants are moving to enforce their subpoena against Cal. Bank & Trust.

<u>Plaintiffs' Statement Concerning Defendants Motion to Compel Banking Documents</u>: Defendants subpoenaed private and sensitive financial records of Planned Parenthood of the Pacific Southwest ("PPPSW") from California Bank & Trust.  Plaintiffs filed a motion to quash. The parties then reached an agreement: the bank would produce the records to PPPSW and PPPSW would redact the records, leaving in the information Defendants sought —transactions with TPOs.  See Dkt. 536; E.D. Cal. Case No. 2:19-mc-00002-TLN-DB, Dkt. 7.  It turned out on review, however, *no such individual transactions were listed in the records*.  So Plaintiffs told Defendants that there were no responsive records to produce.  Now, after three months of silence, it appears that Defendants plan to disregard their agreement and seek PPPSW's financial records from its bank again.  If necessary, PPPSW will reinstitute its motion to quash.  In light of this Court's recent ruling, the already highly questionable relevance of any of the documents is even further diminished.

All other discovery is complete.

## IV. SETTLEMENT NEGOTIATIONS STATUS

The Parties have not engaged in settlement discussions, and respectfully submit that they do not believe that such discussions would be fruitful.

## V. CONSENT TO TRIAL BEFORE MAGISTRATE

Neither Plaintiffs nor Defendants consent to trial before a Magistrate Judge.

## VI. AMENDMENTS TO PLEADINGS

Plaintiffs' Statement

Plaintiffs dismiss Counts 13 and 14.  Plaintiffs do not request any further amendment.

Defendants contend that Plaintiffs are seeking to belatedly expand their conspiracy claim but they are wrong.  Plaintiffs have consistently alleged conspiracy grounded in Defendants' fraudulent conduct underlying their tort claims including trespass and illegal taping.  See FAC ¶173(e), (f).  Indeed, this Court recently found exactly that.  Dkt 753 at 98-99 ("The conspiracy claim *expressly* encompasses surreptitious recordings.") (emphasis added); *see also id.* at 43 n.39, 70, n.73-74, 76.

Defendants' newfound objection to Plaintiffs' promissory fraud and concealment theories is also without merit.  Plaintiffs' pleadings repeatedly disclose their promissory fraud theories.  See, e.g. FAC ¶ 68 ("They knowingly entered into NAF's confidentiality and non¬disclosure agreements, described above, *without any intention to comply* with those agreements…") (emphasis added), ¶ 83 ("Defendants *had no intention of complying* with the [PPFA Exhibitor] agreement's provisions, and they knowingly breached the Terms and Conditions.) (emphasis added);[1] ¶ 101 ("Defendants, purporting to attend as representatives of BIOMAX, completed the Exhibitor registration for DALEIDEN (posing as "Robert Sarkis") and his co-conspirator LOPEZ. They electronically agreed to the Exhibitor Terms

---

[1] Although Plaintiffs do not raise fraud claims based on the NAF agreement those allegations provide further context that Plaintiffs allege promissory fraud as to representations made in connection with Plaintiffs' contracts.  *E.g.* FAC ¶ 83 (alleging that "once again" Defendants made an agreement "without any intention to comply.").

1  and Conditions. Once again, they had no intention of complying with these Terms and
2  Conditions and violated them repeatedly and with malicious intent."); ¶ 106 ("On or about
3  February 17, 2015, Defendants registered for the PPFA National Conference and
4  electronically confirmed that they had read the Exhibitor Terms and Conditions, that they
5  understood them, and that they were in compliance with them. …. None of these
6  representations are remotely true.") (emphasis added).  All of these allegations are
7  incorporated into the fraud count.  *Id.* ¶ 204

8       Plaintiffs' concealment theory is that when Defendants represented that they were
9  members of a tissue procurement organization intending to provide useful information who would
10 keep certain information confidential, they failed to disclose that they were actually purported
11 "journalists" intending to surreptitiously record and disseminate confidential conversations.
12 Plaintiffs pleadings repeatedly disclose this this theory of concealment (*E.g.* FAC ¶¶ 82-83, 99-
13 100, 105-106, 114-116, 204), and Defendants extensively briefed the concealment issue on
14 summary judgment.  E.g. Daleiden's Opp. to Summary Judgment at 19 ("Fraudulent concealment
15 requires a 'duty to speak.'  There is generally no duty for a journalist to reveal his identity.")
16 (citations omitted); *id.* at 24 ("What Plaintiffs relied on was the concealment that BioMax
17 staff were unfriendly journalists.  But CMP had no duty to disclose that fact.  This element
18 cannot be decided on summary judgment.").  Even if Plaintiffs had not pleaded a concealment
19 theory (which they did), Defendants' briefing of them on summary judgment without objection
20 indicates that Defendants understood and were on notice of the concealment theory, and it
21 functions as implied consent to amendment.  *Sherwin-Williams Co. v. JB Collision Servs., Inc*.,
22 186 F. Supp. 3d 1087, 1097 (S.D. Cal. 2016), rev'd and remanded on other grounds, 768 F. App'x
23 756 (9th Cir. 2019) (holding issue that "was prominently argued" in "opposition to … motion for
24 summary judgment" was tried by implied consent).

