UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., <br><br>Plaintiffs, <br><br>v. <br><br>CENTER FOR MEDICAL PROGRESS, et al., <br><br>Defendants. | Case No. 16-cv-00236-WHO <br><br>**TENTATIVE ORDER ON ADVERSE INFERENCES** |

Having considered the full record before me, including the testimony to date and the documentary evidence admitted, I am inclined to conclude that plaintiffs have made the required substantial need showing required under *Doe v. Glanzer* and other Ninth Circuit precedent to justify giving the jury a list of specific adverse inferences that they may, but are not required to make, with respect to defendant Newman and third-parties Baxter and Davin.

The inferences I am inclined to allow, identified below, are supported by the questions asked by plaintiffs in the depositions that Newman, Baxter, and Davin refused to answer under the Fifth Amendment. The inferences go to core, disputed issues regarding the defendants' intent, knowledge, and conduct in this case relevant to the claims arising under federal and the laws of Texas, Colorado, Florida, Maryland, and the District of Columbia, but not relevant to the claims arising solely under California law. Other evidence in this case, including admitted documentary evidence, support the existence of the facts that plaintiffs seek to establish through the inferences. Because of the nature of inferences, generally going to the defendants' intent and knowledge, the inferences cannot be otherwise adequately established through less burdensome means. There is no unfair prejudice to Newman, Baxter, or Davin from allowing the inferences identified below.

Finally, prior to reading the inferences, I intend to instruct the jury as follows:

> In this case, Troy Newman exercised his right under the Fifth Amendment not to incriminate himself and did not answer any substantive questions asked by plaintiffs during his deposition.

Accordingly, he will not testify in this trial. For claims based on California law, you may not consider that, or speculate about why, Newman invoked the Fifth Amendment and refused to answer. For claims based on federal law, and the laws of Florida, Maryland, and the District of Columbia, you may make an adverse inference from the fact Newman invoked the Fifth Amendment and refused to answer questions. In a moment, I will list the adverse inferences that you may but are not required to make.

In addition, the parties have agreed that certain exhibits are admissible. I will allow the plaintiffs to display them as they choose as relevant to the permissible adverse inferences. Further, there are pleadings that have established certain facts; the plaintiffs may recite them as they choose as relevant to the permissible adverse inferences.

The inferences I am inclined to give are as follows:

**NEWMAN 1**. Troy Newman co-authored the book "Their Blood Cries Out," which reflects his beliefs that "...the United States government has abrogated its responsibility to deal properly with the blood-guilty" and that "This responsibility rightly involves executing convicted murderers, including abortionists, for their crimes in order to expunge bloodguilt from the land and people."

**NEWMAN 2**. Troy Newman and his organization Operation Rescue operate the website "AbortionDocs.org," which publicizes the names, photographs and business addresses of abortion providers, including Dr. Deborah Nucatola and Dr. Mary Gatter.

**NEWMAN 3.** Troy Newman understood that one of CMP's goals was to end abortion, and to defund and shut down Planned Parenthood.

**NEWMAN 5**. Troy Newman understood that CMP's plan was to conduct creative, scenario-based "gotcha" stings, that would include undercover videos of Planned Parenthood abortion providers.

**NEWMAN 6**. Troy Newman suggested to David Daleiden that they communicate through an anonymous e-mail address that only they would know about in order to hide their communications about CMP and the Human Capital Project.

**NEWMAN 7.** Troy Newman had an integral role in CMP and the Human Capital Project since its origin in 2013, including advising David Daleiden, directing the Project, and providing consultation services and material support for the Human Capital Project.

**NEWMAN 9**. Troy Newman was the co-author of the book "Abortion Free." In the book, Newman discusses elaborate "sting" operations against abortion providers, in which a team goes into clinics with hidden video cameras to record clinic workers and abortion providers. Newman's described this type of "hoax scenario" that requires "a team that is good at role-playing as well as specialized video cameras that are undetectable during the personal interview." He understood that the same methods and strategies were being used by David Daleiden, Susan Merritt, and Adrian Lopez in recording Plaintiffs' doctors and staff.

**NEWMAN 10**. Troy Newman understood that BioMax was created as a front organization to provide a cover story to allow Daleiden, Merritt, and Lopez to tape Plaintiffs' doctors and staff.

**NEWMAN 11.**  Troy Newman understood that Daleiden, Merritt, and Lopez lied about BioMax so they could tape Plaintiffs' doctors and staff without raising suspicions.

**NEWMAN 12**.  Troy Newman knew that David Daleiden, Susan Merritt, Anna Bettisworth, and Brianna Baxter were using false names in order to infiltrate conferences of abortion providers because they would not get in using their real names.

**NEWMAN 13.**  Troy Newman knew that the CMP actors posing as BioMax employees carried concealed video cameras and taped Planned Parenthood doctors and staff.

**NEWMAN 14.**  Troy Newman knew that the Planned Parenthood employees who were taped by the people paid by CMP were not told that they were being taped.

**NEWMAN 15**.  Troy Newman knew that CMP planned to create short videos to be posted online containing portions of the footage that was recorded surreptitiously, and Newman previewed those videos before they were released.

**NEWMAN 16.**  Troy Newman's motive and intent in participating in CMP and the Human Capital Project were to "finish off Planned Parenthood and end abortion within a few years," "defund[]" Planned Parenthood, "tak[e] down their empire," and to "destroy their death machine."

**BAXTER 1.**  Brianna Baxter has been involved in pro-life activities since high school, including with Live Action and the Survivors of the Abortion Holocaust, who describes itself as "boots on the ground on the front lines of the battle to save the preborn babies of America."

**BAXTER 2.**  Brianna Baxter used her fake identity and backstory to infiltrate conferences because she believed it was necessary to get people to trust and talk to her.

**DAVIN 1.**  Annamarie Bettisworth Davin has a long history of anti-abortion activism, including participation in Live Action and Survivors of the Abortion Holocaust, which believes that "abortion in all of its forms is evil."

**DAVIN 2**.  Davin's goal in working for CMP was to harm Planned Parenthood.

**DAVIN 3**.  Davin used a false identity to gain entry to and videotape at NAF conferences that required identification.

**DAVIN 4.**  Davin provided false information, including the BioMax brochure, to gain the trust of Planned Parenthood employees to further her goal of ending abortion.

    **IT IS SO ORDERED.**

Dated: November 4, 2019



William H. Orrick
United States District Judge