Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
John A. Monaghan, *pro hac vice*
Christina A. Stierhoff, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007
ewhite@aclj.org
ezimmerman@aclj.org
jmonaghan@aclj.org
cstierhoff@aclj.org

Vladimir F. Kozina (#95422)
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833
VKozina@mayallaw.com

*Attorneys for Defendant Troy Newman*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> THE CENTER FOR MEDICAL PROGRESS, *et al.*, <br><br> Defendants. | Case No. 3:16-CV-00236 (WHO) <br><br> Judge William H. Orrick, III <br><br> Bullet Points from Defs. Rhomberg and Newman (Concerning Count 1) <br><br> Courtroom 2, 17th floor |

Defendants Rhomberg and Newman are filing these bullet points pursuant to this Court's direction. In light of the evidence admitted at trial, Plaintiffs have failed as a matter of law to prove their RICO claim against Rhomberg and Newman, which is solely premised upon a conspiracy theory of liability. The condensed argument herein will be fleshed out (among various others) in our FRCP 50(a) motion, which will be filed at a later date as noted to the Court yesterday, but the final verdict form and any relevant jury instructions should be modified to take into account the fact that Rhomberg and Newman are not liable on the RICO claim.[1]

## I. The law of conspiracy

- Since civil conspiracy is not a cause of action, the question is not, generically, whether a particular Defendant was part of "the" conspiracy, but rather whether the Defendant conspired to further the commission of a particular type of tortious or illegal act.

- In order for a particular Defendant to be held liable via conspiracy on a particular cause of action, they must prove that the Defendant:
  - (a) had knowledge that another defendant planned to commit the specific wrongful act;
  - (b) agreed with the other defendant that the wrongful act be committed; and
  - (c) cooperated or agreed to cooperate in the commission of that wrongful act. *See, e.g.,* Dkt. #753, MSJ Order at 109; Plaintiffs' Proposed Jury Instruction, Dkt. 971 at p. 127.

- Although knowledge of the planned wrongful acts at issue is required—should have known is not the standard—mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make a Defendant responsible for the harm. *See* Plaintiffs' Proposed Jury Instruction, Dkt. 971 at p. 127.

- When conspiracy is asserted as a basis for RICO liability, a plaintiff must prove, among other things, either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses. Order, Doc. 753 at 31-32.

- Evidence that the defendant agreed to the pursuit of a goal—such as investigating illegal and unethical activities—that could potentially be achieved without the commission of RICO predicate acts is insufficient. *See, e.g., Ocasio v. United States*, 136 S. Ct. 1423, 1429-30 (2016).

---

[1] Although none of the other Defendants committed any predicate act or violated RICO, and no Plaintiffs incurred any damages proximately caused by a purported RICO violation, the Court need not consider those issues to conclude that Rhomberg and Newman have no RICO conspiracy liability in light of the admitted evidence.

## II. Established facts concerning Rhomberg and Newman's limited role and knowledge

- As recently discussed in detail at Doc 956 at 8:21-12:11 (summarizing testimony of David Daleiden and Rhomberg about Newman and Rhomberg), the evidence established that the extent of Rhomberg and Newman's knowledge of any details of how the investigation was being conducted before and during the time in which it was conducted, and prior to the release of CMP's videos, was very minimal.

- To highlight some of the evidence on point, Daleiden explained that the undercover investigation was his project, which he viewed as his masterpiece. As a matter of operational security, everything about the project was strictly on a need-to-know basis, which included Rhomberg and Newman. Daleiden referred to their involvement as "peripheral" and stated that they were not made aware of the specific details of the investigation.

- Daleiden also testified that Newman's stated belief (expressed in an interview in 2015) that the idea for Daleiden's project originated when the two of them had discussed concepts for the project back in 2012 was incorrect, and he provided further corroboration of that fact by, among other things, discussing the extensive research he had conducted before beginning the project (some of which predated his "initial concepts" meeting with Newman).

- Daleiden further explained that his early discussions with Rhomberg and Newman about ideas for a potential project were conceptual and big picture in nature.

- Furthermore, Daleiden testified that he was the sole manager of the project, and neither Rhomberg nor Newman controlled the undercover operation or directed, oversaw, or controlled the day-to-day activities of Daleiden or any other individuals involved in the undercover investigation.

