Michael Millen
Attorney at Law  (#151731)
119 Calle Marguerita  Ste. 100
Los Gatos, CA  95032
Telephone:  (408) 871-0777
Fax:  (408) 866-7480
mikemillen@aol.com

Catherine W. Short (#117442)
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, CA  93024-1313
Tel. (707) 337-6880
kshort@lldf.org
*Attorneys for Defendant Rhomberg*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (S.F. DIVISION)

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., <br><br> Plaintiffs, <br> vs. <br><br> CENTER FOR MEDICAL PROGRESS, et al., <br><br> Defendants. | NO.:   16-cv-00236 (WHO) <br><br> **DEFENDANT ALBIN RHOMBERG'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Judge: Hon. William H. Orrick <br> Date: TBA <br> . <br> Location:  Courtroom #2 (17th Fl.) |

Table of Contents

I. **Request for Rule 50 Relief** ..................................................................................................1

II. **Damages** ............................................................................................................................1

    A. NEITHER RHOMBERG NOR ANY OTHER DEFENDANT IS LIABLE FOR ANY DAMAGES AS ALL DAMAGES SOUGHT IN THIS CASE ARE IMPROPER ..............................1

    B. RHOMBERG IS NOT LIABLE FOR ANY PUNITIVE DAMAGES..........................................2

III. Law of Conspiracy................................................................................................2

IV.    Counts: ......................................................................................................................3

    A. RICO CONSPIRACY: PLAINTIFFS HAVE FAILED TO PRESENT DIRECT OR INDIRECT EVIDENCE THAT RHOMBERG AGREED TO FURTHER OR FACILITATE ANY RICO VIOLATION, HAD KNOWLEDGE OF THE ESSENTIAL NATURE AND SCOPE OF ANY RICO VIOLATION, OR INTENDED TO PARTICIPATE IN ANY RICO VIOLATION. ........4

    B. CONSPIRACY TO COMMIT FRAUDULENT MISREPRESENTATION: PLAINTIFFS HAVE FAILED TO PRESENT DIRECT OR INDIRECT EVIDENCE THAT RHOMBERG KNEW THAT OTHER DEFENDANTS WOULD COMMIT FRAUDULENT MISREPRESENTATION AND/OR A FALSE PROMISE AND THAT RHOMBERG AGREED WITH AND SUPPORTED THE OTHER DEFENDANTS IN COMMITTING THAT FRAUDULENT MISREPRESENTATION OR FALSE PROMISE. .................................................................................................6

       1. **Fraudulent Misrepresentation:** ................................................................6

       2. **Promissory Fraud** ........................................................................................7

    C. CONSPIRACY TO VIOLATE RECORDING STATUTES: PLAINTIFFS HAVE FAILED TO PRESENT DIRECT OR INDIRECT EVIDENCE THAT RHOMBERG KNEW OF, AGREED TO AND SUPPORTED OTHER DEFENDANTS IN INTENTIONALLY RECORDING CONFIDENTIAL COMMUNICATION WITHOUT THE CONSENT OF ALL THE PARTIES..........8

    D. PLAINTIFFS' FAILED TO OFFER SUFFICIENT EVIDENCE TO SUPPORT THEIR CLAIMS OF ILLEGAL RECORDINGS. ........................................................................................9

    E. PLAINTIFFS HAVE FAILED TO PRESENT DIRECT OR INDIRECT EVIDENCE THAT RHOMBERG KNEW OF, AGREED TO AND SUPPORTED OTHER DEFENDANTS' ALLEGED TRESPASS: ..............................................................................................................10

**IV. PLAINTIFFS FAILED TO SHOW THAT RHOMBERG SHOULD BE LIABLE FOR PUNITIVE DAMAGES**..........................................................................................10

# Table of Authorities

**Cases**

*Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426 (9th Cir. 1986) ......................................... 1

*Ocasio v. United States*, 136 S. Ct. 1423 (2016) ............................................................................ 4

*Webb v. Sloan*, 64 F. App'x 657 (9th Cir. 2003) ............................................................................ 1


**Rules**

Fed. R. Civ. P. 50 ............................................................................................................................. 1

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**DEFENDANT ALBIN RHOMBERG'S RULE 50 MOTION**   16-cv-00236 (WHO)
**FOR JUDGMENT AS A MATTER OF LAW**

