STEVEN L. MAYER (No. 62030)
SHARON D. MAYO (No. 150469)
JEREMY T. KAMRAS (No. 237377)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400
Email:   steven.mayer@arnoldporter.com
          sharon.mayo@arnoldporter.com
          jeremy.kamras@arnoldporter.com
DIANA STERK (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone:    (212) 836-8000
Email:   diana.sterk@arnoldporter.com

RHONDA R. TROTTER (No. 169241)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:    (213) 243-4000
Email:   rhonda.trotter@arnoldporter.com

BETH H. PARKER (No. 104773)
PLANNED PARENTHOOD NORTHERN
CALIFORNIA
2185 Pacheco Street
Concord, California 94520
Telephone:    (415) 531-1791
Email: beth.parker@ppnorcal.org

HELENE T. KRASNOFF
  (admitted *pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF
AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
Telephone:    (202) 973-4800
Email:    helene.krasnoff@ppfa.org

AMY L. BOMSE (No. 218669)
ROGERS JOSEPH O'DONNELL
311 California St., 10th Floor
San Francisco, California 94104
Telephone: (415) 956-2828
Email: ABomse@rjo.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.,et al.;<br><br>        Plaintiffs,<br>    v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.;<br><br>        Defendants. | Case No. 3:16-cv-00236-WHO<br><br>**DECLARATION OF SHARON D. MAYO IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>**EXHIBIT 1: REDACTED**<br><br>Judge:   Hon. William H. Orrick |

I, Sharon D. Mayo, declare:

1.      I am an attorney admitted to practice in the State of California and before this Court. I am a Senior Counsel of the law firm of Arnold & Porter Kaye Scholer LLP, and an attorney for Plaintiffs Planned Parenthood Federation of America, Inc.; Plaintiff Planned Parenthood: Shasta-Diablo, Inc. dba Planned Parenthood Northern California; Planned Parenthood Mar Monte, Inc.; Planned Parenthood of The Pacific Southwest; Planned Parenthood Los Angeles; Planned Parenthood Orange and San Bernardino Counties, Inc.; Planned Parenthood of Santa Barbara, Ventura and San Luis Obispo Counties, Inc; Planned Parenthood Pasadena and San Gabriel Valley, Inc., Planned Parenthood of the Rocky Mountains, Planned Parenthood Gulf Coast (collectively "Plaintiffs") in the above-captioned action.  I make this Declaration upon personal knowledge, excepted as otherwise stated, and, if called upon to testify, I could and would testify competently hereto.

The unredacted version of **PLAINTIFFS' OPPOSITION TO DEFENDANTS THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES, DAVID DALEIDEN, AND GERARDO ADRIAN LOPEZ'S MOTION TO SET A BOND AMOUNT TO STAY ENFORCEMENT OF THE JUDGMENT** (attached hereto as Exhibit 1) contains citations to declarations which were previously lodged under seal. Counsel for Plaintiffs request that the Court accept for this  document for filing under seal so that counsel may remain in compliance with the requirements of the Court's Order of December 11, 2017 at Docket Entry No. 193, the Court's Protective Order at Docket Entry No. 117, and Civil Local Rule 79-5.  The Protective Order states, "Without written permission from the Designating Party or a Court order secured after appropriate notice to all interested persons, a Party may not file any Protected Material in the public record in this Action. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5."  Docket Entry No. 117, at 20.

DE DECLARATION OF SHARON D. MAYO IN SUPPORT OF  PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL

# Exhibit 1

I, Sharon D. Mayo, declare:

1.      I am an attorney admitted to practice in the State of California and before this Court. I am a Senior Counsel of the law firm of Arnold & Porter Kaye Scholer LLP, and an attorney for Plaintiffs Planned Parenthood Federation of America, Inc.; Plaintiff Planned Parenthood: Shasta-Diablo, Inc. dba Planned Parenthood Northern California; Planned Parenthood Mar Monte, Inc.; Planned Parenthood of The Pacific Southwest; Planned Parenthood Los Angeles; Planned Parenthood Orange and San Bernardino Counties, Inc.; Planned Parenthood of Santa Barbara, Ventura and San Luis Obispo Counties, Inc; Planned Parenthood Pasadena and San Gabriel Valley, Inc., Planned Parenthood of the Rocky Mountains, Planned Parenthood Gulf Coast (collectively "Plaintiffs") in the above-captioned action.  I make this Declaration upon personal knowledge, excepted as otherwise stated, and, if called upon to testify, I could and would testify competently hereto.

The unredacted version of **PLAINTIFFS' OPPOSITION TO DEFENDANTS THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES, DAVID DALEIDEN, AND GERARDO ADRIAN LOPEZ'S MOTION TO SET A BOND AMOUNT TO STAY ENFORCEMENT OF THE JUDGMENT** (attached hereto as Exhibit 1) contains citations to declarations which were previously lodged under seal. Counsel for Plaintiffs request that the Court accept for this  document for filing under seal so that counsel may remain in compliance with the requirements of the Court's Order of December 11, 2017 at Docket Entry No. 193, the Court's Protective Order at Docket Entry No. 117, and Civil Local Rule 79-5.  The Protective Order states, "Without written permission from the Designating Party or a Court order secured after appropriate notice to all interested persons, a Party may not file any Protected Material in the public record in this Action. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5."  Docket Entry No. 117, at 20.

