STEVEN L. MAYER (No. 62030)
SHARON D. MAYO (No. 150469)
JEREMY T. KAMRAS (No. 237377)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California  94111-4024
Telephone:     (415) 471-3100
Facsimile:      (415) 471-3400
Email:   steven.mayer@arnoldporter.com
            sharon.mayo@arnoldporter.com
            jeremy.kamras@arnoldporter.com
DIANA STERK (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone:     (212) 836-8000
Email:   diana.sterk@arnoldporter.com

RHONDA R. TROTTER (No. 169241)
OSCAR D. RAMALLO (No. 241487)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, California  90017
Telephone:     (213) 243-4000
Email:   rhonda.trotter@arnoldporter.com

BETH H. PARKER (No. 104773)
PARKER LAW & MEDIATION
553 Douglass Street
San Francisco, California  94114
Telephone:     (415) 531-1791

HELENE T. KRASNOFF
  (admitted *pro hac vice*)
PLANNED PARENTHOOD FEDERATION
OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
Telephone:     (202) 973-4800
Email:   helene.krasnoff@ppfa.org

AMY L. BOMSE (No. 218669)
ROGERS JOSEPH O'DONNELL
311 California St., 10th Floor
San Francisco, California  94104
Telephone:  (415) 956-2828
Email:  ABomse@rjo.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al.;<br><br>    Plaintiffs,<br><br>    v.<br><br>CENTER FOR MEDICAL PROGRESS, et al.;<br><br>    Defendants. | Case No. 3:16-cv-00236-WHO<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS**<br><br>Date:      November 18, 2020<br>Time:     2:00 p.m.<br>Place:     Courtroom 2, 17th Floor<br>Judge:    Hon. William H. Orrick |

## Table of Contents

Page

NOTICE OF MOTION..................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 2

I.      INTRODUCTION. ............................................................................................. 2

II.     FACTUAL BACKGROUND. ........................................................................... 2

        A.      Phase One: Pre-Complaint Analysis, Drafting The Complaint, And
                Responding To Pleading Motions. ......................................................... 2

        B.      Phase Two: Interlocutory Appeal Of Denial Of Anti-SLAPP Motions. .......... 4

        C.      Phase Three: Discovery. ......................................................................... 4

                1.      Written Discovery: Document Collection And Review...................... 5

                2.      Written Discovery: Motion Practice. ................................................ 6

                3.      Fact Deposition Discovery And Motion Practice. ............................. 8

                4.      Expert Discovery. ............................................................................ 10

        D.      Phase Four: Motion To Disqualify Judge Orrick. .......................................... 10

        E.      Phase Five: Summary Judgment. ................................................................... 11

        F.      Phase Six: Pre-Trial. ...................................................................................... 12

        G.      Phase Seven: Trial. ......................................................................................... 12

        H.      Phase Eight: Post-Trial: Equitable Relief And Post-Trial Motions. ............. 13

        I.      Phase Nine: Fees Motion................................................................................. 14

III.    ARGUMENT...................................................................................................... 14

        A.      Plaintiffs Are Entitled To All The Fees Incurred In Litigating This
                Case. ................................................................................................................ 14

                1.      Plaintiffs Are The Successful Party On Various Claims That
                        Authorize Recovery Of Reasonable Attorneys' Fees. ...................... 14

                2.      Plaintiffs Are Also Entitled To Recover Fees Incurred In
                        Litigating Claims That Do Not Independently Allow For The
                        Recovery Of Attorneys' Fees Or Were Unsuccessful........................ 15

                3.      Plaintiffs Are Also Entitled To Recover Fees For Work Done
                        On The Instant Fee Application. ....................................................... 17

                4.      Plaintiffs Are Also Entitled To Recover Fees For Work Done
                        By In-House Counsel Of Record. ...................................................... 17

5.    Plaintiffs Are Also Entitled To Recover Non-Taxable Costs. ........... 17

B.    The Amount Of Attorneys' Fees Plaintiffs Are Seeking Is Reasonable. ....... 18

1.    The Amount Of Time Spent By The Attorneys Was Reasonable ............................................................................. 19

2.    The Hourly Rates Charged By Arnold & Porter And RJO Are Reasonable ............................................................................. 20

3.    The Overall Amount Of The Attorneys' Fees Is Reasonable. ........... 22

IV.    CONCLUSION. ...................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Banas v. Volcano Corp.*,
  47 F. Supp. 3d 957 (N.D. Cal. 2014) ............................................................ 21

*Barjon v. Dalton*,
  132 F.3d 496 (9th Cir. 1997) ....................................................................... 20

*BCS Servs., Inc. v. BG Invs., Inc.*,
  728 F.3d 633 (7th Cir. 2013) ....................................................................... 20

*Bingham v. Zolt*,
  66 F.3d 553 (2d. Cir. 1995) ......................................................................... 16

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ...................................................................................... 22

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ........................................................ 17, 18, 20, 23

*Ferland v. Conrad Credit Corp.*,
  244 F.3d 1145 (9th Cir. 2001) ..................................................................... 18

*Fischer v. SJB-P.D. Inc.*,
  214 F.3d 1115 (9th Cir. 2000) ..................................................................... 19

*Grove v. Wells Fargo Fin. Cal., Inc.*,
  606 F.3d 577 (9th Cir. 2010) ....................................................................... 18

*Hefler v. Wells Fargo & Co.*,
  No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd*, 802 Fed. App'x 285 (9th Cir. 2020) ................................................... 21

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................... 15, 16, 19, 22, 23

*In re HPL Techs., Inc. Sec. Litig.*,
  366 F. Supp. 2d 912 (N.D. Cal. 2005) .......................................................... 19

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.
  Litig.*,
  MDL No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17,
  2017) ......................................................................................................... 21

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .......................................................................... 22

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*,
    909 F.3d 272 (9th Cir. 2018) ........................................................................... 15

*Instrumentation Lab. Co. v. Binder*,
    No. 11cv965 DMS (KSC), 2013 WL 12049072 (S.D. Cal. Sept. 18,
    2013), *aff'd*, 603 Fed. App'x 618 (9th Cir. 2015) .......................................... 19

*Jung Ja Kim v. Quichocho*,
    No. 1:09-CV-00046, 2015 WL 13357617 (D. N. Mar. Is., Mar. 23, 2015) ................. 18

*Kilopass Tech., Inc. v. Sidense Corp.*,
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...................................................... 21, 22

*Logtale, Ltd. v. IKOR, Inc.*,
    No. 11-cv-05452-EDL, 2016 WL 7743405 (N.D. Cal. Oct. 14, 2016),
    *aff'd*, 738 Fed. App'x 422 (9th Cir. 2018) ................................................ 21

*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
    761 F.2d 553 (9th Cir. 1985) ........................................................................... 17

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989) ......................................................................................... 15

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ......................................................................... 19

*MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*,
    197 F.3d 1276 (9th Cir. 1999) ......................................................................... 15

*Odima v. Westin Tucson Hotel*,
    53 F.3d 1484 (9th Cir. 1995) ........................................................................... 16

*Peak-Las Positas Partners v. Bollag*,
    172 Cal. App. 4th 101 (2009) ..................................................................... 19, 20

*Quevedo v. New Albertsons, Inc.*,
    No. SACV 13-1160-JLS, 2015 WL 10939716 (C.D. Cal. May 27, 2015) ................... 15

*Reynolds Metals Co. v. Alperson*,
    25 Cal. 3d 124 (1979) ....................................................................................... 15

