STEVEN L. MAYER (No. 62030)
SHARON D. MAYO (No. 150469)
JEREMY T. KAMRAS (No. 237377)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone:   (415) 471-3100
Facsimile:   (415) 471-3400
Email: steven.mayer@arnoldporter.com
       sharon.mayo@arnoldporter.com
       jeremy.kamras@arnoldporter.com

DIANA STERK (admitted pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone:   (212) 836-8000
Email: diana.sterk@arnoldporter.com

RHONDA R. TROTTER (No. 169241)
OSCAR D. RAMALLO (No. 241487)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:   (213) 243-4000
Email: rhonda.trotter@arnoldporter.com
       oscar.ramallo@arnoldporter.com

BETH H. PARKER (No. 104773)
PARKER LAW & MEDIATION
553 Douglass Street
San Francisco, CA 94114
Telephone:   (415) 531-1791
Email: bparker@pppsgv.org

HELENE T. KRASNOFF
(admitted pro hac vice)
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005-6300
Telephone:   (202) 973-4800
Email: helene.krasnoff@ppfa.org

AMY L. BOMSE (No. 218669)
ROGERS JOSEPH O'DONNELL
311 California St., 10th Floor
San Francisco, California 94104
Telephone:   (415) 956-2828
Email: ABomse@rjo.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al.,<br><br>             Plaintiff,<br><br>      vs.<br><br>CENTER FOR MEDICAL PROGRESS, et al.,<br><br>             Defendants. | Case No. 3:16-cv-00236-WHO<br><br>**DECLARATION OF STEVEN L. MAYER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-STATUTORY COSTS**<br><br>Date:    November 18, 2020<br>Time:   2:00 p.m.<br>Place:   Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick |

I, Steven L. Mayer, declare:

1. I have been an active member of the State Bar of California since 1974. I am, and have been since January 1, 2014, a Senior Counsel at Arnold & Porter Kaye Scholer LLP ("A&P"). I joined A&P as a partner in January 1, 2012, when the firm merged with Howard Rice Nemerovski Canady Falk & Rabkin P.C ("Howard Rice").

2. If called as a witness, I could and would competently testify from my personal knowledge to the facts stated herein.

3. I attended law school at Yale Law School and Boalt Hall. While in law school, I became a member of the Order of the Coif. After graduating from the latter in 1974, I served as a staff attorney for the United States Court of Appeals for the Ninth Circuit during 1974-75, and became an Assistant Supervising Staff Attorney in 1975. I held that position until November, 1975, when I joined Howard Rice as an associate. I became a director of Howard Rice in 1980.

4. I have specialized in appellate practice for almost forty-five years. I am a Specialist in Appellate Law certified by the State Bar of California Board of Legal Specialization. I was the President of the California Academy of Appellate Lawyers in 2014-15, and am a member of the American Academy of Appellate Lawyers and the American Law Institute. I have been admitted to practice in all of the federal district courts in California, as well as the Ninth Circuit and the United States Supreme Court.

5. During almost five decades of practice, I have litigated numerous attorney's fees claims, for both plaintiffs and defendants. I defended against fee claims in Minnick v. California Department of Corrections, 452 U.S. 105 (1981); Laurel Heights Improvement Association v. Regents of the University of California, 47 Cal. 3d 376 (1988); Weeks v. Baker & McKenzie, 63 Cal. App. 4th **1128** (1998); and Mount Sutro Defense Committee v. Regents of the University of California, 77 Cal. App. 3d 20 (1978). I have settled attorney's fees claims on behalf of plaintiffs in several other cases, including Gardiner v. City of Berkeley (Alameda County Superior Court, No. 562826-7), Whistler v. Stonestown Corp. (San Francisco Superior Court, No. 884129), and Sims v. Dept. of Corrections and Rehabilitation, 215 Cal.App.4th 1059 (2013). The last case resulted in a settlement of the plaintiff's attorney's fee claim for $775,000.

