Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
FREEDOM OF CONSCIENCE DEFENSE FUND
P.O. Box 9520
Rancho Santa Fe, CA 92067
Tel: (858) 759-9948
cslimandri@limandri.com

*Attorneys for Defendants CMP, BioMax,
Daleiden & Lopez*

Harmeet K. Dhillon (CA Bar No. 207873)
Mark P. Meuser (CA Bar No. 231335)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Tel: (415) 433-1700
415-520-6593 (fax)
harmeet@dhillonlaw.com

Michael Alan Yoder, *pro hac vice*
DHILLON LAW GROUP INC.
425 Massachusetts Avenue NW, # 515
Washington, DC 20001
Tel: (202) 595-4504
myoder@dhillonlaw.com

*Attorneys for Defendants CMP, BioMax,
& David Daleiden*

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmorsociety.org

Matthew F. Heffron, *pro hac vice*
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
501 Scoular Building
Omaha, NE 68114
Tel: (312) 782-1680
mheffron@thomasmoresociety.org

Adam Hochschild, *pro hac vice*
THOMAS MORE SOCIETY
P.O. Box 401
Plainfield, VT 05667
Tel: 314-503-0326
adam@hochschildlaw.com

*Attorneys for Defendant David Daleiden*

*[Counsel for Defendants Rhomberg, Newman,
& Merritt and listed on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al.,<br><br>Plaintiff,<br><br>vs.<br><br>THE CENTER FOR MEDICAL PROGRESS, et al.,<br><br>Defendants. | Case No. 3:16-CV-00236-WHO<br><br>Hon. William H. Orrick III<br><br>**Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Costs**<br><br>Date: November 18, 2020<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

LEGAL STANDARD .............................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.      Plaintiffs' Proposed Rates Are Inflated ........................................................................ 2

II.     Plaintiffs' Fee Request Is Grossly Disproportionate To Their Degree Of Success ........... 5

       A.      Plaintiffs' Disproportionate Fee Bill Cannot be Justified by Purported
               "Scorched Earth" Tactics From The Defendants ................................................... 5

       B.      The Narrow Injunction Granted Was Based Primarily on Claims That Do
               Not Provide for Fee-Shifting ................................................................................ 9

       C.      Plaintiffs' Success On Their Compensable Damages Claims Was
               Negligible .......................................................................................................... 10

       D.      Plaintiffs' Fee Request Is Disproportionate to Their Overall Recovery. .............. 12

III.    The Fees Sought For In-House Counsel Are Unreasonable ........................................... 13

IV.    Plaintiffs Cannot Prove Reasonable Fees Without Producing Timesheets ...................... 16

       A.      A "massive" fee request such as Plaintiffs' must be supported by
               timesheets produced to the opposing parties. ...................................................... 16

       B.      Timesheets are needed to assess Plaintiffs' "billing judgment." .......................... 18

       C.      Plaintiffs' counsel's summary attestations regarding their hours are
               facially inconsistent and unreliable. .................................................................... 19

       D.      Insufficient basis to show any "tasks." ............................................................... 19

V.     Plaintiffs' Request For Non-Taxable Costs Lacks Necessary Evidence And
      Documentation .......................................................................................................... 20

VI.    Fee Expert André Jardini Further Attests To The Unreasonableness Of
      Plaintiffs' Fee Request ............................................................................................... 23

CONCLUSION ...................................................................................................................... 23

# TABLE OF AUTHORITIES

*Cases:*

*Aguilar v. Zep Inc.*, ........................................................................................................... 4
    No. 13–cv–00563–WHO, 2014 WL 4063144 (N.D. Cal. Aug. 15, 2014)

*Banas v. Volcano Corp.*, .................................................................................................. 4, 20
    47 F. Supp. 3d 957 (N.D. Cal. 2014)

*Barjon v. Dalton*, ............................................................................................................... 2
    132 F.3d 496 (9th Cir. 1997)

*Bingham v. Zolt*, ............................................................................................................... 13
    823 F. Supp. 1126 (S.D. N.Y. 1993)

*Bingham v. Zolt*, ............................................................................................................... 13
    66 F.3d. 553 (2d Cir. 1995)

*BladeRoom Group Limited v. Emerson Electric Co.*, ................................................... 13, 14
    No. 5:15-cv-01370-EJD, 2020 WL 1677328 (N.D. Cal. Apr. 6, 2020)

*Blue Growth Holdings Ltd. v. Mainstreet LimitedVentures, LLC*, ...................................... 2
    No. CV 13–1452 CRB, 2014 WL 3518885 (N.D. Cal., Jul. 16, 2014)

*Cabrales v. County of Los Angeles*, .................................................................................... 2
    935 F.2d 1050 (9th Cir. 1991)

*Cairns v. Franklin Mint Co.*, .............................................................................................. 2
    292 F.3d 1139 (9th Cir. 2002)

*City of Riverside v. Rivera*, ............................................................................................... 18
    477 U.S. 561 (1986)

*Columbus Life Ins. Co. v. Hill*, ......................................................................................... 16
    No. 2:09-CV-0947 FCD DAD, 2010 WL 3717285 (E.D. Cal. Sept. 16, 2010)

*Davis v. City of San Francisco*, ........................................................................................... 2
    976 F.2d 1536 (9th Cir. 1992)

*Dyer v. Wells Fargo Bank, N.A.*, .................................................................................... 21, 22
    303 F.R.D. 326 (N.D. Cal. 2014)

*El Dorado Irrigation Dist. v. Traylor Bros., Inc.*, ............................................................. 14
    No. 03-949 LKK, 2007 WL 512428 (E.D. Cal. Feb. 9, 2007)

*Farrar v. Hobby*, .............................................................................................................. 12
    506 U.S. 103 (1992)

# TABLE OF AUTHORITIES—Continued

*Cases:*

*Fischer v. SJB-P.D. Inc.,* ............................................................................................ 17
    214 F.3d 1115 (9th Cir. 2000)

*Gates v. Deukmejian,* ................................................................................................... 18
    987 F.2d 1392 (9th Cir. 1992)

*Gonzalez v. City of Maywood,* ..................................................................................... 17
    729 F.3d 1196 (9th Cir. 2013)

*Gracie v. Gracie,* ........................................................................................................... 2
    217 F.3d 1060 (9th Cir. 2000)

*Haifeng Xie v. Sakura Kai I Inc.,* ................................................................................ 19
    No. 17CV7509(ILG)(JO), 2020 WL 2569406 (E.D.N.Y. May 20, 2020)

*Harris v. Sullivan,* ......................................................................................................... 3
    968 F.2d 263 (2nd Cir. 1992)

*Hensley v. Eckerhart,* ............................................................................ 1, 2, 12, 18, 19
    461 U.S. 424 (1983)

*In re HPL Techs., Inc. Sec. Litig.,* .............................................................................. 17
    366 F. Supp. 2d 912 (N.D. Cal. 2005)

*Intel Corp. v. Terabyte Int'l, Inc.,* ............................................................................... 16
    6 F.3d 614 (9th Cir. 1993)

*Jankey v. Poop Deck,* ..................................................................................................... 2
    537 F.3d 1122 (9th Cir. 2008)

*Jones v. Espy,* ................................................................................................................. 3
    10 F.3d 690 (9th Cir. 1993)

*Kowalski v. Farella, Braun & Martel, LLP,* ............................................................... 21
    No. C-06-3341 MMC, 2009 WL 2761321 (N.D. Cal. Aug. 27, 2009)

*Lobatz v. U.S. West Cellular of Cal., Inc.,* .................................................................. 17
    222 F.3d 1142 (9th Cir. 2000)

*McGinnis v. Kentucky Fried Chicken,* ............................................................... 2, 12, 13
    51 F.3d 805 (9th Cir. 1994)

*McIlveen v. Stone Container Corp.,* ............................................................................. 22
    910 F.2d 1581 (7th Cir. 1990)

iii

Defs.' Opp. to Plts.' Mtn. for Attorneys' Fees & Non-Taxable Costs
3:16-CV-00236-WHO

# TABLE OF AUTHORITIES—Continued

*Cases:*

*Missouri v. Jenkins*, ...........................................................................................................20
    491 U.S. 274 (1989)

*Navarro v. Gen. Nutrition Corp.*, .....................................................................................18
    No. C 03-0603 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005)

*Nemeck & Cole v. Horn*, ................................................................................................2, 3
    208 Cal. App. 4th 641 (2012)

*Pierce v. County of Orange*, ...............................................................................................2
    905 F. Supp. 2d 1017 (C.D. Cal. 2012)

*PLCM Group, Inc. v. Drexler*, ...........................................................................................3
    22 Cal. 4th 10847 (2000)

*POM Wonderful, LLC v. Purely Juice, Inc.*, ...............................................................13, 17
    No. CV 07-2633 CAS(JWJX), 2008 WL 4351842 (C.D. Cal. Sept. 22, 2008)

