1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| 7  PLANNED PARENTHOOD<br>   FEDERATION OF AMERICA, INC., et al., | Case No. 16-cv-00236-WHO |
| 8             Plaintiffs, | **ORDER ON MOTION FOR** |
| 9        v. | **ATTORNEY FEES AND COSTS** |
| 10  CENTER FOR MEDICAL PROGRESS, et | Re: Dkt. No. 1131 |
| 11  al., | |
| 12             Defendants. | |

13        Plaintiffs move for an award of attorney fees and non-statutory costs after winning a

14  significant verdict and securing injunctive relief under claims that provide for an award of attorney

15  fees.  There is no dispute that they are entitled to fees and costs—the issue is, how much?

16        Plaintiffs' request represents a substantial reduction from their lodestar.  That said, it

17  remains indisputably large– $14,816.034.70, including costs.  The amount is not surprising in light

18  of more than four years of very active litigation that led to a six-week trial.  I know how hotly

19  contested each phase–discovery, motion practice, hearings, trial, and post-trial proceedings–of the

20  litigation was.  The numerous attorneys on both sides represented their clients with tenacity and

21  skill.  Plaintiffs have exhibited good billing judgment in this application for fees, although in this

22  Order I will reduce the amount further.  With the reductions I describe below, plaintiffs' motion

23  for attorney fees and non-statutory costs is GRANTED.

24                                **DISCUSSION**

25        More than 130 attorneys worked on the case for plaintiffs and 22 of them billed more than

26  250 hours each.  Declaration of Amy L. Bomse (Dkt. No. 1131-1), ¶ 10.  Plaintiffs seek an award

27  of fees covering the time billed by only twelve of those attorneys as well as two paralegals.  Those

28  individuals seek compensation for a total of 21,200.25 hours; at current rates, that represents

*United States District Court*
*Northern District of California*

$18,373,755 in attorney fees.  Reply Declaration of Diana K. Sterk (Dkt. No. 1148-2, Ex. A).  To account for potential inefficiency or duplication of efforts, plaintiffs reduced that amount by 25% and seek an award of $13,780,317.00 in attorney fees.  *Id.*; *see also* Bomse Decl.  ¶12.  Plaintiffs also seek $1,035,717.68 in non-statutory costs.  Reply Declaration of Meghan C. Martin (Dkt. No. 1148-1).

In support of their motion, plaintiffs did not submit their underlying contemporaneous timesheets.  Instead, each billing attorney provided a detailed declaration breaking down the tasks that attorney completed in each of the nine specifically identified phases of this litigation.  *See* Declaration Amy Bomse (Dkt. No. 1131-1); Declaration Steven Mayer (Dkt. No. 1131-2); Declaration Meghan Martin (Dkt. No. 1131-3); Declaration Matthew Diton (Dkt. No. 1131-4); Declaration Arielle Feldshon (Dkt. No. 1131-5); Declaration Jeremy Kamras (Dkt. No. 1131-6); Declaration Sharon Mayo (Dkt. No. 1131-7); Declaration Beth Parker (Dkt. No. 1131-8); Declaration Oscar Ramallo (Dkt. No. 1131-9); Declaration Maithreyi Ratakonda (Dkt. No. 1131-10); Declaration Diana Sterk (Dkt. No. 1131-11); Declaration Rhonda Trotter (Dkt. No. 1131-12).[1]  Plaintiffs then identified the precise hours for which they seek compensation for each biller in each of the nine phases in one chart.  Dkt. Nos. 1131-1, Ex. A & 1148-2, Ex. A (revised, collectively "Chart").

Defendants object to the rates charged by the billing attorneys and paralegals, to the amount of attorney fees sought as compared to their view of the limited success of plaintiffs, to the availability of fees for in-house counsel, to the reasonableness of the hours claimed by plaintiffs (as unsubstantiated by actual timesheets), and to the costs sought (as unsupported by evidence that these costs are typically reimbursed in this District and given plaintiffs' failure to provide invoices of the expenses).  I will analyze those objections below.

## I.      DEFENDANTS' EXPERT DECLARATION

As an initial matter, I address defendants' submission of an "expert report" by Andre E.

