1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

PLANNED PARENTHOOD
FEDERATION OF AMERICA, INC., et al.,

Plaintiffs,

v.

CENTER FOR MEDICAL PROGRESS, et al.,

Defendants.

Case No.  16-cv-00236-WHO

**ORDER ON MOTION FOR RELIEF FROM FINAL JUDGMENT**

Re: Dkt. No. 1201

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Defendants seek relief under Federal Rule of Civil Procedure 60(b)(5) and (6) from the judgment in this case ("Judgment"), based on the Ninth Circuit's June 23, 2023, decision in *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023), which struck down Oregon's all-party consent recording statute in light of its content-based exceptions.  The jury in this case found in part that the defendants violated the California, Maryland, and Florida recording statutes, and defendants argue that *Project Veritas* created a significant change in law that fatally undermines those findings of the jury.  Defendants overread *Project Veritas,* it did not effect a change in controlling law with respect to the California, Maryland, and Florida recording statutes, and it did not overrule otherwise settled legal precedent.  Their motion for relief from the Judgment is DENIED.[1]

23

**BACKGROUND**

24
25
26

Defendants move for relief from the Judgment, entered in April 2020 after a jury trial and post-trial proceedings.  Dkt. Nos. 1074, 1073, 1016.  The Judgment identified the damages and injunctive relief awarded against identified defendants in favor of identified plaintiff based on the

27
28

[1] This matter is appropriate for resolution on the papers.  *See* Civ. L.R. 7-1(b).  The December 6, 2023 hearing on the motion is VACATED.

jury's determinations that defendants: (1) violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act; (2) violated the Federal Wiretap Act, 18 U.S.C. §2511; (3) breached contracts; (4) trespassed; (5) committed fraud; (6) violated California's recording statute, Cal. Penal Code § 632; (7) violated Florida's recording statute, Section 934.03 of Title XLVII (the Florida Criminal Procedure Law); and (8) violated Maryland's recording statute, Section 10-402 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code.

After removing duplicative compensatory, statutory, and nominal damages awards among claims, I entered Judgment for damages in the following amount:

> All Defendants are jointly and severally liable to PPFA in the amount of $1,291,370 calculated as follows:
>
> • $1,259,370 in RICO trebled actual damages
> • $10,000 in Federal Wiretapping statutory damages
> • $20,000 in California Penal Code § 632 statutory damages
> • $1,000 in Florida Wiretapping statutory damages
> • $1,000 in Maryland Wiretapping statutory damages
>
> All Defendants are jointly and severally liable to PPNorCal in the amount of $20,000 calculated as follows:
>
> • $10,000 in Federal Wiretapping statutory damages
> • $10,000 in California Penal Code § 632 statutory damages
>
> All Defendants are jointly and severally liable to PPPSW in the amount of $11,000 calculated as follows:
>
> • $10,000 in Federal Wiretapping statutory damages
> • $1,000 in Florida Wiretapping statutory damages
>
> All Defendants are jointly and severally liable to PPOSBC in the amount of $67,547 calculated as follows:
>
> • $56,547 in RICO trebled damages
> • $10,000 in Federal Wiretapping statutory damages
> • $1,000 in Florida Wiretapping statutory damages
>
> All Defendants are jointly and severally liable to PPCCC in the amount of $11,000 calculated as follows:
>
> • $10,000 in Federal Wiretapping statutory damages
> • $1,000 in Florida Wiretapping statutory damages
>
> All Defendants are jointly and severally liable to PPPSGV in the amount of $58,315 calculated as follows:
>
> • $27,315 in RICO trebled damages
> • $10,000 in Federal Wiretapping statutory damages

• $20,000 in California Penal Code § 632 statutory damages
• $1,000 in Florida Wiretapping statutory damages

All Defendants are jointly and severally liable to PPRM in the amount of $11,000 calculated as follows:

• $10,000 in Federal Wiretapping statutory damages
• $1,000 in Florida Wiretapping statutory damages

Daleiden, Merritt, BioMax, CMP, Rhomberg, and Newman are jointly and severally liable to PPRM for the additional amount of $1 in nominal damages.