25      Defendants' citation to *Morrison Assurance Co. v. North American Reinsurance Co*., 588
26 F. Supp. 1324 (N.D. Al. 1984), is misguided.  *Morrison*, following Alabama state law, held that an
27 amendment to conform to proof is not permissible for fraud claims.  Id.  As discussed above, no
28 such amendment is needed because Plaintiffs pleaded their concealment theory.  Moreover,

controlling Ninth Circuit law is directly contrary to Morrison.  *Gsell v. Dumbeck*, 431 F.2d 1204, 1205 (9th Cir. 1970) (affirming amendment of fraud claim to conform to proof).  Finally, as Defendants have taken full discovery and extensively briefed Plaintiffs' theories, Defendants are unable to identify any prejudice from inclusion of these theories.

Defendants' Statement

Defendants do not request any amendments to their answers. Plaintiffs seek to add new fraud theories and expand their civil conspiracy allegations on the eve of trial, to the extreme prejudice of the defendants. The legal standard for amending the complaint at this late hour was laid out in the summary judgment briefing—and shows that Plaintiffs' requested late amendments should be denied. Dkt. 659, CMP Opp. to Plt. MSJ, 3:1–10:23 (Jun. 19, 2019).

First, Defendants request that the Court make clear that even if the civil conspiracy allegations in the complaint could be read to encompass the trespass and recording claims, Plaintiffs are bound by their *voluntary narrowing* of it early in and throughout this litigation. Defendants further request that the Court make clear that Plaintiffs may not unfairly surprise defendants with expansions of their fraud and breach of contract theories on the eve of trial.

Earlier in this action, Defendants complained that the conspiracy allegations in the complaint were vague, and Plaintiffs responded by clarifying that they only apply to fraudulent misrepresentation: "Plaintiffs specifically allege that Defendants conspired to defraud Plaintiffs and have also pled the underlying predicate tort [of fraud], thus putting Defendants on notice of the conspiracy with which they are charged." *See* Dkt. 91, Plt. Opp. to CMP MTD, 14:5–11 (May 25, 2016).

Plaintiffs further confirmed the scope of the conspiracy allegation in the "Damages" section of their Rule 26 disclosures, where Plaintiffs stated that their civil conspiracy claim seeks to recover "[a]ll damages by all Plaintiffs claiming fraud." Dkt. 566, Plaintiffs' Second Amended Initial Disclosures, 11:1–4 (Oct .1, 2018). Only three plaintiffs claimed fraud in the First Amended Complaint: PPFA, PPRM, and PPGC/CFC.

In his early Motion for Summary Judgment filed in December 2018, Mr. Rhomberg then

quoted Plaintiffs' language from the Rule 26 disclosures, and concluded: "Thus, the Third Claim (Civil Conspiracy) as to Mr. Rhomberg is essentially the Eighth Claim, for fraudulent misrepresentation, as there are no other causes of action based on fraud." Dkt. 354, Rhomberg MSJ, 1:13–18 (Dec. 4, 2018). In opposing the motion, Plaintiffs did not dispute that conclusion or seek to clarify that the conspiracy claim was actually intended to encompass the recording and trespass claims as well. Dkt. 389, Plt. Opp. to Rhomberg MSJ (Dec. 28, 2018).

In filing their Joint Motion for Summary Judgment, Rhomberg and Newman then proceeded on the assumption that the civil conspiracy allegation applied only to the fraud claim. Dkt. 704, Rhomberg & Newman MSJ (May 22, 2019). In their own Motion for Summary Judgment, Plaintiffs unveiled for the first time their newly-minted position that Rhomberg and Newman were liable as co-conspirators for the breach of contract claims. Dkt. 606, Plt. MSJ, 16 n.15, 22 n.18, 24 n.21 (May 23, 2019).