## III. Application of law to the established facts

- At the summary judgment stage, the Court declined to dismiss any of the claims brought against Defendants Rhomberg and Newman—all of which rest solely upon a conspiracy theory of liability—holding that that "Plaintiffs have adduced <u>thin</u> but sufficient evidence that [Rhomberg and Newman] <u>could have</u> authorized, directed, or encouraged the specific fraudulent behaviors of Daleiden, BioMax, and the other individual defendants." Dkt. #753 at 109 (emphasis added).

- Based on the evidence admitted at trial, however, a reasonable jury could not find that either Rhomberg or Newman (1) knew that another defendant planned to commit wrongful acts that, if undertaken, would meet all of the elements required to establish a cause of action under RICO, (2) agreed with another defendant that those specific wrongful acts would actually occur, and (3) actually cooperated or agreed to cooperate in the commission of those wrongful acts.

### A. Identify theft statute

- With respect to the identity theft predicate (18 U.S.C. §§ 1028(a)(1) and (a)(2)), which deals with the knowing production or transfer of a false identification document without lawful authority,

the evidence conclusively established that neither Rhomberg nor Newman had any knowledge that any Defendant planned to use fake IDs, let alone knowledge that a Defendant would acquire or produce an ID in a manner that would allegedly violate the identity theft statute.

- The mere fact that these Defendants were once affiliated with a group that is alleged to be a RICO enterprise is irrelevant; what matters whether they agreed to the commission of a crime, and the evidence establishes that they did not do so. *Cf. Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("[A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise.").

- There is no evidence whatsoever that Rhomberg or Newman had any knowledge of, or involvement in, the acquisition, production, or use of fake IDs. Additionally, Daleiden answered many questions about how he went about creating or obtaining driver's licenses for himself and a few other individuals doing undercover work for BioMax, and also discussed Exhibit 140, which includes photocopies of those licenses.

- Daleiden testified that, before the release of CMP's videos, he <u>did not</u>:

    o tell Rhomberg or Newman that he was going to use any fake IDs during the undercover investigation;
    o discuss the concept of using fake IDs with Rhomberg or Newman;
    o tell Rhomberg or Newman that he had made or was acquiring any fake IDs; or
    o share any information with Rhomberg or Newman about the IDs that were going to be used during the investigation.

- Although a few of the post-video release exhibits include Newman statements that tout his role and involvement as a CMP board member, none of those exhibits (or any others) state that Newman had any knowledge of, or involvement with, the use, acquisition, or production of the fake IDs. It is unsurprising, therefore that Plaintiffs dropped a previously requested adverse inference against Newman that had asserted that he "knew that David Daleiden and Susan Merritt obtained and used fake driver's licenses in the names of Robert Sarkis and Susan Tennenbaum in order to infiltrate Planned Parenthood and NAF conferences and facilities" in light of the fact that there is no evidence to support that claim.

- Moreover, although it was Plaintiffs' burden to prove (among several other things) that Rhomberg knew about the unlawful creation or transfer of fake IDs, extensive testimony from Rhomberg further established that he had no such knowledge until after CMP's videos came out, and the use or acquisition of fake IDs was never discussed during board meetings between Daleiden, Rhomberg, and Newman. *See, e.g.,* Trial Transcript Vol. 4, 720:20-721:11; 721:16-22; 723:23-725:25; 726:23-727:14; 728:4-729:2; 733:2-10; Vol. 5, 832:2-833:7; Vol. 14, 2648:9-2651:11.

- In sum, the unrebutted proof established that Rhomberg and Newman lacked knowledge of any plan to violate the identify theft law, did not agree with any defendant that at least two violations of the identify theft statute would be committed, and did not cooperate or agree to cooperate in such acts.

### B. Wire fraud statute

- Even if wire fraud is being asserted by Plaintiffs as providing a predicate for RICO conspiracy liability against Rhomberg and Newman (since it is not clear whether that is the case), Plaintiffs failed to meet their burden to prove that Rhomberg and Newman conspired to violate RICO through their knowledge of, agreement to, and taking of acts in furtherance of a plan that called for the commission of wire fraud.