# DEFENDANT ALBIN RHOMBERG'S RULE 50 MOTION
# FOR JUDGMENT AS A MATTER OF LAW

I. REQUEST FOR RULE 50 RELIEF

A motion for a matter of law is granted "if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). The court, when granting a motion for a matter of law can "[] resolve the issue against the party; and [] grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1)(A)-(B). A judgment as a matter of law motion must be "made at any time before the case is submitted to the jury" and "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). The purpose of a judgment as a matter of law is to "question only the sufficiency of the evidence relevant to the grounds that it cites." *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1429 (9th Cir. 1986). The Court should grant a defendant's Rule 50(a) motion if "no reasonable jury could have found for Plaintiff." *Webb v. Sloan*, 64 F. App'x 657, 658 (9th Cir. 2003).

II. DAMAGES

**A. Neither Rhomberg Nor Any Other Defendant Is Liable For Any Damages As No Damages Sought In This Case Are Recoverable**

Defendant Rhomberg joins in the Motion filed concurrently by Center for Medical Progress, BioMax Procurement Services, David Daleiden, Susan Merritt, and Adrian Lopez ("CMP Defendants") with regards to the damages claims. All arguments in this section apply with equal force to Rhomberg whose only liability for damages is derivative, by way of alleged conspiracy, from that of Daleiden and CMP. The claimed damages are not "expenses directly caused by defendants' acts." Doc. 983 at 92. The evidence shows that all the personal security costs were due to Plaintiffs' reaction to public reaction to the release of the CMP videos. Trial Tr. at 1300:25-1301:7 (PPPSGV); Trial Tr. at 1160-63 (PPPSGV); Trial Tr. at 1420:20-1421:6, 1425-1428 (PPOSBC); Trial Tr. at1823:7-15 2970:7-23 - (PPRM); Trial Tr. at 1615-22 (PPGC); Trial Tr. at 1812:14–1813:5 (PPFA).

PPFA also spent money on investigating the infiltration and improving security; these costs are simply not damages. None of the damages sought against the CMP Defendants are recoverable under standard legal principles. Thus it follows that an alleged conspirator in the actions of the CMP Defendants—which caused no legally recoverable damages—similarly cannot be held liable for any damages in this case.

### B. Rhomberg Is Not Liable For Any Punitive Damages

Defendant Rhomberg also joins in the Motion filed concurrently by the CMP Defendants with regards to the punitive damages claims. All arguments in this section apply with equal force to Rhomberg because, as argued in that brief, 1) Plaintiffs cannot claim punitive damages under California law where they made no showing of Rhomberg's financial condition; 2) they have not proved that the conduct causing the damage was either "'intentional' or 'grossly negligent'" as required under Florida law and 3) Plaintiffs have shown no malice on Rhomberg's part. See discussion of Recording claims, infra; Trial Tr., Vol. 5 at 831:11-832:1 (noting that Rhomberg believed he was working with a man who was very meticulous about following the law, both legal and moral). Therefore, no reasonable jury could find that Defendants' have caused Plaintiffs any cognizable actual damages.

### III. LAW OF CONSPIRACY

Plaintiffs assert the concept of civil conspiracy to hold Rhomberg liable on certain counts, where Rhomberg "may be held indirectly liable if plaintiffs prove at trial their knowledge of, agreement to, or support of the fraudulent conduct that enabled" the tortious conduct. Ord. on Summary Judgment, Dkt. #753 at 70 ("MSJ Ord."). Since civil conspiracy is not a cause of action, the question is not, generically, whether a particular defendant was part of "the" conspiracy, but rather whether the defendant conspired to further the commission of a particular tortious or illegal act. In order for a particular defendant to be held liable via conspiracy on a particular cause of action, Plaintiffs must prove:

    1. That the Defendant was aware that another Defendant or person planned to commit a wrongful act; and

    2. That the Defendant agreed with the other Defendant or person and intended that the wrongful act be committed.

*See, e.g.*, Doc. 993, at 86. Actual knowledge of the planned wrongful acts at issue is required—"should have known" is not the standard. Even so, "[m]ere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make a Defendant responsible for the harm." *Id*.