DE DECLARATION OF SHARON D. MAYO IN SUPPORT OF  PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL

STEVEN L. MAYER (No. 62030)
SHARON D. MAYO (No. 150469)
JEREMY T. KAMRAS (No. 237377)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Email: steve.mayer@arnoldporter.com
        sharon.mayo@arnoldporter.com
        jeremy.kamras@arnoldporter.com

DIANA STERK (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8000
Email: diana.sterk@arnoldporter.com

RHONDA R. TROTTER (No. 169241)
OSCAR D. RAMALLO (No. 241487)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone: (213) 243-4000
Email: rhonda.trotter@arnoldporter.com
        oscar.ramallo@arnoldporter.com

BETH H. PARKER (No. 104773)
PLANNED PARENTHOOD NORTHERN
CALIFORNIA
2185 Pacheco Street
Concord, California 94520
Telephone: (415) 531-1791
Email: beth.parker@ppnorcal.org

HELENE T. KRASNOFF
(admitted *pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF
AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005-6300
Telephone: (202) 973-4800
Email: helene.krasnoff@ppfa.org

AMY L. BOMSE (No. 218669)
ROGERS JOSEPH O'DONNELL
311 California St., 10th Floor
San Francisco, California 94104
Telephone: (415) 956-2828
Email: ABomse@rjo.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al.,<br><br>Plaintiff,<br><br>vs.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>Defendants. | Case No. 3:16-cv-00236-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS THE CENTER FOR MEDICAL PROGRESS, BIOMAX PROCUREMENT SERVICES, DAVID DALEIDEN, AND GERARDO ADRIAN LOPEZ'S MOTION TO SET A BOND AMOUNT TO STAY ENFORCEMENT OF THE JUDGMENT**<br><br>No Hearing Scheduled<br><br>Judge: Honorable William H. Orrick, III |

PUBLIC REDACTED VERSION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 4

RELEVANT PRIOR PROCEEDINGS ...................................................................................... 4

ARGUMENT ............................................................................................................................. 5

I.      PLAINTIFFS ARE ENTITLED TO BEGIN EXECUTING THIS COURT'S
JUDGMENT UNLESS MOVING DEFENDANTS POST A FULL
SUPERSEDEAS BOND OR DEMONSTRATE THAT A BOND IS
UNNECESSARY TO PROTECT PLAINTIFFS' ABILITY TO COLLECT ............. 5

II.     MOVING DEFENDANTS HAVE NOT SHOWN THAT WAIVING OR
REDUCING THE BOND REQUIREMENT WOULD ADEQUATELY
PROTECT PLAINTIFFS' ABILITY TO COLLECT. ................................................. 7

       A.     Factors (1) And (2): The Complexity and Difficulty of Collection
Favor Enforcing the Bond Requirement. ......................................................... 7

       B.     Factors (3) and (4): Moving Defendants' Asserted Inability To Pay
Favors Enforcing the Bond Requirement. ........................................................ 9

       C.     Factor (5): Moving Defendants' Failure To Identify Other Existing
Creditors Favors Enforcing the Bond Requirement. ...................................... 10

III.    THE EQUITIES SUPPORT ENFORCING THE ORDINARY
REQUIREMENT THAT MOVING DEFENDANTS POST A FULL BOND. ......... 11

IV.    MOVING DEFENDANTS HAVE NOT OFFERED A REASONABLE
ALTERNATIVE TO POSTING A FULL BOND. .................................................... 13

CONCLUSION ....................................................................................................................... 14

PLS.' OPPOSITION TO DEFENDANTS' MOTION TO SET A BOND AMOUNT TO STAY ENFORCEMENT
OF THE JUDGMENT; Case No: 3:16-cv-00236-WHO

**TABLE OF AUTHORITIES**

**Cases**

*Abbywho, Inc. v. Interscope Records*,
   No. CV 06-06724 MMM, 2008 WL 11406049 (N.D. Cal. Aug. 25, 2008) .................3, 8, 10

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) .................................................................................................11

*Cotton ex rel. McClure v. City of Eureka, Cal.*,
   860 F. Supp. 2d 999 (N.D. Cal. 2012)................................................................*passim*

*Dugan v. Cty. of Los Angeles*,
   No. 2:11-cv-08145-CAS-SHx, 2014 WL 2986480 (C.D. Cal. July 2, 2014) .....................11

*Erickson Prods. Inc. v. Kast*,
   No. 5:13-cv-05472-HRL, 2016 WL 9115979 (N.D. Cal. July 22, 2016) ............................11

*Gideon v. Wainwright*,
   372 U.S. 335 (1963) ...................................................................................................9

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*,
   No. 2:10-cv-02414-KJM-KJN, 2019 WL 2715616 (E.D. Cal. June 28, 2019) ......................3