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ......................................................................... 16

PLAINTIFFS' NOTICE OF MOTION & MOTION; MPA ISO REQUEST FOR ATTORNEYS' FEES

*Sys. Mgmt., Inc. v. Loiselle*,
    154 F. Supp. 2d 195 (D. Mass. 2001) ................................................................ 16

*Thorne v. City of El Segundo*,
    802 F.2d 1131 (9th Cir. 1986) ............................................................................ 16

*Twitch Interactive, Inc. v. Johnston*,
    No. 16-cv-03404-BLF, 2018 WL 3632171 (N.D. Cal. July 31, 2018) .............. 23

*United Healthcare Corp. v. Am. Trade Ins. Co.*,
    88 F.3d 563 (8th Cir. 1996) ................................................................................ 14

*Valadez v. Aguallo*,
    No. C 08-03100 JW, 2009 WL 10680866 (N.D. Cal. Dec. 10, 2009) .............. 14

*Voice v. Stormans Inc.*,
    757 F.3d 1015 (9th Cir. 2014) ............................................................................ 22

*Wishtoyo Found. v. United Water Conservation Dist.*,
    No. CV 16-3869-DOC, 2019 WL 1109684 (C.D. Cal. Mar. 5, 2019) ......... 17, 22

*Wynn v. Chanos*,
    No. 14-cv-04329-WHO, 2015 WL 3832561 (N.D. Cal. June 19, 2015) .......... 21

**Statutes and Rules**

18 U.S.C. § 2520(b)(3) ............................................................................................ 15

28 U.S.C. § 1920 ..................................................................................................... 18

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 9

Fla. Stat. Ann. § 934.10(1)(d) ................................................................................. 14

Md. Code Ann. Cts. & Jud. Proc. § 10-410(a)(3) .............................................. 14, 15

Tex. Civ. Prac. & Rem. Code § 38.001(8) ............................................................. 15

Local Rule 54-5(b)(1) ................................................................................................ 1

PLAINTIFFS' NOTICE OF MOTION & MOTION; MPA ISO REQUEST FOR ATTORNEYS' FEES

## NOTICE OF MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 18, 2020 at 2:00 p.m. in Courtroom 2 of the Honorable William H. Orrick III at the United States District Court for the Northern District of California, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs will and hereby do move for an order awarding them their reasonable attorneys' fees and costs. This motion is based on the following memorandum of points and authorities, the declarations of Amy L. Bomse, Rhonda R. Trotter, Sharon Mayo, Steven L. Mayer, Jeremy T. Kamras, Diana Sterk, Oscar Ramallo, Meghan C. Martin, Arielle Feldshon, Matthew Diton, Maithreyi Ratakonda, and Beth Parker and all pleadings and records on file in this action.

In this motion, Plaintiffs request that the Court award Plaintiffs $13,798,840 in attorneys' fees and $931,595.31 in non-taxable costs. The total amount requested by this motion is $14,730,435.31.[1]

As required by Civil Local Rule 54-5(b)(1), counsel for Plaintiffs spoke with counsel for Defendants on September 4, 2020, in an attempt to resolve any disputes with respect to this request. Declaration of Amy L. Bomse in Support of Plaintiffs' Motion for Attorneys' Fees and Non-Statutory Costs ("Bomse Decl.") ¶ 106.[2] While Defendants noted it would be difficult to argue that Plaintiffs were not entitled to recover their fees and costs, the parties were unable to agree on the amount of fees and costs Plaintiffs should be awarded. *Id.*

---

[1] All expenses paid by Plaintiffs and/or Arnold & Porter in litigating this matter would be reimbursed in full from any award of costs or attorneys' fees. After such reimbursement, any remaining award of attorneys' fees attributable to work performed by Arnold & Porter attorneys would be contributed to the Arnold & Porter Foundation, a tax-exempt private foundation that provides scholarships to minority law students, funds fellowships for recent law school graduates at tax-exempt organizations, and awards grants to other charitable and educational organizations. Declaration of Steven L. Mayer in Support of Plaintiffs' Motion for Attorneys' Fees and Non-Statutory Costs ("Mayer Decl.") ¶ 36.

[2] All of Plaintiffs' supporting declarations submitted in connection with this motion are collectively referred to as "Plaintiffs' Supporting Declarations."

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

Plaintiffs filed this action in 2016, asserting claims under a variety of agreements and state and federal laws, four of which expressly provide that a successful litigant is entitled to receive its reasonable attorneys' fees and costs in bringing suit.  ECF 59.  On April 29, 2020, the Court entered judgment for Plaintiffs, noting that the November 15, 2019 jury verdict was "overwhelmingly in plaintiffs' favor."  ECF 1073 at 1.  In total, Plaintiffs were awarded over $2 million in compensatory and punitive damages, as well as a permanent injunction against Defendants.  *Id.* at 40-48.  To achieve this result, Plaintiffs had to overcome Defendants' "scorched-earth" litigation tactics: defeating an anti-SLAPP motion (and an ensuing interlocutory appeal); responding to hundreds of discovery requests; litigating numerous discovery disputes before both Magistrate Judge Ryu and the Court; taking and defending over 50 depositions; responding to Defendants' frivolous motions to recuse the assigned judge; defeating Defendants' motions for summary judgment (and prevailing on their own); prevailing in a multi-week trial; and, most recently, defeating Defendants' multiple post-trial motions.  Accordingly, as the successful parties in this litigation, Plaintiffs now submit this Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees and Non-Statutory Costs in order to recover the fees and costs to which they are entitled.

### II.   FACTUAL BACKGROUND.

#### A.   Phase One: Pre-Complaint Analysis, Drafting The Complaint, And Responding To Pleading Motions.

Some of the Plaintiffs originally approached the firm of Rosen Bien Galvin & Grunfeld, an experienced civil rights firm in San Francisco, to handle this case, which involved claims against the individuals and entities behind an extensive fraudulent scheme involving infiltration of conferences and health centers.  Declaration of Beth Parker In Support of Plaintiffs' Motion for Attorney's Fees and Non-Statutory Costs ("Parker Decl.") ¶ 10.  But that firm eventually decided that it did not have enough resources to handle what would undoubtedly be protracted and highly contested litigation.  *Id.*  Plaintiffs then approached Arnold & Porter Kaye Scholer LLP ("Arnold

2

& Porter"), with whom they had a long relationship,[3] and asked the firm to represent them.  *Id.*
Arnold & Porter, led by Amy Bomse, Sharon Mayo, and Jee Young You, and assisted by several
associates, agreed to the representation.  Bomse Decl. ¶ 14.