6. I have also been involved in numerous attorney's fees cases as an expert. A declaration I gave concerning the effect of contingency risk on hourly rates under then-existing federal law was cited with approval by the Ninth Circuit in <u>Fadhl v. City and County of San Francisco,</u> 859 F.2d 649, 650-51 (9th Cir. 1988).  A similar declaration I gave in <u>Gates v. Deukmejian,</u> Civ. No. S-87-1636 LKK, Eastern District of California, was cited by Judge Karlton in his Order awarding fees to plaintiffs in that case. Another declaration concerning hourly rates was cited by the District Court in <u>White v. City of Richmond,</u> 559 F. Supp. 129, 132 (N.D. Cal. 1982), <u>affd,</u> 712 F.2d 458 (9th Cir. 1983). I was also deposed as an expert on attorney's fees issues in two matters: <u>White v. City of Richmond,</u> 559 F. Supp. 129 (N.D. Cal. 1982), <u>affd,</u> 712 F.2d 458 (9th Cir. 1983), and <u>USA v. City and County of San Francisco,</u> Nos. C 84-7089 MHP and C 84-1100 MHP, Northern District of California.

**7.** For a list of additional matters in which I served as counsel, please refer to my biography from A&P's website, which I have attached here as **Exhibit A.**

**8.** It is my habit to write down time on a daily basis and enter it into the firm's billing system.  All the statements in this declaration about how much time I spent on various aspects of this case are based on my review of time summaries prepared by A&P's accounting department, which reflect the hours I entered into the billing system on a daily basis.

**9.** My standard hourly rate in 2017 was $1,090; in 2018, $1,160, in 2019, $1,220, and in 2020, $1,280.

10. I have reviewed the declaration of Mai Ratakonda submitted in connection with this motion.  I have been informed by our administrative staff that an attorney who graduated from law school in 2011 would be billed by A&P at an hourly rate of $910.

11. I have review the declaration of Beth Parker submitted in connection with this motion. This declaration reflects that Ms. Parker was billing at an hourly rate of $790 when she left A&P in 2013.  I have been informed by our administrative staff that a partner who billed at $790 in 2013 would have been billed at $870 in 2015, $915 in 2016, $960 in 2017, $1010 in 2018, $1060 in 2019, and $1115 in 2020.

12. I became heavily involved in the Planned Parenthood case after the Defendants filed

- 2 -
DECLARATION OF STEVEN L. MAYER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
AND NON-STATUTORY COSTS

their opening brief in the Court of Appeals in their appeal from this Court's denial of their anti-SLAPP motion.  (I had spent a few hours on the case prior to that time, for which Plaintiffs are not seeking compensation.) That brief raised two issues: (1) a claim that this Court had erred in refusing to require Plaintiffs to make an evidentiary showing to support their state-law causes of action; and (2) a claim that each of Plaintiffs' state-law causes of action was legally meritless.  The first of these issues raised novel and important questions involving the interplay of federal procedure and California's anti-SLAPP statute.  Because Plaintiffs would have had to shoulder an evidentiary burden had this case been filed in state court, we had to show why this state procedural requirement did not apply in federal court.  Accordingly, the approximately 30 hours that I spent working on the appellees' brief concerned this issue.  In contrast, I spent almost no time on the issues concerning the merits of Plaintiffs' state-law claims.

13. After we filed our merits brief in the Court of Appeals, Defendants filed a motion to strike one sentence in the brief, coupled with a request for sanctions.  The court deleted the sentence but declined to award sanctions.

14. Between the close of briefing and oral argument, I drafted and/or revised two Rule 28(j) letters discussing new authorities decided after the submission of our merits brief.  Each letter took a few hours of my time.