*Richmond v. Southwire Co.*, ...............................................................................................2
    980 F.2d 518 (8th Cir. 1992)

*Rosenfeld v. U.S. Dep't of Justice*, ..................................................................................18
    904 F. Supp. 2d 988 (N.D. Cal. 2012)

*Stonebreaker v. Guardian Life Ins. Co. of Am.*, ..............................................................17
    No. 11CV797 WQH (WVG), 2012 WL 12868386 (S.D. Cal. Dec. 6, 2012)

*Terry v. City of San Diego*, ...............................................................................................17
    583 F. App'x 786 (9th Cir.2014)

*Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, ..........20, 21
    460 F.3d 1253 (9th Cir. 2006)

*United States v. Eyraud*, ..................................................................................................17
    809 F.3d 462 (9th Cir. 2015)

*Vargas v. Berkeley Unified School District*, ......................................................................4
    No. 16-cv-06634-WHO, 2017 WL 5991857 (N.D. Cal. Dec. 4, 2017)

*Vogel v. Harbor Plaza Ctr., LLC*, ....................................................................................18
    893 F.3d 1152 (9th Cir. 2018)

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, ..................................................................18
    99 F.3d 761 (5th Cir. 1996)

iv

Defs.' Opp. to Plts.' Mtn. for Attorneys' Fees & Non-Taxable Costs
3:16-CV-00236-WHO

# TABLE OF AUTHORITIES—Continued

*Cases:*

*Yamada v. Nobel Biocare Holding AG,* .................................................................... 16, 17
    825 F.3d 536 (9th Cir. 2016)


*Statutes & Rules:*

29 U.S.C. § 1132(g)(2)(D) .......................................................................................... 20

42 U.S.C. § 1988 ......................................................................................................... 20

Cal. Bus. & Prof. C. § 17204 ...................................................................................... 9

Cal. Penal Code § 633.5 .............................................................................................. 11, 20

Cal. Penal Code § 637.2 .............................................................................................. 11

Civ. L.R. 54-5(b)(2) .................................................................................................... 18

Fed. R. Civ. P. 30(b)(6) .............................................................................................. 7

Fed. R. Civ. P. 50(b) ................................................................................................... 12

Fed. R. Evid. 1002 ...................................................................................................... 21, 22

Fed. R. Evid. 1006 ...................................................................................................... 16

## INTRODUCTION

Defendants believe Plaintiffs are not entitled to any fees because Defendants will ultimately be vindicated as to all underlying claims. In the meantime, the Court should still find that Plaintiffs' massive $13,798,840 fee request is unreasonable because it is based on inflated rates, is grossly disproportionate to their degree of success in this litigation, improperly includes $1,074,494.25 of in-house counsel "fees," and is inadequately documented as to the entire amount requested. The requested non-taxable costs of $931,595.31 are also unreasonable and unsupported.

Plaintiffs ask the Court to accept their conclusory assertions that their numbers are reasonable and reflect sound "billing judgment." For such a massive fee request, Plaintiffs must provide their timesheets. In any event, on their face, Plaintiffs' numbers and "billing judgment" are inconsistent and unreliable. For example, some of the attorneys attest to a certain number of hours during certain "phases" but counsel's attested-to "full accounting" of hours chart includes *additional* hours.

Inconsistences aside, Plaintiffs' strategic refusal to provide timesheets makes it impossible to accurately apportion fees incurred between compensable and non-compensable amounts. Plaintiffs are not entitled to fees for claims for which the law provides no basis for an award of fees, or for other non-compensable discrete tasks. But without the timesheets, Defendants and the Court cannot accurately apportion.

The attached expert Declaration of André Jardini, <u>Exhibit A</u>, further demonstrates the unreasonableness of Plaintiffs' requested fees.

Plaintiffs are well aware Defendants can't afford to pay an award anywhere near the $13,798,840 (plus costs) they request. *See* Order Setting Amount of Supersedeas Bond (Dkt. 1093). But Plaintiffs seek to crush Defendants with a massive attorneys' fees award payable to Plaintiffs' pro bono counsel. This massive fee request is unreasonable. The Court should deny it.

## LEGAL STANDARD

In determining a fee award, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The determination that a party was the prevailing party is merely the first step in the process. "That the plaintiff is a 'prevailing party' . . . may say little about

whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* at 436. It is an abuse of discretion for a court to fail to "reduce the attorneys fees award so that it is commensurate with the extent of the plaintiff's success." *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 810 (9th Cir. 1994).

The district court "should exclude hours that are excessive, redundant, or otherwise unnecessary." *Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008). The district court should also disallow hours for work that did not "contribute, directly and substantially," to the attainment of Plaintiffs' litigation goals. *Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992). Compensable work is that which is "directly and intimately related to the successful representation of a client," *id.*, and "contribute[s] to the ultimate victory in the lawsuit." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991).

Plaintiffs are also not entitled to fees for unsuccessful claims or claims for which the law provides no basis for an award of fees. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002). It may be "difficult" to apportion hours among related claims, but even where the claims are all related and the prevailing party prevails as to all of them, the district court has a "duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment." *Id.* (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (emphasis in original).

The district court may reduce an award of non-taxable costs to reflect only partial success, *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1049 (C.D. Cal. 2012), or because the costs of the litigation were disproportionate to the result achieved. *Richmond v. Southwire Co.*, 980 F.2d 518, 520 (8th Cir. 1992).

## ARGUMENT

### I. Plaintiffs' Proposed Rates Are Inflated

In the instant case, the relevant community for determining the prevailing market rates is the Northern District, *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997), and courts in this District employ the National Law Journal Survey ("NLJ Survey") to determine the reasonableness of hourly rates. *Blue Growth Holdings Ltd. v. Mainstreet Limited Ventures, LLC*, No. CV 13–1452 CRB, 2014 WL 3518885, at *3 n.7 (N.D. Cal., Jul. 16, 2014); *see Nemeck & Cole v. Horn*, 208 Cal. App. 4th 641, 651

1    (2012) (citing *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1096-97 (2000)).

2    Plaintiffs have asked this Court to award fees at an average partner[1] billing rate of $1,095 and

3    an average associate[2] billing rate of $771, which *far* exceed the reasonable market rates promulgated

4    by the 2017 NLJ Survey (most recent broad-market report):

| Attorney Rate | Plaintiffs | San Francisco (CPI, Sept. 2020) | Northern District (CPI, Sept. 2020) |
|---|---|---|---|
| Partner | $1,095 | $510 ($538.46) | $468 ($494.11) |
| Associate | $771 | $370 ($390.65) | $392 ($413.87) |

10    *See* Plf.'s Mot. at 1; Bomse Decl. ¶ 12; *See* <u>Exhibit B</u>, 2017 NLJ Survey report; <u>Exhibit C</u>, summary

11    of 2017 Survey for N.D.Cal. firms. Even with applying the Consumer Price Index ("CPI") to account

12    for inflation, the rates plaintiffs requested are nearly 200% higher than the market rates in the

13    Northern District. *Id.*; *see also Jones v. Espy*, 10 F.3d 690, 692–93 (9th Cir. 1993) (citing *Harris v.*

14    *Sullivan*, 968 F.2d 263, 265 (2nd Cir. 1992) (holding the Consumer Price Index properly accounts for

15    inflation)).

16    To the extent Plaintiffs allege their counsel are more highly qualified than the attorneys who

17    work at the firms listed in the NLJ Survey, and therefore, Plaintiffs' counsel are entitled to fees higher

18    than average, such argument, too, must fail. The average hourly rates for both partners and associates

19    at Morrison & Foerster, Cooley LLP, and Orrick Herrington Sutcliffe LPP—three of the highest-

20    ranked law firms in Northern California[3]—bill hundreds of dollars *less* per hour than the rates at

21    which Plaintiffs' counsel seek to recover fees, even after accounting for inflation under the CPI. The

22    2014 NLJ Survey (the most recent report including all three of these specific firms; see <u>Exhibit D</u>)

---

[1] "Partner" is intended to mean Partners, former Partners, and Senior Counsel, Jeremy T. Kamras, Steven Mayer, Sharon Mayo, and Beth Parker.

[2] "Associate" is intended to mean Associates and Staff Attorneys, Matthew Diton, Arielle Feldshon, Oscar Ramallo, Diana Sterk, and Meghan Martin.