---

[1] The two billing paralegals have not submitted declarations, but the scope and extent of their work is detailed in the Martin Declaration (Dkt. No. 1131-3,) and their hours for each phase detailed in the Chart.  Dkt. Nos. 1131-1, Ex. A & 1148-2, Ex. A; *see also* Bomse Decl. ¶ 91.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Jardini in support of their opposition.  Jardini's declaration was attached as an exhibit to the

2  Declaration of Jeffrey M. Trissell, but is not discussed in substance *anywhere* in defendants'

3  opposition.  The only mention of Jardini's declaration is on the last page of defendants' 23-page

4  brief where, in 17 lines of text and bullet points, defendants simply identify the topics Jardini

5  addresses in his declaration.  That is improper.  While declarations regarding prevailing rates are

6  routinely considered in connection with attorney fee motions, those declarations should be

7  discussed as part of the motion or opposition.  That was not done here.

8  Moreover, the Jardini declaration goes beyond the question of prevailing rates in this

9  district for similarly complex litigation and raises arguments never discussed in defendants'

10  opposition.  For example, Jardini's conjecture regarding review and transmission of invoices (or

11  the lack thereof) in cases of *pro bono* representation was never mentioned, let alone supported by

12  any case citation or authority, in defendants' opposition.  Similarly, Jardini purports to contest the

13  reasonableness of time charged and hours spent by specific billers identified in plaintiffs' billing

14  summaries, but those challenges were not identified in the opposition brief or otherwise discussed

15  by defense counsel.[2]

16  Defendants' failure to discuss the contents or theoretical support Jardini's declaration

17  might provide for the arguments they do make in their opposition brief was not for lack of space.

18  Given the size of plaintiffs' fee and cost request as well as the many stages and long duration of

19  this case, I granted the parties' mutual request for longer briefs to address all of the issues.  I gave

20  defendants 30 pages to oppose plaintiffs' motion.  Dkt. No. 1144.  They chose not to use the extra

21  pages they requested and submitted a 23-page opposition.

22  Jardini's declaration suffers from numerous other deficiencies.  It contains unsupported

23  and inadmissible legal opinions and miscalculations.  Given defendants' failure to incorporate

24  Jardini's opinions in their opposition, his impermissible legal conclusions, and the errors in his

25

26  [2] For example, Jardini argues for reductions because the summaries provided by the billing
   paralegals are not supported by a declaration, the paralegals may have billed for overhead and

27  administrative tasks, and that Feldshon was never admitted to practice in California nor admitted
   *pro hac vice* and therefore her time should be compensated at a "non-attorney rate."  Dkt. No.

28  1146-2 ¶¶ 28, 37, 38.  These are legal arguments improperly raised in Jardini's declaration and/or
   never mentioned in the opposition or otherwise by defense counsel.

analysis, it would be appropriate to strike Jardini's declaration.[3]  I will nonetheless consider Jardini's opinions in connection with the arguments actually made by defendants in their opposition.

## II.    RATES

Defendants first challenge the rates sought for the 12 billing attorneys (partners and associates) and the two billing paralegals, arguing that the rates sought are "inflated."[4] I find that the rates are reasonable given the scope and complexity of this case, as well as in light of rates approved in this District for partners, associates, and paralegals for similarly experienced counsel and staff at similar firms.  The rates, while high, are supported by the authority cited by plaintiffs in their Motion.  Dkt. No. 1131 at 20-21.  They are rates paid by the clients of the billing attorneys in other matters.

Defendants do not challenge the use of current as opposed to historical rates, except for two attorneys; associates Feldshon and Diton whose rates increased from 2016 to 2020 by 50% and 60% respectively.  Opposition (Dkt. No. 1146) at 4.  Defendants contend that these two attorneys should not be awarded such unexplained "rapidly-increasing" rates.  Plaintiffs do not address or otherwise provide a justification for such large increases in Feldshon or Diton's rates in their motion, reply, or supporting declarations.  Therefore, Feldshon and Diton's time will only be awarded at the rate they initially billed plus 25%, which is a rate of increase consistent with other plaintiff counsel.