All Defendants are jointly and severally liable to PPGC in the amount of $73,851 calculated as follows:

• $61,851 in RICO trebled damages
• $10,000 in Federal Wiretapping statutory damages
• $1,000 in Florida Wiretapping statutory damages
• $1,000 in Maryland Wiretapping statutory damages

All Defendants are jointly and severally liable to PPCFC in the amount of $11,000 calculated as follows:

• $10,000 in Federal Wiretapping damages
• $1,000 in Maryland Wiretapping statutory damages
. . .

4. Punitive Damages

In addition to compensatory, statutory, and nominal damages, the following Defendants are severally liable to PPFA, PPGC, PPOSBC, PPPSGV, PPCCC, PPCFC, PPPSW, PPNorCal, and PPRM for punitive damages in the following amounts.

A. Daleiden: $125,000.
B. Merritt: $25,000.
C. BioMax: $200,000.
D. CMP: $400,000
E. Newman: $50,000
F. Rhomberg: $70,000.

Judgment, Dkt. No. 1074 at 7-9.  I also entered the following injunctive relief:

Injunctive Relief

For the reasons stated in the Court's findings of fact and conclusions of law, the Court enters the following permanent injunction:

A. Upon service of this Order, all Defendants (except Lopez, unless he is acting in concert or participation with another Defendant) and their officers, agents, servants, employees, owners, and representatives, and all others persons who are in active concert or participation with them are permanently enjoined from doing any of the following, with respect to PPFA, PPNorCal, PPPSW, PPOSBC, PPCCC, PPPSGV, PPRM, and PPGC/PPCFC:

United States District Court
Northern District of California

3

(1) Entering or attempting to enter a PPFA conference, or an office or health center of any plaintiff identified above, by misrepresenting their true identity, their purpose for seeking entrance, and/or whether they intend to take any video, audio, photographic, or other recordings once inside; and

(2) recording, without the consent of all persons being recorded (where all party consent is required under the laws of the state where the recording is intended):

(a) any meeting or conversation with staff of a plaintiff identified above that Defendants know or should know is private; or

(b) in a restricted area at a PPFA conference or restricted area of an office or health center of any plaintiff identified above. "Restricted area" is defined as areas not open to the general public at the time of the recording, for example areas requiring registration or an appointment to access.

B. In addition, Defendants shall serve a copy of this injunction on any person who, in active concert or participation with Defendants, either has or intends to enter a restricted area at a PPFA conference or property of any plaintiff identified above or to record the staff of any plaintiff identified above without securing consent of all persons being recorded (where that consent is required under the laws of the state where the recording is intended), and provide Plaintiffs with proof of service thereof.

*Id.* at 9-10.

Defendants appealed.  In the published portion of its decision, the Ninth Circuit affirmed the Judgment in part, concluding that the compensatory damages were not precluded by the First Amendment under *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) and *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018).  The First Amendment did not preclude award of the two categories of compensatory damages permitted (infiltration damages and security damages), because those damages were awarded by the jury to reimburse Planned Parenthood entities for losses caused by defendants' violations of generally applicable laws.  *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1130 (9th Cir. 2022).  The court reversed the jury's verdict on the claim under the Federal Wiretap Act, 18 U.S.C. § 2511(2)(d), vacating the related statutory damages, because defendants' violation of civil RICO was not a sufficient criminal or tortious purpose to impose liability under the Wiretap Act.  *Id.*

In the unpublished memorandum disposition portion of the panel's decision, the court rejected defendants' numerous challenges to: (a) summary judgment rulings; (b) the denial of defendants' post-trial motions; (c) rulings regarding adverse inferences from the invocation of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Fifth Amendment privileges against self-incrimination; (d) jury instructions; and (e) discovery

2   rulings. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, No. 20-16068, 2022 WL 13613963

3   (9th Cir. Oct. 21, 2022). The court affirmed the denial of post-trial motions regarding the recorded

4   individuals' reasonable expectations of privacy at various conferences and meetings, and that the

5   jury's award of plaintiffs' infiltration and security damages were proximately caused by the

6   "wrongful trespass, recording, and breach of contract actions." *Id.*, 2022 WL 13613963, at *6-7.