Next, in opposing Defendants' motions, Plaintiffs for the first time hinted that the civil conspiracy claim was intended to cover the trespass as well as the fraud claim, though the theory of liability was vague. Dkt. 662, Plt. Opp. to Def. MSJ, 17:19–21 (Jun. 19, 2019) ("Rhomberg and Newman knew about, approved of, and participated in the trespass and misrepresentations made by CMP and its subsidiary, BioMax.") However, even in this expansion, there was no mention of conspiracy for the illegal taping claims.

Regardless of the purported breadth of the conspiracy allegations in the complaint, it is beyond dispute that Plaintiffs narrowed the conspiracy claim at an early point in this litigation, never revoked that narrowing, and proceeded consistent with that narrowing until after discovery was complete and the motions for summary judgment had been filed. It is also beyond dispute that Plaintiffs are trying, through a footnote here and a name dropped there, to expand the conspiracy claim to encompass more of the other claims, though exactly which claims remains unstated.

Defendants seek confirmation that Plaintiffs will be held to their representations to Defendants and to the Court about their civil conspiracy claim, on which Defendants have relied, namely, that it encompasses only the fraud claim, and that they seek damages only for those Plaintiffs claiming fraud. A party may not prevail in one phase of a case on an argument and then

rely on a contradictory argument in another phase. *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir.1993). Judicial estoppel "typically applies when, among other things, a 'party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010). Here, Plaintiff's prior position that conspiracy applied only to fraud is contradictory to their present position that conspiracy applies to the other claims. Defendants ask that Plaintiffs' be held to their representations to the Court and be judicially estopped.

In addition, Plaintiffs proposed jury instructions (exchanged with Defendants) indicate that Plaintiffs seek to amend their fraudulent misrepresentation claim to include fraudulent concealment and/or promissory fraud. *But see Morrison Assur. Co. v. N. Am. Reinsurance Corp.*, 588 F. Supp. 1324, 1329 (N.D. Ala. 1984) (due to the Fed. R. Civ. P. 9(b), fraud claims cannot be amended on the eve of trial to add "fraudulent concealment, an entirely different theory" than "an affirmative act of misrepresentation") (citing *State Farm Fire & Cas. Co. v. Fincher*, 454 So. 2d 936, 941 (Ala. 1984)), *aff'd*, 760 F.2d 279 (11th Cir. 1985).[2]

In response, Plaintiffs state that they adequately pleaded both fraudulent concealment and false promise, citing FAC ¶ 68 (concerning the NAF 2014 conference contracts), and FAC ¶¶ 83, 101 and 106 (concerning PPFA conference contracts) for false promise, and FAC ¶¶ 82-83, 99-100, 105-106, 114-116, 204 (again concerning PPFA conference contracts) for fraudulent concealment.

Notably, *none* of those paragraphs have any fraudulent concealment allegations. Further, the section in the complaint that actually pleads "Fraudulent Misrepresentation" includes no allegations supporting fraudulent concealment or false promise. FAC ¶ 205 ("false representations"); ¶ 206 ("made these representations"), ¶ 207 ("falsity of the Defendants' representations"), ¶ 208 ("misrepresentations"). In addition, assuming arguendo that Plaintiffs

---

[2] Plaintiffs' cite *Gsell v. Dumbeck*, but that case merely permitted changing the fraudulent *misrepresentations* at trial, not changing fraud theories altogether. *See Gsell v. Adams*, 316 F. Supp. 394, 400 (D. Or. 1969), *aff'd sub nom. Gsell v. Dumbeck*, 431 F.2d 1204 (9th Cir. 1970).

could plead false promise on behalf of NAF, Plaintiffs should be judicially estopped from doing so. *See* Dkt. 93, Plt. Opp. to Merritt Anti-SLAPP, 7 n.5 (Jun. 7, 2016) ("Plaintiffs' fraud claim is not based on events that occurred at the NAF conference").

Plaintiffs should equally be limited to fraudulent *misrepresentation* based on judicial estoppel. At the motion to dismiss stage, Defendants argued that the fraud claims were not pleaded with sufficient particularity, and Plaintiffs confirmed that "Plaintiffs have [] alleged *specific misrepresentations* made by Defendant and her alter ego, BioMax. . . . Plaintiffs allege a fraud claim based on the *lies [Defendants] told Plaintiffs* to gain access to Plaintiffs' private conferences and clinics." Dkt. 92, Plt. Opp. to Merritt MTD, 19:14–24 (May 25, 2016) (emphasis added).[3] Plaintiffs also note that Defendant Daleiden's summary judgment opposition brief argued that that Plaintiffs only actually *relied* on concealments, and not affirmative misrepresentations. But neither parties' briefing addressed false promise, and concealment briefing was limited to argument by Daleiden noting that the elements for the two distinct torts are notably different.