- The wire fraud predicate is based upon an "obtaining access" theory that seems logically inconsistent with Plaintiffs' trespass claims since both theories are premised upon the same set of events; one cannot temporarily encroach upon someone's property (trespass) while, at the same time, stealing that property (wire fraud). However, regardless of how Plaintiffs characterize the nature of the legal injury that they allege they incurred as a result of the particular entries upon their property (wire fraud, trespass, or both), they failed to prove that Rhomberg and Newman conspired to violate RICO through the commission of acts of wire fraud.

- In the ruling on the motions for summary judgment [Doc. 753], the Court granted summary judgment against Daleiden and Merritt on PPFA's trespass claims based on the Florida and DC conferences, and against Daleiden and Merritt on PPGC's and PPRM's trespass claims based on the site visits. The Court relied on factors that would have been unknown to Rhomberg and Newman, or about which, at a minimum, there is no evidence that Rhomberg or Newman had any knowledge necessary for them to agree to form or join a conspiracy to commit wire fraud in connection with these conferences and visits.

    o First, to establish PPFA's property interest in the areas where Daleiden and Merritt entered, the Court relied on the wording of the hotel contracts: "After reviewing the language of the contracts and undisputed circumstances surrounding their performance. . . ." *Id.* at 63:6-64:6 (examining discrete provisions of each contract).

    o There is no evidence that Rhomberg or Newman knew about these contracts, let alone the contractual provisions creating PPFA's possessory interest, and there is also no evidence that they knew anything about the venues where PPFA held its conferences that would lead them to infer that PPFA had a possessory interest. Indeed, there is no evidence that Rhomberg or Newman knew that PPFA reserved and restricted certain areas of its conferences to registered conference attendees, or that Daleiden or Merritt entered areas for which access was restricted to conference attendees (as opposed hallways, plazas, courtyards, or other areas to which both hotel guests and meeting attendees had access).

    o Also, even if Newman and Rhomberg had actually agreed to a vague idea or "plan" that called for the infiltration of "abortion industry conferences," that would not constitute evidence of an *agreement to trespass* on property on which PPFA held an exclusive, possessory interest. Thus, there is no evidence they knew of, or conspired to join, a plan that included acts of wire fraud involving PPFA.

    o Second, as to PPRM and PPGC's claims, there is no evidence that Newman or Rhomberg knew that Daleiden and Merritt intended to enter Planned Parenthood facilities. The project

- proposal (Exhibit 24) proposes going to conferences, specifically the NAF and ARHP conferences (not PPFA conferences), to make contacts with whom to follow up.

  o The evidence shows that Daleiden went to lunch with Dr. Nucatola after the NAF conference and Dr. Gatter after the PPFA Forum conference and thereby obtained the most critical undercover footage of the project. There is no evidence that Newman or Rhomberg agreed to a plan for Daleiden or anyone acting with or under him to enter Planned Parenthood facilities.

  o The mere fact that, on one occasion, Daleiden called Rhomberg from a PPGC facility is not evidence that Rhomberg had foreknowledge of, or agreed to, Daleiden's plan to visit the facility, including the supposed use of wire fraud as the means by which he would gain access to the facility. To the contrary, Rhomberg provided testimony explaining his belief that, during the course of Daleiden's investigative project, there were a variety of means by which he could have potentially been invited into a conference or facility that would not have constituted wire fraud even under Plaintiffs' theory.

  o In sum, neither Rhomberg nor Newman conspired to violate RICO through the commission of wire fraud relating to PPRM or PPGC.

## IV.   Conclusion

A reasonable jury cannot find, based on the evidence admitted in this case, that any Plaintiff has met its burden to prove that Defendant Albin Rhomberg had the requisite knowledge, agreement, and acts in furtherance to violate RICO, nor could a reasonable jury make such a finding concerning Defendant Troy Newman. The most immediate impact of these facts is that the verdict form and any relevant jury instructions should be modified so that neither Rhomberg nor Newman are included as Defendants on the RICO claim.

Respectfully submitted on November 7, 2019 (on behalf of Rhomberg and Newman).

/s/ *Erik Zimmerman*
Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
John A. Monaghan, *pro hac vice*
Christina A. Stierhoff, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007
ewhite@aclj.org
ezimmerman@aclj.org
jmonaghan@aclj.org
cstierhoff@aclj.org

Vladimir F. Kozina (#95422)
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833
VKozina@mayallaw.com

*Attorneys for Defendant Troy Newman*