### IV. COUNTS

Plaintiffs assert that Defendant Rhomberg is liable under the following Counts[1]:

i. Fraud
    1. Conspiracy to commit fraud through intentional misrepresentation
    2. Conspiracy to commit false promise fraud in connection with PPFA Exhibitor Agreements
ii. Conspiracy to violate RICO
iii. Conspiracy to violate California Penal Code 632
iv. Conspiracy to violate Florida recording law
v. Conspiracy to violate Maryland recording law
vi. Conspiracy to violate Federal recording law
vii. Conspiracy to trespass

In order for this Court to find that it reasonable that the jury has a legally sufficient evidentiary basis to find for Plaintiffs in their claims against Rhomberg, the Plaintiffs are required to prove each element of each claim for at least one Defendant as well as all elements of conspiracy with regard to Rhomberg. Plaintiffs have failed to provide sufficient evidence to prove their underlying claims of Fraud, Violation of RICO, violations of the various recording claims, and trespass, as set forth in the CMP Defendants' Motion. *See* Rule 50(a) Motion of CMP Defendants. Defendant Rhomberg fully joins in this section of the CMP Motion because any failure to prove the underlying bad act means he cannot be found liable for a conspiracy to have committed this act. Moreover, Plaintiffs have failed to meet their burden of proof for showing Rhomberg was involved in a conspiracy to commit the following wrongful acts.

---

[1] Rhomberg objects to the fact that he was added to the recording claims long after the close of discovery.

### A. RICO Conspiracy: Plaintiffs Have Failed to Present Direct or Indirect Evidence That Rhomberg Agreed to Further or Facilitate Any RICO Predicate Act, Had Knowledge of the Essential Nature and Scope of Any RICO Predicate Act, or Intended to Participate in Any RICO Predicate Act.

Plaintiffs' RICO Conspiracy against Rhomberg fails because Plaintiffs have not come forward with evidence necessary to prove Rhomberg conspired to violate RICO through producing or transferring false identification. When conspiracy is asserted as a basis for RICO liability, a plaintiff must prove, among other things, either an agreement that is a substantive violation of RICO,or that the defendants agreed to commit, or participated in, a violation of two predicate offenses. Ord., Dkt. #753 at 31-32. Evidence that the defendant agreed to the pursuit of a goal—such as investigating illegal and unethical activities, or even stirring up public outrage against ideological opponents—that could be achieved without the commission of RICO predicate acts is insufficient. *See, e.g.*, *Ocasio v. United States*, 136 S. Ct. 1423, 1429-30 (2016).

The three elements of a RICO conspiracy agreement require: 1) that Rhomberg agreed and intended to further or facilitate the use of false identification documents in violation of 18 U.S.C. 1028; 2) that Rhomberg must have been aware of the essential nature and scope of the production and transfer of false identification documents; and 3) that Rhomberg intended to participate in the production and transfer of false identification documents. Plaintiffs have failed to meet any of the three elements required.

During their case, Plaintiffs failed to present any evidence that Rhomberg even knew about, much less agreed and intended to further or facilitate the production, procurement, or transfer of false identification documents. Daleiden clearly denied Rhomberg's involvement with anything relating to false identification documents on the stand. Rhomberg did not know the project would use fake IDs; it was not discussed in board meetings Rhomberg telephonically attended with Daleiden and Newman; Rhomberg and Newman were "basically in the background" of the project. Trial Tr., Vol. 14 at 2648:9-2651:11. Rhomberg's testimony matched Daleiden's. Although he knew there would be people going undercover for the project, even if he had assumed Daleiden was going undercover,

he believed Daleiden was enough of an unknown person that he wasn't aware or involved with planning whether Daleiden would need a false identity. Trial Tr., Vol. 4 at 720:20-721:11. Rhomberg knew that Daleiden had worked for Live Action as its Director of Research, but that work was all behind the scenes, as far as Rhomberg knew. Trial Tr., Vol. 4 at 724:8-725:25; id. at 728:4-729:2. He never discussed with Daleiden that Daleiden would be getting an ID made for the investigation. Trial Tr., Vol. 5 at 832:2-9. Based on his own experience, he didn't have any reason to think that Daleiden would need one. Trial Tr., Vol. 5 at 832:10-17. Rhomberg did not believe that Daleiden would necessarily have to show an ID to enter the clinics he went to because people who "have the[] confidence" of the workers or who are "known" don't have to show IDs; he explained that Daleiden is "very capable . . . of winning the confidence of people" so Rhomberg fully believed Daleiden could have just be waved in—indeed as Daleiden was at the PPRM facility. Trial Tr., Vol. 4 at 729:3-732:8. In fact, he first learned of the fake IDs after the videos came out. Trial Tr., Vol. 5 at 832:18-833:7.