*In re ClassicStar Mare Lease Litig.*,
   727 F.3d 473 (6th Cir. 2013) .....................................................................................11

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   No. 2:11–CV–3838–ODW, 2013 WL 361109 (C.D. Cal. Jan. 30, 2013) ..........................6, 7

*Jang v. Sagicor Life Ins. Co.*,
   No. ED CV 171563 JGB KKX, 2019 WL 6434766 (C.D. Cal. July 10, 2019)......................7

*Lightfoot v. Walker*,
   797 F.2d 505 (7th Cir. 1986) .......................................................................................5

*Liquid Air Corp. v. Rogers*,
   834 F.2d 1297 (7th Cir. 1987) ...................................................................................11

*Los Angeles News Ser. v. Reuters Television Int'l, Ltd.*,
   149 F.3d 987 (9th Cir. 1998) .....................................................................................11

*NLRB v. Westphal*,
   859 F.2d 818 (9th Cir. 1988) .......................................................................................3

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
   786 F.2d 794 (7th Cir. 1986) .....................................................................................11

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
   935 F.2d 1019 (9th Cir. 1991) .................................................................3

*PacifiCare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2003) .........................................................................11

*Rivas v. Knight Transp., Inc.*,
   No. CV 15-05793-DTB, 2017 WL 3457113 (C.D. Cal. Feb. 28, 2017) ...................3

*Soares v. Lorono*,
   No. 12-cv-05979-WHO, 2015 WL 1247020 (N.D. Cal. Mar. 18, 2015)
   (Orrick, J.) .................................................................................5, 7

**Statutes and Regulations**

Fed. R. Civ. P.
   62 .........................................................................................1
   62(a) ......................................................................................2
   62(d) .....................................................................................3

32 C.F.R. pt. 113 ...........................................................................5

Cal. Penal Code § 632 .......................................................................2

**Other Authorities**

Goetz, Batalden, & Querio, *Cal. Prac. Guide: Ninth Circuit Civil Appellate
   Practice* ¶ 1:168 (The Rutter Group 2020) .............................................10

## INTRODUCTION

The ordinary rule under Federal Rule of Civil Procedure 62 is that a judgment becomes enforceable 30 days after its entry, and in order to stay execution pending appeal, a defendant must post a supersedeas bond sufficient to cover the amount of the judgment plus any interest, costs, and fees likely to accrue on appeal. The purpose of this bond requirement is to prevent a stay of execution from harming victorious plaintiffs by prejudicing their ability to collect on the judgment entered in their favor. Courts accordingly waive or alter the bond requirement only where, under the circumstances, a full bond is not necessary to protect the plaintiff's ability to collect.

Here, the jury found the seven defendants liable for millions of dollars in damages as a result of their multiyear fraudulent scheme. The Court also entered injunctive relief against All Defendants,[1] and attorneys' fees will eventually increase the amount of the judgment substantially. Nevertheless, four of the seven defendants—CMP, BioMax, Daleiden, and Lopez (the "Moving Defendants")—now ask the Court to depart from the ordinary bond rule by reducing the amount of the supersedeas bond down to $0.00, or at most to $468,361. Moving Defendants do not suggest that the *other* three defendants—Newman, Rhomberg, and Merritt (the "Nonmoving Defendants")— could not and should not post a supersedeas bond. And Moving Defendants' arguments as to themselves are self-defeating: they argue that the Court should completely or substantially waive the bond requirement so that they can spend their allegedly limited assets paying for future legal fees in other litigation—including affirmative civil litigation that certain of the Moving Defendants have brought against Plaintiff PPFA and others associated with Plaintiffs about the same facts that this Court already tried. But Moving Defendants' desire to spend their assets not on this Court's judgment against them but on their continued campaign against Planned Parenthood only *strengthens* the need to follow the ordinary rule and require the posting of a full supersedeas bond. Moving Defendants' motion should be denied.

## RELEVANT PRIOR PROCEEDINGS

Plaintiffs filed this action on January 14, 2016, asserting claims under a variety of

---

[1] Unless otherwise noted, capitalized terms herein shall have the same definition as set forth in Section V(1) of the Court's April 29, 2020 Order Resolving Unfair Competition Claim and Entering Judgment (Dkt. No. 1073 at 39-40).

agreements and state and federal laws.  Dkt. No. 59.  On August 23, 2019, the Court granted

Plaintiffs' motion for summary judgment as to the claims for breach of the PPFA Exhibitor

Agreements and for trespass.  Dkt. No. 753.  On November 15, 2019, after trial, the jury found

defendants liable on eight additional claims—fraud, breach of the NAF Exhibitor Agreements and

PPGC Nondisclosure Agreement, violations of RICO, violations of California Penal Code § 632,

and violations of the federal, Florida and Maryland wiretapping acts.  Dkt. No. 1016.

On April 29, 2020, the Court entered judgment against All Defendants for a total of

$2,425,084.  Of that, All Defendants are jointly and severally liable for a total of $2,280,083.