After agreeing to take the case, the Arnold & Porter team worked with its clients to gather
the facts and analyze potential claims.  *Id.* ¶ 15.  Based on the investigation and analysis, the firm
drafted a 245-paragraph complaint, alleging violation of RICO, federal and state wiretapping
statutes, breach of contract, trespass, fraud, invasion of privacy and civil conspiracy, on behalf of
Planned Parenthood Federation of America and all seven California Planned Parenthood affiliates.
*Id.*  The original complaint was filed on January 14, 2016.  *Id.* ¶ 16.  The firm then amended the
complaint to add Plaintiffs Planned Parenthood of the Rocky Mountains, Planned Parenthood Gulf
Coast, and Planned Parenthood Center for Choice, and an additional cause of action for breach of
the PPGC non-disclosure agreement.  *Id.*

Defendants responded to the amended complaint by filing multiple pleadings motions.  *Id.*
¶ 17.  All Defendants other than Merritt filed a 64 page motion to dismiss attacking all fifteen
causes of action as legally deficient on a wide variety of legal theories; and Merritt filed a separate
motion to dismiss also attacking all fifteen claims with overlapping but not identical legal
arguments.  *Id.*  In addition, Defendants other than Merritt filed an anti-SLAPP motion contending
that Plaintiffs' complaint attacked Defendants' first amendment activity and was legally deficient
for reasons similar to those advanced in their motion to dismiss.  *Id.*  Merritt also filed an anti-
SLAPP motion which attacked both the sufficiency of the claims and made certain factual
arguments.  *Id.*  Arnold & Porter engaged in extensive legal research and drafting to address the
numerous legal arguments and, with respect to Merritt's anti-SLAPP motion, filing declarations
addressing factual issues raised. *Id.* ¶ 18.

Bomse, Mayo, and You argued the motions in July 2016.  *Id.* ¶ 19.  The Court issued a 56-
page order rejecting all of Defendants' arguments and denying all four of Defendants' motions.

---

[3] At the time, the firm was known as Arnold & Porter LLP.

*Id.* ¶ 20.

**B.      Phase Two: Interlocutory Appeal Of Denial Of Anti-SLAPP Motions.**

After the Court's decision, Defendants appealed the denial of their anti-SLAPP motions to the Ninth Circuit. *Id.* ¶ 24. At the appellate level, Plaintiffs put together a team to respond to Defendants' 69-page opening brief. *Id.* ¶¶ 25-26.  The team included Steven Mayer, an appellate expert, and two associates in the firm's Appellate and Supreme Court practice group, as well as Amy Bomse and Jee Young You.  *Id.* ¶26. Appellees' 74-page brief addressed both the novel question of whether Plaintiffs had to show the factual sufficiency of their claims as well as Defendants' myriad attacks on the legal sufficiency of Plaintiffs' state-law claims. *Id.*  In addition to preparing that brief, and preparing for and participating in oral argument, Plaintiffs also had to respond to Defendants' motion to strike a single sentence from Plaintiffs' brief and the Ninth Circuit's request for additional briefing, and they prepared and responded to letters regarding supplemental authority decided after the filing of their brief.  *Id.* ¶¶ 28-29.  Ultimately, the Ninth Circuit held in Plaintiffs' favor across the board and rejected all of Defendants' legal attacks on the sufficiency of Plaintiffs' claims.  *Id.* ¶ 32.

That did not end the appellate proceedings.  After the Ninth Circuit issued its decision, Defendants filed a petition for rehearing and rehearing en banc.  *Id.* ¶ 33.  Plaintiffs successfully opposed the petition.  *Id.*  Defendants then sought a stay of the issuance of the mandate pending their filing of a petition for writ of certiorari, which Plaintiffs also successfully opposed.  *Id.* ¶ 34.  Then, after Defendants filed a petition for certiorari in the Supreme Court, that Court requested a response from Plaintiffs, Plaintiffs filed a brief in opposition to the petition, and the Court denied certiorari.  *Id.* ¶ 35.

**C.      Phase Three: Discovery.**

Defendants moved to stay the entire case pending their appeal, which Plaintiffs opposed. *Id.* ¶ 37.  The Court denied the motion to stay the federal claims, finding that the interests of justice were "best served by completing as much discovery as possible so that the case can get to trial as quickly as possible once it returns from the Ninth Circuit."  ECF 146 at 2.  As a result of this ruling, written discovery took an unusually long time.  Defendants took advantage of this time

4

to propound nearly 400 document requests, over 100 interrogatories (most propounded on all or multiple plaintiffs), and over 100 requests for admission.  Bomse Decl. ¶ 38.  The parties also took over 50 depositions of both percipient witnesses and experts.  *Id.* ¶ 59.

Discovery was hotly contested.  The parties brought numerous discovery motions, the vast majority of which were brought by Defendants—and subsequently denied by the magistrate judge assigned to hear discovery disputes.  Defendants also regularly challenged the magistrate judge's orders, which, even though the challenges were uniformly rejected by this Court, resulted in even more briefing and work by Plaintiffs' counsel.

### 1.    Written Discovery: Document Collection And Review.

At the outset of the case, Plaintiffs' counsel interviewed executives and in-house counsel for each client to identify key custodians.  *Id.* ¶ 40.  Based on that information, and working alongside a document vendor, Plaintiffs initially collected electronic documents from 30 custodians, constituting over a terabyte of electronic data.  *Id.*

Based on Defendants' document requests, Plaintiffs' counsel developed search terms to identify a universe of potentially responsive documents.  *Id.* ¶ 41. Counsel then designed a document review protocol to train the team of contract and staff attorneys who would be reviewing the documents.  *Id.*  This process was made more time consuming by the need to protect the identifies of non-publicly known members of Plaintiffs' staff.  *Id.* ¶ 42.  In total, Plaintiffs produced over 20,000 pages of documents during discovery.  *Id.* ¶ 41.

After Plaintiffs produced these documents, Defendants objected to some of Plaintiffs' name redactions, which caused Plaintiffs to incur additional hours re-producing thousands of pages with assigned DOE identifiers.  *Id.* ¶ 42.  Ultimately, Plaintiffs created 1094 unique DOE identifiers in order to protect the identities of Planned Parenthood and Planned Parenthood vendors' staff names.  *Id.*

Counsel also collected and reviewed additional documents from Plaintiffs that could not be effectively located through electronic searches.  *Id.* ¶ 43.  For example, counsel worked with Plaintiffs' security and executive team members to obtain evidence of Plaintiffs' damages (such as security invoices, contracts, and emails) and interviewed numerous staff members to understand

the damages incurred as a result of Defendants' scheme.  *Id.*

Plaintiffs also served numerous document requests and interrogatories to further develop the factual record.  *Id.* ¶ 44.  In response, Defendants produced over 600 hours of illegally recorded videotapes from the NAF conferences, PPFA conferences, and PPFA health centers, and lunch meetings—all of which had to be reviewed by Plaintiffs' counsel.  *Id.* ¶ 45.  To accomplish this task, Arnold & Porter designed a separate video review protocol and template to train the over 30 attorneys who would be reviewing the videotapes.  *Id.*  The reviewers' notes were then assembled into a large database that allowed the clips to be identified for use at depositions and trial.  *Id.*

Defendants also served third-party subpoenas on various entities, including tissue procurement companies and university researchers that contracted with Plaintiffs.  *Id.* ¶ 46. Arnold & Porter worked with counsel for these third parties, assisting them in understanding the procedural and substantive issues raised by the subpoenas, and reviewing the documents that were produced.  *Id.*

### 2.      Written Discovery: Motion Practice.

The parties brought at least 30 discovery motions, the vast majority of which were brought by Defendants and which were denied by Magistrate Judge Ryu.  *Id.* ¶ 47. Defendants regularly challenged Judge Ryu's orders, and their challenges were uniformly rejected by the Court.  *Id.* Nonetheless, Defendants' practice of "appealing" discovery orders significantly increased the amount of discovery motion practice throughout the case.  *Id.*

***Communications Between Defendants and Supporters and Funders.***  In response to Plaintiffs' document requests, CMP, BioMax, and Daleiden initially produced only 300 documents, nearly all of which were already in Plaintiffs' possession because they were communications Defendants had sent to Plaintiffs' staff as part of their fraudulent scheme.  *Id.* ¶ 48.  Defendants refused to produce communications among the Defendants and others working with them who had targeted Planned Parenthood, taking the position that only documents that involved specific logistical plans to infiltrate a particular PPFA conference or health center were discoverable.  *Id.*  Plaintiffs were therefore forced to file a motion to compel.  *Id.*  Magistrate

Judge Ryu rejected Defendants' relevance objection.  *Id.* ¶ 49.