15. In addition to working on the briefing in this appeal, I spent about eleven hours helping Amy Bomse to prepare for oral argument.  This time was necessary both because of the novel procedural issue the appeal raised and because Ms. Bomse had only done one prior Ninth Circuit argument, in a case that I am told was much less complicated than this one.  This work consisted of conferences with Amy Bomse, as well as two moot courts in which I participated, along with Sean SeLegue, who is another appellate specialist and a partner at A&P. (Plaintiffs are not seeking reimbursement for Mr. SeLegue's time.)  I believe that one moot court occurred with the participation of Plaintiffs' in-house counsel.

16. After the Ninth Circuit heard oral argument, it ordered the parties to file a supplemental brief addressing the court's jurisdiction.  I spent approximately four hours drafting and/or revising the brief Plaintiffs submitted in response to this order.

17. After the Ninth Circuit issued its opinion rejecting all of Defendants' arguments, Defendants filed a petition for rehearing and rehearing en banc. We took this petition seriously because a concurring opinion had argued that the Ninth Circuit should grant en banc review to reconsider a prior decision authorizing interlocutory review of the denial of a motion brought under California's anti-SLAPP statute. In addition, our opposition to the Petition had to rebut several new arguments that Defendants made attempting to show that the panel opinion was inconsistent with Ninth Circuit and Supreme Court precedent. I was principally responsible for drafting Plaintiffs' opposition to the petition, which took about 25 hours of my time. After we filed our opposition, the Ninth Circuit denied the petition without dissent.

18. Defendants then filed a motion to stay the Ninth Circuit's mandate. I was principally responsible for preparing our opposition to the motion, which took about twelve hours of my time. The Ninth Circuit denied the motion.

19. Defendants then filed a petition for writ of certiorari, asking the Supreme Court to review the Ninth Circuit's decision. Plaintiffs filed a waiver with the Supreme Court indicating that we would not file a brief in opposition to the petition unless the Court requested one. However, the Court ordered Plaintiffs to file a brief opposing the petition.

20. I was principally responsible for drafting the brief, with assistance from Amy Bomse and others. I felt the petition was a serious threat, both because the Court had asked for a response and because there was a circuit split on the general issue of whether state-law anti-SLAPP statutes apply in federal court. I therefore devoted substantial time to preparing the brief in opposition, including soliciting help from other lawyers in the firm's Appellate and Supreme Court practice group. In addition, the brief benefited from review by Plaintiffs' in-house counsel. All told, I spent approximately sixty hours preparing the brief in opposition.

21. After eliminating time in the exercise of billing judgment, the total fees incurred for time spent on the interlocutory SLAPP appeal were $393,986 at historic rates and $455,674 at current rates. This is based primarily on 154.8 hours of my time, and 220.7 hours by Amy Bomse.

22. Based on my experience as an appellate lawyer for more than forty years, I believe that the total time spent on the interlocutory appeal was reasonable, given the novelty and

- 4 -

complexity of the procedural issue, the number and complexity of the merits-related issues, and the numerous filings that the appeal required. These included not only the merits brief that is part of every appeal, but a motion to strike, numerous Rule 28(j) letters, a supplemental brief required by the Court, an opposition to a petition for rehearing and rehearing en banc, an opposition to a motion to stay the mandate, and a brief in opposition to a petition for writ of certiorari.

23. While the interlocutory appeal was pending in the Ninth Circuit, I was also involved in defeating Defendants' effort to disqualify the Court. After Defendants failed to achieve disqualification in the District Court, they filed a petition for writ of mandamus in the Ninth Circuit. That court required the Plaintiffs to file a response. I was principally responsible for drafting the response in the Ninth Circuit, with input from Amy Bomse, several associates, and Plaintiffs' in-house counsel. After we filed our response, the petition for writ of mandamus was summarily denied. I spent approximately 33.2 hours drafting the opposition to the petition for mandamus, which I believe reasonably reflected the importance of the issue at stake.