[3] *Best Law Firms in Northern California*, VAULT (2021), available at: https://www.vault.com/best-companies-to-work-for/law/best-law-firms-in-each-us-region/northern-california.

revealed the above-mentioned law firms billed as follows:

| Higher-Ranked Law Firms | Partner Rate (CPI, Sept. 2020) | Associate Rate (CPI, Sept. 2020) |
|---|---|---|
| Morrison & Foerster | $865 ($958.82) | $525 ($581.94) |
| Cooley | $820 ($908.94) | $525 ($581.94) |
| Orrick Herrington | $625 ($692.79) | $310 ($363.62) |
| *Compare to:* Plaintiffs | $1,095 | $771 |

This Court in other cases has reduced attorneys' fee rates to rates far below what Plaintiffs currently seek. In *Aguilar v. Zep Inc.*, for example, this Court held the reasonable rate for a partner with 28.4 years of experience was $550, and the reasonable rate for an associate who had been practicing for 5.9 years was $300. No. 13–cv–00563–WHO, 2014 WL 4063144, at *2 (N.D. Cal. Aug. 15, 2014). In *Vargas v. Berkeley Unified School District*, this Court awarded: (1) a partner with nearly 29 years of experience $625 per hour; (2) a senior associate with almost nine years of experience $425 per hour; and (3) a junior associate $350 per hour. No. 16-cv-06634-WHO, 2017 WL 5991857, at *2 (N.D. Cal. Dec. 4, 2017).

Moreover, while some courts have permitted application of "current" rather than "historical" rates under certain circumstances, here it would be unreasonable to do so. Plaintiffs assert, for example, that Arielle Feldshon's rate increased by 50% over three years, Dkt. 1131-5 at ¶ 4, and that Matthew Diton's rate increased by over 60% in three years. Dkt. 1131-4 at ¶ 3. It would be unreasonable to award Plaintiffs high, rapidly-increased "current" rates across the board.

Finally, this Court has noted that with a firm's "high hourly rates comes an expectation that it will complete tasks efficiently and that its more senior attorneys will limit their involvement to tasks requiring their level of expertise." *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 966 (N.D. Cal. 2014). Just as in the *Banas* case, Plaintiffs' motion "fails to demonstrate whether it did so in this case." *Id.* (reducing fee award by 20% because of block-billing). *See* Section IV.D, *infra*.

///

///

## II. Plaintiffs' Fee Request Is Grossly Disproportionate To Their Degree Of Success

### A. Plaintiffs' Disproportionate Fee Bill Cannot be Justified by Purported "Scorched Earth" Tactics From The Defendants.

Plaintiffs correctly anticipated that Defendants would point out the gross imbalance between the results they obtained and the attorney fees they seek. They attempt to head off the argument by claiming that Defendants engaged in "scorched earth" litigation tactics, Dkt. 1131 at 2:9–15, that drove up the cost of litigation. However, a closer look at the parties' litigation choices belies that contention.

Topping Plaintiffs' list of "scorched earth tactics" are the anti-SLAPP motions filed by the defendants.[4] At the time the motions were brought, Plaintiffs argued, and this Court agreed, that the arguments in the anti-SLAPP motions were "identical to" or "largely copies" of the simultaneously filed motions to dismiss. Dkt. 124 at 51:20–21, 53:8–10. Plaintiffs' oppositions reflected those similarities, so there should have been little extra billable time for Plaintiffs' counsel. More importantly, the motions fell squarely within the purpose of the anti-SLAPP statute. These early motions helped narrow and clarify some issues, *e.g.*, that Plaintiffs could not state a RICO claim under the mail and wire fraud statutes, and that their damages claims would have to be narrowed to costs directly caused by the alleged wrongful acts. Dkt. 124 at 11, 16, 33–34.[5]

As Plaintiffs note, whether Plaintiffs were required to show the factual sufficiency of their claims in responding to Defendants' anti-SLAPP motions was a "novel question" at the time, Dkt. 1131 at 4:7–8, and as this Court's answer in the negative determined the denial of their anti-SLAPP motions, it was hardly surprising that Defendants would appeal that denial.

Plaintiffs' next "scorched earth" example is the claim that they responded to "hundreds of discovery requests." In fact, Plaintiffs refused to respond to scores of discovery requests, objecting

---

[4] Here and elsewhere, Plaintiffs note the length of Defendants' briefs. The First Amended Complaint, brought by 11 entities and setting out 15 claims for relief, was 67 pages long with another 45 pages of attachments.

[5] As discussed in the following section, Plaintiffs' failure to accept these portions of the Court's ruling led to much wasteful expenditure of time and resources for the ensuing three years, until the ruling on the motions for summary judgment.

1   *in toto* to many requests, even those directly related to the nature and amount of their damages claims.

2   The Case Management Conference statements document the history of Plaintiffs' dilatory

3   production of documents, including declaring a unilateral 11-month cessation of document

4   production of non-public documents (except for one small category), from May 2017 to April 2018.

5   It was not until October 2018, over two and half years after this action was filed, that Plaintiffs finally

6   provided a complete account of their claimed damages, after being ordered to do so by Magistrate

7   Judge Ryu. Dkt. 314.

8       In their document production, Plaintiffs indisputably violated the Protective Order's

9   prohibition on "mass, indiscriminate, or routinized designations," Dkt. 117 at 7:3–13, by designating

10  every page of every document that originated from the Plaintiffs as entirely confidential or AEO.[6]

11  Dkt. 252. Indeed, Plaintiffs created a category beyond AEO, redacting relevant information even from

12  AEO documents as being too "sensitive" for defense counsel to see. Dkt. 312 at 4–5. Although both

13  Magistrate Judge Ryu and this Court chose to let Plaintiffs get away with these violations of the

14  Protective Order, it was hardly a "scorched-earth" tactic for Defendants and their counsel not to

15  meekly submit to being relegated to the status of second-class, disfavored litigants, particularly where

16  the unequal treatment undercut counsel's efforts to represent their clients.

17      Plaintiffs *voluntarily* undertook to replace the names of individuals with Doe identifiers in

18  discovery. Dkt. 111 at 3–4. They were neither asked for nor provided evidence that all Planned

19  Parenthood employees were at risk of harassment should their identities be revealed. They simply

20  extended their rationale for concealing the identity of "abortion providers" to include every

21  bookkeeper, facilities manager, and IT tech who ever worked for Planned Parenthood. Plaintiffs then

22  went beyond their requested concession by redacting, without providing a unique Doe identifier, the

---

[6] Attorney time spent drafting a customized Protective Order, meeting and conferring with Defendants on it, briefing the Court on it, appearing and arguing for it, and repeating the process for the purpose of "clarifying" the order after playing games with their Rule 26 disclosures, Dkt. 118, should not be compensated. The Northern District has model protective orders, including for cases involving "highly sensitive confidential information." Plaintiffs' decision to craft an even stricter order to, *inter alia*, conceal the names of individuals whose public profiles are on the Internet, Dkt. 252, was not necessary to the litigation.

1   names of those whom they considered to be low-level employees of no significance to the litigation.

2   Dkt. 252.[7] After Defendants brought this issue to Magistrate Judge Ryu, Plaintiffs were ordered to

3   provide Doe identifiers for all redacted names. Dkt. 278. But Plaintiffs, as a matter of ideology,

4   refused to do a one-minute Internet search to determine whether the staff member regularly

5   publicized his or her connections with Planned Parenthood anyway. Overall, Plaintiffs' insistence on

6   redacting all staff names from documents wasted hundreds of hours of time on both sides, and not

7   just in motion practice, but also in dealing with voluminous motions to seal. Dkt. 1063. No expenses

8   associated with redacting names and assigning Doe identifiers should be shifted to Defendants.[8]

9       Plaintiffs complain that another "time consuming" aspect of the case was reviewing

10  deposition transcripts to ensure that "sensitive information" and staff names were "designated

11  appropriately." Dkt. 1131-1, Bomse Decl., at ¶ 60. In fact, at the time of each deposition of a Planned

12  Parenthood-affiliated individual, Plaintiffs' counsel designated 16 out of 17 transcripts AEO in their

13  entirety. Dkt 591. However, many hours Plaintiffs' counsel later spent unraveling those over-

14  designations and dealing with voluminous motions to seal because of over-designation should not be

15  charged to Defendants.

16      Plaintiffs also include "taking and defending 50 depositions" among the defendants'

17  supposed "scorched earth tactics." Defendants deposed the corporate defendants, and ten other fact

18  witnesses. PPFA designated three individuals, to cover the topics of (1) affiliate security and PPFA

19  damages[9], (2) IT security and damages, and (3) conference security and damages. It was Defendants

---

20  [7] PPFA's "Director of Events & Conferences," Brandon Minow, later one of PPFA's 30(b)(6)

21  witnesses and a witness at trial, was one of the supposedly low-level employees not worth assigning

22  a unique Doe identifier in the documents.

23  [8] Plaintiffs may cite the standard for compensable (vs. non-compensable) tasks as those tasks that
    would ordinarily be billed to the client. However not all work that a client wants done should be paid

24  for by the opposing party. Compensable work is work that is "directly and intimately related to the
    successful representation of a client," *Davis*, 976 F.2d at 1545, and "contribute[s] to the ultimate

25  victory in the lawsuit." *Cabrales*, 935 F.2d at 1052. Plaintiffs' counsel's work on redactions and Doe
    identifiers was not a "necessary step," *id.* at 1053, to anything but confusion and wasted time.