Otherwise, plaintiffs have justified the rates sought by the other attorneys and paralegals

---

[3] *See, e.g.*, *Stathakos v. Columbia Sportswear Co.*, 15-CV-04543-YGR, 2018 WL 1710075, at *5 (N.D. Cal. Apr. 9, 2018) (striking multiple paragraphs of Jardini's declaration "on the ground that these paragraphs contain improper legal opinions which either interpret or merely quote case law, the American Bar Associate Code of Professional Responsibility, the State Bar of California Professional Code, and the U.S. Attorney Offices' Attorney Fee Matrix"); *Lira v. Cate*, C00-0905 SI, 2010 WL 727979, at *4 & n.5 (N.D. Cal. Feb. 26, 2010) (striking two-thirds of Jardini's declaration as improper legal opinion).

[4] Plaintiffs seek an award based upon the current (not historical) rates for the following billers: Mayer ($1,280/hour); Trotter ($1,150/hour); Parker ($1,115/hour); Mayo ($1,085/hour); Kamras ($1,015/hour); Bomse ($925/hour); Ratakonda ($910/hour); Ramallo ($910/hour); Sterk ($910); Diton ($815/hour); Feldshon ($675); Martin ($545/hour), and the two paralegals Ferrer ($405) and Yee ($390/hour).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    sought here.[5]

2    ## III.   DEGREE OF SUCCESS

3        Plaintiffs claim they are entitled to fees given their success on: (i) their RICO claims; (ii)

4    the federal, Florida, and Maryland recording claims; and (iii) the PPCG NDA claim under Texas

5    law.  Mot. at 14-15.  Defendants do not dispute that under these statutes attorney fees may be

6    awarded, and for the RICO claims must be awarded.  Instead, defendants argue that plaintiffs'

7    limited success requires rejection of plaintiffs' fee request as not proportional to plaintiffs'

8    success.

9        Defendants contend that plaintiffs recovered only 3% of the damages they originally

10   sought,[6] that their request for injunctive relief was significantly narrowed, that they were forced to

11   drop claims in light of adverse rulings, and that some plaintiffs did not recover any damages.

12   None of these arguments counsels reducing plaintiffs' requested fees.

13       Numerous courts have recognized that the "fee shifting provisions serve the [] purpose of

14   encouraging private citizens to enforce the objectives of the RICO statute" and held that Congress

15   did not intend "that attorneys' fees should be awarded only in some proportion to the plaintiff's

16   damages."  *N.E. Women's Ctr. v. McMonagle*, 889 F.2d 466, 474 (3d Cir. 1989); *see also Rosario*

17   *v. Livaditis*, 963 F.2d 1013, 1019 (7th Cir. 1992) ("we do not believe that *Hensley* nor our own

18   opinions following *Hensley* require a trial court to grant attorney's fees to a prevailing plaintiff in

19   direct proportion to the overall relief obtained.").  Plaintiffs were successful on their RICO claims,

20

21   [5] Jardini characterizes the rates sought as at the "upper end of those that would be typically
22   charged by firms in cases of this size and complexity."  Dkt. No. 1146-2, ¶ 30.  Jardini does not
     say the rates are beyond or in excess of rates charged and approved in this District, nor do
23   defendants offer any opinions from this or similar districts rejecting these rates for similarly sized
     firms and similarly experienced billers.  Instead, Jardini suggests rates that are more "reasonable"
24   in his view based on his firm's audit of "comparable firms," that are not, in fact, comparable to
     similarly sized firms billing in the Bay Area.  In the end, Jardini suggests reductions only for the
25   rates of Kamras, Diton, Sterk, and the two paralegals.  Jardini's proposed "Rate Adjustment" to
     those five billers is not justified.  In their opposition brief, defendants primarily attack the partner
26   rates (Oppo. at 2-3), but opinions from this District and evidence (including the Valeo database,
     the 2017 NLJ Survey, and Jardini's own opinion) supports awarding the partner rates sought.

27   [6] Oppo. at 11-12.  Defendants' calculation is based on plaintiffs' recovery of $366,000 in
28   compensatory damages and ignores plaintiffs' award of treble RICO damages, statutory damages,
     and punitive damages.

even if the amount of damages at stake was significantly reduced during the course of the litigation.  If I were required to address proportionality, it would not change my analysis because plaintiffs were likewise successful on their federal, Florida, and Maryland recording claims and the Texas breach claim, further supporting a robust fee award.  Finally, the injunctive relief, secured in part under the federal and Florida recording statutes, also weighs in favor of the fee award even though the scope of injunctive relief awarded was narrower than requested by plaintiffs.