7   The court also affirmed the punitive damages award based on "substantial evidence that

8   Appellants committed fraud, trespassed, and violated state wiretapping laws, and that they

9   engaged in that conduct through 'fraud' or 'intentional misconduct.' There was indeed

10  overwhelming evidence to support the punitive damages award based on the fraud and findings

11  that Daleiden, Merritt, Rhomberg, Newman, CMP, and BioMax committed fraud or conspired to

12  commit fraud through intentional misrepresentation." *Id.*, at *7. Finally, the injunctive relief was

13  affirmed, recognizing that damages "alone could not prevent Appellants from committing further

14  illegal actions targeting Planned Parenthood such as trespass, unconsented recordings, and breach

15  of contracts." *Id.* at *8.

16      Defendants sought rehearing and rehearing *en banc*, which were denied.[2] The Ninth

17  Circuit granted defendants' unopposed motion to stay the issuance of the mandate pending the

18  resolution of defendants' petitions for a writ of certiorari to the Supreme Court.[3] The United

19  States Supreme Court denied the petitions for certiorari on October 4, 2023.[4]

20      While the petitions for certiorari were pending at the Supreme Court, the Ninth Circuit

21  issued its decision in *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023, June 3, 2023). In

22  that case:

23      (1) Citing *Wasden*, the court reaffirmed that Oregon's recording statute ("section

24          165.540") "regulates individuals' conduct in making an audio or video recording.

25          Under our case law, such conduct qualifies as speech entitled to the protection of the

26

27        [2] *See* Ninth Circuit Docket, Case No. No. 20-16068, Dkt. No. 163.

28        [3] *Id.*, Ninth Circuit Dkt. No. 165.
          [4] *Id.*, Ninth Circuit Dkt. Nos. 175-178.

1    First Amendment."  72 F.4th at 1054-1055.

2    (2) "[A]pplying *Wasden,*" the court determined that section 165.540 is a content-based

3    restriction on speech.  *Id*. at 1057.

4    (3) Further "applying" *Wasden* and other longstanding precedent, the court (a) considered

5    the nature of Oregon's interest in enacting section 165.540 and its exceptions and (b)

6    weighed the uniquely broad scope of the statute, its lack of narrow tailoring, and non-

7    existence of ample alternative channels for protected speech, (c) to conclude that

8    section 165.540's content-based exceptions could not be severed and the whole statute

9    failed strict- and intermediate-scrutiny review.

10   *Id*. at 1054-1068.

11       After the Supreme Court denied defendants' certiorari petitions, they filed a motion at the

12   Ninth Circuit pursuant to Federal Rules of Appellate Procedure 27 and 41 and Ninth Circuit Rules

13   27-1 and 41-1 asking the Ninth Circuit to stay issuance of the mandate  and set a briefing schedule

14   to determine how the Ninth Circuit's opinion and memorandum decision must be modified in light

15   of the *Project Veritas* decision, which defendants' characterized as "an intervening change in

16   law."[5]  In the alternative, defendants asked the Ninth Circuit for a modification of the opinion and

17   memorandum decision in light of the *Project Veritas* opinion because *Project Veritas* "justifies

18   reversing the judgment finding Defendants liable on statutory recording claims and liable for

19   compensatory damages, and justifies remanding the case for a new trial on all remaining claims."[6]

20   Further in the alternative, defendants asked the Ninth Circuit to "stay issuance of the mandate" in

21   this case until the mandate issued in *Project Veritas*.  As a last alternative, defendants asked the

22   Ninth Circuit to remand this case to "the District Court with instructions to consider the issues

23   raised in this motion in the first instance."[7]

24       On October 10, 2023 the Ninth Circuit denied defendants' motion on all bases,[8] and on

25

26

27   [5] *Id*., Ninth Circuit Dkt. No. 179.
     [6] *Id*.

28   [7] *Id*.
     [8] *Id*., Ninth Circuit Dkt. No. 182.