Finally, Plaintiffs have also indicated that they may seek to argue that the PPGC NDA was breached by recording itself—an entirely novel theory only identified in Plaintiffs' summary judgment reply brief. *See* Dkt. 694, Plt. Reply ISO MSJ, 14:1–4 (Jul. 3, 2019) (arguing that Daleiden breach[ed] the NDA by surreptitiously recording conversations with PPGC/PPCFC employees" because "the NDA expressly provides that 'Recipient will not copy any Confidential Information of the Disclosing Party. . . .'"). In the absence of any statement by the Court in its order responding to Plaintiffs' novel theory, Defendants request confirmation that this purported breach will not be at issue at trial.

For the reasons stated in the summary judgment briefing, Plaintiffs should be held to the claims and theories present in the complaint or subsequently narrowed. However, should the Court

---

[3] *See also* Dkt. 91, Plt. Opp. to CMP MTD, 27:6–9 (May 25, 2016) ("Defendants defrauded Plaintiffs by *lying to them* to gain access to Plaintiffs' private conferences and clinics."); *id.* at 29:21–22 ("fraudulent representations"); Dkt. 124, Order on MTD, 31 n.28 (Sep. 30, 2016) ("[P]laintiffs *specifically identify the misrepresentations* by [Defendants] and BioMax in their applications, agreements, advertising materials, and verbal statements.") (emphasis added).

be inclined to permit Plaintiffs' requested late amendments, Defendants request the opportunity to fully brief the propriety of permitting them.

## VII. BIFURCATION STATEMENT

Neither Plaintiffs nor Defendants believe bifurcation or separate trials are feasible for any issues in the case.

<u>Defendants' Further Statement:</u>  Despite Plaintiffs' UCL claim, Defendants seek a jury on all issues of fact, including equitable issues. When legal and equitable claims are joined in the same action, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) (citing *Curtis* v. *Loether*, 415 U.S. 189, 196, n. 11 (1974)).

<u>Plaintiffs' Response:</u>  Defendants are citing a line of cases that hold that if the legal and equitable issues overlap, the legal issues are tried first, then the equitable issues. The Court is bound by the jury's determination on overlapping factual issues.  Plaintiffs' position is that the question of the impact of the jury's findings on the Court's decision on an equitable claim is not ripe.

## VIII. PROPOSED PRELIMINARY STATEMENT

<u>Plaintiffs' Statement</u>

Plaintiffs respectfully submit this proposed preliminary statement to be read to the jury:

> The Plaintiffs in this case are Planned Parenthood Federation of America and ten of its affiliates that operate healthcare centers in California, Texas and Colorado.  The Defendants are David Daleiden, Sandra Merritt, Gerardo Adrian Lopez, Albin Rhomberg, and Troy Newman, and two companies: the Center for Medical Progress and BioMax Procurement Services.  The Plaintiffs claim that Defendants conspired to violate their rights by creating a fake company, BioMax, using fake driver's licenses and identities, and making false representations about their true purpose in order to gain access to conferences of abortion providers and to Planned Parenthood healthcare centers, where the Defendants used hidden cameras and microphones to record Plaintiffs' doctors and staff without their consent.  The Plaintiffs further claim that Defendants used the surreptitious recordings to create, and then release on the Center for Medical Progress's

website, edited short video clips in which Defendants accused the Plaintiffs of conspiring to profit from the sale of fetal tissue. The Plaintiffs claim that Defendants' conduct was fraudulent, and that Defendants breached contracts that they entered into with Plaintiffs, trespassed on Plaintiffs' property, and violated federal and state surreptitious recording laws. Plaintiffs are seeking to recover damages for these claims, including punitive damages.

The Defendants deny they are liable to Plaintiffs on any of their claims, and contend their recording of Plaintiffs was permitted under California law because they sought to obtain evidence of a violent felony against a person. Defendants further assert that they did not cause any Plaintiffs to sustain any recoverable damages, and that they are not liable to Plaintiffs in any amount.

Defendants' Statement

Defendants respectfully submit the below preliminary statement to be read to the jury. The most significant difference between the parties' two preliminary statements is that Plaintiffs' version omits certain of Defendants' defenses which Defendants believe should be included.