At no time did Plaintiffs supply any evidence to suggest that Rhomberg knew David Daleiden would be obtaining a false identification for himself and two others. The closest Plaintiffs come to showing Rhomberg's knowledge even that Daleiden was using a different name is a short recording of a phone call Daleiden made from within PPGC during Daleiden's site visit to the clinic in April of 2015. During this phone call, Daleiden introduced himself to Rhomberg as "Robert Sarkis." Trial Tr., Vol. 12 at 2271:25-2273:8. Rhomberg explained that he "wasn't really paying a great deal of attention" to how Daleiden introduced himself, since, at that point in time, he would have recognized Daleiden's voice over the phone and not needed an introduction. Trial Tr., Vol. 5 at 847:18-848:22; *id.*, Vol. 4 at 721:18-723:15. At best this proves that a year after Daleiden would have first used his fake ID to enter the NAF 2014 conference (and a mere 90 days before the public release part of the project began), Rhomberg knew Daleiden was using the name "Sarkis." This is a far cry from providing evidence that Rhomberg agreed and intended to further or facilitate the production and transfer of false identification in a manner that violated RICO, that he must have been aware of the

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA  95032
(408) 871-0777

DEFENDANT ALBIN RHOMBERG'S RULE 50 MOTION
FOR JUDGMENT AS A MATTER OF LAW

16-cv-00236 (WHO)   Page 5

essential nature and scope of the production and transfer of false identification, or that he intended to participate in the production and transfer of false identification.

Because Plaintiffs failed to meet the elements required to prove that Mr. Rhomberg conspired to commit a RICO violation, Rhomberg respectfully requests that the Court grant this Rule 50 Motion as to Mr. Rhomberg on the RICO Claim.

      **B.**      **Conspiracy to Commit Fraudulent Misrepresentation: Plaintiffs Have Failed to Present Direct or Indirect Evidence That Rhomberg Knew That Other Defendants Would Commit Fraudulent Misrepresentation and/or a False Promise and That Rhomberg Agreed With and Supported the Other Defendants In Committing That Fraudulent Misrepresentation or False Promise.**

      1.      <u>Fraudulent Misrepresentation:</u>

Plaintiffs' Conspiracy to Commit Fraudulent Misrepresentation claim against Rhomberg fails because Plaintiffs have not come forward with evidence necessary to prove the elements required to establish that Rhomberg conspired to fraudulently misrepresent. The Court instructed the jury that a Plaintiff must prove that a Defendant intentionally made a false representation, intended for the Plaintiff to rely on the intentional misrepresentation; that the Plaintiff actually relied; that the Plaintiff's reliance was reasonable; and that the Plaintiff's reliance harmed the Plaintiff. Dkt. #993 at 47. The Court also plans to instruct the jury on the exact representations at issue. *Id.* at 47 - 50.

Not only must Plaintiffs prove these elements (which the CMP Defendants have shown in their Rule 50(a) Motion, Plaintiffs have not proven—and in which portions of the motion Mr. Rhomberg also joins) but they must also prove the additional elements of a conspiracy, i.e., 1) that Rhomberg knew that other Defendants planned to intentionally misrepresent to Plaintiffs; and 2) Rhomberg agreed with and supported the other Defendants in intentionally misrepresenting to Plaintiffs. Plaintiffs have failed to meet the elements required.

Plaintiffs failed to adduce evidence that Rhomberg was aware of any of the alleged fraudulent misrepresentations as set forth in the jury instructions. Dkt. #993 at 47-50. Plaintiffs failed to produce evidence that Rhomberg was aware of any e-mails sent by Daleiden in the persona of Robert Sarkis, Susan Tennenbaum, Brianna Allen, or anyone other than himself. With the exception of a

single e-mail about a conference in San Francisco, there is no evidence that Rhomberg knew anything about where Daleiden was going or who he was going to meet with or speak to at conferences. Indeed, Daleiden himself did not know exactly who he was going to run into and speak with at that conference or any other.

Plaintiffs also failed to adduce sufficient evidence to show that Mr. Rhomberg knew what representations Mr. Daleiden or the other investigators would make about their names, job titles, credentials, and experience, or about Biomax's business practices, to the various people he met with, whether at conferences or at lunch meetings and site visits.