Moving Defendants except Lopez are jointly and severally liable for an additional $1 in nominal

damages.  The jury also awarded substantial punitive damages against All Defendants except

Lopez, including Moving Defendants CMP ($400,000), BioMax ($200,000), and Daleiden

($125,000), as well as Nonmoving Defendants Rhomberg ($70,000), Newman ($50,000). and

Merritt ($25,000).  *Id.*  The Court also issued injunctive relief against All Defendants.  *Id.*[2]

On May 13, 2020, Moving Defendants filed the instant motion, asking the Court to stay

enforcement of the judgment without requiring the posting of any supersedeas bond at all, or, in the

alternative, upon the posting of a bond for just $468,361—calculated as the total monetary liability

of the Moving Defendants ($2,280,084) less nominal damages ($1), punitive damages ($725,000),

the trebled portion of the damages awarded under RICO ($936,722), and the statutory damages

awarded under the wiretapping statutes ($150,000).  Mot. at 6.  Plaintiffs have consented not to seek

execution of the judgment until the instant motion is adjudicated.

**ARGUMENT**

I.  **PLAINTIFFS ARE ENTITLED TO BEGIN EXECUTING THIS COURT'S
    JUDGMENT UNLESS MOVING DEFENDANTS POST A FULL SUPERSEDEAS
    BOND OR DEMONSTRATE THAT A BOND IS UNNECESSARY TO PROTECT
    PLAINTIFFS' ABILITY TO COLLECT.**

Under Federal Rule of Civil Procedure 62(a), a district court's judgment generally becomes

final and enforceable 30 days after judgment is entered.  Fed. R. Civ. P. 62(a).  In the ordinary course,

---

[2] The injunction runs against Lopez only to the extent he is acting in concert or participation with
the other defendants.

to stay the execution of a judgment pending appeal, the appellant must post a supersedeas bond. *See, e.g.*, *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1025 (N.D. Cal. 2012); *Abbywho, Inc. v. Interscope Records*, No. CV 06-06724 MMM (JTLx), 2008 WL 11406049, at *2 (N.D. Cal. Aug. 25, 2008) ("When a money judgment is involved, one gets a stay by posting a bond."). "The stay takes effect when the court approves the bond." Fed. R. Civ. P. 62(d).

The purpose of the supersedeas bond requirement is to protect a prevailing party "from the risk of a later uncollectible judgment, and compensate them for any loss resulting from the stay of execution." *Abbywho* 2008 WL 11406049, at *3 (citing *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988)). "Because [a] stay [of execution] operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances." *Rivas v. Knight Transp., Inc.*, No. CV 15-05793-DTB, 2017 WL 3457113, at *1 (C.D. Cal. Feb. 28, 2017) (internal quotation omitted); *see also Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1027 (9th Cir. 1991) ("Generally the purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required.") (internal quotation omitted).

Although district courts have discretion to stay execution of a judgment without requiring a bond, "an unsecured stay is reserved for unusual circumstances[,] and the moving party has the burden to objectively demonstrate the reasons for departing from the general bond requirement." *Rivas*, 2017 WL 3457113, at *1 (internal quotation omitted); *see Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, No. 2:10-cv-02414-KJM-KJN, 2019 WL 2715616, at *3 (E.D. Cal. June 28, 2019) (similar). In setting the amount of the bond or other appropriate security, the courts are guided by equitable principles, with the "overarching purpose being to safeguard the judgment creditors as completely as possible without irreparably injuring the judgment debtors." *Abbywho, Inc.*, 2008 WL 11406049, at *3 (internal quotation omitted). If the judgment debtor is unable to post a full bond, "it is the *judgment debtor's responsibility* to convince the court that posting a full bond is impracticable and to propose an alternative plan that would sufficiently guarantee the judgment creditor's interests." *Id.* (internal quotation omitted) (emphasis added).

Here, accordingly, the ordinary rule is that Plaintiffs are entitled to begin executing the nearly

$2.5 million judgment in their favor on May 29, 2020, 30 days after the judgment was entered. If Moving Defendants wish to stay execution past that date, it is their responsibility either to post a full supersedeas bond—which they acknowledge would be around "1.2 times the judgment," Mot. at 6— or to put forward convincing reasons showing the Court why, under the circumstances, a full bond is not necessary to protect Plaintiffs' ability to collect.

## II. MOVING DEFENDANTS HAVE NOT SHOWN THAT WAIVING OR REDUCING THE BOND REQUIREMENT WOULD ADEQUATELY PROTECT PLAINTIFFS' ABILITY TO COLLECT.