At the hearing, Defendants argued for the first time that the documents in question were protected by various First Amendment privileges.  *Id.*  Judge Ryu gave Defendants a new opportunity to brief this argument.  Plaintiffs' counsel researched and briefed the parameters of the various First Amendment protections and explained why they did not defeat the discovery demands.  *Id.*  Judge Ryu granted Plaintiffs' motion.  *Id.*  The documents Defendants were forced to produce became critical evidence concerning their motives and tactics.  *Id.*

**Defendants' Motion to Compel re: Fetal Tissue I.**  Defendants sought to use civil discovery to attempt to substantiate their irrelevant claims that Planned Parenthood was profiting from the sale of fetal tissues and engaging in illegal abortion procedures.  *Id.* ¶ 50. In support of these efforts, Defendants brought multiple motions to compel, each of which forced Plaintiffs to spend time researching and drafting opposition papers, arguing the motion before the magistrate judge, and defending the Magistrate Judge's orders before this Court. *Id.*  The first such motion concerned several interrogatories relating to fetal tissue, to which Plaintiffs objected on relevance and burden grounds.  ECF 258.  At the hearing, the parties cited certain evidence from Defendants' surreptitiously-obtained video recordings.  Judge Ryu requested the parties to submit certain specifically-identified materials, but warned the parties to submit only the specific items she requested.  Bomse Decl. ¶ 51.  Defendants ignored her instruction and produced a new video composed of various snippets designed to further Defendants' irrelevant claims about Planned Parenthood.  *Id.*  Plaintiffs objected to the submission in a letter to Defendants, which Defendants ignored, and then in a letter to the Court.  *Id.*  Judge Ryu agreed that the materials were beyond what she had ordered and refused to review them for her ruling.  *Id.*

Ultimately, Judge Ryu rejected Defendants' arguments and refused to require Plaintiffs to provide the extensive information about fetal tissue programs that was irrelevant to the case.  ECF 441.  Defendants objected to Judge Ryu's order, and this Court ordered Plaintiffs to respond to those objections.  Bomse Decl. ¶ 52.  The Court affirmed the order.  *Id.*

**Defendants' Motion to Compel re: Fetal Tissue II.**  Defendants then sought leave to file a more extensive motion to compel documents relating to Plaintiffs' fetal tissue donation and

abortion procedures.  *Id.* ¶ 53.  The Court permitted Defendants to do so.  *Id.*   Defendants filed a 15-page motion to compel against Plaintiffs (and third parties Advanced Biosciences Resources and the Regents of the University of California).  ECF 332.  The motion was accompanied by a 167-page purported separate statement, two declarations and 390 pages of exhibits.  Bomse Decl. ¶ 53.  Judge Ryu found that Defendants' motion violated the local rules by failing to address proportionality and exceeded page limits by including argument in the separate statement.  *Id.* ¶ 54.  Instead of denying the motion, however, in the interests of justice she offered Defendants an opportunity to try again "even though a new motion will likely impose a burden on Plaintiffs for which they bear little responsibility."  ECF 352 at 3.

        ***Defendants' Motion to Compel re: Fetal Tissue III.***  Defendants then filed a new motion to compel on the same subjects, which Plaintiffs opposed.  Magistrate Judge Ryu largely denied Defendants' motion.  ECF 442.  Defendants again objected to the order, and the Court ordered Plaintiffs to respond.  Plaintiffs prepared a response defending the order, which the Court affirmed.  ECF 466.

        ***Additional Discovery Motions.***  In addition to those described above, the parties had to prepare and file numerous, additional submissions regarding discovery disputes over document production, use of confidentiality designation and interrogatory responses.  *See generally* ECF 163 (joint letter re amending protective order and allowing redaction without DOE identifiers); ECF 166 (omnibus joint letter brief re seventeen discovery disputes); ECF 203 (joint letter brief re plaintiffs' use of AEO designation); ECF 311 (joint letter brief re Defendants' designation of materials as outside-counsel eyes-only); and ECF 560 (Defendants' motion to compel production of additional security reports).

        **3.**      **Fact Deposition Discovery And Motion Practice.**

        Depositions of the parties' fact witnesses began in February 2019 and lasted through trial. Bomse Decl. ¶ 59.  The Parties took 52 depositions in North Carolina, Washington D.C., Philadelphia, Chicago, Seattle, San Diego, Los Angeles and in the Bay Area. *Id.*  Defendants

sought a corporate deposition for each of the ten Plaintiffs (each with broad 30(b)(6) topics[4]) and also took the deposition of another nine Planned Parenthood doctors and medical staff.  *Id.* Plaintiffs deposed the five individual defendants, as well as eight participants in Defendants' scheme: one of CMP's principal funders, its video editor, its social media coordinator, two of the undercover actors, and three public relations consultants.  Plaintiffs also deposed CMP's corporate representative.  *Id.*[5]

 Each of these depositions required Plaintiffs' counsel to identify relevant documents, prepare witness outlines, and, for the 30(b)(6) witnesses, meet with the representatives for at least a full day of preparation.  *Id.* ¶ 62.

Plaintiffs were also forced to file a motion for a protective order after Defendants attempted to circumvent the Court's orders on their motions to compel by seeking information concerning Plaintiffs' fetal-tissue donation program during depositions.  *Id.* ¶ 63.  Defendants filed objections to Judge Ryu's order, to which Plaintiffs were required to respond.  This Court affirmed the protective order.  ECF 534.

Defendants also filed various, further discovery motions during the deposition period. These motions sought further time, contended that various witnesses were unprepared, or alleged that Plaintiffs' counsel made improper objections (including instructing witnesses not to answer certain questions).  *See, e.g.*, ECF 617.  Plaintiffs were required to spend considerable time addressing each of Defendants' complaints.  Bomse Decl. ¶ 64.  With minor exceptions, Judge Ryu denied all of Defendants' deposition-related discovery motions.  *Id.*  Defendants regularly filed written objections to these orders with this Court, and Plaintiffs required to spend further time responding to the objections.  *Id.*

---

[4] For example, the topics for PPFA were so broad that Plaintiffs were forced to designate four separate corporate representatives.  Bomse Decl. ¶ 62.

[5] Defendants designated David Daleiden as CMP's corporate representative but insisted that his deposition in his individual and representative capacity be limited to a single seven-hour day. Plaintiffs successfully asked Magistrate Judge Ryu to order that Mr. Daleiden appear for a separate full day in each capacity.  Bomse Decl. ¶ 59.