24. My next involvement in this case occurred at the summary judgment stage. Because of schedule conflicts, I did not play any role in drafting the Plaintiffs' motion for summary judgment. However, I was principally responsible for drafting our opposition to the Defendants' motion for summary judgment and the reply memorandum in support of Plaintiffs' motion. These were massive undertakings, done in a fairly compressed time schedule. The Defendants' motion for summary judgment attacked every one of Plaintiffs' fifteen causes of action, seeking summary judgment on behalf of every Defendant. In addition, the individual Defendants other than Daleiden raised numerous issues unique to them as to most of Plaintiffs' claims. Moreover, the Defendants also made arguments differentiating between the individual Plaintiffs. The end result of all this effort was an 89-page memorandum in opposition to Defendants' motion for summary judgment and a 56-page reply memorandum.

25. I prepared both of these memoranda as follows. Following receipt of the memorandum to which we were responding, we had a team meeting to allocate drafting responsibility. Most members of the team who were not totally tied up in discovery in this case, or in working on other matters, took one or more issues. I also took some issues. Each drafter then

sent me a draft, which I edited and sent back with comments, for the drafter to do another draft. Then, when I was satisfied with most or all of the drafts, I melded them into a single memorandum, taking care to avoid duplication and inconsistency. All the drafts were also reviewed by Plaintiffs' in-house counsel, who provided additional comments and edits. All told, I spent approximately 253 hours between May 24 and July 16, 2019, drafting and editing the two summary judgment memoranda that I worked on and helping my colleagues prepare for oral argument.

26. Because I am primarily an appellate lawyer, I had no experience compiling the evidence we needed to support these summary judgment memoranda. That task was handled entirely by Meghan Martin, with no assistance from me. She was responsible for ensuring that all the evidence cited in our summary judgment memoranda was authenticated and placed before the Court in accordance with the relevant procedural and evidentiary rules. This was a massive undertaking, since our summary judgment memoranda were replete with references to the lengthy record in this case.

27. Although I authored two of the three summary judgment memoranda, I did not do any of the oral argument on the motions. However, I did participate in several strategy sessions concerning the argument. Plaintiffs are not seeking to recover for the time I spent attending the argument.

28. The complexity of the work we did concerning the cross-motions for summary judgment is reflected in the Court's opinion addressing the motions, which is 137 pages in length, and resolved several critical issues on Plaintiffs' favor.

29. Between the end of summary judgment briefing, and the start of the trial, most of my work on the case concerned the pretrial statement and the proposed jury instructions. The latter were quite complex, as they needed to address each of the elements of Plaintiffs' causes of action, as well as each of Defendants' affirmative defenses, and the requirements for proving compensatory and punitive damages. In addition to drafting Plaintiffs' proposed jury instructions, I drafted Plaintiffs' responses to Defendants' proposed jury instructions, which were at least equally lengthy, and raised numerous issues that Plaintiffs regarded as irrelevant. Then, the Plaintiffs had to undertake the burden of putting all the instructions and objections together in a single document,

which totaled more than 700 pages.

30. I did much of the work on the jury instructions myself, with particular help from Oscar Ramallo. I reviewed everything he did, and often made edits and comments.

31. During the trial, I continued to work on the jury instructions, and did much of the oral argument at the several court sessions devoted to the instructions. As to the portions of the argument that Oscar Ramallo did, I helped him frame the arguments, and decided which issues would be addressed by whom.

32. With one exception, I attended trial every day, and participated in the afternoon strategy sessions. Plaintiffs are not seeking to recover for the time I spent attending the trial or waiting for the verdict.

33. After the verdict, I was principally responsible for drafting and/or editing the opening memorandum Plaintiffs filed in support of their motion for injunctive relief. I did not work on the reply memorandum in support of Plaintiffs' claim for injunctive relief due to a family medical situation that required all of my time.

34. I was principally responsible for drafting Plaintiffs' opposition to Defendants' post-trial motions. I followed the same procedure as the summary judgment memoranda: assigning responsibility for various drafts to individual attorneys and the editing the various sections and melding them into a coherent whole. I spent approximately 71.5 hours drafting and editing the seventy-page opposition memorandum.