26  Plaintiffs have never offered evidence that any specific redaction was necessary.

27  [9] Because their designated 30(b)(6) witness testified in her deposition that PPFA's non-personal

28  security damages were caused by publication, at trial Plaintiffs used a different witness, Melvin

1   who were forced to take unnecessary depositions on the first two topics, which should not have

2   survived to the deposition stage and were finally buried after Defendants' motions for summary

3   judgment. This Court indicated at a very early stage that the damages from the third-party hacking

4   "appear to be too distant, too far down the causal chain" to be recoverable. Dkt. 134 at 16. But

5   Plaintiffs nevertheless kept the hacking damages in their claims, forcing Defendants to conduct

6   discovery on the topic, take an unnecessary deposition of PPFA's corporate witness on the topic, and

7   retain an expert. Plaintiffs also moved to defer Rhomberg's Motion for Summary Judgment filed in

8   January 2019, in order to ferret out evidence in depositions to support their invalid causation theory.

9   Dkt. 394. Had Rhomberg's motion been heard at that time, many of the other corporate depositions,

10  if taken at all, would have been considerably shorter because it would have already been determined

11  (for the second time) that the plaintiffs could not recover for millions of dollars in security upgrades

12  to their facilities and other publication-related expenditures.

13        Included in the allegedly "scorched earth" 50 depositions are also Plaintiffs' ten fact witness

14  depositions, including depositions of CMP's "video editor, its social media coordinator, and three

15  public relations consultants." Thus, half of the non-party fact witnesses Plaintiffs chose to depose

16  concerned the *publication* of the videos, and not simply Defendants' "methods and tactics" in

17  gathering the recordings. Indeed, up through the summary judgment motions, Plaintiffs' references

18  to "smear videos" intended to "ignite public outrage," Dkt. 661 at 4:15–17, demonstrated that the

19  truth or falsity of the videos, and consequently Plaintiffs' fetal tissue procurement practices,

20  remained highly relevant to the litigation. *See also*, *e.g.*, Dkt. 674 at 6:7–8 ("When Defendants

21  engineered a smear campaign claiming abortion providers engaged in criminal acts for profit, they did

22  it in that context."). Plaintiffs nonetheless complain about Defendants' "scorched earth" tactics of

23  seeking discovery to establish the truth of the videos. Dkt. 1131 at 7:7–8:14.

24        The motions for summary judgment will be discussed in the following section, but as to the

25  Defendants' supposedly "scorched earth" post-trial motions, this Court repeatedly invited the

26  Defendants to take up matters in post-trial briefing and indeed planned on such briefing. *See, e.g.*,

27  _____

Galloway, to contradict the corporation's position. This Court ruled that the corporate designee's

28  testimony was not binding on the corporation. Trial Tr. 1397 at 12–13.

1   Trial Tr. 3813 ("I've made the determination on publication damages. I'm going to be looking again

2   post trial at this, but I'm not inclined to provide further instructions with respect to it"); Trial Tr.

3   3002 ("Lay testimony won't be helpful to the jury. . . . I'm going to be dealing with these issues post-

4   trial"). Also, as Plaintiffs are aware, issues as to the sufficiency of the evidence must be raised in a

5   post-trial motion or they are waived for appeal.

6       In sum, Plaintiffs' attempt to blame its disproportionate fee application on Defendants'

7   allegedly "scorched earth litigation strategy," Dkt. 1131 at 19:19–20, is not supported by the record.

8   If there was any "scorched earth litigation strategy," it was Plaintiffs' own—advancing various

9   ultimately unsuccessful claims and damages theories, over-designating documents as confidential,

10  over-redacting documents, etc. Defendants fairly defended themselves against this strategy.

### B. *The Narrow Injunction Granted Was Based Primarily on Claims That Do Not Provide for Fee-Shifting*

13      The injunctive relief ordered by the Court is premised primarily on California's UCL. Dkt.

14  1073. The UCL does not provide for an award of attorney fees to successful plaintiffs. Cal. Bus. &

15  Prof. C. § 17204. Plaintiffs are also not entitled to attorney fees for injunctive relief granted under

16  their state law trespass claims, also cited by the Court in support of the narrow injunctive relief

17  granted.[10]

18      The injunctive relief might in part be premised on the federal and Florida recording statutes.

19  However, this Court rejected all of Plaintiffs' arguments and case law as to why their requested

20  injunctive relief would be appropriate under those statutes, conceding only that this "does not mean

21  that injunctive relief is inappropriate" but that any such relief "must be significantly narrowed." Dkt.

22  1073 at 33:15–17. The provision of the injunction prohibiting "recording, without the consent of all

23  persons being recorded (where all party consent is required under the laws of the state where the

24  recording is intended)," Dkt. 1073 at 47:20–27, is an "obey the law" injunction, which grants no new

25  protections to Plaintiffs. In fact, it is less stringent than the interpretation of the federal recording

---

27  [10] For this reason, also, any fee award must exclude time spent by Plaintiffs (1) exclusively on researching, briefing, or arguing the UCL claim at any stage in the litigation and (2) on researching or briefing the trespass claims in support of their request for injunctive relief.

1  statute applied to Defendants in the damages portion of the case, where they were found liable for

2  illegal recording even in states where the consent of all parties is *not* required. Thus, the portions of

3  injunctive relief related to the only two claims which provide for attorney fees has negligible

4  significance in terms of Plaintiffs' success in the litigation.

5  *C.  Plaintiffs' Success On Their Compensable Damages Claims Was Negligible*

6  At the outset of this litigation, Plaintiffs made their goal clear: "This action is brought to

7  further expose the falsity and illegality of Defendants; methods and *to recover damages for the ongoing*

8  *harms to Planned Parenthood emanating from the video smear campaign*." Dkt. 59 at ¶ 12 (emphasis

9  added).

10  While it is impossible to assess the degree of Plaintiffs' success at using this lawsuit to

11  "further expose" anything (and Plaintiffs do not base their claim of "excellent results" on that

12  ground), they indisputably *failed entirely* on their second goal. As was clear from the pre-existing case

13  law, and as this Court noted in its ruling on the motions to dismiss and strike, and as this Court

14  confirmed in its ruling on the motions for summary judgment, Plaintiffs may not recover for alleged

15  damages arising from the publication of the videos.

16  Plaintiffs stake their claim of achieving "excellent results," Dkt 1131 at 16:12–13, on the

17  results of the jury trial, ignoring the prior three and a half years of litigation in which they abandoned

18  or lost many claims, including their primary goal of collecting damages for "harms . . . emanating

19  from" the CMP videos. These losses are further obscured by this Court's blanket denial of

20  Defendants' motions for summary judgment and summary adjudication (with the exception of

21  granting judgment for Merritt and Lopez on some contract claims), in an order containing

22  conclusions incompatible with the survival of many causes of action. Dkt. 753.

23  Specifically, this Court's order on the Defendants' motions effectively adjudicated in

24  Defendants' favor the RICO claims of PPLA, PPMM, PPNorCal, PPPSW, PPCCC, PPRM, and

25  PPCFC; the fraud claim as to PPRM; the federal recording claim as to PPLA and PPMM; the

26  conspiracy claim as to PPLA and PPMM; the NAF breach of contract claim as to PPPSW, PPMM,

27  PPOSBC, and PPGC/PPCFC; the California recording claims as to PPPSW, PPGC, PPRM,

28  PPOSBC, and PPMM; the Florida recording claim by PPNorCal, PPMM and PPLA; and the

10

1   Maryland recording claims as to PPNorCal, PPPSW, PPMM, and PPOSBC. However, rather than

2   granting summary adjudication against Plaintiffs as appropriate for these many claims, this Court

3   formally denied Defendants' motions (both summary judgment and anti-SLAPP), while leaving it to

4   the parties to sort out what claims were actually left in each Plaintiff's case. Dkt. 799 at 2.[11]

5       Thus, Plaintiffs' claim of "excellent results" is greatly overstated. PPLA and PPMM

6   recovered nothing. The claims of four other Plaintiffs shrank down to recovery of statutory damages

7   for a single recording, under the state and federal recording statutes.[12] Overall, Plaintiffs were

8   awarded less than 3% of the compensable damages they originally sought.

9       Moreover, the $101,488 in personal security damages, amounting to over twenty percent of

10  the compensable damages awarded by the jury, was not the result of Plaintiffs' counsel's efforts, but

11  of this Court's assistance to Plaintiffs by creating a new theory of recovery for personal security

12  damages that Plaintiffs themselves never argued. Plaintiffs *never argued* that costs for personal

13  security measures put in place many months after the recordings were made were a "direct" result

14  of the defendants' actions on the theory that Plaintiffs made those expenditures upon learning the

15  recorded staff were "targeted" for recording.[13] *Compare* Dkt. 753 at 20:4–10, 75:9–12 ("Plaintiffs

16  also, upon learning of the deception, paid for personal security expenses for some of their employees

17  who were targeted by defendants for recording. Those expenses—at least on this record—are tied

18

---

19  [11] The Court's summary judgment ruling also significantly limited Plaintiffs' invasion of privacy

20  claims, denying them with respect to industry conferences. Then, between the summary judgment ruling and trial, Plaintiffs dropped their Tenth, Thirteenth, and Fourteenth claims.