The claims that plaintiffs successfully pursued through trial – especially but not limited to their substantive and conspiracy RICO claims and the recording claims – were broad.  All or very nearly all of the discovery sought and defended against was relevant to those claims, considering the elements of and defenses to those particular claims.  The legal theories and evidence relevant to the claims providing for attorney fees broadly overlapped with the legal theories and evidence relevant to the claims on which plaintiffs were successful but do not independently provide for fees.[7]

Plaintiffs were arguably forced to drop a significant portion of their compensatory damage request, either because discovery did not establish a direct-enough connection between events and these defendants (*e.g.,* no evidence that defendants participated in or incited others to hack plaintiffs' system or vandalize plaintiffs' clinics) or because of adverse rulings from me (*e.g.,* cutting out publication damages).  That does not mean that the time and effort to secure that discovery or brief those issues on summary judgment or *in limine* should be uncompensated.  The disputed evidence about defendants' intent, conduct and the impact of that conduct on plaintiffs constituted the majority of the evidence introduced at trial.  That "common core" of evidence and the related legal theories were directly relevant to the successful RICO and recording claims, as

_____

[7] Defendants make a number of arguments as to why plaintiffs should not recover for time researching, briefing, or arguing claims that do not independently provide a right to attorney fees. *See e.g.,* Oppo. 9-10 & fns.10, 12 (arguing plaintiffs are not entitled to fees for work on UCL and trespass claims or the California Penal Code § 633.5 defense).  But those legal claims significantly overlap with the legal theories (and facts) underlying the RICO and recording claims generally.

well as the scope of injunctive relief awarded.[8]  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (where "plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories" . . . "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."); *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) ("Thus, the test is whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" (quoting *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir.1983)).

Defendants do not attempt to argue, much less show, that the facts supporting any particular claim that plaintiffs dropped were unrelated to the facts underlying the claims on which plaintiffs were successful.  *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991) ("We read *Hensley* as establishing the general rule that plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims.").  Accordingly, I will make no deductions because plaintiffs were unsuccessful on discrete claims or because some claims do not independently provide for attorney fees.

## IV.   IN-HOUSE COUNSEL

Defendants object to plaintiffs' request for $1,432,659 in fees for 1,329.15 hours of work

---

[8] Relatedly, defendants argue that plaintiffs should not be compensated for time spent on tasks that were only necessitated because of – in defendants' views – plaintiffs' unreasonable positions taken in the litigation.  In particular, defendants identify time spent negotiating and making arguments to Judge Ryu and myself regarding the Protective Order and the use of Doe identifiers.  Oppo. at 6-7 & fns. 6, 8.  Plaintiffs retort that it was defendants' unreasonable litigation conduct that drove up their hours.  In particular, defendants filed dozens of motions to compel discovery, the vast majority of which were appealed to me and affirmed.  All of these arguments simply evidence how hard fought this uniquely contentious case was.  In the end, the negotiated Protective Order and use of Doe identifiers were approved by Judge Ryu and myself.

performed by in-house counsel Beth Parker and Maithreyi Ratakonda.  Defendants contend that plaintiffs cannot recover for this time because the declarations of counsel show that they were either: (i) performing work typically performed by in-house counsel that is not compensable (*e.g.*, acting as a client liaison, providing client direction or general strategy oversight); or (ii) performing work that was duplicative of outside counsel that should not be compensated.  *See, e.g.*, *BladeRoom Group Ltd. v. Emerson Electric Co*., 5:15-CV-01370-EJD, 2020 WL 1677328, at *6 (N.D. Cal. Apr. 6, 2020) (reducing in-house counsel's fees by 55% "because his work was primarily that of a traditional in-house counsel, and in other respects, appears to have been duplicative of work performed by the Farella attorneys"); *see also Milgard Tempering, Inc. v. Selas Corp. of Am*., 761 F.2d 553, 558 (9th Cir. 1985) ("Of course, if in-house counsel are not actively participating (*e.g*., acting only as liaison), fees should not be awarded."); *Scripps Clinic and Research Found., Inc. v. Baxter Travenol Laboratories, Inc*., CIV. A. 87-140-CMW, 1990 WL 146385, at *1 (D. Del. July 31, 1990 ("time spent by in-house counsel in the role of a client, such as time spent keeping abreast of the progress of the litigation and advising outside counsel of the client's views as to litigation strategy, is not compensable in a fee award.").