1  October 18, 2023, the mandate issued.[9]

2      Defendants filed this motion on October 31, 2023.

3                     **LEGAL STANDARD**

4      Rule 60(b)(6) provides that, "[o]n motion and just terms, the court may relieve a party or

5  its legal representative from a final judgment, order, or proceeding for ... any ... reason that

6  justifies relief." Fed. R. Civ. Proc. 60(b)(6). The decision to grant a Rule 60(b)(6) relief must be

7  made on a case-by-case inquiry that requires the trial court to "intensively balance" numerous

8  factors, including the competing policies of the finality of judgments and the incessant command

9  of the court's conscience that justice be done in light of all the facts." *Phelps v. Alameida*, 569

10 F.3d 1120, 1133 (9th Cir. 2009) (*citing Stokes v. Williams*, 475 F.3d 732, 736 (6th Cir.2007)).

11     The Ninth Circuit has recognized that Rule 60(b)(6) affords district courts discretion to

12 vacate judgments when "appropriate to accomplish justice," but has cautioned against that use to

13 circumvent "the strong public interest in [the] timeliness and finality" of judgments." *Phelps*, 569

14 at 1135 (internal quotations omitted). For those reasons, a movant seeking relief under Rule

15 60(b)(6) must show "extraordinary circumstances" justifying the reopening of a final judgment.

16 *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (recognizing the "strict interpretation" of Rule

17 60(b) is essential if the finality of judgments is to be preserved).

18     "[A] change in the controlling law can— but does not always—provide a sufficient basis

19 for granting relief under Rule 60(b)(6)." *Henson v. Fid. Nat'l Fin., Inc*., 943 F.3d 434, 444 (9th

20 Cir. 2019). As the Ninth Circuit explained in *Henson*, in conducting that analysis courts should,

21 first, look to the "nature of the intervening change in the law," in particular whether the

22 intervening caselaw "overruled otherwise settled legal precedent." *Id*. at 446-447; *see also id.* at

23 447 (courts should consider whether the party seeking relief was "blindsided by the change in law

24 and could not have done anything to avoid its prejudicial effect, or whether the predicament they

25 face is the result of their knowingly taking a calculated risk for which they should be held

26 responsible").

27

28 ───────────
[9] *Id*., Ninth Circuit Dkt. No. 183.

United States District Court
Northern District of California

Second, courts look to the parties' diligence, in particular whether the party seeking relief raised the issue relevant to the intervening caselaw diligently on appeal.  Third, courts weigh the "reliance interest" in the finality of the case, including the impacts of disturbing of past effects of the judgment and whether the matter was still pending on appeal when the change in law occurred. Fourth, courts consider any delay between the judgment and the Rule 60(b) motion.  Fifth, courts consider the relationship between the original judgment and the change in the law.  That factor "seeks to measure whether any particular change is extraordinary under the circumstances as a result of a direct relationship to the original judgment."  Finally, courts consider comity, either between the federal and state courts or "the importance of heeding the intent of the rulings of federal appellate courts."  *Henson*, 943 F.3d at 446-455.

Under Rule 60(b)(5) courts "may 'relieve a party or its legal representative from a final judgment, order, or proceeding ... [if] applying it prospectively is no longer equitable.' Fed. R. Civ. P. 60(b)(5).  A district court's authority to modify an injunction is more limited than its authority to formulate an injunction in the first instance because of the additional interest in the finality of judgments. 'A balance must thus be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021) (quoting *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961)).

As the Ninth Circuit explained in *Rousseau*:

> A party requesting modification must show "a significant change either in factual conditions or in the law warranting modification of the decree." *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). Further, the modification must be "suitably tailored to resolve the problems created by the changed factual or legal conditions." *Id*. If the moving party cites significantly changed circumstances, it must also show that the changed conditions make compliance with the consent decree more onerous, unworkable, or detrimental to the public interest. *Id*.