The Plaintiffs in this case are Planned Parenthood Federation of America and ten of its affiliates. The Defendants are the Center for Medical Progress, BioMax Procurement Services, David Daleiden, Sandra Merritt, Gerardo Adrian Lopez, Albin Rhomberg, and Troy Newman. This case was brought by the Plaintiffs after Defendant CMP began releasing undercover videos in 2015 that accused the Plaintiffs of violating various laws, including the law forbidding the transfer of the tissue and organs of aborted fetuses for a profit. The Plaintiffs claim that prior to releasing the videos, the Defendants conspired to violate their rights by using fake driver's licenses to gain access to their facilities and conferences, by invading their privacy and recording without consent, and by breaching certain nondisclosure agreements. The Plaintiffs further claim that the Defendants, through their undercover investigation, violated various federal and state laws. Plaintiff Planned Parenthood Federation of America is seeking to recover the costs of preventing unauthorized access to future conferences. All the Plaintiffs are seeking statutory damages, which are fixed monetary penalties, for recordings made at conferences and other venues. All the Plaintiffs are also seeking punitive damages. The Defendants assert that they did not violate any laws, that the public locations of their recordings, and the illegal actions discussed in them, show that there was no true reasonable expectation of privacy, and that their actions are protected by the Constitutional guarantees of freedom of speech and the press. The Defendants further assert that they did not cause any Plaintiff to sustain any recoverable damages, and that they are not liable to Plaintiffs in any amount.

## IX. PRELIMINARY JURY INSTRUCTIONS

Attached hereto as **Exhibits C** and **D**, are Plaintiffs' and Defendants', respectively, preliminary jury instructions to be read to the jury prior to opening statements.

## X. IMPACT OF COURT'S SUMMARY JUDGMENT RULING

### Proposed Non-Argumentative Timeline to Aid Jury

In accordance with this Court's guidance, *see* Dkt. 753, MSJ Order, 60 n.58 (Aug. 23, 2019), the Parties respectfully submit proposed non-argumentative timelines to assist the jury and the Court. Plaintiffs and Defendants, respectively, submit as **Exhibits E** and **F**, their proposed non-argumentative timelines. The Parties propose that they convert the timeline to a graphic form and enlarge it to 4 feet x 8 feet so that it is large enough to be read from across the courtroom. Plaintiffs note that such non-argumentative timelines have been used in other jury trials in this District. See, e.g. Exhibit G, Order, Parish v. NFL Players Inc., Case No. C-07-0943 (WHA) (N.D. Cal. Sept. 28, 2008).

### Chart of Claims

The parties believe it would be most fruitful for them to prepare for the Court a chart of presently existing claims that takes into account the Court's summary judgment ruling and Plaintiffs' itemization of damages (to be served on Friday, August 30, 2019). The parties will endeavor to file that chart in the following week.

### Defendants' Statement Re Motions in *Limine*

In the Court's summary judgment ruling, the Court instructed the parties to file motions in *limine* regarding the effect on recoverable damages regarding whether "defendants expressly waived their First Amendment rights by knowingly, voluntarily, and intelligently agreeing to the [NAF] NDAs." Dkt. 753, 50:20–25. At this time, it is not clear to Defendants whether Plaintiffs are seeking any damages that would be proximately caused by any breach of the NAF NDAs, and so it would be premature to file a motion in *limine* at this time. Following the receipt of Plaintiffs' damages itemization on Friday, August 30, Defendants will be in a position determine whether a

supplemental motion in *limine* is appropriate.

## XI. EXHIBIT LISTS

The Parties exchanged exhibit lists on August 26. The Parties are in the process of reviewing the lists to eliminate duplicates and agree on the sequencing of exhibit numbers. The Parties will exchange exhibits on September 9, as set forth in the Court's Order Regarding Pre-Trial Conference. Dkt. 736. The Parties will thereafter meet and confer as to objections and stipulations to authenticity and/or admissibility, and will file those objections and stipulations on or before September 23 as set forth in the Court's Order.

## XII. PRESENTATION OF EVIDENCE—AIMS REPORTS

Defendants' Position

Plaintiffs have indicated that they intend to introduce various AIMS and Hotspots reports at trial. These are reports which various PPFA affiliates have used to log unusual incidents, including security-related incidents. The Court previously issued a ruling regarding their production. (Dkt. 621.)