Again, Mr. Daleiden shared very little information about how the investigation would be and was being conducted. Plaintiffs have failed to show that Mr. Rhomberg was informed of the fraudulent misrepresentations at issue. Dkt. #993 at 47-50.[2]

### 2. Promissory Fraud

Plaintiffs' one claim of promissory fraud arises from the alleged promises made in the 2014 Forum Agreement, the 2015 MeDC Agreement, the 2015 National Conference Agreement, and the PPGC NDA. Dkt. #993 at 51-52.

There are no facts in evidence to show that Defendant Rhomberg knew any of the CMP Defendants had registered for or would be attending any conferences hosted by Planned Parenthood. Rhomberg testified that he knew nothing about the PPFA exhibitor agreements until after the videos were released. Trial Tr., Vol. 5 at 838:8-838:13. Similarly, he testified that he never heard of the PPGC NDA until after the release of the videos. Trial Tr., Vol. 5 at 838:14-838:24. In fact, Daleiden testified that he alone signed up and paid for the conferences, noting that Rhomberg did not direct or control any part of the Human Capital Project because he was "basically in the background." Trial Tr., Vol. 14 at 2648:9-2651:11. BioMax was created unilaterally by Daleiden without the consent of the Board, using his authority as the CEO. Trial Tr., Vol 13 at 2461:25-2462:17. The evidence is clear that Daleiden orchestrated his project by compartmentalizing the specifics of what he told

---

[2] Mr. Rhomberg joins in the Rule 50(a) Motion of the CMP defendants as to the insufficiency of Plaintiffs' evidence on the other elements of Plaintiffs' claims for fraudulent misrepresentation and false promise.

1  people—no one person, besides Mr. Daleiden himself—ever knew the full plan or all of its moving

2  parts, which was precisely how he wanted it. Trial Tr., Vol. 13 at 2454:25–2455:16.

### C. Conspiracy to Violate Recording Statutes: Plaintiffs Have Failed to Present Direct or Indirect Evidence That Rhomberg Knew of, Agreed to and Supported Other Defendants in Intentionally Recording Confidential Communication Without the Consent of All the Parties.

Plaintiffs' claim that Rhomberg conspired to violate the California, Florida, Maryland, and federal recording statutes fails because Plaintiffs have not offered any evidence to prove the elements of a conspiracy in regard to those claims. In order to hold Rhomberg liable, Plaintiffs must show that 1) Rhomberg knew that other Defendants planned to intentionally record a confidential or private oral communication without the consent of all the parties to the conversation; and 2) Rhomberg agreed with and supported the other Defendants in intentionally recording a confidential or private oral communication without the consent of all the parties to the conversation. During their case, Plaintiffs failed to present any evidence that Rhomberg knew of, agreed with, or supported the other Defendants in allegedly planning to record a confidential communication or oral communication meeting the applicable statutory definitions, without the consent of all the parties to the conversation. The facts in evidence show that Daleiden considered the Human Capital Project to be his "masterpiece" and "[his] project." Trial Tr., Vol. 13 at 2455:9-14.  He kept the facts about the project compartmentalized, with only himself knowing the full scope of the plan. Trial Tr., Vol 13 at 2454:25–2455:16.  He considered the members of the board to be only "peripherally involved." *Id.* at 2455-56.  Even the identities of the undercover actors were secret from Rhomberg—he never met Sandra Merritt before the videos were released and he first met Adrian Lopez in 2016 after the release.  Trial Tr., Vol. 5 at 836:23-838:1.

With respect to the federal recording claims, Plaintiffs failed to show that the recordings were made with the intent to commit a further crime or tort, and that Mr. Rhomberg knew of, agreed with, and supported that intention.

While the evidence does show that Rhomberg knew the project would involve undercover recording, Trial Tr., Vol. 4 at 690:15-691:3; *id.* at 701:3-702:3, it also shows that Rhomberg wasn't

concerned with telling Daleiden not to do undercover recordings because he was "impressed by how much David Daleiden was checking with multiple lawyers and so on, it seemed to be, about every aspect of the thing from when he first approached me," even including moral theologians; "I was quite impressed that he was very thorough and careful about that." Trial Tr., Vol. 5 at 831:11-832:1. There is simply no evidence to show that Rhomberg knew the recordings that would be made for the project would be of confidential communications in two-party consent states in confidential locations where the other party would have a reasonable expectation of privacy or reasonably believe the conversations would not be overheard; to conclude otherwise is to impermissibly read numerous facts into the record.