In determining whether to grant a judgment debtor's request to stay of execution without fulfilling the ordinary requirement to post a full supersedeas bond, courts generally consider five factors: (i) the complexity of the collection process; (ii) the amount of time required to obtain a judgment after it is affirmed on appeal; (iii) the degree of confidence that the district court has in the availability of the funds to pay the judgment; (iv) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (v) whether the defendant is in such a precarious financial position that the requirement to post a bond would place other creditors of the defendant in an insecure position. *See, e.g.*, *Cotton*, 860 F. Supp. 2d at 1028. Here, all of those factors support enforcing the ordinary bond requirement—collection will be complex and time-consuming, there is considerable doubt that the defendants will ever satisfy the judgment, and Moving Defendants have not identified even a *single* existing creditor that would be harmed. Moving Defendants argue that the Court should waive or reduce the bond requirement in light of the first, second, and fifth factors, as well as the supposed "equities." Mot. at 4-7. But those arguments distort the case law and the facts, while giving short shrift to the one equitable consideration that is the touchstone for the Court's entire inquiry—Plaintiffs' interest in seeing that this Court's judgment in their favor is satisfied in full.

### A. Factors (1) And (2): The Complexity and Difficulty of Collection Favor Enforcing the Bond Requirement.

Moving Defendants affirmatively assert that they do not currently possess assets sufficient to satisfy the judgment against them. *See* Mot. at 5-6. As a threshold matter, however, Moving Defendants' representations about their ability to pay are carefully cabined to the Moving Defendants

themselves. Moving Defendants make no representations whatsoever about *Nonmoving Defendants*' ability to pay. And most of the judgment is a joint and several liability of All Defendants, including both the Moving and Nonmoving Defendants. Moving Defendants thus never even assert, much less convincingly show, that it would be impossible or impractical for All Defendants together to post a bond covering the entire amount of the judgment.

In any event, even limiting the analysis to Moving Defendants alone, Moving Defendants make clear that, "should the Judgment be affirmed in full on appeal, there is no way for [them] to pay it," and they "cannot … make a commitment that they will pay the judgment in full after the appeals are exhausted." Mot. 5. Moving Defendants thus candidly admit that they cannot fulfill the usual bargain underlying a stay of execution, whereby "a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed." *Id.* (quoting *Lightfoot v. Walker*, 797 F.2d 505, 506-07 (7th Cir. 1986)). Because the collection process here undisputedly will be arduous, potentially involving years of garnishments and searching for and seizing assets, Plaintiffs are entitled to begin that process now, or be protected by a sufficient bond, rather than waiting for all appeals to be exhausted. This is particularly true where the judgment provides a remedy for injuries that arose over five years ago, as requiring Plaintiffs "to wait several more years until [Moving Defendants] ha[ve] exhausted the appeals process would further prejudice them." *Soares v. Lorono*, No. 12-cv-05979-WHO, 2015 WL 1247020, at *3 (N.D. Cal. Mar. 18, 2015) (Orrick, J.) (denying request for a stay of judgment without posting a supersedeas bond).

The most Moving Defendants can offer is that, while their assets "will not be enough to satisfy the Judgment, … they [supposedly] will be easy enough to seize." Mot. at 5. That response—already weak on its own terms—is unavailing on multiple levels. To begin with, Moving Defendants themselves assert that "BioMax has no assets." Mot. at 5. They further admit that Lopez has no assets "that could be effectively seized," and that additional procedural hurdles must be cleared before his military wages can be garnished. Mot. at 7; *see* 32 C.F.R. pt. 113. Moving Defendants also repeatedly raise the specter of bankruptcy, which would inevitably complicate any collection effort. *See Soares*, 2015 WL 1247020, at *2 ("[C]ollecting from a party having financial hardships (whether

now or later) is difficult, complex, and costly ….") (quoting *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, No. 2:11–CV–3838–ODW, 2013 WL 361109, at *2 (C.D. Cal. Jan. 30, 2013)).  And in Daleiden's declaration, the only assets Daleiden identifies as belonging to himself and CMP are almost entirely liquid, and thus could be easily transferred or dissipated at a moment's notice, leaving Plaintiffs with nothing.  Declaration of David Daleiden in Support of Defendants Motion to Set a Bond Amount to Stay Enforcement of the Judgment ("Daleiden Decl.") ¶¶ 4, 6.  Indeed, Moving Defendants positively trumpet that Daleiden and CMP intend to use all of their available assets not to pay Plaintiffs' judgment, but instead to pay for future legal fees in other litigation—including affirmative civil litigation brought against Plaintiff PPFA and others associated with Planned Parenthood as part of their continued campaign against Planned Parenthood.  *See* Mot. at 7-8 & n.4.

**B.    Factors (3) and (4): Moving Defendants' Asserted Inability To Pay Favors Enforcing the Bond Requirement.**

Moving Defendants' motion does not separately address the third and fourth factors courts typically consider.  Moving Defendants thus concede (1) that the Court can have little "confidence" if any "in the availability of funds to pay the judgment," (2) that Moving Defendants' "ability to pay is" not "plain," and (3) that those facts weigh in favor of enforcing the ordinary bond requirement.  *Cotton*, 860 F. Supp. 2d at 1028 (quotation marks omitted).