1

2     **4.     Expert Discovery.**

Plaintiffs initially identified only a single area that required expert testimony: the history of

3     anti-abortion harassment.  *Id.* ¶ 65.  Plaintiffs interviewed several candidates, and eventually

4     retained Professor David Cohen as an expert.  *Id.*  Counsel worked with Professor Cohen to

5     develop his opinions and provide materials for his expert report.  *Id.*

6     Defendants, on the other hand, identified six experts: an accountant with purported

7     expertise in whether Plaintiffs profited from the sale of fetal tissue, an IT expert to testify about a

8     system-wide hack of Planned Parenthood tied to Defendants' video scheme, two security experts

9     and two medical doctors to opine on abortion-related topics.  *Id.* ¶ 66.  After receiving Defendants'

10    disclosures and reports, Plaintiffs' counsel identified areas where rebuttal expert testimony was

11    needed, engaged in a search process to retain rebuttal experts and assisted them in developing their

12    opinions and expert reports.  *Id.* ¶ 67.  Plaintiffs designated four rebuttal experts: an accounting

13    professor to rebut the opinions relating to Planned Parenthood's alleged "profiting" from fetal

14    tissue donation, a medical expert to rebut Defendants' medical experts' opinions, a physical

15    security expert and a computer security expert.  *Id.*  Counsel then deposed all of Defendants'

16    experts and prepared and defended the depositions of Plaintiffs' experts.  *Id.* ¶ 67 & Ex. B.

17    Defendants also prompted additional motion practice in connection with the parties' expert

18    disclosures.  *Id.* ¶ 68.  Specifically, Defendants sought to designate a "rebuttal" damages expert

19    even though Plaintiffs did not designate a damages expert (and thus there was nothing to rebut).

20    *Id.*  Defendants filed a motion to *exclude* Plaintiffs from offering percipient witness testimony

21    about damages and to be allowed to late-designate their damages expert.  Plaintiffs prepared and

22    filed an opposition.  *Id.*  The Court denied Defendants' motion to exclude, but allowed

23    Defendants' late designation.  *Id.*

24    **D.     Phase Four: Motion To Disqualify Judge Orrick.**

25    In June 2017, 17 months into the case, Defendants filed a motion to disqualify Judge

26    Orrick in both this case and the parallel NAF case, based in part of the fact that many years earlier

27    he sat on the board of a charitable organization that housed a health center operated by a Planned

28    Parenthood affiliate.  *Id.* ¶ 77.  Given the advanced stage of the case and Judge Orrick's extensive

10

familiarity with the facts, legal issues and procedural history, disqualification threatened to impose significant prejudicial delay. *Id.* ¶ 78. Accordingly, Plaintiffs opposed the motion. *Id.* In preparing the opposition, Plaintiffs' counsel worked closely with PPNorCal's staff and the executive staff of Good Samaritan to learn the history of the relationship (if any) between the affiliate and the charitable organization, including the role of the Board (or lack thereof) in that relationship. *Id.* Based on that work, Plaintiffs filed a brief and supporting declaration establishing that PPNorCal had only a contractual relationship with Good Samaritan, not a partnership as Defendants asserted. *Id.*

At Defendants' insistence, there was a second round of briefing after the motion to disqualify Judge Orrick in the NAF case was denied. *Id.* ¶ 79. After the second round, Judge Donato denied the motion to disqualify and held that the sole distinction between NAF and Planned Parenthood—the presence of a Planned Parenthood affiliate that had a relationship with a charitable organization on whose board Judge Orrick had once sat—was based on a "conclusory characterization" and exaggeration of Judge Orrick's relationship with the affiliate. ECF 186.

Defendants filed a writ petition challenging the denial of their motion to disqualify. *Id.* ¶ 80. The Ninth Circuit ordered Plaintiffs to respond, which Plaintiffs did. *Id.* The Ninth Circuit denied the petition summarily. *In re the Center for Medical Progress et al. v. Planned Parenthood Federation of America*, Case No. 17-73313, ECF 17.

**E.      Phase Five: Summary Judgment.[6]**

***Rhomberg's Premature Summary Judgment Motion.*** In December 2018, before a single deposition had been taken and while numerous discovery disputes were still pending, Defendant Rhomberg filed a motion for summary judgment arguing that Plaintiffs could not establish proximate cause as a matter of law. Bomse Decl. ¶ 82. Plaintiffs opposed the motion, in part, on the ground that it was premature. *Id.* The Court agreed and denied the motion. *Id.*

_____

[6] In May 2019, one of Plaintiffs' lead trial counsels, Ms. Amy Bomse, joined the firm of Rogers, Joseph, O'Donnell P.C. ("RJO"). Bomse Decl. ¶ 2. References to counsel beyond this date include attorneys from both Arnold & Porter and RJO.

*The Parties File Cross-Motions for Summary Judgment.* In May 2019, Defendants filed six separate summary judgment motions (representing 144 pages of argument) and a second anti-SLAPP motion. Plaintiffs' counsel researched, drafted, and filed a consolidated, 88-page opposition to Defendants' summary judgment motions and a separate opposition to the anti-SLAPP motion. *Id.* ¶ 83. Plaintiffs also filed a motion for summary judgment seeking summary judgment on their trespass, fraud, unfair competition and breach of contract claims, partial summary judgment on the predicate offense element of their RICO claim, and summary judgment on Defendants' affirmative defenses. *Id.* ¶ 84. Oral argument on the motions was held on July 17, 2019. *Id.* ¶ 85. The Court denied Defendants' motions, and granted Plaintiffs some of the relief they had requested, in an order totaling 137 pages. *Id.* ¶ 86.

### F.   Phase Six: Pre-Trial.

After the oral argument on summary judgment was complete, Plaintiffs' counsel turned their attention to trial preparation. *Id.* ¶ 88. To prepare for the lengthy trial, counsel was required to (i) identify evidence (and a sponsoring witness) in support of each element of each claim; (ii) prepare an exhibit list; (iii) select witnesses; (iv) create a witness order; (v) identify evidentiary motions; and (vi) prepare materials requested by the Court (such as a statement of the case, preliminary jury instructions, and a detailed statement of damages). *Id.*

### G.   Phase Seven: Trial.

The trial began in early October and concluded on November 15, 2019. *Id.* ¶ 90. Plaintiffs' trial team worked, with few exceptions, at least 12-15 hours every day throughout this period, participating in trial proceedings, preparing witnesses, drafting examination outlines, assembling evidence, researching legal issues, designating deposition testimony (and drafting objections to Defendants' designations), preparing arguments, preparing (and arguing) proposed jury instructions and verdict forms, and a myriad of other tasks. *Id.* ¶ 92.

Plaintiffs were also forced to engage in significant motion practice during trial. For example, after only one and one-half witnesses had been presented, Defendant Newman filed a 12-page brief arguing that Plaintiffs had "opened the door" to evidence concerning abortion practices and fetal tissue donation. *Id.* ¶ 94. Plaintiffs' counsel were required to draft a written response

12

and prepare for oral argument on this topic.  *Id.*  Plaintiffs were also required to file letter briefs concerning Defendants' attempt to introduce objectionable evidence from their secretly-recorded videos.  *See, e.g.*, ECF 874.  These objections were sustained.  Bomse Decl. ¶ 95.  Similarly, Plaintiffs were forced to file a written motion to exclude Defendants' evidence about a collection of fetuses discovered decades ago, which the Court also granted.  ECF 875.  The parties engaged in further motion practice regarding the propriety and scope of any adverse inferences stemming from certain witnesses' invocation of their Fifth Amendment privilege against self-incrimination. Bomse Decl. ¶ 96.

In total, Plaintiffs' case in chief was presented to the jury for 15.5 court days, and Plaintiffs put on 23 live witnesses and 6 witnesses via deposition.  *Id.* ¶ 90.

On November 15, 2019, the jury returned a verdict for Plaintiffs on all counts, and awarded Plaintiffs over $2 million in compensatory and punitive damages.  ECF 1016.