35. Because of my experience in working on fee motions described above, I have played a leading role in organizing the preparation of Plaintiffs' motion for attorney's fees. This has involved reviewing and editing all of the written declarations submitted in support of the motion, as well as the supporting memorandum. In addition, I have been responsible for organizing our effort, making sure that all the tasks necessary to prepare and file the motion were performed in a timely manner.

36. All expenses paid by Plaintiffs and/or Arnold & Porter in litigating this matter would be reimbursed in full from any award of costs or attorneys' fees. After such reimbursement, any remaining award of attorneys' fees attributable to work performed by Arnold & Porter attorneys

would be contributed to the Arnold & Porter Foundation, a tax-exempt private foundation that provides scholarships to minority law students, funds fellowships for recent law school graduates at tax-exempt organizations, and awards grants to other charitable and educational organizations.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 16th day of September, 2020, in Berkeley, California.

_____
Steven Mayer

# EXHIBIT A

# Arnold & Porter



## Steven L. Mayer

Senior Counsel

San Francisco
*Tel* +1 415.471.3163

steven.mayer@arnoldporter.com

## Credentials

### Education

JD, University of California, Berkeley, School of Law, 1974, Order of the Coif

Yale Law School, 1972

BA, Oberlin College, 1970, *summa cum laude*, *with highest honors*

### Admissions

California

### Activities

Member, The American Law Institute

President, California Academy of Appellate Lawyers (CAAL) (2014-2015)

Steven Mayer focuses his practice on constitutional litigation and representing public entities. He is a Certified Specialist in Appellate Law certified by the State Bar of California Board of Legal Specialization.

Mr. Mayer has lectured to the Bar Association of San Francisco on new developments in appellate practice and is a past Chairman of the BASF Appellate Practice Section. He is a past President of the California Academy of Appellate Lawyers in 2014-15 and has been a member of the American Academy of Appellate Lawyers since 2009.

In 1974, Mr. Mayer served as Staff Attorney at the United States Court of Appeals for the Ninth Circuit. In 1975, he became the Assistant Supervising Staff Attorney, a position he held until he joined Howard Rice in November, 1975. He became a partner at Howard Rice in 1980, and practiced at that firm until it combined with Arnold & Porter in 2012.  He then practiced as a partner at Arnold & Porter until 2014, when he became a Senior Counsel.

Mr. Mayer is currently listed in *The Best Lawyers in America* in the field of Appellate Law. He has been recognized as a Northern California Super Lawyer from 2004 through 2017.

## Experience

- *Weatherford v. City of San Rafael, 2 Cal. 5th 1241 (2017)* (filed amici brief and presented oral argument on behalf of the American Civil Liberties Union of Northern California and the AARP, among others, successfully

Member, American Academy of Appellate Lawyers (2009-Present)

Member, Legal Committee, ACLU of Northern California

Member, Committee on Appellate Courts, State Bar of California (1996-1997)

*arguing for a less stringent interpretation of California's taxpayer standing statute).*

- *City of Los Angeles v. County of Kern*, 59 Cal. 4th 618 (2014) (obtained unanimous decision upholding minority interpretation of federal statute governing the refilling in state court of claims dismissed without prejudice by federal court)

- *Wynn v. Chanos*, 685 F. App'x 578 (2017) (successfully defended trial court order dismissing libel suit brought by Stephen Wynn and his company)

- *Advertise.com, Inc. v. AOL Advertising, Inc.,* 616 F.3d 974 (9th Cir. 2010) (reversed preliminary injunction enjoining use of trademark on ground that mark was generic and therefore unprotected)

- *City of Los Angeles v. County of Kern*, 581 F.3d 841 (9th Cir. 2009) (in-state plaintiffs had no prudential standing to challenge county ordinance under Commerce Clause)