21  [12] Cal. Penal Code § 637.2 does not provide for an award of attorney fees. Thus, all time spent by

22  Plaintiffs related to Defendants' affirmative defense under section 633.5 is not compensable.

23  [13] Plaintiffs retained David Cohen to testify that the CMP videos led to an increase in "targeted harassment" against abortion providers, Dkt 753 at 119:21–120:1, and to support Plaintiffs'

24  "foreseeability = direct causation" theory. Dkt. 674 at 13:9-12; Dkt. 661 at 2–5. Plaintiffs ultimately chose not to attempt to prove any increase in threats or violence after the release of the CMP videos,

25  Trial Tr. 2558:22–2559:6, and their "foreseeability" theory was rejected by this Court. Dkt. 753 at 126:7–10. Nonetheless, this Court repurposed Dr. Cohen's admittedly prejudicial testimony to

26  address the "reasonableness" of the costs incurred by Plaintiffs according to its own "targeting" theory, a use never proposed by Plaintiffs themselves. *Compare* Dkt. 753 at 21 n.17; *with* Dkt. 674 at

27  13:6–12.

28

---

1    *directly* to defendants' conduct and plaintiffs' reactions to discovering it") (original emphasis); *with*

2    Dkt. 662 at 14:22–16:10 (Plaintiffs' Opposition to MSJ, arguing solely for PPFA's infiltration

3    damages; no mention of personal security costs or "targeting"); *and* Dkt. 661 (Plaintiffs'

4    Supplemental Brief arguing that "foreseeability" justified award of further damages; no mention of

5    personal security damages or "targeting" of staff).[14]

6        Thus, when comparing Plaintiffs' "success" against their original claims, only the amount of

7    the verdict attributable to Plaintiffs' counsel own work, *i.e.*, PPFA's infiltration damages of $366,000,

8    out of the almost $17 million originally sought, should be considered.

### D. *Plaintiffs' Fee Request Is Disproportionate to Their Overall Recovery.*

10        "Where the relief sought and obtained is limited to money, the terms 'extent of success' and

11    'level of success' are euphemistic ways of referring to money." *McGinnis v. Kentucky Fried Chicken*,

12    51 F.3d 805, 810 (9th Cir. 1994). Although Plaintiffs sought injunctive relief as well as money, any

13    benefit they gain from the injunctive relief is not due to their fee-shifting claims. *See* Section II.A,

14    *supra*. Thus, the "extent of their success" should be measured in monetary terms.

15        Failure to relate the extent of success to the amount of the fee award is an abuse of discretion.

16    No reasonable person would pay lawyers $14.7 million in fees and expenses to win $2.2 million.

17    *McGinnis*, 51 F.3d at 810 (citing *Hensley*, 461 U.S. at 434–36; *Farrar v. Hobby*, 506 U.S. 103, 115–16

18    (1992)) ("Lawyers might reasonably spend $148,000 worth of time to win $234,000. But no

19    reasonable person would pay lawyers $148,000 to win $34,000.")

20        Plaintiffs assert that they gave themselves a 25% haircut "to account for potential duplication

21    of efforts by different attorneys," as well as exercising "individual billing judgment." Dkt. 1131 at 16–

22

23    _____

     [14] In their Rule 50(b) motion, Defendants challenged the sufficiency of the evidence supporting the
24    Court's theory that the personal security expenditures were made *as a result of* "learning of the
     deception," as opposed to as a result of the publication or anticipated publication of videos. Dkt. 1080
25    at 3:3–4:21. In their opposition, Plaintiffs quoted this Court's order back to it at length, but did not
     cite any evidence from the trial record to support the Court's new causation theory. Dkt. 1092 at 1–
26    5. In its order denying the Rule 50(b) motion, the Court stated there was "evidence that the expenses
     were incurred *in response to* the defendants' acts of targeting and recording these plaintiffs." Dkt. 1116
27    at 12:2–5 (emphasis added). Defendants remain in the dark as to what this evidence is.

28

22. However, nowhere do Plaintiffs state that they excluded any time spent on non-fee-shifting claims, on unsuccessful or dropped claims, or on the claims of unsuccessful plaintiffs. Plaintiffs also do not contend that it would be "impossible to separate" any of these hours. Nowhere do they say that they took into account their limited success; on the contrary, they say they "obtained a jury verdict, judgment against Defendants, and 'won the case.'" *Id.* at 16 n.9.[15] Nowhere do they argue that the litigation achieved some public benefit transcending their private benefit that enhances the extent of their success (and they should not be allowed to do so in their reply papers). "The district court *must reduce* the attorneys fees award so that it is commensurate with the extent of the plaintiff's success." *McGinnis*, 51 F.3d at 810 (emphasis added).

**III. The Fees Sought For In-House Counsel Are Unreasonable**

As an initial matter, Plaintiffs offer no evidence that in-house counsel were not paid their normal salary for the work Plaintiffs claim they performed. Accordingly, they are not entitled to a fee award. *See POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS(JWJX), 2008 WL 4351842, *3–4 (C.D. Cal. Sept. 22, 2008) ("Plaintiff also requests fees for services provided by in-house counsel in the amount of $88,900. . . . Plaintiff calculates these fees using the prevailing market rate for attorneys with similar experience. *Id.* . . . [T]he Court declines to award plaintiff attorneys' fees for services provided by in-house counsel because *plaintiff has not made any showing that it is has paid anything out-of-pocket for these services above and beyond the salary it normally pays to in-house counsel.*") (emphasis added). Plaintiffs themselves relied on this case in their opposition to Defendants' motion to compel timesheets. Dkt. 1136 at 2.

To the extent in-house counsel are entitled to any fee award, the recovery is limited when the work performed is that of a traditional in-house counsel. *BladeRoom Group Limited v. Emerson Electric Co.*, No. 5:15-cv-01370-EJD, 2020 WL 1677328, at *6 (N.D. Cal. Apr. 6, 2020). In *BladeRoom*, this district applied a 55% reduction to the attorneys' fees sought for work performed by in-house counsel

---

[15] Plaintiffs cite *Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995), for this view of their "success." Dkt. 1131 at 16 n.9. In *Bingham*, the Second Circuit affirmed an award of $3,029,428.46 in attorney fees and costs on a judgment of $2,400,000 in trebled RICO damages. The trial court reduced the requested fees by 15% prior to the appeal. *Bingham v. Zolt*, 823 F. Supp. 1126, 1137 (S.D.N.Y. 1993). Here, Plaintiffs are seeking fees and costs not a mere 25% higher than the verdict, but 650% higher.

"because [the] work was primarily that of a traditional in-house counsel . . . and duplicative of work performed by [outside counsel]." *Id.* at *6. The court held the reduction was appropriate because tasks, including *inter alia*, collecting and reviewing contracts, emails, attachments, company [documents]; interviewing employees; coordinating and participating in meetings with outside counsel; and assisting in discovery responses, *id.* at *5, are not recoverable because "in-house counsel cannot recover fees for time spent acting as a client 'liaison' or 'client representative." *Id.*; *see El Dorado Irrigation Dist. v. Traylor Bros., Inc.*, No. 03-949 LKK, 2007 WL 512428, at *5 (E.D. Cal. Feb. 9, 2007) (deducting hours of in-house counsel because party failed to distinguish when counsel was "representing" party as a lawyer and when he was acting as a "client representative").

Plaintiffs seek to recover $1,432,659 in fees for 1,329.15 hours of work performed by in-house counsel, Maithreyi Ratakonda and Beth Parker, "at current billing rates as a means to compensate them for the delay in payment." Dkt. 1131 at 22, Ex. A. In support thereof, Plaintiffs provided the declarations of Ms. Ratakonda and Ms. Parker and a one-page chart showing the hours and rates worked, broken down into "phases" uniquely created by Plaintiffs. *Id.*

Ms. Parker testified that she "kept only sporadic time records of the time [she] spent on the CMP litigation," Dkt. 1131-8, ¶ 11, and only began to keep detailed time records as of January 2018. *Id.* The affidavit is entirely devoid of the dates on which Ms. Parker performed various work. Defendants (and the Court) are unable to review the reasonableness of the time spent on each project or the amount of duplication with other attorney's work, nor can Defendants determine the appropriate rate for the work performed, as Ms. Parker's historic rates in private practice are well below her currently claimed rate. Ms. Ratakonda's affidavit also fails to articulate the time spent on individual tasks or other information to determine whether her hours were duplicative of other counsels' work. Dkt. 1131-10. Her affidavit also fails to provide any basis for setting an hourly rate. Although she states she was lead counsel or co-counsel in several matters for which a Planned Parenthood affiliate was plaintiff, she does not state that she was ever awarded fees for any of this work.