I agree in large part with defendants.  Reviewing the Parker declaration, it appears that a significant portion of the time she spent was advising affiliates about the status and strategy of the litigation, seeking guidance for and making strategic decisions for her clients, performing initial factual investigation, and then reviewing and revising pleadings and motions.  *See, e.g.*, Dkt. No. 1131-8, ¶¶ 12-14, 17.  Those are typical in-house counsel tasks: acting as the point person for client communication, supervising outside counsel and revising their work, and making strategic decisions.  That time is not compensable.

However, Parker also spent significant time performing actual litigation tasks including coordinating document collection and production, reviewing document productions to make redactions, gathering documents in advance of depositions, drafting fact declarations, and performing legal research in areas where Parker has particular expertise.  *Id*. ¶¶ 14, 15, 16.  That work would otherwise have been performed by outside counsel and is compensable.  That said, it is unclear how much of that core litigation work was conducted solely or primarily by Parker

8

United States District Court
Northern District of California

(some clearly was) and how much was duplicative of the work also being conducted by outside counsel (some apparently was). In light of these facts, I will reduce the time sought by Parker by 70% to capture only the time she performed litigation tasks that were not duplicative of efforts of outside counsel.

Turning to Ratakonda, her "review" of the PFFA document production and redactions (Dkt. No. 1131-10, ¶ 9), "contributing" to and "helping" with witness preparation and outlines for deposition (*id*. ¶¶ 10, 13), reviewing briefs (*id*. ¶ 11) and participating in strategy sessions (*id*. ¶ 12), appear to be duplicative of the work of outside counsel or work typically expected of in-house counsel. That work is not compensable. However, Ratakonda's work locating documents for production in advance of depositions (*id*. ¶ 10) and preparing PPFA-specific witnesses for depositions or trials on PPFA-specific topics (*id*. ¶¶ 10, 13) is compensable. This non-duplicative litigation time appears to be a small fraction of the work Ratakonda billed. I will reduce the time she seeks by 90% to account for the more significant traditional in-house counsel tasks and tasks that were duplicative of outside counsel that she performed.[9]

## V.      REASONABLENESS OF HOURS

Defendants argue that plaintiffs cannot meet their burden of demonstrating the reasonableness of the hours billed or exercise of billing judgment because they failed to produce underlying timesheets. They contend that plaintiffs' summary attestations regarding tasks performed and hours billed are inconsistent and unreliable, and that the tasks performed are themselves insufficiently detailed.

I addressed the issue of production of timesheets in denying defendants' motion to compel the production of plaintiffs' timesheets. Dkt. No. 1139. As noted there, plaintiffs objected to producing contemporaneous timesheets because of the undue burden of having to redact hundreds of pages of timesheets for privileged and otherwise protected information (*e.g*., references to individuals whose identities had not been disclosed at trial and work product/attorney client

---

[9] The primacy of Parker and Ratakonda's performance of typical in-house counsel functions is confirmed by the Bomse declaration which states that Parker and Ratakonda were "instrumental in securing outside counsel and interfacing between outside counsel and the California affiliates." Bomse Decl. ¶ 9. Those are typical in-house counsel tasks.

information).  Plaintiffs also argued that production of timesheets with those necessary redactions would undermine their utility to defendants.

In rejecting defendants' motion to compel, I noted that plaintiffs supported their fee and cost motion with their detailed declarations and Chart.  Dkt. No. 1131-1, Ex. A, and as revised, Dkt. No. 1148-2, Ex. A.  After reviewing each side's caselaw, I concluded that plaintiffs' highly detailed declarations and Chart provided sufficient information to allow me to determine and defendants to contest the reasonableness of plaintiffs' fee request.  I explained:

> Given the very detailed nature of the declarations and chart, there is only limited potential utility in providing the defendants access to the underlying time sheets. That limited potential utility does not merit requiring plaintiffs to undertake the time-intensive effort to redact attorney-client information from their over 700 pages of time sheets. I do not preclude defendants from identifying particular tasks (or parts of the phases as broken down by plaintiffs) about which they believe they or the Court do not have sufficiently detailed information when they oppose the motion for fees. They may explain at that time why there is insufficient information to test the reasonableness of the fees claimed by plaintiffs for those tasks.  If necessary, I can then continue the hearing on the motion for fees and require plaintiffs to produce some subset of redacted time sheets. But given my inclination at this juncture, I advise defendants to also make their best arguments based on the information provided.