985 F.3d at 1097–98.

United States District Court
Northern District of California

**DISCUSSION**

I.      **RULE 60(B)(6) RELIEF**

        A.      **Significant Change in the Controlling Law**

        Defendants argue that the *Project Veritas* decision worked a "significant intervening change of law" that undermines the Ninth Circuit's affirmance of the Judgment in this case on the jury's determinations that some defendants were liable to some plaintiffs on the California, Florida, and Maryland recording statute claims.  They contend that under *Project Veritas*, because each state's statute contain content-based exceptions, the statutes are "blatantly unconstitutional." Mot. at 3, *see id*. at 5-13 (arguing why under the *Project Veritas* opinion the California, Florida, and Maryland recording statutes fail content-based strict- and intermediate scrutiny tests).

        There are numerous reasons why the *Project Veritas* opinion does not represent a significant change to settled law that would justify Rule 60(b)(6) relief in this case.  First, defendants did not – in any of their dozens of pre- and post-trial motions or in their merits briefs to the Ninth Circuit – argue that the state recording statutes were unconstitutional given their content-based exceptions or otherwise challenge the constitutionality of the statutes.  Defendants contend that failure was due to their belief that the constitutionality of those laws was "settled."  But they cite no appellate decisions from California, Florida, or Maryland upholding the statutes in the face of content-based challenges.[10]

        Further, despite defendants' repeated characterization of the *Project Veritas* opinion as "extending" the *Wasden* decision, there was no extension of *Wasden* in *Project Veritas*.  The *Project Veritas* opinion applied *Wasden* in determining that the recordings at issue were protected speech (established by *Wasden*) and that the exceptions in the Oregon statute were content-based, triggering strict scrutiny review (again, a result of applying *Wasden*).  *Project Veritas*, 72 F.4th

---

[10] Defendants identify *Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011) as considering and upholding the facial constitutionality of California's recording statute.  But that district court decision is not binding on this court, nor could it reasonably foreclose defendants' ability to challenge the California law as unconstitutional given the content-based exceptions in the recording statute identified by defendants in their Motion.  The *Vera* opinion upheld the California statute against a different challenge – secretly recording public officials – and affirmed the statute's scope as protecting conversations where there was a reasonable expectation of privacy. *Id*. at 967.

9

1043, *passim*.  Defendants could have made similar content-based arguments regarding the California, Florida, or Maryland statutes but, presumably for strategic reasons, did not.  "[A] mere development in jurisprudence, as opposed to an unexpected change, does not constitute an extraordinary circumstance for purposes of Rule 60(b)(6)."  *Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020).

Additionally, it is questionable what impact (if any) the decision regarding the Oregon statute could have on the California, Florida, or Maryland recording statutes.  In conducting its multi-step analysis to conclude both that the content-based exceptions triggered strict or intermediate review and that the statute failed those levels of review as it burdened more speech than necessary ("wholesale restriction") and failed to leave open ample channels for protected speech, the *Project Veritas* decision repeatedly placed heavy weight on the fact that the Oregon statute was "one of a few outliers in enforcing such a broad prohibition on unannounced recordings of conversations," covering recordings even "in a place open to the public where the subjects lack a reasonable expectation of privacy."  *Project Veritas*, 72 F.4th at 1050 n.1.  In Appendix A of the *Project Veritas* opinion, the court explicitly distinguished the recording statutes in California, Florida, and Maryland and most other states, which are expressly limited to cover recordings where participants have "reasonable" expectations of privacy, from the exceptionally broad prohibition present in Oregon's statute.  *Id*., Appendix A; *see also id*. at 1067 (recognizing, as part of the strict scrutiny analysis and whether less restrictive alternatives were available, the significant problem in Oregon's law given the prohibition on "unannounced recordings in public places fails to leave open ample alternative channels of communication").  It is clear that the *Project Veritas* opinion effected no "sea change" in settled "controlling" law with respect to the California, Florida, or Maryland recording statutes.