Each of these hundreds of reports is subject to numerous objections, such as relevance and multiple levels of hearsay. The defense has requested that plaintiffs provide a specific list of the reports they intend to introduce and that the parties set up a working group to streamline and categorize objections. Given the quantity of these reports, the defense is concerned that resolving disputes mid-trial in front of the jury would bog down the trial. No progress has been made on the matter to date.

Plaintiffs' Position

Plaintiffs respond that, in accordance with the Court's Order, the parties are expected to meet and confer after the September 9 exhibit exchange regarding stipulations and objections to admissibility of exhibits. Plaintiffs intend to comply with the Court's Order.

Dated: August 26, 2019                    Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: */s/ Rhonda R. Trotter*
       Rhonda R. Trotter

RHONDA R. TROTTER (No. 169241)
OSCAR D. RAMALLO (No. 241487)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, California  90017
Telephone:     (213) 243-4000
Email: rhonda.trotter@arnoldporter.com
           oscar.ramallo@arnoldporter.com

STEVEN L. MAYER (No. 62030)
SHARON D. MAYO (No. 150469)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:     (415) 471-3100
Facsimile:     (415) 471-3400
Email: steve.mayer@arnoldporter.com
           sharon.mayo@arnoldporter.com

DIANA STERK (admitted pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone:     (212) 836-8000
Email: diana.sterk@arnoldporter.com

AMY L. BOMSE (No. 218669)
ROGERS JOSEPH O'DONNELL
311 California St., 10th Floor
San Francisco, California  94104
Telephone:  (415) 956-2828
Email:  ABomse@rjo.com

BETH H. PARKER (No. 104773)
PLANNED PARENTHOOD NORTHERN CALIFORNIA
2185 Pacheco Street
Concord, California  94520
Telephone:     (415) 531-1791
Email: beth.parker@ppnorcal.org

HELENE T. KRASNOFF    (admitted pro hac vice)

PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, D.C. 20005
Telephone:     (202) 973-4800
Email: helene.krasnoff@ppfa.org

*Attorneys for Plaintiffs*

/s/ Charles S. LiMandri
Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
B. Dean Wilson (CA Bar No. 305844)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel:  (858) 759-9948
Facsimile:  (858) 759-9938
cslimandri@limandri.com
pjonna@limandri.com
jtrissell@limandri.com

*Attorneys for Defendants the Center for Medical Progress, BioMax Procurement Services, LLC, Gerardo Adrian Lopez, and David Daleiden*

Denise M. Harle (CA Bar No. 275561)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., NE
Suite D1100
Lawrenceville, GA 30043
Tel:  (770) 339-0774
dharle@ADFlegal.org

Harmeet K. Dhillon (CA Bar No. 207873)
Gregory R. Michael (CA Bar No. 306814)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
415-433-1700
415-520-6593 (fax)
harmeet@dhillonlaw.com

*Attorneys for Defendants the Center for Medical Progress, BioMax Procurement Services, LLC, and David Daleiden*

/s/ Thomas Brejcha
Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
Matthew F. Heffron, *pro hac vice*
Sarah E. Pitlyk, *pro hac vice pending*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
Facsimile: (312) 782-1887
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

*Attorneys for Defendant David Daleiden*


/s/ Edward L. White
Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
John A. Monaghan, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007; Fax: (734) 680-8006
ewhite@aclj.org
ezimmerman@aclj.org
jmonaghan@aclj.org

Vladimir F. Kozina; SBN 95422
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833; Fax: (209) 473-4818
VKozina@mayallaw.com

*Attorneys for Defendant Troy Newman*


/s/ Catherine Short
Catherine W. Short (CA Bar No. 117442)
Corrine G. Konczal (CA Bar No. 320238)
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, CA 93024-1313
Tel: (707) 337-6880
kshort@lldf.org

Michael Millen (CA Bar No. 151731)
ATTORNEY AT LAW
119 Calle Marguerita Ste. 100
Los Gatos, CA 95032
Tel: (408) 871-0777
Facsimile: (408) 866-7480
mikemillen@aol.com

*Attorneys for Defendant Albin Rhomberg*


/s/ Horatio G. Mihet
Horatio G. Mihet*
Liberty Counsel
hmihet@lc.org
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
*Admitted pro hac vice

Nicolaie Cocis CA Bar # 204703
Law Office of Nic Cocis and Associates
nic@cocislaw.com
38975 Sky Canyon Dr., Suite 211
Murrieta, CA 92563
(951) 695-1400

*Attorneys for Defendant Sandra Susan Merritt*