Thus, it is clear that Plaintiffs have failed to show that Rhomberg knew of, agreed with, and supported the other Defendants (most of whom he did not even know were involved with CMP) in any plan to record a confidential communication without the consent of all the parties to the conversation where such consent is required. Therefore, because the Plaintiffs have failed to meet all of the required elements to prove that Rhomberg conspired to violate any of the recording statutes, the record contains no proof beyond speculation to support a verdict against Rhomberg on the Recording Claims. Defendant Rhomberg respectfully requests that the Court grant his Rule 50 Motion on the Second, Ninth, Tenth, and Eleventh Claims.

### D. Plaintiffs' Failed to Offer Sufficient Evidence to Support Their Claims of Illegal Recordings.

Defendant Rhomberg also joins in the Motion filed concurrently by the CMP Defendants with regard to the insufficiency of the proof of any illegal video recording by the CMP Defendants. The videos submitted at trial were often extraordinarily short, frequently did not have sound, and often submitted by witnesses who were not even present for the taping itself and who thus could not testify to the mental state of the person recorded.  In short, the videos fail to show the required elements of each cause of action.  In the case of J. Krugler and K. Shea, a review of the transcript shows their names were never mentioned.  The elements needed to prove conspiracy to violate the recording statutes are identical to those needed to prove violation of the recording statutes

themselves, with the additional requirement of proving the elements of conspiracy as discussed above. If the CMP Defendants successfully allege that the Plaintiffs have failed to meet their burden to prove all the elements of illegal recordings, this ruling must also apply to Rhomberg who cannot have conspired to engage in an action which the Court has held did not violate any statute.

### E. Plaintiffs Have Failed to Present Direct or Indirect Evidence That Rhomberg Knew of, Agreed to and Supported Other Defendants' Alleged Trespass.

Plaintiffs failed to show the elements of conspiracy as to Mr. Rhomberg. As in the preceding sections, Mr. Rhomberg had a very limited role in CMP and was on a "need-to-know" basis for the details of the investigation. There is no evidence he knew that Daleiden and Lopez attended any PPFA conferences. There is no evidence he knew that Daleiden and Merritt went to the PPRM facility in Denver. The closest Plaintiffs come to showing Rhomberg's knowledge in this area is a phone call made from within PPGC during Daleiden's site visit to the clinic in April 2015. During this phone call, Daleiden introduced himself to Rhomberg as "Robert Sarkis." Trial Tr., Vol. 12 at 2271:25-2273:8. However, this evidence does not show that Mr. Rhomberg had any foreknowledge that Daleiden would be on the premises of the PPGC facility or that he knew by what means Mr. Daleiden had been granted access.

### IV. PLAINTIFFS FAILED TO SHOW THAT RHOMBERG SHOULD BE LIABLE FOR PUNITIVE DAMAGES

Plaintiffs have failed to present sufficient evidence, or any evidence, of the factors necessary to allow for an award of punitive damages. Based on the evidence adduced, no reasonable juror could conclude that Rhomberg, or any other Defendant, acted with the kind of evil intent or deliberate disregard for the law that is required to pursue a punitive damages claim. Although Plaintiffs spent extensive effort "proving" the undisputed fact that Rhomberg (like millions of other Americans) opposes abortion on religious and moral grounds, a stated desire to see the illegal and unethical acts of abortion providers brought to light, prompting investigation and prosecution of the wrongdoers, is not evidence of any actionable "ill-will" for purposes of punitive damages. Additionally, as discussed herein and in the other Defendants' Rule 50 motion equally applicable to Rhomberg as an alleged co-conspirator, voluminous evidence showed that the purpose

of the investigative project was to expose illegal acts by researching, investigating, and publishing information about such acts. That is not an illegal or nefarious purpose. Further, it is undisputed from the admitted evidence that Rhomberg had little to no information about or knowledge of the details of the specific events that purportedly give rise to punitive damage liability. Rather, he believed he was working with a man who was very meticulous about following the law, both legal and moral. Trial Tr. at 831:11-832:1. Finally, all parties agree that CMP shared findings from its investigation with numerous law enforcement agencies.

In the absence of any evidence of malice, oppression, direct fraud, or despicable conduct, no reasonable jury could find Rhomberg liable for punitive damages and ny claim for punitive damages against Rhomberg would be contrary to the evidence.

WHEREFORE, for the foregoing reasons, Defendant Albin Rhomberg is entitled to judgment as a matter of law.

Dated: November 11, 2019

Respectfully Submitted,

_____
MICHAEL MILLEN, ESQ.
ATTORNEY FOR ALBIN RHOMBERG