That said, Moving Defendants' asserted inability to pay rests on supposedly having "laid out all of their assets for examination by the Court and Plaintiffs." Mot. at 5.  But Moving Defendants' declarations are unaccompanied by supporting documentation, and some of their claims are facially suspect based on their own trial testimony and accounting documents produced during this litigation.  Daleiden asserts in his declaration, for example, that ███████████████████████ ██████ and that ██████████████████████████████████████████████████ ██████  Daleiden Decl. ¶ 4.  But Daleiden testified at trial about the "police-quality undercover equipment" CMP used to surreptitiously record Plaintiffs' staff members.  *See, e.g.*, Tr. 2168:2-4.  Daleiden never explains why these presumably expensive recording devices are not identified as assets of CMP.  Similarly, CMP's 2016 and 2017 Forms 990 show that CMP paid $225,000 and $130,000 in 2016 and 2017, respectively, in cash to its supposedly "pro bono" counsel of record,

Freedom of Conscience Defense [Fund], Mot. at 7, for unspecified "support of educational initiatives."[3]  And Daleiden admits that ██████████████████████████████████ ██████████████████████  Daleiden Decl. ¶ 4.  In light of those facts, Daleiden's claim that CMP ██████████████████████████  rings hollow. *Id.* at ¶ 8.  To the extent the Court has any doubts about the "bare, unsupported assertions" in Moving Defendants' declarations, *Jang v. Sagicor Life Ins. Co.*, No. ED CV 171563 JGB KKX, 2019 WL 6434766, at *4 (C.D. Cal. July 10, 2019), those doubts weigh strongly against waiving or reducing the ordinary bond requirement.

### C. Factor (5): Moving Defendants' Failure To Identify Other Existing Creditors Favors Enforcing the Bond Requirement.

The fifth factor courts typically consider concerns "whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position."  *Cotton*, 860 F. Supp. 2d at 1028.  While Moving Defendants assert that this factor favors waiving or reducing the bond requirement, neither their motion nor their supporting declarations identifies even a *single* creditor that would be burdened if Moving Defendants were required to post a full bond.  Daleiden asserts in his declaration that he has ███████████████ █████████████████████████████████████████████████████████████████████████ ███████████████████████████  *See* Daleiden Decl. ¶ 6.  The closest the moving defendants come to identifying any other creditor is when CMP, BioMax, and Daleiden argue that they need all of their available assets to pay their attorneys for future litigation efforts.  Mot. at 7-8.  However, their attorneys are not current creditors for *future* legal fees.

Rather than identifying any other current creditor who would be harmed, Moving Defendants instead rely on a generalized (purported) inability to afford a bond.  *See* Mot. 5-7.  Mere inability to pay, however, even if credited, simply is not a valid basis for waiving or reducing the bond requirement.  Indeed, "[t]he fact that [Moving Defendants] 'do[] not have sufficient liquid assets' to cover the [judgment] is precisely why [they] must post a supersedeas bond."  *Soares*, 2015 WL 1247020, at *3 (quoting *Inhale, Inc.*, 2013 WL 361109, at *2).

---

[3] *See*  https://990s.foundationcenter.org/990_pdf_archive/462/462252984/462252984_201612 _990.pdf (2016 Form 990) *and* https://990s.foundationcenter.org/990_pdf_archive/462/462252984 /462252984_201712_990.pdf  (2017 Form 990).

**THE EQUITIES SUPPORT ENFORCING THE ORDINARY REQUIREMENT THAT MOVING DEFENDANTS POST A FULL BOND.**

Beyond the traditional factors courts typically consider, Moving Defendants also argue that "equity favors lowering the bond requirement to $0.00." Mot. at 7-9. But there would be nothing equitable about allowing Moving Defendants to obtain a stay of execution while providing Plaintiffs with no assurance whatsoever that they will ultimately be able to collect. Indeed, such a holding would frustrate the "purpose" of the bond requirement—"to safeguard the judgment creditors as completely as possible without irreparably injuring the judgment debtors." Mot. at 7 (quoting *Abbywho*, 2008 WL 11406049, at *3). Each of Moving Defendants' three "equitable" arguments is utterly without merit.

First, Moving Defendants contend that it would be inequitable to require Lopez to post a bond because military regulations would bar Plaintiffs from garnishing Lopez's wages until any appeals are exhausted in any event. Mot. at 7. To the extent that is true, it cuts the other way. If Moving Defendants are correct, then Lopez does not *need* a stay of execution to protect his wages from garnishment, so no harm would result from enforcing the ordinary bond requirement. Regardless, Lopez admits that he has some limited other assets beyond his wages that Plaintiffs could seize in the meantime. *See* Declaration of Gerardo Adrian Lopez in Support of Defendants Motion to Set a Bond Amount to Stay Enforcement of the Judgment.