**H.    Phase Eight: Post-Trial: Equitable Relief And Post-Trial Motions.**

After the jury returned its verdict (which was "overwhelmingly in Plaintiffs' favor"), the parties engaged in a further round of briefing on Plaintiffs' outstanding claim under the California Unfair Competition Law and claim for injunctive relief.  Bomse Decl. ¶¶ 100-101.  Plaintiffs prepared two documents: (1) a memorandum addressing the law and facts concerning Defendants' violation of the UCL, Plaintiffs' entitlement to injunctive relief based on the jury verdict, the scope of the injunctive relief, proposed conclusions of law and the specific injunction sought and (2) a brief setting forth sixty separate findings of fact established by the trial record which formed the basis for Plaintiffs' requested injunctive relief.  *Id.* ¶ 101.

On April 29, 2020, the Court found all Defendants liable for violation of the UCL.  *Id.* ¶ 103.  The Court issued an order granting, in part, Plaintiffs' request for injunctive relief and entering judgment in their favor.  ECF 1073 & 1074.

Defendants Daleiden, CMP, BioMax, and Lopez also filed a motion to set a bond amount, wherein they asked the Court to waive the requirement of a supersedeas bond to stay execution of judgment.  ECF 1078.  Plaintiffs opposed this motion.  ECF 1083.  The Court denied Defendants' request to waive the bond requirement, and, instead, set a $600,000 bond.  ECF 1093.

After the Court entered judgment, Defendants filed three post-trial motions: a motion for judgment as a matter of law; a motion for a new trial; and a motion to alter or amend the judgment.  ECF 1080.  All three motions were denied.  ECF 1116.

I.   **Phase Nine: Fees Motion.**

In its order denying Defendants' post-trial motions, the Court directed the parties to file motions for attorneys' fees and costs within fourteen days from the date of the order.  ECF 1116 at 35.  Plaintiffs' counsel researched and drafted the instant motion as well as a bill of costs with supporting declaration.  Bomse Decl. ¶ 105.  Each attorney reviewed his or her own time records, categorized them into various phases, and identified appropriate write-offs in the exercise of billing judgment.  *See generally* Plaintiffs' Supporting Declarations.

III.  **ARGUMENT.**

A.   **Plaintiffs Are Entitled To All The Fees Incurred In Litigating This Case.**

1.   **Plaintiffs Are The Successful Party On Various Claims That Authorize Recovery Of Reasonable Attorneys' Fees.**

As noted above, the Court entered judgment on behalf of PPFA, PPGC, PPOSBC, and PPPSGV on their claims under RICO. "[A]n award of reasonable attorney's fees and costs under RICO is mandatory."  *Valadez v. Aguallo*, No. C 08-03100 JW, 2009 WL 10680866, at *4 (N.D. Cal. Dec. 10, 2009) (quoting *United Healthcare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 575 (8th Cir. 1996)).

The Court also entered judgment on behalf of PPFA, PPGC, PPOSBC, PPPSGV, PPCFC, PPCCC, PPRM, PPPSW, and PPNorCal on their federal wiretapping claims; on behalf of PPFA, PPOSBC, PPPSGV, PPCCC, PPRM, PPGC, and PPPSW on their Florida wiretapping claim; and on behalf of PPFA, PPGC, and PPCFC on their Maryland wiretapping claim. ECF No. 1073 at 40-44.  As with the RICO statute, each one of these statutes authorizes a successful litigant to recover its attorneys' fees. *See* Fla. Stat. Ann. § 934.10(1)(d) (Florida wiretapping); Md. Code Ann. Cts.

& Jud. Proc. § 10-410(a)(3) (Maryland wiretapping); 18 U.S.C. § 2520(b)(3) (federal wiretapping).[7]

In addition, the Court entered judgment on behalf of PPGC and against Daleiden, BioMax, and CMP on its claim for breach of the PPGC NDA (Fifteenth Claim for Relief).  ECF No. 1073 at 44.  Under Tex. Civ. Prac. & Rem. Code § 38.001(8), a plaintiff who succeeds on a claim for "an oral or written contract" is entitled to recover reasonable attorney's fees from an individual (such as Daleiden) or a corporation (such as CMP).

Accordingly, each successful Plaintiff is entitled to recover its reasonable attorneys' fees and non-statutory costs incurred in litigating these claims.[8]

> **2.    Plaintiffs Are Also Entitled To Recover Fees Incurred In Litigating Claims That Do Not Independently Allow For The Recovery Of Attorneys' Fees Or Were Unsuccessful.**

Plaintiffs are also entitled to recover attorneys' fees incurred in litigating claims that were successful, but do not independently provide an entitlement to fees.  "[W]here attorney fees are recoverable for one cause of action but not another, a court need not apportion fees between the causes of action if there is an issue common to the causes of action or the issues are so interrelated that it would be impossible to separate them." *Quevedo v. New Albertsons, Inc.*, No. SACV 13-1160-JLS (JPRx), 2015 WL 10939716, at *2 (C.D. Cal. May 27, 2015) (citing *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129-130 (1979)).

The same is true for claims that were unsuccessful.  "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart*, 461

---

[7] Plaintiffs are entitled to recover fees under these state statutes, even though the case is pending in federal court.  *See Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 281-82 (9th Cir. 2018) ("[S]o long as state law does not run counter to a valid federal statute or rule of court . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.") (quoting *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999)).

[8] "Reasonable attorneys' fees" includes fees for paralegals and legal assistants.  *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) ("We thus take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by statute should compensate the work of paralegals, as well as that of attorneys.").

U.S. 424, 440 (1983).  Claims are "related" for purposes of attorneys' fees motions when they "involve a common core of facts or will be based on related legal theories . . . .  Thus, the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised."  *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)).

All of Plaintiffs' claims were related under this test.  They all involved a common core of facts, namely, Defendants' fraudulent scheme to infiltrate Plaintiffs' conferences and health centers, secretly record Plaintiffs' staff and release a series of short YouTube videos.  Or, as phrased in the Preliminary Jury Instructions, all of Plaintiffs' claims "concern the strategies chosen and employed by the defendants."  ECF No. 850 at 19.

Plaintiffs are also entitled to recover their full fees because of the "excellent results" they obtained in litigation.  *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.") (quoting *Hensley*, 461 U.S. at 435).  Not only did the jury decide "overwhelmingly in plaintiffs favor," thereby vindicating Plaintiffs' rights and helping justify a permanent injunction that prohibits Defendants from engaging in certain unlawful conduct of the kind at issue in the litigation, but Plaintiffs also obtained a significant financial recovery, receiving over $2 million in compensatory and punitive damages.  *See generally* ECF No. 1073.  As such, Plaintiffs are entitled to a fully compensable fee.  *See Sorenson*, 239 F.3d at 1147.[9]

---

[9] It is irrelevant that Plaintiffs did not obtain all of the damages originally sought in the operative Complaint.  For example, in *Bingham v. Zolt*, 66 F.3d 553 (2d. Cir. 1995), the Second Circuit affirmed a multi-million dollar attorneys' fee award even though the RICO plaintiff had only recovered $800,000 (before trebling) after originally seeking more than $10 million in damages.  The court rejected the defendants' challenge to the award "based on plaintiff's limited success at trial," because even though the plaintiff "did not prevail on all of its claims," the plaintiff still "obtained a jury verdict and a judgement against defendants.  It won the case."  *Id.* at 565-66 (citing *Hensley*, 461 U.S. at 435).  Here, too, Plaintiffs obtained a jury verdict, judgment against Defendants, and "won the case."  *Id.*; *see also Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 207 (D. Mass. 2001) ("not[ing] that the obvious policy of the RICO statute is deterrence, which would be best be served by fully compensating private attorneys general, no matter how limited their success").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3. Plaintiffs Are Also Entitled To Recover Fees For Work Done On The Instant Fee Application.