- *Berry v. County of Sonoma*, 30 F.3d 1174 (9th Cir. 1994) (County did not violate FLSA in refusing to pay overtime to on-call employees)

- *Hernandez v. City of Hanford*, 41 Cal. 4th 279 (2007) (successful defense of municipal zoning ordinance against Equal Protection challenge)

- *County of Riverside v. Superior Court*, 30 Cal. 4th 278 (2003) (successfully challenged binding arbitration statute in California Supreme Court)

- *Hill v. NCAA*, 7 Cal. 4th 1 (1994) (challenged drug testing program on behalf of Stanford University in California Supreme Court)

- *Hansen v. City of San Buenaventura,* 42 Cal. 3d 1172 (1986) (successfully defended a municipality's right to profit from utility sales to non-residents)

- *ITT World Communications v. City and County of San Francisco*, 37 Cal. 3d 859 (1985) (successfully contended that Proposition 13 does not apply to public utility property)

- *Hitz v. Hoekstra*, No. E062777, 2017 WL 1366066 (Cal. Ct. App. 4th Dist., Div. 2, Apr. 13, 2017) (successfully defended trial court order modifying trust instrument to permit Deep Springs College to become coeducational notwithstanding the provision in the trust instrument describing trust purpose as the education of "promising young men").

- *Campaign for Quality Education v. State*, 246 Cal. App. 4th 896 (2016) (unsuccessful attempt to enforce provisions of California Constitution requiring the state to provide a constitutionally adequate education) (three Justices of the California Supreme Court voted to grant review)

- *Chevron USA v. County of Kern,* 230 Cal. App. 4th 1315 (2014) (obtained reversal of decision invalidating county's method of assessing new oil wells)

- *Sims v. California Department of Corrections and Rehabilitation*, 216 Cal. App. 4th 1059 (2013) (successfully invalidated regulations adopted to implement capital punishment, established standards for determining what constitutes compliance with rule-making requirements of state Administrative Procedures Act, and obtained holding that Act requires judicial review for fiscal impact and clarity)

- *Totten v. Board of Supervisors*, 139 Cal. App. 4th 826 (2006) (successfully contended that initiative setting county budgetary priorities was unconstitutional)

- *Maples v. Kern County Assessment Appeals Board*, 103 Cal. App. 4th 172 (2002) (successfully challenged multimillion dollar reduction in value of oil field)

- *Howard Jarvis Taxpayer Association v. City of Riverside*, 73 Cal. App. 4th 679 (1999) (successfully defeated challenge under Proposition 218 to municipal street light assessment)

- *Schabarum v. California Legislature*, 60 Cal. App. 4th 1205 (1998) (successfully represented Legislative Counsel in litigation challenging legality of its appropriations)

- *Kern County Farm Bureau v. County of Kern*, 19 Cal. App. 4th 1416 (1993) (successfully defended assessment against challenge based on Proposition 13)

- *City of Westminster v. County of Orange*, 204 Cal. App. 3d 623 (1988) (successfully challenged initiative provision requiring referenda on tax increases)

- *Rhee v. El Camino Hospital District*, 201 Cal. App. 3d 477 (1988) (successfully defended hospital in challenge to denial of surgical privileges)

- *Kahn v. Superior Court*, 188 Cal. App. 3d 752 (1987) (established privilege for confidential academic peer review communications)

- *San Bernardino Community Hospital v. Meeks*, 185 Cal. App. 3d 457 (1986) (successfully defended client and attorney against motion for $4 million in sanctions)

## Recognition

- Appellate Practice (2011-2021)
  Bet-the-Company Litigation (2021)
  "San Francisco Lawyer of the Year" – Appellate Practice (2012, 2018)

- (2004-2020)

- Litigation: Appellate (California) (2014-2020)
- Member of one of the Top Appellate Practices in California (2012)
- "Top 25 Municipal Lawyers" in California (2011)

© Arnold & Porter Kaye Scholer LLP 2020                                          arnoldporter.com
All Rights Reserved.