Ms. Parker testified that she, *inter alia*, conducted legal research; participated in reviewing and drafting pleadings and motions; made strategy decisions; coordinated document production;

reviewed documents produced; coordinated depositions; located and prepared deposition witnesses; worked with expert witnesses; helped draft expert reports; arranged and prepared factual declarations; reviewed drafts of summary judgment briefs; conducted legal research; participated in strategy sessions regarding trial; and worked with lead counsel on jury selection. Dkt. 1131-8, ¶¶ 13–19. Likewise, Ms. Ratakonda testified that she reviewed production of documents; prepared deposition witnesses; contributed to witness outlines and strategy discussions; reviewed and edited Plaintiffs' summary judgment brief; participated in strategy sessions; worked with witness logistics; prepared trial witnesses; reviewed documents; participated in strategy discussions regarding opening statements and closing arguments; prepared trial witnesses; reviewed documents; and participated in strategy discussions regarding opening statements and closing arguments. Dkt. 1131-10 ¶¶ 8–15.

The declarations submitted by outside counsel show Ms. Parker and Ms. Ratakonda substantially—if not entirely—worked on tasks with an army of lawyers retained as outside counsel at top of market (or beyond) billing rates. For example, at least eight[16] additional attorneys also participated in legal research, seven[17] additional attorneys participated in depositions and witness preparation, four[18] attorneys participated in strategy sessions or discussions, and nine[19] additional attorneys participated in trial-related matters. The declarations of all counsel—both outside and in-house—evidence the hours billed by in-house counsel are overwhelmingly duplicative of those billed by outside counsel, and to that degree, must be disallowed.

---

[16] *See* Dkt. 1131-4 (Diton Decl.) ¶¶ 4, 6, 11, 13, 16; Dkt. 1131-5 (Feldshon Decl.) ¶¶ 7–13; Dkt. 1131-6 (Kamras Decl.) ¶¶ 16, 18; Dkt. 1131-7 (Martin Decl.) ¶¶ 2, 4–5; Dkt. 1131-9 (Ramallo Decl.) ¶ 16; Dkt. 1131-7 (Mayo Decl.) ¶¶ 5–9; Dkt. 1131-11 (Sterk Decl.) ¶¶ 11, 20, 27; Dkt. 1131-12 (Trotter Decl.) ¶¶ 3-4.

[17] *See* Diton Decl. ¶¶ 7, 11, 18; Feldshon Decl. ¶¶ 7¶¶ 8; Kamras Decl. ¶¶ 14, 24; Martin Decl. ¶¶ 3, 7; Mayo Decl. ¶¶ 10, 13–16, 20, 24, 27; Sterk Decl. ¶¶ 11, 20, 27, 31; Trotter Decl. ¶¶ 3–4.

[18] *See* Feldshon Decl. ¶ 8; Kamras Decl. ¶¶ 13, 17; Mayo Decl. ¶ 19; Sterk Decl. ¶ 10.

[19] *See* Diton Decl. ¶¶ 5, 11; Feldshon Decl. ¶¶ 6, 11; Kamras Decl. ¶¶ 27–30; Martin Decl. ¶ 6; Mayer Decl. ¶¶ 29, 31–33; Mayo Decl. ¶¶ 23–25; Ramallo Decl. ¶ 18; Sterk Decl. ¶¶ 31–37; Trotter Decl. ¶ 16.

## IV. Plaintiffs Cannot Prove Reasonable Fees Without Producing Timesheets.

### A. A "massive" fee request such as Plaintiffs' must be supported by timesheets produced to the opposing parties.

"[A]n opposing party normally has a right to see the timesheets on which a district court relied in issuing a fee award." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 544 (9th Cir. 2016). *See also Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993) ("While summaries can be used in proper circumstances, the underlying material must be made available. Fed. R. Evid. 1006. Under our adversary system, Terabyte was entitled to see just what was charged and why."). In determining the reasonable hours expended, the party seeking fees bears the burden of submitting detailed time records which justify the hours spent working on the claims. *Intel Corp.*, 6 F.3d at 622–23; *Columbus Life Ins. Co. v. Hill*, No. 2:09-CV-0947 FCD DAD, 2010 WL 3717285, *3 (E.D. Cal. Sept. 16, 2010). Not permitting the other parties and the public access to time records implicates due process concerns. *Yamada*, 825 F.3d at 545.

Plaintiffs have asserted that, were they to produce timesheets redacted for privilege, "[t]hese redactions would limit the usefulness of timesheets for the hour-by-hour analysis demanded by Defendants." Dkt. 1136 at 5:12–13. The limitation on their usefulness would be directly proportional to Plaintiffs' proven tendency to overredact. Plaintiffs should not be allowed to cite their own abuse of privileges as a reason to deny Defendants their due process right to defend themselves. *Cf. Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 12-cv-01927-WHO, 2013 WL 6698465, at *7 (N.D. Cal. Dec. 18, 2013) (a party "is not allowed to petition the Court for fees but hide from the public the basis for its request;" "the Court is unclear how disclosure of mundane descriptions of typical attorney tasks, such as '[r]eview and revise documents and reports' or 'confer with [attorney] re: same and collection and production of documents,' even taken as a whole, reveals sensitive information or confidential litigation strategy"; "[t]ime entries on billing records may be redacted in rare instances").

While parties seeking fees are not required to produce timesheets in all circumstances, they are typically excused only in contingency-fee cases, or cases involving negotiated class-action settlements or where the fees are relatively small or at least less than the judgment amount, such as

16

in the cases Plaintiffs rely on in their opposition to Defendants' motion to compel production of timesheets. *See Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (negotiated class-action settlement including fee award as a fraction of the common fund); *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912 (N.D. Cal. 2005) (same); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000) (prevailing party sought fees for only 96.7 hours); *POM Wonderful*, 2008 WL 4351842 (Lanham Act prevailing party sought approximately $614,000 fees in fees on $1.5 million judgment).

Here, this is not a contingency-fee case or class action, and Plaintiffs admit their fee request is "massive." Dkt. 1136 at 1, 2, 4. Indeed, the fee request is many times the amount of damages awarded in the judgment. To permit Plaintiffs to not produce their timesheets and then to award them even a significant portion of the $13,798,840 they seek for achieving a $2.2 million judgment, would be grossly inappropriate.

Plaintiffs relied on *Stonebreaker v. Guardian Life Ins. Co. of Am.*, No. 11CV797 WQH (WVG), 2012 WL 12868386 (S.D. Cal. Dec. 6, 2012), as support for providing mere "billing charts," but there the court *denied* the fee request. Besides, the "billing charts" in *Stonebreaker* were nothing like Plaintiffs' summaries here. The "billing charts" there included all of the prevailing party's *original detailed billing entries* copied into an Excel spreadsheet. *Stonebreaker*, 2012 WL 12868386, at*2. Plaintiffs also relied on *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013), and *Terry v. City of San Diego*, 583 F. App'x 786, 789 n.2, 790 (9th Cir.2014), but those involved "massive" fee requests where the prevailing party *did* produce billing records. None of these cases helps Plaintiffs.

Relying on a footnote in *Yamada*, Plaintiffs also tried to downplay the due-process concerns recognized in that case. In that footnote (note 7), the Ninth Circuit distinguished *United States v. Eyraud*, 809 F.3d 462 (9th Cir. 2015), which is likewise inapplicable here. For example, the party challenging the fee request in *Eyraud* "failed to protect" the record for appeal; "[t]his lapse leaves us with the district's court's description of [the invoices] as simply corroborative of what counsel already had seen," and as such "Eyraud was not denied due process." *Eyraud*, 809 F.3d at 470–71. By contrast, here, the record is clear that what Plaintiffs have provided corroborates *nothing* and in fact is internally inconsistent as discussed further herein. Like the defendants in *Yamada*, Defendants would be denied due process without the timesheets.

Local Rule 54-5(b)(2) requires that "*[d]epending on the circumstances*, the Court may require production of . . . the contemporary time records for inspection. . . ." (emphasis added). If a massive $13,798,840 fee request does not warrant production of contemporary time records, it is difficult to imagine any circumstances that would. Plaintiffs complain that it might take some time to review and produce "several hundred" pages of timesheets, but that is a minor burden for a massive $13,798,840 fee request—and should be no burden at all insofar as Plaintiffs claim they are entitled to fees incurred in preparing the fee application itself. Besides, Plaintiffs could have likely reviewed and produced the timesheets initially in less time than they spent preparing 130+ pages of "summary" (and, as discussed below, inconsistent) declarations.