Dkt. No. 1139 at 2.

Defendants did not take my advice to heart.  Their opposition mainly repeats the rejected argument that due process requires the production of the underlying timesheets despite the highly detailed declarations and the Chart.  **Defendants submitted no evidence from their counsel to support an argument that plaintiffs engaged in unnecessary duplication of effort at any stage of this litigation for which plaintiffs seek compensation—not on any particular motion, in any deposition, in any hearing or case management conference, or during trial**.  Numerous defense counsel were present at every step of this case, yet defense counsel did not identify from their readily available personal knowledge any reason why plaintiffs' hours should be cut as unreasonable or duplicative.  Nor did they identify (as I suggested) any particular phase or segment of this litigation for which they could not make those sorts of targeted challenges to

plaintiffs' hours without underlying billing records.[10]   Defendants instead apparently rest on the Jardini declaration.  But there is no evidence that the Jardini declaration was informed by a comparison to defense counsels' hours billed or the personal knowledge of defense counsel.[11]

Viewing the ample evidence plaintiffs submit regarding the time they spent on the categories of tasks in each phase of this highly contested litigation, and relying on my own knowledge and understanding of the unusually significant time required to develop and try this case, I have a sufficient basis to conclude that the hours plaintiffs seek are reasonable.  I note that general concerns regarding duplication of effort among the significant number of attorneys who billed on this case has been addressed in the first instance by two measures.  First, plaintiffs only seek compensation for hours of the twelve attorneys identified, despite the fact that more than 130 attorneys worked on the case and 22 attorneys spent more than 250 hours on the case.  Bomse Decl. ¶ 10.  Second, from that subset of still-significant time, plaintiffs take a 25% deduction to account for potential duplication of effort and inefficiencies.  *Id.* ¶ 12.[12]

---

[10] Had defense counsel attested that there was serious duplication of effort or unnecessary hours spent by plaintiffs' counsel in specific phases, as I indicated in my October Order, I could have ordered plaintiffs to produce timesheets for that specific phase or part of a phase.  For example, defense counsel could have argued that in specifically identified meet and confers regarding identified discovery, plaintiffs' staffing was unreasonable.  They could have argued, based on that personal knowledge, that similar over-staffing or otherwise unreasonable staffing extended to an identified percentage of discovery disputes.  That sort of evidence-based showing has not been attempted much less made.  *But see Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) ("In a contested case, a district court ordinarily can rely on the losing party to aid the court in its duty by vigorously disputing any seemingly excessive fee requests.").

[11] In his declaration, Jardini proposes a reduced number of hours that he believes is more reasonable for various tasks; specifically the work on the complaints in Phase 1, the summary judgment motions in Phase 5, and the post-trial work in Phase 8.  *See, e.g.*, Jardini Decl., ¶¶60-67.  Similar to the conclusions of other district court judges, I find that Jardini's assertions are wholly unsupported, do not account for all of the research and pleadings actually drafted by plaintiffs during the phases he purports to address, and do not support a particularized deduction in hours for any specific task or phase.  *See, e.g.*, *Stathakos v. Columbia Sportswear Co.*, 15-CV-04543-YGR, 2018 WL 1710075, at *5 (N.D. Cal. Apr. 9, 2018) ("Mr. Jardini fails to offer any factual support for or articulate the principles or methods used to derive his opinions regarding the "reasonable" amount of time spent on these projects. Accordingly, plaintiffs' motion to strike paragraphs 42–44, 52–57, 62–64, 78–80, and the Outline of Services Performed of Mr. Jardini's declaration pursuant to Fed. R. Evid. 702(b)–(d) is GRANTED and these paragraphs are hereby STRICKEN.").