Defendants also argue that the *Project Veritas* opinion stands for the proposition that "compensatory and punitive damages proximately caused by [the] recording itself" cannot be awarded under the First Amendment.  *Id*. at 3.  That argument – that the First Amendment insulates defendants from any damages from their conduct – was repeatedly raised by defendants in their pre and post-trial motions in this case and on appeal to the Ninth Circuit.  That argument

rests squarely on the *Wasden* decision itself.  And as the Ninth Circuit noted in affirming the jury's verdict in this case, the compensatory damages awarded to plaintiffs were not precluded by the First Amendment under *Cohen v. Cowles Media Co*., 501 U.S. 663 (1991) and *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018) because the two categories of compensatory damages permitted (infiltration damages and security damages) simply reimbursed Planned Parenthood for losses caused by defendants' violations of generally applicable laws, including trespass, fraud, and breach of contract.

In short, there are two major barriers to defendants' contention here.  First, the issue concerning what damages can be awarded despite the First Amendment's protections was not addressed by the *Project Veritas* court.  *Project Veritas* did not work a significant change in settled precedent that would justify Rule 60(b)(6) relief.  Second, the damages that defendants challenge were, as the Ninth Circuit found, fully justified by the non-recording claims, including trespass, fraud, and breach of contract.

While the foregoing analysis is dispositive, I will nevertheless address the remaining Rule 60(b)(6) factors.[11]

## B.  Diligence

Defendants assert that they moved swiftly and diligently to raise this issue as soon as their petitions for certiorari were denied by the Supreme Court.  That is true.  But defendants miss the point of this factor.  They could have argued from the outset of this case that the California, Florida, and Maryland statutes were unconstitutional content-based restrictions on speech that failed strict or intermediate-scrutiny review because they were not narrowly tailored or did not leave sufficient alternative channels for protective speech.  That issue was not "settled" law and the content-based analysis justifying strict- or intermediate-review (at least according to the *Project Veritas* decision) was itself mandated by the *Wasden* decision.  Defendants chose not to make those arguments.  *Plotkin v. Pac. Tel. & Tel. Co*., 688 F.2d 1291, 1293 (9th Cir. 1982) ("Even if the motion to vacate were timely; calculated, deliberate choices are not to be relieved

---

[11] The sixth factor, comity, does not apply to this case.

1    from under Fed. R. Civ. P. 60(b).").[12]

2          For that reason, defendants have not demonstrated diligence. *Mitchell v. United States*,

3    958 F.3d 775, 787 (9th Cir. 2020) (noting "where an argument is available and raised by other

4    litigants (and even litigated all the way to the Supreme Court), but the [movant] did not diligently

5    pursue the argument, the change in law is 'all the less extraordinary.'" (quoting *Gonzalez*, 545

6    U.S. at 537)); *see also Guenther v. Lockheed Martin Corp*., 972 F.3d 1043, 1058 (9th Cir. 2020)

7    (Rule 60(b)(6) cannot be used to "'relitigate old matters, or to raise arguments or present evidence

8    that could have been raised prior to the entry of judgment.'") (quoting *Exxon Shipping Co. v.*

9    *Baker*, 554 U.S. 471, 485 n.5 (2008)). This factor weighs in favor of plaintiffs and against

10   defendants.

11       **C.**    **Reliance on Finality**

12         It is true that damages – a significant component of the Judgment – have not been paid, in

13   part because I granted the defendants' motion to stay the effect of the Judgment until this motion

14   was resolved. Dkt. No. 1206. But this case has been pending since 2016 and the damages related

15   to infiltration and security were incurred long ago. The plaintiffs who were awarded those

16   damages have a significant interest in finally receiving compensation for those damages, and their

17   reliance on the same is only *partially* covered by the bond defendants were required to secure on

18   appeal. *See* Dkt. No. 1066 (requiring an increased bond, set at $700,000, that protects less than

19   1/3 of the $2,425,084 Judgment and none of the $12,782,891.25 in attorney fees and $998,119.17

20   in non-statutory costs awarded to plaintiffs).