Second, Moving Defendants contend that it would be inequitable to require CMP, BioMax, and Daleiden to post a bond because of other pending litigation in which they are involved. Moving Defendants first point to three pending civil cases against CMP and/or Daleiden, in which "CMP expects it will need substantial funds to keep defending itself." Mot. at 7. But Moving Defendants note that they "have received pro bono representation" in this case, *id.*, and never explain why they could not obtain such representation in other cases as well. In any event, there is no right to counsel in civil litigation, let alone a right to pay counsel by shielding funds from a proper judgment creditor. Moving Defendants also reference a criminal case pending against Daleiden, suggesting that "[i]f Plaintiffs collect now, they will not simply be forcing CMP and Daleiden into bankruptcy, [but] will be forcing Daleiden into prison." Mot. at 8. But of course, Daleiden will not go to prison unless he is validly convicted of a committing a crime. And under the Sixth Amendment, if CMP and Daleiden

cannot afford counsel for Daleiden, the State will provide counsel for him. *See Gideon v. Wainwright*, 372 U.S. 335 (1963).

Most gallingly, Moving Defendants also point to two pending civil cases that CMP is affirmatively pursuing against Plaintiff PPFA and others associated with Planned Parenthood. Mot. at 8 n.4. According to Moving Defendants, "[i]t would be equally inequitable" to require CMP and Daleiden to post a bond "before they can vindicate their rights in those cases." *Id.* Those civil cases, however, are part and parcel of CMP and Daleiden's larger campaign against Plaintiffs, whose "objective" is "creating 'maximum negative impact—legal, political, professional, public—on [Planned Parenthood]' and to 'create public outrage towards' Planned Parenthood." Dkt. No. 1073 at Finding of Fact No. 3.[4] In other words, having been found to have perpetrated their campaign against Plaintiffs through a fraudulent and unlawful scheme, CMP and Daleiden now ask the Court to absolve them of the ordinary requirement to post a bond so that, instead of using their assets to provide assurance that Plaintiffs can collect on their judgment post-appeal, CMP and Daleiden can use their assets to continue harming Plaintiffs. Nothing could be more contrary to principles of equity. Plaintiffs should not be forced to defend themselves and their staff against meritless lawsuits funded by the very same assets that should secure payment of the judgment if affirmed.

Third, Moving Defendants argue that the Court should waive the bond requirement because this supposedly is a "public interest case." Mot. at 8-9. But this is not a "public interest case." As the Court noted on the first day of trial: "In this case, the parties are on either side of our country's long-standing debate over abortion. But this case is not about whether abortion is good or bad, or whether Planned Parenthood's services are good or bad. It's about the strategies chosen and employed by the defendants that resulted in the secret recording of conversations with Planned Parenthood staff." Tr. 16:12-18.

Moving Defendants' cited cases are inapposite, as they all involve judgments granting

---

[4] The first is a lawsuit by Daleiden and CMP against Dr. Savita Ginde for defamation based on a book she wrote the traumatizing experience of being targeted by Defendants. The second lawsuit claims that the criminal case against certain defendants, which Judge Hite found had sufficient merit to go forward after a multi-week preliminary hearing, deprives them of their civil rights. In that second case, Daleiden and CMP have named PPFA as a defendant; it is particularly backwards that they are pursuing a new civil action against PPFA when the parties have been engaged in the present lawsuit for more than four years.

*injunctive* relief against a government agency. *See* Mot. at 8 & n.5 (citing cases). Indeed, Moving Defendants acknowledge that their authorities involve "a procedurally distinct situation." Mot. at 8. This case involves a private suit brought by a group of private plaintiffs against a group of private defendants, who ultimately were found liable for millions of dollars in damages for their fraudulent and unlawful conduct. The amount of attorneys' fees Moving Defendants speculate that Plaintiffs have incurred, or Moving Defendants' beliefs about Plaintiffs' motivations for bringing this lawsuit, *see* Mot. at 8-9, do not make the ordinary rules of civil litigation—including the bond requirement— inapplicable.

## IV. MOVING DEFENDANTS HAVE NOT OFFERED A REASONABLE ALTERNATIVE TO POSTING A FULL BOND.

As the party seeking to avoid posting a full bond, Moving Defendants bear the burden to "propose an alternative plan that would sufficiently guarantee the judgment creditor's interests." *Abbywho, Inc.*, 2008 WL 11406049, at *3. Here, moving defendants propose that, if the Court refuses to completely waive the bond requirement, the bond should be set at $468,361. Mot. at 9. But, as noted above, the purpose of a supersedeas bond is to protect a prevailing party "from the risk of a later uncollectible judgment, and compensate them for any loss resulting from the stay of execution." *Abbywho*, 2008 WL 11406049, at *3. That is why, as Moving Defendants acknowledge, bonds are generally set at a value *higher* than the judgment amount, so as to provide security for the costs incurred by the judgment creditor on appeal. *See* Mot. at 6; *see also* Goetz, Batalden, & Querio, *Cal. Prac. Guide: Ninth Circuit Civil Appellate Practice* ¶ 1:168 (The Rutter Group 2020) ("District courts generally accept bonds that are sufficient to cover all monetary relief (the principal amount of the judgment, costs, attorney fees, etc.) plus postjudgment interest expected to accrue based on a conservative estimate of how long the appeal will last."). The basic purpose of supersedeas bonds alone thus refutes Moving Defendants' suggestion that a bond of $468,361—approximately 20% of Plaintiffs' judgment, before attorneys' fees—will "protect Plaintiffs' legitimate interests." Mot. at 9.