The Ninth Circuit has held that, in statutory fee cases, "time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (quotation marks and citation omitted). "This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." *Id.* As discussed above, Plaintiffs are entitled to recover their attorneys' fees incurred in litigating the merits of this case. Accordingly, they are also entitled to recover for time spent on this fee application.[10]

### 4. Plaintiffs Are Also Entitled To Recover Fees For Work Done By In-House Counsel Of Record.

Plaintiffs are also entitled to recover fees for work done by Plaintiffs' in-house counsel, who actively participated throughout the life of the litigation. *See Wishtoyo Found. v. United Water Conservation Dist.*, No. CV 16-3869-DOC (PLAx), 2019 WL 1109684, at *8 (C.D. Cal. Mar. 5, 2019) (holding that plaintiffs could recover for in-house counsel's billed time when in-house counsel "served as primary co-counsel throughout the instant litigation, actively participating in the life of the case") (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 761 F.2d 553, 558 (9th Cir. 1985)); *see also id.* (noting "the modern trend toward providing reasonable fees based on the market rate when a party is represented by both private counsel and in-house counsel who actively participate in the preparation of the case.") (internal quotations and citations omitted). Here, as discussed in more detail elsewhere, Plaintiffs are seeking recovery of fees for work performed by in-house counsel Maithreyi Ratakonda and Beth Parker.

### 5. Plaintiffs Are Also Entitled To Recover Non-Taxable Costs.

Finally, because Plaintiffs were the successful parties on statutory claims that provide for "reasonable attorney's fees" (*see* Section III(A)(1), *supra*), they are also entitled to recover non-

---

[10] For purposes of these moving papers, Plaintiffs have only included hours incurred on the instant fee application through September 4, 2020. Plaintiffs will submit a supplemental declaration(s) addressing additional fees incurred in connection with this motion after September 4, 2020.

17

1    taxable costs, beyond those costs set forth in 28 U.S.C. § 1920, that would customarily be charged

2    to the client.  *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (district

3    courts have discretion to award non-taxable costs to prevailing parties under statutes that provide

4    for "reasonable attorney's fees"); *see also Jung Ja Kim v. Quichocho*, No. 1:09-CV-00046, 2015

5    WL 13357617, at *3 (D. N. Mar. Is., Mar. 23, 2015) (noting that non-taxable costs, such as

6    "travel, paralegal fees, and electronic legal research" may be awarded to successful civil RICO

7    plaintiff) (citing *Grove*, 606 F.3d at 580-81).

8            Here, Plaintiffs are requesting reimbursement for the following non-statutory costs: a court

9    reporter to transcribe video clips for use at trial ($18,921.60); attorney travel for depositions,

10   hearings, and trial ($85,200.37); deposition costs not included in the Bill of Costs ($49,792); E-

11   discovery costs from Plaintiffs' E-discovery vendor not included in the Bill of Costs

12   ($223,543.56); contract attorney costs for document review and redaction during written discovery

13   ($18,101.25); trial technical services and support from On the Record ($168,632.08); jury

14   consulting services from JuryScope ($54,000); travel costs for Plaintiffs' witnesses for trial and

15   depositions ($28,488.36); hotel costs for out-of-town trial team and witnesses during the trial

16   ($176,609.10); executive protection services for witnesses to, from, and at the courthouse during

17   trial ($37,598.61); and expert witness fees and travel expenses ($174,830.85).  *See* Declaration of

18   Meghan C. Martin in Support of Plaintiffs' Motion for Attorney' Fees and Non-Statutory Costs ¶

19   7.  Each of these costs was charged to Plaintiffs, either directly or passed through by counsel.  *Id.*

20           **B.      The Amount Of Attorneys' Fees Plaintiffs Are Seeking Is Reasonable.**

21           The Court must calculate Plaintiffs' award for attorneys' fees using the "lodestar" method.

22   *Camacho*, 523 F.3d at 978 (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th

23   Cir. 2001)).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party

24   reasonably expended on the litigation by a reasonable hourly rate."  *Id.*  Here, as discussed

25   immediately below, the hourly rates charged by the attorneys are reasonable, the amount of time

26   the attorneys spent was reasonable, and the overall amount of the fees is reasonable.

27

28

1

**1.      The Amount Of Time Spent By The Attorneys Was Reasonable.**

The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved . . . ."  *Hensley*, 461 U.S. at 431 (citation omitted).  When determining whether the stated amount of time spent on the case is reasonable, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Nevertheless, Plaintiffs' fee request comes with additional indicia of reliability, such as the fact that Plaintiffs' fee request is based on an analysis derived from contemporaneous time records kept throughout the litigation. *See* Bomse Decl. ¶¶ 5-7.  The request is also supported by numerous declarations from counsel, with a summary of the fees and work done on each of the various litigation phases discussed above.  *See id.* at Ex. A *and* Plaintiffs' Supporting Declarations; *see also In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 920 (N.D. Cal. 2005) (breaking out hours expended into categories based on litigation tasks was "an especially helpful compromise between reporting hours in the aggregate (which is easy to review, but lacks informative detail) and generating a complete line-by-line billing report (which offers great detail, but tends to obscure the forest for the trees)").[11]

In any event, Defendants can hardly be heard to complain about the number of hours Plaintiffs spent.  From the opening whistle they employed a "scorched-earth" litigation strategy, "aggressively disputing" nearly every factual and legal issue.  *See Instrumentation Lab. Co. v. Binder*, No. 11cv965 DMS (KSC), 2013 WL 12049072, at *4 (S.D. Cal. Sept. 18, 2013), *aff'd*, 603 Fed. App'x 618 (9th Cir. 2015) ("A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quoting *Peak-Las*

---

[11] Although Plaintiffs' analysis is based on an analysis derived from contemporaneous time records, Plaintiffs are not obligated to submit the actual time records to support their request. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (noting that "lack of 'contemporaneous records' is not a basis for denying [plaintiff's] fee request"). However, Plaintiffs are willing to make the time records available to the Court for *in camera* review if requested by the Court.

19

*Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009)).  For example, and as discussed in far greater detail above, to vindicate their rights, Plaintiffs had to: defeat an anti-SLAPP motion (and an interlocutory appeal); respond to hundreds of discovery requests; litigate numerous discovery disputes; oppose Defendants' frivolous motion to recuse Judge Orrick and the petition for writ of mandamus related thereto; participate in over 50 depositions across the nation; both file, and defend against, motions for summary judgment; litigate a multi-week trial; and, finally, respond to numerous post-trial motions.  *See* Section II, *supra*.  Because Defendants were "hyper aggressive adversaries" who "drove up [Plaintiffs'] legal costs," Plaintiffs are entitled to recover for all hours reasonably incurred.  *See BCS Servs., Inc. v. BG Invs., Inc.*, 728 F.3d 633, 642 (7th Cir. 2013) ("How much the plaintiffs would have to spend on the litigation would depend in part on the stubbornness of the defense--and it turned out to be enormously though futilely stubborn. Attorney fee shifting, as under RICO, is intended to facilitate suit by victims of unlawful behavior [citations], and awarding legal fees reasonably incurred *ex ante* even if excessive-seeming *ex post* (which is to say with the wisdom of hindsight) is necessary to achieve that objective. [Citation.] The defendants were hyperaggressive adversaries.  They drove up the plaintiffs' legal costs without justification.").[12]

## 2. The Hourly Rates Charged By Arnold & Porter And RJO Are Reasonable.

"[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'"  *Camacho*, 523 F.3d at 979 (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)).  Here, this Court has previously found hourly rates in the range requested by

---

[12] Likewise, Defendants cannot argue that Plaintiffs overstaffed the case when all Plaintiffs were represented almost entirely by one law firm throughout the many years of litigation.  (And RJO only became involved after Ms. Bomse joined the firm in May 2019.)  In contrast, the various Defendants were represented by no fewer than 10 law firms throughout the litigation and, for example, often had over a dozen attorneys appearing at trial, with multiple attorneys from different firms representing the same Defendant.  *See, e.g.*, TRX 375-77.