### B. Timesheets are needed to assess Plaintiffs' "billing judgment."

In conclusory fashion, Plaintiffs claim they exercised "billing judgment" in writing off an unspecified amount of time and taking a 25% haircut. Plaintiffs' documentation (or lack thereof) makes it impossible to fairly assess their "billing judgment."

Here, without the timesheets, Defendants and the Court cannot assess whether Plaintiffs' alleged reductions sufficiently accounted for excessive, redundant, or otherwise unnecessary hours. *Hensley*, 461 U.S. at 437. "Billing judgment" means that all hours must be "reasonable." *City of Riverside v. Rivera*, 477 U.S. 561, 569 n.4 (1986). Billing judgment is best demonstrated by counsel's time records. *See, e.g., Navarro v. Gen. Nutrition Corp.*, No. C 03-0603 SBA, 2005 WL 2333803, *12 n.23 (N.D. Cal. Sept. 22, 2005) ("[A]s set forth below, it is startlingly clear from even a cursory review of Plaintiff's billing statements that Plaintiff's attorneys have not exercised billing judgment."). Plaintiffs may have excluded hours for which they have no *right* to recover anyway, but this does not constitute billing judgment. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). *See also Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1008 (N.D. Cal. 2012) (following *Walker*). The Court should not simply take Plaintiffs' word for it that they exercised sound billing judgment. *Gates v. Deukmejian*, 987 F.2d 1392, 1401, 1410 (9th Cir. 1992). Defendants and the Court should test Plaintiffs' judgment against the timesheets. *Id.*; *see also Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) ("In a contested case, a district court ordinarily can rely on the losing party to aid the court in its duty by vigorously disputing any seemingly excessive fee requests.").

### C. Plaintiffs' counsel's summary attestations regarding their hours are facially inconsistent and unreliable.

Even counsel's own summary attestations are inconsistent and therefore unreliable on their face. For example, in her Declaration, Bomse attests that she "spent **451.3** hours on pre-trial work," Bomse Decl. ¶ 89 (emphasis added), and yet in counsel's "full accounting" hours chart (Exhibit A to her Declaration), Ms. Bomse claims **478** hours for the same work. Attorney Sharon Mayo attests that she "spent a total of approximately 9 hours on this [fee] motion, but that time has not been incorporated into the fees calculated to date," Mayo Decl. ¶ 27 (emphasis added), but, in counsel's hours chart, Ms. Mayo claims **14** hours for the "fee motion" phase. Bomse Decl. Ex. A. These are *upward* adjustments. Is this what Plaintiffs mean by "billing judgment"? Sound "billing judgment" means *downward* adjustments. *Hensley*, 461 U.S. at 434, 437.

The hours chart and documentation contain other questionable entries and omissions. For example, several attorneys (including Amy Bomse, Matthew Diton, and Stephen Mayer) did not attest to any specific number of hours in their declarations for certain "phases," while the hours chart shows specific amounts. Further, Plaintiffs submit **no** declaration of two timekeepers (Jerome Ferrer and Kinson Yee) for whom Plaintiffs request more than $900,000 in fees.

Plaintiffs' summaries are unreliable. *Cf. Haifeng Xie v. Sakura Kai I Inc.*, No. 17CV7509(ILG)(JO), 2020 WL 2569406, at *1 (E.D.N.Y. May 20, 2020) ("The existence of even a few inconsistencies and questionable billing entries—and here, there are more than a few—renders the entire record suspect."). Plaintiffs should provide the underlying timesheets.

### D. Insufficient basis to show any "tasks."

In its Order denying Defendants' motion to compel Plaintiffs to produce their timesheets, the Court did "not preclude defendants from identifying *particular tasks* (or *parts of the phases* as broken down by plaintiffs) about which they believe they or the Court do not have sufficiently detailed information when they oppose the motion for fees. They may explain at that time why there is insufficient information to test the reasonableness of the fees claimed by plaintiffs for those tasks." Dkt. 1139 at 2 (emphasis added).

There is insufficient information to test the reasonableness of the fees claimed for *any* given task or part of a "phase." *Cf. Banas*, 47 F. Supp. 3d at 961, 968 (Orrick, J.) ("eye-catching" $3,557,034.50 fee request; because of "block billing," "there is simply no way to determine whether the time spent on any given task was reasonable"). If "block billing" provides insufficient information, as this Court recognized in *Banas*, then, *a fortiori*, Plaintiffs' "summary" declarations provide insufficient information. Because Defendants do not have access to Plaintiffs' billing records, they have no way to assess the reasonableness of their fees as to any particular task or phase. Most of the broad "phases" Plaintiffs identified each include a thousand or more hours, with some including many thousands of hours, and all "phases" include multiple tasks grouped collectively.

Within the "discovery" phase, Defendants have no idea how many hours, of the total 8,441 alleged hours for that phase, Plaintiffs spent on drafting an enhanced Protective Order, on redacting and unredacting documents, and on motion practice related to these tasks. *E.g.*, Dkt 278. *See* Section II.A, *supra*. Within the "post-trial" phase, Defendants have no idea how many hours, of the total 1,169.3 alleged hours for that phase, Plaintiffs spent on briefing to support injunctive relief based on a claim (UCL) for which they are not entitled to fees. *See also* Section II.B, *supra*. How much time, in several phases, was spent on tasks specific to PPMM and PPLA, that did not in any way contribute to the overall result? How much time, in several phases, was spent on opposing Defendants' Cal. Penal Code § 633.5 defense?

These are just a few examples—and as discussed above, Plaintiffs' summary attestations include various inconsistencies and are unreliable. The timesheets would likely reveal additional examples, but Defendants and the Court need the timesheets to fairly assess.

## V.     Plaintiffs' Request For Non-Taxable Costs Lacks Necessary Evidence And Documentation

Plaintiffs have failed to demonstrate that they are entitled to an award of non-taxable costs. The Ninth Circuit has held that non-taxable costs "may be recovered as 'attorney's fees' under § 1132(g)(2)(D) if separate billing for such expenses is 'the prevailing practice in the local community.'" *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989) ("A variant of

1  Missouri's 'windfall' argument . . . that attorneys seeking fees under § 1988 would have no basis for

2  requesting separate compensation of such expenses unless this were the prevailing practice in the

3  local community.")). When interpreting the Ninth Circuit, this District has held that "[n]on-taxable

4  costs are included as part of an award of attorney's fees if it is 'the prevailing practice in a given

5  community' for lawyers to bill those costs separately from their hourly rates.'" *Kowalski v. Farella,*

6  *Braun & Martel, LLP*, No. C-06-3341 MMC, 2009 WL 2761321, at *7 (N.D. Cal. Aug. 27, 2009)

7  (quoting *Redland*, 460 F.3d at 1258). Non-taxable costs are denied when the "Plaintiff has failed to

8  submit any evidence, however, as to the relevant 'community' or the billing practices of lawyers in

9  any such community with respect to the above-referenced costs." *Id.*

10       Similar to the prevailing party in *Kowalksi,* Plaintiffs have not demonstrated that the

11  prevailing practice in the community of San Francisco is to separately bill clients these fees outside

12  of the normal attorney's fees. Just as in *Kowalksi*, where the prevailing party was denied an award of

13  the requested non-taxable costs such as postage and mediation fees, the Plaintiffs in our case should

14  be denied an award of non-taxable costs. Plaintiffs' requested non-taxable costs, such as travel costs

15  and trial technical services, are overhead for a law firm unless evidence proves the community

16  standard. The Northern District is clear that the Plaintiffs must submit evidence as to the community

17  practices in order to be awarded non-taxable costs. Plaintiffs only noted, in passing, that the costs

18  "would customarily be charged to the client." Dkt. 1131 at 18. However, this statement does not

19  provide any evidence of the prevailing practices in the local community. Because they did not provide

20  any evidence of community standard, Plaintiffs should not be awarded non-taxable costs.

21       Even if the Court finds that Plaintiffs are entitled to receive non-taxable costs, the Plaintiffs

22  have not provided conclusive proof of these costs with accompanying invoices as required under Fed.