[12] Both of these deductions adequately address Jardini's allegation that the litigation of this case was "top heavy" and that plaintiffs did not staff this case in a reasonable manner.  *See* Jardini Decl. ¶ 47.  In addition, given the complexity of the legal issues raised as well as the highly

11

United States District Court
Northern District of California

1   Defendants argue that they cannot test the separate "billing judgment" determinations –

2   where counsel voluntarily did not charge time for various phases or tasks before totaling the time

3   they seek in the Chart (Ex. A and revised Ex. A) – without being able to see the underlying

4   timesheets.  Oppo. at 18.  That may be true for billing judgment determinations made prior to

5   totaling the time sought in plaintiffs' Chart.  However, the 25% cut taken *after* the time had been

6   totaled is transparent.  That significant reduction – given the descriptions of the tasks undertaken

7   by each biller, my informed view of the amount of work that was required by both sides to litigate

8   and defend this case, and defense counsels' failure to identify any significant duplications of effort

9   or unnecessary time based on their own personal knowledge – adequately accounts for potential

10   duplication and inefficiencies.

11   It bears emphasis that I am not simply taking "at face value" the word of the plaintiffs

12   regarding the number of hours expended on this case and the reasonableness of those hours.  *See*

13   *Gates v. Deukmejian*, 987 F.2d 1392, 1398–99 (9th Cir. 1993).  I have looked closely at the

14   detailed declarations and the Chart.  A review of the docket in this case and my intimate

15   knowledge of the complexity of the issues raised to Magistrate Judge Ryu and me in the different

16   stages of litigation further support my conclusion that the hours sought – after the 25% discount –

17   were reasonably incurred.  Absent *any* evidence from defendants identifying specific

18   unreasonableness in terms of subject matter or duplication of effort, I have an ample basis to

19   conclude the hours sought are reasonable without requiring plaintiffs to produce underlying

20   timesheets.[13]

21   The hours sought for the tasks identified in the phases outlined by plaintiffs, after the 25%

22   reduction, are reasonable and should be compensated.

23

24   _____

25   sensitive nature of much of the information sought and used by defendants regarding plaintiffs'
operations, the presence of actively involved senior counsel on *both* sides was eminently
reasonable.  If there was a practice by plaintiffs of having senior counsel handle low-level issues,

26   defendants could have relied on their personal knowledge to point that out.  That have not.

27   [13] Defendants identify a few discrepancies between the Chart and the declarations submitted.
Oppo. at 19.  Those discrepancies are explained and accounted for in the Reply and supporting

28   declarations, and resulted from rounding or discounting, discrete errors, or errors in defendants'
expert's own calculations.  *See* Reply at 15; *see also* Dkt. Nos. 1148-1 through 1148-4.

## VI.    COSTS

Plaintiffs seek recovery of $1,035,717.68 in non-compensatory costs.  Declaration of

Martin Decl. ¶ 7; Martin Reply Decl. ¶ 8.  They seek reimbursement for: a court reporter to

transcribe video clips for use at trial ($18,921.60); attorney travel for depositions, hearings, and

trial ($85,200.37); deposition costs not included in the Bill of Costs ($49,792); E-discovery costs

from plaintiffs' E-discovery vendor not included in the Bill of Costs ($223,543.56); contract

attorney costs for document review and redaction during written discovery ($18,101.25)[14]; trial

technical services and support from On the Record ($168,632.08); jury consulting services from

JuryScope ($54,000); travel costs for plaintiffs' witnesses for trial and depositions ($28,488.36);

hotel costs for out-of-town trial team and witnesses during the trial ($176,609.10); executive

protection services for witnesses to, from, and at the courthouse during trial ($37,598.51); and

expert witness fees and travel expenses ($174,830.85).  Martin Reply Decl. ¶ 8.[15]

Defendants do not dispute that non-statutory costs could be awarded in connection with

the award of attorney fees.  They argue generally that plaintiffs are not entitled to the non-statutory

costs they seek because plaintiffs failed to submit evidence showing that each category of non-

statutory costs they seek here are the types of costs counsel in this District typically seek from

clients separate from their attorney fees and because plaintiffs do not provide the underlying

invoices.

Martin declares that all of these costs were "billed to this case, all of which was passed

along to PPFA for payment, along with all supporting invoices and documentation."  Martin Decl.

¶ 7.  In her Reply declaration, Trotter declares that the majority of these costs (attorney travel-

related costs, consultant and expert fees, document review and document production related fees,

and trial technical consultant costs) are typically passed onto and billed to clients in California

---

[14] Jardini complains that he did not know how many hours the contract attorneys billed (Jardini Decl. ¶¶ 55, 83), but plaintiffs disclose that the contract attorneys billed over 412 hours at the document review and redaction stage.  Bomse Decl. ¶ 41; Martin Decl. ¶ 6.