21         More important however, the injunctive relief outlined in the Judgment is very important

22   to plaintiffs. Plaintiffs sought that relief from the very beginning of the case. Their interest in

23   preventing defendants from entering plaintiffs' conferences or facilities by misrepresenting their

24   true identities, their purpose for seeking entrance, and/or whether they intend to take any video,

25   audio, photographic, or other recordings once inside is hugely significant to plaintiffs; as the

26

27                  

28   [12] Pre-entry of Judgment, defendants repeatedly argued they fit within a statutory exception under California's statute. *See* California Penal Code section 633.5. On this motion, defendants argue for the first time that the exception makes the statute unconstitutional.

testimony at trial established.  Plaintiffs' reliance on that relief, that has been in place since Judgment was entered, is material.

### D.      Delay

Defendants cannot be faulted for utilizing all routes of review and pursuing this case to the end.  They moved swiftly for relief in this court after the Supreme Court denied their petitions for certiorari and the Ninth Circuit rejected their request in the first instance.  That said, as discussed above, the *Project Veritas* decision was the result of the application of *Wasden*.  *Wasden* has been the law in this Circuit since 2018.  Defendants limited their *Wasden* challenge to argue that damages were unavailable under the First Amendment.  They chose not to make a content-based challenge to the California, Florida, or Maryland statutes.

At most, therefore, this factor is neutral.

### E.      Relationship Between the Original Judgment and the Change in the Law

As explained above, *Project Veritas* did not effect a significant change in controlling law with respect to the California, Florida, or Maryland recording statutes.  But if it did, any impact would be marginal at best.  *See Bynoe v. Baca*, 966 F.3d 972, 986 (9th Cir. 2020) ("Where a court rested its judgment on a basis only marginally altered by later changes in relevant law, reopening a judgement is disfavored.").  The California, Florida, and Maryland statutes do not, like the Oregon statute, broadly prohibit recording of conversations taking place in public.  Instead, the California, Florida, and Maryland statutes start from a much narrower place: they only protect unconsented recordings where the individuals have reasonable expectations of privacy.

Relatedly, given the differences between Oregon's statute and among the California, Florida, and Maryland statutes, *how* a strict or intermediate-scrutiny analysis might apply to each of those statutes will differ based on each of those statutes.  For example, a court would need to consider whether the statutes are otherwise narrowly tailored, whether any content-based exceptions could be severed from these states' narrower statues, and whether alternate channels exist for protected speech under each of the different statutes.  Despite defendants' broad pronouncement that the holding of *Project Veritas* makes the California, Florida, and Maryland, statutes unconstitutional, that pronouncement ignores the significant differences between the

Oregon statute struck down in *Project Veritas* and the statutes that were at issue in this case. Defendants have not shown under *Project Veritas*, the California, Florida, or Maryland statutes would be considered unconstitutional, much less that anything other than a "marginal" change to the Judgment in this case could possibly result from the redo defendants seek. *See, e.g., Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017 (movant must show the "degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought" is close); *Bynoe*, 966 F.3d at 986.

And even if I am wrong and *Project Veritas* worked a significant change in settled law that would, with the other relevant factors, justify some form of relief under Rule 60(b)(6), the resulting revised Judgment would not differ materially, except for a slight adjustment in damages. Only $60,000 of the $2,335,084 in damages awarded are solely attributable to the state law recording claims. As noted in repeatedly in the Ninth Circuit's affirmance, the other relief – compensatory and punitive damages and injunctive relief – were fully supported by the jury's conclusions on the breach of contract, trespass, and fraud claims, as well as under RICO.

Relief under Rule 60(b)(6) is not warranted and defendants' motion is DENIED.

## II.      RULE 60(B)(5) RELIEF FROM THE INJUNCTIVE RELIEF

Defendants also seek relief from the injunctive relief portion of the Judgment, entered based on the jury's verdict, the evidence at trial, and the post-trial arguments and evidence. For all of the reasons discussed above – primarily the fact that *Project Veritas* did not create a significant change in settled law and given plaintiffs' interest in the finality of the Judgment – relief under Rule 60(b)(5) is not warranted and the motion is DENIED.

## CONCLUSION

The motion for relief from the Judgment is DENIED. The stay on enforcement of the Judgment and to prevent disbursement of bond is LIFTED. Enforcement and disbursement of the bond may proceed.

**IT IS SO ORDERED.**

Dated: December 5, 2023

William H. Orrick
United States District Judge