Moving Defendants suggest that Plaintiffs' interest in collecting upon the portions of this Court's judgment that represent nominal, statutory, trebled, or punitive damages—as opposed to purely compensatory damages—are somehow not "legitimate." *Id.* Not so. Plaintiffs are entitled to

collect upon each and every dollar of damages set forth in the judgment, regardless of what purpose they may serve or what label they may bear. And, in any event, Moving Defendants are simply wrong to suggest that these portions of the judgment represent an unwarranted "windfall." Mot. at 9 (quoting *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 797 (7th Cir. 1986)). The Supreme Court has "repeatedly acknowledged that the treble-damages provision contained in RICO is remedial in nature," being "'designed *to remedy* economic injury by providing for the recovery of treble damages.'" *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406 (2003) (quoting *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987)). And multiple courts of appeals have recognized that RICO damages are compensatory.[5] Similarly, "awards of statutory damages serve both compensatory and punitive purposes." *Los Angeles News Ser. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998). As such, courts in this district refuse to waive the bond requirement for judgments based on statutory damages. *See, e.g.*, *Erickson Productions Inc. v. Kast*, No. 5:13-cv-05472-HRL, 2016 WL 9115979, at *3 (N.D. Cal. July 22, 2016). Courts also routinely account for punitive damage awards when setting supersedeas bonds so as to protect the judgment creditor's entire judgment. *See, e.g.*, *Cotton*, 860 F. Supp. 2d at 1029 (setting bond at 125% of the full judgment, including punitive damages); *see also Dugan v. Cty. of Los Angeles*, No. 2:11-cv-08145-CAS-SHx, 2014 WL 2986480, at *2 (C.D. Cal. July 2, 2014) (finding that "defendants have not set forth an adequate basis for staying execution of the punitive damages portion of the judgment without the posting of a bond.").

In the end, Moving Defendants here have not met their burden to show why posting anything less than a full bond would adequately protect Plaintiffs' interests in collecting on the entirety of this Court's judgment entered in their favor.

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion should be denied, and the Court

---

[5] *See In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 495 (6th Cir. 2013) (allowing prejudgment interest award on RICO claim "[b]ecause RICO is essentially compensatory in nature"); *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1310 n. 8 (7th Cir. 1987) ("Although there is some sense in which RICO treble damages are punitive, they are largely compensatory in the special sense that they ensure that wrongs will be redressed in light of the recognized difficulties of itemizing damages.").

should deny any stay of execution of its judgment unless and until a full supersedeas bond is posted.

May 27, 2020                                    Respectfully submitted:

                                               By:    /s/ Rhonda Trotter
                                                      RHONDA R. TROTTER

                                               RHONDA R. TROTTER (No. 169241)
                                               OSCAR D. RAMALLO (No. 241487)
                                               ARNOLD & PORTER KAYE SCHOLER LLP
                                               777 S. Figueroa Street, 44th Floor
                                               Los Angeles, California 90017
                                               Telephone:    (213) 243-4000
                                               Email: rhonda.trotter@arnoldporter.com
                                                      oscar.ramallo@arnoldporter.com

                                               STEVEN L. MAYER (No. 62030)
                                               SHARON D. MAYO (No. 150469)
                                               JEREMY T. KAMRAS (No. 237377)
                                               ARNOLD & PORTER KAYE SCHOLER LLP
                                               Three Embarcadero Center, 10th Floor
                                               San Francisco, California 94111-4024
                                               Telephone:    (415) 471-3100
                                               Facsimile:    (415) 471-3400
                                               Email: steve.mayer@arnoldporter.com
                                                      sharon.mayo@arnoldporter.com

                                               DIANA STERK (admitted *pro hac vice*)
                                               ARNOLD & PORTER KAYE SCHOLER LLP
                                               250 West 55th Street
                                               New York, NY 10019-9710
                                               Telephone:    (212) 836-8000
                                               Email: diana.sterk@arnoldporter.com

                                               AMY L. BOMSE (No. 218669)
                                               ROGERS JOSEPH O'DONNELL
                                               311 California St., 10th Floor
                                               San Francisco, California 94104
                                               Telephone: (415) 956-2828
                                               Email: ABomse@rjo.com

                                               BETH H. PARKER (No. 104773)
                                               PLANNED PARENTHOOD NORTHERN CALIFORNIA
                                               2185 Pacheco Street
                                               Concord, California 94520
                                               Telephone:    (415) 531-1791
                                               Email: beth.parker@ppnorcal.org

Page 15

PLS.' OPPOSITION TO DEFENDANTS' MOTION TO SET A BOND AMOUNT TO STAY ENFORCEMENT
OF THE JUDGMENT; Case No: 3:16-cv-00236-WHO

HELENE T. KRASNOFF    (admitted *pro hac vice*)
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, D.C.  20005
Telephone:     (202) 973-4800
Email:  helene.krasnoff@ppfa.org

***Attorneys for Plaintiffs***

US 167832406