1    Plaintiffs to be reasonable in the Northern District of California.[13]  For example, five years ago, in

2    *Wynn v. Chanos*, the Court approved a rate of $1,085/hour for an Arnold & Porter partner with

3    over forty years of experience, $920/hour for an Arnold & Porter partner with over twenty years of

4    experience, $710/hour for an Arnold & Porter associate with six years of experience, and

5    $640/hour for an Arnold & Porter associate with four years of experience.  No. 14-cv-04329-

6    WHO, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015).  They are also comparable with other

7    hourly rates that courts in this district have recently approved.  *See, e.g.*, *Hefler v. Wells Fargo &*

8    *Co.*,  No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018), *aff'd*, 802 Fed.

9    App'x 285 (9th Cir. 2020) (finding hourly rate ranges from $650-$1,250, $400-$650 for

10   associates, and from $245-$350 for paralegals to be reasonable); *In re: Volkswagen "Clean*

11   *Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL

12   1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding reasonable hourly rates of $275-$1600 for

13   partners, $150-$790 for associates, and $80-$490 for paralegals); *Banas v. Volcano Corp.*, 47 F.

14   Supp. 3d 957, 965 (N.D. Cal. 2014) (approving hourly rates ranging from $355-$1,095 for

15   associates and partners and $245-$290 for paralegals).[14]

16        The fact that Plaintiffs' counsel is seeking fees at the same rates charged by the law firms'

17   for their non-pro bono matters supports a finding that the proposed rates are reasonable  *See*

18   *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1167 (N.D. Cal. 2015) ("attorney-

19   client fee arrangement can often provide valuable indication of the prevailing reasonable rate in

20

21

22

23   _____

24   [13] More information about the hourly rates, experience, and qualification for Plaintiffs' various attorneys is detailed in the declarations submitted herewith.  *See generally* Plaintiffs' Supporting Declarations.

25   [14] Similarly, in *Logtale, Ltd. v. IKOR, Inc.*, No. 11-cv-05452-EDL, 2016 WL 7743405, at *1 (N.D. Cal. Oct. 14, 2016), *aff'd*, 738 Fed. App'x 422 (9th Cir. 2018), the court noted that in 2016, the

26   Valeo database provided sample rates of $600-$770 for associates and $760-$1,300 for partners. *See Banas*, 47 F. Supp. 3d at 965 (approving use of Valeo database to determine reasonable rates).

27   Plaintiffs' requested rates are in line with these sample rates, even before factoring in that the sample is four years old.

28

1    the community" and "negotiation and payment of fees by sophisticated clients are solid evidence

2    of their reasonableness in the market") (citations omitted).[15]

3        With regard to fees sought for Plaintiffs' in-house counsel, Plaintiffs are seeking rates of

4    $1,115/hour for Ms. Parker and $910/hour for Ms. Ratakonda.  These rates are comparable to

5    attorneys in private practice with similar years of experience (37 years and 9 years, respectively).

6    *See Wishtoyo*, 2019 WL 1109684, at *9 (awarding a similar hourly rate to an in-house counsel as

7    attorneys with comparable experience); Mayer Decl. ¶¶ 10-11.

8        Additionally, even though this litigation has spanned several years, Plaintiffs are entitled to

9    recover fees at their counsel's current billing rates as a means to compensate them for the delay in

10   payment.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)

11   ("Full compensation requires charging current rates for all work done during the litigation . . . .").

12                    **3.        The Overall Amount Of The Attorneys' Fees Is Reasonable.**

13       As detailed above, Plaintiffs are requesting reimbursement for a reasonable number of

14   hours at a reasonably hourly rate.  Indeed, in reality, Plaintiffs incurred significantly greater legal

15   fees than those for which they are seeking reimbursement.  For example, as noted in the

16   accompanying declarations, Plaintiffs are not seeking fees for time spent by any attorney or staff

17   member other than the core team of 12 time-keepers (plus the two in-house counsel).  Plaintiffs

18   are also not seeking fees for work done by PPFA's in-house counsel, Roger Evans and Helene

19   Krasnoff.  Plaintiffs have also voluntarily taken an overall haircut of 25% off the top of their total

20   fees to account for potential duplication of efforts by different attorneys.  Similarly, each

21   individual attorney has gone through his or her time records to exercise individual billing

22   judgment.  In total, these uses of billing judgment reduced Plaintiffs' requested fee award by

23   approximately $4.6 million.  *See Hensley*, 461 U.S. at 434 (recognizing that a law firm's use of

24   _____

25   [15] Of course, it is irrelevant to the reasonable hourly rate analysis that Arnold & Porter and RJO
26   represented Plaintiffs on a pro bono basis.  *See Voice v. Stormans Inc.*, 757 F.3d 1015, 1017 (9th
     Cir. 2014) ("Attorneys' fees are recoverable by pro bono attorneys to the same extent that they are
27   recoverable by attorneys who charge for their services.") (citing *Blanchard v. Bergeron*, 489 U.S.
     87, 94 (1989) ("[W]here there are lawyers or organizations that will take a plaintiff's case without
28   compensation, that fact does not bar the award of a reasonable fee.").

PLAINTIFFS' NOTICE OF MOTION & MOTION; MPA ISO REQUEST FOR ATTORNEYS' FEES

"billing judgment" is an important consideration in fee setting).  Additionally, Plaintiffs are not requesting any enhancement to the lodestar calculation, although the factors supporting an enhancement are clearly met.  *See Camacho*, 523 F.3d at 982 n.1 (factors for a lodestar enhancement "include, for example, the preclusion of other employment by the attorney due to acceptance of the case; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the 'undesirability' of the case; the nature and length of the professional relationship with the client; and awards in similar cases") (citation omitted).

This voluntary reduction and exercise of billing judgment is more than enough to cover any concerns the Court may have about whether Plaintiffs are requesting payment for a reasonable number of hours.  *See Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404-BLF, 2018 WL 3632171, at *4 (N.D. Cal. July 31, 2018) ("The voluntary reduction and conservative time reported by [plaintiff's] counsel adequately address any concern the Court might have regarding hours expended prosecuting the case.")

## IV.    CONCLUSION.

For the foregoing reasons, the Court should award Plaintiffs $14,730,435.31 in fees and non-statutory costs reasonably incurred to vindicate their rights.


Dated:  September 18, 2020                    ARNOLD & PORTER KAYE SCHOLER LLP


                                              By: /s/ *Steven L. Mayer*
                                                  STEVEN L. MAYER
                                                  *Attorneys for Plaintiffs*

US 168065851