23  R. Evid. 1002: "An original writing, recording, or photograph is required in order to prove its content

24  unless these rules or a federal statute provides otherwise." Additionally, this District has held that

25  documentation of non-taxable costs is required for an award: "[t]he Court cannot reimburse class

26  counsel for costs and expenses because counsel has provided no documentation supporting the

27  claimed expenses. Without documentation, the Court cannot determine whether the claimed

28  expenses are the type normally charged to a paying client." *Dyer v. Wells Fargo Bank, N.A.*, 303

1   F.R.D. 326, 334 (N.D. Cal. 2014).

2       Although Plaintiffs stated that supporting documentation can be submitted to the Court for

3   in-camera review, this would not cure the violation of Fed. R. Evid. 1002. *See* Martin Decl. at 6:19–

4   20. Plaintiffs must provide the invoices for the costs in order to verify the accuracy and

5   reasonableness of the claimed expenses. As an example of the error and inaccuracy of their claims,

6   Plaintiffs request a total of $1,035,717.68 in non-taxable costs in their motion while the table in the

7   Declaration of Meghan Martin states a total of $931,595.31, a difference of $104,122.37. *Compare* Dkt.

8   1131 at 18; *with* Dkt. 1131-3 at 6. The exact amount is indeterminable without the production of the

9   invoices. As another example, Plaintiffs seek $37,598.61 for "executive protection services for

10  witnesses to, from, and at the courthouse during trial." Dkt. 1131 at 18. This cost for security requires

11  an invoice to prove the fee and the amount of hours that the security was utilized, particularly as it

12  seems unreasonably high for the number of hours that would have been involved. *Cf.* Trial Tr. 1809,

13  Ex. 965-A & -B (invoices showing a total of $37,960 for thirty 24-hour days and two 12-hour days of

14  personal security, at $50 per hour). Without documentation of these costs, the Court cannot

15  determine whether these expenses are accurate and reasonable, and Plaintiffs' nontaxable costs

16  should not be awarded.

17      Defendants specifically object to this claim of security costs as litigation expenses. Non-

18  taxable costs must be both reasonable *and* necessary. *McIlveen v. Stone Container Corp.*, 910 F.2d 1581,

19  1583 (7th Cir. 1990). Expenses for protective services are highly unusual litigation expenses, and

20  Plaintiffs have made no showing they were necessary to this litigation. Originally, the issue of

21  providing security was addressed to the court at Trial Tr. 1182–87, where the Defendants objected

22  to Plaintiffs' request for a Marshall to escort their witnesses from the courthouse. The Court denied

23  the request to provide an escort for Plaintiffs' witnesses. Trial Tr. 1397:20-24. Defendants argued

24  that there was no actual threat to the witnesses—no security issue—and the Court agreed. The

25  Plaintiffs requested security because one of Plaintiffs' witness had a reporter ask her questions

26  aggressively on public property outside of the courthouse. The reporter did not touch the witness or

27  harm her in any way, and remained above the law on all accounts. In fact, it was the Planned

28  Parenthood security guard that manhandled the reporter. Defendants should not be responsible for

1  costs that were not necessary for litigation, and these protective services costs were not necessary,

2  especially since they were not related to any Defendants' conduct.

### VI.   Fee Expert André Jardini Further Attests To The Unreasonableness Of Plaintiffs' Fee Request.

5     As set forth in his declaration, attached and incorporated herein, expert André Jardini further

6  attests to the unreasonableness of Plaintiffs' requested fees and costs. Mr. Jardini is an expert on

7  attorneys' fees in California federal courts. Mr. Jardini attests, for example, that:

8      o  Because Plaintiffs' counsel represented Plaintiffs on a pro bono basis, the ordinary process

9         for periodic review and transmission of invoices to the clients was likely not followed.

10        Because this process likely did not occur, such a safeguard against unreasonable or excess

11        billing cannot be assumed to exist here.

12     o  Plaintiffs' proffered rates are significantly higher than comparable rates based on firm size

13        and level of experience.

14     o  It is exceedingly rare that the issue of reasonableness and fair amount of attorneys' fees

15        would be decided without production of comprehensive time records and is especially rare

16        in a case, such as this one, not taken on contingency.

17     o  In not submitting comprehensive time records here, Plaintiffs have not provided adequate

18        documentation to support their request for fees.

19     o  The summary-form documentation that Plaintiffs did provide is vague, inconsistent, and

20        imprecise as to hours billed and services performed, and also indicates excessive billing

21        and unreasonable duplication of effort.

22     o  The cost submission is inconsistent and appears to contain errors.

### CONCLUSION

24     Plaintiffs have not provided adequate documentation to support their request for fees and

25 costs. The Court should deny Plaintiffs' motion. Alternatively, the Court should require Plaintiffs to

26 produce their timesheets (which they may redact for any legitimate claim of privilege) and then give

27 Defendants adequate time to review and assess them and to submit a supplemental response to

28 Plaintiffs' motion.

1   Date:   November 2, 2020                    Respectfully submitted

2                                                /s/ Charles S. LiMandri
                                                 Charles S. LiMandri (CA Bar No. 110841)
3                                                Paul M. Jonna (CA Bar No. 265389)
                                                 Jeffrey M. Trissell (CA Bar No. 292480)
4                                                FREEDOM OF CONSCIENCE DEFENSE FUND
                                                 P.O. Box 9520
5                                                Rancho Santa Fe, CA 92067
                                                 Tel: (858) 759-9948
6                                                Facsimile: (858) 759-9938
                                                 cslimandri@limandri.com
7                                                pjonna@limandri.com
                                                 jtrissell@limandri.com
8

9                                                *Attorneys for Defendants the Center for Medical Progress,
                                                 BioMax Procurement Services, LLC, Gerardo Adrian Lopez,
10                                               and David Daleiden*

11                                               Harmeet K. Dhillon (CA Bar No. 207873)
                                                 Mark P. Meuser (CA Bar No. 231335)
12                                               DHILLON LAW GROUP INC.
                                                 177 Post Street, Suite 700
13                                               San Francisco, CA 94108
                                                 415-433-1700
14                                               415-520-6593 (fax)
                                                 harmeet@dhillonlaw.com
15

16                                               Michael Alan Yoder, *pro hac vice*
                                                 DHILLON LAW GROUP INC.
17                                               425 Massachusetts Avenue NW, # 515
                                                 Washington, DC 20001
18                                               Tel: (202) 595-4504
                                                 myoder@dhillonlaw.com
19

20                                               *Attorneys for Defendants the Center for Medical Progress,
                                                 BioMax Procurement Services, LLC, and David Daleiden*
21

22                                               /s/ Thomas Brejcha
23                                               Thomas Brejcha, *pro hac vice*
                                                 Peter Breen, *pro hac vice*
24                                               THOMAS MORE SOCIETY
                                                 309 W. Washington St., Ste. 1250
25                                               Chicago, IL 60606
                                                 Tel: (312) 782-1680
26                                               Facsimile: (312) 782-1887
                                                 tbrejcha@thomasmoresociety.org
27                                               pbreen@thomasmoresociety.org

28
                                          24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Matthew F. Heffron, *pro hac vice*
THOMAS MORE SOCIETY
10506 Burt Circle, Suite 110
501 Scoular Building
Omaha, NE 68114
Tel: (312) 782-1680
mheffron@thomasmoresociety.org

Adam Hochschild, *pro hac vice*
THOMAS MORE SOCIETY
P.O. Box 401
Plainfield, VT 05667
Tel: 314-503-0326
adam@hochschildlaw.com

*Attorneys for Defendant David Daleiden*


/s/ Edward L. White
Edward L. White III, *pro hac vice*
Erik M. Zimmerman, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
3001 Plymouth Rd., Ste. 203
Ann Arbor, MI 48105
Tel: (734) 680-8007; Fax: (734) 680-8006
ewhite@aclj.org
ezimmerman@aclj.org

John A. Monaghan, *pro hac vice*
Christina Stierhoff, *pro hac vice*
AMERICAN CENTER FOR LAW & JUSTICE
100 Regent University, RH 422
Virginia Beach, VA 23464
Tel: (757) 955-8176
jmonaghan@aclj.org
cstierhoff@aclj.org

Vladimir F. Kozina; SBN 95422
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833; Fax: (209) 473-4818
VKozina@mayallaw.com

*Attorneys for Defendant Troy Newman*

/s/ Catherine Short
Catherine W. Short (CA Bar No. 117442)
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, CA 93024-1313
Tel: (707) 337-6880
LLDFOjai@earthlink.net

Michael Millen (CA Bar No. 151731)
ATTORNEY AT LAW
119 Calle Marguerita Ste. 100
Los Gatos, CA 95032
Tel: (408) 871-0777
Facsimile: (408) 866-7480
mikemillen@aol.com

Corrine G. Konczal (CA Bar No. 320238)
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 692921
Stockton, CA 95269
konczal.law@gmail.com

*Attorneys for Defendant Albin Rhomberg*


/s/ Horatio G. Mihet
Horatio G. Mihet*
Liberty Counsel
hmihet@lc.org
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
*Admitted pro hac vice

Nicolaie Cocis CA Bar # 204703
Law Office of Nic Cocis and Associates
nic@cocislaw.com
38975 Sky Canyon Dr., Suite 211
Murrieta, CA 92563
(951) 695-1400

*Attorneys for Defendant Sandra Susan Merritt*

## Attestation Pursuant to Civ. L.R. 5.1(i)(3)

As the filer of this document, I attest that concurrence in the filing was obtained from the other signatories.

/s/ Charles S. LiMandri
Charles S. LiMandri
*Counsel for CMP, BioMax, Lopez& Daleiden*