[15] Defendants point out a discrepancy between the amount of costs stated in plaintiffs' motion and the amount itemized in the Martin Declaration.  Oppo. at 22.  Martin explains the discrepancy and clarifies the total amount sought in her Reply declaration.  Martin Reply Decl. ¶ 8.

1    generally and San Francisco specifically.  Dkt. No. 1148-3 ¶¶ 2-4; *see also Trustees of Const.*

2    *Indus. and Laborers Health and Welfare Tr. v. Redland Ins. C*o., 460 F.3d 1253, 1258 (9th Cir.

3    2006) (noting "reasonable attorney's fees" include litigation expenses when it is the "prevailing

4    practice" in the community for lawyers to bill those costs separately from their hourly rates).  That

5    evidence is sufficient to support an award of the non-statutory costs to plaintiffs.

6         Defendants made one specific challenge to the costs plaintiffs seek. They objected to the

7    personal security costs plaintiffs incurred to provide security to testifying witnesses travelling to

8    and from court.  The issue of witness security was raised with me during trial after a disturbing

9    incident.  I concluded there was insufficient evidence of witness intimidation or harassment to

10   justify assigning a United States Marshal to provide witness escorts to the courtroom.  Trial Tr.

11   1397:20-24.  There was no evidence that defendants themselves had been responsible for the

12   incident.  Because there is no evidence that these sorts of security costs are typically incurred and

13   compensated in this District, even in a highly charged case, it is not appropriate to require

14   defendants to foot the security bill.[16]

15        As to the exact costs themselves, plaintiffs did not submit the underlying invoices and

16   instead submitted a description of the 11 categories of costs they seek with a total for each.  Martin

17   Reply Decl. ¶ 8.  While not particularly fulsome, the declarations provide a sufficient description

18   of the costs.  The major costs (not surprisingly) are for e-discovery, trial technical support, hotel

19   rooms, and expert witnesses.  *Id*.[17]  Those costs are typically billed separately from attorney time

20   and charged to clients in this District.  Trotter Reply Decl. ¶¶ 2-4.  No category of costs – other

---

[16] Defendants identify only this particular cost as objectionable, and argue the costs seem unreasonably high given the number of hours involved.  Oppo. at 22.  That particularized objection is well-taken and not addressed in plaintiffs' Reply or declarations.  Plaintiffs' failure to address it, for example by identifying the number of hours of security provided and for how many witnesses, further supports excluding this one category of non-statutory costs from the award.

[17] Defendants' reliance on *Dyer v. Wells Fargo Bank, N.A*., 303 F.R.D. 326 (N.D. Cal. 2014) is misplaced.  There, the only information provided by counsel seeking recovery of expenses was the "dollar amount spent by each class counsel firm.  For example, Morgan & Morgan Complex Litigation Group's only documentation for costs is as follows: 'Expenses $46,309.84.'"  *Id*. at 334 n.3.  That was clearly inadequate and different from the detailed list of each type of cost sought here.

United States District Court
Northern District of California

than the personal security costs – is specifically challenged by defendants.[18]

Plaintiffs are awarded the non-statutory costs they seek, except for the $37,598.51 in "executive security" costs.

## CONCLUSION

Within fourteen days of the date of this order, plaintiffs' counsel shall submit a revised Proposed Order Awarding Fees and Costs, along with a declaration explaining the deductions and recalculations required by this Order. Any objection to that revised Proposed Order shall be submitted no later than five days thereafter.

**IT IS SO ORDERED.**

Dated: December 22, 2020

William H. Orrick
United States District Judge

---

[18] Jardini asserts – without any explanation or evidence – that the hotel, contract attorney, and some of the e-discovery expenses are "high" and may "possibly" be inappropriate. He does not explain the basis for his assertions. Jardini Decl. ¶¶ 83-84. For example, Jardini does not analyze the typical cost of a hotel room in San Francisco along with an estimate of the number of trial days/nights to support his assertion that the hotel expenses are "possibly" inappropriate. Without any evidentiary basis in support, Jardini's assertions are rejected.